1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
2                      Norfolk Division

3

4   - - - - - - - - - - - - - - - - - -
                                      )
5    R.M.S. TITANIC, INC.,            )
     SUCCESSOR IN INTEREST TO         )
6    TITANIC VENTURES, LIMITED        )
     PARTNERSHIP,                     )
7                                     )   CIVIL ACTION NO.
            Plaintiff,                )   2:93cv902
8                                     )
     v.                               )
9                                     )
     THE WRECKED AND ABANDONED        )
10   VESSEL, ETC.,                    )
                                      )
11          Defendant.                )
    - - - - - - - - - - - - - - - - - -
12

13

14                   TRANSCRIPT OF PROCEEDINGS

15                      Norfolk, Virginia

16                       June 21, 2016

17

18   BEFORE:  THE HONORABLE REBECCA BEACH SMITH
             Chief United States District Judge
19

20   APPEARANCES:

21          KALEO LEGAL
            By:  Brian A. Wainger
22                    And
            McGUIRE WOODS LLP
23          By:  Robert W. McFarland
                 Counsel for R.M.S. Titanic
24

25

1

2  APPEARANCES CONTINUED:

3          UNITED STATES ATTORNEY'S OFFICE
         By:  Kent Porter
4              Assistant United States Attorney
               Counsel for Amicus United States
5
         THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
6        By:  Jackie Rolleri
               Counsel for NOAA
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Hearing commenced at 11:31 a.m.)
 2              THE CLERK:  In case 2:93cv902, R.M.S. Titanic, Inc.,
 3    Successor in Interest to Titanic Ventures, Limited
 4    Partnership, versus The Wrecked and Abandoned Vessel, et
 5    cetera.
 6              Mr. McFarland, Mr. Wainger, is the plaintiff ready
 7    to proceed?
 8              MR. McFARLAND:  Good morning, Your Honor.  The
 9    plaintiff is ready.
10              THE COURT:  Good morning, counsel.
11              THE CLERK:  Mr. Porter, Ms. Rolleri, is Amicus
12    United States of America ready to proceed?
13              MR. PORTER:  Good morning, Your Honor.  We are ready
14    to proceed.
15              THE COURT:  Good morning, counsel.  I believe that
16    we began this hearing, when it was originally scheduled,
17    Mr. McFarland, to catch up on the various status reports that
18    you have filed, your most recent one, and then there was one
19    received in April and another in February, and so I believe
20    you've got some catch-up to do with the status reports.
21              You filed one on November 4, 2015, February 23rd,
22    2016, and then April 10th, 2015.  Then just recently, I
23    believe it was around June 15, 2016, an additional report was
24    received.  So why don't we start the hearing with you
25    summarizing or going through -- I certainly reviewed the
```

4

```
 1    reports -- to advise the Court, in a summary fashion, where    11:33:2
 2    the status of the matter is at this juncture.                  11:33:3
 3              MR. McFARLAND:  Thank you, Your Honor.  We            11:33:3
 4    appreciate the opportunity to be before the Court today, Your  11:33:3
 5    Honor, and certainly there have been a number of developments  11:33:4
 6    since the first status report that Your Honor made, including  11:33:4
 7    the status report that we filed last week on June 15th.        11:33:4
 8              Going back to February 23rd of this year, we         11:33:5
 9    submitted a confidential periodic report which outlined the    11:33:5
10    company's financial condition and status at that period in     11:34:0
11    time, as well as advising the Court on the status of the       11:34:0
12    collection and the exhibitions that were going on.             11:34:0
13              We filed a supplemental or next report in April, and 11:34:0
14    then this Court scheduled this status conference.  Then since  11:34:1
15    that scheduling, the company has filed a petition for          11:34:1
16    reorganization under Chapter 11 of the U.S. Code in the        11:34:2
17    Middle District of Florida, Jacksonville Division.             11:34:2
18              To fully inform the Court about that Chapter 11       11:34:3
19    proceeding and filing, we filed a supplemental periodic        11:34:3
20    report on June 15th last week, Your Honor.  We then filed,     11:34:3
21    that same day, a suggestion in bankruptcy in this court on     11:34:4
22    June 15th, 2016, under 11 U.S.C. 362, which we believe         11:34:4
23    provides an automatic stay of all litigation/judicial          11:34:5
24    proceedings.                                                   11:34:5
25              THE COURT:  Well, I don't agree with you on that in  11:34:5
```

JODY A. STEWART, Official Court Reporter

| | | |
|---|---|---|
| 1 | regard to this proceeding, but we'll get to that.  It does | 11:35:0 |
| 2 | not stay this proceeding, and I will tell you the legal | 11:35:0 |
| 3 | reasons why. | 11:35:0 |
| 4 | MR. McFARLAND:  Very well, Your Honor.  It is the | 11:35:0 |
| 5 | Titanic's position that pursuant to the Chapter 11 | 11:35:1 |
| 6 | reorganization filing that there is an automatic stay of all | 11:35:1 |
| 7 | judicial proceedings, including this one.  That would apply | 11:35:1 |
| 8 | such that while we are certainly here to provide information | 11:35:2 |
| 9 | to the Court, we do not believe that any further litigation | 11:35:2 |
| 10 | or adversarial proceedings could go forth at this point in | 11:35:3 |
| 11 | time. | 11:35:3 |
| 12 | THE COURT:  Well, adversarial proceedings are one | 11:35:3 |
| 13 | thing, but staying this action is another, because an | 11:35:3 |
| 14 | automatic stay is meant to protect debtors from judgments, | 11:35:4 |
| 15 | collection activities, foreclosures and repossessions against | 11:35:4 |
| 16 | them.  It is not meant to operate in an action which they | 11:35:5 |
| 17 | have initiated, and that's been before the Court, and we have | 11:35:5 |
| 18 | our covenants and conditions. | 11:35:5 |
| 19 | I have the law on that, and the automatic stay does | 11:36:0 |
| 20 | not operate to relieve you from this salvage action in this | 11:36:0 |
| 21 | court and any proceedings thereon, but I'll go through the | 11:36:1 |
| 22 | law with you so you don't need to get to that yet.  What I'm | 11:36:1 |
| 23 | asking you to do is to bring the Court up to date | 11:36:2 |
| 24 | particularly with this merger with Dinoking.  Is that the way | 11:36:2 |
| 25 | it is pronounced? | 11:36:3 |

```
 1          MR. McFARLAND:  Yes, Your Honor.  That went through    11:36:3
 2   in, I believe, late 2015.  Mr. Daoping Bao is now the        11:36:3
 3   Chairman and CEO of the company, and there is a board of     11:36:3
 4   directors that he is head of.  Other members are             11:36:4
 5   Mr. Mingcheng Tao, Mr. Sid Dutchak, Mr. Rick Kraniak, Doug   11:36:5
 6   Banker, who the Court may remember is a longstanding member  11:37:0
 7   of the Premier Board of Directors, and Jerry Henschel.       11:37:0
 8          THE COURT:  It is my understanding that you have      11:37:1
 9   indicated to the Court that R.M.S.T. remains the holder of   11:37:1
10   the rights on the Titanic artifacts, and although it may be a 11:37:2
11   wholly owned subsidiary of Premier, the two transactions, in  11:37:2
12   terms of the merges, did not affect the ownership of the      11:37:3
13   Titanic artifacts.  That is what has been represented to the  11:37:3
14   Court.                                                        11:37:3
15          MR. McFARLAND:  Did not affect the ownership of the   11:37:4
16   artifacts, that's correct, Your Honor, absolutely.  In that  11:37:4
17   sense let me say that even with the Chapter 11 filing, the   11:37:4
18   company recognizes its obligations under the covenants and   11:37:4
19   conditions and fully intends to adhere to those throughout   11:37:4
20   the Chapter 11 reorganization proceeding.                    11:37:5
21          THE COURT:  All right.  So basically what I'm doing   11:37:5
22   is going through each report.  I'm going back to the November 11:38:0
23   15, 2015 report when you first reported that R.M.S.T.'s       11:38:0
24   parent company closed on November 1, 2015, and it was a way   11:38:1
25   of surviving as an entity in the merger, and what I'm trying  11:38:2
```

1    to do is go back and trace for the record now where the Court
2    is.  As I understood it from your submission, the documents
3    governing the transactions recognized R.M.S.T. as the sole
4    owner of the artifacts and warranted that R.M.S.T. is in
5    compliance with all of the Court's orders, and pursuant to
6    its terms, the promissory note was converted to Premier
7    common stock on October 30, 2015, thus terminating the debt
8    held by the investor in the group.
9              MR. McFARLAND:  Correct, Your Honor.
10             THE COURT:  All right.  Then you had something in
11   that report about the corporate structure.  As I understood
12   the structure, the primary shareholders, you had an executive
13   chairman of the board, a president, a chief executive
14   officer, and so forth.  If you can go through all of those
15   positions and tell the Court if they are still current.
16             MR. McFARLAND:  Certainly, Your Honor.  Daoping Bao,
17   spelled B-a-o, pronounced Bao, is the Chairman and CEO.
18   Michael Little is the Chief Financial Officer.  Ms. Alex
19   Klingelhoffer, who the Court may recall from testimony
20   previously, is the Vice President for collections.  The board
21   of directors is, as I mentioned a few minutes ago, composed
22   of, I believe, five gentlemen.
23             THE COURT:  Have you given those names to the Court?
24             MR. McFARLAND:  I believe we provided the names of
25   the board, but we can certainly update that, Your Honor.

```
 1              THE COURT:  All right.  As I understand, on November     11:40:0
 2   5, 2015, Mr. Sellers resigned from the board of directors?          11:40:1
 3              MR. McFARLAND:  That is correct, Your Honor,             11:40:1
 4   Mr. Sellers who had been an investor.  I guess we do need to        11:40:1
 5   provide Mr. Henschel, who we will update.  He is a very            11:40:2
 6   recent addition to the board of directors following               11:40:2
 7   Mr. Evans' resignation as a director last month, I believe.       11:40:3
 8              THE COURT:  Then what you need to do is just file       11:40:3
 9   with the Court for the record any changes in the corporate        11:40:3
10   structure in terms of who's running the company, who's on the     11:40:3
11   board, and when you file that with the Court, you need to         11:40:4
12   show, for instance, that somebody was there, and then they        11:40:4
13   resigned on such and such a date, and then whoever took their     11:40:5
14   place.  So it's just a simple snapshot for the Court to have.     11:40:5
15              MR. McFARLAND:  Certainly, Your Honor.  I'm happy to    11:40:5
16   do that.                                                          11:41:0
17              The company continued to operate, Your Honor,          11:41:0
18   throughout late 2015/early 2016.  We have had extensive           11:41:1
19   discussions with the Government representatives of NOAA,          11:41:1
20   Department of Justice, about the company's operations,           11:41:2
21   keeping them fully informed, largely under a nondisclosure        11:41:2
22   agreement.                                                        11:41:2
23              But as we advised the Court of the company's           11:41:3
24   financial situation going back to last year and continuing        11:41:3
25   into this year, it was not strong, largely due to a               11:41:3
```

1   transaction in New York City where the company entered into a   11:41:4

2   long-term lease for space on 5th Avenue between 38th and 39th   11:41:4

3   Streets that was hosting the "Saturday Night Live"   11:41:5

4   exhibition.  That exhibition has not proven to be financially   11:41:5

5   successful.  We have the obligations under the lease, and   11:42:0

6   those have been choking or make it difficult for the company   11:42:0

7   to operate financially.   11:42:0

8          THE COURT:  This is Premier?   11:42:1

9          MR. McFARLAND:  Yes, Your Honor.  The lease is under   11:42:1

10  Premier's name.   11:42:1

11         THE COURT:  All right.   11:42:1

12         MR. McFARLAND:  The space was to hold the "Saturday   11:42:1

13  Night Live" exhibition and also Titanic exhibition.  We   11:42:1

14  continued to analyze our financial situation into 2016,   11:42:2

15  looking at the picture, analyzing it carefully with the hope   11:42:2

16  of financial advisors what could be done, and very recently,   11:42:3

17  Your Honor, as we've advised the Court last week, the company   11:42:3

18  filed a Chapter 11 proceeding in Florida.  The company is   11:42:4

19  incorporated in Florida, as the Court will recall, filing in   11:42:4

20  the Middle District of Florida, Jacksonville.   11:42:5

21         In keeping with that proceeding, I've advised the   11:42:5

22  Court through the supplemental periodic report.   11:43:0

23         THE COURT:  One thing, before you go forward with   11:43:0

24  that, in your February periodic report you also explained   11:43:0

25  that the NASDAQ stock market had delisted Premier on February   11:43:1

JODY A. STEWART, Official Court Reporter

```
 1   10, 2016, and it was because the merger with DK was a change      11:43:1
 2   in control, which then required the post-merger entity to         11:43:2
 3   file a listing application, and Premier did not meet the          11:43:2
 4   minimum required stock price, so the stock was then being         11:43:3
 5   traded through an over-the-counter marketplace called OTCQB?      11:43:3
 6   So is it still in the same situation?                             11:43:4
 7           MR. McFARLAND:  It's my understanding that is             11:43:4
 8   correct, Your Honor.  We have not been listed again.             11:43:5
 9           (Conferring with co-counsel.)                             11:43:5
10           MR. McFARLAND:  I'm advised, Your Honor, it's still      11:43:5
11   an Over-the-Counter Pink Sheets trading, is what the stock's      11:44:0
12   current listing is.                                               11:44:0
13           THE COURT:  All right.  You can go ahead.                 11:44:0
14           MR. McFARLAND:  Thank you, Your Honor.  With the         11:44:1
15   filing of the Chapter 11 petition, Your Honor, it is the          11:44:1
16   company's hope that it can emerge from a Chapter 11 through a      11:44:2
17   reorganization with the ability to pay off its creditors in       11:44:2
18   full, continue to employ the folks who have been at the           11:44:3
19   company, keep the shareholders' equity stakes in the company      11:44:3
20   and also continue to preserve, what we certainly have been        11:44:4
21   doing all along, and continue to preserve and curate the          11:44:4
22   collection, both pursuant to the covenants and conditions and     11:44:4
23   our recognized efforts all along in this matter.                  11:44:5
24           Yesterday, Your Honor, the Court and the Court in         11:44:5
25   Florida, we filed a motion for order seeking Court approval       11:45:0
```

1    of the sale of a limited number of the French artifacts.

2          THE COURT:  My understanding that it's only the

3    French artifacts that are involved in this sale, and those

4    were excepted in the covenants and conditions that protected

5    the artifacts that were before this Court?

6          MR. McFARLAND:  Yes, Your Honor, that is correct.

7    The French artifacts, no question they are part of the

8    estate, the bankruptcy estate.  So we have filed there a

9    motion for seeking the Court's approval for a potential sale

10   of certain of those French artifacts, the idea being,

11   although we didn't come to this motion and decision lightly,

12   but given the company's financial circumstances, a limited

13   sale of certain of the French artifacts, if it were to occur,

14   could provide the revenue necessary for the company to pay

15   off its creditors, including ending its lease obligations in

16   New York City, provide the company working capital going

17   forward, and allow the shareholders to maintain their equity

18   stakes in the company.  All the shareholders would maintain

19   their positions, and we would be able to operate the company

20   profitably, we believe, going forward coming out of the

21   Chapter 11 proceeding.

22         THE COURT:  All right.  Well, I would remind you,

23   Mr. McFarland, and anyone else involved in this bankruptcy,

24   that this Court's order on the covenants and conditions takes

25   precedent.  It was entered a few years ago, and the covenants

1   and conditions specifically exclude the Titanic artifacts --          11:46:4
2   I'm not talking about the French artifact collection -- from          11:46:5
3   the bankruptcy estate of the trustee, and that's your                 11:46:5
4   covenant and conditions Section 7(d).  They also give this            11:46:5
5   Court the right to take all appropriate action to enforce the         11:47:0
6   covenants and conditions and to hold any hearing necessary to         11:47:1
7   determine if any insolvency bond should even be forfeited and         11:47:1
8   any funds applied to protect the Titanic collection.                  11:47:2
9          So I would encourage everyone to go back and read             11:47:2
10  the covenants and conditions that govern the Titanic                  11:47:2
11  artifacts before this Court.  That's in Section 7(d).  So I           11:47:3
12  would encourage everyone to go back and read that.  That is          11:47:4
13  an order that takes precedent for the Titanic artifacts,             11:47:4
14  which are before this Court.                                          11:47:4
15         The Fourth Circuit up to the Supreme Court have made          11:47:5
16  it clear about what the status of being a                            11:47:5
17  salvor-in-possession is.  This Court has made it clear about         11:48:0
18  the ownership of any assets, and the covenants and conditions        11:48:0
19  make it very clear that they are not part of the bankruptcy          11:48:0
20  estate.  So if anybody is beginning to think that, they              11:48:1
21  better dissuade that notion from their paperwork and their           11:48:1
22  minds.                                                               11:48:1
23         MR. McFARLAND:  We appreciate what the Court is               11:48:2
24  saying, Your Honor, and let me say to the Court that                 11:48:2
25  throughout all the proceedings going back since we have been         11:48:2

1  before this Court, the company has always recognized and

2  taken most seriously its obligations to preserve the

3  collection, curate the collection.  The Court will recall the

4  testimony, and that has continued to be done.  Even with the

5  financial difficulties that the company has experienced, we

6  have continued to maintain the collection in A1 condition.

7  We are working with NOAA to set up a mutually convenient time

8  for them to come see the collection again.  We would welcome

9  the Court.  We have asked Your Honor before, I know with your

10 schedule it is difficult, but we would love to have you come

11 to Atlanta and see the collection.

12         THE COURT:  You need to give me some type of notice.

13 I don't know if I can do it, but you would need to give me

14 some type of notice.  You obviously don't need any scheduling

15 pursuant to my schedule, but if you give me notice, and I'm

16 available and determine that it's something that should be

17 done in the case, I will see to your request.  But you would

18 need to let me know well in advance.

19         MR. McFARLAND:  Very good, Your Honor.  Be happy to

20 set that up.  In addition to taking care of the preservation

21 and curation of the artifacts, we have continued to fund the

22 reserve account.

23         THE COURT:  That was my next question.

24         MR. McFARLAND:  Well, I thought it might be.  I

25 wanted to fully inform the Court.  We have continued to fund

1    the reserve account.  There is at this point in time                  11:49:4

2    approximately between $450 and $500,000 in it, and that is            11:49:5

3    in, if I could use the term that was used, and I guess it was         11:49:5

4    the last presidential election, we consider it a lockbox,             11:49:5

5    Your Honor.  It is not part of the estate, and it is secure,          11:50:0

6    and it will continue to be funded.                                    11:50:0

7         THE COURT:  The reason I was asking, the February                11:50:1

8    23rd report indicated that you had continued to fund it, and          11:50:1

9    at that time it totaled about $433,000, but in the most               11:50:1

10   recent report, the June 15th, 2016, there was no mention of           11:50:2

11   the reserve account and its current total.  So I would               11:50:2

12   appreciate if you would, in this supplemental filing, advise          11:50:3

13   the Court, and obviously copy Mr. Porter and the United               11:50:3

14   States on anything that you file with the Court, stating the          11:50:4

15   account balance.  You can either do it June 15th or July 1,           11:50:4

16   whatever date you choose, but I need some current date to             11:50:5

17   operate from since February.                                          11:50:5

18        MR. McFARLAND:  Certainly, Your Honor.  I don't have             11:51:0

19   the exact figure but it is between 450 and 500.  So it's              11:51:0

20   $500,000, so it has increased since the February report, and         11:51:0

21   we apologize for the oversight in the June report for not             11:51:1

22   including the figure but we will get that.                            11:51:1

23        Your Honor mentioned informing the Government and                11:51:1

24   Mr. Porter, and we have done that throughout this, Your               11:51:2

25   Honor.                                                                11:51:2

15

```
1          THE COURT:  I know.  I'm not saying you haven't.    11:51:2
2    I'm just reinforcing it for the record.                  11:51:2
3          MR. McFARLAND:  Right.  But I wanted to advise the  11:51:3
4    Court that for the past eight months, Your Honor, give or 11:51:3
5    take -- I could be off a little bit -- but we have been   11:51:3
6    meeting with representatives of the Government and NOAA to 11:51:3
7    discuss any concerns they might have to apprise them of the 11:51:4
8    company status to work out.  The Court may recall the mapping 11:51:4
9    project was discussed.  We've talked with them about that,  11:51:5
10   about giving them certain access to the collection online so 11:51:5
11   that they can see for themselves the artifacts and the    11:52:0
12   conditions and the reports on them, and then also, as I said, 11:52:0
13   to have them come down and actually see the artifacts in  11:52:0
14   person.                                                    11:52:1
15          So we have been working hand in hand with NOAA.  It 11:52:1
16   isn't to say we agree on everything a hundred percent all the 11:52:1
17   time, but they have been productive meetings, and we       11:52:1
18   certainly will continue those going forward even after the 11:52:2
19   filing of the Chapter 11.                                  11:52:2
20          As I mentioned, Your Honor, we've had the management 11:52:2
21   change with Mr. Bao as the chairman and CEO now, and our   11:52:3
22   goal, Your Honor, is to come out of the Chapter 11 proceeding 11:52:3
23   in a financially sound condition that we think will not only 11:52:4
24   address the needs of our creditors, shareholders and       11:52:4
25   employees, but also, frankly, provide further protection for 11:52:5
```

JODY A. STEWART, Official Court Reporter

1    the collection.                                              11:52:5

2          Our goal is to always maintain and preserve the        11:52:5

3    collection, and with the revenue that may be gained from the  11:52:5

4    limited sale from the French artifacts, we think that can be   11:53:0

5    done and to continue to preserve and curate the collection in  11:53:0

6    a stronger position.                                          11:53:1

7          THE COURT:  All right.  Anything else that you would    11:53:1

8    have to add, Mr. Wainger?                                     11:53:1

9          MR. WAINGER:  No, Judge.  Nice to see you again.        11:53:1

10         THE COURT:  Let me see if Mr. Porter has anything       11:53:2

11   that he wants to add today.                                   11:53:2

12         MR. PORTER:  Good morning, Your Honor.                  11:53:2

13         THE COURT:  Good morning.                               11:53:2

14         MR. PORTER:  Nothing really.  I would reiterate what    11:53:2

15   Mr. McFarland has said.  There has been communications about  11:53:3

16   continuing NOAA's oversight role.  There is discussions to    11:53:3

17   set up the site visit.  Some information was provided as of   11:53:3

18   yesterday with some of the information about the artifacts,    11:53:4

19   and I confirmed with Mr. Wainger just this morning that a     11:53:4

20   conversation we had about a week or so ago to get further     11:53:4

21   information is still on board, and so in terms of NOAA's       11:53:5

22   oversight role, I think we are on the right track.  There is   11:53:5

23   information we still need to get, but I think we're on the     11:54:0

24   right track with that.                                        11:54:0

25         THE COURT:  All right.  There are a number of           11:54:0

1    individuals in the courtroom, and I don't know if you would            11:54:1

2    like to introduce them, Mr. McFarland, or you'd prefer that           11:54:1

3    they introduce themselves?                                            11:54:1

4              MR. McFARLAND:  I'm happy to introduce them, Your           11:54:2

5    Honor.  I apologize.  I should have done that at the outset.          11:54:2

6              THE COURT:  And, what their role is in this.                11:54:2

7              MR. McFARLAND:  Absolutely, Your Honor.  Let me say         11:54:2

8    that I can introduce the individuals on my left side.  I'm            11:54:2

9    going to leave to Mr. Porter the individuals to my right.             11:54:3

10             To my immediate left, Billy Poynter, Your Honor, who        11:54:3

11   is with Kaleo Legal, Mr. Wainger's partner, and assists with          11:54:3

12   legal issues for Premier.  Next, Michael Little, who is the           11:54:4

13   Chief Financial Officer for the company, Your Honor.                  11:54:4

14             To Mike's left is Alex Klingelhoffer, our Vice             11:54:5

15   President of collections, who is in charge of curating and           11:54:5

16   preserving the collection.  Then Tina Bingham, who is Billy          11:54:5

17   and Brian Wainger's partner, Your Honor, at Kaleo Legal and          11:55:0

18   corporate counsel for Premier.                                        11:55:0

19             THE COURT:  All right.  Thank you.  Mr. Porter, if          11:55:0

20   you would like to introduce the individuals or have them             11:55:0

21   introduce themselves and counsel at the table.                       11:55:1

22             MR. PORTER:  I'll be happy to introduce them.  This        11:55:1

23   is Jack Rolleri.  She is counsel with NOAA.  She has been my         11:55:1

24   primary contact since I became involved in the case about           11:55:2

25   three weeks ago or a month ago.                                       11:55:2

```
 1              THE COURT:  Nice to have you, Ms. Rolleri.        11:55:2

 2              MR. PORTER:  Ole Varmer, who I believe has appeared   11:55:3

 3    before you before.  He's also counsel with NOAA.  Next to him   11:55:3

 4    is Jim Delgado.  He is the director of NOAA's Maritime      11:55:3

 5    Heritage Program.  Next to him, I believe you know         11:55:4

 6    Mr. Stefan.  He has been assisting me when the bankruptcy was  11:55:4

 7    filed to give me some advice on that.                      11:55:4

 8              Next to him is Russ Craig, senior counsel,        11:55:4

 9    Department of Commerce.  Next to him, Alicia Rector is an    11:55:5

10    intern with NOAA this summer working with Ms. Rolleri.     11:55:5

11    Brittney McGail is an intern in our office, a third-year    11:56:0

12    practice at William & Mary in our office this summer.       11:56:0

13              Next to her is Mike Cannon, also with the Department  11:56:3

14    of Commerce counsel.  In the last row is Dave Alberg, who is   11:56:3

15    the superintendent of the Monitor National Maritime         11:56:4

16    Sanctuary.                                                 11:56:4

17              THE COURT:  Nice to have all of you.             11:56:4

18              MR. PORTER:  Thank you, Your Honor.              11:56:4

19              THE COURT:  Before we adjourn today, I do want to   11:56:4

20    put on the record the Court's position in regard to any     11:56:5

21    bankruptcy that has been filed by R.M.S.T., or Premier, and I   11:56:5

22    will put that on the record so that there is no question    11:57:0

23    where the Court stands in this matter.                     11:57:0

24              R.M.S.T. filed a Suggestion of Bankruptcy which,   11:57:1

25    quote, "Suggests that this action has been stayed by the    11:57:1
```

1     operation of 11 U.S.C. Section 362," and that's in their          11:57:1

2     Suggestion of Bankruptcy at 1.  However, that particular          11:57:2

3     provision protects debtors, as I indicated earlier, from          11:57:3

4     judgments, collection activities, foreclosures or                 11:57:3

5     repossessions of property on debts or claims arising before       11:57:4

6     the bankruptcy petition was filed.                                11:57:4

7              In other words, it protects debtors who are or who       11:57:5

8     could be defendants in actions.  Section 362 provides an          11:57:5

9     automatic stay that, "Stops actions against the debtor, not       11:58:0

10    actions originally brought by the debtor, the trustee or the      11:58:0

11    debtor-in-possession."  I selected that case because the          11:58:1

12    quote is right on point.  It is from *In re KTMA Acquisition*      11:58:2

13    *Corp.*  It's 153 B.R. 238 at 260.  It's an opinion in 1993 out   11:58:2

14    of the District of Minnesota, which is still good law             11:58:3

15    throughout the bankruptcy community.                              11:58:3

16             I would also invite you to see *Overnite Transport*      11:58:3

17    *Company v. Ryder/P-I-E Nationwide, Inc.*, which is at 137 B.R.   11:58:4

18    766, 768.  That's out of the Eastern District of Missouri in      11:58:4

19    1992 stating that the Eighth Circuit had not specifically         11:58:5

20    addressed the issue at that time but other circuits in all        11:59:0

21    the district courts had concluded that the automatic stay --      11:59:0

22    there is a long line of cases -- does not apply to actions        11:59:0

23    originally commenced by the bankrupt party.  So that is           11:59:1

24    important.                                                        11:59:1

25             Moreover, a number of other district courts             11:59:1

1    traditionally retain jurisdiction to determine the
2    applicability of the automatic stay of a bankruptcy court to
3    litigation pending before them.  So even at a threshold
4    level, this Court would have jurisdiction to even determine
5    whether the automatic stay had any applicability, and based
6    upon the law that I have reviewed, it would not have
7    applicability, and it's even more strengthened by, rather
8    than the general rules that I've just stated, by the
9    covenants and conditions, which I will go through in a
10   moment.
11        You have the case out of the Fifth Circuit, *Picco v.*
12   *Global Marine Drilling Company*, 900 F.2d 846 at 850, and
13   based upon the review of the law that I've read, I would
14   conclude that the automatic stay does not apply to this
15   proceeding because this is a type of proceeding that
16   basically was commenced by R.M.S.T. many, many years ago, to
17   be salvor-in-possession, and I think that R.M.S.T. recognizes
18   this, too, whether they want to openly admit it, because they
19   do state that they will continue to work with NOAA under the
20   framework set in the covenants and conditions.
21        The covenants and conditions are very specific in
22   how they relate to any bankruptcy proceeding because,
23   obviously, it was certainly on NOAA's mind and concern, and
24   certainly on the Court's, when you start down the road and
25   you don't want anyone making an end run around Court rulings

1    by using other proceedings and mechanisms.

2            The covenants and conditions, I'll just review those

3    very briefly.  I'm not going to sit here and read all of

4    those to you, but the covenants and conditions contain

5    provisions that protect the Titanic artifact collection in

6    the event of the trustee's bankruptcy, and you can go back

7    and look at those, but in particular I'm reading from

8    covenant and condition VIII, Subsection B.  This is the

9    quote:  "To the extent allowed by federal law, the beneficial

10   interest to the Titanic artifact collection shall not be

11   considered as part of the bankruptcy estate of the trustee in

12   the event of bankruptcy, insolvency, dissolution, winding up

13   or similar event.  Further, all measures taken by a trustee,

14   debtor-in-possession, or similar agent of the trustee," are

15   subject to review by this Court, meaning this United States

16   District Court for the Eastern District of Virginia.

17           That is, "To protect the unity and integrity of the

18   Titanic artifacts."  The covenants and conditions then

19   provide specific procedures in the event of the trustee's

20   bankruptcy.  They are found in Subsection 7(d) in the

21   covenants and conditions.  They are, number one, this Court

22   may take all appropriate action within its jurisdiction to

23   enforce the covenants and conditions.  This Court may request

24   information from the trustee and/or conduct a hearing to

25   ascertain whether the trustee's insolvency bond would be

```
1    forfeited and recommend the modalities under which the funds          12:03:2
2    will be applied to protect the Titanic collections.  NOAA has         12:03:2
3    the right to make submissions in these proceedings and               12:03:3
4    represent the public interest.  If another bankruptcy court          12:03:3
5    attempts to exercise jurisdiction over the Titanic artifact          12:03:3
6    collection, this district court, or that district court in           12:03:4
7    which the bankruptcy case is pending, may have the reference         12:03:4
8    withdrawn under 28 United States Code Section 157 or transfer        12:03:5
9    venue to this Court under 28 United States Code Section 1412.        12:03:5
10   That's in the covenants and conditions at Section 7(d).              12:04:0
11          So I would remind everyone of all of those covenants          12:04:0
12   and conditions upon which this Court has issued an order, and        12:04:1
13   any violation of that order would be subject to appropriate          12:04:1
14   action from this Court, and everyone, I think, knows what            12:04:2
15   that potential action would be.                                      12:04:2
16          As I understand it, at this juncture Mr. McFarland             12:04:3
17   can just clarify for the Court on the record that the only           12:04:3
18   artifacts that are looking to be liquidated are those which          12:04:3
19   have been referred to as the French artifacts which are not          12:04:4
20   subject to the covenants and conditions?                             12:04:4
21          MR. McFARLAND:  That is correct, Your Honor.  That             12:04:4
22   is correct.  As the Court noted in 7(a) through (c) that was         12:04:5
23   read there, those are the conditions applying to the stack,          12:04:5
24   yes.                                                                 12:05:0
25          THE COURT:  The only other matter I want to state             12:05:0
```

| | | |
|---|---|---|
| 1 | for the record, it is the Court's understanding, through all | 12:05:0 |
| 2 | of these reports, that Ms. Klingelhoffer, who has managed and | 12:05:0 |
| 3 | cared for the collection and has testified before the Court, | 12:05:1 |
| 4 | she's been managing it since October of 2008, continues to | 12:05:1 |
| 5 | serve as the caretaker of the artifacts, and that you | 12:05:2 |
| 6 | maintain the same standards of conservation, curation, | 12:05:2 |
| 7 | collection, and management that you have since she joined | 12:05:3 |
| 8 | R.M.S.T. because she's the one I think who pushed things in | 12:05:3 |
| 9 | the proper direction, as I recall. | 12:05:4 |
| 10 | MR. McFARLAND:  She did, Your Honor, and we have | 12:05:4 |
| 11 | continued to do that.  That is one of the things I wanted to | 12:05:4 |
| 12 | assure the Court, that that has continued throughout, since | 12:05:4 |
| 13 | her joining us in 2008, and even given the company's | 12:05:5 |
| 14 | financial circumstances, we have always made sure that we | 12:05:5 |
| 15 | have maintained and preserved the collection and followed the | 12:05:5 |
| 16 | highest standards. | 12:06:0 |
| 17 | THE COURT:  All right.  The only thing left, then, | 12:06:0 |
| 18 | if you could file with the Court by July 15th the corporate | 12:06:0 |
| 19 | structure and any changes and also the status of the reserve | 12:06:1 |
| 20 | fund.  If you want to file it earlier, you can.  Just be | 12:06:1 |
| 21 | sure, Mr. Porter, as I said, gets a copy.  Then also I'm | 12:06:1 |
| 22 | going to direct you to continue to file the periodic reports. | 12:06:2 |
| 23 | I think at this juncture you need to increase that.  You're | 12:06:4 |
| 24 | filing them what, every three months now? | 12:06:5 |
| 25 | MR. McFARLAND:  Yes, Your Honor.  They have been | 12:06:5 |

```
1    quarterly.                                                    12:06:5

2         THE COURT:  You have been filing them quarterly.  I      12:06:5

3    think that we are going to have to increase that to six.  So  12:06:5

4    your last one was June, so your next one will be due by        12:07:0

5    August 15th.                                                   12:07:0

6         MR. McFARLAND:  Absolutely, Your Honor.                   12:07:0

7         THE COURT:  In the meantime, you can always              12:07:1

8    obviously file a supplemental report if something else is     12:07:1

9    going on.                                                      12:07:1

10        MR. McFARLAND:  Exactly, Your Honor.  I was going to     12:07:1

11   say more information, I know, is better than less, and in      12:07:2

12   that sense we will also keep the Court advised of significant  12:07:2

13   proceedings in the Middle District of Florida action, the     12:07:2

14   bankruptcy Chapter 11 action.                                  12:07:2

15        THE COURT:  Please do, and in the meantime at            12:07:3

16   minimum file the reports now every two months, obviously with  12:07:3

17   a copy to Mr. Porter, and if at any point any party feels      12:07:3

18   they need a hearing before this Court, just please notify the  12:07:4

19   Court, and that includes you also, Mr. Porter.                 12:07:4

20        MR. PORTER:  Yes, Your Honor.                             12:07:4

21        THE COURT:  If NOAA feels that they need some advice     12:07:5

22   or some guidance from the Court or something's occurring that  12:07:5

23   needs to come before the Court, so please advise if you need   12:07:5

24   any further hearing.  Otherwise, I will continue as I have,    12:08:0

25   reading your periodic reports and periodically having you      12:08:0
```

1    come to court.  I would note that this hearing was scheduled

2    before your bankruptcy.

3              MR. McFARLAND:  Yes.

4              THE COURT:  It was just to catch-up.  I felt like we

5    hadn't had a catch-up on the reports.

6              MR. PORTER:  Your Honor, one point.  In their

7    periodic report, the most recent one, they indicated that

8    they would be providing courtesy copies of the filings in the

9    bankruptcy court to this court.  I don't know if the Court

10   needs all of the filings.  I would appreciate, though, if

11   they would be providing us all the filings.

12             THE COURT:  I would like all of the filings.  You

13   don't have to do it necessarily in the report but I do want

14   copies of all of the filings.

15             MR. PORTER:  That would be the same day, counsel.

16             That is fine.  Thank you, Your Honor.

17             THE COURT:  They can do the filings because then I

18   can also follow it on the docket sheet, and so forth.

19             All right.  Is there anything else we need to take

20   up today?

21             MR. McFARLAND:  Not from Titanic standpoint, Your

22   Honor.

23             MR. PORTER:  No, Your Honor.

24             THE COURT:  All right.  Then the Court stands in

25   recess until 2:00.

1           (Hearing adjourned at 12:09 p.m.)                    12:09:1

2                      CERTIFICATION

3

4      I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7

8         X_____/s/_____x

9                   Jody A. Stewart

10             X_____ 6-21-2016 _____x

11                       Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JODY A. STEWART, Official Court Reporter