## BIDDING PROCEDURES[1]

## I.     OVERVIEW

On June 14, 2016 (the **"Petition Date"**), Premier Exhibitions, Inc., a Florida corporation (**"Premier"**); Arts and Exhibitions International, LLC, a Florida limited liability company (**"A&E"**); Dinosaurs Unearthed Corp., a Delaware Corporation (**"DU Corp."**); Premier Exhibitions International, LLC, a Delaware limited liability company (**"PEI"**); Premier Exhibition Management LLC, a Florida limited liability company (**"PEM"**); Premier Exhibitions NYC, Inc., a Nevada Corporation (**"Premier NYC"**); Premier Merchandising, LLC, a Delaware limited liability company (**"Premier Merch"**); and RMS Titanic, Inc., a Florida corporation (**"RMST"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 24, 2016, both an Official Committee of Unsecured Creditors (the **"Creditors Committee"**) and an Official Committee of Equity Security Holders (the **"Equity Committee,"** and together with the Creditors Committee, the **"Committees"**) were appointed.

On July [●], 2018, the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) entered an order (the **"Bidding Procedures Order"**), which, among other things, authorized the Debtors to (a) solicit bids and approved these bidding procedures (the **"Bidding Procedures"**) for a sale of the Transferred Assets (as defined in the Asset Purchase Agreement), on terms substantially similar to, and in no event less favorable to the Debtors than, the terms set forth in the Asset Purchase Agreement and as set forth in these Bidding Procedures, and (b) select Premier Acquisition Holdings LLC as the stalking horse bidder in connection with such sale (the **"Stalking Horse Purchaser"**).

On the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Transferred Assets will be sold free and clear of all liens, claims and encumbrances (except that to the extent that any artifacts owned by RMST are subject to the jurisdiction of the United States District Court for the Eastern District of Virginia, in the civil action styled *R.M.S. Titanic, Inc., Successor in Interest to Titanic Ventures Limited Partnership v. The Wrecked and Abandoned Vessel, Etc.*, Case No. 2:93-cv-902 (the **"Admiralty Court"**) and to the Revised Covenants and Conditions (the **"Covenants and Conditions"**) set forth in Exhibit A to the August 12, 2010 Opinion of the Admiralty Court, such artifacts shall continue to be subject to the Covenants and Conditions and to the jurisdiction of the Admiralty Court) as permitted by the Bankruptcy Code pursuant to an order approving a sale under Section 363 of the Bankruptcy Code (the **"Sale Order"**). **All references to the Debtors herein shall refer either (a) to the**

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures or the Asset Purchase Agreement dated as of June [●], 2018 by and among (i) Premier, (ii) A&E, (iii) PEM, (iv) Premier NYC, (v) Premier Merch, (vi) PEI, (vii) DU Corp.) (collectively with Premier, A&E, PEM, Premier NYC, Premier Merch and PEI, the **"Debtor Sellers"**); (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia (**"DinoKing"**), (ix) RMST, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified or supplemented, the **"Asset Purchase Agreement"**), as applicable.

EXHIBIT
D

Debtors including DinoKing, in the event that DinoKing becomes a Debtor, or (b) the Debtors and DinoKing, as an indirectly wholly-owned non-debtor subsidiary of Premier, in the event that DinoKing does not become a Debtor.

## II.    SUMMARY OF IMPORTANT DATES

| | |
|---|---|
| August 8, 2018, at 4:00 p.m. | Bid Deadline |
| August 8, 2018, at 4:00 p.m. | Deadline to Object to Sale<br><br>Deadline to Object to Assumption and Assignment of Transferred Contracts to Stalking Horse Purchaser, Including Proposed Cure Amounts |
| August 10, 2018, at 4:00 p.m. | Deadline for Debtors to Designate and Publish Qualified Bidders |
| August 13, 2018, at 10:00 a.m. | Auction, if any<br><br>Location:<br><br>Troutman Sanders LLP<br>600 Peachtree Street NE, Suite 3000<br>Atlanta, GA 30308 |
| August [13], 2018, at [10:00 a.m.] | Sale Hearing, if no Auction<br><br>Location:<br><br>United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division<br>Bryan Simpson United States Courthouse<br>300 North Hogan Street, Courtroom 4A<br>Jacksonville, Florida 32202 |
| August [15], 2018, at [10:00 a.m.] | Sale Hearing, if Auction occurs<br><br>Location:<br><br>United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division<br>Bryan Simpson United States Courthouse<br>300 North Hogan Street, Courtroom 4A<br>Jacksonville, Florida 32202 |
| 4:00 p.m., one day before Sale Hearing | Deadline to File and Serve Responses to Any Sale Objection |

## III.   MARKETING PROCESS

### A.   Contact Parties.

The Debtors, in consultation with their financial advisor GlassRatner Advisory & Capital Group LLC ("**GlassRatner**"), have developed a list of parties whom the Debtors believe may potentially be interested in consummating, and whom the Debtors reasonably believe would have the financial resources to consummate, a competing transaction to that of the Stalking Horse Purchaser (a "**Competing Transaction**") (each, individually, a "**Contact Party**," and collectively, the "**Contact Parties**"). Following approval of the Bidding Procedures and until the Bid Deadline (as defined below), the Debtors intend to contact the Contact Parties to explore their interest and may initiate contact with, or solicit or encourage submission of any Qualified Bids by any person or otherwise facilitate any effort or attempt to make a Qualified Bid. Prior to the approval of the Bidding Procedures, third parties may continue to conduct due diligence on the Sellers and the Transferred Assets for purposes of being competing bidders for the Transferred Assets following the execution of confidentiality agreements with the Debtors. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an information package containing:

1.   The Bidding Procedures Order;

2.   The Asset Purchase Agreement;

3.   These Bidding Procedures; and

4.   A confidentiality agreement that is substantially similar to the confidentiality agreements executed by the Debtors with the Stalking Horse Purchaser (unless the Contact Party has already entered into and remains bound by a confidentiality agreement with the Debtors).

### B.   Access to Diligence Materials.

To participate in the bidding process and to receive access to then current and reasonably available due diligence materials (the "**Diligence Materials**"), a party must submit an executed confidentiality agreement in accordance with Section III.A.4. above, along with evidence satisfactory to the Debtors, demonstrating the party's financial capability to consummate a Competing Transaction (together, an "**Expression of Interest**"):  to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) the Committees' retained financial advisor, Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com). **Potential bidders are instructed to contact only the retained financial advisors to the Debtors and not any other parties, including the Debtors or any Committee members.**

A party who submits an Expression of Interest and qualifies, in the Debtors' sole discretion, for access to Diligence Materials shall be a **"Preliminary Interested Purchaser"** and shall be provided prompt access to the Diligence Materials in no event later than one business day following receipt of an Expression of Interest.

## IV.   AUCTION QUALIFICATION PROCESS

To be eligible to participate in the Auction (as defined herein), each offer, solicitation or proposal (each, a **"Bid"**), and each party submitting a Bid (each, a **"Bidder"**), must be determined by the Debtors to satisfy each of the following conditions:

A.   <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount of 10% of the total consideration provided for in its Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the **"Good Faith Deposit"**). The Debtors will provide wire instructions for the Good Faith Deposit upon written request of any Preliminary Interested Purchaser made to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com).

B.   <u>Same or Better Terms</u>.

  1.   **Each Bid must be on terms that are substantially similar, the same or better for the Debtors than the terms of the Asset Purchase Agreement.** At a minimum, each Bid must:

  (a)   Propose a Competing Transaction for all or substantially all of the Transferred Assets;

  (b)   Include an executed asset purchase agreement by the Bidder (a **"Competing Asset Purchase Agreement"**) **in substantially the same form and on substantially the same material terms as the Asset Purchase Agreement, excepting the Bid Protections applicable only to the Stalking Horse Purchaser (including without limitation the Break-Up Fee and Expense Reimbursement);**

  (c)   Include a redline comparison marked to show all changes to the Asset Purchase Agreement;

  (d)   Include a signed statement that the Bid set forth in the Competing Asset Purchase Agreement is irrevocable until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein);

4

      (e)      Include a signed statement that the Bidder consents to be bound by and to the Covenants and Conditions;

      (f)      Propose a purchase price equal to or greater than \$19,000,000.00.[2] in cash (the **"Minimum Cash Amount"**);

      (g)      Obligate the Bidder to pay all Cure Amounts; and

      (h)      Not contain any break-up fee, expense reimbursement, or similar type of payment in favor of the Bidder.

2.      A Bid will not be considered a Qualified Bid (as defined herein) if such Bid:

      (a)      Contains any material alterations to the Asset Purchase Agreement not contemplated under Section IV.B.1.(b) above;

      (b)      Is not received by the Bid Deadline (as defined herein) in accordance with these Bidding Procedures; or

      (c)      Does not contain evidence of the Bidder's financial ability to perform in accordance with Section IV.D. of these Bidding Procedures.

C.      <u>Corporate Authority</u>. Each Bid must include written evidence acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; *provided, however*, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

D.      <u>Proof of Financial Ability to Perform</u>. Each Bid must include written evidence satisfactory to the Debtors to demonstrate that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, at a minimum, the following:

1.      Contact names and telephone numbers for verification of financing sources;

2.      Evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of at least 125% of the Minimum Cash Amount of such Bid, or the posting of an irrevocable letter of credit from a

---

[2] All amounts herein are expressed in United States dollars.

recognized banking institution issued in favor of the Debtors in the amount of at least 125% of the Minimum Cash Amount of such Bid;

3.    The Bidder's current audited financial statements, <u>provided, however</u>, that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder must include current audited financial statements for such Bidder's equity holders, and evidence that such equity holders have guaranteed the obligations of such Bidder in connection with the Competing Transaction; and

4.    Any other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction.

E.    <u>No Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

F.    <u>Irrevocable</u>. A Bid must be irrevocable through the time of the Auction, <u>provided, however</u>, that if such Bid is accepted as the Prevailing Bid or the Backup Bid (each as defined herein), such Bid shall remain irrevocable thereafter, until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein).

G.    <u>Bid Deadline</u>. All Bids must be submitted so that they are actually received by the following parties on or before **August 8, 2018 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**: (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); (v) the Debtors' retained financial advisor, GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade (mglade@glassratner.com); and (vi) the Committees' retained financial advisor: Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams (BWilliams@lincolninternational.com).

H.   Qualified Bids. A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of Sections IV.A-G of these Bidding Procedures shall constitute a **"Qualified Bid,"** and such Bidder shall constitute a **"Qualified Bidder."** For purposes of the Auction, the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is a Qualified Bid and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that other Bidders must satisfy to be a Qualified Bidder. The Stalking Horse Purchaser shall not be required to take any further action in order to participate in the Auction, or if the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is the Prevailing Bid or the Backup Bid, to be named the Prevailing Bidder or the Backup Bidder (each as defined herein), as applicable. Within one business day after the Bid Deadline, the Debtors shall inform counsel to the Committees and the Stalking Horse Purchaser whether the Debtors will consider any Bids received to be Qualified Bids.

I.   Disclosure of Qualified Bids. If the Debtors receive one or more Qualified Bids (other than the Qualified Bid of the Stalking Horse Purchaser), then not later than two business days after the Bid Deadline (the **"Competing Bid Disclosure Deadline"**), the Debtors shall file a notice with the Bankruptcy Court disclosing the identity and aggregate consideration offered by such Qualified Bid(s).

J.   Cancellation of Auction If No Competing Qualified Bids Received. If the Debtors do not receive any other Qualified Bid(s) on or before the Bid Deadline, then on or before the Bid Disclosure Deadline the Debtors shall file a notice with the Bankruptcy Court cancelling the Auction, and will proceed to seek approval of the sale of the Transferred Assets to the Stalking Horse Purchaser under the Asset Purchase Agreement at the Sale Hearing.

## V.   AUCTION

A.   Determination of Highest and Best Qualified Bid.

1.   If one or more Qualified Bids (other than the Asset Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the **"Auction"**) to determine the highest and best Qualified Bid. The determination of the highest and best Qualified Bid shall take into account the following (the **"Bid Assessment Criteria"**):

(a)   the total consideration to be received by the Debtors;

(b)   the likelihood that the Admiralty Court will approve the Bidder as purchaser of the Transferred Assets; and

(c)   the likelihood of the Bidder's ability to timely consummate a Competing Transaction.

2. The highest and best Qualified Bid must include cash in an amount not less than the Minimum Cash Amount.

B. <u>Conduct of the Auction</u>.

1. The Auction, if any, shall take place on **August 13, 2018 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Troutman Sanders, LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, Georgia 30308, or such other place and time as the Debtors shall notify the Auction Attendees (as defined herein).

2. Only Qualified Bidders may participate in the Auction.

3. The Debtors and their professionals shall direct and preside over the Auction.

4. The Auction will be transcribed by a certified court reporter.

5. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the **"Auction Baseline Bid"**). The Stalking Horse Purchaser shall have the right (but not the obligation) to match the highest and best Qualified Bid received prior to the Bid Deadline, and thus become the Auction Baseline Bid.

6. At the start of the Auction, each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Transferred Assets, and at the Debtors' request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

7. Unless otherwise agreed by the Debtors, only the Debtors, the Committees, the Stalking Horse Purchaser, and any other Qualified Bidder, along with each of their respective professionals (collectively, the **"Auction Attendees"**), may attend the Auction in person, and only the Stalking Horse Purchaser and other Qualified Bidders will be entitled to make any Bids at the Auction.

8. Terms of Overbids.

An **"Overbid"** is any bid made at the Auction after the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid at the Auction, a Bidder must comply with the following conditions:

(a) The initial Overbid must be for a purchase price equal to or greater than $19,000,000.00 (the **"Initial Overbid"**).

(b)     Any Bid after the Initial Overbid must be made in increments of not less than $500,000.00.

(c)     The Stalking Horse Purchaser shall be entitled to credit bid the Bid Protections as a portion of any Overbid (including an Initial Overbid).

(d)     All Overbids must at all times continue to comply with the conditions for a Qualified Bid set forth in Sections IV.A-G of these Bidding Procedures.

(e)     All Overbids must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid. At the Debtors' request (in consultation with the Committees, but in the Debtors' sole and absolute discretion) at any point during the Auction, a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid (including performance of obligations under any Assumed Executory Contracts).

9.     Announcing Overbids.

The Debtors shall announce at the Auction (a) the material terms of each Overbid that shall stand as the basis for the next Overbid; (b) the basis for calculating the total consideration offered in each such Overbid, and (c) the resulting benefit to the Debtors' estates, based on the Bid Assessment Criteria.

C.     Conclusion of Auction and Determination of Prevailing Bidder.

The Auction will continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, upon consideration of the Bid Assessment Criteria and after consultation with the Committees, is the highest and best Qualified Bid at the Auction (the **"Prevailing Bid"** and the Bidder submitting such Prevailing Bid, the **"Prevailing Bidder"**). The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit a further Overbid to the last Overbid. Once the Debtors have designated the Prevailing Bidder, the Auction will be concluded. The Debtors will not consider any Bids submitted after the conclusion of the Auction.

D.     Backup Bidder.

1.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or best Qualified Bid after the Bid made by the Prevailing Bidder at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, will be designated as a backup bidder (the **"Backup Bidder"**).

The Backup Bidder is required to keep its final Overbid (or, if the Backup Bidder did not submit any Overbids, then its initial Bid) (the "**Backup Bid**") open and irrevocable until the earlier of (i) 4:00 p.m. (prevailing Eastern time) on the date that is 30 days after the Closing Date provided for in the Sale Order approving the Prevailing Bid (the "**Outside Backup Date**"), or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder or with the Backup Bidder.

2.  Following the Sale Hearing, if the Prevailing Bidder fails to close due to a breach or failure to perform on the part of such Prevailing Bidder, the Debtors may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtors will be authorized, but not required, to consummate a transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Prevailing Bidder's Good Faith Deposit shall be forfeited to the Debtors.

E.  <u>Consent to Jurisdiction as Condition to Bidding; Waiver of Jury Trial Rights.</u>

**BY SUBMITTING A BID, THE STALKING HORSE PURCHASER AND ALL OTHER QUALIFIED BIDDERS AT THE AUCTION ARE SUBMITTING TO THE CORE JURISDICTION OF THE BANKRUPTCY COURT, AND ARE WAIVING ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THESE BIDDING PROCEDURES, THE ASSET PURCHASE AGREEMENT, A COMPETING ASSET PURCHASE AGREEMENT, THE AUCTION OR THE CONSTRUCTION AND ENFORCEMENT OF ANY DOCUMENTS DELIVERED IN CONNECTION WITH A BID.**

## VI.  SALE HEARING

The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") on either (a) if no Auction occurs, **[August 13, 2018 at 10:00 a.m.]** (**prevailing Eastern Time**), or (b) if an Auction occurs, **[August 15, 2018 at 10:00 a.m.]** (**prevailing Eastern Time**). At the Sale Hearing, the Debtors will seek approval of the transactions contemplated by the Asset Purchase Agreement or Competing Asset Purchase Agreement, as applicable, with the Prevailing Bidder. Objections, if any, to the sale of the Transferred Assets to the Prevailing Bidder and the transactions contemplated therewith (a "**Sale Objection**") must be in writing and filed with the Bankruptcy Court by **August 8, 2018 at 4:00 p.m.** (the "**Sale Objection Deadline**"). Any Sale Objection must also be served, so that it is actually received by the Sale Objection Deadline, on (a) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (.harris.winsberg@troutman.com.) and Matthew R. Brooks (matthew.brooks@troutman.com); (b) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (.jchubak@storchamini.com.); (c) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (.pgurfein@LGBFirm.com.); (d) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (.grossmansm@gtlaw.com.) and Bracewell LLP, 1251 Avenue of the Americas,

49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com.); and (e) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (.Miriam.G.Suarez@usdoj.gov.). Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtor's determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections must be filed and served by the Sale Objection Deadline, or else will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. one day before the Sale Hearing.

## VII.   RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts established and maintained by a reputable financial institution acceptable to the Debtors, but shall not become property of the Debtors' bankruptcy estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder other than the Prevailing Bidder or the Backup Bidder shall be returned to such Qualified Bidder not later than three business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Prevailing Bidder timely closes, its Good Faith Deposit shall be credited to its purchase price.

# # #

FTL 111755549v10