IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**R.M.S. TITANIC, INC.,**
successor-in-interest to
Titanic Ventures, limited partnership,
      Plaintiff,

v.                                          Civil Action No. 2:93cv902

**THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43/ 32' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC**
<u>in rem</u>,
      Defendant.

**UNITED STATES' RESPONSE TO RMST'S JUNE 29, 2018
<u>MOTION TO APPROVE ASSET PURCHASE AGREEMENT</u>**

    The United States, as *amicus*, and on behalf of its National Oceanic and Atmospheric Administration ("NOAA"), submits the following pursuant to Section II.K and V of the Covenants and Conditions ("C&Cs").

    I.    **RMST's JUNE 29, 2018, MOTION TO APPROVE ASSET PURCHASE AGREEMENT.**

    On June 29, 2018, RMST filed in this Court its *Plaintiffs' Motion to Approve Asset Purchase Agreement and Authorize the Sale of 100% of RMST's Stock to Premier Acquisition Holdings LLC or Other Qualified Purchaser as Approved by the Bankruptcy Court* ("EDVA Sale Motion").[1] ECF No. 447. As relevant here, RMST seeks this Court's approval for transfer of 100% of the stock of RMST to Premier Exhibitions, Inc., identified as the "Stalking Horse

---

[1] The related "Debtors' Motion for Entry of an Order (A) Approving Competitive Bidding and Sale Procedures . . ." was filed in the Bankruptcy Court on June 15, 2018, as Docket Entry 1055. The Bankruptcy Sale Motion is attached as Exhibit B to the EDVA Sale Motion. ECF No. 448-2.

Bidder," in accordance with an "Asset Purchase Agreement." ECF No. 448 at 1-10 and Ex. A (ECF No. 448-1). The total purchase price proposed by the Stalking Horse Bidder is $17.5 million. The EDVA Sale Motion contemplates that this Court's approval of the sale to the Stalking Horse Bidder would occur *after* the Bankruptcy Court approves the sale to the Stalking Horse Bidder (or other bidder). *Id.* RMST currently contemplates Bankruptcy Court approval of the sale no later than August 17, 2018, followed by this Court's approval no later than September 7, 2018.[2] *Id.* at Ex. B at 19 (ECF No. 448-2).

The proposed sale to the Stalking Horse Bidder in the bankruptcy proceeding is subject to several contingencies. First, the Bankruptcy Court must address the existence of several competing Chapter 11 Plans that have been submitted. These competing Plans are discussed below. A hearing on RMST's proposed bidding and auction procedures and these competing Plans is currently scheduled in the Bankruptcy Court for July 25, 2018. Second, and assuming RMST's approach to resolving its bankruptcy is adopted, the Bankruptcy Court must approve RMST's proposed competitive bidding and auction procedures. ECF No. 448 at 2-3, 13-14; *see also* Ex. D (ECF No. 448-4). Third, there must be no other "higher and better" offers received during the bidding process. *Id.* Finally, the Bankruptcy Court must give final approval of the sale. *Id.*

## II. COMPETING CHAPTER 11 PLANS FILED IN THE BANKRUPTCY COURT.

### A. **Plan of Reorganization by the Committee of Equity Security Holders.**

On June 1, 2018, the Official Committee of Equity Security Holders submitted its proposed Chapter 11 Plan of Reorganization ("Equity Committee Plan") to the Bankruptcy

---

[2] The Court has tentatively scheduled a hearing on this matter on August 6, 2018. In light of the timeline set forth in the bidding procedures, such hearing will likely need to be rescheduled.

Court. The Equity Committee Plan, and the related Disclosure Statement, are attached as Exhibits 2 and 3, respectively, to RMST's Periodic Report dated June 12, 2018.

In brief and as relevant to the Titanic Artifacts, the Equity Committee Plan calls for the Liquidating Trustee to "manage and administer" the American Artifacts (a/k/a the STAC), using current RMST employees, until such time as they are "transferred to a Qualified Institution, as defined in the Covenants [and Conditions]," which will serve as both the trustee of the Artifacts and the successor salvor-in-possession. Ex. 2 to June 12, 2018, Periodic Report at 4-5, 10, 22-23. The Equity Committee Plan does not identify a proposed Qualified Institution at this time, but acknowledges that its Plan and any subsequent transfer would require this Court's approval. *Id.* With regard to the French Artifacts, the Equity Committee Plan does not call for any role by this Court; instead, it calls for the Liquidating Trustee to engage an auction house to sell the French Artifacts "by auction in such manner as the Liquidating Trustee determines, in the exercise of its sole discretion, is in the best interests of the Debtors, their Estates and all parties having an interest therein." *Id.*

RMST contends that the Equity Committee's Plan is legally and factually deficient and should not be approved. July 9, 2018, Periodic Report at 2.

### B. Plan of Reorganization by the Committee of Unsecured Creditors, the National Maritime Museum, the National Museums and Galleries of Northern Ireland, and Running Subway Productions.

On June 29, 2018, the Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Trustees of the National Museums and Galleries of Northern Ireland, and Running Subway Productions submitted their proposed Chapter 11 Plan of Reorganization ("UCC/Museum Plan"). The UCC/Museum Plan, and related Disclosure Statement, are attached as Exhibits 2 and 3, respectively, to RMST's Periodic Report dated July 9, 2018.

In brief and as relevant to the Titanic Artifacts, the UCC/Museum Plan calls for the sale of the entire Artifact Collection (French and American) and related property, as well as RMST's salvage rights, to the National Maritime Museum and the National Museums and Galleries of Northern Ireland to be held as a whole "under perpetual public ownership." Ex. 3 to July 9, 2018, Periodic Report at 6-7; Ex. 4 to July 9, 2018, Periodic Report at 9. The balance of the assets would be acquired by Running Subway Productions. *Id.* The total purchase price of the assets is $19.2 million. *Id.*

Separately, the UCC also filed a motion in the Bankruptcy Court seeking a status conference, either before or in lieu of the July 25, 2018, Bankruptcy Court hearing, to coordinate "concurrent consideration" of the three competing proposals by the Bankruptcy Court and interested stakeholders, and to develop a procedure whereby the Bankruptcy Court and this Court could consult and communicate concerning the three competing proposals.[3] Ex. 4 to July 9, 2018, Periodic Report at 4, 9, 15-18.

RMST opposes the UCC's motion, and contends that the UCC/Museum Plan is legally and factually deficient and should not be approved. July 9, 2018, Periodic Report at 2.

### III.    DISCUSSION.

NOAA is authorized to provide input and recommendations to this Court to ensure that the public interest in the *Titanic* wreck site and its Artifacts is forever protected, and, in the current circumstances, to aid the Court in evaluating a proposed subsequent Trustee or salvor-in-possession, a successor-in-interest to RMST, and generally, for the protection of the American Artifacts in the bankruptcy. *See generally* C&Cs, Sections V.A, V.C.7, V.C.8, VI.E.4, VII(D)(5); *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 742 F. Supp. 2d 784, 792 (E.D.

---

[3] Counsel for the National Maritime Museum filed his notice of appearance in this Court on July 9, 2018. ECF No. 450. RMST has objected to that appearance.

Va. 2010) (NOAA tasked with ensuring that "the United States' [public] interests in the *Titanic* wreck site and the artifacts recovered therefrom" are protected.); *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 531 F. Supp. 2d 691, 693 (E.D. Va. 2010) (NOAA to provide oversight "in order to preserve and protect the *R.M.S. Titanic* and its artifacts as an international treasure for posterity . . . and to ensure compliance with this court's rulings and final orders."). Presently, there are three competing proposals before the Bankruptcy Court – the Chapter 11 Plans of the Equity Committee and UCC/Museum, and the Debtors' Sale Motion – each of which provide for a different disposition of the Artifacts. At this time, and until the Bankruptcy Court resolves the competing proposals and a definitive proposal is before this Court, NOAA believes that it is appropriate only to state (or re-state) the criteria it expects to consider to evaluate any proposal submitted to this Court for approval.[4]

For any proposed successor salvor-in-possession, NOAA expects to consider the factors and considerations set forth in its letter dated December 19, 2017, to counsel for RMST. This letter was submitted and marked as Exhibit 1 during the status hearing held by the Court on May 3, 2018. A copy of the letter is attached hereto.

For any proposed transaction involving a 100% stock sale of RMST to a new entity, NOAA will assess whether the proposal ensures that the stock sale "does not effectuate a change

---

[4] NOAA is providing this information to help facilitate its (and the Court's) review, but the time needed for that review will vary depending on the specific proposal, and may require more than the three weeks contemplated under RMST's motion. *See also* C&Cs, Sections V.C.9 and VI.E.2 (providing that NOAA may request or the Court *sua sponte* may appoint outside experts to assist with matters relevant to the American Artifacts or to conduct due diligence on a proposed Subsequent Trustee). The UCC has requested that the Bankruptcy Court establish a protocol for "concurrent consideration" of any proposal by the two courts, suggesting that it would be "inefficient" to treat this Court as an "afterthought." Ex. 4 to July 9, 2018, Periodic Report at 3-4 17-18. However, the UCC recognizes that the two courts' mandate "differ wildly," *id.* at 13, and it does not offer a suggested protocol other than the two courts communicate, respect the other's rulings, and that "immediate approval" be sought in this Court of any proposal approved by the Bankruptcy Court, *id.* at 17-18. NOAA favors any process that permits effective review by this Court of any proposals affecting *Titanic* and the Artifacts to ensure that the proposed transaction comports with the public interest. To that end, NOAA encourages the full cooperation by the parties, including providing all requested information promptly, so that this review can be conducted in a timely fashion.

in the management, conservation and curation of the STAC." C&Cs, Section VI.E.1. To that end, NOAA will require information on the new ownership and management; information on the ongoing status of the intracompany agreements affecting the Artifacts; information on any change to the financial structure of RMST and its continued financial ability to properly manage the Artifacts; and assurances from such ownership/management of continued compliance with all provisions of the C&Cs, including guaranteeing continued funding of the Reserve Account (C&Cs, Section V.D). NOAA will also continue to require full access to the French and American Artifacts, the entity's facility and personnel, and any documentation NOAA determines is reasonably necessary to evaluate the condition of the Artifacts to ensure their continued care in accordance with current museum standards (C&Cs, Section V.C).

For any proposed transfer of the American Artifacts to a subsequent Trustee, NOAA expects to consider the factors and considerations set forth in its December 19, 2017, letter to counsel for RMST, a copy of which is attached hereto, and reserves the right to conduct a site visit of any subsequent Trustee's facilities.

NOAA also expects to take into account the proposal's treatment, handling and disposition of the French Artifacts. NOAA acknowledges that this Court lacks constructive *in rem* jurisdiction over the French Artifacts. *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 528 (4th Cir. 2006). However, the public interest that NOAA is charged by the Court with protecting encompasses the *Titanic* Collections as a whole, meaning "the total assemblage of the French *Titanic* Artifact Collection and the Subject *Titanic* Artifact Collection." C&Cs, Sections II(H) and II(K).[5] Further, RMST's grant of title to the American

---

[5] As noted in the Covenants and Conditions, NOAA's authority to represent the public interest derives from the 1986 Act, the International Agreement and NOAA's guidelines. C&Cs, Section II(K). Generally speaking, it is in the public interest for *Titanic* and all its artifacts to be protected, and for the artifacts to be maintained in intact collections for the public's education and benefit. *See* 16 U.S.C. § 450rr-5 (1986 Act, stating that the sense of

Artifacts was expressly subject to RMST's assumption of the obligations and responsibilities in the C&Cs "in regards to the *TITANIC* Collections" *as a whole*. *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel, Its Engines, Tackle, Apparel, Appurtenances, Cargo, Etc.*, 804 F. Supp. 2d 508, 509 (E.D. Va. 2011); C&Cs, Section VIII.A. These obligations and responsibilities continue to run, as a condition of title, in perpetuity. C&Cs, Section VI.B.

Therefore, to the extent any proposal presented to this Court for approval would result in a disposition of the French Artifacts separate from the American Artifacts, NOAA will request the proposed Subsequent Trustee provide information concerning its ability to ensure that all responsibilities under the C&Cs applying to the entire *Titanic* Collection can be satisfied, including but not limited to: (i) ensuring the proper and professional management and care of the entire collection; (ii) ensuring that the entire collection will be made "available to present and future generations for public display and exhibition, historical review;" (iii) ensuring that "to the maximum extent possible" that the entire collection will be "conserved and curated . . . as an integral whole;" and (iv) ensuring that NOAA would have continued access to the entire collection. C&Cs, Sections III.A, III.B, IV and V.

                    Respectfully submitted,

                    G. Zachary Terwilliger
                    United States Attorney

By:   /s/ *Kent P. Porter*         
      Kent P. Porter, VSB No. 22853
      Assistant United States Attorney
      Attorney for the United States

---

Congress is that activities relating to *Titanic* should be for the "purpose of enhancing public knowledge of its scientific, cultural, and historical significance"); International Agreement at Art. III (describing that, for artifacts recovered after implementation, they be "kept together and intact as project collections"); NOAA Guidelines at Part I(1), 66 Fed. Reg. 18,905, 18,912 (noting that activities relating to *Titanic* should be granted "only when justified by educational, scientific, or cultural interests" and that all recovered artifacts should be "kept together and intact as project collections"); *see also* NOAA Guidelines, at 18906 (Response to Comment 5) ("Basic professional archaeological standards dictate that artifacts recovered or salvaged from a wreck site should be kept intact as a collection.").

        United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax: 757-441-6689
kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2018, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger**<br>Kaleo Legal<br>4456 Corporation Lane<br>Suite 135<br>Virginia Beach, VA 23462<br>Email: bwainger@kaleolegal.com | **Robert William McFarland**<br>McGuireWoods LLP<br>101 W Main St<br>Suite 9000<br>Norfolk, VA 23510-1655<br>Email: rmcfarland@mcguirewoods.com |
| **Edward J. Powers**<br>Vandeventer Black LLP<br>101 West Main Street, Suite 500<br>Norfolk, VA 23510<br>epowers@vanblacklaw.com | |

        /s/ *Kent P. Porter*_____
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax: 757-441-6689
kent.porter@usdoj.gov