

U.S. Department of Justice
United States Attorney
Eastern District of Virginia

8000 World Trade Center    757/441-633
101 West Main Street       FAX/ 441-6689
Norfolk, Virginia 23510-1671

December 19, 2017

Robert W. McFarland
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA 23510
Via e-mail rmcfarland@mcguirewoods.com

Brian A. Wainger
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Via e-mail bwainger@kaleolegal.com

    Re:   *R.M.S. Titanic, Inc. (etc.) v. The Wrecked and Abandoned Vessel (etc.)*
           Civil Action No. 2:93cv902

Dear Rob and Brian:

    Thank you, and Jeff Cavender, for talking with me, Jackie Rolleri and Matt Troy on December 5, 2017, about the upcoming auction. We hope the dialogue continues so as to facilitate the presentation of a successful bidder to Judge Smith for her consideration.

    You asked if NOAA could provide the information NOAA would consider when evaluating whether a successful bidder constitutes a qualified institution and/or is a suitable candidate for successor salvor, and whether the transaction is consistent with the C&Cs. We would, of course, direct you to the Court's orders, as well as the considerations set forth in the C&Cs, which include the incorporated Annex A. Many of the provisions of the C&Cs draw on and reference provisions of the International Agreement, NOAA Guidelines, 36 C.F.R. Part 79, and the Department of the Interior's Archaeological Standards and Guidelines, and we suggest you review those standards as well. What follows does not replace any of those, but seeks to highlight and explain what considerations NOAA expects to focus on, with the caveat that considerations may change as events unfold and, especially, depending on who the successful bidder is. In addition, NOAA reserves the right to recommend the Court appoint an expert to assist in the due diligence process, and to request a site visit to the successful bidder's facilities.

1. <u>Subsequent Trustee of Artifacts and Compliance with the C&Cs.</u>

    a. The subsequent Trustee should describe its current business activity, and identify (name and address) all owners, principals, and members of its governing body or board of directors (if applicable).

    b. The subsequent Trustee must be willing to keep the collection together, intact, and available to posterity to the public for public display, exhibition, historical review, scientific and scholarly research, and educational purposes. (C&C, I.G, II.I and III. B.2.) The subsequent Trustee should: (i) affirmatively represent its intentions with regard to the artifacts; (ii) demonstrate how it expects to showcase and exhibit the collections to the public; (iii) provide its policies for access to the collections for research purposes, including how and when it would permit destructive or invasive testing, research and analysis.

    c. The subsequent Trustee must be bound by the C&Cs and subject itself *in personam* to the Court's continuing jurisdiction over the wreck site and the America artifacts. (C&Cs, V.F, VI.E.) The subsequent Trustee should acknowledge that fact in writing. (The subsequent Trustee will also be required to submit a written acknowledgment to the Court.)

    d. The subsequent Trustee must have the operational capacity to conserve, curate, manage, and generally care for the artifacts collection. (C&C, II.I, II.M, IV.A, IV.B and IV.C.) The subsequent Trustee should: (i) provide any accreditations it possesses; (ii) provide copies of any of its policies adopting standards for care, preservation, curation and disaster preparedness; (iii) describe what plant, property, equipment and other resources it will use for its operations, curation, preservation, transport and research relating to the artifact collection; (iv) identify the key personnel (providing CVs) who will be involved in the care, preservation and curation of the artifacts; and (v) explain how it will ensure that all activities with the artifacts will be taken under the guidance of, and in the presence of, qualified technical and professional experts.

    e. As part of the management of the artifact collection, the subsequent Trustee must show that it has appropriate systems and policies in place: (i) to inventory, accession, label, and catalog objects; (ii) to identify, evaluate and document objects; (iii) to store and maintain objects using appropriate methods and containers, under appropriate environmental conditions and physically secure controls; and (iv) for periodic inspection and preservation actions.

    f. As part of the management of the artifact collection, the subsequent Trustee must show that it can and will comply with internationally recognized museum standards/practices for collections management as set forth by the International Council of Museums (ICOM), American Alliance of Museums (AAM) and International Congress of Maritime Museums (ICMM), including documentation

of projects to be undertaken that are consistent with current archaeological standards.

g. The subsequent Trustee must have the financial capacity to care for the artifacts collection and carry out its responsibilities under the C&Cs, including the responsibility to fully fund the reserve account. (C&C, II.I, V.D.) The subsequent Trustee should: (i) provide recent financial statements; (ii) provide its proposed budget for care, preservation, curation and exhibition; (iii) show its ability to replace the reserve funds (if the reserve account is not conveyed to it as part of the transaction); and (iv) show that it has the ability to continue to fund the reserve account until fully funded.

2. <u>Sucessor Salvor.</u>

Several of the decisions in this case have outlined factors and considerations applicable to determine whether an admiralty court should grant exclusive salvage rights to a salvor, especially in the context of a historic wreck, like *Titanic*. *See e.g. RMST Titanic v. Wrecked and Abandoned Vessel*, 435 F.3d 521, 536-37 (4th Cir. 2006) (noting that a salvor "pursue[s] its functions as a trustee for the public interest); *RMST Titanic v. Wrecked and Abandoned Vessel*, 924 F.Supp. 714, 721 (E.D.Va. 1996) (discussing traditional factors and factors pertinent to historical wrecks). Based on these decisions, NOAA would consider the following information necessary in order to evaluate whether a successor salvor identified by RMST should be granted exclusive salvage rights in *Titanic*:

a. The successor salvor should describe its current business activity, and identify (name and address) all owners, principals, and members of its governing body or board of directors (if applicable).

b. The successor salvor should describe its background and experience in marine salvage or any other archeological or historical resource recovery. The successor salvor should provide a detailed description of any marine salvage activities it has previously conducted or participated in, describing the nature and outcome of those activities, and the specific role it played in such activities.

c. The successor salvor should set forth why it seeks to obtain the exclusive salvage rights to the *Titanic* wreck site, and how it expects to further the public interest in the wreck's historical, archeological, or cultural value through its activities.

d. The successor salvor should specifically state its intent with regards to future salvage or other activities at the wreck site, including the purpose, objectives, scope, timing and duration of any future expeditions.

e. The successor salvor should demonstrate it possesses the operational capabilities to plan, organize and successfully conduct salvage activities at *Titanic*. Information relevant to this showing includes: (i) the ability to conduct research, recover artifacts or conduct other activities in accordance with professional

standards while ensuring the preservation of the archeological integrity of the wreck; (ii) the ability to protect, store and transport any recovered artifacts or other material from *Titanic* in accordance with professional standards to insure their archeological integrity and to preserve their historical value; and (iii) having appropriate systems and policies in place to document the provenance of any artifacts or other material removed or recovered from the wreck site. The successor salvor should provide copies of any documents or policies that demonstrate the foregoing.

f. If the successor salvor expects to partner with any other entity or organization to conduct salvage of *Titanic*, the successor salvor should identify the partner(s) (if presently known), and explain the role any partner may play in salvage activities.

g. The successor salvor should identify and provide the qualifications (CVs) of key persons and experts employed by or who contract with the successor salvor, and who would be involved in any salvage efforts of *Titanic* and oversee the archeological integrity of any research and recovery efforts at the wreck site.

h. The successor salvor should demonstrate its financial capacity, either alone or in conjunction with other entities, to successfully conduct salvage activities at *Titanic*, and show its ability to invest sufficient capital and labor to such activities. The successor salvor should provide copies of any documents that demonstrate the foregoing.

I look forward to hearing from you. If there are any questions, feel free to call.

Very truly yours,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Kent P. Porter
Assistant United States Attorney

cc: Jackie Rolleri, NOAA