## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

R.M.S. TITANIC, INC.,
Successor in interest to Titanic Ventures,
limited partnership,

       Plaintiff,

v.                                    Civil Action No. 2:93-cv-902

The Wrecked and Abandoned Vessel, . . .
believed to be the R.M.S. TITANIC, in rem,

       Defendant.

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

The Official Committee of Equity Security Holders (the "Equity Committee"), a party-in-interest in the Chapter 11 case of Premier Exhibitions, Inc. ("Premier") and its subsidiaries,[1] pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), Case No. 3:16-bk-02230-PMG (the "Bankruptcy Case") move the Court pursuant to Rule 24(a)(2) for an order granting it leave to intervene in this case as an interested-party.  R.M.S. Titanic, Inc. ("RMST") is a subsidiary of Premier, a debtor in its own chapter 11 case, and is the Plaintiff in the above-captioned case.

The Equity Committee may intervene as of right under Rule 24(a).  That Rule requires a court to permit an entity to intervene if that entity "claims an interest relating to the property or

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309) (collectively, the "Debtors").  The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [that entity's] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

In the alternative, the Court should also permit the Equity Committee to intervene pursuant to Rule 24(b).  That Rule provides that, upon a timely application, anyone may be permitted to intervene in an action when the applicant has a claim or defense that shares with the main action a common question of law or fact.  Fed. R. Civ. P. 24(b)(1)(B).

As set forth more fully below, the Equity Committee represents the interests of equity holders of in the Bankruptcy Case.  Premier's motions, including those of its subsidiaries, as well as forthcoming motions from the Equity Committee in connection with its Equity Committee Plan (as defined below), in the Bankruptcy Court and this Court, will directly affect the interests of those equity holders.

## BACKGROUND

### A.      The French Collection and the American Collection

RMST's predecessor in interest, Titanic Ventures Limited Partnership (the "Company"), with the assistance of Institut Francais de Recherche Pour l'Exploitation de la Mer, the French government's oceanographic institute, conducted a joint expedition to the wreck of the RMS TITANIC in 1987.  Over the course of 32 dives during that expedition, the Company recovered approximately 2100 artifacts from the Titanic wreck site (the "French Artifacts" or the "French Collection").  On October 20, 1993, an Administrator in the French Office of Maritime Affairs (Ministry of Equipment, Transportation and Tourism) awarded the Company title to the French Artifacts. *See R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 435 F.3d 521, 524 (4th Cir. 2006).

In 1993, RMST conducted an additional research and recovery expedition to the wreck of the Titanic, and on August 26, 1993, commenced an *in rem* action in this Court against the artifacts recovered in the 1993 expedition, and the wreck itself. *Id.* A few months later, this Court entered an Order which assumed *in rem* jurisdiction over the artifacts recovered by the Company in 1993, as well as the wreck itself, and declared the Company to be the salvor-in-possession of the wreck and wreck site. *Id.* RMST remains salvor-in-possession of the Titanic wreck site today. RMST conducted further salvage operations at the Titanic wreck site in 1994, 1996, 1998, 2000, and 2004 and recovered over 3000 additional artifacts (the artifacts recovered in 1993, 1994, 1996, 1998, 2000, and 2004 shall be referred to as the "American Artifacts" or the "American Collection").

In 2004, RMST filed a "Motion for Salvage and/or Finds Award" with this Court. *Id.* at 525. The motion sought an award of title to the American Artifacts; the motion excluded any requests for compensation as to the French Artifacts, for which title had already transferred to the Company pursuant to the French administrator's 1993 award. *Id.* By Order dated July 2, 2004, this Court refused to recognize the previous decision by the French Administrator, effectively stripping the Company of title to the French Artifacts. *R.M.S. Titanic, Inc. v Wrecked & Abandoned Vessel*, 323 F. Supp. 2d 724 (E.D. Va. 2004). In refusing to recognize the French Administrator's decision to award the French Artifacts to RMST, this Court concluded that an application of the principles of comity did not justify this Court's recognition of the French administrative proceeding. *Id.* at 733. This Court directed RMST to prepare a motion for salvage award on the entire collection of Titanic artifacts — the French Artifacts and the American artifacts.

RMST appealed the July 2, 2004 Order to the United States Court of Appeals for the Fourth Circuit. On January 31, 2006, the Fourth Circuit vacated this Court's Order with respect to the ownership of the French Artifacts, holding that this Court "does not have in rem jurisdiction over the French artifacts, or, absent in rem jurisdiction, any other jurisdictional basis upon which to issue a declaratory judgment" and remanded the case to this Court for administration of the American Artifacts. *R.M.S. Titanic, Inc.*, 435 F.3d at 528. This decision effectively reconfirmed the French Administrator's transfer of title to RMST of the French Artifacts, and established as the law of the case that this Court's subject matter jurisdiction extends only to the American Artifacts and the wreck itself, but not to the French Artifacts.

In August 2010, this Court granted RMST a salvage award for its efforts in recovering and restoring the American Artifacts and determined the award to be 100% of the fair market value of the American Artifacts, or approximately $110 million. *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 742 F. Supp. 2d 784, 809 (E.D. Va. 2010). In that Order, this Court reserved the right to determine the manner in which to pay the award (i.e. by judicial sale of the artifacts, or by an in specie award of title). *Id.* In keeping with prior Orders of this Court, RMST and the United States Government, through the United States Attorney, negotiated and drafted "Covenants and Conditions for the Future Disposition of Objects Recovered from the RMS TITANIC by RMS Titanic, Inc. Pursuant to an In Specie Salvage Award Granted by the United States District Court for the Eastern District of Virginia" (the "Covenants"). The Covenants are attached as Exhibit A to the 2010 Order. *See R.M.S. Titanic, Inc.*, 742 F. Supp. 2d at 809-824.

In August 2011, this Court essentially granted RMST an in specie salvage award, which conveyed to RMST title to the American Artifacts. *R.M.S. Titanic, Inc. v. Wrecked &*

*Abandoned Vessel*, 804 F. Supp. 2d 508 at 509 (E.D. Va. 2011).  Title to the American Artifacts is "fully subject to" the Covenants.  *Id.*

### B.   The RMST Bankruptcy and Motion to Sell

On or about June 14, 2016, Premier and its subsidiaries, including RMST, filed in the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Later, on June 20, 2016, RMST filed a motion (the "First Sale Motion") with the Bankruptcy Court requesting an order pursuant to sections 105 and 363 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*, as amended the "Bankruptcy Code") and Rules 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  RMST's First Sale Motion requested authorization to market and sell certain Titanic artifacts from the French Collection free and clear of liens, claims and interests.  RMST, however, did not serve France with the First Sale Motion.

Ultimately, the Bankruptcy Court denied the First Sale Motion without prejudice on the grounds, among other things, that the French Government may assert an "interest" in the French Artifacts within the meaning of Bankruptcy Code §363(f).  [BK CT ECF No. 102].[2]  Thereafter, the Debtors commenced an adversary proceeding, styled *RMS Titanic, Inc. v French Republic a/k/a/Republic of France*, Adversary Proceeding No. 3:16-ap-00183-PMG, seeking declaratory relief that France has no interest in the French Artifacts.  On or about September 29, 2017, the Bankruptcy Court entered judgment in favor of RMST that France has no interest in the French Artifacts.  [BK CT AP ECF No. 67].[3]

The Equity Committee was appointed, pursuant to Bankruptcy Code § 1102(a), as a fiduciary to represent the interests of all equity holders in the Debtors and their estates.  See 11

---

[2] A copy of such order is attached hereto as Exhibit A.
[3] A copy of such order is attached hereto as Exhibit B.

U.S.C. § 1103(c).  In that capacity, on or about June 1, 2018, the Equity Committee filed in the Bankruptcy Court its *Chapter 11 Plan of Reorganization Proposed By The Official Committee Of Equity Security Holders Of Premier Exhibitions, Inc* (the "Equity Committee Plan") [BK CT ECF No. 1045][4] and its *Disclosure Statement To Accompany Chapter 11 Plan Of Reorganization Proposed By The Official Committee Of Equity Security Holders Of Premier Exhibitions, Inc.* (the "Equity Committee Disclosure Statement") [BK CT ECF No. 1044].[5]  Counsel to the Equity Committee conferred with counsel to RMST and agreed that RMST would file a Periodic Report with this Court to which RMST would attach a copy of the Equity Committee Plan and the Equity Committee Disclosure Statement to keep this Court apprised of the filing of those pleadings.  RMST filed that Periodic Report on or about June 12, 2018.

Among other things, the Equity Committee Plan provides that "[a]ny transfer of the American Artifacts to a successor trustee and salvor shall be subject to approval of the District Court and shall be made only on notice to the United States Department of Commerce, National Oceanic and Atmospheric Administration and all other parties entitled to notice in the . . . US [District Court] Litigation."  Equity Committee Plan, ¶ VI. C., at 23.  Moreover, the Equity Committee Plan "Effective Date" is contingent upon, among other things, entry of an order approving such transfer by the District Court.  Equity Committee Plan, ¶ I. A. 32, at 6.

On or about July 25, 2018, the Bankruptcy Court held a status conference to consider, among other things, the procedure for consideration by the Bankruptcy Court of the Equity

---

[4] A copy of such order is attached hereto as Exhibit C.
[5] A copy of such order is attached hereto as Exhibit D.

Committee Plan and Disclosure Statement, a plan and disclosure statement filed by the Official

Committee of Unsecured Creditors,[6] and a sale motion filed by Premier, RMST's parent.

On August 3, 2018, the Bankruptcy Court issued an amended order [BK CT ECF

No. 1151] in the Bankruptcy Case stating, among other things, "the parties should take the steps

that they believe are necessary for approval of the proposed sales by the District Court."  A copy

of such order is attached hereto as Exhibit E.  In the same order, the Bankruptcy Court stated:

> The Titanic artifacts are subject to administration by the United States District
> Court for the Eastern District of Virginia and are also subject to the "Covenants
> and Conditions for the Future Disposition of Objects Recovered from the RMS
> Titanic by RMS Titanic, Inc. Pursuant to an In Specie Salvage Award Granted by
> the United States District Court for the Eastern District of Virginia."

*      *      *

> Because the Debtor's assets are also subject to the jurisdiction of the District
> Court in Virginia, the parties should move in that Court for approvals or
> determinations required by the District Court to complete the proposed
> transactions.  See, for example, In re Aqua Pesca, LLC, 2018 WL 3031085, at 4
> (Bankr. D. Alaska) (A sale order directed the parties to take such "steps as are
> necessary or appropriate to obtain" the approval of the applicable licensing
> authority).

Pursuant to and in accordance with the order from the Bankruptcy Court, counsel for the

Equity Committee files this motion to intervene in anticipation that the Equity Committee will

seek relief from this Court in connection with the Equity Committee Plan.

## ARGUMENT

To intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), the Equity Committee must

show that: (1) its motion is timely; (2) the party must have a recognized interest in the subject

matter of the litigation; (3) disposition of the action may impair or impede the movant's ability to

---

[6] RMST submitted the Creditors Committee Plan and Disclosure Statement to this Court as
attachments to a Periodic Report filed by RMST.

protect its interest; and (4) the interest must not be adequately protected by the existing parties. *Houston General Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). *See also Richman v. First Woman's Bank*, 104 F.3d 654, 658-59 (4th Cir. 1997). Rule 24 is construed liberally, and any doubts should be resolved in favor of the intervener. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir.) *cert. denied* 540 U.S. 1017 (2003). Intervenors of right "assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted*." Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450 (4th Cir. 1992) (*quoting District of Columbia v. Merit Systems Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985)). A proposed intervenor has a "minimal burden of showing that the existing parties cannot adequately represent its interest." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002).

### A.   The Equity Committee's Motion to Intervene Is Timely

Whether a motion to intervene is timely is a "cardinal" consideration under Rule 24 and is committed to the discretion of the trial court. *Houston General Ins.*, 193 F.3d at 839. In determining timeliness, the court should review how far the suit has progressed, the prejudice which delay might cause other parties, and any reasons for any tardiness in moving to intervene. *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990). On June 1, 2018, the Equity Committee filed its Plan and its Disclosure Statement. The Equity Committee is not permitted to solicit votes for acceptance of its Plan until its Disclosure Statement has been approved by the Bankruptcy Court. The hearing to approve the Disclosure Statement is scheduled for August 30, 2018. If the Bankruptcy Court approves the Disclosure Statement, it will schedule a date for a hearing whether to confirm the Equity Committee Plan. The Equity Committee intends to file a motion with this Court promptly thereafter. Thus, within

the next few weeks the Equity Committee expects to seek relief from this Court in connection with the Equity Committee Plan (as it may be amended).  Accordingly, this Motion to Intervene is timely.

> **B.     The Equity Committee Has a Direct and Substantial Interest in the *Res***

A potential intervenor must demonstrate a "direct, substantial and legally protectable" interest in the property or transaction that is the subject of the suit.  *See, generally, New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir.), *cert. denied*, 469 U.S. 1019 (1984). The Equity Committee meets that requirement.

The Equity Committee has an undeniable interest in the *res* that is the subject of this admiralty action.   The entity that holds these assets, RMST, is the subsidiary of Premier. Premier has determined to sell substantially all its assets, and the stock of RMST, under a sale motion pending in the Bankruptcy Court.   See, *Debtors' Motion for Entry of An Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement; (D) Approving Break Up-Fee and Expense Reimbursement; (E) Scheduling Auction and Hearing To Consider Final Approval of Sale, Including Rejection or Assumption and Assignment of Related Executory Contracts And Unexpired Leases; (F) Authorizing Sale Of The Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, And Interests; And (G) Approving Settlement With The PacBridge Parties; And (H) Granting Related Relief* (the "Sale Motion"). [BK CT ECF No. 1055].[7]  RMST also has presented that sale to this court for approval.  See, *Plaintiff's Motion to Approve Asset Purchase Agreement and Authorize the Sale Of 100% Of RMST's Stock to Premier Acquisition*

---

[7] A copy of such order is attached hereto as Exhibit F.

*Holdings LLC Or Other Qualified Purchaser As Approved By The Bankruptcy Court* (the "Approval Motion") [ECF No. 448].

The equity holders of Premier have a very specific pecuniary interest in the Sale Motion in the Bankruptcy Court and in the Approval Motion in this Court, as well as the proposed motion to be filed in conjunction with seeking approval from this Court for the Equity Committee Plan. The Equity Committee is the fiduciary appointed to represent those interests under the Bankruptcy Code. Intervention in this case will permit the Equity Committee to do so. Accordingly, the Equity Committee has an interest relating to the property or transaction, which is the subject of this Court's consideration. Thus, permitting the Equity Committee to intervene is appropriate pursuant to Rule 24(a)(2).

**C.     The Equity Committee's Interest In the Litigation May be Impaired Absent Intervention**

The Equity Committee's interest would be impaired if it is not permitted to appear in this Court with respect to the sale of the American Artifacts under the Equity Committee Plan, which requires this Courts approval of any such sale. The Equity Committee's interest in such sale and in its Equity Committee Plan may be impaired absent intervention in this suit, given the Court's jurisdiction over, among other things, certain artifacts related to RMST's motion to sell in the Bankruptcy Court.

**D.     The Equity Committee's Interest Is Not Adequately Protected by the Parties**

The burden of establishing inadequate representation is "minimal." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). Premier and RMST are adverse to the Equity Committee's Plan and will not represent the interests of equity holders in connection with that Plan or the transfer of assets under this Court's jurisdiction.

### E.        In the Alternative, Permissive Intervention Is Also Appropriate

If the Court is not inclined to permit the Equity Committee to join as of right, the Court should permit the Equity Committee to intervene pursuant to Fed. R. Civ. P. 24(b).  That Rule provides that, upon a timely application, anyone may intervene in an action when the applicant has a claim or defense that shares with the main action a common question of law or fact.  Fed. R. Civ. P. 24(b)(1)(B).  In addition, the law of this case supports liberal standing.  *See R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 920 F. Supp. 96 (E.D. Va. 1996).

Here, the Equity Committee has an interest in ensuring that the French Artifacts are determined to be property of the estate and, upon such determination, that these assets are properly administered.  Therefore, the Equity Committee has a claim that shares "a common question of law or fact" with the relief sought by RMST in its motion to sell certain of the French Artifacts.  Moreover, intervention by the Equity Committee will not unduly delay or prejudice the adjudication of the original parties' rights in this case.  *See* Fed. R. Civ. P. 24(b)(3). Accordingly, the Equity Committee should be permitted to intervene in this case.

### CONCLUSION

For the foregoing reasons, the Court should grant the Equity Committee's motion to intervene and grant such further and other relief as the Court may deem just and proper.

Dated: August 17, 2018.

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS OF
PREMIER EXHIBITIONS, INC.**

**By Counsel:**

*/s/ Jeffrey G. Gilmore*
Jeffrey G. Gilmore (VSB No. 21971)
John M. Neary (VSB No. 84984)
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Facsimile: (202) 393-5959
Email: jeff.gilmore@akerman.com
Email: john.neary@akerman.com

Jacob A. Brown (*Pro Hac Vice Application Forthcoming*)
Mary K. Fackler (*Pro Hac Vice Application Forthcoming*)
**AKERMAN LLP**
50 North Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Fax: (904) 798-3730
Email: jacob.brown@akerman.com
Email: katherine.fackler@akerman.com

Peter J. Gurfein (*Pro Hac Vice Application Pending*)
**LANDAU GOTTFRIED & BERGER LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 691-7374
Fax: (310) 557-0056
Email: pgurfein@lgbfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Brian A. Wainger
**KALEO LEGAL**
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Telephone: (757) 965-6804
Email: bwainger@kaleolegal.com
*Counsel for Plaintiff R.M.S. Titanic, Inc.,*
*successor in interest to Titanic Ventures,*
*limited partnership*

Robert W. McFarland
**MCGUIRE WOODS LLP**
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: (757) 640-3700
Email: rmcfarland@mcguirewoods.com
*Counsel for Plaintiff R.M.S. Titanic, Inc.,*
*successor in interest to Titanic Ventures,*
*limited partnership*

Kent P. Porter
United States Attorney Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: (757) 441-6331
Email: kent.porter@usdoj.gov
*Counsel for Amicus United States of America*

/s/ Jeffrey G. Gilmore
Jeffrey G. Gilmore
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Email: jeff.gilmore@akerman.com
*Counsel for the Official Committee of Equity*
*Security Holders of Premier Exhibitions, Inc.*