# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In re:                                                                    Case No. 3:16-bk-2230-PMG

RMS Titanic, Inc., et al.,

_____Debtors.                      Chapter 11


## ORDER ON MOTION FOR ORDER AUTHORIZING THE DEBTORS
## TO MARKET AND SELL CERTAIN TITANIC ARTIFACTS FREE AND CLEAR
## OF LIENS, CLAIMS, AND INTERESTS

**THIS CASE** came before the Court for hearing to consider the Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rules 6003, 6004, and 9014 Authorizing the Debtors to Market and Sell Certain Titanic Artifacts Free and Clear of Liens, Claims, and Interests. (Docs. 28, 69).

A Chapter 11 debtor may sell property of the estate free and clear of "any interest" of another entity in the property, subject to the conditions provided by §363(f) of the Bankruptcy Code.

Under Rule 7001 of the Federal Rules of Bankruptcy Procedure, an action to determine the validity or extent of a lien "or other interest in property," or an action to obtain a declaratory judgment relating to the validity or extent of an interest in property, should be filed as an adversary proceeding. Fed.R.Bankr.P. 7001(2),(9).

1

In this case, the Debtors assert that they own approximately 5,500 artifacts from the Titanic salvage site. In the current Motion, the Debtors propose to market and sell certain items from the division of artifacts known as the French Collection, free and clear of any liens or interests. The Debtors acknowledge, however, that (1) they had agreed with French officials "not to carry out any commercial transaction concerning such objects nor any sale of any one of them nor any transaction entailing their dispersion," (2) that the agreement is a restriction on their ability to transfer the French Artifacts, and (3) that the market views the Debtors as lacking clear title to convey the French Artifacts.

Under these circumstances, it appears that third parties, including the French Government, may assert an "interest" in the French Artifacts within the meaning of §363(f) and Rule 7001. Accordingly, the Debtors' request to market and sell the French Artifacts free and clear of "any interest" in the property should be filed as an adversary proceeding under Rule 7001.

### Background

On June 14, 2016, the Debtor, RMS Titanic, Inc., and seven affiliates filed petitions under Chapter 11 of the Bankruptcy Code. On the same date, the Debtor filed a Motion for Joint Administration, and the Court has approved the joint administration of the eight cases. (Docs. 2, 77).

In their Case Management Summary, the Debtors describe their operations as including the following:

> Debtors own approximately 5,500 Titanic artifacts recovered from the wreck site 2 ½ miles below the ocean's surface that the Debtors have the right to present at its exhibitions. In 1994, a federal district court declared RMST "salvor-in-possession" of the Titanic wreck and wreck site, and, as such, the Debtors have the exclusive right to recover additional objects from the Titanic wreck site. Through the Debtors' explorations, they have obtained and are in possession of the largest collection of data, information, images and cultural materials associated with the Titanic shipwreck.

2

(Doc. 8, ¶ 7).

Six days after the petition date, on June 20, 2016, the Debtors filed the Motion "to Market and Sell Certain Titanic Artifacts Free and Clear of Liens, Claims, and Interests" that is currently before the Court. (Doc. 28). According to the Motion, the Debtors' total Titanic collection consists of the French Artifacts or the French Collection, and the American Artifacts or the American Collection.

The French Collection includes approximately 2,100 artifacts that were recovered during a joint expedition with the French Government's oceanographic institute in 1987. The French Collection was awarded to the Debtor by an Administrator in the French Office of Maritime Affairs in 1993. (Doc. 28, ¶ 7).

The American Collection includes more than 3,000 additional artifacts that were recovered during expeditions in 1993, 1994, 1996, 1998, 2000, and 2004. The Debtors claim ownership of the American Collection pursuant to a 1994 Order by the United States District Court for the Eastern District of Virginia which declared the Debtor "to be the salvor-in-possession of the wreck and wreck site." (Doc. 28, ¶¶ 8, 9).

In the Motion for authority to sell certain artifacts, the Debtors assert that they have "no intent to pursue a sale of artifacts from the American Collection." Instead, they contend that they "seek only to sell a narrow subset of artifacts from the French Collection to pay the creditors in full, return all equity positions to the Debtors' shareholders, and possibly fund some or all of the Titanic reserve account." (Doc. 28, ¶ 25).

The United States Trustee and the United States, on behalf of the Department of Commerce, filed separate Objections to the Debtors' Motion to Sell the French Artifacts. (Docs. 67, 73).

## Discussion

Generally, §363(b) provides that a Chapter 11 debtor may sell property of the estate, other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. §363(b).

If the debtor asks for approval to sell its property free and clear of any liens or interests, however, the proposed sale is governed by §363(f) of the Bankruptcy Code. Under §363(f), the debtor may sell property free and clear of "any interest" in the property, subject to the conditions provided by that section. 11 U.S.C. §363(f).

In this case, the Debtors' Motion is brought pursuant to §363 of the Bankruptcy Code, and seeks to market and sell certain French Artifacts "free and clear of liens, claims, and interests." The Motion should be denied, but the Debtors should be permitted to file their request as an adversary proceeding pursuant to the Federal Rules of Bankruptcy Procedure.

### A. Rule 7001

Part VII of the Federal Rules of Bankruptcy Procedure governs adversary proceedings in bankruptcy cases, and incorporates a number of the Federal Rules of Civil Procedure. "Rule 7001 designates which proceedings are adversary proceedings." In re Biery, 2014 WL 1431947, at 4 (Bankr. E.D. Ky).

**Rule 7001. Scope of Rules of Part VII.**

> An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:
>
> . . .
>
> (2) a proceeding <u>to determine the validity, priority, or extent of a lien or other interest in property</u>, other than a proceeding under Rule 4003(d);
>
> . . .

4

(9) a proceeding <u>to obtain a declaratory judgment relating to any of the foregoing</u>.

Fed.R.Bankr.P. 7001(2),(9)(Emphasis supplied). Under this Rule, a request to determine an interest in property should be brought by filing an adversary proceeding, and not by a motion. <u>In re Fairfax Homes, Inc.</u>, 2014 WL 804772, at 1 (Bankr. D.D.C.). Courts are generally reluctant to summarily determine a party's rights to property as part of a bankruptcy motion. <u>In re Eastman Kodak Company</u>, 2012 WL 2255719, at 2 (Bankr. S.D.N.Y.).

> Adversary proceedings provide procedural safeguards for those types of actions specified in Bankruptcy Rule 7001 that Congress deemed to impact the rights and property of non-debtors in such a way as to warrant additional procedural protections. *Cf. Janc v. Coordinating Bd. For Higher Educ. (In re Janc)*, 251 B.R. 525, 545 (Bankr. W.D. Mo. 2000)("Rule 7001, *et seq*, provides the necessary procedural mechanisms by which the bankruptcy court may exercise its jurisdiction over issues that Congress recognized implicate the rights and property of non-debtors beyond the scope of ordinary debts").

<u>In re Phile</u>, 490 B.R. 250, 257 (Bankr. S.D. Ohio 2011). Adversary proceedings provide greater procedural protections by establishing specific steps grounded in principles of due process. <u>In re Whitehall Jewelers Holdings, Inc.</u>, 2008 WL 2951974, at 6 (Bankr. D. Del.).

### B. The Debtors' request

In this case, the Debtors propose to market and sell certain French Artifacts under §363 of the Bankruptcy Code, free and clear of liens, claims, and interests. Under the circumstances of this case, however, it appears that (1) third parties, including the French Government, may assert an "interest" in the French Artifacts within the meaning of §363, and that (2) any such "interest" warrants the procedural safeguards of an adversary proceeding under Rule 7001. The Court reaches this conclusion for at least three reasons.

5

First, the Debtors acknowledge that they had "agreed to make use of such objects in conformity with the respect due the memory of their initial owners and to not carry out any commercial transaction concerning such objects nor any sale of any one of them nor any transaction entailing their dispersion, if not for the purposes of an exhibition." (Doc. 28, ¶ 7).

The assurances were made in a letter to French officials in 1993, when the Debtors were seeking an award of the French Artifacts, and the agreement was recognized by the Fourth Circuit Court of Appeals in R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel, 435 F.3d 521, 528 (4th Cir. 2006). The Fourth Circuit also noted that the Debtors' predecessor made a commitment in the 1993 letter that "the artifacts will only be used [for] a cultural purpose and will not, therefore, be part of any operations which would lead to their dispersion, but to the exception of exhibition purposes, and none of the artifacts will be sold." R.M.S. Titanic v. The Wrecked and Abandoned Vessel, 435 F.3d at 527.

Second, the Debtors acknowledge that the agreement is a restriction on their ability to transfer the French Artifacts. At the hearing on their Motion to market and sell certain French Artifacts, for example, the Debtors asserted they have title to the French Artifacts based on the award from the French officials in 1993, but that their ownership is subject to a "limitation on transferability" arising out of their agreement with the French agency. In other words, the Debtors recognize that the French Government holds a "limitation on the transferability" of the Artifacts, but claim that the restriction is distinguishable from a property interest in the French Collection.

Third, the Debtors acknowledge that the market views the Debtors as lacking clear title to convey the French Artifacts. As stated by the Debtors:

> Although the Debtors have absolute title to the French Artifacts, <u>there is a perception in the market that the Debtors cannot sell the French Artifacts</u>, let alone sell them free and clear of any liens, encumbrances or restrictions. <u>This is fueled in part by</u>

6

> NOAA's stated interpretation of the Covenants and Conditions imposed by the EDVA Court. Consequently, most of the venerable auction houses best suited to sell such valuable property have for years refused to commence an auction selling individual artifacts unless or until all questions regarding title are answered. The same is true for private individuals and legal entities who have expressed interest in a private treaty sale involving one or more of the artifacts. The existence of the Covenants and Conditions, which as a matter of law do not apply to the French Artifacts, has frozen the Debtors' efforts to present this court with a stalking horse bidder, or to commence any meaningful process to identify specific artifacts to be sold, a process in which to sell them, or prospective purchasers.

(Doc. 79, ¶ 2)(Emphasis supplied). The Covenants and Conditions referred to by the Debtors are the "Covenants and Conditions for the Future Disposition of Objects Recovered from the *RMS Titanic* by RMS Titanic, Inc. Pursuant to an *In Specie* Salvage Award Granted by the United States District Court for the Eastern District of Virginia." (Doc. 81, United States' Exhibit 2).

### C. Conclusion

In conclusion, the Debtors acknowledge that (1) they had agreed with French officials not to carry out a commercial transaction concerning the French Artifacts "nor any sale of any one of them nor any transaction entailing their dispersion," (2) that the agreement is a restriction on their ability to transfer the French Artifacts, and (3) that the market views the Debtors as lacking clear title to convey the French Artifacts.

For at least these reasons, it appears that third parties, including the French Government, may assert an "interest" in the French Artifacts within the meaning of §363(f) of the Bankruptcy Code.

Under Rule 7001, an action to determine the validity or extent of a lien or "other interest in property" should be filed as an adversary proceeding, because it may impact the rights and property of a non-debtor in such a way as to warrant additional procedural protections. See In re Phile, 490 B.R. at 257.

7

Case 3:93-cv-00902-REP  Document 472-1  Filed 06/17/18  Page 8 of 8 PageID# 826

In this case, therefore, the Debtors' request to market and sell the French Artifacts should be filed as an adversary proceeding under Rule 7001 of the Federal Rules of Civil Procedure.

Accordingly:

**IT IS ORDERED** that the Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rules 6003, 6004, and 9014 Authorizing the Debtors to Market and Sell Certain Titanic Artifacts Free and Clear of Liens, Claims, and Interests is denied, without prejudice.

**DATED** this 22 day of July, 2016.

**BY THE COURT**

PAUL M. GLENN
United States Bankruptcy Judge

8