# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

---

## CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF PREMIER EXHIBITIONS, INC.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

45353971;6

# TABLE OF CONTENTS

**Page**

I.   DEFINITIONS AND RULES OF CONSTRUCTION ..................................................... 2

    A.   Defined Terms. ..................................................................................................... 2

    B.   Other Terms. ....................................................................................................... 13

    C.   Computation of Time. ......................................................................................... 13

    D.   Exhibits. .............................................................................................................. 13

II.  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS ..................................................................................................................... 13

    A.   Summary. ............................................................................................................. 13

    B.   Unclassified Claims (All Debtors). ..................................................................... 14

    C.   Classification and Treatment (Classes 1 – 4 Premier Claims and Class 5
        Intercompany Claims). ......................................................................................... 16

III. LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND
    DISTRIBUTION PURPOSES. ....................................................................................... 18

IV.  ACCEPTANCE OR REJECTION OF THE PLAN ......................................................... 19

    A.   Voting Classes. ................................................................................................... 19

    B.   Record Date for Holders of Impaired Class 4 Premier Equity Interests. ............... 19

    C.   Voting Rights of Holders of Disputed Claims. ..................................................... 20

    D.   Acceptance by Impaired Classes. ......................................................................... 20

    E.   Acceptance by Impaired Interests. ....................................................................... 20

    F.   Presumed Acceptance of the Plan. ....................................................................... 20

    G.   Presumed Rejection of the Plan ........................................................................... 20

V.   PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR
    UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES ........................... 21

    A.   Resolution of Disputed Claims. ........................................................................... 21

    B.   Reserve for Disputed Claims. .............................................................................. 21

| | | | |
|---|---|---|---|
| VI. | | IMPLEMENTATION OF THE PLAN ............................................................. | 22 |
| | A. | Employment of the CRO. ........................................................................ | 22 |
| | B. | Disposition of the French Artifacts......................................................... | 22 |
| | C. | Disposition of the American Artifacts .................................................... | 22 |
| | D. | Administration and Sale of Liquidating Trust Assets Other than the French Artifacts................................................................................................. | 23 |
| | E. | Vesting of Assets. ................................................................................... | 23 |
| | F. | Establishment of the Liquidating Trust.................................................... | 24 |
| | G. | Prosecution of Estate Causes of Action by the Liquidating Trustee. .................. | 28 |
| VII. | | DISTRIBUTIONS UNDER THE PLAN ........................................................ | 28 |
| | A. | In General................................................................................................ | 28 |
| | B. | Manner of Payment Under the Plan.......................................................... | 29 |
| | C. | Manner of Distribution of Other Property. .............................................. | 29 |
| | D. | Setoffs. .................................................................................................... | 29 |
| | E. | Distribution of Unclaimed Property......................................................... | 29 |
| | F. | De Minimus Distributions ....................................................................... | 29 |
| | G. | Saturday, Sunday or Legal Holiday. ........................................................ | 29 |
| | H. | Delivery of Distributions, Address of Holder.......................................... | 30 |
| VIII. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... | 30 |
| | A. | Assumption. ............................................................................................ | 30 |
| | B. | Assumption and Cure Payment Objection................................................ | 30 |
| | C. | Rejection. ................................................................................................ | 32 |
| | D. | General..................................................................................................... | 32 |
| | E. | Insurance Policies. .................................................................................. | 33 |
| IX. | | EFFECTIVENESS OF THE PLAN ............................................................... | 33 |
| | A. | Conditions Precedent. ............................................................................. | 33 |

|  | B. | Notice of Effective Date. | 34 |
| X. | | RETENTION OF JURISDICTION | 34 |
| XI. | | LIMITATION OF LIABILITY, RELEASES AND INJUNCTION. | 37 |
|  | A. | Exculpation. | 37 |
|  | B. | Injunction Enjoining Holders of Claims Against and Equity Interests in the Debtors. | 38 |
|  | C. | No Discharge of the Debtors | 39 |
| XII. | | MISCELLANEOUS PROVISIONS | 39 |
|  | A. | Payment of Statutory Fees. | 39 |
|  | B. | Headings. | 39 |
|  | C. | Binding Effect. | 40 |
|  | D. | Revocation or Withdrawal. | 40 |
|  | E. | Governing Law. | 40 |
|  | F. | Withholding, Reporting, and Payment of Taxes. | 40 |
|  | G. | Other Documents and Actions. | 41 |
|  | H. | Modification of the Plan. | 41 |
|  | I. | Notices. | 41 |
|  | J. | Severability of Plan Provisions. | 43 |
|  | K. | Successors and Assigns | 44 |
|  | L. | Post-Effective Date Notice. | 44 |

453353971;6

The Official Committee of Equity Security Holders (the "Equity Committee") of Premier Exhibitions, Inc. ("Premier"), Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG proposes the following Chapter 11 Plan (along with any amendments, supplements or exhibits hereto, collectively, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code for the resolution of all Claims against and interests in the following jointly administered Chapter 11 debtors (collectively, "Debtors" and each a "Debtor"): Premier; RMS Titanic, Inc. ("RMST") (Case No. 3:16-bk-02230-PMG); Premier Exhibitions Management, LLC ("Exhibitions Management") (Case No. 3:16-bk-02233-PMG); Arts and Exhibitions International, LLC ("AEI") (Case No. 3:16-bk-02238-PMG); Premier Exhibitions International, LLC ("Exhibitions International") (Case No. 3:16-bk-02234-PMG ); Premier Exhibitions NYC, Inc. ("Exhibitions NYC") (Case No. 3:16-bk-02235-PMG); Premier Merchandising, LLC ("Merchandising") (Case No. 3:16-bk-02236-PMG); and Dinosaurs Unearthed Corp. ("DUC") (Case No. 3:16-bk-02237-PMG) and their respective bankruptcy estates.

The Disclosure Statement in Support of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders ("Disclosure Statement"), which accompanies the Plan, discusses the Debtors' history, business, contracts, leases, results of operations, resolution of material disputes, significant potential litigation, financial projections for the liquidation and distribution of the Debtors' assets, and contains a summary discussion of the Plan. Holders of Claims are encouraged to read the Disclosure Statement before voting to accept or reject the Plan.

Following solicitation of acceptances for the Plan, the Equity Committee, as Plan proponent, will seek the Bankruptcy Court's confirmation of the Plan. No solicitation materials other than the Disclosure Statement and any schedules, exhibits or letters attached thereto or referenced therein have been authorized by the Equity Committee or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## I. DEFINITIONS AND RULES OF CONSTRUCTION

### A. Defined Terms.

As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1. "Administrative Expense" means any cost or expense of administration of the Debtors' jointly administered Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Debtors' Estates, any actual and necessary post-petition expenses of administering and liquidating the Debtors' Estates, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code.

2. "AEI" means Arts and Exhibitions International, LLC, debtor and debtor in possession in Case No. 3:16-bk-02238-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

3. "Allowed Claim" means, except as otherwise allowed or otherwise provided herein, a Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed on the Debtors' Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which no objection to the allowance thereof has been interposed. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not include interest on such Claim accruing after the Petition Date.

4. "Allowed Class __ Claim" means an Allowed Claim in the Class specified.

5. "American Artifacts" means artifacts recovered by RMST from the site of the wreck of RMS Titanic during expeditions held in 1993, 1994, 1996, 1998, 2000 and 2004.

6. "Artifacts" means the American Artifacts and the French Artifacts and all associated assets and rights including, without limitation, all intellectual property, intangibles, contract rights, cash and receivables.

7. "Assets" means all assets of the Debtors' Estates including "property of the estate" as described in section 541 of the Bankruptcy Code and shall, without limitation, include Cash, Estate Causes of Action, any and all claims and causes of action that may be asserted by one or more of the Debtors against any third party or third parties, securities, proceeds of insurance and insurance policies, all rights and interests, all real and personal property, and all files, books and records of the Debtors' Estates.

8. "Bankruptcy Cases" means the Debtors' jointly administered cases under Chapter 11 of the Bankruptcy Code.

9. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended.

10. "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division or, in the event such court ceases to exercise jurisdiction over any of the Debtors' jointly administered Chapter 11 Cases, such other court(s) that may exercise jurisdiction over such Chapter 11 Case(s).

11. "Bankruptcy Rules" means, collectively, (i) the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, and (ii) the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

12. "Beneficiary" means beneficiary of the Liquidating Trust.

13. "Business Day" means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

14. "Cash" means cash or cash equivalents.

15. "Chapter 11 Cases" means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date.

45353971;6

16.     "Claim" means (a) any right to payment from a Debtor's Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from such Debtor's Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17.     "Claim Objection Deadline", means the date set in the Confirmation Order as the last date by which objections may be made to the allowance of claims or interests, which date shall not exceed 180 days after the Effective Date.

18.     "Claims Bar Date" means October 24, 2016 or, in the case of a Governmental Entity, 180 days after the Petition Date, as set pursuant to the Bankruptcy Court's Notice of Chapter 11 Bankruptcy Case (Premier Docket No. 83).

19.     "Class" means one of the Classes of Claims or Classes of Equity Interests designated in the Plan.

20.     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket, provided, however, that if such Confirmation Order is subject to a stay issued by a court of competent jurisdiction, "Confirmation Date" means the date upon which the Confirmation Order is no longer subject to a stay.

21.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

22.     "Covenants" means the Revised Covenants and Conditions set forth in Exhibit A to the August 12, 2010 Opinion of the District Court in the US Artifact Litigation, *R.M.S. Titanic v. Wrecked & Abandoned Vessel, its Engines, Tackle, Apparel, Appurtenances, Cargo, etc*., 742 F. Supp. 2d 784 (E.D. VA, 2010).

23.     "CRO" means the Person selected by the Liquidating Trustee, with the consent of the Equity Committee and in accordance with the terms of this Plan and the Liquidating Trust

45353971;6

Agreement, to act as the Chief Reorganization Officer for the Premier Debtors after the Effective Date.

24. "Debtors" means Premier, RMST, AEI, Exhibitions Management, Exhibitions International, Exhibitions NYC, Merchandising and DUC as debtors and debtors in possession in the Bankruptcy Cases.

25. "Disbursing Agent" means the Liquidating Trustee or any entity selected by the Liquidating Trustee to act as its agent in conducting the disbursements to Holders of Allowed Claims pursuant to the Liquidating Trust Agreement.

26. "Disclosure Statement" means that certain document entitled "*The Disclosure Statement in Support of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders*" filed in the Chapter 11 Case of Premier, including the exhibits attached thereto and to the Plan Supplement, either in its present form or as it may be amended, modified or supplemented from time to time.

27. "Disputed Claim" means any Claim (i) which is listed in the Schedules as unliquidated, disputed, contingent, and/or unknown and for which no proof of Claim has been filed; (ii) as to which a Proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; or (iii) as to which a Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

28. "Disputed Claims Reserve" means the Cash to be set aside for, and in an amount sufficient to pay the required distribution under the Plan to all Disputed Claims which have not been finally adjudicated as of the Effective Date and which may become Allowed Claims prior to the Final Distribution Date.

29. "District Court" means the United States District Court for the Eastern District of Virginia.

45353971;6

30. "DUC" means Dinosaurs Unearthed Corp., debtor and debtor in possession in Case No. 3:16-bk-02237-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

31. "DUC Equity Interests" means any and all equity interest in DUC.

32. "Effective Date" means the first day Business Day after all conditions precedent shall have been satisfied or waived pursuant to the provisions of Article IX, below, the Confirmation Order has been entered on the docket of the Bankruptcy Court and the District Court Order has been entered on the docket of the District Court, and no stay of the Confirmation Order is in effect.

33. "Equity Committee" shall have the meaning ascribed to it in the preamble to this Plan.

34. "Equity Interests" means, collectively, the Exhibitions International Equity Interests, the Exhibitions Management Equity Interests, the Exhibitions NYC Equity Interests, the Merchandising Equity Interests and the RMST Equity Interests.

35. "Estate" means, with respect to each Debtor, the estate created by section 541(a) of the Bankruptcy Code upon the Petition Date.

36. "Estate Causes of Action" means, with respect to each of the Debtors, any and all claims, demands, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages (actual, compensator or punitive), judgments, third-party claims, counterclaims and cross claims (including, but not limited to, any Chapter 5 avoidance or recovery actions under the Bankruptcy Code or recognized under any applicable state law) whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on, or instituted after, the Effective Date. Estate Causes of Action include, without limitation, those which are: (i) property of the Bankruptcy Estates under and pursuant to section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover including

6

45353971;6

pursuant to section 542 of the Bankruptcy Code; (iv) for avoidable transfers and preferences under and pursuant to sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under section 506(c) of the Bankruptcy Code; (vii) for subordination under section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) against any and all current and/or former officers and directors of the Debtors or any affiliates; (xi) for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xii) under and pursuant to any policies for insurance, including for bad faith, maintained by the Debtors, including, without limitation, any liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code; (xvii) for common law torts or aiding and abetting common law torts; (xviii) contract or quasi contract; (xix) derivative based; (xx) statutory claims; (xxi) arise out of or are related in any way to actions or claims pending as of the Effective Date; (xxii) for negligence including professional negligence; (xxiii) for unjust enrichment; (xxiv) to disallow or subordinate any proof of claim filed in the Chapter 11 Cases; (xxv) to recover an avoidable transfer from any mediate or subsequent transferee; or (xxvi) any claim held or assertable by either the Bankruptcy Estates or Liquidating Trustee.

37.    "Exhibitions International Equity Interests" means any and all equity interest in Exhibitions International.

38.    "Exhibitions International" means Premier Exhibitions International, LLC, debtor and debtor in possession in Case No. 3:16-bk-02234-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

39. "Exhibitions Management" means Premier Exhibitions Management, LLC, debtor and debtor in possession in Case No. 3:16-bk-02233-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

40. "Exhibitions Management Equity Interests" means any and all equity interest in Exhibitions Management.

41. "Exhibitions NYC" means Premier Exhibitions NYC, Inc., debtor and debtor in possession in Case No. 3:16-bk-02235-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

42. "Exhibitions NYC Equity Interests" means any and all equity interest in Exhibitions NYC.

43. "File," "Filed," "Files," or "Filing" means any document(s) properly and timely filed with the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the Bankruptcy Court for each of the Chapter 11 Cases, served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

44. "Final Distribution" means the final distribution made to Holders of Equity Interests or Allowed Claims on the Final Distribution Date.

45. "Final Distribution Date" means the first Business Day on which any and all Disputed Claims have been resolved pursuant to a Final Order and the Liquidating Trust Assets have been liquidated, reduced to Cash, and distributed *pro rata* to holders of Allowed Claims.

46. "Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or petition for certiorari shall have been waived in writing in form and substance satisfactory to the Equity Committee prior to the Effective Date; or Reorganized Premier [or the Liquidating Trustee, as the case may be,] after the Effective Date, respectively, or, in the event that an appeal,

writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed or from which reargument or rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

47.    "First Day Pleadings", means the pleadings filed by the Debtors on the Petition Date in connection with their respective Chapter 11 cases.

48.    "French Artifacts" means approximately 2,100 artifacts recovered from the site of the wreck of RMS Titanic by Titanic Ventures Limited Partnership, predecessor in interest to RMST with the assistance of Institut Francaise de Recherche Pour l'Exploitation de la Mer over the course of 32 dives during an expedition in 1987.

49.    "General Unsecured Claim" means any Claim that is not a Secured Claim, an Administrative Expense, a Priority Tax Claim, a Class 5 Intercompany Claim, or an Equity Interest.

50.    "Governmental Unit" has the meaning ascribed to it in 11 U.S.C. §101(27).

51.    "Guernsey's" means Guernsey's, a division of Barlan Enterprises, Ltd.

52.    "Holder" means the owner of a Claim or Equity Interest.

53.    "Initial Distribution" means a distribution, made as soon as practicable after the Effective Date in the discretion of the Liquidating Trustee, to Holders of Allowed Class 2 Claims, Allowed Class 3 Claims, and Premier Equity Interests, on account of such Allowed Claims and Premier Equity Interests, their Pro Rata Shares of Available Cash in accordance with the terms of this Plan.

54.    "Interim Distributions" means one or more Pro Rata Distributions of Available Cash made in accordance with the Plan and/or any Order of the Bankruptcy Court on account of Allowed Claims before the Final Distribution.

55.    "Intercompany Claims" means any and all Claims (if any) held by one of the Debtors against any other Debtor(s), including (a) any account reflecting intercompany book

9

entries by a Debtor with respect to another Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor(s).

56. "Liquidating Trust" means the trust created pursuant to the Plan, Confirmation Order, and the Liquidating Trust Agreement.

57. "Liquidating Trust Agreement" means that certain liquidating trust agreement by and between the Debtor and the Liquidating Trustee to be entered pursuant to the Plan and the Confirmation Order, substantially in the form included in Exhibit "_" to the Plan Support Agreement, as may be amended from time to time.

58. "Liquidating Trust Assets" means all of Premier's Assets and all of Premier's right, title and interest in and to the Premier Entities and all of their respective Assets, including (without limitation) the French Artifacts, the American Artifacts (subject to the Covenants), and the Estate Causes of Action.

59. "Liquidating Trustee" means the Person [2] approved by the Court as Liquidating Trustee, and any successor trustee(s) appointed pursuant to the Liquidating Trust Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement. Whenever the Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating Trustee's powers, rights and obligations as set forth in the Liquidating Trust Agreement.

60. "Merchandising" means Premier Merchandising, LLC, debtor and debtor in possession in Case No. 3:16-bk-02236-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code;

61. "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense.

---

[2] The identity of the Liquidating Trustee and a copy of the Liquidating Trustee Agreement will be included in the Plan Supplement.

45353971;6

62. "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, Governmental Unit, official committee appointed by the Office of the United States Trustee, unofficial committee of creditors, or other entity.

63. "Petition Date" means June 14, 2016, the date on which the Debtors filed their respective voluntary petitions commencing the Chapter 11 Cases.

64. "Plan" means this Chapter 11 Plan including all exhibits hereto, either in their present form or as they may be altered, amended, or modified from time to time.

65. "Plan Supplement" means the compilation of documents and forms of documents, schedules, attachments and exhibits to this Plan, to be filed by the Equity Committee following the filing of this Plan as set forth herein, by no later than (A) ten (10) calendar days prior to any voting deadline set by the Court for casting ballots to accept or reject this Plan or (B) such later date as may be approved by the Court on notice to parties in interest, as such Plan Supplement documents may be amended, modified, or supplemented from time to time.

66. "Premier Entities" means the Debtors, 1032403 B.C. Ltd., a British Columbia company, DinoKing Tech Inc., a British Columbia corporation, DinoKing International, Inc., a British Columbia corporation, Premier Hollywood Pictures LLC, a Nevada limited liability corporation, RMS Titanic Trust, PRXI International Holdings CV, a Netherlands corporation, and RMS Titanic (United Kingdom) Ltd. and any and all direct or indirect subsidiaries of Premier in existence on the Effective Date.

67. "Premier" means Premier Exhibitions, Inc., debtor and debtor in possession in Case No. 3:16-bk-02232-PMG pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

68. "Premier Operating Capital Distribution", means a distribution to, or retention by the Liquidating Trust on the Effective Date of cash from the estate to be reserved for working capital needs of the Liquidating Trust.

45353971;6

69.     "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

70.     "Professional Person" means for purposes of this Plan, any professional person employed by the Debtor pursuant to sections 327 or 1103 of the Bankruptcy Code.

71.     "Pro Rata," "Pro Rata Share," and "Pro Rata Basis" means, at any time, the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes; and "face amount," as used herein, means (a) when used in reference to a Disputed or disallowed Claim, the full stated liquidated amount claimed by the claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

72.     "Premier Equity Interests" means all the equity interest in Premier represented by the issued and outstanding equity securities of Premier.

73.     "Record Date" means the date set forth in the Order Approving the Disclosure Statement that accompanies this Plan for determination of Allowed Interests for purposes of casting Ballots.

74.     "RMST" means RMS Titanic, Inc., successor to Titanic Ventures Limited Partnership, debtor and debtor in possession under Chapter 11 of the Bankruptcy Code in Case No. 3:16-bk-02230-PMG pending before the Bankruptcy Court.

75.     "Secured Claim" means a Claim against a Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's Estate securing such Claim.

76.     "Taxes" means all income, gaming, franchises, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority.

12

77.    "Titanic Artifacts" means the French Artifacts and the American Artifacts that were property of the Estate of RMST as of the Petition Date.

78.    "US Artifact Litigation", means the admiralty case pending in the District Court, styled *R.M.S. Titanic v. Wrecked & Abandoned Vessel, its Engines, Tackle, Apparel, Appurtenances, Cargo, etc,* Action No. 2:93cv902.

### B.    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Terms defined in the singular shall include the plural and vice versa. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

### C.    Computation of Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

### D.    Exhibits.

All exhibits to the Plan and to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

## II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary.

Premier and Intercompany Claims

The chart below summarizes the classes of Claims and Equity Interests of Premier for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| CLASS | STATUS |
|---|---|
| Class 1: Other Priority Claims | Unimpaired - not entitled to vote |
| Class 2: Secured Claims | Unimpaired - not entitled to vote |
| Class 3: General Unsecured Claims | Impaired – entitled to vote |

| CLASS | STATUS |
|---|---|
| Class 4: Premier Equity Interests | Impaired – entitled to vote |
| Class 5: Intercompany Claims | Impaired, Deemed to Reject Plan. |

B.      **Unclassified Claims (All Debtors).**

Administrative Expense Claims.

a.      General.

Subject to the allowance procedures and deadlines provided herein, the Liquidating Trustee or, at the discretion of the Liquidating Trustee, the CRO shall pay to each holder of an Allowed Administrative Expense, on account of the Allowed Administrative Expense, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense, unless the holder agrees to other treatment.  Except as otherwise provided herein or a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense that is an Allowed Claim as of the Effective Date shall be made on the later of forty-five (45) calendar days after the Effective Date or the date such payment would have become due for payment of such Allowed Administrative Expense in the absence of the Chapter 11 Case, whether pursuant to contract or applicable non-bankruptcy law; and (ii) payment of an Administrative Expense that becomes an Allowed Claim following the Effective Date shall be made on or before (a) the date that is thirty (30) days after an order deeming such Administrative Expense an Allowed Claim becomes a Final Order, or (b) the Final Distribution Date, whichever is earlier.

b.      Deadlines for Filing Claims for Administrative Expenses.

**(1)      Pre-Effective Date Claims and Expenses.**

All applications for final compensation of Professional Persons for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Expenses incurred before the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), 507(a)(1) or 1103 (except only for post-petition obligations incurred through the Effective Date in the ordinary course of Debtor's post-petition

business and obligations under section 1930 of title 28 of the United States Code) shall be filed no later than the first Business Day that is not less than forty-five (45) days after the Effective Date (the "Administrative Expense Claims Bar Date"). Professional Persons and others that do not file such requests on or before the Administrative Expense Claims Bar Date shall be barred from asserting such Claims against the Liquidating Trust, the Liquidating Trustee, the Debtors, the Premier Entities or any other Person or entity, or any of their respective property. Objections to applications of Professional Persons or others for compensation or reimbursement of expenses must be Filed and served on the jointly administered Debtors and their counsel, the Liquidating Trustee and its counsel, as well as the Professional Persons and others to whose application the objection is addressed, in accordance with the Bankruptcy Code, the Bankruptcy Rules or pursuant to any other procedure set forth by an order of the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee will comply with such reporting requirements, and payment of quarterly fees to the Office of the United States Trustee as required by applicable law.

(2) <strong>Tax Claims.</strong>

Except as otherwise provided in Section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, all requests for payment of Claims by a governmental unit (as defined under section 101(27) of the Bankruptcy Code) for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) ninety (90) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Except as otherwise provided in Section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any holder of a Claim for taxes is required to File a request for a payment of the post-petition taxes and other monies due related to such taxes. Except as otherwise provided in Section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any holder of a Claim for taxes which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against

45353971;6

any of the Estate, the Liquidating Trustee or their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no distribution under the Plan or otherwise on account of such Claim.

**(3)     Priority Tax Claims.**

Except as otherwise agreed to by the parties, or ordered by the Court, as soon as practicable after the Effective Date, each holder of an unpaid Allowed Priority Tax Claim shall receive payment in full in an amount equal to the Allowed Priority Tax Claim.

**C.     Classification and Treatment (Classes 1 – 4 Premier Claims and Class 5 Intercompany Claims).**

Class 1:  Other Priority Claims.

a.     Classification:  Class 1 consists of all Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, except Priority Tax Claims and Administrative Expenses.

b.     Treatment:  The Liquidating Trustee shall pay all Allowed Claims in this class in full, in Cash, on the later of: (i) 45-days after the Effective Date; and (ii) within ten days of the date on which an order allowing such Claim becomes a Final Order, in each case, or as soon thereafter as is practicable.  Class 1 is not impaired, and the holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

Class 2:  Secured Claims.

a.     Classification:  Class 2 consists of Secured Claims of Jihe Zang, Lange Feng and Haiping Zou.

b.     Treatment:   Holders of Allowed Class 2 Claims shall receive payment in full in Cash in the amount of their respective Allowed Secured Claims.  Distributions to holders of Allowed Class 2 Claims shall occur on the later of (i) ninety (90) days after the Effective Date if such Secured Claim is deemed to be an Allowed Claim, (ii) the closing of the sale by auction of the French Artifacts or the sale of the American Artifacts and (iii) the first Business Day that is at least thirty (30) days from the date the Secured Claim becomes an Allowed

16

Claim, if it is not an Allowed Claim on the Effective Date. Class 2 is not impaired, and the holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

Class 3:  General Unsecured Claims.

a.      Classification:  Class 3 consists of all General Unsecured Claims against the Debtors.

b.      Treatment:  Unless a Holder of an Allowed Class 3 Claim agrees to accept a lesser treatment of such Claim, each Holder of an Allowed Class 3 Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, in full satisfaction thereof, its Pro Rata Share of the Initial Distribution.  In addition, after the Initial Distribution but prior to the Final Distribution Date, the Liquidating Trustee may, but is not required to, make one or more Interim Distributions to the Holders of Allowed Class 3 Claims of such Holders' Pro Rata Share of Available Cash, when, in the discretion of the Liquidating Trustee, the Liquidating Trust has sufficient Available Cash to make such Interim Distributions.  Finally, on the Final Distribution Date, each Holder of an Allowed Class 3 Claim shall receive its Pro Rata Share of the Available Cash remaining in the Liquidating Trust, until the Allowed Class 3 Claim Amount of such Allowed Claim is paid in full.  Class 3 is impaired, and the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

Class 4:  Premier Equity Interests

a.      Classification: Class 4 consists of the Premier Equity Interests.

b.      Treatment:  Unless a Holder of a Class 4 Premier Equity Interest agrees to accept a lesser treatment of such Premier Equity Interest, each holder of such Premier Equity Interest shall receive, as soon as practicable in the discretion of the Liquidating Trustee, its Pro Rata Share of the Initial Distribution after (i) each Holder of Allowed Class 2 and Class 3 Claims has been paid in full, and (ii) Premier shall have received the Premier Operating Capital Distribution.  In addition, after the Initial Distribution but prior to the Final Distribution Date, the Liquidating Trustee may, but is not required to, make one or more Interim Distributions to the Holders of Premier Equity Interests of such Holders' Pro Rata Share of Available Cash (after (i)

17

each Holder of Allowed Class 2 and Class 3 Claims has been paid in full, and (ii) Premier shall have received the Premier Operating Capital Distribution, when, in the discretion of the Liquidating Trustee, the Liquidating Trust has sufficient Available Cash to make such Interim Distributions). Finally, on the Final Distribution Date, each Holder of a Premier Equity Interest shall receive its Pro Rata Share of the Available Cash (after (i) each Holder of Allowed Class 2 and Class 3 Claims has been paid in full, and (ii) Premier shall have received the Premier Operating Capital Distribution remaining in the Liquidating Trust). Class 4 is impaired, and the Holders of Class 4 Premier Equity Interests are entitled to vote to accept or reject the Plan.

<u>Class 5: Intercompany Claims</u>

a.  Classification: Class 5 consists of all Intercompany Claims.

b.  On the Effective Date, all Intercompany Claims shall be cancelled in full and holders of Intercompany Claims shall receive no distribution and retain no Property on account of such Claims. Class 5 is Impaired under this Plan. Holders of Allowed Intercompany Claims in Class 5 are deemed to reject the Plan.

## III.  <u>LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND DISTRIBUTION PURPOSES.</u>

Solely for the purposes of voting on, confirmation of, and Distributions to be made to Holders of Class 4 Premier Equity Interests and Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to the confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for the purposes of this Plan, its confirmation and Distributions made pursuant to it.

Pursuant to the Confirmation Order (i) all assets and liabilities of the consolidated Debtors will be deemed to be merged solely for the purposes of this Plan, its confirmation and Distributions made pursuant to it, (ii) the obligations of each Debtor will be deemed to be the obligation of the consolidated Debtors for the purposes of this Plan, its confirmation and Distributions made pursuant to it, (iii) any Claims Filed or to be Filed in connection with any such obligations will be

18

deemed Claims against the consolidated Debtors and all Claims filed against more than one Debtor for the same liability will be deemed to be one Claim against any obligation of the consolidated Debtors, (iv) each Claim Filed in the Chapter 11 Case of any Debtor will be deemed to be Filed against the Debtors in the consolidated Chapter 11 Cases, (v) all transfers, disbursements and Distributions made by any Debtor hereunder on Allowed Claims will be deemed to be made by the consolidated Debtors, and (vi) all guarantees of any Debtors of the obligations of any other Debtor shall be deemed to be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of Property available for Distribution to such Class without regard to which Debtor was originally liable for such Claim.

Notwithstanding the foregoing, such limited consolidation shall not affect (a) any obligations under any contract or lease that was entered into during the Chapter 11 Cases or executory contracts and unexpired leases that have been or will be assumed and assigned pursuant to this Plan, (b) distributions from any insurance policies or proceeds of such policies, or (c) guarantees that are required to be maintained post-Effective Date in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases, or that have been, or will be pursuant to this Plan, assumed and assigned. The limited consolidation proposed herein shall not affect each Debtor's obligations to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

IV. **ACCEPTANCE OR REJECTION OF THE PLAN**

    A. **Voting Classes.**

Each Holder of an Allowed Class 3 Claim and each Holder of a Class 4 Premier Equity Interest shall be entitled to vote to accept or reject the Plan.

    B. **Record Date for Holders of Impaired Class 4 Premier Equity Interests.**

Holders of Premier Equity Interests as of the Record Date may vote Ballots to accept or reject the Plan.

### C.    <u>Voting Rights of Holders of Disputed Claims.</u>

A Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is disputed, provided an objection to such Claim has been filed no later than seven (7) days prior to the deadline for casting ballots on the Plan, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a).

### D.    <u>Acceptance by Impaired Classes.</u>

Impaired classes of Claims shall have accepted the Plan if (i) the Holders (other than any entity designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in each such Class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any entity designated under section 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in each such Class have voted to accept the Plan.

### E.    <u>Acceptance by Impaired Interests.</u>

The impaired class of Premier Equity Interests shall have accepted the Plan if the Holders (other than any entity designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Interests actually voting in such Class have voted to accept the Plan.

### F.    <u>Presumed Acceptance of the Plan.</u>

Classes 1 and 2 are unimpaired under the Plan and, therefore, are conclusively presumed by the Bankruptcy Code to accept the Plan.

### G.    <u>Presumed Rejection of the Plan</u>

Holders of Class 5 interests are impaired and will receive nothing under the Plan and, therefore, are conclusively presumed by the Bankruptcy Code to reject the plan.

## V. PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES.

### A. Resolution of Disputed Claims.

As of the Effective Date, and subject to the provisions of this Plan, the Liquidating Trustee shall have sole authority for investigating, administering, monitoring, implementing, litigating and settling all Disputed Claims. From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to make and file, and to prosecute, objections to Claims, including, but not limited to, Administrative Expenses and Priority Tax Claims. All objections shall be filed prior to the Liquidating Trustee Claim Objection Deadline and served upon the Holder of the Claim to which the objection is made.

### B. Reserve for Disputed Claims.

Cash which would be issued and distributed on account of holders of Disputed Claims in the event that such Disputed Claims become Allowed Claims, shall instead be placed in the Disputed Claims Reserve maintained by the Liquidating Trustee. Such Cash in the Disputed Claims Reserve will be reserved for the benefit of holders of such Disputed Claims pending determination of their entitlement thereto. Unless the Bankruptcy Court orders otherwise, the Liquidating Trustee will reserve Pro Rata distributions for such Disputed Claims based upon the full amount of the Disputed Claims or (a) in the case of a Disputed Class 2 Claim or Class 3 Claim, in the full amount of the Allowed Class 2 Claim amount or Class 3 Claim Amount, as the case may be, and (b) in the case of a Disputed Claim that is an Administrative Claim, Cash in the full amount of such Disputed Claim. No reserve shall be required for any Disputed Claim to the extent of any effective insurance coverage therefore. Such Cash so reserved shall be distributed by the Liquidating Trustee to the holder of a Disputed Claim to the extent that such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.

To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of Cash that has been reserved, the resulting surplus Cash shall be allocated among

45353971;6

holders of Allowed Claims in the Class in which the Disputed Claim was classified, as provided in the Plan.

Prior to or on the Final Distribution Date, the Liquidating Trustee shall make all distributions on account of any Disputed Claim that has become an Allowed Claim and remains unpaid as of the Final Distribution Date. To the extent that any portion of a Disputed Claim is not disputed, the Liquidating Trustee may establish a reserve in the Disputed Claims Reserve only on account of that portion of the Disputed Claim that is in dispute and may make one or more interim Distributions on account of the portion of such Disputed Claim that is not in dispute.

The Liquidating Trustee may, at the Liquidating Trustee's sole discretion, file a tax election to treat the Disputed Claims Reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Regulation Section 1.468B-9 for federal income tax purposes, rather than tax such reserve as a part of the grantor liquidating trust. If the election is made, the Liquidating Trustee shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

## VI.   IMPLEMENTATION OF THE PLAN

### A.   Employment of the CRO.

On the Effective Date the Liquidating Trustee shall be authorized and instructed to employ the CRO.

### B.   Disposition of the French Artifacts.

On the Effective Date, the Liquidating Trustee shall be authorized and instructed to employ Guernsey's to conduct a sale of the French Artifacts by auction in such manner as the Liquidating Trustee determines, in the exercise of its sole discretion, is in the best interests of the Debtors, their Estates and all parties having an interest therein.

### C.   Disposition of the American Artifacts

The CRO shall manage and administer the American Artifacts consistent with the Covenants pending disposition of the American Artifacts by the Liquidating Trustee until the

45353971;6

American Artifacts are transferred to a Qualified Institution, as defined in the Covenants. The CRO shall offer to employ all employees of Premier who are involved in the preservation, management, and display of the American Artifacts pending their disposition.

The Liquidating Trustee shall offer the American Artifacts for sale only to potential bidders that are Qualified Institutions, as defined in the Covenants, to serve as the subsequent trustee and subsequent salvor-in-possession of the American Artifacts under the Covenants. Any transfer of the American Artifacts to a successor trustee and salvor shall be subject to approval of the District Court and shall be made only on notice to the United States Department of Commerce, National Oceanic and Atmospheric Administration and all other parties entitled to notice in the US Artifacts Litigation.

> **D.** **Administration and Sale of Liquidating Trust Assets Other than the French Artifacts.**

From and after the Effective Date the Liquidating Trustee shall be authorized and instructed to administer the Liquidating Trust Assets, other than the American Artifacts, including, without limitation, the French Artifacts and the Estate Causes of Action, in a manner that the Liquidating Trustee determines, in the exercise of his sole discretion after consultation with the CRO is in the best interests of the Debtors, their Estates and all parties having an interest therein, including, without limitation, by operating one or more of the Premier Entities, liquidating and winding up one or more of the Premier Entities, entering into an agreement or agreements to sell one or more of the Premier Entities or their Assets and/or the French Artifacts when and if the Liquidating Trustee in his sole discretion after consultation with the CRO determines any such sale is in the best interests of the Debtors, their Estates and all parties having an interest therein.

> **E.** **Vesting of Assets.**

Unless otherwise expressly provided under this Plan, on the Effective Date, the Liquidating Trust Assets will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan. On and after the Effective Date,

the transfer of the Liquidating Trust Assets from the Debtors' Estates to the Liquidating Trust will be deemed final and irrevocable and distributions may be made from the Liquidating Trust.

In connection with the foregoing

(i)     On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code.

(ii)     The Confirmation Order will provide that, upon the Effective Date, the Liquidating Trustee shall have express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute any and all Estate Causes of Action assigned to the Liquidating Trust pursuant to this Plan.

(iii)     As of the Effective Date, the Liquidating Trust Assets will be free and clear of all liens, claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan.

**F.     <u>Establishment of the Liquidating Trust.</u>**

On the Effective Date, the Liquidating Trust Agreement will become effective, and, if not previously signed, Premier and the Liquidating Trustee will execute the Liquidating Trust Agreement.  The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

<u>1. Beneficiaries.</u>

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Class 3 Claims and Class 4 Premier Equity Interests.  The Holders of such Allowed Class 3 Claims and Class 4 Premier Equity Interests will receive an allocation of the Liquidating Trust Assets as provided for in the Plan and the Liquidating Trust Agreement.  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

45353971;6

2.      Implementation of Liquidating Trust.

On the Effective Date, Premier, on behalf of the Premier Estate and the Premier Entities (including RMST), and the Liquidating Trustee, will be authorized and directed to, and will execute the Liquidating Trust Agreement in substantially the form attached as an exhibit to the Plan Supplement, take all such actions as required to transfer the Liquidating Trust Assets to the Liquidating Trust from Debtors' Estates.  From and after the Effective Date, the Liquidating Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to Claims (including, without limitation, seeking the subordination and/or reclassification of Claims), prosecuting or otherwise resolving Estate Causes of Action and causing Distributions from the Liquidating Trust to be made to the Beneficiaries.

3.      Transfer of Liquidating Trust Assets.

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the right, title and interest of Debtors in and to the Liquidating Trust Assets.  To the extent required to implement such transfer of the Liquidating Trust Assets to the Liquidating Trust, all Persons will cooperate with and assist Premier and the Liquidating Trustee in implementing said transfers.

4.      Representative of the Debtors' Estates.

The Liquidating Trustee will be appointed as the representative of the  Debtors and their Estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to this Plan and the Liquidating Trust Agreement) to *inter alia*: (i) object to Claims against (including, without limitation, seeking the subordination and/or reclassification of such Claims); (ii) administer, investigate, prosecute, settle and abandon all Estate Causes of Action assigned to the Liquidating Trust including through the use of Federal Rule of Bankruptcy Procedure 2004; (iii) make Distributions provided for in the

25

Plan, including, but not limited to, on account of Allowed Claims and Interests; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Cases. As the representative of the Debtors and their Estates, the Liquidating Trustee will be vested with all of the rights and powers of the Debtors and their respective Estates with respect to Estate Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtors and their respective Estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

5.      No Liability of Liquidating Trustee.

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, or representatives, or professionals employed or retained by the Liquidating Trustee (the "Liquidating Trustee's Agents") will not have or incur liability to any Person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Trust Assets, the implementation of the Plan and the Distributions made thereunder or Distributions made under the Liquidating Trust Agreement. The Liquidating Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members, or representatives, or professionals employed or retained will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in Article XI of the Plan is necessary to, inter alia, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating Trust, or their respective property. The Confirmation Order's approval of the Plan will also constitute a res judicata determination of the matters included in the exculpation provisions of the Plan. Notwithstanding the foregoing, nothing herein or in Article XI of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.

45353971;6

6.    Provisions Relating to Federal Income Tax Compliance.

The transfer of the Assets to the Liquidating Trust will be treated for federal income tax purposes as a deemed transfer by the Debtors to the creditors and equity interest holders that are beneficiaries followed by a deemed transfer by the creditors and equity interest holders that are beneficiaries to the Liquidating Trust, in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684. Accordingly, the taxation of the deemed transfers from the Debtors to the creditors and equity interest holders that are beneficiaries and from the creditors and equity interest holders that are beneficiaries to the Liquidating Trust will be governed by provisions of the Internal Revenue Code of 1986, as amended ("IRC") Sections 61(a)(12), 483, 1001, 1012 and 1274. The creditors and equity interest holders that are beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust's assets. The taxable income or loss of the Liquidating Trust, including the taxable income attributable to the Disputed Claims Reserve, if any, will be allocated to the beneficiaries on an annual basis pro rata in accordance with their respective entitlement to receive distributions from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year (taking into account all prior and concurrent distributions from the Liquidating Trust during such taxable year). The Liquidating Trustee shall not be required to report such tax information to any Beneficiary unless such Beneficiary provides to the Liquidating Trustee a complete form W-9 or acceptable substitute signed under penalty of perjury. In determining each Beneficiary's share of income, gain, loss, deductions and credits, the Liquidating Trustee shall not allocate such items to any Beneficiary who is the holder of a Claim which has no value until such time, if at all, as a value of the Claim arises. The beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Liquidating Trust taxable income, whether or not amounts are actually distributed by the Liquidating Trustee to the beneficiaries to pay the taxes. The value of the Assets transferred into the Liquidating Trust shall

45353971;6

be the fair market value of such Assets at the time of such transfer, as reasonably determined by the Liquidating Trustee, in consultation with such advisors as the Liquidating Trustee deems appropriate, within a reasonable period of time after the Effective Date. Such valuation shall be binding on all parties including, but not limited to, the Debtors, the Estate, the Liquidating Trustee, and all beneficiaries, and these valuations will be used by such parties for all federal income tax purposes. Notwithstanding anything in this Plan to the contrary, in the event that (i) any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to Treasury Regulation Section 1.468B-1, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" pursuant to Treasury Regulation Section 1.468B-9, any federal income tax consequences shall be determined under IRC Section 468B and the Treasury Regulations thereunder.

### G. Prosecution of Estate Causes of Action by the Liquidating Trustee.

Subject to the provisions of Articles X and XI of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the power and authority to prosecute, compromise or otherwise resolve any and all Estate Causes of Action assigned to the Liquidating Trust pursuant to this Plan, with all recoveries derived therefrom to be included within the Liquidating Trust Assets.

## VII. DISTRIBUTIONS UNDER THE PLAN

### A. In General.

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims, other than Allowed Class 2 and Class 3 Claims and Class 4 Premier Equity Interests, shall be made on the Effective Date. The dates for Distributions by the Liquidating Trust on account of Allowed Class 3 Claims and Class 4 Premier Equity Interests shall be selected by the Liquidating Trustee. Such Distributions shall be made as soon as practicable after the Effective Date.

45353971;6

B.    **Manner of Payment Under the Plan.**

Any payment of Cash made by the Liquidating Trustee pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

C.    **Manner of Distribution of Other Property.**

Any distribution under the Plan of property other than Cash shall be made by the Liquidating Trustee in accordance with the terms of the Plan.

D.    **Setoffs.**

The Liquidating Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Liquidating Trust may have against the holder of such Claim; provided that neither the failure to effect such set off nor the allowance of any Claim that otherwise would be subject to set off, shall constitute a waiver or release by the Liquidating Trust of any such claim the Liquidating Trust may have against such holder.

E.    **Distribution of Unclaimed Property.**

Except as otherwise provided in the Plan, any distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one year following the Effective Date or (ii) ninety (90) days after such distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

F.    **De Minimus Distributions.**

No cash payment of less than fifty dollars ($50.00) shall be made by the Liquidating Trustee to any holder of a Claim unless a request therefor is made in writing to the Liquidating Agent.

G.    **Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

45353971;6

completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**H.    Delivery of Distributions, Address of Holder.**

For purposes of all notices and Distributions under this Plan, the Liquidating Trustee shall be entitled to rely on the name and address of the holder of each Claim as shown on, and Distributions to holders of Allowed Claims shall be made by regular U.S. first class mail to, the following addresses:  (a) the address set forth on in the proofs of Claim Filed by such holders; (b) the address set forth in any written notice of address change delivered by the holder to the Debtor concerned or Liquidating Trustee after the date on which any related proof of Claim was Filed, or (c) the address reflected on the Schedules if no proof of Claim is Filed and the Debtor concerned or Liquidating Trustee has not received a written notice of a change of address.  The Liquidating Trustee shall be under no duty to attempt to locate holders of Allowed Claims who are entitled to unclaimed Distributions.

**VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Assumption.**

Effective upon the Effective Date, the Debtors shall be deemed to assume those executory contracts and unexpired leases which are listed in an exhibit to the Plan Supplement (the "Schedule of Executory Contracts and Unexpired Leases").  Pursuant to this Plan, the Debtors will also assume the executory contracts and unexpired leases that are the subject of any specific order of the Bankruptcy Court.  The Equity Committee reserves the right to delete any contract or lease from the Schedule of Executory Contracts and Unexpired Leases to the Plan Supplement, thereby rejecting the contract or lease, up until the hearing on confirmation of the Plan, by filing with the Bankruptcy Court an amended Schedule of Executory Contracts and Unexpired Leases to the Plan and by giving notice to counsel for the non-debtor party to the contract or lease.

**B.    Assumption and Cure Payment Objection.**

The Schedule of Executory Contracts and Unexpired Leases to the Plan Supplement will specify the amount (the "Cure Payment"), if any, that the Equity Committee believes must be

tendered on the Effective Date, in order to provide cure and compensation in accordance with sections 365(b)(1)(A) & (B) of the Bankruptcy Code. The deadline for any objections to the Cure Payment amounts set forth in the Schedule of Executory Contracts and Unexpired Leases shall be the date for filing objections to the Plan, and no other objections to such Cure Payment will be timely. In the event that any party to a listed contract or lease on the Schedule of Executory Contracts and Unexpired Leases contends that the Cure Payment amount so listed is incorrect, such party must file with the Bankruptcy Court and serve upon counsel for the Debtors and counsel for the Equity Committee a written statement and an accompanying declaration in support thereof specifying the amounts allegedly owing under sections 365(b)(1)(A) & (B) of the Bankruptcy Code no later than the date fixed for filing objections to the confirmation of the Plan. Failure to timely file and serve such statement shall result in the determination that the tender of the Cure Payment, as specified in the Schedule of Executory Contracts and Unexpired Leases on the Effective Date, shall provide cure and compensation for any and all defaults and unpaid obligations under such assumed executory contract or unexpired lease.

In the event that any party to a listed contract or lease specified in the Schedule of Executory Contracts and Unexpired Leases objects to the proposed assumption by any Debtor, such party must file with the Bankruptcy Court and serve upon counsel for the Debtors and counsel for the Equity Committee a written statement and an accompanying declaration in support thereof no later than the date fixed for filing objections to the confirmation of the Plan. Failure to timely file and serve such statement shall result in the determination that the assumption is appropriate.

The Equity Committee reserves the right to respond to any objection filed by any party to an executory contract or unexpired lease under this paragraph and/or to reject any executory contract or unexpired lease or assume such contract or unexpired lease by complying with section 365(b) of the Bankruptcy Code. To the extent the Equity Committee disagrees with any objection filed by any party to an executory contract or unexpired lease under this paragraph, either may request that the Bankruptcy Court declare that the Cure Payment is as stated in the Schedule of

Executory Contracts and Unexpired Leases, and that the proposed assumption is appropriate, and any disputes shall be resolved by the Bankruptcy Court.

Entry of the Confirmation Order shall constitute approval of the assumptions under the Plan pursuant to section 365 of the Bankruptcy Code. All Cure Payments which may be required by section 365(b)(1) of the Bankruptcy Code shall be made on the Effective Date or as soon thereafter as is practicable or as may otherwise be agreed by the parties to any particular contracts or leases.

**C.**     **Rejection.**

With the exception of those executory contracts and unexpired leases that have been previously assumed, assumed pursuant to Section VII.A, above, or rejected by order of the Bankruptcy Court pursuant to Bankruptcy Code section 365, as of the Effective Date, the Debtors shall reject, pursuant to Bankruptcy Code section 365, all other executory contracts and unexpired leases.

**D.**     **General.**

Inclusion of a matter in the Schedule of Executory Contracts and Unexpired Leases does not constitute an admission by any Debtor that an executory contract or unexpired lease exists, is valid or is an executory contract or unexpired lease. Entry of the Confirmation Order shall constitute approval of the rejections under the Plan pursuant to section 365(a) of the Bankruptcy Code.

All Allowed Claims arising from the rejection of executory contracts or unexpired leases, whether under the Plan or by separate proceeding, shall be treated as Class 3 Claims under the Plan.

All Claims arising from the rejection of executory contracts or unexpired leases, whether under the Plan or by separate proceeding, must be filed with the Bankruptcy Court on or before such date as the Bankruptcy Court has fixed by its order with respect to Claims arising from the rejection of specified executory contracts and unexpired leases, or, if rejected pursuant to the Plan, on or before the day that is 30 days after the Effective Date or, if such day is not a Business Day,

45353971;6

the first Business Day occurring thereafter. Any such Claims which are not filed within such time will be forever barred from assertion against the Debtors' Estates and their property, or the Liquidating Agent.

     **E.**     **Insurance Policies.**

     For the avoidance of doubt, the Debtors' rights with respect to all insurance policies under which the Debtors, and each of them, may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtors after the Petition Date, and all insurance policies under which any Debtor holds rights to make, amend, prosecute and benefit from claims), are retained and will be transferred or assigned to the Liquidating Trust pursuant to this Plan. Notwithstanding any provision providing for the rejection of executory contracts, any insurance policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee who shall retain the right to assume or reject any such executory contracts pursuant to and subject to the provisions of Section 365 of the Bankruptcy Code following the Effective Date.

**IX.**     **EFFECTIVENESS OF THE PLAN**

     **A.**     **Conditions Precedent.**

     It shall be a condition to the Effective Date of this Plan that the following provisions, terms and conditions are approved or waived pursuant to this Article IX:

     (i)     The Bankruptcy Court shall have entered the Confirmation Order, which order shall not have been amended, modified, reversed, vacated, enjoined or stayed pending appeal;

     (ii)     All authorizations, consents and regulatory approvals required (if any) for this Plan's effectiveness shall have been obtained;

     (iii)     The District Court shall have entered an order approving any Sale transaction of the American artifacts;

(iv)    The Equity Committee shall have appointed the Liquidation Trustee, and the Liquidating Trust Agreement and the other Liquidating Trust Documents shall have been executed and delivered; and

(v)     No order of a court shall have been entered and shall remain in effect restraining the Equity Committee from consummating the Plan.

B.    Waiver of Conditions.

The conditions to confirmation of this Plan and to the Effective Date set forth in Article IX., hereof may be waived by the Equity Committee without notice, leave or order of the Court or any formal action other than proceeding to confirm or consummate this Plan.

**B.    <u>Notice of Effective Date.</u>**

As soon as practicable after the Effective Date has occurred, the Liquidating Trustee shall file with the Bankruptcy Court an informational notice specifying the Effective Date, as a matter of record.

## X.    <u>RETENTION OF JURISDICTION</u>

This Plan shall not in any way limit the Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  The Bankruptcy Court will retain and have exclusive jurisdiction to the fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in or related to the Chapter 11 Case or the Plan, including but not limited to the following:

(I)     To hear and determine pending motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which any of the Debtors are a party, including, but, not limited to, the determination of any cure payments related thereto, the allowance, disallowance or liquidation of Claims resulting therefrom and whether such contract or lease is executory or unexpired, respectively, pursuant to Section 365 of the Bankruptcy Code;

(II)    To hear and determine pending motions for sale of assets outside the ordinary course of business pursuant to section 363 of the Bankruptcy Code, if any are pending as of the Effective Date;

(III)     To hear and determine any and all causes of action and rights of the Debtors that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Liquidating Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever, on account of any and all Estate Causes of Action (including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtors' Estates including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise) and Premier Insider Claims;

(IV)     To grant or deny any applications for allowance of compensation for any Professional Person authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

(V)     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be instituted prior to the closing of the Bankruptcy Cases;

(VI)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(VII)     To hear and determine any objections to requests for Administrative Expenses and to Proofs of Claims filed both before and after the Effective Date, and to allow or disallow any Disputed Claim in whole or in part;

(VIII)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to section 510 of the Bankruptcy Code, any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of all Claims;

45353971;6

(IX)    To enter orders approving the Liquidating Trust's post-Confirmation sale, transfer, or other disposition of Trust Assets pursuant to sections 363 and 1146(c) of the Bankruptcy Code or otherwise, free and clear of all Liens, Claims and encumbrances;

(X)    To consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(XI)    To hear and determine any disputes arising in connection with the interpretation; implementation, execution, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, including, but not limited to, enforcement of the provisions of Article 11 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by this Plan;

(XII)    To hear and determine any matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(XIII)    To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreement, this Plan or the Confirmation Order;

(XIV)    To permit the Liquidating Trustee to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify this Plan or any agreement or document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in this Plan or any agreement or document created in connection with this Plan;

(XV)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Liquidating Trust Agreement, this Plan or the Confirmation Order;

(XVI)    To enforce any injunctions entered in connection with Chapter 11 Cases, or relating to this Plan or the Confirmation Order;

45353971;6

(XVII) To enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Liquidating Trust Agreement or this Plan are enjoined or stayed;

(XVIII)    To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreement, this Plan and the Confirmation Order;

(XIX)  To order the complete or partial substantive consolidation of any non-Debtor with or into the Liquidating Trust *nunc pro tunc* to the Petition Date or otherwise;

(XX)   To enter any orders in aid or in extension of prior orders of the Bankruptcy Court in the Bankruptcy Cases;

(XXI)  To determine any matter that may arise in connection with or relating to this Plan or any agreement or the Confirmation Order

(XXII) To hear any other matter not inconsistent with the Bankruptcy Code; and

(XXIII)    To enter a Final Decree closing the Bankruptcy Cases.

## XI.    LIMITATION OF LIABILITY, RELEASES AND INJUNCTION.

### A.    Exculpation.

Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date, the Debtors, the Equity Committee, the Creditors Committee, and their respective officers, directors, employees, representatives, counsel, financial advisors or other agents and their successors and assigns shall be deemed released by each of them against the other, and by all Holders of Claims or Equity Interests or any other entity, of and from any Claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, all sales of assets of any Debtor's Estate, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the negotiation, formulation, and/or consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan or any acts or omissions taken with respect to any contract, instrument, release or other

37

agreement or document created in connection with the Plan, except for acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code. Notwithstanding the foregoing, this provision of the Plan is not intended to waive or release any cause of action based on pre-Petition Date actions or conduct, including but not limited to any Estate Causes of Action.

**B.** **Injunction Enjoining Holders of Claims Against and Equity Interests in the Debtors.**

The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests. To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtors arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim or Equity Interest, against the Debtors, their Estates, the Liquidating Trust or its property (other than actions brought to enforce any rights or obligations under the Plan):

(i) commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);

(ii) Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets;

(iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or encumbrance against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets; and

45353971;6

(iv)    proceeding in any manner in any place whatsoever against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets, that does not conform to or comply with the provisions of the Plan.

C.    **No Discharge of the Debtors.**

In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan, any Claims, rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

XII.    **MISCELLANEOUS PROVISIONS**

A.    **Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.  The Liquidating Trust shall be responsible for timely payment of such quarterly fees due and payable after the Effective Date and until the Bankruptcy Cases are closed, pursuant to section 1930(a)(6) of title 28 of the United States Code, with respect to cash disbursements made by the Disbursing Agent under the Plan.  After the Effective Date and until the Chapter 11 Case is closed, the Liquidating Trustee shall file with the Office of the United States Trustee monthly financial reports specifying all disbursements made pursuant to the Plan and shall make all payments based upon such disbursements as required by applicable law.

B.    **Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

45353971;6

### C. **Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtors' Estates, holders of Claims, holders of Equity Interests, and their respective successors or assigns.

### D. **Revocation or Withdrawal.**

Right to Revoke.

The Equity Committee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

Effect of Revocation.

If the Equity Committee revokes the Plan prior to the Confirmation Date or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or their Estates or any other person or to prejudice in any manner the rights of the Debtors or their Estates or any person in any further proceedings involving the Debtors or any of them.

### E. **Governing Law.**

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

### F. **Withholding, Reporting, and Payment of Taxes.**

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating

45353971;6

Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as required by applicable law. In addition, to the extent required by applicable law, reported Distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

**G.      Other Documents and Actions.**

The Debtors on and prior to the Effective Date and the Liquidating Trustee after the Effective Date may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**H.      Modification of the Plan.**

Prior to the Effective Date, the Plan may be altered, amended, or modified pursuant to section 1127 of the Bankruptcy Code by the Equity Committee. After the Effective Date, the Liquidating Trustee shall have the sole authority and power to alter, amend, or modify the Plan pursuant to section 1127 of the Bankruptcy Code.

**I.      Notices.**

Any notice to the Debtors, Liquidating Trustee, the Equity Committee, the Creditors Committee, or United States Trustee required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

To the Equity Committee:

> Official Committee of Equity Security Holders of Premier Exhibitions, Inc.
> c/o Landau Gottfried & Berger LLP
> 1801 Century Park East, Suite 700
> Los Angeles, CA 90067
> ATT: Peter J. Gurfein and Jon Dalberg
> Tel: (310) 557-0050, Fax: (310) 557-0056
>
>  with copies to

Akerman, LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
ATT: Jacob A. Brown and Katherine C. Fackler
Tel: (904) 798-3700, Fax: (904) 798-3730.

To the Debtors:

RMS Titanic, Inc.
c/o Troutman Sanders LLP
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
ATT: Harris Winsberg and Stephen S. Roach
Tel: (404) 885-3000, Fax: (404) 885-3900;

with copies to

Nelson Mullins Riley & Scarborough LLP
50 N. Laura Street, Suite 4100
Jacksonville, FL 32202
Att:  Daniel F. Blanks and Lee D. Wedekind, III
Tel: (904) 665-3656, Fax: (904) 665-3699, and

Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Att: Brian A. Wainger
Tel: (757) 965-6804, Fax: (757) 304-6175.

To the Creditors' Committee:

Official Committee of Unsecured Creditors of RMS Titanic, Inc. and its debtor affiliates
c/o Storch Amini & Munves PC
140 East 45th Street, 25th Floor
New York, NY 10017
Att: Jeffrey Chubak and Avery Samet
Tel: (212) 497-8247, Fax: (212) 490-4208

with copies to

Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
ATT: Richard R. Thames and Robert A. Heekin, Jr.
Tel: (904) 358-4000, Fax: (904) 358-4001

To the DIP Lender:

     Bay Point Capital Partners, LP
     c/o Thompson Hine LLP
     3560 Lenox Road, Suite 1600
     Atlanta, GA 30326
     ATT: Garrett A. Nail and John F. Isbell
     Tel: (404) 541-2900, Fax: (404) 541-2905.

To the Liquidating Trustee:

     TBD

To the United States Trustee:

     Miriam G. Suarez
     Office of the United States Trustee
     George C. Young Federal Building
     400 West Washington Street, Suite 1100
     Orlando, FL 32801
     Tel: (407) 648-6301, Ext. 126, Fax: (407) 648-6323.

### J.     **Severability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan does not govern the treatment of Claims or Equity Interests, or is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term(s) or provision(s) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.** **Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**L.** **Post-Effective Date Notice.**

From and after the Effective Date, any person who desires notice of any pleading or document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-Effective Date notice and shall serve the request on the Liquidating Trustee; provided, however, the United States Trustee shall be deemed to have requested post-Effective Date notice.

DATED: June 1, 2018                        Respectfully submitted,

OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS

By: _____
        Andrew Shapiro

Its:   Chairman

45353971;6