THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
Successor in interest to Titanic
Ventures, limited partnership,

  Plaintiff,

v.              Civil Action No.:  2:93cv902

The Wrecked and Abandoned
Vessel, . . . believed to be
The RMS TITANIC, in rem,

  Defendant.

**MEMORANDUM IN SUPPORT OF THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM MOTION TO INTERVENE**

  COMES NOW the Trustees of the National Maritime Museum ("NMM"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 24(a) and (b) moves to intervene in the above-captioned action, brought by Plaintiff R.M.S. TITANIC, Inc. ("RMST"), upon the following grounds:

**PRELIMINARY STATEMENT**

  As this Court is aware, three mutually-exclusive proposals for the disposition of the estates of debtor RMST and certain of its affiliates ("Debtors") have been filed in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") under docket number 3:16bk02230 (the "Bankruptcy").  Each of these proposals will entail either (i) the sale or transfer of RMST's interest in the artifacts recovered from the wreck of the R.M.S. *Titanic*, or (ii) a transfer or sale 100% of the equity of the entity that owns or controls such artifacts, and will therefore require the approval of this Court or a

determination by this Court of rights with respect to those artifacts. The Bankruptcy Court has recognized the unique circumstances governing the *Titanic* artifacts and recently instructed the proponents of these proposals to "move in [this] Court for any approvals or determinations required by [this] Court to complete the proposed transactions."

NMM wishes to progress the bankruptcy proceedings as efficiently as possible for the benefit of all parties, and especially in light of Debtors' recently expressed concern that delays in resolving the Bankruptcy may be detrimental to the estate. To that end, NMM believes that it will be most efficient, and cost-effective, for this Court to proceed now in assessing the three proposals before the Bankruptcy Court to determine if their dispositions of the *Titanic* artifacts will comport with the Revised Covenants and Conditions. NMM encloses with this Motion to Intervene a proposed complaint seeking a declaratory judgment that NMM and NMNI each constitute a Qualified Institution under the terms of the Revised Covenants and Conditions.[1] *See* Exhibit 1.

## FACTS

NMM, which was founded by an Act of the U.K. Parliament in 1934, is the largest and preeminent maritime museum in the world and the leading custodian of the United Kingdom's maritime heritage. *See* Exhibit 2, Declaration of Dr. Kevin Fewster ("Fewster Decl."), at ¶ 2. NMM possesses significant experience in the preservation and conservation of maritime artifacts and is one of a select group of national museums and galleries to receive direct funding from the U.K. Parliament to support its work. *Id.* at ¶¶ 2-3.

On June 29, 2018, NMM, the Official Committee of Unsecured Creditors, the Board of Trustees of the National Museums and Galleries of Northern Ireland ("NMNI"), and Running

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Revised Covenants and Conditions.

Subway Productions, LLC (collectively, the "Museum Plan Proponents") filed a joint chapter 11 plan (the "Museum Plan") and an accompanying disclosure statement in the Bankruptcy. Bankruptcy Docket 1084-1085.  The Museum Plan provides, among other things, that NMM and NMNI would be the Trustees of the Subject TITANIC Artifact Collection and obtain all other rights and interests of RMST with respect to the TITANIC Collections.  It is a condition precedent to the effectiveness of the Museum Plan that this Court approve NMM and NMNI as subsequent Trustees of the Subject TITANIC Artifact Collection and the transfer of RMST's other rights and interests with respect to the TITANIC Collections to NMM and NMNI. *See* Museum Plan Proponents' Joint Chapter 11 Plan of Reorganization (Bankruptcy Docket 1084) at Art. XI.B.2.

The Museum Plan is supported by a variety of constituents in the Debtors' bankruptcy cases, including the Official Committee of Unsecured Creditors, as well as individuals and organizations associated with the R.M.S. *Titanic*.  Dr. Robert Ballard has described the Museum Plan as "the only viable option to retain the integrity of the Titanic collection." *See* Exhibit 3, Declaration of James I. McClammy ("McClammy Decl."), Attachment 1, at 3. The President and CEO of the National Geographic Society, Michael Ulica, has commented that the "repatriation of the shipwreck's artifacts presents an historic opportunity to honor the *Titanic*'s lasting legacy." *See* McClammy Decl., Attachment 2, at 4. It is the goal of NMM to return the TITANIC Collections to the United Kingdom, to be held in perpetual public ownership, to be conserved and curated as an integral whole, and to be saved for posterity for public display, historical review, scientific and scholarly research and educational purposes. *See* Fewster Decl. at ¶ 6. NMM respectfully submits that its goals with respect to the TITANIC Collections mirror the Court's goals in preserving and protecting this unique maritime heritage.

Prior to the filing of the Museum Plan, on June 15, 2018, the Debtors filed a motion (the "Sale Motion") proposing to sell substantially all of the assets of the Debtors' estates, including 100% of the capital stock of RMST, to Premier Acquisition Holdings LLC (the "Stalking Horse Purchaser"), an entity formed by affiliates of Apollo Global Management, LLC and Alta Fundamental Advisers LLC, Haiping Zou, Lange Feng, Jihe Zhang, and PacBridge Capital Partners (HK) Ltd.  Bankruptcy Docket 1055.  Notably, the bidding process proposed by the Debtors' Sale Motion would preclude NMM from participating because, for example, NMM must fundraise the purchase price and cannot provide a non-refundable deposit.  The Sale Motion and the Asset Purchase Agreement attached as Exhibit B to the Sale Motion require that this Court approve the sale of 100% of the capital stock of RMST to the Stalking Horse Purchaser.  *Id.* at ¶ 32(l).  On June 29, 2018, the Debtors filed with this Court a motion to approve the Asset Purchase Agreement and authorize the sale of 100% of the capital stock of RMST to the Stalking Horse Purchaser.

On July 25, the Bankruptcy Court convened a status conference at which the various parties presented argument as to how best to proceed in light of, among other things, the Revised Covenants and Conditions and the jurisdiction of this Court over the Subject TITANIC Artifact Collection.  A copy of the transcript of the status conference is attached as Exhibit 3 to the McClammy Declaration.  Following the status conference, the Bankruptcy Court issued a written order dated August 2, 2018 (the "August 2 Order"), which is attached as Exhibit A to the most recent Periodic Report filed by RMST.  In the August 2 Order, the Bankruptcy Court set a joint hearing to consider the adequacy of the disclosure statements for the Museum Plan and the plan proposed by the Official Committee of Equity Security Holders (the "Equity Committee") and the bidding procedures associated with the Debtors' Sale Motion on August 30.  In addition, the

Bankruptcy Court told the proponents of the three pending proposals to "take the steps that they believe are necessary for approval of the proposed sales by [this] Court":

> Finally, the parties should take the steps that they believe are necessary for approval of the proposed sales by the District Court.
>
> The Titanic artifacts are subject to administration by the United States District Court for the Eastern District of Virginia, and are also subject to the "Covenants and Conditions for the Future Disposition of Objects Recovered from the RMS TITANIC by RMS Titanic, Inc. Pursuant to an In Specie Salvage Award Granted by the United States District Court for the Eastern District of Virginia." (See Doc. 28, pp. 3-10) . . . .
>
> Because the Debtor's assets are also subject to the jurisdiction of the District Court in Virginia, the parties should move in that Court for any approvals or determinations required by the District Court to complete the proposed transactions. See, for example, In re Aqua Pesca, LLC, 2018 WL 3031085, at 4 (Bankr. D. Alaska) (A sale order directed the parties to take "such steps as are necessary or appropriate to obtain" the approval of the applicable licensing authority).

See August 2 Order at 4-5.

NMM now appears in order to seek certification as a "Qualified Institution" under the Revised Covenants and Conditions and other related relief.

## LEGAL ARGUMENT

NMM moves to intervene under Fed. R. Civ. P. 24(a) and (b) so that the Court can determine whether NMM is a "Qualified Institution" under the Revised Covenants and Conditions, whether the proposed replacement Trustees identified in either of the competing plans for disposition of the TITANIC Collection so qualify, and other related relief. NMM encloses with this Motion to Intervene a proposed complaint seeking a declaratory judgment that NMM and NMNI each constitute a Qualified Institution. NMM submits that it qualifies for intervention as of right and permissive intervention upon the following grounds:

5

**1. <u>NMM Should Be Allowed to Intervene as of Right</u>**

In order to intervene as of right under Fed. R. Civ. P. 24(a), an applicant must meet the following four requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. Proc. 24(a); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981).

    *(i)*    <u>*The Application is Timely*</u>

NMM's Motion to Intervene is timely because (i) the instant salvage action remains pending and there has not been a final determination in this case, and (ii) because NMM's right to intervene arises in connection with the recently-filed Museum Plan and the directive from the Bankruptcy Court to seek necessary approvals from this Court. Timeliness is a "cardinal consideration" in determining whether to permit intervention. *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981). The determination of timeliness is committed to the discretion of the District Court. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S. Ct. 2591, 37 L.Ed.2d 648 (1973); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284–86 (4th Cir. 1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). In this case, there has been no final determination of salvage rights and the matter remains open. No final judgment has issued, and no appeal or similar deadlines have passed. Moreover, the need for NMM to appear before this Court only arose recently in connection with its submission of the Museum Plan, and the ability of bidders for the TITANIC Collection to appear in this action without risk of violating the automatic stay

in the Bankruptcy Action was only made clear by the August 2 Order. NMM respectfully submits that the instant Motion to Intervene is therefore timely.

    *(ii)    <u>NMM has an Interest in the Subject Matter</u>*

NMM has an interest in the subject matter of this action, the TITANIC Collection, because NMM has proposed the Museum Plan in the Bankruptcy Court which, if accepted, will allow NMM to acquire the collection subject to further order by the Court. While Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right, the Supreme Court has recognized that "[w]hat is obviously meant ... is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). In the Fourth Circuit, intervention under Rule 24(a) is permissible where the interest asserted is contingent on other pending litigation. *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991) (allowing intervention where plaintiff sought declaratory judgment impacting liability in a separate action). In this case, NMM stands to gain or lose by the direct legal operation of this Court's ruling on RMST's motion to approve the Asset Purchase Agreement selling the TITANIC Collection to the Stalking Horse Purchaser. Having sought this Court's ruling that the Asset Purchase Agreement filed with the Bankruptcy Court ought to be approved by this Court, RMST can hardly be heard to now complain that similarly situated plan proponents should not have the same remedy. Under these facts, it is beyond cavil that the NMM has a "significantly protectable interest" in the subject matter of this litigation.

    *(iii)    <u>Denial of This Motion Will Impair NMM's Ability to Protect its Interest</u>*

If NMM does not appear in this action, its interest in acquiring the TITANIC Collection will be significantly impaired. RMST has sought this Court's approval of the Asset Purchase Agreement and transfer of the stock of RMST to the Stalking Horse Purchaser. RMST's motion

seeking this approval is entirely self-serving, as the Stalking Horse Purchaser is a new entity formed and owned by certain of the current equity holders of Premier Exhibitions, Inc., including Haiping Zou, Jihe Zhang, and Lange Feng, each of whom has been identified as a statutory insider of RMST under section 101(31) of the Bankruptcy Code. Bankruptcy Docket 172. Furthermore, the Debtors' bidding procedures contain provisions that the Debtors knew (based upon discussions with NMM) would entirely preclude NMM, which must fundraise the purchase price and cannot provide a non-refundable deposit, from bidding. This Court's approval of the proposed sale of RMST to the Stalking Horse Purchaser will sideline NMM and throw a chill over other bidders for the TITANIC Collection, thereby clearing the field of potential competitors. If this occurs, RMST will be able to present a successful bid at the Bankruptcy Court as a *fait accompli* to this Court. Instead, it is respectfully submitted, this Court should have the opportunity to consider the competing plans for disposition of the TITANIC Collection and identify those that pass muster under the terms of the Revised Covenants and Conditions.

   (iv) <u>NMM's Interest is Not Adequately Protected by RMST</u>

NMM's interest in acquiring the TITANIC Collection is not adequately protected by RMST. It is self-evident that RMST and NMM are in opposition, as RMST attempts to sell itself to statutory insiders while NMM is trying to obtain the TITANIC Collection for public display in one of the world's foremost maritime museums. RMST's opposition to NMM's attempt to put the Museum Plan and NMM's qualifications before the Court to become a "Qualified Institution" under the Revised Covenants and Conditions (and to even to put the Museum Plan before the Bankruptcy Court for consideration) underlines that RMST is incapable of protecting NMM's interest because RMST's owners have a diametrically opposed plan.

### 2. **In the alternative, NMM Qualifies for Permissive Intervention**

Permissive intervention under Fed. R. Civ. P. 24(b)(B) allows the Court to permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. The decision to grant a motion for permissive intervention pursuant to Rule 24(b) "lies within the sound discretion of the trial court" although "some standards have been developed to guide the courts in making intervention determinations." *See Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982). The Fourth Circuit has indicated that an important factor to consider for permissive intervention is whether the original parties will be prejudiced. *Id.* at 386; *Spring Construction Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) ("[M]ost important consideration (in passing on an application for intervention) is whether the delay has prejudiced the other parties.").

RMST seeks an order finding the Sale Motion to be valid and a transfer of RMST's equity to the Stalking Horse Purchaser that would be good against any other claimant to the TITANIC Collection no matter where situated. It is only equitable to allow those who would be prejudiced by such an order to appear and advance their own plans for disposition of the TITANIC Collection. In addition, the Bankruptcy Court has directed the various plan proponents to appear before this Court to obtain the relief they believe necessary. It has long been understood by the Bankruptcy Court and the Debtors that a condition to any successful resolution of RMST's bankruptcy is this Court's determination that any plan or sale complies with the Revised Covenants and Conditions. *See* Order Authorizing Entry Into Plan Support Agreement (Bankruptcy Docket 642) at 3 (noting on July 6, 2017 that any sale of the American collection was conditioned on this Court's approval consistent with the Revised Covenants and

9

Conditions). Finally, NMM's standing in the Bankruptcy, which appears to share concurrent jurisdiction over RMST with this Court, strongly supports allowing intervention.

### (i) There is No Prejudice

RMST is bankrupt but failed to advance a confirmable plan of reorganization when it had the exclusive right to do. Other constituencies in addition to the Museum Plan proponents have advanced plans to acquire the TITANIC Collection. The plans before the Bankruptcy Court will result in some amount of money being injected into the Debtors' estate, thereby providing money to satisfy creditor claims. Given RMST's position that time is of the essence, moving forward expeditiously in this Court to ensure the Museum Plan can go effective as quickly as possible if that plan is confirmed is to the benefit of, and will not prejudice, RMST or its creditors.

### (ii) Equity Supports Granting NMM's Motion to Intervene

According to the Sale Motion, the Debtors seek to sell RMST to the Stalking Horse Purchaser. RMST has moved the Court to approve the Asset Purchase Agreement but apparently takes the position that no other proposals for the disposition of the TITANIC should be considered. RMST opposes the appearance of NMM in this action, arguing that NMM does not have standing to appear in this *in rem* salvage action.

The Fourth Circuit, however, has stated that "[a]ctions *in rem*, or 'against the thing,' are designed to adjudicate rights in specific property against all of the world, and judgments in such cases are binding to the same extent." *Darlak v. Columbus-America Discovery Group, Inc.*, 59 F.3d 20, 22 (4th Cir.1995) (emphasis added), *cert. denied*, 516 U.S. 1094, 116 S.Ct. 817, 133 L.Ed.2d 761 (1996). This rationale also applies to *in rem* admiralty proceedings: "The whole world . . . are parties in an admiralty cause; and, therefore, the whole world is bound by the decision." *Id.* at 22-23 (citations omitted). The Court relied on this reasoning in allowing a

challenge to the initial salvage award made in this matter. *R.M.S. Titanic v. Wrecked and Abandoned Vessel*, 920 F.Supp. 96 (1996).

If RMST is able to obtain an order approving the Asset Purchase Agreement and authorizing the sale of 100% of the capital stock of RMST to the Stalking Horse Purchaser it will create an advantage over any other bids in addition to undermining the Museum Plan. Such an order would, due to the nature of salvage claims, bind the whole world and be highly prejudicial to NMM's attempt to acquire the TITANIC Collection. Paraphrasing Judge Clarke, if the whole world can be bound by an order disposing of the TITANIC Collection, then the whole world must have standing to challenge so being bound. *See R.M.S. Titanic*, 920 F.Supp. at 98. It is thus only fair and equitable that NMM be allowed to intervene in this action.

      (iii)      <u>The Bankruptcy Court Has Directed the Parties To Appear in this Action</u>

In deciding whether to exercise its discretion and grant permissive intervention to NMM, it is respectfully noted that NMM has been directed to do so by the Bankruptcy Court. Pursuant to the August 2 Order, the Bankruptcy Court specifically instructed the parties to seek any approvals or determinations required by this Court to complete the transactions proposed in the Bankruptcy Court. August 2 Order, p 5. As this Court is aware, the Bankruptcy Court currently has before it three separate proposals that would result in the sale of RMS Titanic, Inc. or the Subject TITANIC Artifact Collection: (1) the Sale Motion, (2) the Museum Plan, and (3) the chapter 11 plan proposed by the Equity Committee. It is entirely possible, if not certain, that at least one of the planned dispositions of the TITANIC Collection will not pass muster with this Court if, for example, it provides for the break-up of the TITANIC Collection or transfers control of the Subject TITANIC Artifacts to an entity other than a Qualified Institution.

Accordingly, whether or not the competing plans for the TITANIC Collection comply with the Revised Covenants and Conditions is ripe for review by this Court. Moreover, to the extent the Court determines appropriate, all three competing plans raise the question of whether the respective purchasers are "Qualified Institutions" under the Revised Covenants and Conditions. If this review is not undertaken now, the August 2 Order makes clear that the TITANIC Collection will be sold under the Bankruptcy Code to the highest bidder, a result that may divest this Court of any meaningful review of the qualifications of that bidder.

   *(iv)*  <u>*NMM's Standing in the Bankruptcy Supports Standing Here*</u>

Assuming the TITANIC Collection is part of the Debtors' estate, the Bankruptcy Court and this Court both have jurisdiction over that asset. NMM, as a plan proponent, is properly before the Bankruptcy Court and has filed papers that would control the disposition of the TITANIC Collection. As the Bankruptcy Court has noted, this Court's approval and determinations regarding the TITANIC Collection are dispositive with respect to this asset. Since NMM is properly before the Bankruptcy Court via the Plan and Disclosure Statement, it would be an anomaly if NMM were not also before the Court with jurisdiction to determine whether or not that Plan and Disclosure Statement are capable of being enacted.

Moreover, RMST is litigating the Asset Purchase Agreement before this Court by attacking the competing plans filed by the Museum Plan Proponents and the Equity Committee. Since neither of these interested parties has a chance to argue the merits of their plans for the TITANIC Collection, RMST is essentially trying to place the Asset Purchase Agreement ahead of any other plan by having it pre-emptively endorsed by this Court. RMST's objection to NMM's Notice of Appearance simply illustrates that RMST is attempting to clear the field for

itself and is desperate to keep any other proposal from consideration. This is patently inequitable.

It is respectfully further noted that the instant case and the Bankruptcy are singular proceedings in that both the Bankruptcy Court and this Court appear to have overlapping jurisdiction over the *res* at issue. The *res* is also unique. As the Agreement Concerning the Shipwrecked Vessel R.M.S. Titanic notes, TITANIC is "an underwater historical wreck of exceptional international importance having a unique symbolic value". (Article 2(b)). In light of the unprecedented nature of both the property and the jurisdiction of the Bankruptcy Court and this Court over that property, it is perfectly reasonable for the Court to hear from other possible trustees of the TITANIC Collection.

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that the instant Motion to Intervene be granted.

                                            TRUSTEES OF THE NATIONAL
                                            MARITIME MUSEUM

                                            By: <u>/s/ *Edward J. Powers*</u>
                                                    Of Counsel

Edward J. Powers, Esq. (VSB No. 32146)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:   (757) 446-8670
epowers@vanblacklaw.com

Neil Quartaro*
WATSON FARLEY & WILLIAMS LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com

Timothy Graulich*
James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
timothy.graulich@davispolk.com
james.mcclammy@davispolk.com
**Pro hac vice* admission pending*

*Attorneys for the Trustees of the National Maritime Museum*

14

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on August 17, 2018, the foregoing pleading was electronically filed with the Court's ECF system causing ECF notification to be sent to all counsel of record.

/s/ <em>Edward J. Powers</em>

Edward J. Powers, Esq. (VSB No. 32146)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:   (757) 446-8670
epowers@vanblacklaw.com