THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| R.M.S. TITANIC, INC., Successor in interest to Titanic Ventures, limited partnership, | |
| Plaintiff, | |
| v. | |
| The Wrecked and Abandoned Vessel, . . . believed to be The RMS TITANIC, in rem, Defendant. | Civil Action No.: 2:93cv902 |
| TRUSTEES OF THE NATIONAL MARITIME MUSEUM, | |
| Plaintiff, | |
| v. | |
| The Wrecked and Abandoned Vessel, . . . believed to be The RMS TITANIC, in rem, Defendant. | |

**COMPLAINT FOR DECLARATORY RELIEF**

1. The National Maritime Museum ("NMM") is the leading custodian of the United Kingdom's maritime heritage. NMM aspires to bring the collection of artifacts recovered from the wreck of the R.M.S. *Titanic* to the United Kingdom and to display it for the benefit of the millions of visitors it hosts every year.

2. NMM, the Board of Trustees of the National Museums and Galleries of Northern Ireland ("NMNI"), and other interested parties recently filed a joint chapter 11 plan (the

Exhibit 1

"Museum Plan") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division ("Bankruptcy Court") under docket number 3:16bk02230 (the "Bankruptcy"). The Museum Plan will entail the transfer of the Subject TITANIC Artifact Collection to NMM and NMNI, and will therefore require the determination of this Court that NMM and NMNI each constitute a "Qualified Institution" under the terms of the Revised Covenants and Conditions.[1]

    3. NMM respectfully submits that it and NMNI are well suited to preserve the TITANIC Collection for future generations and that their goals mirror the Court's goals of protecting the TITANIC Collections' unique maritime heritage. The Trustees of the NMM therefore seek a declaratory judgment, as authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, that NMM and NMNI each constitute a "Qualified Institution."

## JURISDICTION AND VENUE

    4. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1333, and the claim is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court is authorized to issue declaratory relief sought here under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

    5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1333 and 1390(b).

## PARTIES

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Revised Covenants and Conditions.

6. Plaintiff NMM was created by the Parliament of the United Kingdom's National Maritime Act of 1934 and is a statutory corporation and charity under the laws of the United Kingdom. Its principal place of business is in the United Kingdom.

7. Defendant is the remains of the R.M.S. *Titanic*, a White Star Steamship Liner, which sank in the North Atlantic Ocean on or about April 15, 1912.

## BACKGROUND

**The National Maritime Museum and National Museums and Galleries of Northern Ireland**

8. NMM is the largest and preeminent maritime museum in the world and also includes the Queen's House, the Greenwich Royal Observatory and the historic clipper ship *Cutty Sark*. The collective brand name for the four sites is Royal Museums Greenwich. NMM is one of a select group of national museums and galleries that receives direct government funding from Parliament.

9. Based in Greenwich, London, NMM is the leading custodian of the United Kingdom's maritime heritage. NMM's in-house professional conservation experts have significant experience in the preservation and conservation of maritime artifacts for the benefit of the public, now and in the future, and NMM's standards and procedures are externally audited and accredited as such every three years. In 1994, NMM staged the first major exhibition displaying artifacts recovered from the RMS *Titanic* debris field, which explored the significant historic and cultural legacy of the ship.

10. Sponsored by the Northern Irish government, NMNI's three museums are home to 20,000 works of art, over a million plant, animal, and geological specimens, and tens of thousands of precious objects, including a small number of artifacts, that tell the story of the human settlement in Ireland.

Exhibit 1

## The Museum Plan

11.     Over the last seven and a half months, NMM, in collaboration with NMNI, the Titanic Foundation, and Titanic Belfast Ltd., has engaged in extensive, detailed negotiations with the estates of debtor R.M.S. Titanic, Inc. ("RMST") and certain of its affiliates (collectively, "Debtors") and other interested parties to discuss a potential sale of the TITANIC Collections.

12.     On June 29, 2018, NMM, NMNI, the Official Committee of Unsecured Creditors, and Running Subway Productions, LLC (together, the "Museum Plan Proponents") filed the Museum Plan and an accompanying disclosure statement with the Bankruptcy Court. (Bankruptcy Docket Nos. 1084, 1085.) The Museum Plan provides, among other things, that NMM and NMNI would (x) be the Trustees of the Subject TITANIC Artifact Collection and (y) obtain all other rights and interests of RMST with respect to the TITANIC Collections. It is a condition precedent to the effectiveness of the Museum Plan that this Court approve NMM and NMNI as subsequent Trustees of the Subject TITANIC Artifact Collection and the transfer of RMST's other rights and interests with respect to the TITANIC Collections to NMM and NMNI. *See* Museum Plan Proponents' Joint Chapter 11 Plan of Reorganization (Bankruptcy Docket 1084) at Art. XI.B.2.

13.     The Museum Plan is supported by a variety of constituents in the Bankruptcy, including individuals and organizations associated with the R.M.S. *Titanic*. For example, both Dr. Robert Ballard and the President and CEO of the National Geographic Society have expressed support for the Museum Plan.

14.     It is the goal of NMM and NMNI to return the TITANIC Collections to the United Kingdom, to be held in perpetual public ownership, to be conserved and curated as an integral whole, and to be saved for posterity for public display, historical review, scientific and

Exhibit 1

scholarly research and educational purposes. To date, NMM and NMNI have already undertaken significant efforts to fundraise the purchase price in the Museum Plan and are confident that they will raise enough funds to accomplish their goal.

## The Revised Covenants and Conditions

15. The Revised Covenants and Conditions are designed to ensure that the artifacts within the Subject TITANIC Artifact Collection are maintained "for the benefit of the public interest, kept together and intact and are available to posterity for public display and exhibition, historical review, scientific and scholarly research, and educational purposes." (*See* Revised Covenants and Conditions, § I(G).) The Revised Covenants and Conditions also provide that the Subject TITANIC Artifact Collection shall, to the extent possible, be "conserved and curated together" with the artifacts known as the French TITANIC Artifact Collection "as an integral whole." (*See id.* § III(A).)

16. This Court must approve any potential sale, transfer, or assignment of the Subject TITANIC Artifact Collection and the Revised Covenants and Conditions set forth detailed requirements for such approval, including that the transferee must be deemed a "Qualified Institution." (*See id.* § VI(A)-(F).)

17. A "Qualified Institution" is an entity demonstrating, in part, the willingness and capacity to ensure that the Subject TITANIC Artifact Collection "is available to posterity for public display and exhibition, historical review, scientific and scholarly research, and educational purposes." (*See id.* § II(I).) Annex A to the Revised Covenants and Conditions provides considerations for evaluating whether an entity meets this definition.

18. Where the Subject TITANIC Artifact Collection is being sold, transferred, or assigned through a bankruptcy proceeding, the beneficial interests of the Subject TITANIC

Artifact Collection, "including the public beneficial interest in the historical, archeological, scientific, or cultural aspects of the wreck and its artifacts, <u>shall not be considered as part of the bankruptcy estate</u>" and all measures taken by RMST shall be subject to this Court's review. (*See id.* § VII(B) (emphasis added).)

### **Bankruptcy Court Proceedings**

19. In addition to the Museum Plan, there are two additional mutually-exclusive proposals for the disposition of the estates of the Debtors pending in the Bankruptcy Court: (i) a chapter 11 plan proposed by the Official Committee of Equity Security Holders which would market and auction the French TITANIC Artifact Collection and eventually aim to sell the Subject TITANIC Artifact Collection under the terms of the Revised Covenants and Conditions (Bankruptcy Docket 1045) and (ii) a sale contemplated by the Debtors which would sell substantially all of the assets of the Debtors' estates to Premier Acquisition Holdings LLC (Bankruptcy Docket 1055). The bidding process proposed by the Debtors would preclude NMM from participating because NMM must fundraise the purchase price and cannot provide a non-refundable deposit.

20. On July 25, 2018 the Bankruptcy Court convened a status conference at which the various plan proponents presented argument as to how best to proceed in light of, among other things, the Revised Covenants and Conditions and the jurisdiction of this Court over the Subject TITANIC Artifact Collection. Following the status conference, the Bankruptcy Court issued a written order dated August 2, 2018 in which it, among other things, instructed the proponents of the three pending proposals to "take the steps that they believe are necessary for approval of the proposed sales" in this Court. (*See* August 2 Order, Bankruptcy Docket 1147.)

21. NMM wishes to progress the bankruptcy proceedings as efficiently as possible for the benefit of all parties, and especially in light of the Debtors' recently expressed concern that

delays in resolving the Bankruptcy may be detrimental to the estate. Accordingly, NMM files this complaint seeking a declaration that it and NMNI are each a "Qualified Institution" under the Revised Covenants and Conditions to satisfy, without delay, one of the necessary conditions to the effectiveness of the Museum Plan.

## CLAIMS FOR RELIEF

### First Cause of Action – Declaratory Judgment Act

22.     NMM repeats and realleges each and every allegation set forth above, as if fully set forth herein.

23.     The Museum Plan is pending in the Bankruptcy and would transfer the Subject TITANIC Artifact Collection to NMM and NMNI. A ripe and justiciable controversy thus exists between the parties as to whether NMM and NMNI each constitute a "Qualified Institution" under the terms of the Revised Covenants and Conditions because the Museum Plan cannot become effective without this determination.

24.     The Covenants and Conditions define a "Qualified Institution" as an entity demonstrating, in part, the willingness and capacity to ensure that the American Collection "is available to posterity for public display and exhibit, historical review, scientific and scholarly research, and educational purposes." (*See* Revised Covenants and Conditions § II(I).) Annex A to the Revised Covenants and Conditions provides criteria for evaluating whether an entity meets this definition, and the Covenants and Conditions set forth detailed procedures for how this Court may conduct its review.

25.     Based on their goals for preserving the TITANIC Collections and expertise in preservation generally, NMM and NMNI fully satisfy the requirements of a "Qualified Institution" under the terms of the Revised Covenants and Conditions.

Exhibit 1

26. NMM has no adequate remedy at law and cannot obtain approval of the Museum Plan without the Court's intervention.

WHEREFORE, Plaintiff respectfully requests that the Court:

a) Enter a declaratory judgment that NMM constitutes a Qualified Institution under the terms of the Revised Covenants and Conditions; and

b) Enter any other legal or equitable relief as the Court may deem just and proper.

> TRUSTEES OF THE NATIONAL
> MARITIME MUSEUM
>
> By: /s/ *Edward J. Powers*
>         Of Counsel

Edward J. Powers, Esq. (VSB No. 32146)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:   (757) 446-8670
epowers@vanblacklaw.com

Neil Quartaro*
WATSON FARLEY & WILLIAMS LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com

Timothy Graulich*
James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
timothy.graulich@davispolk.com
james.mcclammy@davispolk.com
*Pro hac vice* admission pending

*Attorneys for the Trustees of the National Maritime Museum*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 17, 2018, the foregoing pleading was electronically filed with the Court's ECF system causing ECF notification to be sent to all counsel of record.

By: /s/ *Edward J. Powers*
Of Counsel

Edward J. Powers, Esq. (VSB No. 32146)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:   (757) 446-8670
epowers@vanblacklaw.com