**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

R.M.S. TITANIC, INC.,
successor in interest to Titanic
Ventures, limited partnership,

       Plaintiff,

v.                                     Civil Action No.  2:93cv902

The Wrecked and Abandoned
Vessel, . . .believed to be
the RMS TITANIC, in rem,

       Defendant.

## OPPOSITION OF RMST TO THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM'S MOTION TO INTERVENE

NOW COMES Plaintiff RMS Titanic, Inc., ("RMST"), by counsel, and opposes the Motion to Intervene filed on behalf of the Trustees of the National Maritime Museum ("the Museum"). As grounds for this opposition, RMST states as follows:

## I.      BACKGROUND

On June 14, 2016, RMST, along with its parent company, Premier Exhibitions, Inc. and certain of its affiliates (collectively, the "Debtors"), filed a voluntary petition in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code Sections 1107 and 1108.  On August 24, 2016, the United States Trustee appointed the Official Committee of Unsecured Creditors of Premier Exhibitions,

Inc. (the "Creditors Committee") and the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. (the "Equity Committee").

On June 1, 2018, the Equity Committee filed a *Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders of Premier Exhibitions, Inc*. The Equity Committee Disclosure was set for hearing on August 30, 2018. The Equity Committee members hold less than 10% of the shares of Premier Exhibitions, Inc, the parent company to RMST. On August 29, 2018 the Equity Committee filed its Amended Chapter 11 Plan of Reorganization and Amended Disclosure Statement. *See*, Exhibits 1 and 2 attached hereto.

On June 15, 2018, the Debtors filed their *Motion for Approval of (a) Competitive Bidding and Sale Procedures; (b) Form and Manner of Notices; (c) Form of Asset Purchase Agreement ("APA"); (d) Break-Up Fee and Expense Reimbursement; (e) Scheduling Auction and Hearing to Consider Final Approval of Sale, Including Assumption and Assignment of Related Executory Contracts and Unexpired Leases; (f) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests;(g) Settlement with PacBridge Parties; and (h) Granting Related Relief* (the "Sale Motion"). On August 30, 2018, the Debtors filed an Amended Sale Order and Bid Procedures. *See,* Exhibit 3 attached hereto. The Sale Motion contemplates the sale of substantially all of the Debtors' assets to the Stalking Horse Purchaser pursuant to the APA, subject to higher and better offers through a competitive auction process. Approval of the bid procedures set forth in the Sale Motion was set for hearing on August 30, 2018.

On June 28, 2018, the Creditors Committee filed a *Joint Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC* (the "Creditors Committee Plan") and accompanying

disclosure statement (the "Creditors Committee Disclosure"). *See*, Exhibits 4 and 54 attached hereto.

On July 6, 2018, the Museum filed a *Motion of the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC for Entry of an Order Scheduling a Status Conference on or Before July 25, 2018* (the "Status Conference Motion"). Although the Status Conference Motion purports to be joined by the Creditors' Committee, the Museum, and Running Subway Productions, the Museum is the sole signatory party to that Motion. The Museum is not a stakeholder in the bankruptcy proceedings.

On August 3, 2018, the Bankruptcy Court entered an Order on the Status Conference Motion, "to determine an orderly process to consider (1) the Debtors' Motion for Approval of Competitive Bidding Procedures and Asset Purchase Agreement, (2) the Official Committee of Equity Security Holders' Chapter 11 Plan and Disclosure Statement, and (3) the Official Committee of Unsecured Creditors' Chapter 11 Plan and Disclosure Statement." The Status Conference Order, directed "the parties [to] take the steps that they believe are necessary for approval of the proposed sales by" this Court.

On August 17, 2018, the Museum filed a Motion to Intervene ("the Motion") and a Complaint for Declaratory Relief in this matter. The Museum seeks to "bring the collection of artifacts recovered from the wreck of the R.M.S. *Titanic* to the United Kingdom and to display it for the benefit of the millions of visitors it hosts every year." Museum Compl., § 1. The Creditors Committee is not a party to the Motion.

On August 30, 2018, the Bankruptcy Court conducted a hearing to consider the Debtors' Sale Motion, the Official Committee of Equity Security Holders' Chapter 11 Plan and Disclosure

Statement, and the Official Committee of Unsecured Creditors' Chapter 11 Plan and Disclosure Statement. At the hearing on August 30, 2018, the Debtors advised the Bankruptcy Court that the Stalking Horse Purchaser had agreed to increase its proposed purchase price under the Sale Motion from $17.5 million to $19.5 million. In conjunction with this increased offer, the Debtors' largest unsecured creditor, the landlord for their New York City exhibition, 417 Fifth Avenue, (the "New York Landlord") advised the Court that it would oppose both the Creditor Committee's Disclosure Statement and Plan and the Equity Committee's Disclosure Statement and Plan.  Further, the New York Landlord advised the Court that it would vote against both the Equity Committee's Plan and the Creditor Committee's Plan. The New York Landlord has a blocking position with respect to the approval of any Plan of Reorganization.

The announced position of the New York Landlord makes it legally impossible for either the Creditors Committee Plan or the Equity Committee Plan to be approved.  Therefore no reason exits for either the Creditors Committee's Disclosure Statement or the Equity Committee's Disclosure Statement to be presented for a solicitation of votes. *See* 11 U.S.C. §1126(c) requiring that a class of claims holding at least two-thirds in amount and more than one-half in number vote to accept a plan.  Moreover, the Creditors Committee, in light of the increased purchase price under the Sale Motion and the New York Landlord's position, no longer supports the Creditors Committee Plan and the New York Landlord's position, no longer supports the Creditors Committee Plan and, instead, announced on the record at the August 30, 2018 hearing that it now supports the Debtors' Sale Motion, as amended by the increased purchase price announced on the record. The parties are awaiting the Bankruptcy Court's decision on the Debtor's Sale Motion and the Disclosure Statements.

## II.    ARGUMENT

### A.    The Museum Lacks Standing.

#### 1.    <u>The Museum must possess standing to intervene in this matter.</u>

Before addressing whether the intervention is proper, this Court must ensure that the Museum has standing to pursue its relief. *Salvors, Inc. v. Unidentified Wrecked and Abandoned Vessel*, 861 F.3d 1278, 1289 (11th Cir. 2017) (citing *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) ("Any party whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims.")).

A litigant must possess Article III standing in order to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ⸺ U.S. ⸺, ⸺ ⸺ ⸺, 137 S.Ct. 1645, ⸺ L.Ed.2d ⸺ (2017). "For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Id.* at ⸺, 137 S.Ct. 1645.

#### 2.    <u>The Museum has no injury.</u>

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992). Constitutional standing consists of three elements: (1) an injury in fact, that is "concrete and particularized" and "actual or imminent"; 2) a causal relationship between the injury and the conduct complained thereof; and 3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Id.* (internal citations omitted). The party invoking the jurisdiction of this Court bears the burden of establishing these elements. *Id.*

Here, the Museum's intervening Complaint seeks a declaratory judgment from this Court that the Museum constitutes a Qualified Institution under the terms of the Revised Covenants and Conditions.   In addition to denying intervention because what the Museum seeks is an impermissible advisory opinion, discussed *infra*, intervention fails at the outset because the Museum lacks the required standing due to the absence of an injury.   As set forth below, the Museum has absolutely no claim to, or legal interest in the artifacts. The Museum's role as a participant in the Creditors Committee Plan does not, and cannot as a matter of law, vest it with any legal interest in the artifacts, particularly as the Creditors Committee Plan cannot be confirmed as a matter of law.   Notably, the Creditors Committee no longer supports its own Disclosure Statement and Plan, thereby stripping the Museum of any ability to pursue a transaction under that proposed Plan. And since the the Creditors Committee Plan will not be being pursued, the Museum can only continue to act as a third-party with a desire to own and house the artifacts.     But the Museum's desire to own the artifacts does not constitute a "concrete and particularized" or "actual and imminent" injury sufficient to confer standing on the Museum.  *Id.*

Notably, the Motion is brought solely by the Museum, and is not joined by the Creditors Committee.   Like several other third-parties with no legal interest in the artifacts, the Museum seeks to purchase certain of the assets of RMST and its parent company, Premier Exhibitions, Inc., pursuant to the Company's Chapter 11 proceedings in the Bankruptcy Court.  Ironically, while the Museum seeks to acquire the artifacts through a Plan propounded by the Creditors Committee, the Creditors Committee is not a party to the Motion.   Under these circumstances, the Museum cannot claim a legal interest in the artifacts as a constituent in the bankruptcy proceedings, and the relief it seeks in its Complaint is premature.

        **3.**        **The standing conferred in *R.M.S. Titanic v. Wrecked and Abandoned Vessel* has no application to the Museum.**

The Museum cites to the holding in *R.M.S. Titanic v. Wrecked and Abandoned Vessel,* 920 F. Supp. 96 (1996), to support its argument that it has standing to intervene here.  In that matter, John Joslyn filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to rescind the order naming RMST salvor-in-possession.  Relying on *Darlak v. Columbus-America Discovery Group, Inc.*, 59 F.3d 20, 22 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, 116 S. Ct. 817, 133 L. ed. 2d 761 (1996), this Court noted that "[the] whole world . . . are parties in an admiralty cause; and therefore the whole world is bound by the decision." *R.M.S. Titanic*, 920 F. Supp. at 98. Accordingly, this Court ruled, "[i]t logically follows that if the whole world are parties bound by the judgment, then the converse should also be true: the whole world are parties who may request relief from the judgment."  *Id.*

Mr. Joslyn asked the Court to rescind its order naming RMST salvor-in-possession. Similarly, the plaintiff in *Salvors, Inc.* likewise sought to become salvor in that case, claiming that the defendant, "unlawfully retain[ed] exclusive salvage rights to a forty-one-mile stretch of the Florida coastline, thereby preventing [the plaintiff] from conducting profitable salvage operations."  *Salvors, Inc.* 861 F.3d at 1290. In both cases, the action *in rem,* or against the thing, applied to the wrecks which were the subject of the arrest proceedings.  In other words, the "specific property against all the world" for which the plaintiffs sought access through intervention were the wrecks themselves, by obtaining access through salvage rights.

But the Museum's Motion has virtually nothing to do with RMST's status as salvor.  Unlike in those cases, the Museum does not seek to remove RMST as salvor in possession through its Motion to Intervene and attendant Complaint for Declaratory Relief.  Its declaratory relief claims stem from its desire to acquire possession, by Court order, of RMST's property.  Indeed, the Complaint for Declaratory Relief seeks only, "a declaratory judgment that [the Museum]

7

constitutes a Qualified Institution under the terms of the Revised Covenants and Conditions." Museum Compl. at § 8. In other words, the relief sought by the Museum pertains exclusively to the artifacts governed by the Subject Titanic Artifact Collection (the "STAC") and the French Titanic Artifact Collection (the "FTAC") as those terms are defined in the Covenants and Conditions, and does not relate to RMST's salvage rights.  The salvage rights themselves are temporary by their nature, and subject to rescission. *See R.M.S. Titanic,* 920 F. Supp. at 98.

The same is not true with respect to artifacts for which title has been awarded to a salvor. "Once the [salvor] lien has been executed and the salvor as lienholder is paid its reward, whether in money or in kind, the reward becomes the property of the salvor to do with what it wants. *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel,* 286 F.3d 194, 204 (E.D. Va. 1996) (quoting *Point Landing Inc. v. Alabama Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir.1958)). "The Judicial sale cuts off the rights of all non-parties. The title from the marshal is good against the world." *Id.*

On August 15, 2011, this Court satisfied RMST's salvor lien on the artifacts it recovered from the wreck in 1993, 1994, 1996, 1998, 2000 and 2004 in the form of an *in specie* award to RMST of the STAC. As a matter of law, this *in specie* award conveyed title to these artifacts to RMST, subject only to the Covenants and Conditions, and which title is "good against the world." *Id.*

Although the Covenants and Conditions set forth certain limitations on the STAC, they do not contain any provisions requiring RMST to relinquish or transfer the STAC to any third-parties, let alone the Museum. Nor do the Covenants and Conditions vest this Court with authority to designate, *sua sponte,* a Subsequent Trustee without such request from the current Trustee; the Court approves (or rejects) an entity submitted for approval as a replacement Trustee on

application of the current Trustee. *See, e.g.*, Covenants and Conditions, § VI.  Similarly, title to the French Titanic Artifact Collection belongs to RMST via a *proces verbal* issued to it by a French Maritime tribunal in 1993. [cite].  RMST's ownership of the FTAC is final and long decided.

The Museum's contention that its Motion is timely because there has been no final determination of salvage rights (Doc. 475, Memo. in Support at 7) is false.  To the contrary, there has been a final determination of RMST's rights as to both the artifact collections; and those determinations preclude the Museum from claiming a protectable interest in the collections.  In contrast to RMST's salvage rights, which are temporal in nature, RMST owns the STAC and the FTAC outright (subject only to the Covenants and Conditions). Although a third-party such as Mr. Joslyn or the Museum may have standing to challenge RMST's salvage rights, it has no similar standing to seek relief linked to the artifacts recovered and owned by RMST. Such standing "against the world" requires relief to be sought against the *rem,* not against artifacts to which title has already been transferred.

Here, in order to seek relief against property owned by RMST, the Museum requires Constitutional standing.  It has no injury, let alone an injury in fact, that is "concrete and particularized" and "actual or imminent." Accordingly, because the Museum has no concrete, particularized injury, or any injury whatsoever with respect to the artifacts, it has no standing to seek relief related to its status as a Qualified Institution, justifying its possession and ownership of RMST's private property.  The Museum also lacks a causal relationship between the injury and the conduct complained of; and, in addition to lacking a real injury and therefore standing, the Museum is not likely to receive a favorable decision on its request for an advisory opinion.

**B.**      **The Museum Cannot Satisfy the Elements of Intervention.**

A party who seeks to intervene in a case has two options available under the Federal Rules of Civil Procedure: intervention of right and permissive intervention. FED. R. CIV. P. 24.  For intervention of right, under Rule 24(a)(2), a court must grant an applicant's motion to intervene if it complies with each of the following elements: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.,* 314 F.R.D. 180, 183 (E.D. Va. 2016) (internal citations omitted).

The Museum cannot comply with any one of the four components in Rule 24(a)(2), let alone all four. The Motion is not timely. The instant salvage action remains open only with respect to RMST's salvage rights; the proceedings have been closed with respect to ownership of the STAC since 2011, when this Court issued an *in specie* award as to the STAC, and since 1993, when RMST received title to the FTAT through the *process verbal.* Indeed, title to these artifacts, which vested in part seven years ago and in part twenty-five years ago, is final: "[t]he judicial sale cuts off the rights of all non-parties." *R.M.S. Titanic, Inc.* 286 F.3d at 204.

In addition, and as set forth above, the Museum has no interest in the property to protect. As a matter of law, the judicial awards of the artifacts to RMST confirm RMST's sole and exclusive ownership of the artifacts.  As set forth above, given the status of the bankruptcy proceedings, the Museum has no interest in the property to protect and thus no injury or right to intervene under the additional factors of Rule 24(a)(2).

The Museum fares no better under permissive intervention under Federal Rule of Civil Procedure 24(b).  Permissive intervention requires either a conditional right to intervene by federal statute, or a claim that shares with the main action a common question of law or fact. *Id*.  Both are lacking by the Museum, who has no legal claim to any property of RMST.

The Creditors Committee has no current or prospective legal interest in the property that is the subject of this litigation.  In fact, the Creditors Committee is no longer pursing its Disclosure Statement and Plan, making it impossible for the Museum to acquire the assets under that Plan. Moreover, pursuant to Order of the Bankruptcy Court entered on August 3, 2018 (a copy of which is attached hereto as Exhibit 6), Premier Exhibitions, Inc., has the legal right to proceed with a sale of its assets prior to and outside of a Plan, pursuant to 11 U.S. Code § 363(b). Premier intends to proceed in this manner. As noted above, as the Museum has no interest in the property and, therefore, no injury.  Thus, the Museum has neither standing nor the right to intervene in these proceedings.  RMST will supplement this response with the Bankruptcy Court's decision on the Debtor's Sale Motion and the Disclosure Statements, which decision is anticipated to be rendered prior to this Court's hearing on the intervention motions.


### C.      The Museum Seeks an Impermissible Advisory Opinion.

Section VI of the Covenants and Conditions provides for the protection of the STAC in the event of its sale, and sets forth the requirements for the designation of "Subsequent Trustees." Section VI.A states, in relevant part, the STAC, "may not be sold, transferred, assigned, or otherwise be the subject of a commercial transaction, except as approved by the Court."  By its plain language, Section VI affords this Court jurisdiction to "approve" a specific transaction presented to it, but not to offer advisory opinions on competing proposals, to manage RMST's

business operations, or to direct RMST how or with whom to structure its transactions. Nonetheless, this is the precise relief the Museum improperly seeks in its Complaint for Declaratory Relief, pursuant to its attempted intervention.

The Museum believes this Court should enter an order approving the Museum as a Qualified Institution, available to take ownership of the artifacts should the Bankruptcy Court decide in the future to enter an Order transferring the artifacts to the Museum. The Museum's proffered procedure is backwards, and amounts to a request for an impermissible advisory opinion.

The judicial power exists to render dispositive judgments, not advisory opinions. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995).  Regardless of whether the relief sought is monetary, injunctive or declaratory, for a case to be more than a request for an advisory opinion, there must be an actual dispute between adverse litigants and a substantial likelihood that a favorable federal court decision will have some effect.  *See Westlands Water Dist. v. Natural Resources Defense Council, Inc.*, 276 F. Supp.2d 1046 (E.D. Ca. 2003).  The court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Id*. (internal citations omitted).  Where a case concerns a "hypothetical, rather than actual legal dispute" the matter seeks nothing more than an advisory opinion. *Id*.

The Bankruptcy Court has the sole jurisdiction to rule on the Creditors Committee Plan. See Amended Order of Reference, No. 6:12-MC-26-ORL-22 (M.D. Fla. Feb. 22, 2012).  Until the Bankruptcy Court makes such a determination, any order entered by this Court approving the Museum as a Qualified Institution is purely hypothetical, and thus an improper advisory opinion.

*Westlands Water*, 276 F. Supp. 2d at 1046.[1]   Indeed, the Museum acknowledges this very point. *See* Doc. 475, Museum Memo. at 7 (arguing the Museum has an interest in the artifacts because it, "has proposed the Museum Plan in the Bankruptcy Court which, *if accepted*" would allow the Museum to acquire the artifacts) (emphasis added).   Until the Bankruptcy Court rules on the various Plans and the Company's sale motion, a decision by this Court regarding whether the Museum is a Qualified Institution would be a premature improper advisory opinion.   Indeed, allowing the Bankruptcy Court to first rule on the disposition of the artifacts pursuant to Chapter 11 *before* this Court considers any such transaction under Section VI of the Covenants and Conditions is consistent with the holding in *In re. Aqua Pesca, LLC,* (2018 WL 3031085, at 4 (Bank. D. Alaska 2018), which case the Bankruptcy Court referenced in its August 3, 2018 Order. In that case, the bankruptcy court entered an order on an asset sale motion before the regulatory agency considered the sale.

For the foregoing reasons, RMST respectfully requests that the Court enter an Order denying the Museum's Motion to Intervene.

Respectfully submitted,

R.M.S. TITANIC, INC.

By Counsel

---

[1] The Motion's suggested approach is also highly inefficient, wasting both this Court's and the parties' resources.  Under the Motion's suggested procedure, this Court would assess the three (3) proposals before the Bankruptcy Court, to determine if their dispositions of the artifacts comport with the Revised Covenants and Conditions, and to consider the merits of Museum's status as a Qualified Institution before the Bankruptcy Court orders the sale of the artifacts to the Museum.  Doc. 475, Memo in Support at 2.  There would therefore be two separate evidentiary hearings on the Creditors Committee's qualifications, and the three proposals.

Counsel:


_____/s/_____
Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com

Brian A. Wainger (VSB #38476)
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tele: 757/965-6804
Fax: 757/304-6175
Email: bwainger@kaleolegal.com

<u>CERTIFICATION</u>

I hereby certify that the foregoing has been electronically filed through the Court's ECF system this 31st day of August, 2018.


_____/s/_____
Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com

106706657_1

15