# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

RMS TITANIC, Inc., *et al.*,[1]

CHAPTER 11

Case No. 3:16-bk-02230-PMG

Debtors.

**OMNIBUS REPLY (I) IN FURTHER SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF AN ORDER (A) APPROVING COMPETITIVE BIDDING
AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF
NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT;
(D) APPROVING BREAK UP-FEE AND EXPENSE REIMBURSEMENT;
(E) SCHEDULING AUCTION AND HEARING TO CONSIDER FINAL
APPROVAL OF SALE, INCLUDING REJECTION OR ASSUMPTION
AND ASSIGNMENT OF RELATED EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; (F) AUTHORIZING SALE OF THE TRANSFERRED
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS; AND (G) APPROVING SETTLEMENT WITH THE
PACBRIDGE PARTIES; AND (H) GRANTING RELATED RELIEF AND
(II) TO THE OBJECTIONS AND RESPONSES IN OPPOSITION THERETO**

RMS Titanic, Inc. ("RMST") and certain of its affiliates, as Debtors and Debtors in

Possession in the above-captioned case (collectively, the "Debtors"), by and through their

undersigned counsel, hereby file this omnibus reply (the "Reply") (i) in further support of

*Debtors' Motion for Entry of an Order (A) Approving Competitive Bidding and Sale*

---

[1] The Debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

*Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement; (D) Approving Break Up-Fee and Expense Reimbursement;(E) Scheduling Auction and Hearing to Consider Final Approval of Sale, Including Rejection or Assumption and Assignment of Related Executory Contracts and Unexpired Leases; (F) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (G) Approving Settlement with the PacBridge Parties; and (H) Granting Related Relief* [D.E. 1055] (the "Sale Motion");[2] and (ii) to (A) the response of the Official Committee of Equity Security Holders (the "Equity Committee") in opposition to the Motion [D.E. 1170] (the "EC Objection"); (B) the limited objection of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to the Motion [D.E. 1168] (the "CC Objection" and, together with the EC Objection, the "Committee Objections"); and (C) the objection of Euclid Claims Recovery LLC ("Euclid") to the Motion [D.E. 1109] (the "Euclid Objection"). In support of this Reply, the Debtors respectfully represent the following:

## PRELIMINARY STATEMENT

The amended plans and disclosure statements recently filed by the Equity Committee and Creditors' Committee confirm one inescapable truth: the APA executed by and among the Debtors and the Stalking Horse Purchaser is the only fully-funded transaction before the Court. In an attempt to deflect attention from this material fact, the Committee Objections inaccurately suggest the APA is a sweetheart deal negotiated in secret, providing for a private

---

[2] Capitalized terms used but not otherwise defined herein, shall have the meaning ascribed to such terms in the Sale Motion.

transfer of assets at bargain prices to the detriment of creditors and stakeholders.  To the contrary, the APA offers the Debtors' creditors and stakeholders both (i) a substantial recovery, by way of a firm purchase price, and (ii) the value-maximizing potential of higher and better offers at a public auction – in which anyone can participate, subject only to reasonable bid qualifications.  Critically, the APA is the only transaction to do so.

Nevertheless, the Committees continue to balk at the APA in favor of their own, competing Chapter 11 plans, both of which lack sufficient, committed funding (and, therefore, feasibility).  Indeed, both Committees filed scattershot objections to the Sale Motion, accusing the Debtors of, among other things, withholding access to diligence and attempting to consummate an insider transaction.  The Committee Objections are largely misleading, grossly inaccurate in some instances, and should be overruled for two primary reasons.

First, the APA is not an insider transaction.  The Stalking Horse Purchaser does not fall within any of the subcategories which make up the definition of "insider" under the Bankruptcy Code – a point that the Committees have yet to refute.  In addition, the shareholders of the Stalking Horse Purchaser do not exercise managerial control over the Debtors.  And, more importantly, even if the Stalking Horse Purchaser were an insider, the Bankruptcy Code does not forbid insider transactions; it simply subjects them to heightened scrutiny – a standard the proposed transaction unquestionably meets.  The APA was heavily negotiated by the Debtors' professionals at arm's length, and the Committees have no evidence to the contrary.

Second, contrary to the Committee Objections, the proposed bid procedures are fair, customary, and designed to maximize value to creditors through a competitive bidding process. The CC Objection argues that the equity holders of the Stalking Horse Purchaser have somehow colluded in an effort to stifle competitive bidding and exclude the Museums from an auction process. Nothing could be further from the truth. The Debtors' professionals have repeatedly invited the Museums to participate in the competitive auction process and submit a topping bid. The Museums have refused to do so, in each instance referring to their "unique" circumstances and purported inability to post a non-refundable deposit. In reality, the Museums simply are unwilling to have any skin in the game – a decision which more appropriately reflects their own fundraising concerns rather than any legitimate grievances with the Debtors' proposed bidding procedures.

Likewise, the EC Objection falls flat and, in fact, presents a completely erroneous interpretation of the bidding procedures. Specifically, the Equity Committee argues that, from June 14, 2018 (the date of the APA execution) through the conclusion of the proposed auction, the APA prohibits the Debtors from initiating contact with, soliciting officers from, or otherwise facilitating discussions or negotiations with, parties interested in submitting a competing transaction. Much like the arguments presented in the CC Objection, nothing could be further from the truth. Section 5.12 of the APA is clear that any prohibition against actively soliciting competing offers is limited to: (i) the time between the APA execution and the date the bidding procedures order is entered by the Court and (ii) after the date that the auction is closed. Following the entry of the order approving the bidding procedures and until the auction is closed, there is no prohibition against the Debtors soliciting offers for a

competing transaction. In fact, the proposed bidding procedures expressly provide that the Debtors intend to actively solicit offers for a competing transaction. Thus, the EC Objection is simply wrong and, stripped of its erroneous interpretation of the APA, the Equity Committee lacks any legitimate argument that the bidding procedures were "strategically designed to limit competition and chill bidding."

In sum, the Committee Objections provide no legitimate basis on which to deny or otherwise modify the Sale Motion, APA, or any other supporting document. For these reasons and as set forth more fully below, the Committee Objections should be overruled in their entirety and the Sale Motion should be approved.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1209.

## RELEVANT BACKGROUND

2. On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

3. The Debtors continue to manage and operate their business as debtors in possession under Bankruptcy Code sections 1107 and 1108.

4. On August 24, 2016, the United States Trustee appointed the Creditors' Committee and the Equity Committee (collectively, the "Committees") [D.E. 166, 167].

5.      On June 1, 2018, the Equity Committee filed a *Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.* (the "EC Plan") [D.E. 1045] and accompanying disclosure statement ("EC Disclosure") [D.E. 1044].

6.      On June 15, 2018, the Debtors filed the Sale Motion seeking approval of, *inter alia*, competitive bidding and sale procedures, the form of an APA, certain protections for the designated Stalking Horse Purchaser, a settlement with the PacBridge Parties, and authorization for the Debtors to sell the Transferred Assets to a Prevailing Bidder free and clear of all liens, claims, encumbrances and interests.

7.      On June 29, 2018, the Creditors' Committee filed a *Joint Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC* (the "CC Plan") [D.E. 1085] and accompanying disclosure statement (the "CC Disclosure") [D.E. 1084].

8.      On July 25, 2018, the Court conducted a status conference during which it heard from all interested parties regarding proposed dispositions of the Debtors' assets.  And, on August 2, 2018, the Court entered its *Order on Status Conference* [D.E. 1147] (the "Status Conference Order"), pursuant to which it set a hearing for August 30, 2018 to consider the Sale Motion along with the adequacy of the EC Disclosure and CC Disclosure.

9.     On August 24, 2018 the Creditors' Committee filed its CC Objection; and, on August 27, 2018, the Equity Committee filed its EC Objection.  The Committee Objections both seek substantially the same relief – denial of the Debtors' Sale Motion.[3]

10.     On August 28, 2018, the Creditors' Committee filed a First Amended Joint Plan of Liquidation [DE 1176] and accompanying Disclosure Statement [DE 1177] (collectively, the "Amended CC Plan Documents").

11.     On August 29, 2018, the Equity Committee filed an Amended Chapter 11 Plan of Reorganization [DE 1182-1] and Amended Disclosure Statement [DE 1181-1] (collectively, the "Amended EC Plan Documents").

12.     The Amended EC Plan Documents and the Amended CC Plan Documents show that both Committees lack adequate, committed funding for their proposed transactions.

## REPLY

13.     The Committee Objections,[4] to a large extent, implicate the same two themes:[5] (i) the Debtors' proposed asset sale was unduly influenced by insiders and (ii) the proposed bidding procedures will stifle competitive bidding.  Accordingly, Sections (I) and (II) of this

---

[3] Although, facially, the CC Objection requests modification of the relief sought in the Sale Motion (rather than outright denial), the modifications the Creditors' Committee seeks would eviscerate the Sale Motion.  The CC Objection, therefore, functionally seeks denial of the Sale Motion.

[4] As noted above, Euclid filed an objection; however, its bases for objecting are subsumed entirely by the Committee Objections.  Thus, while the Debtors intend for this Reply to serve as a response to the substance of the Euclid Objection, there is no separate reference to it.

[5] Notably, both Committee Objections contain similar omissions regarding the Admiralty Court.  The CC Objection, for example, states that "the Museums and the Equity Committee have moved to intervene in the [Admiralty Court] action" but neglects to note that Judge Smith has agreed with the Court's jurisdictional analysis in the August 2, 2018 Scheduling Order.  *See* Transcript of Proceedings, dated August 21, 2018, attached hereto as **Exhibit 1**.

Reply respond to the themes shared among the Committee Objections, while the balance of the Reply addresses objection-specific allegations or contentions.

## I.     INSIDER ALLEGATIONS

14.    The Committee Objections both allege that the Debtors' APA is a sale to, or influenced by, insiders of the Debtors.  *See* EC Objection, at 13 (alleging that the APA was "negotiated by and among insiders of the Debtors."); CC Objection, at ¶ 9 fn. 4 ("[t]he parties disagree concerning whether the secured lender members are insiders by virtue of their having contributed their shares to a voting trust . . . controlled by the Debtors' CEO.").[6] The Committees' arguments miss the mark for several reasons.

15.    First, the proposed transaction under the APA is not a sale to an insider of the Debtor.[7]  An "insider" includes, in relevant part: (1) a director of the debtor; (2) an officer of the debtor;[8] (3) a person in control of the debtor; (4) a partnership in which the debtor is a general partner; (5) a general partner of the debtor; (6) a relative of a general partner,

---

[6] Both Committee Objections inaccurately assert that Mr. Bao controls a "voting trust" made up of shares contributed by, among others, the Secured Lenders.  The agreement, entitled a "Stockholders Agreement," is a fully revocable power of attorney designating Mr. Bao as the participants' agent.  It does not, in other words, affect a stock transfer and sever the participants' beneficial interests from the subject shares.  *Cf., e.g., In re Morse*, 247 N.Y. 290, 297 (1928) ("[a] voting trust agreement confers on voting trustees the right to vote on stock transferred to them for such purpose, irrevocably for a definite period.  Stock transferred under such an agreement is canceled and trust certificates are issued by the trustees to the stockholders.  The right to vote is thereby separated from the beneficial ownership of the stock.").  Thus, the agreement does not create a voting trust.

[7] As an initial matter, an assessment of insider status is more appropriately reserved for preference actions under Section 547 of the Bankruptcy Code rather than asset sales under Section 363 of the Bankruptcy Code. *Compare* 11 U.S.C. § 547(b)(4)(B) (prescribing different preference lookback periods for "insider[s]") *with* 11 U.S.C. § 363 (no use of the word "insider.").

[8] The CC Objection cites the erroneous testimony of Mr. McFarland, one of Debtors' counsel appearing before the Admiralty Court, for the proposition that Mr. Bao "may have a financial interest" in Apollo Global Management, LLC.  Mr. McFarland inadvertently misspoke – Mr. Bao does not now hold, nor has he ever held, an interest in Apollo.  Mr. McFarland has since corrected the record.  *See* Periodic Report of R.M.S. Titanic Inc [D.E. 1172-1].

director, officer, or person in control of the debtor; (7) an affiliate, or insider of an affiliate as if such affiliate were the debtor; or (8) a managing agent of the debtor. 11 U.S.C. § 101(31). The Stalking Horse Purchaser unequivocally does not fall into any of the foregoing categories and is not, therefore, an "insider" within the meaning of the Bankruptcy Code.[9] And the shareholders of the Stalking Horse Purchaser do not exercise actual managerial control over the Debtors.

16.     More importantly, even assuming the Stalking Horse Purchaser fits within the definition of "insider" – and it does not – the Debtors' APA still surpasses the heightened scrutiny sometimes reserved for insider transactions. The Bankruptcy Code does not delineate the boundaries of heightened scrutiny; however, certain courts have characterized it as requiring a showing that the "transaction is the result of bonafide [*sic*] arm's length transactions" and "that the assets are being sold for the highest price attainable." *In re Tidal Constr. Co.*, 446 B.R. 620, 624 (Bankr. S.D. Ga. 2009). Here, the Debtors will make that showing at the August 30, 2018 hearing to consider approval of the Sale Motion.

17.     Indeed, the APA is the <u>only</u> fully funded, committed offer for the Debtors' assets, notwithstanding over a years'-worth of extensive marketing efforts by the Debtors and their financial advisor, GlassRatner. This alone supports a finding that the purchase price is the "highest price attainable." *See id.* ("[b]ecause [the assets] have been exposed to

---

[9] The EC Objection states that the Secured Lenders are insiders because "each was a 'person in control of the Debtor' under 11 U.S.C. § 101(31)." EC Objection, at 15. This is both legally incorrect and logically inconsistent with the Equity Committee's later representation that "those shares are in a voting trust controlled by Daoping Bao." EC Objection, at 19. *See also Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.)*, 554 F.3d 382, 396 n.5 (3d Cir. 2009) ("person in control" requires a finding of "day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a direct stake.").

the market for an extended period of time without being purchased, I am convinced that the [debtor's] collateral is being transferred . . . for the highest price reasonably attainable.  As such, this sale meets the higher scrutiny due insider sales.").  Nonetheless, the APA remains subject to higher and better offers at an auction – thereby ensuring the highest purchase price possible.

18.     Further, the Debtors have been open and honest about the APA and its participants, fully disclosing all known relationships among parties.  *See* Sale Motion, at ¶ 32.  Finally, the APA was marketed through GlassRatner, negotiated by and between counsel for the Debtors and counsel for the APA counterparties, and approved by the Board of Directors of the Debtor.[10]  The negotiations were extensive – covering virtually all material deal points, including purchase price, contingencies, bid protections, and the possible bankruptcy filing of certain Canadian entities – and entirely arm's-length.

19.     Altogether, this is more than adequate to withstand even heightened scrutiny. *See, e.g.*, *Mission Products Holdings, v. Old Cold LLC (in re Old Cold LLC)*, 558 B.R. 500 (B.A.P. 1st Cir. 2016) (upholding a sale of virtually all of the debtor's assets to the majority owner of the debtor's outstanding shares, where, among other things, the assets had been marketed by a financial advisor and the majority shareholder had recused himself from the sale process, been designated as the staking horse bidder, and later was the highest bidder at the auction).  Accordingly, to the extent the Committee Objections rely on an allegation or finding of insider status, they should be overruled.

---

[10] Mr. Bao, an officer who also sits on the Board, was excluded from the vote on the APA to avoid even the appearance of any impropriety.

## II.   **COMPETITIVE BIDDING**

20.    The Equity Committee asserts its first objection on the basis of perceived bid solicitation limitations or restrictions.  Specifically, the EC Objection quotes § 5.12 of the APA to create the impression that the APA prohibits the Debtors from soliciting competing bids for the majority of the sale process.  *See* EC Objection, at § A.i. ("[u]nder the APA the Debtors agreed that between the date of entry into the APA, June 14, 2018, through the conclusion of the auction, the **Debtors would not** '(A) *initiate contact with, or solicit or encourage submission of any inquiries* . . .") (emphasis in original).  This characterization of the APA is wrong.

21.    The APA does <u>not</u> prohibit the Debtors from soliciting inquiries, proposals, etc. "between the date of entry into the APA . . . through the conclusion of the auction." Instead, the APA – by its clear terms – prohibits the Debtors from soliciting only "between the date of [the APA] and the date the Bid[] Procedures Order is entered by the Bankruptcy Court" and then again "from and after the date the auction is declared closed."  APA, at § 5.12(a)(i), (ii).  The Debtors, in other words, are free to solicit between the entry of the Bid Procedures Order and the proposed auction – which dovetails with the entire purpose of having a sale subject to higher and better offers.  In fact, the Bid Procedures expressly contemplate that the Debtors will actively solicit offers for a competing transaction.  *See* Bidding Procedures, § III.A. ("[f]ollowing approval of the Bidding Procedures and until the Bid Deadline (as defined below), the Debtors intend to contact the Contact Parties to explore their interest and may initiate contact with, or solicit or encourage submission of any Qualified Bids by any person or otherwise facilitate any effort or attempt to make a Qualified

Bid."). The EC Objection's characterization of the solicitation provisions under the APA is inaccurate.

22. Subsection (ii) of the EC Objection consists of substantially similar misrepresentations. The Equity Committee argues that "the Bid[] Procedures permit the Debtors to limit solicitation of bidders only to those potential bidders who have previously conducted due diligence *and been invited by the Debtors to bid. See* Sale Motion, at ¶ 36." EC Objection, at 10 (emphasis in original). Again, the Equity Committee's characterization of the Bid Procedures is wrong.[11] The Bid Procedures do <u>not</u> "limit solicitation of bidders to only those bidders who have previously conducted due diligence . . . ." Rather, the Bid Procedures provide that the Debtors may "contact the Contact Parties to explore their interest" <u>and</u> "may initiate contact with, or solicit or encourage submission of any Qualified Bids by any person or otherwise facilitate any effort or attempt to make a Qualified Bid." Sale Motion, Ex. A – 1, Bid Procedures, at § III.A.

23. "Contact Parties" is defined in the APA as "parties whom the Debtors believe may potentially be interested in consummating, and whom the Debtors reasonably believe would have the financial resources to consummate, a competing transaction to that of the Stalking Horse Purchaser," and it includes approximately 140 parties, identified with the advice and input from both Committees.[12] Sale Motion, Ex. A – 1, Bid Procedures, at §

---

[11] As an initial matter, paragraph 36 of the Sale Motion has very little to do with specific solicitation procedures – it is a charted summary of the Bid Procedures and, in any event, does not reference an invitation-only bid solicitation.

[12] *See* Deposition of Marshall Glade, dated August 24, 2018 (hereinafter, the "<u>Marshall Depo.</u>") at 16:21 – 17:4 ("in conjunction with the equity and the Debtor and the creditor's committee we developed a target list of – of potential buyers . . . I think we reached out to slightly more than 140 potential parties."). The Marshall Depo is attached hereto as **<u>Exhibit 2</u>**.

III.A. While the Equity Committee concludes that the "Debtors should be required to cast a wider net," it is difficult to imagine how the Debtors' net could be wider than "any person." Even so, the Debtors welcome input from the Equity Committee and its professionals regarding interested parties that are not already included within the list of Contact Parties – a list for which both Committees provided advice and input.

24.     There is, consequently, no basis to sustain the EC Objection on the basis of "restrictions on solicitation of competing bids," particularly in light of the fact that the actual language of the APA, Sale Motion, and supporting exhibits directly contradicts the Equity Committee's reading of it.

25.     In a similar vein, the CC Objection suggests that the equity holders of the Stalking Horse Purchaser have partnered to stymie competitive bidding and exclude the Museums from an auction process.  *See* CC Objection, at ¶ 11.  The Creditors' Committee offers no evidence or substantive argument in support of its theory.  Contrary to the CC Objection, the Bid Procedures are quite customary and were designed to encourage a competitive bidding process rather than an exclusory one.[13]

26.     The CC Objection, essentially asks the Court to rewrite the bid procedures so that the Museums can purchase the Debtors' assets without any of the attendant risks or capital requirements of an interested bidder – that is, without participating in the auction process.  Under the scheme the CC Objection proposes in conjunction with the CC Plan, the Museums can pursue the Debtors' assets via the CC Plan and yet (i) evade payment of the

---

[13] The Creditors' Committee's allegations regarding bid procedures designed to "stifl[e] competitive bidding" are particularly perverse considering the CC Plan would eliminate bid procedures altogether in favor of a private sale.

Good Faith Deposit that is otherwise required from bidders; (ii) avoid the break-up fee/expense reimbursement in the event its purchase is consummated; and (iii) use plan confirmation to ultimately trump any competing sale – even one for a higher purchase price. *See generally* CC Objection. And if, for whatever reason, the Museums later fail to close the contemplated transaction, they are free to walk away without pecuniary harm. The fact that the Museums find themselves in the "unique" circumstance of refusing to provide a non-refundable deposit or evidence of their financial ability to close a competing transaction is telling – the problem lies not with the bidding procedures but with the Museums' confidence in their ability to fund and close a deal. In sum, the CC Objection seeks an order granting to the Museums the benefits of a transaction without the burdens and should be overruled.

## III.  SPECIFIC EQUITY COMMITTEE OBJECTIONS

### A.  Diligence Access.

27.    The Equity Committee's objections to the access requirements for the diligence room are unsupported by both law and fact and should be overruled. Specifically, the Equity Committee objects to the Biding Procedures' requirement that potential bidders "present evidence of financial wherewithal *before* being admitted to the [diligence room]," opining that such a requirement is "contrary to typical procedure" and bid-chilling. EC Objection, at 10 (emphasis in original). Far from being "contrary to typical procedure," a requirement to show financial means prior to admission to a diligence room is commonplace. *See, e.g.*, *In re N. Am. Techs. Grp., Inc.*, Nos. 10-20071, 10-20072, 10-20073, 2010 Bankr. LEXIS 5976, at *19 (Bankr. E.D. Tex. July 21, 2010) (approving bid procedures that, among other things, restricted data room access to parties who provided "[s]atisfactory financial

information that demonstrates the person or entity's ability to close the purchase and perform all ongoing obligations associated therewith."). Moreover, GlassRatner registered two new users to the diligence room <u>after</u> the Debtors filed their Sale Motion – hardly evidence of a chilled bidding procedure.[14] Thus, there are no "due diligence limitations" that, in any way, support a legitimate objection.

### B. *De Minimis* Typographical Errors Have been Corrected.

28. The Equity Committee asserts further objections based on alleged "unreasonable financial protections" and "uniformity." As noted by the Equity Committee, the Debtors inadvertently included two different breakup fee calculations in the Bid Procedures: one as the greater of $500,000 or 3% of the Purchase Price; the other as the greater of $500,000 or 3% of the Purchase Price "set forth in any Prevailing Bid." After discovering the error, the Debtors promptly removed the language "set forth in any Prevailing Bid," as reflected in the Revised Bid Procedures Order[15] and the Redlined Revised Bid Procedures Order.[16] Other than the (now-corrected) inclusion of the additional language "set forth in any Prevailing Bid," the Equity Committee has not pointed to any further differences between the APA, Sale Motion, and supporting exhibits, and the Debtors are not aware of any. The Equity Committee's assertion that "there are significant differences among the" APA, Sale Motion, and supporting exhibits, such that they "have created confusion as to what procedure the Debtors seek to have approved" is therefore misplaced.

---

[14] *See* Diligence Room Record Excerpt attached hereto as **Exhibit 3**.
[15] The Revised Bid Procedures Order and all exhibits are attached hereto as **Exhibit 4**.
[16] The Redlined Revised Bid Procedures Order and all exhibits are attached hereto as **Exhibit 5**.

EC Objection, at 13. Accordingly, there is no basis to sustain the EC Objection on account of perceived "unreasonable financial protections" or lack of "uniformity."

### C. The APA Was Solicited, Negotiated, and Executed in Good Faith.

29. The Equity Committee's final substantive objection accuses the Stalking Horse Purchaser and its equity holders, and possibly the Debtors, as lacking good faith in entering into and executing the APA. The basis for this objection appears to be the document referred to by the Equity Committee as the "Private Equity Term Sheet." *See* EC Objection, at 16. The "Private Equity Term Sheet" was a term sheet submitted by the Ad-Hoc Group in confidence to GlassRatner. It lacked any financials (*i.e.*, no purchase price, or any other figure) but included the language, "[i]n the event insider-affiliated Equity Holders are interested in participating as Plan Sponsors, the percentage of ownership will be TBD but will be based on a capital contribution from each party that is mutually agreeable." "Private Equity Term Sheet," at 3 fn.1 (emphasis added). Relying on that language, the Equity Committee asserts that "Private Equity Funds specifically requested assistance from the Debtors to put them in touch with 'insider-affiliated Equity Holders' so that they might solicit them to be plan sponsors with the Private Equity Funds' plan to acquire the Debtors to the exclusion of all 'outside' equity holders." EC Objection, at 16.

30. Besides the fact that the Equity Committee's analysis is not even remotely supported by the text in footnote 1 of the "Private Equity Term Sheet," GlassRatner forwarded notice of the "Private Equity Term Sheet" to the Equity Committee's financial

advisors a mere two days after receipt.[17]   And, soon thereafter, counsel for the Equity

Committee contacted the Debtors' counsel, Jeffrey Cavender,  to "get on a conference call

to discuss the Apollo and Alta proposal [the "Private Equity Term Sheet"]."[18] Mr. Gurfein,

in other words, had full knowledge of the "Private Equity Term Sheet" shortly after its

inception – there is thus no discernable basis for the Equity Committee's suggestion that the

document is now, somehow, evidence of foul play.

       31.     Finally, and as discussed above, the arm's-length nature of every transaction

involved in the APA is unimpeachable.  After GlassRatner conducted the marketing and drew

the parties together, the parties – through counsel – spent a tremendous amount of time

negotiating and drafting the terms of the APA.  Each side was represented by counsel who

advocated zealously for his or her respective client, with the parties to the APA extensively

negotiating the terms of the proposed transaction.  And, when the time came for the Board

of Directors of the Debtors to vote on the APA, Mr. Bao was excluded from the vote.  There

is, in other words, no evidence of anything <u>but</u> a good-faith, arm's-length transaction before

the Court.  That the Equity Committee has "questions" regarding the formation of the

Stalking Horse Purchaser is evidence of nothing – particularly considering that the Equity

Committee has obtained significant discovery regarding the APA, term sheet, and sale

process, including a four-hour deposition of Marshall Glade, the Debtors' financial advisor

---

[17] *Compare* Correspondence between Gilbert Li and Marshall Glade *et al.*, attached hereto as **Exhibit 6** *with* Correspondence between William McCaleb and Brendan Murphy, *et al.*, attached hereto as **Exhibit 7**.
[18] Correspondence between P. Gurfein and J. Cavender, attached hereto as **Exhibit 8**.

employed by GlassRatner. The Equity Committee's objections based on good faith should, therefore, be overruled.

## IV.   SPECIFIC CREDITORS' COMMITTEE OBJECTIONS

32.    Although styled as a "limited" objection, the CC Objection is anything but a limited objection. The CC Objection and accompanying proposed Order seek, among other things, to strip the Stalking Horse Purchaser of its bid protections in the APA and force the Debtors to provide the Seller Disclosure Letter to the Museums. *See* CC Objection, at ¶ 16(c), (d). In addition, the CC Objection seeks to subjugate any asset sale to a Chapter 11 plan. *See* CC Objection, Ex. 1 at ¶ 25 ("[t]o the extent that any chapter 11 plan confirmed in these cases . . . alters, conflicts with or derogates from the provisions of this Bid[] Procedures Order, the provisions of the order confirming the chapter 11 plan shall control.").

33.    Even more troubling, however, are the allegations in the CC Objection that "the Debtors have refused to provide the Museums and Running Subway with reasonable and necessary due diligence until the Museums fundraise the $19.2 million." CC Objection, at ¶ 6. The contention that the Museums and Running Subway have been denied access to the diligence in the Seller Disclosure Letter is patently false. Likewise, the Museums' statements, both in the CC Objection and in prior hearings before the Court, that they are "willing to execute a confidentiality agreement," are misleading. Entirely absent from the CC Objection and prior statements made by the Museums' counsel is that the Museums already have executed a non-disclosure agreement – over one year ago, on June 28, 2017.[19]

---

[19] *See* Confidentiality Agreement by and between Premier Exhibitions, Inc. and Royal Museums Greenwich, dated as of June 28, 2017, attached hereto as **Exhibit 9**.

Moreover, the Museums have been accessing substantial diligence materials in a data room maintained by GlassRatner for some time.  Dr. Fewster was granted access to the data room on July 4, 2017, and several members of the Museums' counsel subsequently requested and were granted access to the data room in September 2017.[20]  In fact, GlassRatner's records reflect that counsel for the Museums downloaded a significant number of documents (approximately 500) in the data room on July 13, 2018.[21]  Further, the Debtors' professionals have not been contacted by the Museums or any other plan proponent identifying a single diligence item that they were unable to locate in the data room.

34.     Thus, the Museums and Running Subway do not <u>need</u> the Seller Disclosure Letter to fully diligence their proposed transaction; they <u>want</u> the Seller Disclosure Letter to avoid the time and expense of sifting through diligence documents.  All the while, the Museums refuse to provide a non-refundable deposit or participate in an auction process and, instead, seek to deny bid protections to the Stalking Horse Purchaser.

<div align="center"><u>CONCLUSION</u></div>

Although both Committee Objections purport to provide various reasons in support of (i) denying the Sale Motion and (ii) allowing the EC Plan and CC Plan to go forward, neither has confronted the fact that there is only one transaction in front of the Court with adequate, confirmed funding: the APA.  And, more to the point, the Debtors have affirmatively shown that the APA is a good-faith, arm's-length transaction, which is subject

---

[20] *See* Correspondence between GlassRatner and Davis Polk, and Correspondence between GlassRatner and Dr. Fewster, both attached hereto as **Exhibit 10.**

[21] *See* Diligence Room Record Excerpt, attached hereto as **Exhibit 11** (showing access to the diligence room by Davis Polk).

to higher and better offers through a public auction. There is, therefore, no basis to jeopardize the only confirmed source of creditor recovery.

WHEREFORE, the Debtors seek entry of an Order: (i) overruling the Euclid Objection; (ii) overruling the CC Objection; (iii) overruling the EC Objection; (iv) granting the Debtors' Sale Motion; and (v) granting the Debtors such other and further relief as is right and just.

NELSON MULLINS RILEY
& SCARBOROUGH LLP

By _____*/s/ Daniel F. Blanks*_____
        Daniel F. Blanks (FL Bar No. 88957)
        Lee D. Wedekind, III (FL Bar No. 670588)
        50 N. Laura Street, Suite 4100
        Jacksonville, FL 32202
        (904) 665-3656 (direct)
        (904) 665-3699 (fax)
        daniel.blanks@nelsonmullins.com
        lee.wedekind@nelsonmullins.com

and

TROUTMAN SANDERS LLP
Harris B. Winsberg (GA Bar No. 117751)
Matthew R. Brooks (GA Bar No. 378018)
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutmansanders.com
matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on August 30, 2018.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Jay B. Verona, Esq.<br>Shumaker, Loop & Kendrick, LLP<br>101 E. Kennedy Blvd., Suite 2800<br>Tampa, FL 33602<br>(813) 229-7600<br>jverona@slk-law.com<br>*Attorneys for George F. Eyde*<br>*Orlando, LLC and Louis J. Eyde*<br>*Orlando, LLC* | Jill E. Kelso, Esq.<br>Miriam G. Suarez, Esq.<br>Office of the United States Trustee<br>400 W. Washington Street, Suite 1100<br>Orlando FL 32801<br>(407) 648-6301 ext. 137<br>jill.kelso@usdoj.gov<br>Miriam.g.suarez@usdoj.gov<br>*Attorneys for Guy G. Gebhardt,*<br>*Acting U.S. Trustee for Region 21* |
| Scott M. Grossman, Esq.<br>Greenberg Traurig<br>401 East Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, FL 33301<br>(954) 768-5212<br>grossmansm@gtlaw.com<br>*Attorneys for Lang Feng, Haiping Zou,*<br>*Jihe Zhang, and High Nature Holdings*<br>*Limited* | Ari Newman, Esq.<br>Greenberg Traurig, P.A.<br>333 S.E. 2nd Avenue, Suite 4400<br>Miami, FL 33131<br>(305) 579-0500<br>newmanar@gtlaw.com<br>*Attorneys for Lang Feng, Haiping Zou,*<br>*Jihe Zhang, and High Nature Holdings*<br>*Limited* |
| Jason B. Burnett, Esq.<br>GrayRobinson, P.A.<br>50 N. Laura Street, Suite 1100<br>Jacksonville, FL 32202<br>(904) 598-9929<br>jason.burnett@gray-robinson.com<br>*Attorneys for 417 Fifth Avenue Real*<br>*Estate, LLC* | Andrew T. Jenkins, Esq.<br>Bush Ross, P.A.<br>P.O. Box 3913<br>Tampa, FL 33601-3913<br>(813) 224-9255<br>ajenkins@bushross.com<br>*Attorneys for Bank of America, N.A.* |

Matthew J. Troy, Esq.
U.S. Dept. of Justice
1100 L Street NW, Suite 10030
Washington, DC 20005
(202) 514-9038
matthew.troy@usdoj.gov
*Attorneys for the United States Department
of Commerce, National Oceanic and
Atmospheric Administration*

Kathy A. Jorrie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
(213) 488-7251
Kathy.jorrie@pillsburylaw.com
*Attorneys for AEG Presents, LLC*

Brian D. Equi, Esq.
Goldberg Segalla, LLP
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 458-5608
bequi@goldbergsegalla.com
salamina@goldbergsegalla.com
sherndon@goldbergsegalla.com
*Attorneys for Structure Tone, Inc.*

J. Ellsworth Summers, Jr., Esq.
Burr Forman, LLP
50 N. Laura Street, Suite 3000
Jacksonville, FL 32202
(904) 232-7200
esummers@burr.com
*Attorneys for Michael J. Little*

Norman P. Fivel, Esq.
Assistant Attorney General
Office of the New York State
Attorney General
Civil Recoveries Bureau,
Bankruptcy Litigation Unit
The Capitol
Albany, NY 12224-0341
(518) 776-2264
norman.fivel@ag.ny.gov
*Attorneys for New York Dept. of Taxation
and Finance*

D. Marcus Braswell, Jr., Esq.
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
(305) 529-2801
mbraswell@sugarmansusskind.com
*Attorneys for Theatrical Protective Union,
Local No. One, IATSE*

Chris Broussard, Esq.
Suzy Tate, P.A.
14502 N. Dale Mabry Highway, Suite 200
Tampa, FL 33618
(813) 264-1685
cbrouss@suzytate.com
*Attorneys for The Armada Group GP, Inc.*

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
(904) 358-4000
rrt@tmhlaw.net
*Attorneys for Official Committee of
Unsecured Creditors*

Avery Samet, Esq.
Jeffrey Chubak, Esq.
Storch Amini & Munves PC
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100
asamet@samlegal.com
jchubak@samlegal.com
*Attorneys for Official Committee of
Unsecured Creditors*

Jacob A. Brown, Esq.
Katherine C. Fackler, Esq.
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
(904) 798-3700
jacob.brown@akerman.com
katherine.fackler@akerman.com
*Attorneys for the Official Committee of
Equity Security Holders of Premier
Exhibitions, Inc.*

T. David Mitchell, Esq.
Brenner Kaprosy Mitchell, L.L.P.
30050 Chagrin Blvd., Suite 100
Pepper Pike, OH 44124
(216) 292-5555
tdmitchell@brenner-law.com
*Attorneys for CRI Properties, Ltd.*

Susan R. Sherrill-Beard, Esq.
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326
(404) 842-7626
sherrill-beards@sec.gov
atlreorg@sec.gov
*Attorneys for U.S. Securities and
Exchange Commission*

Peter J. Gurfein, Esq.
Roye Zur, Esq.
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 557-0050
pgurfein@lgbfirm.com
rzur@lgbfirm.com
*Attorneys for Official Committee of Equity Security
Holders of Premier Exhibitions, Inc.*

Skyler M. Tanner, Esq.
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
tanners@lanepowell.com
beldingt@lanepowell.com
docketing-pdx@lanepowell.com
*Attorneys for Oregon Museum of Science and
Industry*

Howard Siegel, Esq.
945 McKinney Street, PMB 434
Houston, TX 77002
(713) 984-4801
howard@eucinv.com
*Attorney for Euclid Investments, LP
And Euclid Claims Recovery LLC*

Garrett A. Nail, Esq.
John F. Isbell, Esq.
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2900
garrett.nail@thompsonhine.com
john.isbell@thompsonhine.com
*Attorneys for Bay Point Capital Partners, LP*

Steven R. Fox, Esq.
Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316
srfox@foxlaw.com
*Attorneys for Titanic Entertainment
Holdings*

Jennifer Feldsher, Esq.
David L. Lawton, Esq.
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 508-6100
Jennifer.feldsher@bracewell.com
David.laweton@bracewell.com
*Attorneys for the Ad Hoc Group of
Equityholders*

Timothy Graulich, Esq.
James I. McClammy, Esq.
Mara Theophila, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Timothy.graulich@davispolk.com
James.mcclammy@davispolk.com
Mara.theophila@davispolk.com
*Attorneys for the Trustees of the National
Maritime Museum*

Steven Z. Szanzer, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Steven.szanzer@davispolk.com
*Attorneys for Royal Museum Greenwich*

Stephen D. Busey, Esq.
Asghar A. Syed, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
(904) 359-7700
busey@smithhulsey.com
asyed@smithhulsey.com
*Attorneys for the Ad Hoc Group of Equityholders*

Patricia Ann Redmond, Esq.
Stearns Weaver, et al.
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
predmond@stearnweaver.com
*Attorneys for the Trustees of the National Maritime
Museum*

Jason B. Burnett, Esq.
Ashlea A. Edwards, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
ashlea.edwards@gray-robinson.com
*Attorneys for Ramparts, Inc. d/b/a Luxor Hotel
and Casino*

25

**Via U.S. Mail**

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
5290 Shawnee Road, Suite 300
Alexandria, VA 22312

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144
Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

George Young Company
509 Heron Drive
Swedesboro, NJ 08085
Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
543 Broad Street
Augusta, GA 30901

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

Time Out New York
405 Park Avenue
New York, NY 10022

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

B.E. Capital Management Fund LP
Thomas Branziel
228 Park Avenue South, Suite 63787
New York, NY 10003
*Creditor Committee*

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
*Creditor Committee*

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

AEG Presents LLC
c/o Managing Member
800 W. Olympic Blvd.
Suite 305
Los Angeles, CA 90015

AEG Presents LLC
c/o CT Corporation System,
Registered Agent
ATTN: Amanda Garcia
818 West Seventh Street
Suite 930
Los Angeles, CA 90017

AEG Presents LLC
c/o Managing Member
5750 Wilshire Blvd.
Suite 501
Los Angeles, CA 90036-3638

AEG Presents LLC
c/o Managing Member
425 W. 11th Street
Los Angeles, CA 90015-3459


                          */s/ Daniel F. Blanks*
                               Attorney

~#4850-3589-9761~

# EXHIBIT 1

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/31/18 Page 31 of 325 PageID# 1522
Case 8:16-bk-02230-MGW Doc 1191-1 Filed 08/30/18 Page 2 of 46

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division

 3

 4    - - - - - - - - - - - - - - - - - -
                                        )
 5    R.M.S. TITANIC, INC.,             )
      SUCCESSOR IN INTEREST TO          )
 6    TITANIC VENTURES, LIMITED         )
      PARTNERSHIP,                      )
 7                                      )    CIVIL ACTION NO.
             Plaintiff,                 )    2:93cv902
 8                                      )
      v.                                )
 9                                      )
      THE WRECKED AND ABANDONED         )
10    VESSEL, ETC.,                     )
                                        )
11           Defendant.                 )
      - - - - - - - - - - - - - - - - - -
12

13

14                   TRANSCRIPT OF PROCEEDINGS

15                       Norfolk, Virginia

16                       August 21, 2018

17

18    BEFORE:  THE HONORABLE REBECCA BEACH SMITH
               Chief United States District Judge
19

20    APPEARANCES:

21            KALEO LEGAL
              By:  Brian A. Wainger
22                      And
              McGUIRE WOODS LLP
23            By:  Robert W. McFarland
                   Counsel for R.M.S. Titanic
24

25
```

```
 1      APPEARANCES CONTINUED:

 2

 3              UNITED STATES ATTORNEY'S OFFICE
                By:  Kent Porter
 4                   Assistant United States Attorney
                     Counsel for Amicus United States
 5
                THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
 6              By:  Jackie Rolleri
                          And
 7              DEPARTMENT OF JUSTICE
                By:  Matt Troy
 8                   Counsel for NOAA

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:93-cv-00902-RBS   Document 485-3   Filed 08/31/18   Page 33 of 325   PageID# 1524
Case 2:16-br-02230-PMG   Doc 1151-1   Filed 08/30/18   Page 4 of 46

3

```
 1              (Hearing commenced at 1:00 p.m.)

 2              THE CLERK:  In case 2:93cv902, R.M.S. Titanic,

 3   Inc., et cetera, versus The Wrecked and Abandoned Vessel, et

 4   cetera.

 5              Mr. McFarland, Mr. Wainger, is the plaintiff ready

 6   to proceed?

 7              MR. McFARLAND:  Good afternoon, Your Honor.  The

 8   plaintiff is ready.

 9              MR. WAINGER:  Good afternoon, Your Honor.

10              THE COURT:  Good afternoon.

11              THE CLERK:  Mr. Porter, is the defendant ready to

12   proceed?

13              MR. PORTER:  Good afternoon, Your Honor.  We are.

14              THE COURT:  Good morning.

15              Counsel, we are here this afternoon for a status

16   hearing.  Our last status hearing was on May 3rd, 2018, and

17   this hearing has been scheduled.  It was continued for about

18   ten days from the last scheduling due to the number of

19   filings and issues that were coming before the Court.

20              I have reviewed all of the submissions since June

21   2nd, then July and August, and I've reviewed all the

22   submissions that have come in to date through yesterday.

23   It's the Court's opinion that there are four issues that

24   need to be addressed today.  I'll just give them to you in a

25   summary fashion, and then we will proceed:  First, the
```

 1    bankruptcy court proceedings generally.  The Court needs to

 2    have a report and know exactly where you are in the

 3    bankruptcy proceedings.  The second issue are the motions to

 4    intervene.  They need to be generally addressed.  I know

 5    that counsel for R.M.S.T. contacted the clerk to be sure I

 6    was not going to rule on those today, and I'm not going to

 7    rule on them, but they are integral to the bankruptcy

 8    proceedings, as I read the paperwork in the bankruptcy

 9    court's orders, and we are going to generally address the

10    motions to intervene *vis-à-vis* the bankruptcy proceeding.

11         There is also a motion to approve the Asset

12    Purchase Agreement.  I did not receive any amended motion.

13    In one of the reports there was an indication that an

14    amended motion to approve the Asset Purchase Agreement would

15    be filed, but I have not received that amended motion.  I

16    have reviewed the operative pleading there that was filed on

17    June 29th, 2018.

18         Finally, the status report of the United States,

19    which was submitted on July 25, 2018, about two potential

20    expeditions, and we can address that at the end, if that's

21    agreeable to you, Mr. Porter.

22         MR. PORTER:  Fine, Your Honor.  Thank you.

23         THE COURT:  Also, as we start in, I will certainly

24    let you respond to anything on behalf of the United States,

25    Mr. Porter.

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/31/18 Page 35 of 325 PageID# 1526
Case 3:16-bk-02230-PMG Doc 1191-1 Filed 08/30/18 Page 5 of 46

5

1          I've known Mr. Powers, I see him here, and I know

2     that he has filed as a movant to intervene.

3          I don't know Mr. Neary.  Is he here?

4          MR. NEARY:  Yes, Your Honor.

5          THE COURT:  Mr. Neary, I know that you have filed

6     also a motion to intervene, and you're both at this juncture

7     movants in that regard.  I understand that there hasn't been

8     any formal written response to those motions yet.  I will

9     not, as I say, rule on them, but I do need information in

10    regard to them, and I will be asking you certain questions.

11    I may invite Mr. Powers and Mr. Neary to make a statement

12    before the Court.

13         Mr. McFarland, let's start with the first issue, in

14    general, the bankruptcy proceedings, if you could summarize

15    and give us your take on those proceedings.

16         MR. McFARLAND:  Thank you, Your Honor.  May it

17    please the Court.  Robert McFarland.  Let me introduce at

18    counsel table with me Brian Wainger, Jessica Sanders, the

19    corporate secretary who has been before the Court

20    previously.  Harris Winsberg is with us today, Your Honor.

21    He is the company's bankruptcy counsel or debtor's counsel

22    in the bankruptcy proceedings in Jacksonville.

23         THE COURT:  Nice to have you, Mr. Winsberg.

24         MR. WINSBERG:  Thank you.

25         MR. McFARLAND:  Your Honor, as the Court mentioned,

1    we were here on May 3rd for the last status conference, and

2    at that status conference, we asked the Court to essentially

3    set this hearing for another conference in what we hoped

4    would be the Court's opportunity to approve the Stalking

5    Horse Purchaser, the SHP, under the Asset Purchase

6    Agreement, or had there been another successful purchaser

7    buyer, to approve them.  We are not at that proceeding yet.

8           So if I may, Your Honor, I'm happy to address in as

9    much detail as the Court would like, but I think the Court's

10   third point, really, we are not there yet because the

11   bankruptcy court has not yet made a ruling in terms of a

12   purchaser or a qualified purchaser.  So we are not coming

13   before the Court today on that.

14          We would anticipate after, and the next matter in

15   the bankruptcy court will be the hearing on August 30th.

16   There was a hearing on July 25th, Your Honor, which was

17   called a status conference, and then the bankruptcy court

18   issued its ruling of August 3rd.

19          The Court noted in its order of August 3rd one of

20   the points that we made when we were last before Your Honor,

21   time is of the essence for the debtors here in the company

22   in the sense of trying to move things done and get a

23   successful and qualified purchaser for the company's assets,

24   and as it pertains to R.M.S.T., for the company stock.

25          That time of the essence has certainly continued

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/31/18 Page 37 of 325 PageID# 1528
Case 8:16-bk-02300-PMG Doc 1191-1 Filed 08/30/18 Page 8 of 40

7

1    and, in fact, magnified, Your Honor.  As the bankruptcy

2    court noted in its order of August 3rd, the present

3    condition with the administrative expenses being what they

4    are cannot continue.  The company is going to essentially

5    run out of cash and be in a negative cash flow.

6              THE COURT:  Because of all your legal fees?

7              MR. McFARLAND:  Debtors, Your Honor, that are the

8    real problem, quite frankly.  I know it's not really for

9    this Court but there are some issues, and we may get to

10   them, Your Honor, but there are administrative expenses

11   which are, as the Court noted, draining, and the situation

12   as a whole cannot continue.  In fact, in that sense, Your

13   Honor, the professional fees right now are not being paid;

14   they are being deferred.

15             So it is, from our client's standpoint, the

16   debtor's standpoint and the bankruptcy and R.M.S.T.'s

17   standpoint here, we appreciate the Court hearing us, and we

18   appreciate the Court's expediency because after the

19   bankruptcy hearing on August 30th, at which time the

20   bankruptcy court there will, we hope, Your Honor, schedule

21   an auction and make rulings on the adequacy of the plans

22   that are before it and rule on the motion for the approval

23   of the Asset Purchase Agreement, and we would hope that it

24   will at that point in time confirm the Stalking Horse

25   Purchaser.

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/31/18 Page 38 of 325 PageID# 1529
Case 8:16-bk-02230-CPM Doc 1191-1 Filed 08/30/18 Page 9 of 46

8

1          THE COURT:  As I understand what's coming up on

2     August 30th, from my reading of the orders and the

3     materials, is the Court is going to, first of all, consider

4     the competitive bidding procedures.  That's something that

5     the Court is going to look at that had been proposed by the

6     debtors.

7          MR. McFARLAND:  Correct.

8          THE COURT:  Then the Court is going to look at the

9     disclosure statement that's been filed by the equity

10    committee regarding their proposed plan?

11         MR. McFARLAND:  Correct.

12         THE COURT:  The disclosure statements filed by the

13    museum regarding their proposed plan?

14         MR. McFARLAND:  As part of the unsecured creditors,

15    yes, Your Honor, that's correct.  So two other plans will be

16    reviewed and the bidding procedures.

17         THE COURT:  That is what is supposed to occur on

18    August 30th before the bankruptcy court?

19         MR. McFARLAND:  Correct.

20         THE COURT:  This may be getting ahead a bit, but

21    the bankruptcy court invited or ordered the other two

22    entities, the equity committee, and I'll just call them the

23    museum, to intervene in this action?

24         MR. McFARLAND:  We don't read the bankruptcy's

25    Court order as inviting them to.  What the bankruptcy court

Case 2:93-cv-09902-RBS Document 485-1 Filed 08/21/18 Page 39 of 325 PageID# 1530
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 10 of 46

9

1  did there is it, number one, set forth that it was going to

2  follow the Chapter 11 procedures and policies set forth in

3  the bankruptcy code.

4          THE COURT:  I understand that, as well it should,

5  and it will, I feel positive of that.

6          MR. McFARLAND:  Right.  Then it rejected the idea

7  of a joint jurisdictional plan, essentially, that had been

8  offered by the equity committee, and this Court ruling

9  piecemeal or earlier than the bankruptcy court on the key

10 rulings, and what it said is, parties should go to the

11 District Court, to the extent necessary, for the approvals

12 necessary.

13         But we don't read the bankruptcy court's order at

14 all, Your Honor, as directing or mandating intervention by

15 these other parties.  In fact, and I don't want to get the

16 cart too much in front of the horse here, but in terms of

17 that, we believe it would be premature for either the

18 museum/unsecured creditors or the equity committee to move

19 in this case at this point in time.

20         THE COURT:  Well, I'm quoting from the bankruptcy

21 court's August 3rd order where the bankruptcy court directed

22 the parties to, "Move in the District Court for any

23 approvals or determinations required by the District Court

24 to complete the proposed transactions."  I think both courts

25 are in agreement that there are respective jurisdictions.

Case 2:93-cv-00902-RBS   Document 485-3   Filed 06/21/18   Page 40 of 325   PageID# 1531
Case 9:16-bk-02230-FMC   Doc 3191-1   Filed 08/30/18   Page 41 of 46

10

1    Obviously, the bankruptcy court has its jurisdiction.

2    Regardless of any approval of any sale of the assets, you

3    are subject to the covenants and conditions and the order of

4    this Court.  So, ultimately, there is going to have to be

5    some approval from this Court of something.  You can't just

6    move these assets out to another entity without following a

7    previous order of the Court.

8            This Court had jurisdiction and entered that order,

9    and that's a final order of this Court.  It's going to have

10   to be followed.  I think both the bankruptcy court and this

11   Court recognize that.  This Court has no desire to get into

12   the bankruptcy proceedings and direct any approvals there.

13   That's up to the bankruptcy court in their Chapter 11

14   proceedings.

15           On the other hand, this Court does have to approve

16   any transfer of all of these assets to be sure that it is

17   following this Court's order of the covenants and conditions

18   to keep everything together and subject to the jurisdiction

19   of this Court.

20           MR. McFARLAND:  We agree, Your Honor.  To the

21   extent there would be another purchaser other than the

22   Stalking Horse Purchaser, where there would be a transfer of

23   assets of R.M.S.T., we agreed, under the covenants and

24   conditions, that would be required.  Under the Asset

25   Purchase Agreement that has presently been presented to the

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/21/08 Page 41 of 325 PageID# 1532
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 12 of 46

11

1    bankruptcy court, this will be, as to R.M.S.T., a stock of

2    acquisition, a hundred percent of the stock of R.M.S.T.

3           So I don't think that directly implicates the

4    covenants and conditions, as we set forth in our motion and

5    memorandum.  What we do know and state to the Court that the

6    prospective purchaser in the Asset Purchase Agreement

7    directed and mandated that this Court have approval of that,

8    and that's under the Asset Purchase Agreement.  So we agree

9    with that aspect, Your Honor.

10          THE COURT:  Your position is that the Court really

11   doesn't need to approve your Asset Purchase Agreement

12   because it's a transfer of stock.  On the other hand, you've

13   asked for this Court to approve it because the purchaser is

14   requiring it.  So, in effect, this Court would have to

15   approve it.

16          MR. McFARLAND:  Absolutely, Your Honor.  We would

17   come to this Court for that approval after the bankruptcy

18   court's proceeding on August 30th and then when the other

19   proceedings proceed.  So, for example, if the bankruptcy

20   court sets the bidding procedures, and there is an auction

21   scheduled, the other option would be a private sale, but we

22   would prefer an auction because we think that will bring a

23   higher return.

24          Then there is an auction set with a date, a public

25   auction is held, et cetera, then the winning bidder at the

Case 2:93-cv-08902-RBS Document 485-3 Filed 08/31/08 Page 42 of 325 PageID# 1533
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 13 of 46

12

1    auction, we would then have to come to the Court and say

2    here's what is the auction qualified bidder and ask for the

3    Court's approval at that point time.

4         But at this point in time, we don't know.  It is

5    the company's position that we think the best and really

6    only viable option that's out there right now is the Asset

7    Purchase Agreement with the Stalking Horse Bidder.  That is

8    the only thing that we see as viable right now.  But things

9    may change between now and when the auction is scheduled.

10        At this point, Your Honor, it would be premature,

11   and we wouldn't ask the Court and couldn't ask the Court to

12   approve anyone today because there is really no one at this

13   juncture for this Court to approve.  But we do hope to come

14   back before the Court, and we would, if the timetable goes a

15   little quicker than it did, which brings us here today, we

16   are hoping to be back before the Court, obviously with the

17   Court's permission and schedule, in mid-October or so.

18        THE COURT:  There is something in here about a

19   September date.

20        MR. McFARLAND:  Your Honor, in the original Asset

21   Purchase Agreement, that is going to have to be amended.

22   There is no way we are going to get before Your Honor by

23   September 7th.  We acknowledge that.  They didn't move as

24   quickly in the bankruptcy court as we would have hoped.

25   That's just sometimes, as the Court is well aware, that

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/31/18 Page 43 of 325 PageID# 1534
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 14 of 46

13

1    happens in judicial proceedings.

2         So the Asset Purchase Agreement will have to be

3    amended to give this Court a later date for approval.  But

4    we hope that it would be mid- to late October that we could

5    be back before Your Honor and then say, here is the

6    qualified bidder that has come out of the proceedings, and

7    here is who -- we would be presenting them, regardless of

8    who it is.

9         As I say, it would be our preference, given what we

10   know right now, and what is the only really viable

11   transaction that is there, we believe it would be the

12   Stalking Horse Purchaser, which is their actual name, Your

13   Honor, Premier Acquisition Holdings, LLC, sometimes known by

14   the acronym PAHL, P-A-H-L.  But we would hope and believe

15   right now that that would be the best party to present to

16   the Court, but if it is someone else, then so be it, and we

17   would present them to the Court, and, obviously, the Court

18   would review their status, et cetera.

19        THE COURT:  That is what you called them, as you

20   explained in your June 12th report, consists of Apollo

21   Global Management, LLC.  Who are they?

22        MR. McFARLAND:  That is an equity fund, as I

23   understand it, Your Honor, of some individuals, some of whom

24   are the majority shareholders in the company.  So PAHL is

25   largely comprised of folks who already have a direct

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/31/18 Page 44 of 325 PageID# 1535
Case 9:16-bk-02230-FMC Doc 3191-1 Filed 08/30/18 Page 15 of 46

14

```
 1    interest in R.M.S.T. and Premier Exhibitions and have a very
 2    vested interest in making sure it succeeds.
 3              THE COURT:  Apollo?
 4              MR. McFARLAND:  Some of the members of Apollo, yes,
 5    Your Honor.
 6              THE COURT:  Who would they be?
 7              MR. McFARLAND:  Daoping, Your Honor.
 8              THE COURT:  Then you've got also Fundamental
 9    Advisors, LLC.  Who are they?
10              MR. McFARLAND:  I think that's another equity fund,
11    Your Honor.
12              THE COURT:  You've got PacBridge Capital Partners,
13    Limited.
14              MR. McFARLAND:  Another equity fund.  And the point
15    there is that unlike what has been discussed with the other
16    proposals, if you would, are out there, the funding is
17    there.  There is no question.  They have already made the
18    required deposit, and the funding is there on that side for
19    them to carry out this transaction.
20              THE COURT:  Then you have some secured lenders; you
21    have Haiping Zhou, Jihe Zhang and Lang Feng.  Are they all
22    Chinese citizens or are they American citizens?  Are they
23    Great Britain?  What is their citizenship?
24              MR. McFARLAND:  I think their citizenship is
25    Chinese, Your Honor.  Mr. Wainger can give the further
```

Case 2:93-cv-08902-RBS   Document 485-31   Filed 08/31/18   Page 45 of 325   PageID# 1536
Case 9:16-bk-02230-FMC   Doc 2191-1   Filed 08/30/18   Page 16 of 46

15

1    details if I miss.  They are Chinese but they are based out
2    of Canada or have operations in Canada.
3            THE COURT:  Those are the ones that we discussed
4    before out of Canada at another hearing?
5            MR. McFARLAND:  Yes, Your Honor.  Some of them are
6    current board members and directors of Premier Exhibitions,
7    Inc.  The company that would be set up, Your Honor, as the
8    new owner, would be an American company.  It would not be a
9    foreign company.  It would be an American company.
10           THE COURT:  Do you think it would be Delaware, is
11   that what I read?
12           MR. McFARLAND:  I think that's correct, Your Honor.
13           THE COURT:  So this company that would be set up,
14   then what are they going to do with the artifacts?
15           MR. McFARLAND:  Nothing different from what they
16   are doing now, Your Honor.  That is one of the other
17   benefits of our plan that I wanted to get into.  R.M.S.T.
18   would still be the trustee.  The same folks who are curating
19   and conserving the artifacts would remain the same team as
20   Klingelhofer, who Your Honor knows, and her crew would
21   remain in place, and, most particularly, the collection
22   stays intact under that plan and remains in the United
23   States.
24           THE COURT:  In this agreement, a document this
25   long, drafted by attorneys, 184 pages, there is no legal

Case 2:93-cv-09902-RBS  Document 485-3  Filed 08/21/08  Page 46 of 325  PageID# 1537
Case 3:16-bk-02230-PMC  Doc 2191-1  Filed 08/30/18  Page 17 of 46

16

 1  loophole in here, you are telling me?

 2          MR. McFARLAND:  I don't know about legal loopholes.

 3          THE COURT:  Have you read every word of this?

 4          MR. McFARLAND:  I cannot say I've read every word,

 5  but I've read it, Your Honor.

 6          THE COURT:  I have.

 7          MR. McFARLAND:  The plan and the process would be,

 8  R.M.S.T. is going to still be the owner of the artifacts,

 9  and will still do the conservation, curation.  The

10  collection remains intact.  It's not going overseas to

11  somewhere that may or may not be within the Court's

12  jurisdiction, and it most certainly is not going to get

13  broken up like another plan that has been proposed to the

14  bankruptcy court would do.

15          THE COURT:  That is your argument, and I accept

16  that as your argument.  What I'm saying is you've got to

17  back it up with showing the Court where it is in this

18  agreement.  You stand there and say that.  Then something is

19  approved and you say, but, Judge, that was approved.  Then

20  you approve this Asset Purchase Agreement, and, by the way,

21  in clause 8,986, there is this line that says, if such and

22  such occurs as a contingency, the following occurs, and the

23  collection leaves the country or is broken up into pieces.

24          I'm not saying that it's there, but I want to be

25  sure, and I want everyone to be sure -- this is a very

Case 2:93-cv-09902-RBS Document 485-31 Filed 08/31/08 Page 47 of 325 PageID# 1538
Case 9:16-bk-02230-FMC Doc 3191-1 Filed 08/30/18 Page 18 of 46

17

1    detailed agreement -- that there isn't a contingency or a
2    loophole in there that, yes, as a general premise, what you
3    say is correct.  Lawyers, that's what they are paid to do,
4    is to lawyer it up and put in all of the detailed contract
5    contingencies.  The covenants and conditions was a fairly
6    straightforward document.
7           MR. McFARLAND:  True, Your Honor.  But, again, and
8    I don't want to get the cart in front of the horse, we are
9    not asking the Court today to approve Premier Acquisition
10   Holdings LLC as the qualified bidder and for the Court's
11   ruling.
12          THE COURT:  I understand.
13          MR. McFARLAND:  That will come at a later time.
14   Again, I hope it will be in mid- to late October after the
15   process goes through.  I hear the Court's concerns, and I
16   personally feel pretty good about the Asset Purchase
17   Agreement and what will remain before this Court and what
18   will be done with the artifacts.
19          We certainly can take that up earlier, and I think
20   the government and NOAA have a position, but I know that
21   they filed their papers.  I know we have continued to work
22   with them.  My understanding is that they agree with the
23   bidding procedures now that would be in place if the
24   bankruptcy court adopts and approved those, and they agree
25   with the procedural program to proceed here.

Case 2:93-cv-09902-RBS Document 185-31 Filed 08/31/08 Page 48 of 325 PageID# 1539
Case 9:16-bk-02230-FMC Doc 3191-1 Filed 08/30/18 Page 15 of 46

18

1          In other words, first this has to go back to the
2    bankruptcy court for the hearing on August 30th and to see
3    what comes out of that hearing, and whom, if anyone, emerges
4    as a qualified bidder, et cetera.  Then we go through it.
5    Then, certainly, folks will have the chance to comment on
6    the adequacy and abilities of who comes out of the process.
7    But today, Your Honor, we did want to educate the Court on
8    what's going on in the bankruptcy court and sort of set
9    forth what we think is the procedural framework.
10         So, as I mentioned, I think the Court's third
11   point, in terms of the motion to approve the asset, there
12   will be a supplementation to that, Your Honor, but I think
13   it would have been most definitely premature to try and do
14   that now until we see what the bankruptcy court does on
15   August 30th.
16         THE COURT:  Although, the bankruptcy court has
17   recognized, and I understand the recognition, that assets
18   can be sold before a plan is finalized.  The way I viewed
19   that is the bankruptcy court was obviously doing its job by
20   saying, I'm going to look at bidding procedures, I'm going
21   to look at approvals, but the District Court might approve a
22   sale that would then result in the conclusion of the
23   bankruptcy.  When I say approved, approve it under the
24   covenants and conditions.  It's not my role to approve it
25   for Chapter 11 purposes, and I recognize that, and I repeat

Case 2:93-cv-00902-RBS   Document 485-31   Filed 08/31/18   Page 49 of 325   PageID# 1540
Case 3:16-bk-02230-PMG   Doc 2191-1   Filed 08/30/18   Page 20 of 46

19

1    that yet again.

2          MR. McFARLAND:  That was going to be my final point

3    in terms of the bankruptcy court's order of August 3rd, Your

4    Honor.  The Court did note that ability under the Chapter 11

5    proceedings, and so that is, in part, why we are here.

6          THE COURT:  Let me see if there is anything

7    Mr. Porter wants to say in response.

8          MR. McFARLAND:  Thank you, Your Honor.

9          THE COURT:  Is there anything you have to add,

10   Mr. Wainger?

11         MR. WAINGER:  I could add something now or I can

12   wait till Mr. Porter speaks, whichever is more convenient.

13         THE COURT:  Go ahead, Mr. Porter.  If he wants to

14   respond to you, I'll let him do that.

15         MR. WAINGER:  Thank you, Judge.

16         MR. PORTER:  Your Honor, just on the procedural

17   posture, we would agree with Mr. McFarland that -- I think

18   we said that in our responses before -- this really needs to

19   route through the bankruptcy court to present to you

20   somebody to decide whether they qualify under the covenants

21   and conditions.

22         Obviously, R.M.S.T. has agreed to bring to this

23   Court any proposed sale.  We think in the covenants and

24   conditions there actually is language that would require

25   that even for the stock sale, and that would be in Section

Case 2:93-cv-00902-RBS Document 485-31 Filed 08/24/18 Page 50 of 325 PageID# 1541
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 21 of 46

20

1    VI(E)(1) because any proposed stock sale cannot effectuate a

2    change in the management, conservation, and curation of the

3    STAC.

4          We have addressed that in our filings, too, as to

5    what we are looking for in that and what we believe the

6    Court would be looking for.  So we think there is certainly

7    room in there for the Court to address that particular

8    issue.  That's really all I have on that process, Your

9    Honor.

10          THE COURT:  I agree with you on that last point.

11          MR. PORTER:  Right.

12          THE COURT:  Mr. Wainger.

13          MR. WAINGER:  Thank you, Judge.  Good afternoon,

14   Your Honor.

15          THE COURT:  Good afternoon.

16          MR. WAINGER:  The issue, as I see it, is, as to

17   approval, is just one of timing, Your Honor.  Regardless of

18   whether it's the Asset Purchase Agreement or elsewhere, the

19   issue is simply when do we come to this Court to get this

20   Court's approval?

21          I think R.M.S.T. and NOAA agree, and that's

22   consistent with Judge Glenn's order, that once Judge Glenn

23   makes an approval, be it of the Asset Purchase Agreement or

24   one of the other plans, then and only then do we come here

25   and ask for this Court's approval of the covenants and

Case 2:93-cv-00902-RBS-2 Document 485-3 Filed 08/31/18 Page 51 of 325 PageID# 1542
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 22 of 46

21

1    conditions or compliance with the transaction with the

2    covenants and conditions.  That is all that we are

3    suggesting.

4            We don't want this Court to be concerned with a

5    variety of hypotheticals or require this Court to issue an

6    advisory opinion about whether or not this transaction is

7    compliant with the covenants or this transaction determines

8    a qualified institution.

9            So we want to make this as efficient as possible;

10   let Judge Glenn make his determination, and then with that

11   we come in here and let Your Honor decide whether or not it

12   complies with the covenants and conditions.

13           With respect to the Asset Purchase Agreement, I

14   have read every word, like Your Honor.

15           THE COURT:  I didn't say I understood every word.

16           MR. WAINGER:  Me either, Your Honor.

17           THE COURT:  I'm not a bankruptcy lawyer or

18   bankruptcy judge, although we do have jurisdiction over

19   bankruptcy appeals.

20           MR. WAINGER:  Yes, Your Honor.  We have taken every

21   step possible to ensure that the Stalking Horse Purchaser

22   steps into the shoes of R.M.S.T., that R.M.S.T. that exists

23   today will be the same R.M.S.T. that exists if this

24   transaction takes place.  Because it's a stock purchase, it

25   will be the same transaction.

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/21/18 Page 52 of 325 PageID# 1543
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 25 of 46

22

1        There will be similar steps to ensure that those

2    artifacts remain where they are under the care of

3    Ms. Klingelhofer and her team, with a U.S. entity, as you

4    say, a Delaware entity, and that has been very, very

5    important to the company.

6        Finally, Judge, I disagree, a coordinated

7    process -- let's see.  So, we have here, Judge, with respect

8    to the intervention motions -- I apologize, Your Honor.  The

9    Court seems to agree with the equity committee and a

10   creditor's committee that Judge Glenn's order --

11       THE COURT:  No, I haven't said I agree or disagree.

12   I was just reading the language from the order.

13       MR. WAINGER:  Understood.

14       THE COURT:  Be careful how you characterize what's

15   said because I'm reading an order, and I didn't say that I

16   agreed that it required a motion to intervene, and I'm not

17   going to rule on those today.  But there is a direction to

18   those parties to contact this Court in some way.

19       MR. WAINGER:  I understand.  I will say this.  I

20   disagree with the committee's interpretation that that

21   language in the order is an invitation to intervene.  To

22   understand the context of that order, Judge, we have to back

23   up just a bit.  The equity committee and the creditor's

24   committee moved in Florida, ahead of the July 25th hearing,

25   for a coordinated process for the concurrent consideration

Case 2:93-cv-09902-RBS Document 485-31 Filed 08/31/08 Page 53 of 325 PageID# 1544
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 24 of 46

23

1    of the creditor's committee and the equity committee, and

2    the debtor's sale motion and the debtor's stake horse, they

3    sought a protocol for the concurrent consideration by that

4    Court and this Court of the propriety of the sale of the

5    artifact collection.

6         We argued that this tortured inter-Court protocol

7    was completely and totally unnecessary and that they were

8    trying to complicate a matter that was very simple.  The

9    bankruptcy court handled Chapter 11, and this Court

10   determines compliance with the covenants and continues.

11        At the end of the day, Judge, we read Judge Glenn's

12   order to agree with us.  My role, is the way I read this

13   from Judge Glenn, is to file Chapter 11, and Chief Judge

14   Smith's role is to determine compliance with the covenants

15   and conditions.  If any party here wants to take up

16   compliance with the covenants and conditions, go to Judge

17   Smith to do it.

18        THE COURT:  I understand your reading and the

19   direction is to any of the parties, and it may be after the

20   approval of the bidding process by the bankruptcy court.

21   Judge Glenn may well be stating in the order that before

22   anything occurs finally, you have to move in the District

23   Court for any determinations required by that Court.  That's

24   your reading of the order.

25        I'm not saying that it's incorrect.  The judge

Case 2:93-cv-00902-RBS  Document 485-3  Filed 08/24/18  Page 54 of 325  PageID# 1545
Case 9:16-bk-02230-FMC  Doc 2191-1  Filed 08/30/18  Page 25 of 46

24

1   says, "Move in the District Court for any approvals or
2   determinations required by the District Court to complete
3   the proposed transactions."  So your reading of it is, is
4   once there is a bidding process determined, and once there
5   is a purchaser or purchase agreement, the auction or bidding
6   goes through, that before anything further goes through, you
7   have to come to this Court to be sure that it complies with
8   the covenants and conditions.  That's certainly one reading
9   of that order.

10          MR. WAINGER:  Precisely.  That is the way we read
11  it.  Thank you, Judge.

12          THE COURT:  Mr. Winsberg, since you've come all the
13  way up to Virginia, is there anything you want to add to any
14  of these comments so far?

15          MR. WINSBERG:  Your Honor, I am not *pro hac'd* in.
16  I'm happy to do so.  I just want to make your Court aware.

17          THE COURT:  I understand that.  I'm just asking,
18  you're sitting there, and you're the bankruptcy counsel, and
19  if you want to add something, I'll give you permission to do
20  it.

21          MR. WINSBERG:  Thank you, Your Honor.  Just real
22  brief, I think Your Honor, you hit it on the head on the
23  issues that are before the Court.  The language, and we are
24  going to submit a revised bid procedure order for Judge
25  Glenn that is going to include language that NOAA had asked

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/31/18 Page 55 of 325 PageID# 1546
Case 9:16-bk-02230-FMC Doc 1191-1 Filed 08/30/18 Page 26 of 46

25

1    for that we agreed to.  It's going to make it clear that the

2    the bankruptcy court is not going to sell the assets free

3    and clear of the covenants and conditions.  The bid

4    procedures and the sale order are going to make that clear,

5    and then whoever we decide to do, so if the bankruptcy court

6    decided to approve the bid procedures, and somebody becomes

7    qualified, there would be an auction.  If not, it would just

8    be the Stalking Horse Group would be the winning bid.

9         But whoever that may be, or if it's one of the

10   disclosure statement and plans that would go forward for a

11   sale, whoever that may be, the contemplation under our

12   process was that after that we would come back in front of

13   Your Honor to make sure Your Honor was comfortable and that

14   whoever that purchaser is, is going to have to comply with

15   the covenants and conditions.

16        The last thing the debtors want to do is get into a

17   lengthy jurisdictional fight, that the estate is running low

18   on cash, Your Honor, and we are running out of time.  So we

19   just really want to move this forward in the most

20   expeditious way possible to preserve the going-concern

21   assets.

22        There are 150 jobs at stake in this process, as

23   well as making sure that the collection stays together, and

24   that's what the debtors are trying to do.  I'm happy to

25   answer any bankruptcy questions, Your Honor, but I just

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/21/08 Page 56 of 325 PageID# 1547
Case 9:16-bk-02230-FMC Doc 3191-1 Filed 08/30/18 Page 27 of 46

26

1    wanted to say that.

2         THE COURT:  I'm not going to ask any bankruptcy

3    questions.  I'm going to let the bankruptcy court handle

4    that at that level, and I think both the bankruptcy court

5    and this Court are in agreement that we each have respective

6    jurisdictions, and we will abide by those jurisdictions.

7         MR. WINSBERG:  Thank you.

8         THE COURT:  Now that you have appeared before me

9    and you have made statements on the record, and you are a

10   member of a bar of a court, I can hold you to it.

11        MR. WINSBERG:  You can, Your Honor.  I will be back

12   up.  I would presume I'll be back up for the final sale

13   hearing, if we are lucky enough to get a sale approved by

14   the bankruptcy court and come back to the District Court.

15   I'll be at the hearing, because, presumably, we are going to

16   have to make a showing in front of Your Honor, and if Your

17   Honor wants evidence, and if NOAA, I'm sure, is going to

18   want some evidence to make sure that the purchasers coming

19   in and taking it are subject to the covenants and

20   conditions.

21        THE COURT:  Thank you, Mr. Winsberg.

22        Is there anything else you want to add here,

23   Mr. Porter, at all?

24        MR. PORTER:  No, Your Honor.  I would just point

25   out that Matt Troy is hear from the department.  He is

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/31/18 Page 57 of 325 PageID# 1548
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 28 of 46

27

1    representing NOAA in the bankruptcy proceeding if you have

2    any particular questions for him.

3              THE COURT:  All right.  Is there anything,

4    Mr. Troy, that you want to add?

5              MR. TROY:  No, Your Honor.  Only to answer your

6    questions if you have any.  If you have none, then I have

7    nothing to add.

8              THE COURT:  Ms. Rolleri, is there anything you'd

9    like to add?

10             MS. ROLLERI:  No, Your Honor.

11             THE COURT:  Thank you.

12             Then that covers two of the Court's points for

13   today's hearing.  One scheduling matter that I would suggest

14   to you, and if it's necessary that we move the next status

15   hearing before this Court, continue it due to the bankruptcy

16   schedule, we can.  The bankruptcy court is going to hold a

17   very important hearing on August 30th.

18             I think that this Court will need some type of

19   report back as to the results of that hearing, and,

20   Mr. Porter, maybe you would be the person to get

21   clarification for this Court in regard to Judge Glenn's

22   directive, desire and position on whether the two parties

23   need to intervene at this juncture or not, if he so elects

24   to clarify that.

25             Certainly, not going to require it because one

Case 2:93-cv-09902-RBS Document 485-31 Filed 08/31/18 Page 58 of 325 PageID# 1549
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 25 of 46

28

 1    Court is not going to require something of another in that

 2    regard, but if you're at the August 30th hearing, and the

 3    question comes up that Judge Glenn might want to address,

 4    whether he would like or his preference on the creditors and

 5    the museum intervening in this proceeding here prior to his

 6    approval of anything, any auction, bid, or so forth.

 7         Before we move into the intervention, I know I may

 8    be skipping around a bit, but, Mr. Porter, I know you've had

 9    some knee surgery.  If you don't want to stand, I don't mind

10    that you sit at the table.

11         MR. PORTER:  That is fine, Your Honor.  Thank you.

12         THE COURT:  Can you tell the Court about your

13    status report of July 25, 2018.

14         MR. PORTER:  Yes.  Regarding the potential

15    expeditions to the wreck site?

16         THE COURT:  Yes.

17         MR. PORTER:  As Your Honor knows, there's actually

18    three potential ones out there:  The Woods Hole

19    Oceanographic expedition; I believe it's pronounced EYOS

20    Expeditions, which was in the status report; and then

21    previously we had discussed OceanGate.

22         THE COURT:  Yes.

23         MR. PORTER:  At this juncture both OceanGate and

24    Woods Hole are no longer going to be doing any expeditions

25    this year.  They are pushed off until next year.

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/21/18 Page 59 of 325 PageID# 1550
Case 3:16-bk-02230-PMG Doc 2191-1 Filed 08/30/18 Page 30 of 46

29

1          THE COURT:  The window is closing, too.

2          MR. PORTER:  Well, the window, certainly.  They are

3   not doing anything for this year.  So for next year, there

4   will have to be additional information submitted to NOAA for

5   them to vet that proposal to determine whether or if a

6   permit is required.  So at this point they have moved down

7   the road.

8          The only one that is still in place is the EYOS

9   Expeditions, and that is planning to go forward.  Between

10  the dates of September 15th and 17th is when they will be

11  conducting the dives.  As we pointed out in the status

12  report, their purpose, really, is to conduct dives to test

13  their equipment and not so much to explore and do things at

14  the Titanic.

15         So they have not suggested any kind of expedition

16  that would interfere with or disturb the wreck site.  There

17  are some questions about some ballast weights that are

18  dropped, and Ms. Rolleri can touch on those a little bit.

19  But at this point right now NOAA has reviewed their

20  proposal.  It is still required to be approved or not

21  approved by the Department of Commerce, the Secretary of

22  Commerce.  As you recall, there was the overlaying issue of

23  whether that decision would be delegated to NOAA.  It is not

24  at this time.  So that decision is still out there and has

25  not been made.

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/31/18 Page 60 of 325 PageID# 1551
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 31 of 46

30

```
1          THE COURT:  Who or what is EYOS?

2          MR. PORTER:  Could I call Ms. Rolleri up because

3    she has dealt extensively, she and Mr. Alberg, who are here,

4    have dealt extensively with them?

5          THE COURT:  I'm concerned about, number one, who or

6    what they are; and, number two, that you have impressed upon

7    them that this Court has the in rem jurisdiction.  There can

8    be no salvage whatsoever of the wreck site.  What assurances

9    do you have that all they are doing is checking dive

10   equipment?  Why do they need to check it there?  There are a

11   lot of places you can check dive equipment.

12         MR. PORTER:  Two points on that:  When they first

13   contacted us, they were advised about the Court's in rem

14   jurisdictions and R.M.S.T.'s involvement in the case.  My

15   understanding is they have actually reached out to R.M.S.T.

16   to Mr. Wainger.

17         MR. WAINGER:  Yes.

18         MR. PORTER:  They have discussed that.  My

19   understanding is R.M.S.T. has expressed no concern with what

20   their plans are out at the Titanic wreck site.

21         THE COURT:  Let me hear from Ms. Rolleri first.

22         MS. ROLLERI:  Your Honor, Mr. Alberg and I have

23   both been communicating with EYOS, and their primary

24   expedition leader is Robert McCallum.  Our understanding is

25   that EYOS is a company that's actually incorporated in the
```

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/31/18 Page 61 of 325 PageID# 1552
Case 3:16-bk-02230-PMC Doc 2191-1 Filed 08/30/18 Page 32 of 46

31

1    Ise of Man.  It's this expedition company, and my
2    understanding is that, essentially, individuals can work
3    with them to go on various expeditions.  My understanding
4    also, in this particular instance, is that it's an American
5    who is funding the expedition.  It's a submersible that this
6    American individual is having or has had constructed, and so
7    we've been communicating primarily with the expedition
8    leader who is organizing everything.

9          He has reassured us and been very responsive to our
10   questions or reassured us that there is no interest in doing
11   anything that would interfere with the artifacts or the
12   actual wreck.  We have repeatedly reminded them, we have
13   recommended that they come or at least notify the Court,
14   given the Court's jurisdiction.  They did, as Mr. Porter
15   said, reach out to Mr. Wainger and informed R.M.S.T. of what
16   their expedition plans are.

17         THE COURT:  What does EYOS stand for?

18         MS. ROLLERI:  Actually, it's unclear.  None of the
19   materials I have seen in their website also does not
20   indicate that it actually stands for something.  Certainly,
21   something I could find out.

22         THE COURT:  Just an unusual name.

23         MS. ROLLERI:  Sure.  Throughout all of our
24   interactions with EYOS and the others that are interested in
25   conducting expeditions, we have emphasized, obviously, this

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/31/18 Page 62 of 325 PageID# 1553
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 33 of 46

32

1  Court's jurisdiction and the need, you know, in how Section

2  113 gets implemented, to do so in a manner that is

3  consistent with this Court's orders and jurisdiction, as

4  well as R.M.S.T.'s salvage rights.

5          THE COURT:  Thank you, Ms. Rolleri.

6          MS. ROLLERI:  Thank you.

7          THE COURT:  Mr. Wainger, have you had

8  communications with EYOS?

9          MR. WAINGER:  I have spoken with the expedition

10  leader, Rob McCallum.  He has confirmed the same things that

11  Ms. Rolleri conveyed to the Court.  I can ask them to send

12  the Court a letter, Your Honor.

13          THE COURT:  Well, that would be helpful if they

14  would send a letter and put in writing to the Court on

15  record what it is that they plan to do, the dates and what

16  they're plans are, because they're going down to the wreck

17  site, and if you all aren't going to be there, when I say

18  you all, either the United States, NOAA or R.M.S.T., what do

19  you know what they bring up?

20          MR. WAINGER:  Sure.

21          THE COURT:  They are testing the submersible, it is

22  going down, and that is what you send the submersible for,

23  is to see how well it not only survives the trip but if it

24  has robotic arms that reach out from it and how the controls

25  work and how far those arms can reach, what they can grasp,

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/21/18 Page 63 of 325 PageID# 1554
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 34 of 46

33

1    what they can bring up.

2           So testing equipment can involve a lot of aspects

3    that could also overlap with salvage operations.

4           MR. WAINGER:  Yes, Your Honor.  I will ask them to

5    provide all that factual detail to the Court in a letter.

6           THE COURT:  While you're there, one question that I

7    had, as I went through these materials, what value are you

8    putting on being the salvor-in-possession that is an asset

9    together with the artifacts?

10          MR. WAINGER:  The salvage rights are, as the Court

11   knows, are owned by R.M.S.T.

12          THE COURT:  As long as they meet the requirements

13   of admiralty law to maintain their status as

14   salvor-in-possession.

15          MR. WAINGER:  Absolutely.  Your Honor has the

16   authority under the *Joslin* case to remove the salvage

17   rights, and I think, certainly, everyone at R.M.S.T.

18   understands that at this stage.

19          THE COURT:  Thank you.  The only other matter, and,

20   again, I haven't done the calculation, and I can look at the

21   docket sheet, on when your responses are due to the motions

22   to intervene.  There was one motion filed 8-17.  That was by

23   the official committee of equity security holders, and,

24   again, on the same day, the motion to intervene by the

25   trustees of the National Maritime Museum.

Case 2:93-cv-00902-RBS  Document 485-3  Filed 08/31/18  Page 64 of 325  PageID# 1555
Case 9:16-bk-02230-FMC  Doc 3191-1  Filed 08/30/18  Page 35 of 46

34

 1          MR. McFARLAND:  Yes, Your Honor.  I think both were

 2     filed Friday afternoon, I believe our response would be, to

 3     our opposition would be due August 31st, and we certainly

 4     will submit our positions on both motions before then.

 5          I know the Court said maybe generally discuss.  I

 6     don't want to put the cart in front of the horse on this

 7     issue, either, because the Court doesn't have our actual

 8     responses.

 9          THE COURT:  No pun intended, but I did say to my

10     law clerks, in discussing this, that I thought that by

11     asking the Court to approve your Asset Purchase Agreement

12     for the Stalking Horse Purchaser at this juncture that you

13     had put the cart before the horse, not trying to be cute or

14     funny, but that is something that pretty aptly described

15     what I thought you all were trying to do.

16          MR. McFARLAND:  We need to file that, Your Honor.

17          THE COURT:  We don't need to go back into that.

18          MR. McFARLAND:  Right.  With respect to the motions

19     that are before the Court on intervention finally brought

20     pursuant to Rule 24, it may be that the bankruptcy court

21     proceedings -- I'm not assuring the Court of this -- but it

22     may be that the bankruptcy court proceedings really address

23     those as a matter as well.

24          THE COURT:  Again, I don't plan to make any ruling.

25     I've heard basically the position on the intervention from

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/31/08 Page 65 of 325 PageID# 1556
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 36 of 46

35

 1   R.M.S.T., and since local counsel is here for the two

 2   prospective intervenors, I'll let you make a statement to

 3   the Court, if you so desire.

 4          Mr. Neary, you are here.  Do you want to make any

 5   statement before the Court?

 6          MR. NEARY:  Your Honor, we can wait until we

 7   receive the opposition of R.M.S.T.  We stand by the

 8   pleadings we filed on the 17th.  Your Honor would permit me,

 9   Mr. Gurfein is here with me.  He is *pro hac vice* attending.

10          MR. GURFEIN:  Excuse me, Your Honor.  Peter

11   Gurfein.  I really have nothing to add to what Mr. Neary

12   said.  Your Honor indicated that you will be reviewing the

13   motion.  We stated our position in the motion.  We will wait

14   for the opposition.

15          THE COURT:  Thank you.  Mr. Powers.

16          MR. POWERS:  May it please the Court, Your Honor.

17   Thank you, Judge.  If I may make some introductions.

18          THE COURT:  That's fine.

19          MR. POWERS:  Today we have Dr. Kevin Fewster.  He

20   is the director of the Maritime Museum.  He has come from

21   England to be here.  We also have Neil Quartaro.  He is with

22   the law firm of Watson, Farley & Williams in New York.

23   James McClammy with the law firm of Davis Polk & Wardell in

24   New York, and Tim Graulich who is also with Mr. McClammy's

25   firm.  He's the bankruptcy lawyer, by the way, Your Honor.

Case 2:93-cv-08902-RBS Document 485-1 Filed 08/21/18 Page 66 of 325 PageID# 1557
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 37 of 46

36

```
1            THE COURT:  Who is the other individual?

2            MR. POWERS:  I'm sorry.  This is the most important

3     one who does all the research.

4            MR. WEINER:  Jacob Wiener, Your Honor.

5            MR. POWERS:  Jacob Wiener, Your Honor.

6            THE COURT:  I have been there before so I know the

7     position that you're in.  I was where you are, I don't want

8     to say the number of years ago, but I know that you're doing

9     the work, a lot.

10           MR. WEINER:  Thank you, Your Honor.

11           MR. POWERS:  Your Honor, lest there be appearances

12    are somewhat deceptive, we are all here free of charge.  We

13    are representing the museum essentially pro bono.  We feel

14    strongly about their position, and that's why we are here.

15    Whether it's an invitation, whether it's a directive,

16    whether it was a suggestion, we interpreted the bankruptcy

17    court's order as coming here to basically seek approval to

18    get a seat at the table.

19           Before we can participate, really, in any sort of

20    bidding, we have to be deemed qualified institution.  Your

21    Honor, I don't profess to know all there is to know about

22    this case.  With the Court's indulgence, if Mr. Quartaro

23    could speak a few words, I'd appreciate it, Your Honor.

24    Just to be clear, he had previously been accepted *pro hac*,

25    and then Your Honor, as you know, we did not have our
```

Case 2:93-cv-09902-RBS  Document 485-31  Filed 08/31/18  Page 67 of 325  PageID# 1558
Case 9:16-bk-02230-FMC  Doc 2191-1  Filed 08/30/18  Page 38 of 46

37

 1   filings appropriate and so it was since rescinded.  He has

 2   once already been approved.

 3        THE COURT:  I'll let him speak the same as I did

 4   Mr. Winsberg, but very briefly because I'm not going to rule

 5   on any intervention.

 6        MR. POWERS:  Very briefly, Your Honor.  Thank you.

 7        MR. QUARTARO:  Thank you, Mr. Powers.  Of course,

 8   we will keep it very short, Your Honor.  Just a couple of

 9   sentences.  First thank you to Your Honor, to the Court for

10   allowing us to speak today while these motions are pending.

11   We appreciate it.

12        I did just want to note that Dr. Fewster traveled

13   here from the United Kingdom, not, of course, to testify,

14   but really to demonstrate partially, at least to the Court,

15   how serious the National Maritime Museum is about this

16   matter and how dedicated they are to acquiring the STAC, if

17   they are able to do so.

18        I just wanted to make a couple of very, very brief

19   points.  Our motion before the bankruptcy court was for a

20   status conference, and it wasn't, in our view, quite

21   correctly described to Your Honor.  We just made some

22   suggestions about a protocol under which the bankruptcy

23   court and Your Honor might exchange information and views.

24        We very much view the bankruptcy court's order in

25   what we believe is its most natural reading, which is

Case 2:93-cv-09902-RBS Document 485-3 Filed 08/31/18 Page 68 of 325 PageID# 1559
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 35 of 46

38

1    directing the entities that may succeed in the bankruptcy.

2    There are only three.  It's not a large universe of

3    potential acquirers of the STAC.  We read that order as

4    directing us to reach out to the Court, to appear in the

5    Court and, specifically, with respect to the National

6    Maritime Museum and the proposed acquirers under that

7    umbrella, to seek a process under which they can be deemed a

8    qualified institution.

9         Absent that finding, of course, no successful

10   bidder at the bankruptcy court is going to be able to bring

11   a plan or the bidding procedures, or whichever vehicle is

12   involved, to fruition.

13        Frankly, we're quite concerned, and Your Honor has

14   heard today, and in the bankruptcy court this representation

15   has been made, as well, of the clock is ticking.  But I note

16   that this is a bankruptcy that is almost two years old.

17        So we are quite concerned that what Your Honor is

18   going to be confronted with, certainly, to the detriment of

19   the other entities that may be interested in acquiring this

20   collection with some approval that is essentially *fait*

21   *accompli*.  We are out of money.  This is the plan that we

22   think will work and, essentially, trying to relegate the

23   Court almost to a rubber stamp status.  That's really the

24   reason that we are here.

25        We view that bankruptcy court order, and I note

Case 2:93-cv-00902-RBS   Document 485-31   Filed 08/21/18   Page 69 of 325   PageID# 1560
Case 9:16-bk-02230-FMG   Doc 2191-1   Filed 08/30/18   Page 40 of 46

39

1    that prior to that, the stay would have probably precluded

2    us from taking any action before Your Honor, as directing us

3    to appear.  With respect to the statements that have been

4    made about this somehow actually being an order that directs

5    parties to appear after the August 30 hearing, we have a

6    little bit of difficulty with reading it that way, because,

7    of course, the order issued well in advance of that hearing.

8    I think if that was what the bankruptcy court was driving

9    at, that might be something that came up at the August 30

10   hearing.

11           So I think we will take Your Honor's admonition to

12   keep things brief and leave it at that, unless, of course,

13   you have any questions for us.

14           THE COURT:  I don't find anything improper about

15   your motion to intervene.  Whether or not it's granted is

16   another matter, but I don't find any impropriety, other than

17   the procedural one that was, as I understand, more of a

18   glitch than anything else in our CM/ECF filing.  I don't

19   view this to be any impropriety by your filing the motions

20   and, certainly, would await the responses.

21           Then, of course, under our rules, I think you have

22   a few days to make a reply, if you so choose.  Then we will

23   proceed from there.

24           MR. QUARTARO:  Excellent.  Thank you very much,

25   Your Honor.  Thank you again for allowing us to speak today.

Case 2:93-cv-00902-RBS   Document 485-3   Filed 08/31/18   Page 70 of 325   PageID# 1561
Case 9:16-bk-02230-FMC   Doc 2191-1   Filed 08/30/18   Page 41 of 46

40

 1        THE COURT:  Counsel, obviously, you need to file a

 2   status report with the Court within seven days of the

 3   bankruptcy hearing.  I'm going to direct both Mr. Porter and

 4   you, Mr. McFarland and Mr. Wainger, to file a status report

 5   from your perspective within seven days, from Thursday, the

 6   30th, on or before September 6th with the Court.  I'll make

 7   that September 7th because I know you've got a holiday

 8   weekend intervening.  So file your status report on or

 9   before September 7th, and then your response is due on

10   August 31st to the motions to intervene and any replies,

11   just whatever the rules say.

12        I don't know whether you want to set a continued

13   hearing now or whether you would rather wait until after the

14   bankruptcy court has proceeded on August 30th.

15        MR. McFARLAND:  I think our pleasure, Your Honor,

16   would be to set it now, if possible.  Knowing the Court's

17   schedule and attorneys' calendars and schedules, I think it

18   would be good to try and set it now.

19        THE COURT:  We can set it, and also when we set it,

20   we will hear the motions to intervene on that same date, so

21   all of the attorneys are here, and that will be good to set

22   a hearing date now.  I'm going to look at it now.

23        MR. McFARLAND:  We were looking, Your Honor, in

24   light of the bankruptcy court, if they issue, there is a

25   28-day period.  I understand it's a minimum, so that would

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/21/18 Page 71 of 325 PageID# 1562
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 42 of 46

41

1   put us essentially at the end of September.  So we were

2   thinking mid- to late October.

3           THE COURT:  The Court has Thursday, October 18th

4   and Friday, October 19th.

5           MR. McFARLAND:  That is good for the plaintiff,

6   Your Honor, for R.M.S.T.

7           MR. POWERS:  Your Honor, I believe the confirmation

8   hearing is going to occur before that.  So take us

9   backwards, we probably ought to have it before the

10  confirmation hearing.

11          THE COURT:  The August 30th hearing, why do we have

12  to wait 30 days or 28 days after that?

13          MR. WINSBERG:  There is a couple different

14  permutations, Your Honor.  So if Judge Glenn approves the

15  bid procedures on August the 30th, the debtor would go out

16  and have a three-week period, roughly three- or four-week

17  period, where we would try to re-solicit to get an offer so

18  we could have an auction.

19          So the way the schedule was working from the bid

20  procedures is there would be a hearing to approve the bid

21  procedures.  Then the debtor would go back out with its

22  investment banker and re-dial the phones again to see if

23  anybody wanted to participate in the auction.  If anybody

24  wanted to participate, that auction, typically, that period

25  of time is about three weeks to give people a chance.

Case 2:93-cv-09902-RBS Document 185-3 Filed 08/31/18 Page 72 of 325 PageID# 1563
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 43 of 46

42

1          THE COURT:  I don't understand how that would

2     affect this hearing.  The bankruptcy court will have had its

3     hearing on August 30th and made whatever rulings it's going

4     to make, and then the motions to intervene would be ripe

5     before this Court.  I don't know why this Court, for a

6     status hearing, needs to wait all of that time.

7          MR. WINSBERG:  So the question, Your Honor, then --

8     I guess we are looking at two different things.  What I was

9     thinking about, Your Honor, was at some point the debtors

10    are going to have to go back in front of Judge Glenn,

11    irrespective of what happens on August 30th, whether it's

12    the debtor's transaction or it's one of the disclosure

13    statements that go forward.

14         There will be an additional hearing in front of

15    Judge Glenn on confirmation of a plan or an actual approval

16    of a sale, and that is going to likely happen, just give or

17    take, it's going to have to happen at some point in late

18    September, at the latest, or early October.

19         So I was thinking, Your Honor, that from the

20    debtor's perspective, we would have the bid procedures and

21    then there would be an ultimate sale hearing scheduled in

22    front of Judge Glenn towards the end of September, and

23    whatever the results of that when we come back to Your Honor

24    for this Court's approval in mid-October.

25         THE COURT:  I'm not looking at that.  This is going

Case 2:93-cv-00902-RBS-Document 485-3 Filed 08/31/18 Page 73 of 325 PageID# 1564
Case 9:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 44 of 46

43

1    far afield.  I'm going to set a hearing, and that hearing is

2    going to be a status hearing so that I can have a report

3    back on what's going on in the bankruptcy court, whatever

4    status it is, on the motions to intervene here, and any

5    other matters.

6           The bankruptcy court is operating on its schedule,

7    and I respect that.  This Court is trying to stay abreast of

8    the status of what's going on.  So we are going to set a

9    date, and I'm not going to be maneuvering around anything

10   other than the August 30th hearing of the bankruptcy court

11   and the deadlines for responding to the motion to intervene.

12   Said, done, we are going to set the hearing.

13          The Court has Tuesday, September 18th at 1:00.  Is

14   that available, Mr. Porter?

15          MR. PORTER:  The 18th?

16          THE COURT:  Tuesday, September 18th at 1:00.

17          MR. PORTER:  Your Honor, that would be available to

18   me.  I just want to point out, just chatting with Mr. Troy,

19   he expressed some question whether the judge would actually

20   rule after the August 30th hearing.

21          THE COURT:  If the judge doesn't rule, the judge

22   doesn't rule.  You can so inform me.

23          MR. PORTER:  I have 1:00 on the 18th, Your Honor.

24          THE COURT:  All right.  Mr. McFarland, Mr. Wainger?

25          MR. McFARLAND:  We will make it work, Your Honor.

Case 2:93-cv-00902-RBS Document 485-3 Filed 08/21/18 Page 74 of 325 PageID# 1565
Case 3:16-bk-02230-FMC Doc 2191-1 Filed 08/30/18 Page 45 of 46

44

1          THE COURT:  Mr. Powers?

2          MR. POWERS:  Yes, Your Honor.

3          THE COURT:  Mr. Neary?

4          MR. NEARY:  Yes, Your Honor, that is fine.  Thank

5     you.

6          THE COURT:  We will set, we will call it a

7     continued status hearing on this matter for Tuesday,

8     September 18, at 1:00 p.m.

9          MR. WAINGER:  Thank you, Your Honor.  May I give

10    Your Honor one data point, just for your information?  This

11    is just so that the Court is aware, Your Honor, right now

12    the company will be out of money in December.  So when we

13    say we are working on a tight time frame, we are.

14         THE COURT:  Mr. Wainger, those are issues, as far

15    as I'm concerned, for the bankruptcy court.  This Court's

16    jurisdiction is the preservation of those artifacts under

17    the covenants and conditions.  That's the issue before this

18    Court, and that there's been a long bankruptcy proceeding,

19    this Court has nothing to do with it.  That it's been

20    delayed, this Court has nothing to do with it.

21         The concern of this Court is that those artifacts

22    be maintained under the covenants and conditions that this

23    Court has ordered.  R.M.S.T. must make whatever arrangements

24    you need to pay or not pay your staff, to pay or not pay

25    your attorneys, because it is not an issue before this

Case 2:93-cv-00902-RBS   Document 485-3   Filed 08/31/18   Page 75 of 325   PageID# 1566
Case 9:16-bk-02230-FMC   Doc 2191-1   Filed 08/30/18   Page 46 of 46

45

|     |                                                                          |
| --- | ------------------------------------------------------------------------ |
| 1   | Court. |
| 2   | MR. WAINGER:  The only reason I raise it is because |
| 3   | I'm concerned that if we enter a liquidation and a trustee |
| 4   | takes over, what happens to those artifacts, and that's the |
| 5   | only reason I bring it up. |
| 6   | THE COURT:  We are going to have a hearing on |
| 7   | September 18th at 1:00. |
| 8   | MR. WAINGER:  Yes, Your Honor. |
| 9   | THE COURT:  Is there anything else that anybody |
| 10  | wants to bring to the Court's attention? |
| 11  | MR. PORTER:  No, Your Honor. |
| 12  | THE COURT:  The Court stands in recess until |
| 13  | tomorrow. |
| 14  | (Hearing adjourned at 2:07 p.m.) |
| 15  | CERTIFICATION |
| 16  | |
| 17  | I certify that the foregoing is a correct transcript |
| 18  | from the record of proceedings in the above-entitled matter. |
| 19  | |
| 20  | X_____/s/_____x |
| 21  | Jody A. Stewart |
| 22  | X_____8-22-2018 _____x |
| 23  | Date |
| 24  | |
| 25  | |

# EXHIBIT 2

Page 1

1        IN THE UNITED STATES BANKRUPTCY COURT

             MIDDLE DISTRICT OF FLORIDA

2               JACKSONVILLE DIVISION

3

4   In re:

                         Case No. 3:16-bk-02230-PMG

5   RMS TITANIC, INC.,

    et al.,                    Chapter 11

6        Debtors.

7

8            30(b)(6) DEPOSITION OF

9      GLASSRATNER ADVISORY & CAPITAL GROUP, LLC

10               MARSHALL GLADE

11               August 24, 2018

12                12:16 p.m.

13      GlassRatner Advisory & Capital Group, LLC

14                Suite 1225

15           3445 Peachtree Road, N.E.

16                Atlanta, Georgia

17      Carolyn J. Smith, CCR, RPR, RMR, CCR-A-1361

18

19

20

21

22

23

24

25

1              DESCRIPTION OF EXHIBITS

2

3    EXHIBITS          DESCRIPTION                    PAGE

4

5    Exhibit 1      Subpoena to Produce Documents,    8

6                   Information, or Objects or to

7                   Permit Inspection of Premises

8                   in a Bankruptcy Proceeding

9    Exhibit 2      Exhibit "A" to Subpoena to        8

10                  GlassRatner Advisory & Capital

11                  Group, LLC

12   Exhibit 3      Subpoena to Testify at a          8

13                  Deposition in a Bankruptcy

14                  Case (Or Adversary Proceeding)

15   Exhibit 4      Notice of Deposition of          11

16                  Corporate Representative

17                  of GlassRatner Advisory &

18                  Capital Group, LLC

19   Exhibit 5      Premier Exhibitions Target       25

20                  List - Signed NDAs

21   Exhibit 6      e-mail from Mr. Li, to           42

22                  Mr. McCaleb, 12/29/17,

23                  GLASS000162

24    Exhibit 7     e-mail from Mr. Glade, to        43

25                  Mr. Li, 1/2/18, GLASS000165-66

Page 3

1     DESCRIPTION OF EXHIBITS

2      (Continued)

3

4  EXHIBITS    DESCRIPTION       PAGE

5

6   Exhibit 8   e-mail from Mr. Glade, to  58

7       Mr. Cavender, 2/7/18,

8       GLASS000214

9  Exhibit 9   e-mail from Mr. Li, to   59

10      Mr. Glade, 2/23/18,

11      GLASS000234-235

12  Exhibit 10  e-mail from Mr. Glade, to  60

13      Mr. Schwartz, 1/10/18,

14      GLASS000167

15  Exhibit 11  Plan Term Sheet, Premier  63

16      Exhibitions, Inc.,

17      GLASS000184-192

18  Exhibit 12  e-mail from Mr. Wong, to  69

19      Mr. Glade, 3/9/18,

20      GLASS000408-419

21  Exhibit 13  e-mail from Mr. Roach, to  87

22      Mr. Grossman, 3/13/18,

23      RMST_EC2018 Subpoena_001694-1706

24

25

Page 4

1                    INDEX TO EXAMINATION

2

3                                                   Page

4

5    By Mr. Gurfein                                   8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1    APPEARANCES OF COUNSEL:

2

3    On behalf of the Debtors:

4

5            MATTHEW R. BROOKS

6            Attorney at Law

7            Troutman Sanders, LLP

8            Suite 3000

9            600 Peachtree Street, N.E.

10           Atlanta, Georgia  30308

11           (404)885-2618

12

13   On behalf of the Official Committee of Equity

14   Security Holders of Premier Exhibitions, Inc.:

15

16           PETER J. GURFEIN

17           Attorney at Law

18           Landau Gottfried & Berger, LLP

19           Suite 700

20           1801 Century Park East

21           Los Angeles, California  90067

22           (310)691-7374

23

24

25

Page 6

```
 1   APPEARANCES OF COUNSEL:

 2        (Continued)

 3

 4   On behalf of Premier Acquisition Holdings, LLC,

 5   Alta Fundamental Advisers, LLC, Apollo Global

 6   Management:

 7            JENNIFER FELDSHER

 8            Attorney at Law

 9            Bracewell

10            49th Floor

11            1251 Avenue of the Americas

12            New York, New York  10020

13            (212)508-6137

14

15   On behalf of Lange Feng, Jihe Zhang,

16   Haiping Zou, PacBridge Capital Partners (HK)

17   Limited, Premier Acquisition Holdings, LLC:

18            SCOTT M. GROSSMAN

19            Attorney at Law

20            Greenberg Traurig, P.A.

21            Suite 2000

22            401 East Las Olas Boulevard

23            Fort Lauderdale, Florida  33301

24            (954)768-5212

25
```

Page 7

1    APPEARANCES OF COUNSEL:

2        (Continued)

3

4    On behalf of GlassRatner:

5

6            ILYSE M. HOMER

7            Attorney at Law

8            Berger Singerman LLP

9            Suite 1900

10           1450 Brickell Avenue

11           Miami, Florida  33131

12           (305)755-9500

13

14

15           (Pursuant to Article 10(B) of the Rules

16    and Regulations of the Georgia Board of Court

17    Reporting, a written disclosure statement was

18    submitted by the court reporter to all counsel

19    present at the proceeding.)

20

21

22

23

24

25

```
 1              (Exhibit 1, Exhibit 2 and Exhibit 3
 2    marked)
 3              MR. GURFEIN:  Would you swear in the
 4    witness, please.
 5                     MARSHALL GLADE,
 6     30(b)(6) GLASSRATNER ADVISORY & CAPITAL GROUP, LLC
 7    having been first duly sworn, was examined and
 8    testified as follows:
 9                     EXAMINATION
10    BY MR. GURFEIN:
11        Q    Would you state your full name for the
12    record, spelling your last name.
13        A    Marshall Glade, G-L-A-D-E.
14        Q    Have you had your deposition taken before?
15        A    No.
16        Q    Okay.  Let me go over a couple of ground
17    rules.  And I want to make sure you understand
18    these.  And you're with your counsel today for
19    GlassRatner.
20              Any time you want to confer with counsel,
21    just indicate that you want to do so.  And I'm sure
22    you're not going to be shy about interjecting if
23    anything comes up that you want to mention.
24              MS. HOMER:  That's correct.
25
```

Page 9

BY MR. GURFEIN:

1

2        Q    Okay.  I'm going to be asking you

3   questions.  And I'll ask for answers from them.  And

4   the testimony is going to be the combination of the

5   questions and the answers.

6             If you don't understand a question that

7   I'm asking, please let me know and ask me to either

8   rephrase it or explain to you what you don't

9   understand.  Um, I'm going to be asking for your

10  best recollection.  It's not a memory test, your

11  best recollection as to facts that you've -- have to

12  testify with respect to questions I ask.

13            When we're finished, you will have an

14  opportunity to review the transcript and make any

15  corrections you may want to do.  And we'll cover

16  that in the stipulations at the end as to the timing

17  and performance of -- of that task.  If you need a

18  break for any reason, let me know, and we'll take a

19  break.

20            And then let me ask you, are you -- are

21  you on any medications today that would impair your

22  ability to testify?

23        A    No.

24        Q    Okay.  Is there any reason that we can't

25  continue today, proceed with today's examination,

1  that you know of?

2      A    No.

3          MS. HOMER:  And for the record, we do, um,

4  have a standing objection that we filed.  It's a --

5  we filed an objection with the Court regarding the

6  scope of the questioning and the -- the need to

7  limit it to that which was set forth in the notice

8  that noticed Mr. Glade as the corporate

9  representative of GlassRatner for today's

10 deposition.

11         MR. GURFEIN:  And you just reminded me

12 that I forgot to bring a notice to mark as an -- as

13 a Exhibit.  So if I could ask the reporter to leave

14 Exhibit 4 available, and I'll supply that notice

15 that was filed with the Court as it appears on the

16 Court's docket.

17         MR. BROOKS:  And the Debtors are going to

18 join in the objection to the extent that "and

19 related matters" listed on GlassRatner's objection,

20 to the extent the questions are outside the scope

21 that we think is proportional.

22 BY MR. GURFEIN:

23     Q    Would you very briefly tell me your

24 educational background.

25     A    I have a Master's of Accountancy from the

1    University of Georgia.

2         Q    And you're currently employed with

3    GlassRatner.  In what capacity are you employed?

4         A    Managing director.

5         Q    And, um --

6              MR. GURFEIN:  Thank you.  Off the record

7    for a second.

8              (Off-the-record discussion)

9              (Exhibit 4 marked)

10             MR. GURFEIN:  Let the record reflect that

11   Mr. Brooks was kind enough to provide a copy of the

12   notice.  And we've marked that as Exhibit 4.

13             MR. BROOKS:  You haven't seen my bill for

14   it yet though.

15   BY MR. GURFEIN:

16        Q    How long have you been with GlassRatner?

17        A    11 years.

18        Q    And were you employed elsewhere before

19   that?

20        A    Yes.

21        Q    In what capacity and where?

22        A    I was employed as an auditor at Grant

23   Thornton.

24        Q    Are you currently working with Premier

25   Exhibitions, Inc., in connection with its Chapter 11

Page 12

 1   case?

 2        A    Yes.

 3        Q    And in what capacity are you working with

 4   them?

 5        A    Financial advisor and sale advisor.

 6        Q    In the course of today's examination, I'm

 7   going to be mentioning some names and -- and I'm

 8   going to be abbreviating them.  So I'd like to go

 9   over what those are now.

10             Um, first we have PacBridge Capital

11   Partners (HK) Limited.  And I'll just be referring

12   to them as PacBridge.  There are three secured

13   lenders, Haiping Zou, Jihe Zhang, and Lange Feng.

14   And I'll be referring to them as the secured

15   lenders.

16             I'll be referring to Alta Fundamental

17   Advisers, LLC, as Alta.  And I'll be referring to

18   Apollo Global Management, L.L.C., as Apollo.  And

19   I'll be referring to Alta and Apollo as the equity

20   group.  And I'll be referring to the secured lenders

21   and PacBridge as the PacBridge parties.

22             And collectively, all of the parties will

23   be referred to as the stalking horse group; is that

24   clear?

25        A    Yeah.

```
 1        Q    Okay.  Let's -- let's talk about
 2   GlassRatner's role in the Premier Chapter 11 case.
 3   Premier was -- Premier retained GlassRatner -- I
 4   believe it was in around September 2016 as
 5   investment banker.
 6             Does that sound right?
 7        A    (Witness nodded head affirmatively,) no
 8   (Witness shook head negatively.)
 9        Q    When -- when were you retained?
10        A    We were retained as financial advisor in
11   or around September of 2016.
12        Q    What year did I say?
13        A    No, you said "investment banker" --
14        Q    Okay.
15        A    -- which is --
16        Q    Oh, investment advisor.
17        A    -- there's a difference.
18        Q    Okay.  And, subsequently, GlassRatner's
19   retention was expanded to include -- I think you
20   referred to it as sale advisor?
21        A    (Witness nodded head affirmatively.)
22        Q    And do you recall when the scope of your
23   retention was expanded to include sale advisor?
24        A    Yes, about the time of the planned support
25   agreement -- that the planned support agreement was
```

Page 14

1    signed.

2        Q    And that was in spring 2017.  I'm trying

3    to remember, was it May 2017?

4        A    I --

5        Q    Again, it's not a memory test, so we'll --

6    on or about the date that this planned support

7    agreement was approved --

8        A    Correct.

9        Q    -- by the Court?

10       A    (Witness nodded head affirmatively.)

11       Q    Okay.  Describe to me the role that

12   GlassRatner played as sale advisor in the case?

13       A    As sale advisor in the case, there were

14   specific, um -- there was a specific role, really as

15   defined in the planned support agreement as to how

16   GlassRatner was to market and sell the -- the

17   company.  And as a part of that role, it was to --

18   and when I say as a part of that role, I'm -- I'm

19   referring to all of this in conjunction with your

20   client and the creditor's committee and the Debtor.

21           So everybody participated in this

22   together.  I just want to be clear about that.  We

23   all participated in the marketing and sale process

24   together.

25       Q    And from whom did you take direction in

1    the course of that sale and marketing?

2        A    We took direction and input from all

3    parties.

4        Q    The question though is from whom did you

5    take direction?

6        A    There was -- there was direction provided

7    by all parties.

8        Q    To whom did you report in connection

9    with --

10       A    I reported to the equity committee, to the

11   creditor's --

12       Q    I'm --

13       A    -- committee, and to the debtor.

14       Q    I'm sorry, please let me finish the

15   question so that we have a clean record as to what

16   the question and answer are.  The question is -- um,

17   I'll ask you another question.

18           To whom did you report at the company, the

19   company being Premier, the Debtor, with respect to

20   your role as sale advisor?

21       A    I reported to management and the board of

22   directors.

23       Q    And was there any primary contact among

24   management that you reported to more regularly than

25   others?

1      A     Um, I would say we spoke with -- if we're

2   defining management as Jessica Sanders, Daoping and

3   Jerry, I was -- I kept up with them a lot.

4      Q     That's Daoping Bao, Jerry Henshall --

5      A     And Jessica Sanders.

6            MR. GURFEIN:  Off the record for a second.

7            (Off-the-record discussion)

8   BY MR. GURFEIN:

9      Q     If you were to be given -- strike that.

10  When you were given direction from the company, with

11  respect to your role as sale advisor, would that

12  come from Jessica Sanders, Daoping Bao, or Jerry

13  Henshall?

14     A     Correct.

15     Q     As part of your role as sale advisor, did

16  you initiate contact with potential bidders for the

17  company or for its assets?

18     A     Yes.

19     Q     And how did you go about identifying

20  potential bidders to contact?

21     A     Well, in -- again, in conjunction with the

22  equity committee and the Debtor and the creditor's

23  committee we developed a target list of -- of

24  potential buyers.

25     Q     And do you know how many were on that list

1    that you were working from?

2         A    I think that we reached out to slightly

3    more than 140 potential parties, or more than

4    140 potential parties.

5         Q    When you identified the 140 and reached

6    out to them, was that in connection with soliciting

7    their interest in purchasing the company or its

8    assets?

9              Let me -- you have a questioning look on

10   your face.

11        A    Yeah, I don't understand.

12        Q    Let me ask that again.  Good.

13             When you reached out to the 140,

14   approximately, potential bidders, how did you do

15   that?  What did you do?

16        A    We would provide them with a teaser that

17   was, um, reviewed and approved by management, the

18   equity committee, and the creditor's committee.

19        Q    Uh-huh (affirmative.)

20        A    And we would reach out via e-mail or phone

21   to gauge their interest.  After um -- after

22   receiving a teaser, we would send them an NDA, a

23   nondisclosure agreement.  And if the nondisclosure

24   agreement was signed, we would provide them with a

25   CIM, a confidential information memorandum, and

 1    access to the data room.

 2            (Off-the-record discussion)

 3    BY MR. GURFEIN:

 4        Q    And in sending out the teaser to the

 5    potential bidders, was this to solicit their

 6    interest in the sale process?

 7        A    Yes.

 8        Q    And if they contacted you back after

 9    having received the teaser, did you do anything to

10    encourage them to take a look at the assets, do due

11    diligence, express an interest in the sale?

12        A    Yes.

13        Q    Okay.  And did you ask them to submit

14    inquiries to you if they had questions about the

15    assets?

16        A    Yes, but this was all only after an NDA --

17        Q    After a --

18        A    -- was signed.

19        Q    -- nondisclosure agreement --

20        A    Yes.

21        Q    -- had been signed?

22        A    Yes.

23        Q    Okay, and after doing -- I'm assuming --

24    and correct me if I'm wrong -- that the purpose of

25    the NDA was to grant them access to the data room so

1    they could do due diligence; is that correct?

2        A    That's one of the purposes of the NDA.

3        Q    Okay.  What's -- what are the other

4    purposes?

5        A    So that we can have more substantial

6    discussions regarding a potential transaction.  Um,

7    Premier being a public company, we have to be -- we

8    had to be particularly sensitive to an NDA and not

9    providing a non-public information to someone who

10    may be trading in the stock, so we had to make sure

11    that we were particularly diligent on the NDA's.

12        Q    As a general rule, when -- when parties

13    conducted due diligence, did you follow up with them

14    with respect to the potential sale?

15        A    Yes.

16        Q    Did you solicit proposals from them --

17        A    Yes.

18        Q    -- for sale of the assets?

19        A    Yes.

20        Q    And were you successful in obtaining any

21    offers?

22        A    Yes.

23        Q    And, in fact, the purpose of everything

24    you've described was to lead to an offer in the hope

25    of it leading to a sale; would that be fair to say?

1      A    Yes.

2      Q    Okay.  And did you do anything to

3  facilitate the efforts of the potential bidders to

4  make proposals or offers to the company to buy their

5  assets or their -- or the company itself?

6      A    I don't -- I don't understand that

7  question.  What do you mean by facilitate?

8      Q    Let's -- let's try it this way.  Did you

9  have occasion to have people going to the virtual

10  data room and have questions about either

11  information that was there or information that they

12  were lacking?

13      A    Yes.

14      Q    Okay.  And how did you respond to those

15  inquiries?

16      A    We would respond to them in the

17  appropriate manner, whatever -- (witness shook head

18  negatively.)

19      Q    Can you give me an example of what an --

20      A    Well, if --

21      Q    -- appropriate manner might be?

22      A    -- if somebody requested a income

23  statement, we would provide the income statement.

24      Q    So it facilitated them doing their

25  diligence to leading to an offer?

Page 21

```
 1        A     Correct, (witness nodded head
 2   affirmatively.)
 3        Q     Okay.  Would it be fair to say that
 4   GlassRatner's role was to initiate contact with
 5   potential bidders, solicit and encourage potential
 6   bidders to submit inquiries, proposals or offers, in
 7   order to facilitate efforts at making proposals or
 8   offers to the Debtor in the sale process?
 9        A     Yes.  GlassRatner did.
10        Q     Okay.  And that's where GlassRatner's
11   focus was?
12        A     Yes.
13        Q     Okay.  And if GlassRatner hadn't done
14   that, what would happen to the sale process?
15        A     There would have been no sale process.
16        Q     Okay.  (Nodded head affirmatively).  I
17   think what we've just done is describe the job --
18        A     Yes.
19        Q     -- of a sale advisor.
20              MR. GURFEIN:  Off the record for a second.
21              (Off-the-record discussion)
22   BY MR. GURFEIN:
23        Q     Back on the record.  Are you aware that on
24   or about June 16th, 2016, the company filed a motion
25   relating to the sale of certain artifacts known as
```

Page 22

1    the French artifacts?

2             MR. BROOKS:  Objection to scope.

3        A    Yes, I'm aware of that.

4    BY MR. GURFEIN:

5        Q    Did you have anything to do with that

6    June 16th sale motion or that sale process?

7             MS. HOMER:  Same objection.

8        A    I don't understand "anything to do with."

9    I was involved with the company and on a lot of

10   calls and in a lot -- involved with a lot of

11   correspondence.

12   BY MR. GURFEIN:

13       Q    See, I was not aware that GlassRatner was

14   working as an advisor to the company in June 2016.

15       A    Oh, June -- hold on.  Let me backtrack, in

16   June of '16 -- oh, yeah, no, no, no.  Sorry, that's

17   when --

18       Q    That's when --

19       A    -- they --

20       Q    -- the case was filed?

21       A    Yeah, no, no, no.  I'm aware that that

22   happened, but I was not involved with the company

23   when that --

24       Q    So --

25       A    -- happened.

Page 23

1    Q    -- you were not involved --

2    A    That's correct.  Sorry.

3    Q    -- in the --

4    A    I thought it was --

5         THE COURT REPORTER:  You are both speaking

6    at once.

7    BY MR. GURFEIN:

8    Q    You were not involved in the --

9    A    Correct.  I was not involved.

10   Q    Let me finish the question, please.  You

11   were not involved in the June 2016 sale motion

12   relating to the French artifacts?

13   A    That is correct, I was not involved with

14   that.

15   Q    Was there a team at GlassRatner that

16   worked consistently on the sale process once

17   GlassRatner was retained as sale advisor?

18   A    Yes.

19   Q    And who were the members of -- of that

20   team?

21   A    Armen Avedissian -- Armen, A-R-M-E-N,

22   Avedissian, A-V-E-D-I-S-S-I-A-N, and William

23   McCaleb, M, little c, big C -- I think that's it --

24   A-L-E-B.

25   Q    And who was the leader of the

Page 24

1    representation for GlassRatner?

2        A    I was.

3        Q    And how did you parse among you the tasks

4    in -- in the sale process?

5        A    We split the target list between all the

6    parties.  Um, myself, William and Armen, and, you

7    know, began reaching out in order to facilitate the

8    process in an efficient manner.

9        Q    Okay.  You previously mentioned that there

10   were approximately 140 potential bidders that you

11   contacted -- that GlassRatner contacted.

12           Do you recall about how many of those

13   signed nondisclosure agreements?

14       A    I think about 30.

15       Q    Okay.  With three people working on the

16   team, how did you keep track of who was

17   communicating with whom by way of potential bidders

18   and responses from potential bidders?

19       A    Daily correspondence amongst the team.

20       Q    Did you identify -- strike that.

21           Of the three people on the team, did you

22   separate the list of potential bidders among them so

23   that one member of the team would consistently have

24   contact with that bidder, another member of the team

25   would consistently have contact with the second

Page 25

1   bidder, and so on?

2       A    We tried to.  We tried to.

3       Q    But you communicated among yourselves as

4   well?

5       A    Correct.  So if, in order to respond

6   efficiently, sometimes, one of us would step in for

7   the other person if they were the initial point of

8   contact or whatever, maybe.

9       Q    Okay.  And how did you keep track of

10  communications by each member of the team with any

11  potential bidder?

12      A    We had a tracking sheet.

13      Q    Okay.  I'm going to show you a document

14  that has no Bates stamp number on it, but that I'll

15  represent was provided to us as part of the

16  GlassRatner document production, and ask if you can

17  identify this.

18           (Off-the-record discussion)

19           (Exhibit 5 marked)

20  BY MR. GURFEIN:

21      Q    Showing you Exhibit 5, do you recognize

22  that document?

23      A    Um, it says here this is a target list.

24  Looks like it's a -- some correspondence regarding

25  notes on folks that have signed NDA's and a current

Page 26

1    status of them.

2        Q    Um, if you take a look, it seems to be

3    divided into three sections.  And the top one

4    means -- "still involved."

5            What does that mean to you?

6            MR. BROOKS:  Do you have another copy of

7    that, Peter?

8            MR. GURFEIN:  You know, this is a similar

9    document, but -- off the record.

10           (Off-the-record discussion)

11           (Recess 12:39 p.m. to 12:43 p.m.)

12   BY MR. GURFEIN:

13       Q    Back on the record.  Exhibit 5, previously

14   marked, was a single page.  I've added two more

15   pages to it, so Exhibit 5 will be a three-page

16   document.

17           MR. BROOKS:  Have you got one of these for

18   Scott and Jenn?

19           MR. GURFEIN:  I wouldn't leave you out.

20           (Off-the-record discussion)

21   BY MR. GURFEIN:

22       Q    All right.  Directing your attention to

23   Exhibit 5 -- first, I should ask, have you seen a

24   document like this before?

25       A    Yes.

1        Q     Okay.  And is this the tracking document

2   that you referred to earlier in your testimony?

3        A     This is a tracking document tool.  Um that

4   could have been used to summarize the much larger

5   tracking document that we would provide on a weekly

6   basis to Brendan Murphy.

7        Q     Ah.

8        A     So this is more a summary of the tracking

9   document.

10       Q     So if I were to ask Brendan, he should be

11  able to identify for me --

12       A     I don't know if this was actually sent

13  to -- I don't know what purpose this was for, if

14  this was sent to your -- to you, if this was sent to

15  the company, if this was something internal that I

16  asked my team to produce for me.

17       Q     Understood.  I -- I first saw this when it

18  was produced as part of the document production last

19  week -- this week, rather.

20             All right.  As I started to say, the --

21  the document appears to be divided generally into

22  three parts.  The first says, "still involved."

23             And what is your understanding of that

24  title on that first part?

25       A     We're in continued conversations with --

Page 28

1    this party has -- still involved would indicate a

2    party who has -- we've spoken with, however, has not

3    indicated that they're going to pass on the

4    transaction.

5         Q    And the middle one is "unresponsive

6    parties."  And what's your understanding that --

7         A    Meaning that at -- at that time, those

8    parties were not responding.  And, again, I want to

9    be clear, this is at a moment in time.

10        Q    Understood.

11        A    And I'm not sure what time this was.

12        Q    Yeah.  That's my -- that's my next --

13   second to the next question.  But the next question

14   is, the bottom section is "passed," P-A-S-S-E-D.

15   What's your understanding of that?

16        A    So that would mean they indicated to us

17   that they were not interested in some capacity.

18        Q    These three pages were produced to us, um,

19   and they -- they're not dated.  And I was wondering

20   if there's any way you could look at them and give

21   me an indication as to the period of time --

22        A    (Witness shook head negatively.)

23        Q    -- that this might represent.

24        A    I don't -- I can't -- I'm unable to do

25   that from this document.

```
 1          MR. GURFEIN:  Okay.  I'm going to leave a
 2    space in the transcript and ask the witness to see
 3    if he can determine when these pages were created,
 4    and, if so, I'd ask him to fill in that -- that
 5    blank.
 6          MS. HOMER:  Okay.  You don't need to go to
 7    any extraordinary lengths, but --
 8          THE WITNESS:  Okay.
 9          MR. GURFEIN:  And now, off the record.
10          (Off-the-record discussion)
11    BY MR. GURFEIN:
12       Q    Okay.  Back on the record.  From time to
13    time, were -- strike that.  This has to do with a
14    form of reporting that you're looking at on
15    Exhibit 5.  Not necessarily Exhibit 5 itself.
16          But do you know the source of the
17    information that would have gone onto these reports
18    with respect to, um, company target and notes?
19       A    The source?  Meaning who was the exact
20    author of this or --
21       Q    Who -- who would have contributed
22    information to this?
23       A    Yes, this would have been the GlassRatner
24    team.
25       Q    And was that done on a fairly regular
```

Page 30

1   basis?

2        A    This document?

3        Q    Let's start with this document.

4        A    I don't -- I don't think that this

5   document was produced on a regular basis.

6        Q    Okay.  (Nodded head affirmatively.)

7        A    We produced other documents to Brendan

8   Murphy at -- as financial advisor to the equity

9   committee on a weekly basis, a tracking sheet.

10       Q    I'll check with Brendan.  I recall you --

11  that GlassRatner did that regularly.

12            What -- what period of time, by the way,

13  do you recall that information being provided on a

14  regular basis?

15       A    I -- start -- the starting point was when

16  we started the -- when we started the process.

17       Q    Spring --

18       A    And it --

19       Q    -- 2017?

20       A    -- and it went on and on and on.  I mean,

21  I don't have an exact end date.

22       Q    Well, I was going to ask you the criteria

23  on which names would be added to this list.  Is that

24  a question you can answer even?

25       A    The -- are you talking -- this list that

Page 31

1    I'm looking at right here?

2         Q    Yes, the target list.  The company target.

3         A    Um, it says signed NDA's, so, likely, it

4    would be a signed NDA.  But, again, I don't believe

5    this was updated on a regular basis.  I don't know

6    the timing of this.

7              So there was a more substantial tracking

8    sheet.  Again, that was provided Brendan Murphy for

9    our weekly calls --

10        Q    Okay.

11        A    -- which would show who was contacted and

12   the status of that contact.

13        Q    As part of your role, either as financial

14   advisor or sale advisor to the Debtors, was it also

15   your responsibility to assess the financial

16   wherewithal of potential bidders who were making

17   offers for the company or potentially could be

18   making offers for the company?

19        A    Yes.

20        Q    And if I could direct your attention to

21   Exhibit 5.

22             Are there any of the companies or targets

23   listed on Exhibit 5 that you recognize as a company

24   that GlassRatner's assessment questioned their

25   financial wherewithal?

Page 32

1      A    I --

2           MS. HOMER:  You don't have to guess if you

3    don't know.

4      A    No, no, no, I mean, it's -- this is a list

5    of 26, so I can't --

6    BY MR. GURFEIN:

7      Q    And there --

8      A    -- say that all 26 were assessed one way

9    or the other.  So by me not including one, it

10   doesn't mean that GlassRatner had an opinion one way

11   or the other.  I don't want to --

12     Q    I realize my question was assessing the

13   financial wherewithal.

14          Let me ask you this, as part of your role

15   as sale advisor, did you have occasion to request

16   financial information from potential bidders with

17   respect to the transaction?

18          (Ms. Feldsher exited the deposition suite)

19     A    Yes.

20   BY MR. GURFEIN:

21     Q    There's a company that was involved midway

22   through the sale process and -- name, I think, was

23   Loongs, L-O-O-N-G-S.

24          Does that -- do you recall that company?

25     A    Yes.

Page 33

1      Q    And did you, in fact, have occasion to

2  seek financial information --

3      A    Yes.

4      Q    -- from that company?

5      A    (Witness nodded head affirmatively.)

6      Q    And was that information provided?

7      A    No.

8      Q    And with respect to Cedar Bay, was that

9  another company that was in discussion with respect

10  to making an offer?

11      A    They did make a -- provided -- I don't if

12  it was under Cedar Bay or not, or I -- I think Cedar

13  Bay was John Joslyn -- and I'm not sure which one, I

14  think they're one and the same, but they may be

15  separate, I don't know, but in my mind, they were

16  one and the same -- made an offer and provided an

17  expression of interest.

18      Q    And did you have occasion to seek

19  financial information with respect to the offer from

20  Cedar Bay?

21      A    Um, no.  We didn't get to that --

22  actually, I don't recall exactly those -- those

23  discussions.  Um, that was, I believe, you know, in

24  maybe July of '17 or so; right?  Would that have

25  been right --

Page 34

1          Q     (Nodded head affirmatively.)

2          A     -- with discussions with them.  Because

3     you --

4          Q     I'll tell you --

5          A     -- you were --

6          Q     I will tell you --

7          A     -- provided expressions of interest;

8     right?

9          Q     Yeah.  I will tell you that's my

10    recollection as well --

11         A     Yeah.

12         Q     -- sometime around July of --

13         A     I think that their offer --

14               THE COURT REPORTER:  You're both speaking

15    at once.

16         A     I think their offer was pretty low.  And,

17    if I recall correctly, it had a financing

18    contingency component on it.  So on its face, a low

19    offer with the financing contingency, I think it was

20    determined that it wasn't a -- an appropriate offer.

21    BY MR. GURFEIN:

22         Q     Bearing in mind this isn't a memory test.

23    But looking at the -- the companies that are listed

24    as potential bidders or targets on Exhibit 5, are

25    there any that jump out at you as you recalling

Page 35

1   there being a question as to their financial

2   capacity to conclude any transaction with the

3   company?

4          A     Yes.

5          Q     And which one?

6          A     Armada Group.

7          Q     Uh-huh (affirmative).

8          A     I still have question regarding the

9   National Maritime Museum until proven otherwise.

10  Odyssey Marine.  I mean, I think those jump out at

11  me. There may be others on the list.

12         Q     Okay.

13         A     Cedar Bay -- I mean, you know, they needed

14  financing for, I think, the $5 million offer,

15  which --

16         Q     Did you -- strike that.  Did GlassRatner

17  receive any requests from potential bidders, whether

18  on this list or not, to combine as bidders?

19         A     Yes.

20         Q     And how did you -- GlassRatner address

21  requests to join as bidders?

22         A     Can you hold on one second, can I --

23               (Off-the-record discussion with counsel)

24               MR. GURFEIN:  The record will reflect

25  conferring with counsel.  Do you want to read back

Page 36

1    the question?

2            THE WITNESS:  Yes, please.

3            (Off-the-record discussion)

4    (Thereupon, the court reporter read as follows:

5            "Question:  Did GlassRatner receive any

6    requests from potential bidders, whether on this

7    list or not, to combine as bidders?

8            "Answer:  Yes.

9            "Question:  And how did you --

10   GlassRatner address requests to join as bidders?")

11           (Off-the-record discussion)

12   BY MR. GURFEIN:

13       Q    Let me ask the question again.  When you

14   received requests from potential bidders to join as

15   a joint bidder, how did GlassRatner respond?

16       A    Well, I just want to be clear that this is

17   out of the time frame that's been established for

18   the deposition purposes.  So I just want to be clear

19   on that, that this is out of the scope of what we've

20   identified as the areas of concern.

21           I'm okay -- I can answer it, but I just

22   want to be clear on that.

23       Q    Okay.  Please proceed.

24       A    We would consider whether it would

25   potentially increase a purchase price.  That's what

Page 37

1    we -- that's what we would consider.

2         Q    Um --

3         A    Or create a viable transaction.

4              (Off-the-record discussion with counsel)

5    BY MR. GURFEIN:

6         Q    Do you recall a request from Base

7    Entertainment and Wizard --

8         A    Again --

9         Q    -- to join as a bid?

10        A    Again, this is out of the scope of our

11   parameters for the deposition.

12        Q    Okay.

13        A    Yes.

14        Q    And, um, what did you do when you received

15   that request?

16             And I -- I'll let Counsel know we'll bring

17   this current with another question.

18             MS. HOMER:   Thank you.

19        A    I -- I think we discussed it with parties

20   involved.

21   BY MR. GURFEIN:

22        Q    In fact, Marshall, I recall you reaching

23   out to both committees for their assessment as to

24   whether to combine Base and Wizard.  Does that

25   comport with your recollection as well?

1    A    Yes.  So, I mean, we spoke with the

2    parties involved.  We spoke with the parties.

3    Q    And do you recall what the result was of

4    that request?

5    A    I do not.

6        (Ms. Feldsher entered the deposition

7    suite)

8    A    I know that it did not result in a bid.  I

9    can confirm that.

10   BY MR. GURFEIN:

11   Q    Not limiting yourself to Exhibit 5, is

12   GlassRatner currently in communication with any

13   potential bidders with respect to the sale process?

14   A    Outside of the current stalking horse

15   bidder group?

16   Q    Yes.

17   A    In what time frame?

18   Q    Today.

19   A    Today?  I don't believe we've spoken with

20   another bidder.

21   Q    Okay.  We're still in August.  So during

22   August, this month, have you spoken with any other

23   bidders?

24   A    I would have to get with my guys.

25   Q    Oh, I'll ask if we could leave a space in

1    the transcript for you to indicate --

2         A    That's fine.

3         Q    -- again, without --

4         A    Well, we spoke with -- we spoke with these

5    folks, the stalking horse bidder, and we spoke with

6    the National Maritime Museum.

7         Q    Okay.

8         A    I believe in August, maybe it was late

9    July.

10        Q    All right.  And -- and if your

11   recollection isn't up to snuff from June through

12   today, do you recall whether you've been in touch

13   with potential bidders other than the maritime

14   museum or the stalking horse group?

15        A    Yes, we have.

16        Q    Okay.  And do you recall about how many?

17        A    Um, probably about five.

18        Q    And, generally, briefly, can you tell

19   me --

20        A    Maybe ten.

21        Q    -- can you tell me what those -- when I

22   say "contact," what do you mean by you've been in

23   contact with?  What does that mean?

24        A    Well, upon filing the sale procedure, we

25   had a couple of parties who were interested in

1    potentially participating in an auction.  And so we

2    began conversations with them.  Additionally, we

3    reached out to a number of parties to explain to

4    them what the process was and how and -- and explain

5    to them the process of the auction and -- and where

6    it was going --

7         Q    And --

8         A    -- just to make them aware of the filing.

9         Q    And you've already indicated that, to your

10   recollection, throughout at least October -- I'm

11   sorry, August, this month, you are no longer in

12   touch with any of those parties?

13        A    I'm not sure.  I have to speak with my

14   guys.

15        Q    Do you -- do you anticipate any of the

16   parties you've been referring to have given an

17   indication of intent to participate in that auction?

18        A    That is unclear right now.  They were

19   provided access to the data room.

20        Q    Aside --

21        A    I believe, actually, if -- I believe that

22   the, um -- the -- the filings by your client, um,

23   has -- has absolutely chilled parties from pursuing

24   right now, given that everything is -- has -- given

25   that the direction of this case is not defined right

Page 41

1    now.

2              MR. GURFEIN:  Okay.  I'll move to strike

3    that as unresponsive.

4    BY MR. GURFEIN:

5         Q    Does GlassRatner currently have in place a

6    plan to proceed post August 30, assuming the bidding

7    procedures are approved by the Court?

8         A    Yes.

9         Q    And what is that plan?  What is your

10   intention?

11        A    We plan to re-solicit.

12        Q    And how do you plan to re-solicit?

13        A    We'll reach back out to the parties.

14        Q    I'll direct your attention to the period

15   of time of December 2017, um, Apollo and Alta signed

16   nondisclosure agreements that month.

17             Did you interface with anyone from Apollo

18   and Alta during the due diligence period in

19   December, January --

20        A    Yes.

21        Q    -- 2017, 2018?

22        A    Yes.

23        Q    And who were your primary contacts --

24        A    Gilbert Li --

25        Q    -- in Alta and Apollo?

Page 42

1     A    Gilbert Li at Alta, and Bill Schwartz at

2 Apollo.

3     Q    And who were the primary contacts at the

4 company with whom Gilbert Li and Bill Schwartz

5 interfaced?

6     A    During what time frame?

7     Q    All of these questions pertain to the

8 period of due diligence from mid-December 2017 to

9 mid-January 2018.

10     A    I have to check.  I don't know the date

11 that diligence started.  But, I don't know the date

12 that we had our management -- we had a management

13 call and a management meeting.  And so I'd have to

14 check the dates on when the management call was and

15 when the management on-site visit was.

16     Q    Okay.

17     A    And I believe that's after that time

18 frame.

19           MR. GURFEIN:  I'll ask the reporter to

20 mark as Exhibit 6 a copy of an e-mail from Gilbert

21 Li to William McCaleb and Marshall Glade, dated

22 December 29, 2017.

23           (Exhibit 6 marked)

24           MR. GURFEIN:  And another Exhibit, 7, an

25 e-mail from Marshall Glade to Gilbert Li, dated

Page 43

1   January 2, 2018.

2          (Off-the-record discussion)

3          (Exhibit 7 marked)

4   BY MR. GURFEIN:

5      Q    And directing your attention to Exhibit 6

6   and 7, does that help refresh your recollection as

7   to when any management meetings might have been held

8   with Apollo and Alta and the company?

9      A    Yes, I said that we -- we had -- I mean, I

10  don't know any exact date.  Is there an exact date

11  on here?  I don't see an exact date.

12     Q    Exhibit 6 is dated December 29, and it

13  appears to discuss a potential meeting between us,

14  which I assume is Alta Fundamental and management.

15         And Exhibit 7 talks about -- it's

16  December -- if you go two thirds of the way down,

17  the first page of Exhibit 7, it's a December 29

18  e-mail, that's the same e-mail.  Looks like it --

19  this is a chain e-mail.

20     A    Uh-huh (affirmative).

21     Q    Trying to put a management meeting

22  together.

23     A    Right.  I know --

24     Q    So I'm just asking whether looking at

25  these two refreshes your recollection as to when a

1    management meeting was put together between

2    management and Apollo and Alta.

3         A    Like I said, a meeting occurred.  I don't

4    know the exact date.  And from what the documents

5    you've provided, it's giving me a round-about date.

6    I don't know if it was the 4th, the 5th, the 8th the

7    9th.

8         Q    Okay.  Well --

9         A    I don't know if it was --

10        Q    My question --

11        A    -- (inaudible) you know?

12        Q    -- my question is whether it refreshed

13   your recollection.  And it doesn't?

14        A    Right.  I know it was around that time

15   frame.

16        Q    All right.  Did you -- without pinpointing

17   the date, all right, were you in attendance at the

18   meeting between Alta, Apollo and management?

19        A    Which meeting?

20        Q    You tell me.  Which meeting -- did you

21   attend a meeting at which Apollo, Alta and

22   management --

23        A    I attended all the meetings, but I don't

24   know if you're referring to a specific meeting --

25   (witness shrugs), I don't know.

Page 45

1    Q    I don't know when the meetings were held.
2   We haven't been provided with that information.
3   I've shown you a couple of e-mails, and that hasn't
4   refreshed your recollection as to when the date for
5   a meeting was.
6         So I'll ask if we could leave a space in
7   the record for you to go back to your --
8    A    Yeah, no problem.
9    Q    -- calendar and find out when the meeting
10  was held.
11   A    Not a problem.  There was a meeting in
12  New York and a meeting in Atlanta.
13   Q    Do you remember which occurred first?
14   A    New York.
15   Q    And who was in attendance at the New York
16  meeting?
17   A    That was Daoping, Jessica, myself --
18  Jessica Sanders, and Bill Schwartz, and Gilbert Li.
19   Q    How long did that meeting take?
20   A    Few hours.
21   Q    And where was that meeting held?
22   A    I said "a few hours."
23   Q    Oh, I'm sorry.  I wrote down "two hours."
24  You said "a few hours."  Thank you.
25         And where was that meeting held?

Page 46

1      A     At Apollo's office.

2      Q     Okay.  And what was the subject matter of

3   that meeting?

4      A     Initial discussions, um regarding

5   initial -- I would say initial diligence on their

6   part.

7      Q     Can you tell me what you mean by initial

8   diligence?

9      A     Speaking with management.

10     Q     Was the meeting for the purpose of

11   conducting their initial diligence, or was it a

12   meeting to set an agenda for initial diligence?

13     A     It was a meeting for both parties to

14   understand whether they could work together to a

15   transaction.

16     Q     Okay.  Describe to me the substance of

17   what was discussed.

18     A     I don't recall the exact substance, but

19   I -- it was, generally speaking, Daoping's ideas of

20   the company and -- and how he could see it, and

21   providing, you know, further information to them

22   regarding the bankruptcy and the current status of

23   the bankruptcy.  Other items may have been

24   discussed, but that's what my memory recalls.

25     Q     Do you know if there was a written agenda

Page 47

1   for that meeting?

2        A    I don't believe so.

3        Q    At that meeting, was any offer or proposal

4   presented to the company by Apollo or Alta?

5        A    No.

6        Q    Were there any agreed action items?  And

7   do you know --

8        A    I don't recall.

9        Q    -- what I mean when I say action items?

10       A    Yes, I don't recall.

11       Q    You don't recall if there are any action

12  items emerging from that initial meeting that you

13  just described?

14       A    Right.

15       Q    Do you know whether Alta and -- strike

16  that.  How many such meetings were there between

17  management, Alta and Apollo?

18       A    I believe we had the meeting in New York.

19  And I believe there may have been a call somewhere

20  in there.  And then there was a meeting -- and in

21  which time frame are you referring to?

22       Q    Let's put it this way.  The last e-mail I

23  showed you had a date of January 2.  That's

24  Exhibit 7.  Am I correct that no meeting had

25  occurred by January 2?

1      A    I don't believe so.  But I have to look to

2    see.  I know we had a call at some point.  And I

3    don't recall when that -- the exact timing of that

4    call.  But I know that there was a call.  And I

5    can't recall if it was before meeting them in

6    New York or after.

7      Q    Is the meeting that is being proposed in

8    the -- in Exhibit 7 the meeting that you're

9    referring --

10     A    Yes.

11     Q    -- to as having occurred in New York?

12     A    Yes, that's correct.

13     Q    And, I'm sorry, you said that you don't

14   recall -- strike that.  There were action items

15   coming out of that meeting, but you don't recall

16   what they were?

17     A    Yeah, I'm sure there was providing -- I

18   would assume, you know, typical financial statements

19   or whatever it may be, those types of -- kind of --

20   you know, the fact that they made it clear that they

21   were going to do further diligence.

22     Q    And did you facilitate the diligence that

23   Apollo and Alta were going to conduct?

24     A    Yes.

25     Q    And what did that include, generally

Page 49

1   speaking?

2       A    Generally speaking, it would be the data

3   room, so financial statements, legal documents,

4   organizational charts.

5       Q    Would it be fair to say primarily

6   documents and data?

7       A    Yeah.  (Witness nodded head

8   affirmatively.)

9       Q    Okay.  Did -- did Apollo and Alta conduct

10  any on-site visits to any of the properties managed

11  by Premier?

12      A    Yes, yes.

13      Q    First, with respect to the Atlanta

14  warehouse, did there come a time when Apollo and

15  Alta went to the Atlanta warehouse --

16      A    Yes.

17      Q    -- with the artifacts that --

18      A    Yes.

19      Q    And do you recall who they met with there?

20  I'm sorry, strike that.

21           Were you with them at that visit?

22      A    GlassRatner was.

23      Q    Do you --

24      A    Whether I was there or not, I'm not -- I

25  can't --

Page 50

1      Q    You don't recall?

2      A    Yeah.  I may have been.  I don't recall,

3  (Witness shrugs).

4      Q    Do you have any sense as to approximate

5  time frame as to when this might have occurred?

6      A    I'd have to look in my calendar to

7  understand, you know, when those types of events

8  occurred.

9      Q    Okay.

10     A    But I would assume it was -- I don't know,

11 actually.  I can't remember -- I -- I'd have to look

12 at my calendar.

13     Q    Okay.  I'll ask that we leave a space in

14 the record for the witness to provide three pieces

15 of information.  The dates -- strike that.

16          And I'm only referring to management

17 meetings, that's between Apollo and Alta and Jerry

18 Henshall and/or Jessica Sanders and/or Daoping.

19     A    Uh-huh (affirmative).

20     Q    Management meetings, either by conference

21 call or in person, the dates and locations --

22     A    That's fine.

23     Q    -- during the period January 1 to

24 February 28th.

25     A    Okay.

Page 51

1      Q    Did Apollo and Alta conduct any on-site

2    visits to any of the exhibitions run by Premier?

3      A    Yes.

4      Q    And did you or GlassRatner help facilitate

5    those visits?

6      A    Yes.

7      Q    Do you know who at GlassRatner facilitated

8    those visits?

9      A    It would be a combination of myself, uh --

10   the team, (witness shrugs).

11     Q    Okay.  McCaleb and Avedissian and --

12     A    Me.

13     Q    -- you?

14     A    Yeah.

15     Q    Okay.  Did you attend any of those on-site

16   visits?

17     A    Yes.

18     Q    Okay.  Now, there's -- there's an

19   exhibition at the Luxor Hotel in Las Vegas.  There's

20   the exhibition in Orlando.  There's the Saturday

21   Night Live exhibition in Chicago.

22          Were those among the venues that Apollo

23   and Alta visited during that time frame?

24     A    From January to the end of February?

25     Q    Yes.

Page 52

```
 1        A    I'm not sure which -- at what time frame
 2   they visited which venues.
 3        Q    Okay.  But those are the venues they
 4   visited, without reference to a time frame?
 5        A    Correct.
 6        Q    Do you know whether they visited other
 7   venues, besides those three?
 8        A    Did you say Atlanta?
 9        Q    No.
10        A    So --
11        Q    The Atlanta --
12        A    You have --
13        Q    -- (inaudible) exhibit.
14        A    -- Atlanta, you have Orlando, Saturday
15   Night Live, you have Las Vegas.  Am I --
16        Q    Okay.
17        A    Unless I'm missing one, I think that
18   that's --
19        Q    Did -- did anyone familiar with the
20   exhibitions accompany Apollo and/or Alta on any of
21   these site visits?
22        A    Yes.
23        Q    And who was that?
24        A    The local manager.
25        Q    Aside from the local manager, were -- was
```

Page 53

1    there anyone else familiar with the exhibitions who

2    visited with them?

3         A    And, again, we're just talking about any

4    time frame here that they visited?

5         Q    Any time --

6         A    In --

7         Q    -- any time frame.

8         A    -- in Atlanta, I believe it was Jessica

9    and myself and William.  In Orlando, there was no

10   management, it was just the local manager.  And in

11   Las Vegas, it was the local guy.  And in Chicago, it

12   was the local folks.

13        Q    Do you know if Giovanni Wong joined --

14        A    Yes.

15        Q    -- them on any of those visits?

16        A    Uh-huh (affirmative).

17        Q    And do you know which visits?

18        A    I have to -- I don't -- I don't know.

19        Q    Do you know in what capacity Giovanni Wong

20   visited those exhibits with Alta and Apollo?

21        A    I do not, no.

22        Q    Do you know if he -- Mr. Wong is familiar

23   with those exhibitions?

24        A    Yes.

25        Q    And how is he familiar with those

Page 54

1  exhibitions?

2      A    Uh, he is a representative, I believe, of

3  some form or fashion, I don't -- I don't know what

4  the name is.  He's a representative of PacBridge.

5  They did a transaction, so he's aware of most of

6  these happenings.

7          I think he's -- I don't know if he -- I

8  think he's a representative of like the secured

9  lenders, but I'm not exactly sure, and in what

10  capacity each one of those kind of rolls under his

11  advice.  I don't know if it's all equal, right, or

12  is he really advising two of them and not one of

13  them, or all three of them, or one of them.

14          I don't -- I'm not -- I haven't really

15  keyed in on that.

16      Q    And I think you said that he is familiar

17  with these exhibitions.  Do you know how familiar he

18  is with those exhibitions?

19      A    I don't -- I don't understand the

20  question.

21      Q    Okay.  Specifically, with respect to the

22  Chicago Saturday Night Live exhibition, did Mr. Wong

23  have anything to do with establishing that

24  exhibition, or --

25          MR. BROOKS:  I'm going to object to the

Page 55

1    scope.  I'm not sure how any of this is relevant,

2    Peter.

3            MR. GURFEIN:  Okay.

4        A    I don't know.

5    BY MR. GURFEIN:

6        Q    Okay.  Um, there came a time when

7    representatives of the stalking horse group met with

8    the landlord at the Luxor Hotel; is that right?

9        A    That's correct.

10       Q    Was anyone from GlassRatner in attendance

11   at that meeting?

12       A    Yes.

13       Q    And who was that?

14       A    I was.

15       Q    Okay.  And who set up that meeting?

16       A    GlassRatner.

17       Q    (Nodded head affirmatively.)  Okay.

18       A    In -- I mean, as much as you can set up a

19   meeting between three people, so everybody -- or

20   four different parties -- because management, Gio,

21   the Luxor and myself.  So, you know, four people

22   were putting input in.  I'm --

23       Q    Who were the four --

24       A    -- not sure what you mean.

25       Q    No, that's what I mean.  Who were the four

Page 56

1    people who were there?

2        A    No, no, no, the four groups.  I'm --

3        Q    Four --

4        A    -- saying from management, you had Gio,

5    who was a representative of stalking horse group,

6    you had the Luxor, and you had me.

7        Q    And who long did that meeting last?

8        A    Hour.

9        Q    An hour or so?

10       A    Hour or so.

11       Q    Was any agreement reached at that meeting?

12       A    No.

13       Q    Do you know if, subsequently, any

14   agreement was reached between the stalking horse

15   group and the Luxor?

16       A    I don't believe so.

17       Q    Okay.  Were there any other potential

18   bidders --

19       A    However, I would like to clarify.  By

20   "agreement," are you referring to -- what are you

21   referring to as agreement?

22       Q    Thank you.  Did the landlord reach

23   agreement with the stalking horse group with respect

24   to anything relating to the leasing of that space?

25   Either a lease renewal, a lease extension, a rental?

Page 57

1      A    They -- they came to an agreement that

2   they -- they both felt that they could work together

3   to.

4      Q    (Nodded head affirmatively.)  Did any

5   other potential bidder meet with the landlord at the

6   Luxor Hotel, with management or with GlassRatner?

7      A    Not that I'm aware of.

8      Q    Okay.  Do you know whether the stalking

9   horse group met with any other landlords of any of

10  the other exhibition spaces?

11     A    Not that I'm aware of.

12     Q    Now, there came a time when the stalking

13  horse group met with employees of Premier in

14  Atlanta; is that right?

15     A    Yes.

16     Q    Okay.  Do you remember when that was?

17     A    (Witness shook head negatively,) I don't

18  remember the exact date, but, yes, it happened.

19     Q    Approximate time frame?

20     A    Again, I'd have to look at my calendar.

21     Q    Well, there was a proposal from -- let --

22  let's do it another way.

23     A    Do you know the date?

24     Q    That's why I'm asking.  I don't know.

25     A    Okay.

Page 58

1          (Off-the-record discussion)

2          MR. GURFEIN:  I'll ask the reporter to

3   mark as Exhibit 8 a -- Marshall.

4          Ask the reporter to mark as Exhibit 8 an

5   e-mail to dated February 7, 2018, from Marshall

6   Glade to Jeffrey Cavender with forwarding e-mails

7   below.

8          (Exhibit 8 marked)

9   BY MR. GURFEIN:

10      Q    Now, this e-mail says, attached is an

11  agenda for our meeting tomorrow and Friday morning.

12  Well, tomorrow would be February 8th, 2018, and

13  Friday would be February 9th.

14          Does that help focus on when an agenda --

15  when the meeting was held between management and --

16      A    Yeah.  That's what that says.

17      Q    Okay.  And were you present -- strike

18  that.  Was this a meeting in New York or Atlanta in

19  February 2018?

20      A    I think this was Atlanta.

21      Q    Okay.  The bottom e-mail references an

22  agenda, but the agenda was not produced.  I'll ask

23  if you would produce the agenda for that meeting

24  referenced in Exhibit 8.

25      A    It is definitely Atlanta.  It's not

Page 59

1    New York.

2             MR. GURFEIN:  I'll ask the reporter to

3    mark as Exhibit 9 an e-mail dated February 23, from

4    Gilbert Li to Marshall Glade.

5             (Exhibit 9 marked)

6    BY MR. GURFEIN:

7        Q    Directing your attention to Exhibit 9.

8    Take -- take a minute to read it.  It's got a couple

9    of references to a couple of different meetings.

10            And what I'm going to ask if reading this

11   helps you recall where the meeting was held, that's

12   referenced in here and who attended.

13       A    This was -- where did you land for the

14   meeting, Chicago, New York City.  In Chicago, will

15   start here.  Probably stay through weekend.

16            So this is -- I'm not sure who attended

17   this meeting.  This was amongst the stalking horse

18   group, whether it was Gilbert, Bill and Gio;

19   Gilbert, another representative from Apollo, and

20   Gio; just Gilbert and Gio.  I don't even know if --

21   I think that they did this.  Pretty sure they did.

22   Because I got them to the SNL, but I don't even know

23   if that meeting -- I can't -- I think that that

24   meeting happened.  I think that they ended up were

25   able to connect.

Page 60

1      Q    Okay.

2      A    Is this after the mediation or before the

3   mediation?

4      Q    The mediation was February 26 and 27, or

5   was it 27 and 28?

6           MR. BROOKS:   The end of the month.  I

7   can't remember.

8           THE WITNESS:  So it was before.

9           (Off-the-record discussion)

10          MR. GURFEIN:  I'll ask the reporter to

11  mark as Exhibit 10 an e-mail dated January 10, 2018,

12  from Marshall Glade to Bill Schwartz.

13          (Exhibit 10 marked)

14  BY MR. GURFEIN:

15     Q    And let me know when you've finished

16  reading the e-mail.

17     A    I've finished reading.

18     Q    Okay.  It starts with you writing to

19  Bill -- I'm assuming that's Bill Schwartz -- and

20  Gilbert, Gilbert Li, that, I trust the call last

21  night was informative.

22          Do you know what that's a reference to?

23     A    There must have been a call the night

24  before.

25     Q    Okay.

Page 61

1        A     I'm not sure.

2        Q     Now, this is an e-mail from you to Bill

3    and Gilbert.  At the time you wrote this, were you

4    aware of what that meeting was to which you made

5    reference?

6        A     Yeah, yes.  Yes, at the time, I would have

7    known.

8        Q     And the next sentence says, attached is a

9    breakdown of the outstanding shares.  Do you see

10   that?

11       A     Yeah.

12       Q     Um, why did you send them a breakdown of

13   the outstanding shares?

14       A     I assumed the question was, what does the

15   ownership look like.

16       Q     And who -- who asked that question?

17       A     I -- either Bill or Gilbert, assuming both

18   Bill and Gilbert were on the call.

19       Q     And were you --

20       A     Or and assuming no one else was on the

21   call.

22             MS. HOMER:  You don't need to assume.  If

23   you don't know, you can just say you don't know.

24             THE WITNESS:  I don't know.

25   BY MR. GURFEIN:

Page 62

1    Q    Were you on the call to which you make

2    reference?

3    A    I don't know.  I would have to check my

4    calendar.

5    Q    I'll ask you to check your calendar and

6    let us know.  Leave a space in the record for that.

7         You finished that paragraph -- I'm sorry,

8    the next sentence says, the shares which Daoping

9    currently controls but does not own are labeled as

10   DK Investors.

11        Do you know who the DK Investors are?

12   A    I would have to look at the spreadsheet.

13   Q    Okay.  Um, when you say "the spreadsheet,"

14   are you referring to the breakdown of the

15   outstanding shares that's referenced in the e-mail?

16   A    Yes.

17   Q    Okay.  I'll ask you to produce a copy of

18   the attachment to this e-mail.

19        MS. HOMER:  What Exhibit is this?  10?

20        MR. BROOKS:  Yes.

21        MR. GURFEIN:  10.

22   BY MR. GURFEIN:

23   Q    What was the conversation that led to a

24   request for a breakdown of the outstanding shares?

25   A    I don't recall.

1      Q    (Nodded head affirmatively.)

2      A    Common to ask who owns the company when

3  you're looking to buy a company.

4           Can I confer with counsel real quick?

5           MR. GURFEIN:  Sure.  The record reflects.

6           (Off-the-record discussion with counsel)

7           (Recess  1:36 p.m. to 1:44 p.m.)

8           (Exhibit 11 marked)

9  BY MR. GURFEIN:

10     Q    Directing your attention to Exhibit 11,

11  are you familiar with that document?

12     A    Hmm.

13     Q    And please take time to read through it,

14  if you need to.

15     A    I think if I had some e-mails, then I

16  could better understand, put this in perspective.  I

17  think this is -- who is -- members of the --

18          MR. GURFEIN:  We're off the record.

19          (Off-the-record discussion)

20     A    If I can recall correctly, this was a

21  document provided by the ad hoc group of equity

22  holders, maybe with others, it looks like it says

23  here, regarding a potential transaction, term sheet.

24

25

Page 64

1    BY MR. GURFEIN:

2        Q    Now, I did not find in the production a

3    transmittal e-mail on this.  And I was going to ask

4    you if you know where this came from.

5        A    Uh-uh (negative), had to have come from --

6        Q    I'm sorry?

7        A    I mean, I -- I don't know who sent me

8    this -- I don't know how this got to us, whether it

9    was through counsel, from counsel to counsel, it

10   could have been, or whether it was sent to me

11   directly.  I'm not sure.

12       Q    But there did come a time --

13       A    I have seen this.

14       Q    -- when you became --

15       A    I have seen this.

16       Q    Okay.  So you are familiar with the --

17       A    Yeah --

18       Q    -- Exhibit 11?

19       A    -- vaguely.  And I don't think that it

20   lasted very long, because there is no substance in

21   here.  Everything that has substance in it, from a

22   financial perspective, really is in brackets.  I

23   mean, they don't even talk about how much cash

24   they're going to put into it.  There's no --

25   everything is blank from a dollars perspective.

Page 65

1      Q    Was this the first proposal or term

2   sheet -- strike that.

3           Was this the first term sheet that you

4   received from the ad hoc group of equity holders?

5      A    I believe so.

6      Q    And who do you include in the ad hoc group

7   of equity holders?

8      A    I mean, is it a defined term in here?  I

9   mean, I think they're a defined term.  In the

10  bankruptcy, it's Alta and Apollo, I believe is the

11  ad hoc equity group.  You'd have to correct me

12  because you have read those documents.

13     Q    I'll take your testimony as, it's your

14  understanding --

15     A    Sure.

16     Q    -- that the ad hoc group is Alta and

17  Apollo?

18     A    Yes.

19     Q    Did you have discussions with anyone with

20  respect to the proposal set forth in Exhibit 11?

21     A    Yes.  I would have.

22     Q    And with whom -- where would those

23  discussions --

24     A    I -- I don't recall, who it was, but I'm

25  sure this was discussed.

Page 66

1    Q    Did you have any discussions with Alta and

2    Apollo about this term sheet?

3    A    Yes.

4    Q    And describe to me those discussions.

5    A    Uh, I believe -- the discussions were

6    centered around this is not -- this doesn't provide

7    enough information for me.

8    Q    And when you say you had discussions with

9    Alta and Apollo, with whom would those discussions

10   have been?

11   A    I don't recall whether it was just

12   Gilbert, Gilbert and Bill, or Bill.

13   Q    But it would have been either --

14   A    Somebody.

15   Q    -- Bill Schwartz, and/or Gilbert Li?

16   A    Correct.

17   Q    Okay.

18   A    Assuming -- and I don't know if this came

19   from counsel to counsel either.  So I could have

20   just had discussions with my counsel, and they had

21   discussions.  I don't -- I don't recall the exact

22   chain of events, because this isn't a substantive

23   document.

24   Q    You -- you testified earlier about

25   cooperation under the planned support agreement with

1    the equity committee and the creditor's committee.

2            Was it your general practice to forward to

3    the equity committee and creditor's committee term

4    sheets received from parties with respect to a

5    transaction with the Debtor?

6        A    Generally, yeah.

7        Q    And was this term sheet transmitted to the

8    equity committee or creditor's committee?

9        A    I don't recall.

10       Q    Okay.  When you spoke with either Bill

11   Schwartz or Gilbert Li, what were those discussions

12   about?

13       A    Potential transaction.

14       Q    And who said -- what did you say to them,

15   what did they say to you?

16       A    We discussed that, while the structure

17   might be something that can be worked with, it comes

18   down to dollars and cents.  And without dollars and

19   cents, I can't tell if this works.

20       Q    The second page of the document,

21   Exhibit 11, in the second paragraph has a phrase,

22   supported by the requisite stakeholders.

23           Do you have an understanding as to what

24   that phrase refers to?

25       A    No.

1      Q    Did you ask anyone what it meant?

2      A    No.

3      Q    On page 5 of Exhibit 11, under governance

4  of reorganized company, there's a reference to

5  majority shareholder protections.

6           Do you recall discussing those with

7  Gilbert and/or Bill?

8      A    No.

9      Q    There's also a reference to minority

10  shareholder protections.  Did you discuss that with

11  Bill or Gilbert?

12      A    No.

13           (Off-the-record discussion with counsel)

14  BY MR. GURFEIN:

15      Q    Would you have anything in your records

16  that would reflect the date that you received a copy

17  of Exhibit 11 for the first time?

18      A    I would need to research it.

19      Q    If -- if you have something in your e-mail

20  or records that reflects when you received

21  Exhibit 11, I'll leave a space in the record for you

22  to fill that in.

23      A    If.

24           (Off-the-record discussion)

25           MR. GURFEIN:  I'll ask the court reporter

Page 69

1    to mark as Exhibit 12 a March 9, 2018 e-mail from

2    Giovanni Wong to Marshall Glade and an attachment to

3    that e-mail.  So it's a 10-page attachment.

4            (Exhibit 12 marked)

5    BY MR. GURFEIN:

6        Q    Directing your attention to Exhibit 12,

7    Mr. Wong starts the e-mail to you, as per our

8    earlier conversation, please find attached the

9    stalking horse purchaser term sheet.

10           Um, what is that conversation he's

11   referring to?

12       A    Well, during this time frame, we were --

13   as you do in the sales process, discussing what the

14   purchase could be and what that may look like.  So

15   we were discussing what that would look like.

16       Q    Sometime in January, you received

17   Exhibit 11; is that correct?

18       A    I -- I believe so.

19       Q    And then on March 9, you received

20   Exhibit 12; is that correct?

21       A    Yes.

22       Q    Okay.  Between the time you received

23   Exhibit 11 and the time you received Exhibit 12, did

24   you have ongoing discussions with Mr. Wong

25   concerning the stalking horse purchase of -- of the

Page 70

1  company?

2      A     Yes.

3      Q     And how many of those conversations did

4  you have, approximately?

5      A     I don't know.

6      Q     During what period of time did you have

7  those discussions?

8      A     During the period of time here.

9      Q     That I described?

10      A     (Witness nodded head affirmatively.)

11      Q     And directing your attention just to --

12  strike that.

13          How early in that period, from January to

14  March 9, did you first talk to these parties as the

15  stalking horse group?

16      A     I don't recall.

17      Q     Do you have any records that would refresh

18  your recollection as to when those conversations

19  took place?

20      A     No.  Um, it -- I'm trying to think when

21  did we have the mediate -- about the mediation.  I

22  think that they were, um, shown together, so it must

23  have been before the mediation.

24      Q     Do you know how long before the mediation

25  they joined together?

Page 71

1      A    Well, I don't know.  You provided an

2  e-mail here that says that they were -- that Gilbert

3  and Gio were meeting on the 23rd --

4      Q    You are referring to --

5      A    -- the meeting, so it must have been

6  before that.

7      Q    So sometime before February 23rd?

8      A    Yeah -- well, yeah, if they were meeting

9  in Chicago.

10     Q    Do you know how -- and when you say Gio,

11  you're referring to Giovanni Wong?

12     A    Correct.

13     Q    Okay.  Do you know when Gio met Apollo and

14  Alta for the first time?

15     A    Must have been in February.

16     Q    And do you know --

17     A    I think February.

18     Q    -- do you know how they were introduced?

19     A    Yeah, yeah, yeah, I introduced the two of

20  them.

21     Q    And how did that come about?

22     A    In understanding who owns the company and

23  who was a key representative for the company, I --

24  it made sense to bring them together.

25     Q    What do you mean by that?

1    A    Well, Gilbert and Bill have 16 percent,

2    and Gio is essentially representing 45 percent.  If

3    not 30 percent of the company.  So if one was to

4    make an offer, the another needed to accept the

5    offer.  So they needed to understand what was going

6    on together.

7        Q    And did you suggest they get together to

8    talk?

9        A    Yes.

10       Q    And how did that conversation come about?

11   Who were you talking to?

12       A    I don't know, one of Gilbert or Gio, both.

13   (Witness shrugs).

14       Q    Was this after you received the January

15   term sheet, Exhibit 11?

16       A    I don't recall.

17       Q    Well, the -- it was on or about January 11

18   that -- let me see -- it was on --

19       A    It was after this, if that's what

20   you're --

21       Q    There's an --

22       A    -- referring to.

23       Q    -- there's an Exhibit that -- in which you

24   transferred to them a list of creditors -- of

25   stockholders?

Page 73

1      A    Right, so it was after that, for sure,

2   after January 10th.

3      Q    It was a January 10th --

4      A    Yeah.

5      Q    So it was sometime after January 10?

6      A    Correct.

7      Q    But before --

8      A    February twenty --

9      Q    -- third?

10      A    -- third; correct.

11      Q    And who were you talking to when you

12   suggested that the equity holders from the ad hoc

13   group and the PacBridge group get together?

14      A    Both of them.

15      Q    "Them" being Gilbert Li --

16      A    Yeah.

17      Q    -- and Giovanni Wong?

18      A    Correct.

19      Q    Were they together in a room at the time?

20      A    No.

21      Q    Well, how did you make the introduction?

22      A    Um, I -- I think I provided the contact

23   information.

24      Q    To whom did you --

25      A    I don't know which one I provided first.

Page 74

1      Q    (Nodded head affirmatively).  But this was

2   after you had already received the term sheet from

3   Alta and Apollo that's Exhibit 11?

4      A    That's -- I don't know when I received

5   this.  So I'm not sure.

6           MR. GURFEIN:  Have we already left a space

7   in the record for that date when he received it?  I

8   think we have.

9           MS. HOMER:  Yes.

10          (Off-the-record discussion)

11   BY MR. GURFEIN:

12     Q    And the purpose of your introducing the

13   two, Giovanni Wong and PacBridge Group and Alta and

14   Apollo was what?

15     A    To come to a transaction.

16     Q    Jointly?

17     A    Or separately.  Either way.

18     Q    Well, what would the purpose be of

19   introducing them to do separate transactions?

20     A    I don't know if -- I don't -- I can't -- I

21   couldn't predict the future.

22     Q    How was this introduction made?  Was it in

23   person, by telephone, by e-mail?

24     A    I -- I don't recall.

25     Q    Did someone ask you to make an

1    introduction?

2         A    It was discussed.

3         Q    What does that mean, it was discussed?

4         A    It was discussed.  I don't recall the

5    exact components of the discussion --

6         Q    And who --

7         A    -- but it was discussed.

8         Q    -- was in that discussion?

9         A    Gilbert and myself, and Gio and myself.

10        Q    Well, was it Gio and yourself, or Gilbert

11   and yourself?

12        A    Both.  Like I said before, this was an

13   iterative discussion that was going on, me and Gio,

14   me and Gilbert, and understanding what they could

15   do.

16        Q    What do you mean by what they could do?

17        A    How they could potentially put together an

18   offer to purchase the company.

19        Q    So it was your intention in putting them

20   together that they make a joint offer for the

21   company?

22        A    It was my intention --

23        Q    That's a yes or no question.  Was it your

24   intention in putting Gilbert Li and Giovanni Wong

25   together --

Page 76

1     A    To have --

2     Q    -- that they --

3     A    -- a transaction occur.

4     Q    Please let me finish the question.  Was it

5     your intention in putting Giovanni Wong and Gilbert

6     Li together that they and their representative

7     groups make a joint offer for the company?

8     A    Yes.

9     Q    Were you at all concerned about putting

10    PacBridge in touch with a potentially competing

11    bidder when you made that introduction?

12    A    No.

13    Q    And why is that?

14    A    I felt that they both had blocking

15    positions, and that they -- blocking positions to a

16    transaction.  And getting them on the same page

17    would effect a transaction faster.

18    Q    And what do you mean by blocking

19    positions?

20    A    They could both object to each other's

21    offer.

22    Q    In what capacity do you mean they could

23    object to it?

24    A    As equity holders who would have to vote

25    on this transaction.

Page 77

1      Q    Whose idea was it to put the two groups

2    together, PacBridge group and the ad hoc equity

3    group?

4      A    I don't recall.

5      Q    Well, I'm trying to understand the genesis

6    of the conversation that led to the introduction.

7    How did this come about?

8      A    I don't recall.

9      Q    Well, you referred to it as being an

10   iterative process.  What does that mean?

11     A    Just in discussions, amongst these parties

12   and, you know, whether Gio was asking whether he

13   could partner with them or Gilbert was asking

14   whether he could partner with them.

15     Q    So either Gio asked you if PacBridge could

16   partner with the ad hoc group, or the ad hoc group

17   was asking you if they could partner with Gio?

18     A    If they could talk and figure out if

19   they -- if they could do something together, or it

20   was discussion amongst -- at the same time,

21   discussion amongst my team, whether we -- whether we

22   felt like that would give us the best chance at

23   having a transaction, or discussion amongst myself

24   and counsel.

25     Q    Were all of these conversations by

Page 78

1    telephone?

2         A    (Witness shrugs), I don't -- I don't know.

3         Q    Were some of these conversations by

4    telephone?

5         A    Sure -- yeah.

6         Q    And were some of these conversations in

7    person?

8         A    Potentially.

9         Q    I don't know what that means,

10   "potentially."

11        A    Well, I don't know if I was sitting in a

12   room with counsel discussing it or not.  I don't --

13        Q    And did you confer with counsel about

14   putting the two groups together?

15        A    Yes.

16        Q    And what -- what -- who was that you spoke

17   to?

18        A    I think at that point it was Mr. Cavender,

19   it was before --

20        Q    And what did he say about that?

21        A    He thought that was a good idea, supported

22   it.

23        Q    Were any of these communications -- and

24   I'm limiting it to this iterative process of you and

25   Gio and Gilbert.  Were any of these by e-mail?

Page 79

1    A    I don't -- I don't know.

2    Q    I did not see any e-mails with you and

3  Gilbert and Gio prior to March 9, 2018.  So I'll ask

4  if you could double-check the document production

5  demand and see if you have any e-mails either

6  between you and Gio, or you and Gilbert Li, or among

7  you and Gio and Gilbert Li during the period

8  January 10 to March 9.

9    A    So are you saying that there were no

10  e-mails between me and Gilbert in that time period?

11    Q    With respect to -- thank you for asking

12  for clarification.  E-mails between you and Gilbert

13  with respect to partnering with anyone in the

14  PacBridge group, or between you and Gio about

15  partnering with the ad hoc equity group --

16    A    Okay.

17    Q    -- or among you and Gio and Gilbert about

18  partnering with the ad hoc equity group and

19  PacBridge.

20    A    We can sure -- we can double-check that.

21    Q    Directing your attention to the

22  Exhibit 12, was this the first proposal you

23  received -- that the company received from this

24  stalking horse group?

25    A    Yes.

1     Q    Were there any additional term sheets,

2   proposals, or offers provided to you by the ad hoc

3   equity group between the time you received January

4   term sheet, Exhibit 11, and the time you received

5   the March 9 term sheet, Exhibit 12?

6     A    I don't believe so.

7     Q    Using March 9 as a reference point --

8   actually, correct me if I'm wrong, but at the

9   mediation, February 27th, PacBridge Group and the

10   ad hoc equity group had already gotten together to

11   make a combined offer, even if they hadn't made it

12   yet; is that correct?

13     A    Yes, they were at the mediation together.

14     Q    Okay.

15     A    They were.

16     Q    So let's use that as our -- as our collar.

17   From the time you received the January term sheet,

18   Exhibit 11, and the date of the mediation.

19     A    Okay.

20     Q    That's the time frame we're focused on.

21     MS. FELDSHER:  Can you read that back?

22   What was the time period?  I apologize for

23   interrupting.

24     (Off-the-record discussion)

25  (Thereupon, the court reporter read as follows:

Page 81

1              "Question:  So let's use that as our --
2    as our collar.  From the time you received the
3    January term sheet, Exhibit 11, and the date of the
4    mediation.  That's the time frame we're focused
5    on.")
6    BY MR. GURFEIN:
7        Q    Did you have any in-person joint meetings
8    with the ad hoc equity group and the PacBridge Group
9    during that time frame, concerning a sale
10   transaction?
11       A    I'd have to check my calendar.
12       Q    Well, just so I understand, I'm not asking
13   for a date --
14       A    Yeah.  I need to check my calendar.
15       Q    -- I'm just asking --
16       A    I can't recall every attendee of every
17   meeting.
18       Q    I'm not asking you for attendees.  I'm
19   asking whether you attended a meeting involving a
20   combined group --
21       A    Right.  That's what I'm --
22       Q    -- of PacBridge --
23       A    -- saying.
24       Q    -- and equity group.
25       A    I have -- I'm thinking about the meetings

Page 82

 1    that were occurring in this time frame that you're

 2    talking about, so I have to check my calendar to

 3    recall who was there.

 4        Q    I'll leave the space in the --

 5        A    Fine.

 6        Q    -- in the record then for you to --

 7        A    You already requested that, I think.

 8        Q    -- leave the dates of all either telephone

 9    calls or meetings with a combined group of anyone

10    from the PacBridge group and --

11        A    That's fine.

12        Q    -- anyone from the ad hoc equity group.

13        A    That's fine.

14            MR. BROOKS:  For what purpose?  I'm just

15    trying to be clear about what the question is.  I'm

16    confused.

17            MR. GURFEIN:  Sure.

18            MR. BROOKS:  I'm not sure if the

19    witness --

20    BY MR. GURFEIN:

21        Q    During the time frame we're talking about,

22    the time of receipt of the January term sheet,

23    Exhibit 11, and the date of the mediation of

24    February 27th, did you have any meetings to discuss

25    a sale transaction with a combined group of the

1   ad hoc equity group and the PacBridge Group?

2       A    I have to check and see.

3       Q    Without knowing the specific dates, do you

4   recall whether you had any meetings during that time

5   frame?

6           MS. HOMER:  He already answered that

7   question.  He said he would have to check his

8   calendar.

9   BY MR. GURFEIN:

10      Q    So you have no recollection as you're

11  sitting here today, if, during that six-week time

12  frame, you had any meetings with the combined group

13  on the sale, any meetings at all?

14      A    I --

15          MS. HOMER:  It's okay if you don't recall.

16          THE WITNESS:  Did I answer the question?

17          MR. BROOKS:  He said he doesn't know.

18          THE WITNESS:  Okay.  Have I answered the

19  question or not?

20          MS. HOMER:  You said --

21          THE WITNESS:  I thought that answered the

22  question.

23          MS. HOMER:  You did.

24          THE WITNESS:  Okay.  Thank you.

25

Page 84

BY MR. GURFEIN:

    Q   Okay.  Were you directed by anyone not to send a copy of Exhibit 11 to either of the committees?

    A   Trying to remember.

        MS. HOMER:  If you don't know --

    A   I don't -- I don't recall.  I don't know. I don't recall.

BY MR. GURFEIN:

    Q   But you did not send a copy of the term sheet?

    A   I don't recall.

    Q   You don't recall whether you sent a copy of the term sheet?

    A   Exhibit 11?

    Q   Exhibit 11.

    A   Which one is that?  Is that this one?

    Q   Yes, Exhibit 11.

    A   Yeah.  I don't recall.

    Q   You don't recall whether you sent it or not?

    A   No.

        MS. HOMER:  Let's go off the record for a second.

        MR. GURFEIN:  Yeah.

Page 85

1         (Off-the-record discussion)

2         THE WITNESS:  It was my practice to

3    generally do it.

4         MS. HOMER:  And that's what you testified

5    already.

6    BY MR. GURFEIN:

7    Q    Well, I will -- I will preface this

8    question by stating that neither you, nor anyone

9    working with the Debtor forwarded a copy of

10   Exhibit 11 to the equity committee.

11        Do you have any understanding as to why

12   that would not have been forwarded to the equity

13   committee?

14   A    It was no dollars and cents to this.

15   There was no financial components of this.

16   Q    Well, I will represent to you that there

17   were several term sheets similarly missing key

18   elements that were forwarded to the equity

19   committee.

20   A    Okay.

21        MR. BROOKS:  Is that a question?

22        THE WITNESS:  I don't know what you're --

23   BY MR. GURFEIN:

24   Q    I haven't asked the question yet.  Knowing

25   that there were several term sheets missing key

Page 86

1   elements that were forwarded to the equity

2   committee, is there any reason you would not have

3   forwarded this other than that?

4        A    (Witness shrugs), I don't know.  Honestly.

5   I don't know.

6        Q    Did you enter into any negotiations on

7   behalf of the Debtor with the ad hoc equity group,

8   based upon the proposal contained in Exhibit 11?

9        A    There was nothing to negotiate.

10       Q    Well, you indicated that there were

11  missing --

12       A    We told them they were missing financial

13  terms.

14       Q    Excuse me.

15       A    And we could tell them -- and when they

16  came back with financial terms, we could have

17  discussions with them.

18       Q    And that's what you told them?

19       A    Yes.

20       Q    And who did you say --

21       A    I've already --

22       Q    -- that to?

23       A    -- I believe that I've already stated

24  that --

25       Q    And who did you say that to?

Page 87

1      A     -- on the record.  Either Gilbert or Bill.

2      Q     And when did you say that to them?

3      A     I don't know.

4      Q     After you received Exhibit 12, did you

5  enter into further negotiations with the stalking

6  horse group with respect to their proposal to

7  purchase the company?

8      A     Is Exhibit 12 this Exhibit?

9      Q     Yes.

10     A     Yes.

11     Q     And tell me about those discussions.

12     A     I believe you have a -- a mark and that

13  should explain to you what -- the response in the

14  negotiations.

15     Q     I don't understand your answer.

16     A     There was -- we marked this document.

17  This was marked by Troutman Sanders, and that shows

18  what we did to negotiate, which was -- which I think

19  is explained in that document.

20          MR. GURFEIN:  I'll ask the reporter to

21  mark as Exhibit 13 a e-mail from Stephen Roach to

22  Scott Grossman, dated March 13, 2018, with a 19-page

23  attachment.

24          (Exhibit 13 marked)

25

1    BY MR. GURFEIN:

2        Q    Is Exhibit 13 the marked term sheet that

3    you referred to just --

4        A    That's correct.

5        Q    -- in the last answer?  And who worked on

6    this marking of the term sheet?

7        A    The advisors and the company.

8        Q    Did you --

9        A    Are you --

10       Q    -- participate?

11       A    -- are you asking who -- who physically --

12       Q    Who --

13       A    -- wrote this?  Or are you asking who

14   discussed it?  Did we discuss it?

15       Q    Did you discuss it?

16       A    Yes, this was discussed amongst Troutman

17   Sanders, myself and the management team.

18       Q    And who at management was involved in that

19   discussion?

20       A    I believe it would have been all of the

21   management team would have known what was going on.

22       Q    And I believe you indicate that's Jerry

23   Henshall, Jessica Sanders, and Daoping Bao.

24       A    That's correct.

25       Q    And how soon after receiving the March 9

Page 89

1    term sheet did you discuss with the management group

2    and with Troutman Sanders --

3         A    I don't recall.

4         Q    -- the response to the term sheet?

5         A    I don't recall.

6         Q    What was your input to the changes

7    reflected in Exhibit 13?

8         A    I don't recall.

9         Q    Take a look at Exhibit 13 and let me know

10   if you commented on any of the provisions in

11   Exhibit 12 that are reflected in this markup.

12        A    I commented -- I mean, it was a discussion

13   amongst everybody.

14        Q    Was there a discussion amongst everybody

15   with respect to Exhibit 11 as well?

16        A    Which one is Exhibit 11?  This one?

17        Q    Yes.

18        A    I don't recall.

19        Q    But you do recall having a discussion with

20   respect to Exhibit 12 --

21        A    That's correct.

22        Q    -- reflected in the Exhibit 13?

23        A    That's correct.

24        Q    Did anyone respond to the ad hoc group

25   with respect to Exhibit 11?

Page 90

1          (Off-the-record discussion with counsel)

2      A    I believe I've answered that question.

3  BY MR. GURFEIN:

4      Q    So nobody responded to the ad hoc group?

5      A    I believe I've answered the question.

6      Q    And what was your answer?

7      A    My answer was, the response was we need

8  financial terms to discuss this further.

9      Q    Did you get financial terms back from the

10  ad hoc group?

11     A    As a part of the stalking horse purchaser,

12  this was their response.

13     Q    Exhibit 12?

14     A    That's correct.

15     Q    (Nodded head affirmatively.)  By the way,

16  how was that response given to the ad hoc group,

17  that they needed to provide financial terms?

18     A    I don't recall.

19     Q    Did you provide that response to them?

20     A    It was -- like I said, I -- I don't

21  exactly recall whether this was provided from

22  counsel to counsel, or whether it was provided to me

23  directly.  So I'm not sure if the response was from

24  counsel to counsel or from me directly.

25     Q    And as you sit here, you have no

Page 91

1    recollection of talking to either Gilbert Li or Bill

2    Schwartz about Exhibit 11?

3        A    I'm not -- I'm -- if I did, that's what I

4    would have said, that's what was discussed.

5        Q    Now, we talked about the list of potential

6    bidders earlier, the schedule.  It was, uh

7    Exhibit 5.

8            (Off-the-record discussion)

9    BY MR. GURFEIN:

10       Q    Exhibit 5.  And we talked about the

11   financial capability of the companies or targets on

12   that schedule.

13           Did you have any concerns about the

14   ability of Apollo to have the financial wherewithal

15   to satisfy their financial commitment in acquiring

16   the company?

17       A    No.

18       Q    Did you have any concerns about Alta

19   Fundamentals' financial capabilities?

20       A    (Witness shook head negatively,) no.

21       Q    No?

22       A    No.

23       Q    Did you have any questions about

24   PacBridge --

25       A    No.

Page 92

1      Q    -- ability?  None?  And that's PacBridge's

2    ability to have the financial wherewithal to close a

3    transaction to acquire the company?

4      A    Well, we require equity commitment letters

5    from all three of them to prove it out.

6      Q    And you received those?

7      A    Correct.

8      Q    And now PacBridge had made a couple of

9    offers in term sheets prior to that.  Had you done

10   financial due diligence on PacBridge for the prior

11   offers they made?

12     A    We were, uh --

13          MR. BROOKS:  I'm going to object to the

14   scope.  It's outside the request for this

15   deposition.

16          MR. GURFEIN:  All right.

17     A    Our ability to begin those discussions was

18   short-cutted -- short-circuited, I would say.

19   BY MR. GURFEIN:

20     Q    Mr. Glade, the question is --

21     A    By the time --

22     Q    -- did you -- did you have financial

23   questions about the financial capability of

24   PacBridge to satisfy its obligations under either of

25   its other two proposals?

Page 93

1      A    Say -- say the question again.  I want to
2  clarify.
3      Q    Did you have any questions about the
4  financial wherewithal of PacBridge to close either
5  of the other transactions that they had submitted to
6  the company?
7            MR. BROOKS:  I'm going to object again.
8  Let's move on here.
9            THE WITNESS:  Do I have to answer?
10           MR. BROOKS:  You don't need to answer.
11  It's outside the scope of this deposition.
12           MR. GURFEIN:  It's not your client.
13           MS. HOMER:  You don't --
14           MR. BROOKS:  I'm a party.
15           MR. GURFEIN:  It's not your client.
16           MS. HOMER:  You can either -- he's
17  answered the question.  You can either read it back,
18  you can repeat it, or you can just move on.
19  BY MR. GURFEIN:
20     Q    All right.  I'll -- I'll take it that you
21  had no questions as to their financial capacity to
22  fulfill --
23     A    I would --
24     Q    -- their offers.
25     A    I would have done -- had we been able to

Page 94

1    move the term sheet along, we would have acquired

2    equity commitment letters in order to see -- to

3    assess their financial wherewithal.

4         Q    But you had no questions about them at the

5    time?

6         A    We would have required, like I said --

7         Q    Mr. Glade, the question is did --

8         A    Like I said --

9         Q    -- you have any questions about them at

10   the time?

11        A    -- we would have required equity

12   commitment letters to understand whether they had

13   the financial --

14        Q    This is --

15        A    -- wherewithal.

16        Q    -- a yes or no question.  Did you have

17   questions about their financial capability, the

18   PacBridge Group, at all?

19             MS. HOMER:  Just answer.

20        A    I answered.

21   BY MR. GURFEIN:

22        Q    I'm sorry?

23        A    I answered the question.

24        Q    The answer is no?

25        A    We would have -- we would have --

1     Q    The question --

2     A    -- performed that --

3     Q    -- is, no, you had no --

4     A    -- we would have performed --

5     Q    -- question -- you had no question

6  about --

7     A    We would have done our diligence and

8  performed and understood whether they had -- and

9  they would have needed to prove to us whether they

10  had the financial wherewithal.

11     Q    And do you have any questions --

12     A    I believe that --

13     Q    -- about it as you sit here today?

14     A    -- I believe that --

15     Q    And do you have --

16     A    -- their --

17     Q    Excuse me, and do you have any questions,

18  as you sit here today, as to PacBridge's financial

19  capabilities --

20     A    I do not.

21     Q    -- to have concluded their transactions?

22     A    To conclude the transaction of the

23  stalking horse bidder, I do not.

24     Q    Okay.

25         (Off-the-record discussion with counsel)

Page 96

BY MR. GURFEIN:

    Q    Um, are you familiar with the financial
terms contained in the asset purchase agreement?

    A    Yes.

    Q    And did you participate in the negotiation
of that Asset Purchase Agreement?

    A    You're referring to Asset Purchase
Agreement --

    Q    That's --

    A    -- that --

    Q    -- part of the sale motion.

    A    Correct.

    Q    I asked that a copy of the sale motion --

    A    Yes.

    Q    -- brought in.  Let me show you the Asset
Purchase Agreement -- and I'm reading from a
document filed in the Bankruptcy Court as
Docket 1055 on June 15, 2018.

         And in that document, I'm referring to
page 11 of the Asset Purchase Agreement.  It bears a
document ID number of FTL111767089D15.  And
directing your attention to paragraph A at the top
of that page.

         MR. BROOKS:  What we looking at again?  I
don't --

1          THE WITNESS:  APA, page 11.

2          MR. GURFEIN:  I just didn't bring extra

3   copies.  But we can circulate this around.  We're

4   off the record.

5          (Off-the-record discussion)

6          THE WITNESS:  2.3A.

7          MR. BROOKS:  Which page is that, Marshall?

8          THE WITNESS:  11.

9          MR. BROOKS:  Okay.  Thank you.

10  BY MR. GURFEIN:

11     Q    This paragraph refers to the total

12  consideration to be paid to the sellers on the

13  closing date for the transferred assets and has a

14  formula that I -- I'm going to ask you to explain to

15  me.

16     A    Sure.  So the formula is basically 17 and

17  a half million dollars, a cash payment 17 and a half

18  million dollars, plus the sort of change in the

19  current assets, from the -- the -- plus the -- the

20  difference between the -- the current assets at the

21  time of the closing and the target current assets,

22  positive or negative.

23          And then I believe it's less -- yeah, then

24  the -- minus the good faith deposit and the escrow

25  amount.

Page 98

1      Q    Okay.  Do you have an understanding as to
2    what that translates to in actual numbers?
3      A    Yeah, the -- I believe the target --
4    either the estimated current -- I think it's target
5    current assets as a defined term in the back, I
6    believe.  I think you can probably follow that;
7    right, Peter?
8      Q    Right.
9      A    Yeah.  So you know what that number is.
10     Q    I got --
11     A    Isn't that right?
12     Q    2.461?
13     A    Oh, you got it highlighted there?  Good.
14   So you know the number.
15     Q    And do you have an understanding as to
16   what the estimated current assets will be?
17     A    I do not.  We have to -- we have to look
18   at the balance sheet upon the closing date.  Or I
19   think it's five days before the closing date.
20     Q    Do you have a sense today as to what
21   that --
22     A    I would have to look --
23     Q    -- with the closing date --
24     A    -- at the balance sheet.
25     Q    -- tomorrow?

1        A    I would have to look at the balance sheet.

2    I would hope that it's close to that number.  In

3    fact, actually, I would hope that it would be more

4    than that number so the purchase price would

5    increase.

6        Q    So they'd have to pay more than 17 --

7        A    Correct.

8        Q    -- point five million?  So this could go

9    either way --

10       A    That's right.

11       Q    Okay.  And in Section 2.4D on page 12 --

12       A    Sure.

13       Q    -- there's an adjustment shortfall amount.

14       A    (Witness nodded head affirmatively.)

15       Q    Do you have an -- do you have an

16   understanding or an estimate as to what that number

17   might be?

18       A    That's the, um, same as if it was a

19   positive number.  So if the assets at that time are

20   greater than the $2.3 million, then the purchaser

21   would owe the estate money.  If it's less than, then

22   it would come out of the escrow funds.

23       Q    So the $17.5 million is subject to the

24   adjustment you've just described in those two

25   paragraphs; is that correct?  $17.5 million --

1      A    It's subject to --

2      Q    -- purchase price --

3      A    It's subject to exactly what it says on

4  page 11, 2.3A --

5      Q    That's the only --

6      A    -- (inaudible) subject.

7      Q    That's the only adjustment?

8      A    I mean, as I read it, yeah.  That's what

9  it says here, isn't it?

10      Q    Okay.

11      A    Or are you saying that there's another

12  adjustment that I'm --

13      Q    I'm asking --

14      A    -- not aware of?

15      Q    -- you if there's another adjustment.

16      A    Okay.  No, I'm not reading it there.

17      Q    Okay.

18      A    Is that it for this?  Can I put this paper

19  away?

20           MR. GURFEIN:  Yes.  If we can go off the

21  record for a minute, let me just go through this.

22           (Off-the-record discussion)

23  BY MR. GURFEIN:

24      Q    Back on the record.  We -- we marked as

25  Exhibit 2 the modified document demand that we had

1   negotiated with counsel limiting the documents to be

2   produced.  Um, and I'll show you Exhibit 2. That's

3   the original.  I think you've got a copy there.

4           What did you do to search for documents

5   responsive to that demand?

6       A    Provided e-mails, provided a file of

7   e-mails.

8       Q    And how did you identify that file of

9   e-mails?

10      A    Um, my in-box, I tried to segregate out by

11  client, so I just put it in the folder.

12      Q    I can't hear you.

13      A    I just put it in a folder.  I tried to

14  segregate it best I can by client.

15      Q    Okay.  And are you satisfied that you've

16  produced all communication during the period

17  December 1, 2017, to June 15, 2018, between you and

18  PacBridge, Wong, Zhang, Zou, or Feng, and containing

19  a reference to a potential purchase offer for the

20  Debtor or their assets by Alta or Apollo?

21      A    Yeah, I don't think there was any.

22      Q    And are you satisfied that you produced

23  all communications during the period December 1,

24  2017, to June 15, 2018, between you and Alta or

25  Apollo containing any reference to a potential

Page 102

1  purchase offer for the Debtors or their assets by

2  PacBridge, Wong, Zhang, Zou or Feng?  Number 6.

3          (Off-the-record discussion)

4    A    Yeah.  I think so.  (Witness nodded head

5  affirmatively.)

6  BY MR. GURFEIN:

7    Q    Okay.  Who are the other potential bidders

8  that you put together with the idea of making a

9  joint bid during the period of time that you were

10 conducting the -- serving as sale advisor to the

11 Debtor?

12   A    Again, this is outside of the scope of --

13   Q    You can answer.

14   A    -- the deposition; right?  Is that right

15 though?

16   Q    No, you can answer.

17   A    It's not outside of the scope?

18   Q    No.

19   A    Oh.  I think this was before December that

20 we would have done it.

21   Q    Say that again.

22   A    This is before December that that

23 occurred; right?

24   Q    So if you put two bidders together, it

25 would have been before December 1?

```
1       A    Didn't -- because you're asking about ones
2   that I can recall.
3       Q    Right.
4       A    And those would have been before December.
5       Q    All right.
6       A    Isn't that right?
7       Q    Yes, it would have been before December.
8       A    Okay.
9       Q    So do you recall doing that?
10      A    Yes.
11      Q    And did either of those or any of those
12   make an offer for the company?
13      A    Whew.
14           MS. HOMER:  Don't guess.
15      A    I don't think -- I don't recall, but I
16   don't think so.
17   BY MR. GURFEIN:
18      Q    Okay.
19      A    There may have been one, but like Armada
20   had a million different expressions of interest, so
21   I don't know if they ended up having one with -- I
22   think it was Cedar Bay, or not.  I can't -- you
23   know, they have --
24      Q    Base Entertainment and Wizard, that was
25   the only other one; is that right?
```

Page 104

1      A    I think so.  I think those -- I don't

2   know.  I'd have to look again, but those are the

3   ones that come to the top of my head.

4      Q    And those were after consultation with the

5   committees?

6      A    Yeah.

7          MR. GURFEIN:  All right.  That -- that

8   is -- those are all the questions I had.  And I

9   didn't get all the answers I needed, but I didn't

10  get all the answers, period.  But those are the

11  questions I had.

12          MS. HOMER:  Thank you.  We have a list.

13  If you want to follow up with an e-mail, that's

14  fine.  In the interim, you'll see what you can do.

15          THE WITNESS:  Yeah, see what I can find.

16          MR. GURFEIN:  Okay.  Usual stipulations

17  but we've got a shortened time.

18          (Off-the-record discussion)

19          (Signature reserved)

20          (Deposition concluded at 2:45 p.m.)

21

22

23

24

25

```
 1           The following reporter and firm
     disclosures were presented by me at this proceeding
 2   for review by counsel:
 3                  REPORTER DISCLOSURES
 4           The following representations and
     disclosures are made in compliance with Georgia Law,
 5   more specifically:
             Article 10(B) of the Rules and Regulations
 6   of the Board Of Court Reporting (disclosure forms)
             OCGA Section 9-11-28(c) (disqualification
 7   of reporter for financial interest)
             OCGA Sections 15-14-37(a) and (b)
 8   (prohibitions
     against contracts except on a case-by-case basis).
 9   - I am a certified reporter in the State of Georgia.
     - I am a subcontractor for Veritext Legal Solutions.
10   - I have been assigned to make a complete and
       accurate record of these proceedings.
11   - I have no relationship of interest in the matter
       on which I am about to report which would
12       disqualify me from making a verbatim record or
       maintaining my obligation of impartiality in
13       compliance with the Code of Professional Ethics.
     - I have no direct contract with any party in this
14       action, and my compensation is determined solely
       by the terms of my subcontractor agreement.
15
16
                    FIRM DISCLOSURES
17
     - Veritext Legal Solutions was contacted to
18       provide reporting services by the noticing or
       taking attorney in this matter.
19   - There is no agreement in place that is
       prohibited by OCGA 15-14-37(a) and (b).  Any
20       case-specific discounts are automatically
       applied to all parties, at such time as any
21       party receives a discount.
     - Transcripts:  The transcript of this proceeding
22       as produced will be a true, correct, and complete
       record of the colloquies, questions, and answers
23       as submitted by the certified court reporter.
     - Exhibits:  No changes will be made to the exhibits
24       as submitted by the reporter, attorneys, or
       witnesses.
25
```

1    - Password-Protected Access:  Transcripts and
     exhibits relating to this proceeding will be
2    uploaded to a password-protected repository, to
     which all ordering parties will have access.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE
 2    STATE OF GEORGIA:
      COUNTY OF FULTON:
 3
 4           I hereby certify that the foregoing
      transcript was taken down, as stated in the caption,
 5    and the colloquies, questions, and answers were
      reduced to typewriting under my direction; that the
 6    transcript is a true and correct record of the
      evidence given upon said proceeding.
 7           I further certify that I am not a relative
      or employee or attorney of any party, nor am I
 8    financially interested in the outcome of this
      action.
 9           I have no relationship of interest in this
      matter which would disqualify me from maintaining my
10    obligation of impartiality in compliance with the
      Code of Professional Ethics.
11           I have no direct contract with any party
      in this action and my compensation is based solely
12    on the terms of my subcontractor agreement.
             Nothing in the arrangements made for this
13    proceeding impacts my absolute commitment to serve
      all parties as an impartial officer of the court.
14
15                                    L8.
16
17
      _____
18    CAROLYN J. SMITH, RMR, CCR-A-1361
19
20
21
22
23
24
25
```

```
 1   To:  Ilyse Homer
 2   Re: Signature of Deponent MARSHALL GLADE
 3   Date Errata due back at our offices:
 4
 5   Greetings:
 6   This deposition has been requested for read and sign
     by the deponent.  It is the deponent's
 7   responsibility to review the transcript, noting any
     changes or corrections on the attached PDF Errata.
 8   The deponent may fill out the Errata electronically
     or print and fill out manually.
 9
10   Once the Errata is signed by the deponent and
     notarized, please mail it to the offices of Veritext
11   (below).
12   When the signed Errata is returned to us, we will
     seal and forward to the taking attorney to file with
13   the original transcript.  We will also send copies
     of the Errata to all ordering parties.
14
15   If the signed Errata is not returned within the time
     above, the original transcript may be filed with the
16   court without the signature of the deponent.
17
18   Please send completed Errata to:
19   Veritext Production Facility
20   11539 Park Woods Circle, Suite 302
21   Alpharetta, GA 30005
22   (770) 343-9696
23
24
25
```

 1  ERRATA for ASSIGNMENT #2996119
 2  I, the undersigned, do hereby certify that I have
    read the transcript of my testimony, and that
 3
 4  ____ There are no changes noted.
 5  ____ The following changes are noted:
 6
    Pursuant to Rule 30(7)(e) of the Federal Rules of
 7  Civil  Procedure and/or OCGA 9-11-30(e), any changes
    in form or substance which you desire to make to
 8  your testimony shall be entered upon the deposition
    with a statement of the reasons given for making
 9  them.  To assist you in making any such corrections,
    please use the form below.  If additional pages are
10  necessary, please furnish same and attach.
11  Page _____ Line _____ Change_____
12  _____
13  Reason for change_____
14  Page _____ Line _____ Change_____
15  _____
16  Reason for change_____
17  Page _____ Line _____ Change_____
18  _____
19  Reason for change_____
20  Page _____ Line _____ Change_____
21  _____
22  Reason for change_____
23  Page _____ Line _____ Change_____
24  _____
25  Reason for change_____

Page 110

1    Page _____ Line _____ Change_____

2    _____

3    Reason for change_____

4    Page _____ Line _____ Change_____

5    _____

6    Reason for change_____

7    Page _____ Line _____ Change_____

8    _____

9    Reason for change_____

10   Page _____ Line _____ Change_____

11   _____

12   Reason for change_____

13   Page _____ Line _____ Change_____

14   _____

15   Reason for change_____

16   Page _____ Line _____ Change_____

17   _____

18   Reason for change_____

19

20                 _____

                        DEPONENT'S SIGNATURE

21

     Sworn to and subscribed before me this ___ day of

22   _____, _____.

23

     _____

24   NOTARY PUBLIC

25   My Commission Expires:_____

[& - 9]

| & | | | |
| --- | --- | --- | --- |

**&** 1:9,13 2:10,17
5:18 8:6

| 0 | | | |
| --- | --- | --- | --- |

**001694-1706** 3:23
**02230** 1:4

| 1 | | | |
| --- | --- | --- | --- |

**1** 2:5 8:1 50:23
101:17,23 102:25
**1/10/18** 3:13
**1/2/18** 2:25
**10** 3:12 7:15 60:11
60:11,13 62:19,21
69:3 73:5 79:8
105:5
**10020** 6:12
**1055** 96:18
**10th** 73:2,3
**11** 1:5 2:15 3:15
11:17,25 13:2 63:8
63:10 64:18 65:20
67:21 68:3,17,21
69:17,23 72:15,17
74:3 80:4,18 81:3
82:23 84:3,15,16
84:18 85:10 86:8
89:15,16,25 91:2
96:20 97:1,8 100:4
**11539** 108:20
**12** 3:18 69:1,4,6,20
69:23 79:22 80:5
87:4,8 89:11,20
90:13 99:11
**12/29/17** 2:22
**1225** 1:14
**1251** 6:11
**12:16** 1:12
**12:39** 26:11
**12:43** 26:11

**13** 3:21 87:21,22,24
88:2 89:7,9,22
**1361** 1:17 107:18
**13618** 107:17
**140** 17:3,4,5,13
24:10
**1450** 7:10
**15** 96:18 101:17,24
**15-14-37** 105:7,19
**16** 22:16 72:1
**16th** 21:24 22:6
**17** 33:24 97:16,17
99:6
**17.5** 99:23,25
**1801** 5:20
**19** 87:22
**1900** 7:9
**1:36** 63:7
**1:44** 63:7

| 2 | | | |
| --- | --- | --- | --- |

**2** 2:9 8:1 43:1 47:23
47:25 100:25 101:2
**2.3** 99:20
**2.3a** 100:4
**2.3a.** 97:6
**2.461** 98:12
**2.4d** 99:11
**2/23/18** 3:10
**2/7/18** 3:7
**2000** 6:21
**2016** 13:4,11 21:24
22:14 23:11
**2017** 14:2,3 30:19
41:15,21 42:8,22
101:17,24
**2018** 1:11 41:21
42:9 43:1 58:5,12
58:19 60:11 69:1
79:3 87:22 96:18
101:17,24 107:15

**212** 6:13
**23** 59:3
**23rd** 71:3,7
**24** 1:11
**25** 2:19
**26** 32:5,8 60:4
**26th** 107:15
**27** 60:4,5
**27th** 80:9 82:24
**28** 60:5
**28th** 50:24
**29** 42:22 43:12,17
**2996119** 109:1
**2:45** 104:20

| 3 | | | |
| --- | --- | --- | --- |

**3** 2:12 8:1
**3/13/18** 3:22
**3/9/18** 3:19
**30** 1:8 8:6 24:14
41:6 72:3 109:6
**3000** 5:8
**30005** 108:21
**302** 108:20
**30308** 5:10
**305** 7:12
**310** 5:22
**33131** 7:11
**33301** 6:23
**343-9696** 108:22
**3445** 1:15
**3:16** 1:4

| 4 | | | |
| --- | --- | --- | --- |

**4** 2:15 10:14 11:9
11:12
**401** 6:22
**404** 5:11
**42** 2:21
**43** 2:24
**45** 72:2

**49th** 6:10
**4th** 44:6

| 5 | | | |
| --- | --- | --- | --- |

**5** 2:19 25:19,21
26:13,15,23 29:15
29:15 31:21,23
34:24 35:14 38:11
68:3 91:7,10
**508-6137** 6:13
**58** 3:6
**59** 3:9
**5th** 44:6

| 6 | | | |
| --- | --- | --- | --- |

**6** 1:8 2:21 8:6 42:20
42:23 43:5,12
102:2
**60** 3:12
**600** 5:9
**63** 3:15
**69** 3:18
**691-7374** 5:22

| 7 | | | |
| --- | --- | --- | --- |

**7** 2:24 42:24 43:3,6
43:15,17 47:24
48:8 58:5 109:6
**700** 5:19
**755-9500** 7:12
**768-5212** 6:24
**770** 108:22

| 8 | | | |
| --- | --- | --- | --- |

**8** 2:5,9,12 3:6 4:5
58:3,4,8,24
**87** 3:21
**885-2618** 5:11
**8th** 44:6 58:12

| 9 | | | |
| --- | --- | --- | --- |

**9** 3:9 59:3,5,7 69:1
69:19 70:14 79:3,8
80:5,7 88:25

**9-11-28** 105:6
**9-11-30** 109:7
**90067** 5:21
**954** 6:24
**9th** 44:7 58:13

**a**

**abbreviating** 12:8
**ability** 9:22 91:14
92:1,2,17
**able** 27:11 59:25
93:25
**absolute** 107:13
**absolutely** 40:23
**accept** 72:4
**access** 18:1,25
40:19 106:1,2
**accompany** 52:20
**accountancy** 10:25
**accurate** 105:10
**acquire** 92:3
**acquired** 94:1
**acquiring** 91:15
**acquisition** 6:4,17
**action** 47:6,9,11
48:14 105:14 107:8
107:11
**actual** 98:2
**ad** 63:21 65:4,6,11
65:16 73:12 77:2
77:16,16 79:15,18
80:2,10 81:8 82:12
83:1 86:7 89:24
90:4,10,16
**added** 26:14 30:23
**additional** 80:1
109:9
**additionally** 40:2
**address** 35:20
36:10
**adjustment** 99:13
99:24 100:7,12,15

**adversary** 2:14
**advice** 54:11
**advisers** 6:5 12:17
**advising** 54:12
**advisor** 12:5,5
13:10,16,20,23
14:12,13 15:20
16:11,15 21:19
22:14 23:17 30:8
31:14,14 32:15
102:10
**advisors** 88:7
**advisory** 1:9,13
2:10,17 8:6
**affirmative** 17:19
35:7 43:20 50:19
53:16
**affirmatively** 13:7
13:21 14:10 21:2
21:16 30:6 33:5
34:1 49:8 55:17
57:4 63:1 70:10
74:1 90:15 99:14
102:5
**agenda** 46:12,25
58:11,14,22,22,23
**agreed** 47:6
**agreement** 13:25
13:25 14:7,15
17:23,24 18:19
56:11,14,20,21,23
57:1 66:25 96:3,6,8
96:16,20 105:14,19
107:12
**agreements** 24:13
41:16
**ah** 27:7
**al** 1:5
**alpharetta** 108:21
**alta** 6:5 12:16,17
12:19 41:15,18,25

42:1 43:8,14 44:2
44:18,21 47:4,15
47:17 48:23 49:9
49:15 50:17 51:1
51:23 52:20 53:20
65:10,16 66:1,9
71:14 74:3,13
91:18 101:20,24
**americas** 6:11
**amount** 97:25
99:13
**angeles** 5:21
**answer** 15:16 30:24
36:8,21 83:16
87:15 88:5 90:6,7
93:9,10 94:19,24
102:13,16
**answered** 83:6,18
83:21 90:2,5 93:17
94:20,23
**answers** 9:3,5
104:9,10 105:22
107:5
**anticipate** 40:15
**apa** 97:1
**apollo** 6:5 12:18,18
12:19 41:15,17,25
42:2 43:8 44:2,18
44:21 47:4,17
48:23 49:9,14
50:17 51:1,22
52:20 53:20 59:19
65:10,17 66:2,9
71:13 74:3,14
91:14 101:20,25
**apollo's** 46:1
**apologize** 80:22
**appearances** 5:1
6:1 7:1
**appears** 10:15
27:21 43:13

**applied** 105:20
**appropriate** 20:17
20:21 34:20
**approved** 14:7
17:17 41:7
**approximate** 50:4
57:19
**approximately**
17:14 24:10 70:4
**areas** 36:20
**armada** 35:6
103:19
**armen** 23:21,21
24:6
**arrangements**
107:12
**article** 7:15 105:5
**artifacts** 21:25 22:1
23:12 49:17
**aside** 40:20 52:25
**asked** 27:16 61:16
77:15 85:24 96:13
**asking** 9:2,7,9
43:24 57:24 77:12
77:13,17 79:11
81:12,15,18,19
88:11,13 100:13
103:1
**assess** 31:15 94:3
**assessed** 32:8
**assessing** 32:12
**assessment** 31:24
37:23
**asset** 96:3,6,7,15,20
**assets** 16:17 17:8
18:10,15 19:18
20:5 97:13,19,20
97:21 98:5,16
99:19 101:20 102:1
**assigned** 105:10

**assignment** 109:1
**assist** 109:9
**assume** 43:14 48:18
  50:10 61:22
**assumed** 61:14
**assuming** 18:23
  41:6 60:19 61:17
  61:20 66:18
**atlanta** 1:16 5:10
  45:12 49:13,15
  52:8,11,14 53:8
  57:14 58:18,20,25
**attach** 109:10
**attached** 58:10
  61:8 69:8 108:7
**attachment** 62:18
  69:2,3 87:23
**attend** 44:21 51:15
**attendance** 44:17
  45:15 55:10
**attended** 44:23
  59:12,16 81:19
**attendee** 81:16
**attendees** 81:18
**attention** 26:22
  31:20 41:14 43:5
  59:7 63:10 69:6
  70:11 79:21 96:22
**attorney** 5:6,17 6:8
  6:19 7:7 105:18
  107:7 108:12
**attorneys** 105:24
**auction** 40:1,5,17
**auditor** 11:22
**august** 1:11 38:21
  38:22 39:8 40:11
  41:6 107:15
**author** 29:20
**automatically**
  105:20

**available** 10:14
**avedissian** 23:21
  23:22 51:11
**avenue** 6:11 7:10
**aware** 21:23 22:3
  22:13,21 40:8 54:5
  57:7,11 61:4
  100:14

**b**

**b** 1:8 7:15 8:6
  23:24 105:5,7,19
**back** 18:8 21:23
  26:13 29:12 35:25
  41:13 45:7 80:21
  86:16 90:9 93:17
  98:5 100:24 108:3
**background** 10:24
**backtrack** 22:15
**balance** 98:18,24
  99:1
**banker** 13:5,13
**bankruptcy** 1:1 2:8
  2:13 46:22,23
  65:10 96:17
**bao** 16:4,12 88:23
**base** 37:6,24
  103:24
**based** 86:8 107:11
**basically** 97:16
**basis** 27:6 30:1,5,9
  30:14 31:5 105:8
**bates** 25:14
**bay** 33:8,12,13,20
  35:13 103:22
**bearing** 34:22
**bears** 96:20
**began** 24:7 40:2
**behalf** 5:3,13 6:4
  6:15 7:4 86:7
**believe** 13:4 31:4
  33:23 38:19 39:8

**40**:21,21 42:17
  47:2,18,19 48:1
  53:8 54:2 56:16
  65:5,10 66:5 69:18
  80:6 86:23 87:12
  88:20,22 90:2,5
  95:12,14 97:23
  98:3,6
**berger** 5:18 7:8
**best** 9:10,11 77:22
  101:14
**better** 63:16
**bid** 37:9 38:8 102:9
**bidder** 24:24 25:1
  25:11 36:15 38:15
  38:20 39:5 57:5
  76:11 95:23
**bidders** 16:16,20
  17:14 18:5 20:3
  21:5,6 24:10,17,18
  24:22 31:16 32:16
  34:24 35:17,18,21
  36:6,7,10,14 38:13
  38:23 39:13 56:18
  91:6 102:7,24
**bidding** 41:6
**big** 23:23
**bill** 11:13 42:1,4
  45:18 59:18 60:12
  60:19,19 61:2,17
  61:18 66:12,12,15
  67:10 68:7,11 72:1
  87:1 91:1
**bk** 1:4
**blank** 29:5 64:25
**blocking** 76:14,15
  76:18
**board** 7:16 15:21
  105:6
**bottom** 28:14 58:21

**boulevard** 6:22
**box** 101:10
**bracewell** 6:9
**brackets** 64:22
**break** 9:18,19
**breakdown** 61:9,12
  62:14,24
**brendan** 27:6,10
  30:7,10 31:8
**brickell** 7:10
**briefly** 10:23 39:18
**bring** 10:12 37:16
  71:24 97:2
**brooks** 5:5 10:17
  11:11,13 22:2 26:6
  26:17 54:25 60:6
  62:20 82:14,18
  83:17 85:21 92:13
  93:7,10,14 96:24
  97:7,9
**brought** 96:15
**buy** 20:4 63:3
**buyers** 16:24

**c**

**c** 23:23,23 105:6
**calendar** 45:9 50:6
  50:12 57:20 62:4,5
  81:11,14 82:2 83:8
**california** 5:21
**call** 42:13,14 47:19
  48:2,4,4 50:21
  60:20,23 61:18,21
  62:1
**calls** 22:10 31:9
  82:9
**capabilities** 91:19
  95:19
**capability** 91:11
  92:23 94:17
**capacity** 11:3,21
  12:3 28:17 35:2

53:19 54:10 76:22
93:21
**capital**  1:9,13 2:10
2:18 6:16 8:6 12:10
**caption**  107:4
**carolyn**  1:17
107:18
**case**  1:4 2:14 12:1
13:2 14:12,13
22:20 40:25 105:8
105:8,20
**cash**  64:23 97:17
**cavender**  3:7 58:6
78:18
**ccr**  1:17,17 107:18
**cedar**  33:8,12,12
33:20 35:13 103:22
**centered**  66:6
**cents**  67:18,19
85:14
**century**  5:20
**certain**  21:25
**certificate**  107:1
**certified**  105:9,23
**certify**  107:4,7
109:2
**chain**  43:19 66:22
**chance**  77:22
**change**  97:18
109:11,13,14,16,17
109:19,20,22,23,25
110:1,3,4,6,7,9,10
110:12,13,15,16,18
**changes**  89:6
105:23 108:7 109:4
109:5,7
**chapter**  1:5 11:25
13:2
**charts**  49:4
**check**  30:10 42:10
42:14 62:3,5 79:4

**coming**  48:15
**commented**  89:10
89:12
**commission**  110:25
**commitment**  91:15
92:4 94:2,12
107:13
**committee**  5:13
14:20 15:10,13
16:22,23 17:18,18
30:9 67:1,1,3,3,8,8
85:10,13,19 86:2
**committees**  37:23
84:4 104:5
**common**  63:2
**communicated**
25:3
**communicating**
24:17
**communication**
38:12 101:16
**communications**
25:10 78:23 101:23
**companies**  31:22
34:23 91:11
**company**  14:17
15:18,19 16:10,17
17:7 19:7 20:4,5
21:24 22:9,14,22
27:15 29:18 31:2
31:17,18,23 32:21
32:24 33:4,9 35:3
42:4 43:8 46:20
47:4 63:2,3 68:4
70:1 71:22,23 72:3
75:18,21 76:7
79:23 87:7 88:7
91:16 92:3 93:6
103:12
**compensation**
105:14 107:11

**competing**  76:10
**complete**  105:10,22
**completed**  108:18
**compliance**  105:4
105:13 107:10
**component**  34:18
**components**  75:5
85:15
**comport**  37:25
**concern**  36:20
**concerned**  76:9
**concerning**  69:25
81:9
**concerns**  91:13,18
**conclude**  35:2
95:22
**concluded**  95:21
104:20
**conduct**  48:23 49:9
51:1
**conducted**  19:13
**conducting**  46:11
102:10
**confer**  8:20 63:4
78:13
**conference**  50:20
**conferring**  35:25
**confidential**  17:25
**confirm**  38:9
**confused**  82:16
**conjunction**  14:19
16:21
**connect**  59:25
**connection**  11:25
15:8 17:6
**consider**  36:24
37:1
**consideration**
97:12
**consistently**  23:16
24:23,25

---

79:20 81:11,14
82:2 83:2,7
**chicago**  51:21
53:11 54:22 59:14
59:14 71:9
**chilled**  40:23
**cim**  17:25
**circle**  108:20
**circuited**  92:18
**circulate**  97:3
**city**  59:14
**civil**  109:7
**clarification**  79:12
**clarify**  56:19 93:2
**clean**  15:15
**clear**  12:24 14:22
28:9 36:16,18,22
48:20 82:15
**client**  14:20 40:22
93:12,15 101:11,14
**close**  92:2 93:4 99:2
**closing**  97:13,21
98:18,19,23
**code**  105:13 107:10
**collar**  80:16 81:2
**collectively**  12:22
**colloquies**  105:22
107:5
**combination**  9:4
51:9
**combine**  35:18 36:7
37:24
**combined**  80:11
81:20 82:9,25
83:12
**come**  16:12 49:14
64:5,12 71:21
72:10 74:15 77:7
99:22 104:3
**comes**  8:23 67:17

**consultation** 104:4
**contact** 15:23
16:16,20 21:4
24:24,25 25:8
31:12 39:22,23
73:22
**contacted** 18:8
24:11,11 31:11
105:17
**contacts** 41:23 42:3
**contained** 86:8
96:3
**containing** 101:18
101:25
**contingency** 34:18
34:19
**continue** 9:25
**continued** 3:2 6:2
7:2 27:25
**contract** 105:13
107:11
**contracts** 105:8
**contributed** 29:21
**controls** 62:9
**conversation** 62:23
69:8,10 72:10 77:6
**conversations**
27:25 40:2 70:3,18
77:25 78:3,6
**cooperation** 66:25
**copies** 97:3 108:13
**copy** 11:11 26:6
42:20 62:17 68:16
84:3,10,13 85:9
96:13 101:3
**corporate** 2:16
10:8
**correct** 8:24 14:8
16:14 18:24 19:1
21:1 23:2,9,13 25:5
47:24 48:12 52:5

55:9 65:11 66:16
69:17,20 71:12
73:6,10,18 80:8,12
88:4,24 89:21,23
90:14 92:7 96:12
99:7,25 105:22
107:6
**corrections** 9:15
108:7 109:9
**correctly** 34:17
63:20
**correspondence**
22:11 24:19 25:24
**counsel** 5:1 6:1 7:1
7:18 8:18,20 35:23
35:25 37:4,16 63:4
63:6 64:9,9,9 66:19
66:19,20 68:13
77:24 78:12,13
90:1,22,22,24,24
95:25 101:1 105:2
**county** 107:2
**couple** 8:16 39:25
45:3 59:8,9 92:8
**course** 12:6 15:1
**court** 1:1 7:16,18
10:5,15 14:9 23:5
34:14 36:4 41:7
68:25 80:25 96:17
105:6,23 107:13
108:16
**court's** 10:16
**cover** 9:15
**create** 37:3
**created** 29:3
**creditor's** 14:20
15:11 16:22 17:18
67:1,3,8
**creditors** 72:24
**criteria** 30:22

**current** 25:25
37:17 38:14 46:22
97:19,20,21 98:4,5
98:16
**currently** 11:2,24
38:12 41:5 62:9
**cutted** 92:18

## d

**d** 8:13 23:22 28:14
**daily** 24:19
**daoping** 16:2,4,12
45:17 50:18 62:8
88:23
**daoping's** 46:19
**data** 18:1,25 20:10
40:19 49:2,6
**date** 14:6 30:21
42:10,11 43:10,10
43:11 44:4,5,17
45:4 47:23 57:18
57:23 68:16 74:7
80:18 81:3,13
82:23 97:13 98:18
98:19,23 108:3
**dated** 28:19 42:21
42:25 43:12 58:5
59:3 60:11 87:22
**dates** 42:14 50:15
50:21 82:8 83:3
**day** 107:15 110:21
**days** 98:19
**debtor** 14:20 15:13
15:19 16:22 21:8
67:5 85:9 86:7
101:20 102:11
**debtors** 1:6 5:3
10:17 31:14 102:1
**december** 41:15,19
42:8,22 43:12,16
43:17 101:17,23
102:19,22,25 103:4

103:7
**defined** 14:15
40:25 65:8,9 98:5
**defining** 16:2
**definitely** 58:25
**demand** 79:5
100:25 101:5
**deponent** 108:2,6,8
108:10,16
**deponent's** 108:6
110:20
**deposit** 97:24
**deposition** 1:8 2:13
2:15 8:14 10:10
32:18 36:18 37:11
38:6 92:15 93:11
102:14 104:20
108:6 109:8
**describe** 14:11
21:17 46:16 66:4
**described** 19:24
47:13 70:9 99:24
**description** 2:1,3
3:1,4
**desire** 109:7
**determine** 29:3
**determined** 34:20
105:14
**developed** 16:23
**difference** 13:17
97:20
**different** 55:20
59:9 103:20
**diligence** 18:11
19:1,13 20:25
41:18 42:8,11 46:5
46:8,11,12 48:21
48:22 92:10 95:7
**diligent** 19:11
**direct** 31:20 41:14
105:13 107:11

[directed - example] Page 116

| | | | |
|---|---|---|---|
| **directed** 84:2 | **discussions** 19:6 | 43:19 45:3 47:22 | **entered** 38:6 109:8 |
| **directing** 26:22 | 33:23 34:2 46:4 | 58:5,6,10,21 59:3 | **entertainment** 37:7 |
| 43:5 59:7 63:10 | 65:19,23 66:1,4,5,8 | 60:11,16 61:2 | 103:24 |
| 69:6 70:11 79:21 | 66:9,20,21 67:11 | 62:15,18 63:15 | **equal** 54:11 |
| 96:22 | 69:24 70:7 77:11 | 64:3 68:19 69:1,3,7 | **equity** 5:13 12:19 |
| **direction** 14:25 | 86:17 87:11 92:17 | 71:2 74:23 78:25 | 15:10 16:22 17:18 |
| 15:2,5,6 16:10 | **disqualification** | 79:2,5,10,12 87:21 | 30:8 63:21 65:4,7 |
| 40:25 107:5 | 105:6 | 101:6,7,9 104:13 | 65:11 67:1,3,8 |
| **directly** 64:11 | **disqualify** 105:12 | 109:6,7 | 73:12 76:24 77:2 |
| 90:23,24 | 107:9 | **earlier** 27:2 66:24 | 79:15,18 80:3,10 |
| **director** 11:4 | **district** 1:1 | 69:8 91:6 | 81:8,24 82:12 83:1 |
| **directors** 15:22 | **divided** 26:3 27:21 | **early** 70:13 | 85:10,12,18 86:1,7 |
| **disclosure** 7:17 | **division** 1:2 | **east** 5:20 6:22 | 92:4 94:2,11 |
| 105:6 | **dk** 62:10,11 | **ec2018** 3:23 | **errata** 108:3,7,8,10 |
| **disclosures** 105:1,3 | **docket** 10:16 96:18 | **educational** 10:24 | 108:12,13,15,18 |
| 105:4,16 | **document** 25:13,16 | **effect** 76:17 | 109:1 |
| **discount** 105:21 | 25:22 26:9,16,24 | **efficient** 24:8 | **escrow** 97:24 99:22 |
| **discounts** 105:20 | 27:1,3,5,9,18,21 | **efficiently** 25:6 | **essentially** 72:2 |
| **discuss** 43:13 68:10 | 28:25 30:2,3,5 | **efforts** 20:3 21:7 | **established** 36:17 |
| 82:24 88:14,15 | 63:11,21 66:23 | **either** 9:7 20:10 | **establishing** 54:23 |
| 89:1 90:8 | 67:20 79:4 87:16 | 31:13 50:20 56:25 | **estate** 99:21 |
| **discussed** 37:19 | 87:19 96:17,19,21 | 61:17 66:13,19 | **estimate** 99:16 |
| 46:17,24 65:25 | 100:25 | 67:10 74:17 77:15 | **estimated** 98:4,16 |
| 67:16 75:2,3,4,7 | **documents** 2:5 30:7 | 79:5 82:8 84:3 87:1 | **et** 1:5 |
| 88:14,16 91:4 | 44:4 49:3,6 65:12 | 91:1 92:24 93:4,16 | **ethics** 105:13 |
| **discussing** 68:6 | 101:1,4 | 93:17 98:4 99:9 | 107:10 |
| 69:13,15 78:12 | **doing** 18:23 20:24 | 103:11 | **events** 50:7 66:22 |
| **discussion** 11:8 | 103:9 | **electronically** | **everybody** 14:21 |
| 16:7 18:2 21:21 | **dollars** 64:25 67:18 | 108:8 | 55:19 89:13,14 |
| 25:18 26:10,20 | 67:18 85:14 97:17 | **elements** 85:18 | **evidence** 107:6 |
| 29:10 33:9 35:23 | 97:18 | 86:1 | **exact** 29:19 30:21 |
| 36:3,11 37:4 43:2 | **double** 79:4,20 | **emerging** 47:12 | 43:10,10,11 44:4 |
| 58:1 60:9 63:6,19 | **due** 18:10 19:1,13 | **employed** 11:2,3,18 | 46:18 48:3 57:18 |
| 68:13,24 74:10 | 41:18 42:8 92:10 | 11:22 | 66:21 75:5 |
| 75:5,8,13 77:20,21 | 108:3 | **employee** 107:7 | **exactly** 33:22 54:9 |
| 77:23 80:24 85:1 | **duly** 8:7 | **employees** 57:13 | 90:21 100:3 |
| 88:19 89:12,14,19 | | **encourage** 18:10 | **examination** 4:1 |
| 90:1 91:8 95:25 | **e** | 21:5 | 8:9 9:25 12:6 |
| 97:5 100:22 102:3 | **e** 2:21,24 3:6,9,12 | **ended** 59:24 103:21 | **examined** 8:7 |
| 104:18 | 3:18,21 8:13 17:20 | **enter** 86:6 87:5 | **example** 20:19 |
| | 23:21,22,24 28:14 | | |
| | 42:20,25 43:18,18 | | |

**excuse** 86:14 95:17
**exhibit** 2:5,9,9,12
  2:15,19,21,24 3:6,9
  3:12,15,18,21 8:1,1
  8:1 10:13,14 11:9
  11:12 25:19,21
  26:13,15,23 29:15
  29:15 31:21,23
  34:24 38:11 42:20
  42:23,24 43:3,5,12
  43:15,17 47:24
  48:8 52:13 58:3,4,8
  58:24 59:3,5,7
  60:11,13 62:19
  63:8,10 64:18
  65:20 67:21 68:3
  68:17,21 69:1,4,6
  69:17,20,23,23
  72:15,23 74:3
  79:22 80:4,5,18
  81:3 82:23 84:3,15
  84:16,18 85:10
  86:8 87:4,8,8,21,24
  88:2 89:7,9,11,15
  89:16,20,22,25
  90:13 91:2,7,10
  100:25 101:2
**exhibition** 51:19,20
  51:21 54:22,24
  57:10
**exhibitions** 2:19
  3:16 5:14 11:25
  51:2 52:20 53:1,23
  54:1,17,18
**exhibits** 2:1,3 3:1,4
  53:20 105:23,23
  106:1
**exited** 32:18
**expanded** 13:19,23
**expires** 110:25

**explain** 9:8 40:3,4
  87:13 97:14
**explained** 87:19
**express** 18:11
**expression** 33:17
**expressions** 34:7
  103:20
**extension** 56:25
**extent** 10:18,20
**extra** 97:2
**extraordinary** 29:7

**f**

**face** 17:10 34:18
**facilitate** 20:3,7
  21:7 24:7 48:22
  51:4
**facilitated** 20:24
  51:7
**facility** 108:19
**fact** 19:23 33:1
  37:22 48:20 99:3
**facts** 9:11
**fair** 19:25 21:3 49:5
**fairly** 29:25
**faith** 97:24
**familiar** 52:19 53:1
  53:22,25 54:16,17
  63:11 64:16 96:2
**fashion** 54:3
**faster** 76:17
**february** 50:24
  51:24 58:5,12,13
  58:19 59:3 60:4
  71:7,15,17 73:8
  80:9 82:24
**federal** 109:6
**feldsher** 6:7 32:18
  38:6 80:21
**felt** 57:2 76:14
  77:22

**feng** 6:15 12:13
  101:18 102:2
**figure** 77:18
**file** 101:6,8 108:12
**filed** 10:4,5,15
  21:24 22:20 96:17
  108:15
**filing** 39:24 40:8
**filings** 40:22
**fill** 29:4 68:22
  108:8,8
**financial** 12:5
  13:10 30:8 31:13
  31:15,25 32:13,16
  33:2,19 35:1 48:18
  49:3 64:22 85:15
  86:12,16 90:8,9,17
  91:11,14,15,19
  92:2,10,22,23 93:4
  93:21 94:3,13,17
  95:10,18 96:2
  105:7
**financially** 107:8
**financing** 34:17,19
  35:14
**find** 45:9 64:2 69:8
  104:15
**fine** 39:2 50:22
  82:5,11,13 104:14
**finish** 15:14 23:10
  76:4
**finished** 9:13 60:15
  60:17 62:7
**firm** 105:1,16
**first** 8:7 12:10
  26:23 27:17,22,24
  43:17 45:13 49:13
  65:1,3 68:17 70:14
  71:14 73:25 79:22
**five** 39:17 98:19
  99:8

**floor** 6:10
**florida** 1:1 6:23
  7:11
**focus** 21:11 58:14
**focused** 80:20 81:4
**folder** 101:11,13
**folks** 25:25 39:5
  53:12
**follow** 19:13 98:6
  104:13
**following** 105:1,4
  109:5
**follows** 8:8 36:4
  80:25
**foregoing** 107:4
**forgot** 10:12
**form** 29:14 54:3
  109:7,9
**forms** 105:6
**formula** 97:14,16
**fort** 6:23
**forth** 10:7 65:20
**forward** 67:2
  108:12
**forwarded** 85:9,12
  85:18 86:1,3
**forwarding** 58:6
**four** 55:20,21,23,25
  56:2,3
**frame** 36:17 38:17
  42:6,18 44:15
  47:21 50:5 51:23
  52:1,4 53:4,7 57:19
  69:12 80:20 81:4,9
  82:1,21 83:5,12
**french** 22:1 23:12
**friday** 58:11,13
**ftl111767089d15**
  96:21
**fulfill** 93:22

**[full - head]**

**full** 8:11
**fulton** 107:2
**fundamental** 6:5
12:16 43:14
**fundamentals**
91:19
**funds** 99:22
**furnish** 109:10
**further** 46:21
48:21 87:5 90:8
107:7
**future** 74:21

**g**

**g** 8:13 32:23
**ga** 108:21
**gauge** 17:21
**general** 19:12 67:2
**generally** 27:21
39:18 46:19 48:25
49:2 67:6 85:3
**genesis** 77:5
**georgia** 1:16 5:10
7:16 11:1 105:4,9
107:2
**getting** 76:16
**gilbert** 41:24 42:1,4
42:20,25 45:18
59:4,18,19,20
60:20,20 61:3,17
61:18 66:12,12,15
67:11 68:7,11 71:2
72:1,12 73:15 75:9
75:10,14,24 76:5
77:13 78:25 79:3,6
79:7,10,12,17 87:1
91:1
**gio** 55:20 56:4
59:18,20,20 71:3
71:10,13 72:2,12
75:9,10,13 77:12
77:15,17 78:25

79:3,6,7,14,17
**giovanni** 53:13,19
69:2 71:11 73:17
74:13 75:24 76:5
**give** 20:19 28:20
77:22
**given** 16:9,10 40:16
40:24,24 90:16
107:6 109:8
**giving** 44:5
**glade** 1:10 2:24 3:6
3:10,12,19 8:5,13
10:8 42:21,25 58:6
59:4 60:12 69:2
92:20 94:7 108:2
**glass000162** 2:23
**glass000165-66**
2:25
**glass000167** 3:14
**glass000184-192**
3:17
**glass000214** 3:8
**glass000234-235**
3:11
**glass000408-419**
3:20
**glassratner** 1:9,13
2:10,17 7:4 8:6,19
10:9 11:3,16 13:3
14:12,16 21:9,13
22:13 23:15,17
24:1,11 25:16
29:23 30:11 32:10
35:16,20 36:5,10
36:15 38:12 41:5
49:22 51:4,7 55:10
55:16 57:6
**glassratner's** 10:19
13:2,18 21:4,10
31:24

**global** 6:5 12:18
**go** 8:16 12:8 16:19
29:6 43:16 45:7
84:23 99:8 100:20
100:21
**going** 8:22 9:2,4,9
10:17 12:7,8 20:9
25:13 28:3 29:1
30:22 40:6 48:21
48:23 54:25 59:10
64:3,24 72:5 75:13
88:21 92:13 93:7
97:14
**good** 17:12 78:21
97:24 98:13
**gotten** 80:10
**gottfried** 5:18
**governance** 68:3
**grant** 11:22 18:25
**greater** 99:20
**greenberg** 6:20
**greetings** 108:5
**grossman** 3:22 6:18
87:22
**ground** 8:16
**group** 1:9,13 2:11
2:18 8:6 12:20,23
35:6 38:15 39:14
55:7 56:5,15,23
57:9,13 59:18
63:21 65:4,6,11,16
70:15 73:13,13
74:13 77:2,3,16,16
79:14,15,18,24
80:3,9,10 81:8,8,20
81:24 82:9,10,12
82:25 83:1,1,12
86:7 87:6 89:1,24
90:4,10,16 94:18
**groups** 56:2 76:7
77:1 78:14

**guess** 32:2 103:14
**gurfein** 4:5 5:16
8:3,10 9:1 10:11,22
11:6,10,15 16:6,8
18:3 21:20,22 22:4
22:12 23:7 25:20
26:8,12,19,21 29:1
29:9,11 32:6,20
34:21 35:24 36:12
37:5,21 38:10 41:2
41:4 42:19,24 43:4
55:3,5 58:2,9 59:2
59:6 60:10,14
61:25 62:21,22
63:5,9,18 64:1
68:14,25 69:5 74:6
74:11 81:6 82:17
82:20 83:9 84:1,9
84:25 85:6,23
87:20 88:1 90:3
91:9 92:16,19
93:12,15,19 94:21
96:1 97:2,10
100:20,23 102:6
103:17 104:7,16
**guy** 53:11
**guys** 38:24 40:14

**h**

**haiping** 6:16 12:13
**half** 97:17,17
**happen** 21:14
**happened** 22:22,25
57:18 59:24
**happenings** 54:6
**head** 13:7,8,21
14:10 20:17 21:1
21:16 28:22 30:6
33:5 34:1 49:7
55:17 57:4,17 63:1
70:10 74:1 90:15
91:20 99:14 102:4

104:3
**hear** 101:12
**held** 43:7 45:1,10
45:21,25 58:15
59:11
**help** 43:6 51:4
58:14
**helps** 59:11
**henshall** 16:4,13
50:18 88:23
**highlighted** 98:13
**hk** 6:16 12:11
**hmm** 63:12
**hoc** 63:21 65:4,6,11
65:16 73:12 77:2
77:16,16 79:15,18
80:2,10 81:8 82:12
83:1 86:7 89:24
90:4,10,16
**hold** 22:15 35:22
**holders** 5:14 63:22
65:4,7 73:12 76:24
**holdings** 6:4,17
**homer** 7:6 8:24
10:3 22:7 29:6 32:2
37:18 61:22 62:19
74:9 83:6,15,20,23
84:6,23 85:4 93:13
93:16 94:19 103:14
104:12 108:1
**honestly** 86:4
**hope** 19:24 99:2,3
**horse** 12:23 38:14
39:5,14 55:7 56:5
56:14,23 57:9,13
59:17 69:9,25
70:15 79:24 87:6
90:11 95:23
**hotel** 51:19 55:8
57:6

**hour** 56:8,9,10
**hours** 45:20,22,23
45:24
**huh** 17:19 35:7
43:20 50:19 53:16

**i**

**idea** 77:1 78:21
102:8
**ideas** 46:19
**identified** 17:5
36:20
**identify** 24:20
25:17 27:11 101:8
**identifying** 16:19
**ilyse** 7:6 108:1
**impacts** 107:13
**impair** 9:21
**impartial** 107:13
**impartiality** 105:12
107:10
**inaudible** 44:11
52:13 100:6
**include** 13:19,23
48:25 65:6
**including** 32:9
**income** 20:22,23
**increase** 36:25 99:5
**index** 4:1
**indicate** 8:21 28:1
39:1 88:22
**indicated** 28:3,16
40:9 86:10
**indication** 28:21
40:17
**information** 2:6
17:25 19:9 20:11
20:11 29:17,22
30:13 32:16 33:2,6
33:19 45:2 46:21
50:15 66:7 73:23

**informative** 60:21
**initial** 25:7 46:4,5,5
46:7,11,12 47:12
**initiate** 16:16 21:4
**input** 15:2 55:22
89:6
**inquiries** 18:14
20:15 21:6
**inspection** 2:7
**intent** 40:17
**intention** 41:10
75:19,22,24 76:5
**interest** 17:7,21
18:6,11 33:17 34:7
103:20 105:7,11
107:9
**interested** 28:17
39:25 107:8
**interface** 41:17
**interfaced** 42:5
**interim** 104:14
**interjecting** 8:22
**internal** 27:15
**interrupting** 80:23
**introduced** 71:18
71:19
**introducing** 74:12
74:19
**introduction** 73:21
74:22 75:1 76:1
77:6
**investment** 13:5,13
13:16
**investors** 62:10,11
**involved** 22:9,10,22
23:1,8,9,11,13 26:4
27:22 28:1 32:21
37:20 38:2 88:18
**involving** 81:19
**items** 46:23 47:6,9
47:12 48:14

**iterative** 75:13
77:10 78:24

**j**

**j** 1:17 5:16 107:18
**jacksonville** 1:2
**january** 41:19 42:9
43:1 47:23,25
50:23 51:24 60:11
69:16 70:13 72:14
72:17 73:2,3,5 79:8
80:3,17 81:3 82:22
**jeffrey** 58:6
**jenn** 26:18
**jennifer** 6:7
**jerry** 16:3,4,12
50:17 88:22
**jessica** 16:2,5,12
45:17,18 50:18
53:8 88:23
**jihe** 6:15 12:13
**job** 21:17
**john** 33:13
**join** 10:18 35:21
36:10,14 37:9
**joined** 53:13 70:25
**joint** 36:15 75:20
76:7 81:7 102:9
**jointly** 74:16
**joslyn** 33:13
**july** 33:24 34:12
39:9
**jump** 34:25 35:10
**june** 21:24 22:6,14
22:15,16 23:11
39:11 96:18 101:17
101:24

**k**

**keep** 24:16 25:9
**kept** 16:3

**key** 71:23 85:17,25
**keyed** 54:15
**kind** 11:11 48:19
  54:10
**know** 9:7,18 10:1
  16:25 24:7 26:8
  27:12,13 29:16
  31:5 32:3 33:15,23
  35:13 37:16 38:8
  42:10,11 43:10,23
  44:4,6,9,11,14,24
  44:25 45:1 46:21
  46:25 47:7,15 48:2
  48:4,18,20 50:7,10
  51:7 52:6 53:13,17
  53:18,19,22 54:3,7
  54:11,17 55:4,21
  56:13 57:8,23,24
  59:20,22 60:15,22
  61:23,23,24 62:3,6
  62:11 64:4,7,8
  66:18 70:5,24 71:1
  71:10,13,16,18
  72:12 73:25 74:4
  74:20 77:12 78:2,9
  78:11 79:1 83:17
  84:6,7 85:22 86:4,5
  87:3 89:9 98:9,14
  103:21,23 104:2
**knowing** 83:3
  85:24
**known** 21:25 61:7
  88:21

**l**

**l** 8:13 23:24 32:23
**l.l.c.** 12:18
**labeled** 62:9
**lacking** 20:12
**land** 59:13
**landau** 5:18

**landlord** 55:8
  56:22 57:5
**landlords** 57:9
**lange** 6:15 12:13
**larger** 27:4
**las** 6:22 51:19
  52:15 53:11
**lasted** 64:20
**late** 39:8
**lauderdale** 6:23
**law** 5:6,17 6:8,19
  7:7 105:4
**lead** 19:24
**leader** 23:25
**leading** 19:25
  20:25
**lease** 56:25,25
**leasing** 56:24
**leave** 10:13 26:19
  29:1 38:25 45:6
  50:13 62:6 68:21
  82:4,8
**led** 62:23 77:6
**left** 74:6
**legal** 49:3 105:9,17
**lenders** 12:13,15,20
  54:9
**lengths** 29:7
**letters** 92:4 94:2,12
**li** 2:21,25 3:9 41:24
  42:1,4,21,25 45:18
  59:4 60:20 66:15
  67:11 73:15 75:24
  76:6 79:6,7 91:1
**limit** 10:7
**limited** 6:17 12:11
**limiting** 38:11
  78:24 101:1
**line** 109:11,14,17
  109:20,23 110:1,4
  110:7,10,13,16

**list** 2:20 16:23,25
  24:5,22 25:23
  30:23,25 31:2 32:4
  35:11,18 36:7
  72:24 91:5 104:12
**listed** 10:19 31:23
  34:23
**little** 23:23
**live** 51:21 52:15
  54:22
**llc** 1:9,13 2:11,18
  6:4,5,17 8:6 12:17
**llp** 5:7,18 7:8
**local** 52:24,25
  53:10,11,12
**locations** 50:21
**long** 11:16 45:19
  56:7 64:20 70:24
**longer** 40:11
**look** 17:9 18:10
  26:2 28:20 48:1
  50:6,11 57:20
  61:15 62:12 69:14
  69:15 89:9 98:17
  98:22 99:1 104:2
**looking** 29:14 31:1
  34:23 43:24 63:3
  96:24
**looks** 25:24 43:18
  63:22
**loongs** 32:23
**los** 5:21
**lot** 16:3 22:9,10,10
**low** 34:16,18
**luxor** 51:19 55:8,21
  56:6,15 57:6

**m**

**m** 6:18 7:6 23:21,23
**mail** 2:21,24 3:6,9
  3:12,18,21 17:20
  42:20,25 43:18,18

43:19 47:22 58:5
  58:10,21 59:3
  60:11,16 61:2
  62:15,18 64:3
  68:19 69:1,3,7 71:2
  74:23 78:25 87:21
  104:13 108:10
**mails** 45:3 58:6
  63:15 79:2,5,10,12
  101:6,7,9
**maintaining**
  105:12 107:9
**majority** 68:5
**making** 21:7 31:16
  31:18 33:10 102:8
  105:12 109:8,9
**managed** 49:10
**management** 6:6
  12:18 15:21,24
  16:2 17:17 42:12
  42:12,13,14,15
  43:7,14,21 44:1,2
  44:18,22 46:9
  47:17 50:16,20
  53:10 55:20 56:4
  57:6 58:15 88:17
  88:18,21 89:1
**manager** 52:24,25
  53:10
**managing** 11:4
**manner** 20:17,21
  24:8
**manually** 108:8
**march** 69:1,19
  70:14 79:3,8 80:5,7
  87:22 88:25
**marine** 35:10
**maritime** 35:9 39:6
  39:13
**mark** 10:12 42:20
  58:3,4 59:3 60:11

69:1 87:12,21

**marked** 8:2 11:9,12
25:19 26:14 42:23
43:3 58:8 59:5
60:13 63:8 69:4
87:16,17,24 88:2
100:24

**market** 14:16

**marketing** 14:23
15:1

**marking** 88:6

**markup** 89:11

**marshall** 1:10 8:5
8:13 37:22 42:21
42:25 58:3,5 59:4
60:12 69:2 97:7
108:2

**master's** 10:25

**matter** 46:2 105:11
105:18 107:9

**matters** 10:19

**matthew** 5:5

**mccaleb** 2:22 23:23
42:21 51:11

**mean** 20:7 26:5
28:16 30:20 32:4
32:10 35:10,13
38:1 39:22,23 43:9
46:7 47:9 55:18,24
55:25 64:7,23 65:8
65:9 71:25 75:3,16
76:18,22 77:10
89:12 100:8

**meaning** 28:7
29:19

**means** 26:4 78:9

**meant** 68:1

**mediate** 70:21

**mediation** 60:2,3,4
70:21,23,24 80:9
80:13,18 81:4

82:23

**medications** 9:21

**meet** 57:5

**meeting** 42:13
43:13,21 44:1,3,18
44:19,20,21,24
45:5,9,11,12,16,19
45:21,25 46:3,10
46:12,13 47:1,3,12
47:18,20,24 48:5,7
48:8,15 55:11,15
55:19 56:7,11
58:11,15,18,23
59:11,14,17,23,24
61:4 71:3,5,8 81:17
81:19

**meetings** 43:7
44:23 45:1 47:16
50:17,20 59:9 81:7
81:25 82:9,24 83:4
83:12,13

**member** 24:23,24
25:10

**members** 23:19
63:17

**memorandum**
17:25

**memory** 9:10 14:5
34:22 46:24

**mention** 8:23

**mentioned** 24:9

**mentioning** 12:7

**met** 49:19 55:7
57:9,13 71:13

**miami** 7:11

**mid** 42:8,9

**middle** 1:1 28:5

**midway** 32:21

**million** 35:14 97:17
97:18 99:8,20,23
99:25 103:20

**mind** 33:15 34:22

**minority** 68:9

**minus** 97:24

**minute** 59:8 100:21

**missing** 52:17
85:17,25 86:11,12

**modified** 100:25

**moment** 28:9

**money** 99:21

**month** 38:22 40:11
41:16 60:6

**morning** 58:11

**motion** 21:24 22:6
23:11 96:11,13

**move** 41:2 93:8,18
94:1

**murphy** 27:6 30:8
31:8

**museum** 35:9 39:6
39:14

## n

**n** 23:21,22 32:23

**n.e.** 1:15 5:9

**name** 8:11,12 32:22
54:4

**names** 12:7 30:23

**national** 35:9 39:6

**nda** 17:22 18:16,25
19:2,8 31:4

**nda's** 19:11 25:25
31:3

**ndas** 2:20

**necessarily** 29:15

**necessary** 109:10

**need** 9:17 10:6 29:6
61:22 63:14 68:18
81:14 90:7 93:10

**needed** 35:13 72:4
72:5 90:17 95:9
104:9

**negative** 64:5 97:22

**negatively** 13:8
20:18 28:22 57:17
91:20

**negotiate** 86:9
87:18

**negotiated** 101:1

**negotiation** 96:5

**negotiations** 86:6
87:5,14

**neither** 85:8

**new** 6:12,12 45:12
45:14,15 47:18
48:6,11 58:18 59:1
59:14

**night** 51:21 52:15
54:22 60:21,23

**nodded** 13:7,21
14:10 21:1,16 30:6
33:5 34:1 49:7
55:17 57:4 63:1
70:10 74:1 90:15
99:14 102:4

**non** 19:9

**nondisclosure**
17:23,23 18:19
24:13 41:16

**notarized** 108:10

**notary** 110:24

**noted** 109:4,5

**notes** 25:25 29:18

**notice** 2:15 10:7,12
10:14 11:12

**noticed** 10:8

**noticing** 105:18

**noting** 108:7

**number** 25:14 40:3
96:21 98:9,14 99:2
99:4,16,19 102:2

**numbers** 98:2

Case 9:162-cr-62230-PMG Doc 119 Filed 06/30/18 Page 123 of 131

| o | | | |
|---|---|---|---|

**o**

**o** 32:23,23
**object** 54:25 76:20
  76:23 92:13 93:7
**objection** 10:4,5,18
  10:19 22:2,7
**objects** 2:6
**obligation** 105:12
  107:10
**obligations** 92:24
**obtaining** 19:20
**occasion** 20:9
  32:15 33:1,18
**occur** 76:3
**occurred** 44:3
  45:13 47:25 48:11
  50:5,8 102:23
**occurring** 82:1
**ocga** 105:6,7,19
  109:7
**october** 40:10
**odyssey** 35:10
**offer** 19:24 20:25
  33:10,16,19 34:13
  34:16,19,20 35:14
  47:3 72:4,5 75:18
  75:20 76:7,21
  80:11 101:19 102:1
  103:12
**offers** 19:21 20:4
  21:6,8 31:17,18
  80:2 92:9,11 93:24
**office** 46:1
**officer** 107:13
**offices** 108:3,10
**official** 5:13
**oh** 13:16 22:15,16
  38:25 45:23 98:13
  102:19
**okay** 8:16 9:2,24
  13:1,14,18 14:11

18:13,23 19:3 20:2
20:14 21:3,10,13
21:16 24:9,15 25:9
25:13 27:1 29:1,6,8
29:12 30:6 31:10
35:12 36:21,23
37:12 38:21 39:7
39:16 41:2 42:16
44:8 46:2,16 49:9
50:9,13,25 51:11
51:15,18 52:3,16
54:21 55:3,6,15,17
56:17 57:8,16,25
58:17,21 60:1,18
60:25 62:13,17
64:16 66:17 67:10
69:22 71:13 79:16
80:14,19 83:15,18
83:24 84:2 85:20
95:24 97:9 98:1
99:11 100:10,16,17
101:15 102:7 103:8
103:18 104:16
**olas** 6:22
**once** 23:6,16 34:15
  108:10
**ones** 103:1 104:3
**ongoing** 69:24
**opinion** 32:10
**opportunity** 9:14
**order** 21:7 24:7
  25:5 94:2
**ordering** 106:2
  108:13
**organizational**
  49:4
**original** 101:3
  108:13,15
**orlando** 51:20
  52:14 53:9

**outcome** 107:8
**outside** 10:20 38:14
  92:14 93:11 102:12
  102:17
**outstanding** 61:9
  61:13 62:15,24
**owe** 99:21
**ownership** 61:15
**owns** 63:2 71:22

**p**

**p** 28:14
**p.a.** 6:20
**p.m.** 1:12 26:11,11
  63:7,7 104:20
**pacbridge** 6:16
  12:10,12,21,21
  54:4 73:13 74:13
  76:10 77:2,15
  79:14,19 80:9 81:8
  81:22 82:10 83:1
  91:24 92:8,10,24
  93:4 94:18 101:18
  102:2
**pacbridge's** 92:1
  95:18
**page** 2:3 3:4 4:3
  26:14,15 43:17
  67:20 68:3 69:3
  76:16 87:22 96:20
  96:23 97:1,7 99:11
  100:4 109:11,14,17
  109:20,23 110:1,4
  110:7,10,13,16
**pages** 26:15 28:18
  29:3 109:9
**paid** 97:12
**paper** 100:18
**paragraph** 62:7
  67:21 96:22 97:11
**paragraphs** 99:25

**parameters** 37:11
**park** 5:20 108:20
**parse** 24:3
**part** 14:17,18 16:15
  25:15 27:18,24
  31:13 32:14 46:6
  90:11 96:11
**participate** 40:17
  88:10 96:5
**participated** 14:21
  14:23
**participating** 40:1
**particularly** 19:8
  19:11
**parties** 12:21,22
  15:3,7 17:3,4 19:12
  24:6 28:6,8 37:19
  38:2,2 39:25 40:3
  40:12,16,23 41:13
  46:13 55:20 67:4
  70:14 77:11 105:20
  106:2 107:13
  108:13
**partner** 77:13,14
  77:16,17
**partnering** 79:13
  79:15,18
**partners** 6:16
  12:11
**parts** 27:22
**party** 28:1,2 93:14
  105:13,21 107:7,11
**pass** 28:3
**passed** 28:14
**password** 106:1,2
**pay** 99:6
**payment** 97:17
**pdf** 108:7
**peachtree** 1:15 5:9
**people** 20:9 24:15
  24:21 55:19,21

56:1
**percent** 72:1,2,3
**performance** 9:17
**performed** 95:2,4,8
**period** 28:21 30:12
 41:14,18 42:8
 50:23 70:6,8,13
 79:7,10 80:22
 101:16,23 102:9
 104:10
**permit** 2:7
**person** 25:7 50:21
 74:23 78:7 81:7
**perspective** 63:16
 64:22,25
**pertain** 42:7
**peter** 5:16 26:7
 55:2 98:7
**phone** 17:20
**phrase** 67:21,24
**physically** 88:11
**pieces** 50:14
**pinpointing** 44:16
**place** 41:5 70:19
 105:19
**plan** 3:15 41:6,9,11
 41:12
**planned** 13:24,25
 14:6,15 66:25
**played** 14:12
**please** 8:4 9:7
 15:14 23:10 36:2
 36:23 63:13 69:8
 76:4 108:10,18
 109:9,10
**plus** 97:18,19
**pmg** 1:4
**point** 25:7 30:15
 48:2 78:18 80:7
 99:8

**positions** 76:15,15
 76:19
**positive** 97:22
 99:19
**post** 41:6
**potential** 16:16,20
 16:24 17:3,4,14
 18:5 19:6,14 20:3
 21:5,5 24:10,17,18
 24:22 25:11 31:16
 32:16 34:24 35:17
 36:6,14 38:13
 39:13 43:13 56:17
 57:5 63:23 67:13
 91:5 101:19,25
 102:7
**potentially** 31:17
 36:25 40:1 75:17
 76:10 78:8,10
**practice** 67:2 85:2
**predict** 74:21
**preface** 85:7
**premier** 2:19 3:15
 5:14 6:4,17 11:24
 13:2,3,3 15:19 19:7
 49:11 51:2 57:13
**premises** 2:7
**present** 7:19 58:17
**presented** 47:4
 105:1
**pretty** 34:16 59:21
**previously** 24:9
 26:13
**price** 36:25 99:4
 100:2
**primarily** 49:5
**primary** 15:23
 41:23 42:3
**print** 108:8
**prior** 79:3 92:9,10

**probably** 39:17
 59:15 98:6
**problem** 45:8,11
**procedure** 39:24
 109:7
**procedures** 41:7
**proceed** 9:25 36:23
 41:6
**proceeding** 2:8,14
 7:19 105:1,21
 106:1 107:6,13
**proceedings** 105:10
**process** 14:23 18:6
 21:8,14,15 22:6
 23:16 24:4,8 30:16
 32:22 38:13 40:4,5
 69:13 77:10 78:24
**produce** 2:5 27:16
 58:23 62:17
**produced** 27:18
 28:18 30:5,7 58:22
 101:2,16,22 105:22
**production** 25:16
 27:18 64:2 79:4
 108:19
**professional**
 105:13 107:10
**prohibited** 105:19
**prohibitions** 105:8
**properties** 49:10
**proportional** 10:21
**proposal** 47:3
 57:21 65:1,20
 79:22 86:8 87:6
**proposals** 19:16
 20:4 21:6,7 80:2
 92:25
**proposed** 48:7
**protected** 106:1,2
**protections** 68:5,10

**prove** 92:5 95:9
**proven** 35:9
**provide** 11:11
 17:16,24 20:23
 27:5 50:14 66:6
 90:17,19 105:18
**provided** 15:6
 25:15 30:13 31:8
 33:6,11,16 34:7
 40:19 44:5 45:2
 63:21 71:1 73:22
 73:25 80:2 90:21
 90:22 101:6,6
**providing** 19:9
 46:21 48:17
**provisions** 89:10
**public** 19:7,9
 110:24
**purchase** 36:25
 69:14,25 75:18
 87:7 96:3,6,7,16,20
 99:4 100:2 101:19
 102:1
**purchaser** 69:9
 90:11 99:20
**purchasing** 17:7
**purpose** 18:24
 19:23 27:13 46:10
 74:12,18 82:14
**purposes** 19:2,4
 36:18
**pursuant** 7:15
 109:6
**pursuing** 40:23
**put** 43:21 44:1
 47:22 63:16 64:24
 75:17 77:1 100:18
 101:11,13 102:8,24
**putting** 55:22
 75:19,24 76:5,9
 78:14

| q |
|---|
| **question** 9:6 15:4 15:15,16,16,17 20:7 23:10 28:13 28:13 30:24 32:12 35:1,8 36:1,5,9,13 37:17 44:10,12 54:20 61:14,16 75:23 76:4 81:1 82:15 83:7,16,19 83:22 85:8,21,24 90:2,5 92:20 93:1 93:17 94:7,16,23 95:1,5,5 |
| **questioned** 31:24 |
| **questioning** 10:6 17:9 |
| **questions** 9:3,5,12 10:20 18:14 20:10 42:7 91:23 92:23 93:3,21 94:4,9,17 95:11,17 104:8,11 105:22 107:5 |
| **quick** 63:4 |

| r |
|---|
| **r** 5:5 23:21 |
| **reach** 17:20 41:13 56:22 |
| **reached** 17:2,5,13 40:3 56:11,14 |
| **reaching** 24:7 37:22 |
| **read** 35:25 36:1 59:8 63:13 65:12 80:21,25 93:17 100:8 108:6 109:2 |
| **reading** 59:10 60:16,17 96:16 100:16 |

**real** 63:4
**realize** 32:12
**really** 14:14 54:12 54:14 64:22
**reason** 9:18,24 86:2 109:13,16,19,22,25 110:3,6,9,12,15,18
**reasons** 109:8
**recall** 13:22 24:12 30:10,13 32:24 33:22 34:17 37:6 37:22 38:3 39:12 39:16 46:18 47:8 47:10,11 48:3,5,14 48:15 49:19 50:1,2 59:11 62:25 63:20 65:24 66:11,21 67:9 68:6 70:16 72:16 74:24 75:4 77:4,8 81:16 82:3 83:4,15 84:7,8,12 84:13,19,20 89:3,5 89:8,18,19 90:18 90:21 103:2,9,15
**recalling** 34:25
**recalls** 46:24
**receipt** 82:22
**receive** 35:17 36:5
**received** 18:9 36:14 37:14 65:4 67:4 68:16,20 69:16,19 69:22,23 72:14 74:2,4,7 79:23,23 80:3,4,17 81:2 87:4 92:6
**receives** 105:21
**receiving** 17:22 88:25
**recess** 26:11 63:7
**recognize** 25:21 31:23

**recollection** 9:10 9:11 34:10 37:25 39:11 40:10 43:6 43:25 44:13 45:4 70:18 83:10 91:1
**record** 8:12 10:3 11:6,8,10 15:15 16:6,7 18:2 21:20 21:21,23 25:18 26:9,10,13,20 29:9 29:10,12 35:23,24 36:3,11 37:4 43:2 45:7 50:14 58:1 60:9 62:6 63:5,6,18 63:19 68:13,21,24 74:7,10 80:24 82:6 84:23 85:1 87:1 90:1 91:8 95:25 97:4,5 100:21,22 100:24 102:3 104:18 105:10,12 105:22 107:6
**records** 68:15,20 70:17
**reduced** 107:5
**reference** 52:4 60:22 61:5 62:2 68:4,9 80:7 101:19 101:25
**referenced** 58:24 59:12 62:15
**references** 58:21 59:9
**referred** 12:23 13:20 27:2 77:9 88:3
**referring** 12:11,14 12:16,17,19,20 14:19 40:16 44:24 47:21 48:9 50:16 56:20,21 62:14

**69:11** 71:4,11 72:22 96:7,19
**refers** 67:24 97:11
**reflect** 11:10 35:24 68:16
**reflected** 89:7,11 89:22
**reflects** 63:5 68:20
**refresh** 43:6 70:17
**refreshed** 44:12 45:4
**refreshes** 43:25
**regarding** 10:5 19:6 25:24 35:8 46:4,22 63:23
**regular** 29:25 30:5 30:14 31:5
**regularly** 15:24 30:11
**regulations** 7:16 105:5
**related** 10:19
**relating** 21:25 23:12 56:24 106:1
**relationship** 105:11 107:9
**relative** 107:7
**relevant** 55:1
**remember** 14:3 45:13 50:11 57:16 57:18 60:7 84:5
**reminded** 10:11
**renewal** 56:25
**rental** 56:25
**reorganized** 68:4
**repeat** 93:18
**rephrase** 9:8
**report** 15:8,18 105:11
**reported** 15:10,21 15:24

**reporter** 7:18 10:13 23:5 34:14 36:4 42:19 58:2,4 59:2 60:10 68:25 80:25 87:20 105:1 105:3,7,9,23,24
**reporting** 7:17 29:14 105:6,18
**reports** 29:17
**repository** 106:2
**represent** 25:15 28:23 85:16
**representation** 24:1
**representations** 105:4
**representative** 2:16 10:9 54:2,4,8 56:5 59:19 71:23 76:6
**representatives** 55:7
**representing** 72:2
**request** 32:15 37:6 37:15 38:4 62:24 92:14
**requested** 20:22 82:7 108:6
**requests** 35:17,21 36:6,10,14
**require** 92:4
**required** 94:6,11
**requisite** 67:22
**research** 68:18
**reserved** 104:19
**respect** 9:12 15:19 16:11 19:14 29:18 32:17 33:8,9,19 38:13 49:13 54:21 56:23 65:20 67:4 79:11,13 87:6 89:15,20,25

**respond** 20:14,16 25:5 36:15 89:24
**responded** 90:4
**responding** 28:8
**response** 87:13 89:4 90:7,12,16,19 90:23
**responses** 24:18
**responsibility** 31:15 108:7
**responsive** 101:5
**result** 38:3,8
**retained** 13:3,9,10 23:17
**retention** 13:19,23
**returned** 108:12,15
**review** 9:14 105:2 108:7
**reviewed** 17:17
**right** 13:6 26:22 27:20 31:1 33:24 33:25 34:8 39:10 40:18,24,25 43:23 44:14,16,17 47:14 54:11 55:8 57:14 73:1 81:21 92:16 93:20 98:7,8,11 99:10 102:14,14,23 103:3,5,6,25 104:7
**rmr** 1:17 107:18
**rms** 1:5
**rmst** 3:23
**roach** 3:21 87:21
**road** 1:15
**role** 13:2 14:11,14 14:17,18 15:20 16:11,15 21:4 31:13 32:14
**rolls** 54:10
**room** 18:1,25 20:10 40:19 49:3 73:19

78:12
**round** 44:5
**rpr** 1:17
**rule** 19:12 109:6
**rules** 7:15 8:17 105:5 109:6
**run** 51:2

**s**

**s** 23:22,22 28:14,14 32:23
**sale** 12:5 13:20,23 14:12,13,23 15:1 15:20 16:11,15 18:6,11 19:14,18 19:25 21:8,14,15 21:19,25 22:6,6 23:11,16,17 24:4 31:14 32:15,22 38:13 39:24 81:9 82:25 83:13 96:11 96:13 102:10
**sales** 69:13
**sanders** 5:7 16:2,5 16:12 45:18 50:18 87:17 88:17,23 89:2
**satisfied** 101:15,22
**satisfy** 91:15 92:24
**saturday** 51:20 52:14 54:22
**saw** 27:17
**saying** 56:4 79:9 81:23 100:11
**says** 25:23 27:22 31:3 58:10,16 61:8 62:8 63:22 71:2 100:3,9
**schedule** 91:6,12
**schwartz** 3:13 42:1 42:4 45:18 60:12 60:19 66:15 67:11

91:2
**scope** 10:6,20 13:22 22:2 36:19 37:10 55:1 92:14 93:11 102:12,17
**scott** 6:18 26:18 87:22
**seal** 108:12
**search** 101:4
**second** 11:7 16:6 21:20 24:25 28:13 35:22 67:20,21 84:24
**section** 28:14 99:11 105:6
**sections** 26:3 105:7
**secured** 12:12,14 12:20 54:8
**security** 5:14
**see** 22:13 29:2 43:11 46:20 48:2 61:9 72:18 79:2,5 83:2 94:2 104:14 104:15
**seek** 33:2,18
**seen** 11:13 26:23 64:13,15
**segregate** 101:10 101:14
**sell** 14:16
**sellers** 97:12
**send** 17:22 61:12 84:3,10 108:13,18
**sending** 18:4
**sense** 50:4 71:24 98:20
**sensitive** 19:8
**sent** 27:12,14,14 64:7,10 84:13,20
**sentence** 61:8 62:8

**separate** 24:22
33:15 74:19
**separately** 74:17
**september** 13:4,11
**serve** 107:13
**services** 105:18
**serving** 102:10
**set** 10:7 46:12
55:15,18 65:20
**shareholder** 68:5
68:10
**shares** 61:9,13 62:8
62:15,24
**sheet** 3:15 25:12
30:9 31:8 63:23
65:2,3 66:2 67:7
69:9 72:15 74:2
80:4,5,17 81:3
82:22 84:11,14
88:2,6 89:1,4 94:1
98:18,24 99:1
**sheets** 67:4 80:1
85:17,25 92:9
**shook** 13:8 20:17
28:22 57:17 91:20
**short** 92:18,18
**shortened** 104:17
**shortfall** 99:13
**show** 25:13 31:11
96:15 101:2
**showed** 47:23
**showing** 25:21
**shown** 45:3 70:22
**shows** 87:17
**shrugs** 44:25 50:3
51:10 72:13 78:2
86:4
**shy** 8:22
**sign** 108:6
**signature** 104:19
107:17 108:2,16

110:20
**signed** 2:20 14:1
17:24 18:18,21
24:13 25:25 31:3,4
41:15 108:10,12,15
**similar** 26:8
**similarly** 85:17
**singerman** 7:8
**single** 26:14
**sit** 90:25 95:13,18
**site** 42:15 49:10
51:1,15 52:21
**sitting** 78:11 83:11
**six** 83:11
**slightly** 17:2
**smith** 1:17 107:18
**snl** 59:22
**snuff** 39:11
**solely** 105:14
107:11
**solicit** 18:5 19:16
21:5 41:11,12
**soliciting** 17:6
**solutions** 105:9,17
**somebody** 20:22
66:14
**soon** 88:25
**sorry** 15:14 22:16
23:2 40:11 45:23
48:13 49:20 62:7
64:6 94:22
**sort** 97:18
**sound** 13:6
**source** 29:16,19
**space** 29:2 38:25
45:6 50:13 56:24
62:6 68:21 74:6
82:4
**spaces** 57:10
**speak** 40:13

**speaking** 23:5
34:14 46:9,19 49:1
49:2
**specific** 14:14,14
44:24 83:3 105:20
**specifically** 54:21
105:5
**spelling** 8:12
**split** 24:5
**spoke** 16:1 38:1,2
39:4,4,5 67:10
78:16
**spoken** 28:2 38:19
38:22
**spreadsheet** 62:12
62:13
**spring** 14:2 30:17
**stakeholders** 67:22
**stalking** 12:23
38:14 39:5,14 55:7
56:5,14,23 57:8,12
59:17 69:9,25
70:15 79:24 87:5
90:11 95:23
**stamp** 25:14
**standing** 10:4
**start** 30:3,15 59:15
**started** 27:20 30:16
30:16 42:11
**starting** 30:15
**starts** 60:18 69:7
**state** 8:11 105:9
107:2
**stated** 86:23 107:4
**statement** 7:17
20:23,23 109:8
**statements** 48:18
49:3
**states** 1:1
**stating** 85:8

**status** 26:1 31:12
46:22
**stay** 59:15
**step** 25:6
**stephen** 87:21
**stipulations** 9:16
104:16
**stock** 19:10
**stockholders** 72:25
**street** 5:9
**strike** 16:9 24:20
29:13 35:16 41:2
47:15 48:14 49:20
50:15 58:17 65:2
70:12
**structure** 67:16
**subcontractor**
105:9,14 107:12
**subject** 46:2 99:23
100:1,3,6
**submit** 18:13 21:6
**submitted** 7:18
93:5 105:23,24
**subpoena** 2:5,9,12
3:23
**subscribed** 110:21
**subsequently** 13:18
56:13
**substance** 46:16,18
64:20,21 109:7
**substantial** 19:5
31:7
**substantive** 66:22
**successful** 19:20
**suggest** 72:7
**suggested** 73:12
**suite** 1:14 5:8,19
6:21 7:9 32:18 38:7
108:20
**summarize** 27:4

**summary** 27:8
**supply** 10:14
**support** 13:24,25
  14:6,15 66:25
**supported** 67:22
  78:21
**sure** 8:17,21 19:10
  28:11 33:13 40:13
  48:17 52:1 54:9
  55:1,24 59:16,21
  61:1 63:5 64:11
  65:15,25 73:1 74:5
  78:5 79:20 82:17
  82:18 90:23 97:16
  99:12
**swear** 8:3
**sworn** 8:7 110:21

**t**

**take** 9:18 14:25
  15:5 18:10 26:2
  45:19 59:8,8 63:13
  65:13 89:9 93:20
**taken** 8:14 107:4
**talk** 13:1 64:23
  70:14 72:8 77:18
**talked** 91:5,10
**talking** 30:25 53:3
  72:11 73:11 82:2
  82:21 91:1
**talks** 43:15
**target** 2:19 16:23
  24:5 25:23 29:18
  31:2,2 97:21 98:3,4
**targets** 31:22 34:24
  91:11
**task** 9:17
**tasks** 24:3
**team** 23:15,20
  24:16,19,21,23,24
  25:10 27:16 29:24
  51:10 77:21 88:17

88:21
**teaser** 17:16,22
  18:4,9
**telephone** 74:23
  78:1,4 82:8
**tell** 10:23 34:4,6,9
  39:18,21 44:20
  46:7 67:19 86:15
  87:11
**ten** 39:20
**term** 3:15 63:23
  65:1,3,8,9 66:2
  67:3,7 69:9 72:15
  74:2 80:1,4,5,17
  81:3 82:22 84:10
  84:14 85:17,25
  88:2,6 89:1,4 92:9
  94:1 98:5
**terms** 86:13,16
  90:8,9,17 96:3
  105:14 107:12
**test** 9:10 14:5 34:22
**testified** 8:8 66:24
  85:4
**testify** 2:12 9:12,22
**testimony** 9:4 27:2
  65:13 109:2,8
**thank** 11:6 37:18
  45:24 56:22 79:11
  83:24 97:9 104:12
**think** 10:21 13:19
  17:2 21:17 23:23
  24:14 30:4 32:22
  33:12,14 34:13,16
  34:19 35:10,14
  37:19 52:17 54:7,8
  54:16 58:20 59:21
  59:23,24 63:15,17
  64:19 65:9 70:20
  70:22 71:17 73:22
  74:8 78:18 82:7

87:18 98:4,6,19
  101:3,21 102:4,19
  103:15,16,22 104:1
  104:1
**thinking** 81:25
**third** 73:9,10
**thirds** 43:16
**thornton** 11:23
**thought** 23:4 78:21
  83:21
**three** 12:12 24:15
  24:21 26:3,15
  27:22 28:18 50:14
  52:7 54:13 55:19
  92:5
**time** 8:20 13:24
  28:7,9,11,21 29:12
  29:13 30:12 36:17
  38:17 41:15 42:6
  42:17 44:14 47:21
  49:14 50:5 51:23
  52:1,4 53:4,5,7
  55:6 57:12,19 61:3
  61:6 63:13 64:12
  68:17 69:12,22,23
  70:6,8 71:14 73:19
  77:20 79:10 80:3,4
  80:17,20,22 81:2,4
  81:9 82:1,21,22
  83:4,11 92:21 94:5
  94:10 97:21 99:19
  102:9 104:17
  105:20 108:15
**timing** 9:16 31:6
  48:3
**titanic** 1:5
**title** 27:24
**today** 8:18 9:21,25
  38:18,19 39:12
  83:11 95:13,18
  98:20

**today's** 9:25 10:9
  12:6
**told** 86:12,18
**tomorrow** 58:11,12
  98:25
**tool** 27:3
**top** 26:3 96:22
  104:3
**total** 97:11
**touch** 39:12 40:12
  76:10
**track** 24:16 25:9
**tracking** 25:12
  27:1,3,5,8 30:9
  31:7
**trading** 19:10
**transaction** 19:6
  28:4 32:17 35:2
  37:3 46:15 54:5
  63:23 67:5,13
  74:15 76:3,16,17
  76:25 77:23 81:10
  82:25 92:3 95:22
**transactions** 74:19
  93:5 95:21
**transcript** 9:14
  29:2 39:1 105:21
  107:4,6 108:7,13
  108:15 109:2
**transcripts** 105:21
  106:1
**transferred** 72:24
  97:13
**translates** 98:2
**transmittal** 64:3
**transmitted** 67:7
**traurig** 6:20
**tried** 25:2,2 101:10
  101:13
**troutman** 5:7 87:17
  88:16 89:2

**true** 105:22 107:6
**trust** 60:20
**try** 20:8
**trying** 14:2 43:21
  70:20 77:5 82:15
  84:5
**twenty** 73:8
**two** 26:14 43:16,25
  45:23 54:12 71:19
  74:13 77:1 78:14
  92:25 99:24 102:24
**types** 48:19 50:7
**typewriting** 107:5
**typical** 48:18

**u**

**uh** 17:19 35:7
  43:20 50:19 51:9
  53:16 54:2 64:5,5
  66:5 91:6 92:12
**um** 9:9 10:3 11:5
  12:10 14:14 15:16
  16:1 17:17,21 19:6
  24:6 25:23 26:2
  27:3 28:18 29:18
  31:3 33:21,23 37:2
  37:14 39:17 40:22
  40:22 41:15 46:4
  55:6 61:12 62:13
  69:10 70:20,22
  73:22 96:2 99:18
  101:2,10
**unable** 28:24
**unclear** 40:18
**undersigned** 109:2
**understand** 8:17
  9:6,9 17:11 20:6
  22:8 46:14 50:7
  54:19 63:16 72:5
  77:5 81:12 87:15
  94:12

**understanding**
  27:23 28:6,15
  65:14 67:23 71:22
  75:14 85:11 98:1
  98:15 99:16
**understood** 27:17
  28:10 95:8
**united** 1:1
**university** 11:1
**unresponsive** 28:5
  41:3
**updated** 31:5
**uploaded** 106:2
**use** 80:16 81:1
  109:9
**usual** 104:16

**v**

**v** 23:22
**vaguely** 64:19
**vegas** 51:19 52:15
  53:11
**venues** 51:22 52:2
  52:3,7
**verbatim** 105:12
**veritext** 105:9,17
  108:10,19
**viable** 37:3
**virtual** 20:9
**visit** 42:15 49:21
**visited** 51:23 52:2,4
  52:6 53:2,4,20
**visits** 49:10 51:2,5
  51:8,16 52:21
  53:15,17
**vote** 76:24

**w**

**want** 8:17,20,21,23
  9:15 14:22 28:8
  32:11 35:25 36:16
  36:18,22 93:1

  104:13
**warehouse** 49:14
  49:15
**way** 20:8 24:17
  28:20 30:12 32:8
  32:10 43:16 47:22
  57:22 74:17 90:15
  99:9
**we've** 11:12 21:17
  28:2 36:19 38:19
  104:17
**week** 27:19,19
  83:11
**weekend** 59:15
**weekly** 27:5 30:9
  31:9
**went** 30:20 49:15
**wherewithal** 31:16
  31:25 32:13 91:14
  92:2 93:4 94:3,15
  95:10
**whew** 103:13
**william** 23:22 24:6
  42:21 53:9
**witness** 8:4 13:7,8
  13:21 14:10 20:17
  21:1 28:22 29:2,8
  33:5 36:2 44:25
  49:7 50:3,14 51:10
  57:17 60:8 61:24
  70:10 72:13 78:2
  82:19 83:16,18,21
  83:24 85:2,22 86:4
  91:20 93:9 97:1,6,8
  99:14 102:4 104:15
**witnesses** 105:24
**wizard** 37:7,24
  103:24
**wondering** 28:19
**wong** 3:18 53:13,19
  53:22 54:22 69:2,7

  69:24 71:11 73:17
  74:13 75:24 76:5
  101:18 102:2
**woods** 108:20
**work** 46:14 57:2
**worked** 23:16
  67:17 88:5
**working** 11:24 12:3
  17:1 22:14 24:15
  85:9
**works** 67:19
**writing** 60:18
**written** 7:17 46:25
**wrong** 18:24 80:8
**wrote** 45:23 61:3
  88:13

**y**

**yeah** 12:25 17:11
  22:16,21 28:12
  34:9,11 45:8 48:17
  49:7 50:2 51:14
  58:16 61:6,11
  64:17 67:6 71:8,8
  71:19,19,19 73:4
  73:16 78:5 81:14
  84:19,25 97:23
  98:3,9 100:8
  101:21 102:4 104:6
  104:15
**year** 13:12
**years** 11:17
**york** 6:12,12 45:12
  45:14,15 47:18
  48:6,11 58:18 59:1
  59:14

**z**

**zhang** 6:15 12:13
  101:18 102:2
**zou** 6:16 12:13
  101:18 102:2

Case 3:16-cr-02230-PMG Doc 11-91 Filed 08/30/18 Page 180 of 131

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

# **EXHIBIT 3**

**Premier Exhibitions**
**July 1, 2018 - August 22, 2018**

| Company | Last Activity Date | Activity Type | Index | Folder | Document Title | Original File Name | Views | Status | Complete Folder Path |
|---|---|---|---|---|---|---|---|---|---|
| Cedar Bay | 08/17/2018 04:52 PM | Save | Operating Businesses | V.B. Financial Projections | 4. Notes to 2018 Budgets & Forecasts v10 | Notes to 2018 Budgets & Forecasts v10.pdf | 2 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 08/17/2018 04:51 PM | View | Operating Businesses | V.B. Financial Projections | 4. Notes to 2018 Budgets & Forecasts v10 | Notes to 2018 Budgets & Forecasts v10.pdf | 2 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 08/17/2018 04:42 PM | Save | Operating Businesses | V.B. Financial Projections | 1. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 2 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 08/17/2018 04:37 PM | View | Operating Businesses | V.B. Financial Projections | 1. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 2 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 08/17/2018 04:33 PM | View | Operating Businesses | V.B. Financial Projections | 3. Cash Flow Budget 2018-2020 v.10 | Cash Flow Budget 2018-2020 v.10.pdf | 1 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 08/17/2018 04:29 PM | View | Operating Businesses | V.B. Financial Projections | 2. Cash Flow Budget 2018 v.10 | Cash Flow Budget 2018 v.10.pdf | 1 | | \Operating Businesses\Financial Information\Financial Projections |
| Cedar Bay | 07/27/2018 11:00 AM | View | Organizational Chart | | 2. PRXI Staff Org Chart 5.24.18 | PRXI Staff Org Chart 5.24.18.pdf | 1 | | \Organizational Chart |
| Cedar Bay | 07/27/2018 10:58 AM | View | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 6. Atlantic Station Lease - Final 2008 | Atlantic Station Lease - Final 2008.pdf | 2 | | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/21/2018 01:30 PM | View | Operating Businesses | V.D.3. DinoKing Merger Transaction Information | 2. DK - PRXI Merger Transaction Summary | DK - PRXI Merger Transaction Summary.docx | 1 | | \Operating Businesses\Financial Information\Other Financial Information\DinoKing Merger Transaction Information |
| Cedar Bay | 07/21/2018 01:28 PM | View | Operating Businesses | V.A.4.g. Dinoking Financials | 6. DU PL May 2018 YTD | DU PL May 2018 YTD.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Dinoking Financials |
| Cedar Bay | 07/21/2018 01:13 PM | Save | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 21. Perm Venue Budget vs Actual 6-30-18 | Perm Venue Budget vs Actual 6-30-18.pdf | 2 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 01:12 PM | View | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 21. Perm Venue Budget vs Actual 6-30-18 | Perm Venue Budget vs Actual 6-30-18.pdf | 2 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 01:08 PM | Save | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 22. Perm Venue Comparison 06-30-2018 | Perm Venue Comparison 06-30-2018.pdf | 2 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 01:08 PM | View | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 22. Perm Venue Comparison 06-30-2018 | Perm Venue Comparison 06-30-2018.pdf | 2 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 9. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 9. Perm Venue Comparison Q3 2017 and Q3 2016 | Perm Venue Comparison Q3 2017-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 9. Perm Venue Comparison Q3 2017 and Q3 2016 | Perm Venue Comparison Q3 2017-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 9. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 9. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 8. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 8. Perm Venue Comparison 9-30-2017 | Perm Venue Comparison 9-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 8. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 8. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 10. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 10. Attendance analysis 02-28-18 | Attendance analysis 02-28-18.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 9. Attendance analysis 03-31-18 | Attendance analysis 03-31-18.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 8. Perm Venue Comparison 9-30-2017 | Perm Venue Comparison 9-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 9. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 9. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 8. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 11. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 11. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Nov16 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 11. Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 10. Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 10. Perm Venue Comparison 10-31-2017 | Perm Venue Comparison 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 10. Perm Venue Comparison 10-31-2017 | Perm Venue Comparison 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 10. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 10. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 10. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 10. Attendance analysis 02-28-18 | Attendance analysis 02-28-18.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 9. Attendance analysis 03-31-18 | Attendance analysis 03-31-18.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 9. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 12. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 12-31-2017 | Perm Venue Comparison 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 02-28-2018 | Perm Venue Comparison 02-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 11-30-2017 | Perm Venue Comparison 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 11-30-2017 | Perm Venue Comparison 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 01-31-2018 | Perm Venue Comparison 01-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 13. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 13. Perm Venues Budget vs Actual Feb 2018 | Perm Venues Budget vs Actual Feb 2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 13. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 13. Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016 | Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 12. Proforma balance Sheet 10-17-2016 | Proforma balance Sheet 10-17-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 01-31-2018 | Perm Venue Comparison 01-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 12. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Oct '17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Oct17 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 15. Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 15. Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 14. Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 14. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 14. Perm Venues Budget vs Actual Jan 2018 | Perm Venues Budget vs Actual Jan 2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 11. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 14. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 17. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 17. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 16. Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 16. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 11. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Nov16 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 16. Perm Venue Comparison 05-31-2018 | Perm Venue Comparison 05-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 15. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 19. LV TITANIC 6-17-2018 | LV TITANIC 6-17-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 19. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 18. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 18. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 18. LV BODIES 6-17-2018 | LV BODIES 6-17-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 11. Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 17. ATLANTA BODIES 6-17-2018 | ATLANTA BODIES 6-17-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 21. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 21. EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016 | EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 20. Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016 | Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 20. ORLANDO TITANIC 6-17-2018 | ORLANDO TITANIC 6-17-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 20. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 10. Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 19. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 23. Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 22. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 22. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 13. Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016 | Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 8. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 8. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 8. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 7. Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 7. Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017 | Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 12. Proforma balance Sheet 10-17-2016 | Proforma balance Sheet 10-17-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 7. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:44 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 1. Perm Venue Comparison 2-28-2017 | Perm Venue Comparison 2-28-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 1. Consolidated Balance Sheet as of 10.30.16 | 09-2016 CONSOL BS 6 MO as of 103016.xls | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.5.a. 2017 | 1. BOD CFO Report 6-21-2017 re May 2017 | BOD CFO Report 6-21-2017 re May 2017.docx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\Board of Directors CFO Report\2017 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 1. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 5-31-2017 | Combined Unaudited Balance Sheet 5-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 1. Combined Unaudited Income Statement 5-31-2017 | Combined Unaudited Income Statement 5-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.1. 2014 | 1. Restatement Financial Statements - Dinoking Dec 31 2014 FINAL | Restatement Financial Statements - Dinoking Dec 31 2014 FINAL.PDF | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2014 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 1. EBITDA Analysis 2017Q1 vs 2016Q1 | EBITDA Analysis 2017Q1 vs 2016Q!.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 12. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Oct '17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Oct17 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 1. DK Accounts Receivable Apr 2017 | DK Accounts receivable Apr 2017.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 1. Combined Unaudited Balance Sheets By Quarter 2016-2017 | Combined Unaudited Balance Sheets By Quarters 2016-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4. 2018 | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.i. China - Titanic Exhibition | 1. Revised GDM Titanic Sales Report | Revised GDM Titanic Sales Report.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\China - Titanic Exhibition |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 1. DU Accounts payable May 2017 | DU Accounts payable May 2017.xlsx | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 2. Revenue & EBITDA Graphs 4-30-2018 | Revenue & EBITDA Graphs 4-30-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 12. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 1. Revenue & EBITDA Charts 3-31-2018 | Revenue & EBITDA Charts 3-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 1. Perm Venues Budget vs Actual Mar 2018 | Perm Venues Budget vs Actual Mar 2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 1. Actual vs Budget 2-28-2018 | Actual vs Budget 2-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 1. Premier Exhibitions, Inc. Combined Unaudited Income Statement 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 2. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4. 2018 | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 12-31-2017 | Perm Venue Comparison 12-31-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 2. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 2. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 03-31-2018 | Perm Venue Comparison 03-31-2018.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Three Month Q2 2017 Unaudited Income Statement | Premier Exhibitions, Inc. Combined Q2 Unaudited Income Statement.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 2. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 11-30-2017.pdf | 3 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 02-28-2018 | Perm Venue Comparison 02-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 2. DU Accounts Receivable Apr 2017 | DU Accounts receivable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 2. DK Accounts payable Apr 2017 | DK Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 3. Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 14. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 3. DU Accounts payable Apr 2017 | DU Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 3. Cash Flow Summary PRXI 10.17.2016 | CF Summary PRXI 10-17-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 2. Consolidated Income Statement as of 10.30.16 | 09-2016 CONSOL  YTD PL  103016.xls | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 4-30-2017 | Perm Venue Comparison 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 14. Perm Venues Budget vs Actual Jan 2018 | Perm Venues Budget vs Actual Jan 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 2. PEM Pivot Financial Analysis 4-30-2017 | PEM Pivot Financial Analysis 4-302017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 3. Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 3. Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018 | Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 3. PRXI Aged AR Detail 4-30-17 | PRXI Aged AR Detail 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 3. EBITDA Analysis for Seven Months Ending 7-31-2017 | EBITDA Analysis 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 14. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 6-30-2017 | Perm Venue Comparison 6-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 3. Premier Exhibitions, Inc. Combined Six Month Q2 2017 Unaudited Income Statement Q2 | Premier Exhibitions, Inc. Combined Six Month Unaudited Income Statement Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 4. Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 4. Perm Venues Budget vs Actual Apr 2018 | Perm Venues Budget vs Actual Apr 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 4. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 3. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 3. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 04-30-2018 | Perm Venue Comparison 04-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 13. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 4. Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 4. Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017 | Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 4. Perm Venue Comparison Q2 | Perm Venue Comparison Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 4. Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 4. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 13. Perm Venues Budget vs Actual Feb 2018 | Perm Venues Budget vs Actual Feb 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 4. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 5. Combined Unaudited Balance Sheet - Premier & Dinoking 3-31-2017 | Combined Unaudited Balance Sheet -Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 5. Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017 | Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 5. PRXI Aged AP Pre and Post Petition 4-30-17 | PRXI Aged AP Pre and Post Petition 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 5. Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 13. Premier Exhibition, Inc. Combined Unaudited Income Statement  Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement  Oct17-Sep17 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 4. Consolidation Financials as of 9.30.2016 | Consolidation - Premier & Dinoking 9-30-2016.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 4. PRXI Aged AP Details 4-30-17 | PRXI Aged AP Details 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 6. Permanent Venue Attendance 3-31-2018 | Permanent Venue Attendance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 5. Permanent Venue Attendance 4-30-2018 | Permanent Venue Attendance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 5. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis 10-31-2017 | Premier Exhibitions, Inc. Combined EBITDA Analysis 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 5. Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 5. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 5. Perm Venue Comparison 8-31-2017 | Perm Venue Comparison 8-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 16. Premier Exhibitions, Inc. Combined Unaudited Income Statement  Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement  Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 6. Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 6. Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017 | Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 6. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 6. August 2017 - Attendance analysis | Aug 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 6. Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 16. Perm Venue Comparison 05-31-2018 | Perm Venue Comparison 05-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 6. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 7. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 7. July 2017 -  Attendance analysis | Jul 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 7. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 15. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 7. Dinosaurs Unearthed Consolidated FS Sep 30 2016 YTD V3 | DK DU Consolidated FS Sep 30 2016 YTD V3.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 15. Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 15. Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 14. Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 18. Premier Exhibitions, Inc. Combined Unaudited Income Statement  YTD Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement  YTD Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 18. LV BODIES 6-17-2018 | LV BODIES 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 17. ATLANTA BODIES 6-17-2018 | ATLANTA BODIES 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 17. Premier Exhibitions, Inc. Combined Unaudited Income Statement  Nov17-Oct17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement  Nov17-Oct17 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 17. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 16. Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 20. ORLANDO TITANIC 6-17-2018 | ORLANDO TITANIC 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 20. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 19. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 19. LV TITANIC 6-17-2018 | LV TITANIC 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:43 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 19. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 18. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 23. Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 22. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 22. Combined Unaudited Income Statements  By Quarter  2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 21. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 21. EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016 | EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 20. Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016 | Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 8. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 8. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 8. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 7. Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 7. Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017 | Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 7. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 1. Perm Venue Comparison 2-28-2017 | Perm Venue Comparison 2-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 1. Consolidated Balance Sheet as of 10.30.16 | 09-2016 CONSOL BS 6 MO  as  of  103016.xls | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.5.a. 2017 | 1. BOD CFO Report 6-21-2017 re May 2017 | BOD CFO Report 6-21-2017 re May 2017.docx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\Board of Directors CFO Report\2017 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 1. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 5-31-2017 | Combined Unaudited Balance Sheet 5-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 1. Combined Unaudited Income Statement 5-31-2017 | Combined Unaudited Income Statement 5-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.1. 2014 | 1. Restatement Financial Statements - Dinoking Dec 31 2014 FINAL | Restatement Financial Statements - Dinoking Dec 31 2014 FINAL.PDF | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2014 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 1. EBITDA Analysis 2017Q1 vs 2016Q1 | EBITDA Analysis 2017Q1 vs 2016Q!.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 1. DK Accounts Receivable Apr 2017 | DK Accounts receivable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 1. Combined Unaudited Balance Sheets  By Quarter  2016-2017 | Combined Unaudited Balance Sheets By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4. 2018 | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.i. China - Titanic Exhibition | 1. Revised GDM Titanic Sales Report | Revised GDM Titanic Sales Report.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\China - Titanic Exhibition |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 1. DU Accounts payable May 2017 | DU Accounts payable May 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 2. Revenue & EBITDA Graphs 4-30-2018 | Revenue & EBITDA Graphs 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 1. Revenue & EBITDA Charts 3-31-2018 | Revenue & EBITDA Charts 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 1. Perm Venues Budget vs Actual Mar 2018 | Perm Venues Budget vs Actual Mar 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 1. Actual vs Budget 2-28-2018 | Actual vs Budget 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:42 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 1. Premier Exhibitions, Inc. Combined Unaudited Income Statement  2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 2. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4. 2018 | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 2. Combined Unaudited Income Statements  By Quarter  2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 2. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD  2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 03-31-2018 | Perm Venue Comparison 03-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Three Month Q2 2017 Unaudited Income Statement | Premier Exhibitions, Inc. Combined Q2 Unaudited Income Statement.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 2. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 2. DU Accounts Receivable Apr 2017 | DU Accounts receivable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 2. DK Accounts payable Apr 2017 | DK Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 3. Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 3. DU Accounts payable Apr 2017 | DU Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 3. Cash Flow Summary PRXI 10.17.2016 | CF Summary PRXI 10-17-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 2. Consolidated Income Statement as of 10.30.16 | 09-2016 CONSOL  YTD PL  103016.xls | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 4-30-2017 | Perm Venue Comparison 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 2. PEM Pivot Financial Analysis 4-30-2017 | PEM Pivot Financial Analysis 4-302017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 3. Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 3. Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018 | Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 3. PRXI Aged AR Detail 4-30-17 | PRXI Aged AR Detail 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 3. EBITDA Analysis for Seven Months Ending 7-31-2017 | EBITDA Analysis 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 6-30-2017 | Perm Venue Comparison 6-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 3. Premier Exhibitions, Inc. Combined Six Month Q2 2017 Unaudited Income Statement Q2 | Premier Exhibitions, Inc. Combined Six Month Unaudited Income Statement Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 4. Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 4. Perm Venues Budget vs Actual Apr 2018 | Perm Venues Budget vs Actual Apr 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 4. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 3. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 3. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 04-30-2018 | Perm Venue Comparison 04-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 4. Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 4. Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017 | Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 4. Perm Venue Comparison Q2 | Perm Venue Comparison Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 4. Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:41 AM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 4. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 4. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 5. Combined Unaudited Balance Sheet - Premier & Dinoking 3-31-2017 | Combined Unaudited Balance Sheet -Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 5. Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017 | Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 5. PRXI Aged AP Pre and Post Petition 4-30-17 | PRXI Aged AP Pre and Post Petition 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 5. Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 4. Consolidation Financials as of 9.30.2016 | Consolidation - Premier & Dinoking 9-30-2016.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 4. PRXI Aged AP Details 4-30-17 | PRXI Aged AP Details 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 6. Permanent Venue Attendance 3-31-2018 | Permanent Venue Attendance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 5. Permanent Venue Attendance 4-30-2018 | Permanent Venue Attendance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 5. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis 10-31-2017 | Premier Exhibitions, Inc. Combined EBITDA Analysis 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 5. Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 5. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 5. Perm Venue Comparison 8-31-2017 | Perm Venue Comparison 8-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 6. Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 6. Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017 | Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 6. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 6. August 2017 - Attendance analysis | Aug 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 6. Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 6. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 7. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 7. July 2017 - Attendance analysis | Jul 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 7. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/21/2018 11:40 AM | BulkDownload | Operating Businesses | V.A.2. 2016 | 7. Dinosaurs Unearthed Consolidated FS Sep 30 2016 YTD V3 | DK DU Consolidated FS Sep 30 2016 YTD V3.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:32 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 9. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:32 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 8. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:32 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 8. Perm Venue Comparison 9-30-2017 | Perm Venue Comparison 9-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 8. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 8. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 10. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 10. Attendance analysis 02-28-18 | Attendance analysis 02-28-18.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 9. Attendance analysis 03-31-18 | Attendance analysis 03-31-18.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 9. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 9. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 9. Perm Venue Comparison Q3 2017 and Q3 2016 | Perm Venue Comparison Q3 2017-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 11. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 11. Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 10. Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 10. Perm Venue Comparison 10-31-2017 | Perm Venue Comparison 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 10. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 12. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 12-31-2017 | Perm Venue Comparison 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 02-28-2018 | Perm Venue Comparison 02-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 11-30-2017 | Perm Venue Comparison 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 01-31-2018 | Perm Venue Comparison 01-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:31 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 11. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 13. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 13. Perm Venues Budget vs Actual Feb 2018 | Perm Venues Budget vs Actual Feb 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 13. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 13. Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016 | Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 12. Proforma balance Sheet 10-17-2016 | Proforma balance Sheet 10-17-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 12. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Oct '17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Oct17 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 15. Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 15. Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 14. Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 14. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 14. Perm Venues Budget vs Actual Jan 2018 | Perm Venues Budget vs Actual Jan 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 14. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 17. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 17. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 16. Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 16. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 16. Perm Venue Comparison 05-31-2018 | Perm Venue Comparison 05-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 15. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 19. LV TITANIC 6-17-2018 | LV TITANIC 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 19. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 18. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 18. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 18. LV BODIES 6-17-2018 | LV BODIES 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 17. ATLANTA BODIES 6-17-2018 | ATLANTA BODIES 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 21. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 21. EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016 | EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 20. Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016 | Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 20. ORLANDO TITANIC 6-17-2018 | ORLANDO TITANIC 6-17-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 20. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 19. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 23. Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 22. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 22. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 8. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 8. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 7. Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 7. Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017 | Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 7. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 1. Perm Venue Comparison 2-28-2017 | Perm Venue Comparison 2-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 1. Consolidated Balance Sheet as of 10.30.16 | 09-2016 CONSOL BS 6 MO as of 103016.xls | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.5.a. 2017 | 1. BOD CFO Report 6-21-2017 re May 2017 | BOD CFO Report 6-21-2017 re May 2017.docx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\Board of Directors CFO Report\2017 |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 1. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 5-31-2017 | Combined Unaudited Balance Sheet 5-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 1. Combined Unaudited Income Statement 5-31-2017 | Combined Unaudited Income Statement 5-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.1. 2014 | 1. Restatement Financial Statements - Dinoking Dec 31 2014 FINAL | Restatement Financial Statements - Dinoking Dec 31 2014 FINAL.PDF | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2014 |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 1. EBITDA Analysis 2017Q1 vs 2016Q1 | EBITDA Analysis 2017Q1 vs 2016Q!.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 1. DK Accounts Receivable Apr 2017 | DK Accounts receivable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 1. Combined Unaudited Balance Sheets By Quarter 2016-2017 | Combined Unaudited Balance Sheets By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4. 2018 | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.i. China - Titanic Exhibition | 1. Revised GDM Titanic Sales Report | Revised GDM Titanic Sales Report.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\China - Titanic Exhibition |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 1. DU Accounts payable May 2017 | DU Accounts payable May 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 2. Revenue & EBITDA Graphs 4-30-2018 | Revenue & EBITDA Graphs 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/20/2018 05:28 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 1. Revenue & EBITDA Charts 3-31-2018 | Revenue & EBITDA Charts 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 1. Perm Venues Budget vs Actual Mar 2018 | Perm Venues Budget vs Actual Mar 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 1. Actual vs Budget 2-28-2018 | Actual vs Budget 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 1. Premier Exhibitions, Inc. Combined Unaudited Income Statement 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 2. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4. 2018 | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 2. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 2. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 03-31-2018 | Perm Venue Comparison 03-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Three Month Q2 2017 Unaudited Income Statement | Premier Exhibitions, Inc. Combined Q2 Unaudited Income Statement.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 2. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 2. DU Accounts Receivable Apr 2017 | DU Accounts receivable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 2. DK Accounts payable Apr 2017 | DK Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 3. Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 3. DU Accounts payable Apr 2017 | DU Accounts payable Apr 2017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 3. Cash Flow Summary PRXI 10.17.2016 | CF Summary PRXI 10-17-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 2. Consolidated Income Statement as of 10.30.16 | 09-2016 CONSOL YTD PL 103016.xls | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:27 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 4-30-2017 | Perm Venue Comparison 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 2. PEM Pivot Financial Analysis 4-30-2017 | PEM Pivot Financial Analysis 4-302017.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 3. Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 3. Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018 | Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 3. PRXI Aged AR Detail 4-30-17 | PRXI Aged AR Detail 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 3. EBITDA Analysis for Seven Months Ending 7-31-2017 | EBITDA Analysis 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 6-30-2017 | Perm Venue Comparison 6-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 3. Premier Exhibitions, Inc. Combined Six Month Q2 2017 Unaudited Income Statement Q2 | Premier Exhibitions, Inc. Combined Six Month Unaudited Income Statement Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 4. Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 4. Perm Venues Budget vs Actual Apr 2018 | Perm Venues Budget vs Actual Apr 2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 4. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 3. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 3. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 04-30-2018 | Perm Venue Comparison 04-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 4. Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 4. Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017 | Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 4. Perm Venue Comparison Q2 | Perm Venue Comparison Q2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 4. Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:26 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 4. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 4. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 5. Combined Unaudited Balance Sheet - Premier & Dinoking 3-31-2017 | Combined Unaudited Balance Sheet -Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 5. Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017 | Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 5. PRXI Aged AP Pre and Post Petition 4-30-17 | PRXI Aged AP Pre and Post Petition 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 5. Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 4. Consolidation Financials as of 9.30.2016 | Consolidation - Premier & Dinoking 9-30-2016.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 4. PRXI Aged AP Details 4-30-17 | PRXI Aged AP Details 4-30-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 6. Permanent Venue Attendance 3-31-2018 | Permanent Venue Attendance 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 5. Permanent Venue Attendance 4-30-2018 | Permanent Venue Attendance 4-30-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 5. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis 10-31-2017 | Premier Exhibitions, Inc. Combined EBITDA Analysis 10-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 5. Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 5. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 5. Perm Venue Comparison 8-31-2017 | Perm Venue Comparison 8-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 6. Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 6. Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017 | Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 6. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 6. August 2017 - Attendance analysis | Aug 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:25 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 6. Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Cedar Bay | 07/20/2018 05:24 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 6. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov17-Nov16 11-30-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Cedar Bay | 07/20/2018 05:24 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 7. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Cedar Bay | 07/20/2018 05:24 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 7. July 2017 -  Attendance analysis | Jul 17 Attendance analysis.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Cedar Bay | 07/20/2018 05:24 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 7. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017.pdf | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Cedar Bay | 07/20/2018 05:24 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 7. Dinosaurs Unearthed Consolidated FS Sep 30 2016 YTD V3 | DK DU Consolidated FS Sep 30 2016 YTD V3.xlsx | 3 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.I. Atlanta Corporate Office | 1. Atlanta Office Lease - 2016 | Atlanta Office Lease - 2016.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlanta Corporate Office |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 1. Summary of Canadian Operating Leases 5-31-17 | Summary of Canadian Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 1. Purchase Agreement | 01 - Purchase Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.IV. Orlando Venue | 1. Orlando Dinosaurs Lease - 2017 | Orlando Dinosaurs Lease - 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Orlando Venue |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 1. 2015 Impairment Summary | 2015 Impairment Summary.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.III. Las Vegas Venue | 1. Las Vegal Luxor Lease 3.12.08 | Las Vegal Luxor Lease 3.12.08.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Las Vegas Venue |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 1. Atlantic Station Lease Addendums | Atlantic Station Lease Addendums.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 2. Promissory Note | 04 - Promissory Note.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 2. Vancouver Office Lease Agreement- Addendum | Vancouver Office Lease Agreement- Addendum.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 2. Atlantic Station Lease - 1st Admnt 2011 | Atlantic Station Lease - 1st Admnt 2011.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:07 PM | BulkDownload | Operating Businesses | IV.G.1.b.I. Atlanta Corporate Office | 2. Atlanta Office Lease 1st Amend 2017 | Atlanta Office Lease 1st Amend 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlanta Corporate Office |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b. Real Estate Leases | 1. Summary of Property Leases 2-5-2018 | Summary of Property Leases 2-5-2018.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 1. Vancouver Office Lease Agreement | Vancouver Office Lease Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 2. Summary of U.S. Operating Leases 5-31-17 | Summary of U.S. Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.III. Las Vegas Venue | 2. Las Vegas Luxor Lease - 1st Admnt 2010 | Las Vegas Luxor Lease - 1st Admnt 2010.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Las Vegas Venue |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 2. 2016 Impairment Summary | 2016 Impairment Summary.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.IV. Orlando Venue | 2. Orlando Titanic Lease - 2016 | Orlando Titanic Lease - 2016.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Orlando Venue |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 4. Vancouver Office 2013 Sublease Renewal Agreement | Vancouver Office 2013 Sublease Renewal Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 3. Vancouver Office 2012 Sublease Renewal Agreement | Vancouver Office 2012 Sublease Renewal Agreement | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 3. Atlantic Station Lease - 2nd Admnt 2013 | Atlantic Station Lease - 2nd Admnt 2013.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 3. Bill of Sale | 07 - Bill of Sale.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 3. Fixed Assets Auditor Report | Fixed Assets Auditor Report.xls | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 3. X-3 DK Canon equipment lease agreement | X-3 DK Canon equipment lease agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 6. Atlantic Station Lease - Final 2008 | Atlantic Station Lease - Final 2008.pdf | 2 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 5. Atlantic Station Lease - 4th Admnt 2017 | Atlantic Station Lease - 4th Admnt 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 5. X-3 DK Ricoh equipment lease agreement | X-3 DK Ricoh equipment lease agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 4. X-3 DK RCAP forklift leasing agreement | X-3 DK RCAP forklift leasing agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 4. Revised Fixed Asset Reconciliation 2017 | Revised Fixed Asset Reconciliation 2017.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Cedar Bay | 07/18/2018 06:06 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 4. Atlantic Station Lease - 3rd Admnt 2014 | Atlantic Station Lease - 3rd Admnt 2014.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Cedar Bay | 07/18/2018 06:04 PM | View | Organizational Chart | | 1. Entity Organizational Chart | PRXI Subsidiaries 9.19.16- no EIN.pdf | 1 | \Organizational Chart |
| Pentwater Capital Management | 07/10/2018 04:54 PM | View | Organizational Chart | | 2. PRXI Staff Org Chart 5.24.18 | PRXI Staff Org Chart 5.24.18.pdf | 1 | \Organizational Chart |
| Pentwater Capital Management | 07/10/2018 03:06 PM | View | Operating Businesses | V.B. Financial Projections | 3. Cash Flow Budget 2018-2020 v.10 | Cash Flow Budget 2018-2020 v.10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Pentwater Capital Management | 07/10/2018 03:06 PM | View | Operating Businesses | V.B. Financial Projections | 2. Cash Flow Budget 2018 v.10 | Cash Flow Budget 2018 v.10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Pentwater Capital Management | 07/10/2018 03:04 PM | View | Operating Businesses | V.B. Financial Projections | 1. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 2 | \Operating Businesses\Financial Information\Financial Projections |
| Pentwater Capital Management | 07/03/2018 09:46 AM | View | Artifacts | III.E. Appraisals | 1. Executed Alasko Report | EXECUTED ALASKO REPORT.pdf | 1 | \Artifacts\Artifacts\Appraisals |
| Pentwater Capital Management | 07/03/2018 08:42 AM | View | Operating Businesses | V.C. Debtor In Possession Budgets | 2. DIP 3 Month Budget - Oct.-Dec  Final | DIP 3 Month Budget - Oct.-Dec  Final.pdf | 1 | \Operating Businesses\Financial Information\Debtor In Possession Budgets |
| Pentwater Capital Management | 07/03/2018 08:29 AM | View | Operating Businesses | V.B. Financial Projections | 4. Notes to 2018 Budgets & Forecasts v10 | Notes to 2018 Budgets & Forecasts v10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Pentwater Capital Management | 07/03/2018 08:27 AM | View | Operating Businesses | V.B. Financial Projections | 1. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 2 | \Operating Businesses\Financial Information\Financial Projections |

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

        Debtors.

_____/

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

**ORDER (A) APPROVING COMPETITIVE BIDDING AND
SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES;
(C) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (D) APPROVING
BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (E) SCHEDULING
AUCTION AND HEARING TO CONSIDER FINAL APPROVAL
OF SALE, INCLUDING REJECTION OR ASSUMPTION AND ASSIGNMENT
OF RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND
SETTLEMENT WITH THE PACBRIDGE PARTIES; (F) AUTHORIZING SALE
OF THE TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; AND (G) GRANTING RELATED RELIEF**

---

[1]  The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

THIS CAUSE came before the Court on August 30, 2018 at 1:30 p.m. in Jacksonville, Florida upon the *Motion for Entry of an Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement; (D) Approving Break Up-Fee and Expense Reimbursement;(E) Scheduling Auction and Hearing to Consider Final Approval of Sale, Including Rejection or Assumption and Assignment of Related Executory Contracts and Unexpired Leases; (F) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (G) Approving Settlement with the Pacbridge Parties; and (H) Granting Related Relief* (the **"Motion"**)[2] (ECF No. 1055) filed by debtors and debtors-in-possession RMS Titanic, Inc.; Premier Exhibitions, Inc.; Premier Exhibitions Management, LLC; Arts and Exhibitions International, LLC; Premier Exhibitions International, LLC; Premier Exhibitions NYC, Inc.; Premier Merchandising, LLC; and Dinosaurs Unearthed Corp. (collectively, the **"Debtors"**).[3] Upon review of the Motion and the record in this case, and having considered the statements of counsel for the Debtors, and the evidence adduced by the Debtors (including proffers of evidence admitted into evidence without objection), the Court finds that establishing procedures for a sale of the Transferred Assets (as defined below) in accordance with this Bidding Procedures Order, is in the best interests of the Debtors' estates. Accordingly,

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures or the Asset Purchase Agreement dated as of June 14, 2018 by and among (i) Premier Exhibitions, Inc., a Florida corporation, (ii) Arts and Exhibitions International, LLC, a Florida limited liability company, (iii) Premier Exhibition Management LLC, a Florida limited liability company, (iv) Premier Exhibitions NYC, Inc., a Nevada corporation, (v) Premier Merchandising, LLC, a Delaware limited liability company, (vi) Premier Exhibitions International, LLC, a Delaware limited liability company, (vii) Dinosaurs Unearthed Corp., a Delaware corporation; (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia (**"DinoKing"**), (ix) RMS Titanic, Inc., a Florida corporation, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified or supplemented, the **"Asset Purchase Agreement"**), as applicable.

[3] All references to the Debtors herein shall refer either (a) to the Debtors including DinoKing, in the event that DinoKing becomes a Debtor, or (b) the Debtors and DinoKing, as an indirectly wholly-owned non-debtor subsidiary of Premier, in the event that DinoKing does not become a Debtor.

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     The Court has jurisdiction over the Motion and the transactions contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief requested in the Motion are sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the **"Bankruptcy Code"**), and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9014 and 9019.

D.     Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest.

E.     The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the assets as set forth in the Asset Purchase Agreement (the **"Transferred Assets"**), and the Bidding Procedures to be employed in connection therewith.

F.     The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) schedule the Sale Hearing, approve the manner of notice

3

of the Motion and the Sale Hearing, and set the Sale Objection Deadline (as defined below); and (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the **"Assumed Executory Contracts"**), including notice of proposed cure amounts. Specifically, the Debtors, through their financial advisors retained in this case, GlassRatner Advisory & Capital Group LLC (**"GlassRatner"**), have engaged in a thorough and extensive marketing process over a period of approximately one year. In connection with that process, the Debtors contacted over 150 parties and signed approximately 30 non-disclosure agreements with entities that received information packages and registered access to the diligence data room. As a result of that process and in consultation with its professionals, on June 14, 2018, the Debtors designated Premier Acquisition Holdings LLC to be the stalking horse purchaser (the **"Stalking Horse Purchaser"**). Accordingly, the Court is satisfied that the timeline and deadlines set forth herein are appropriate and that good cause exists to grant the relief requested in the Motion.

G. The Transferred Assets include assets owned by Premier's indirect non-debtor Canadian subsidiary DinoKing. The Asset Purchase Agreement contemplates the possibility that DinoKing may become a debtor in these Bankruptcy Cases. If DinoKing becomes a debtor in these Bankruptcy Cases, this Bidding Procedures Order (and all exhibits thereto) shall also apply to DinoKing, and all references to the Debtors shall include DinoKing.

H. The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Transferred Assets.

4

**IT IS THEREFORE ORDERED THAT:**

1.       The Motion is GRANTED as set forth herein.

2.       All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.       The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby incorporated herein and approved in their entirety. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.       As further described in the Bidding Procedures, the deadline for submitting bids for the Transferred Assets (the **"Bid Deadline"**) is **September [21], 2018 at 4:00 p.m.** (prevailing Eastern Time). No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid is determined by the Debtors, in the exercise of their fiduciary duties, to meet the requirements set forth in the Bidding Procedures.

5.       If Qualified Bids, other than the Qualified Bid of the Stalking Horse Purchaser, are received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on **September [26], 2018 at 10:00 a.m. (prevailing Eastern Time)** at **Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308**, or such other place and time as the Debtors shall notify all Qualified Bidders, the Official Committee of Unsecured Creditors (the **"Creditors Committee"**), the Official Committee of Equity Security Holders (the **"Equity Committee,"** and together with the Creditors Committee, the **"Committees"**), Bay Point Capital Partners LP (the **"DIP Lender"**), and the United States Department of Commerce, National Oceanic and Atmospheric Administration (**"NOAA"**). The Auction shall be conducted in accordance with the Bidding Procedures. However, if no Qualified Bid, other than the Qualified

5

Bid submitted by the Stalking Horse Purchaser, is received by the Bid Deadline, then the Auction will be canceled and the Debtors will proceed to seek final approval of the Asset Purchase Agreement with the Stalking Horse Purchaser at the Sale Hearing.

6.      The Stalking Horse Purchaser shall be entitled to credit bid each round at the Auction using the amount of the Break-up Fee (defined below) and Expense Reimbursement (defined below) as a portion of any Overbid by the Stalking Horse Purchaser.

7.      The Sale Hearing shall be held before the Court on **September [28], 2018 at [10:00 a.m.**] **(prevailing Eastern Time)**; or at such later date and time as may be scheduled by further Order of this Court upon motion or application by the Debtors.

8.      Objections, if any, to the Sale contemplated by the Asset Purchase Agreement must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Middle District of Florida; (c) be filed with the clerk of the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Suite 3-150, Jacksonville, Florida 32202 (or filed electronically via CM/ECF), **by 4:00 p.m. (prevailing Eastern Time) on September [21], 2018** (the "**Sale Objection Deadline**"); and (d) be served upon (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig,

6

P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com) and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov) (collectively, the **"Notice Parties"**), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on September [21], 2018. Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtors' determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections not filed and served before the Sale Objection Deadline will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. (prevailing Eastern Time) one day before the Sale Hearing.

9.       The sale notice, substantially in the form attached hereto as **Exhibit 2** (the **"Sale Notice"**), is hereby approved.

10.       No later than three business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known by the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Transferred Assets; (b) the Office of the United States Trustee; (c) the Securities and Exchange Commission; (d) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Transferred Assets, may have claims, contingent or otherwise, in connection with the

7

Debtors' ownership of the Transferred Assets or have any known interest in the relief requested by the Motion; (e) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (f) the United States Attorney's office for the Middle District of Florida; (g) NOAA; (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bidding Procedures Order; (i) counsel to the Creditors Committee; (j) counsel to the Equity Committee; (k) all parties to any litigation involving the Debtors; (l) all counterparties to any executory contract or unexpired lease of the Debtors; (m) all of DinoKing's known creditors, regulatory authorities, and other parties in interest that could assert Liens or Claims against the Transferred Assets; and (n) all other known creditors and interest holders of the Debtors.

11. **Copies of exhibits to the Motion (including the Asset Purchase Agreement) may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com), Telephone: 404.885.3348 Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.**

12. The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as **Exhibit 3** (the **"Cure Notice"**), is hereby approved.

13. No later than three business days after the entry of this Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor

8

parties to the Scheduled Contracts. The Cure Notice shall identify the Scheduled Contracts and provide the cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (collectively, the **"Cure Amounts"** and individually, a "**Cure Amount"**).

14.     Unless the non-debtor party to a Scheduled Contract files by the Sale Objection Deadline an objection (the **"Cure Amount Objection"**) to its scheduled Cure Amount, the assumption and assignment to the Stalking Horse Purchaser of the Scheduled Contracts, or the ability of the Stalking Horse Purchaser to provide adequate assurance of future performance, and serves a copy of the Cure Amount Objection on the Notice Parties so as to be received by no later than the Sale Objection Deadline, such non-debtor party shall be deemed to consent to the Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking an additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Stalking Horse Purchaser (or other Prevailing Bidder) on account of the assumption and assignment of the Scheduled Contracts and shall be deemed to have consented to the proposed assumption and assignment. In addition, if no timely Cure Amount Objection is filed, the Stalking Horse Purchaser (or other Prevailing Bidder) shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment or to object or contest that the Stalking Horse Purchaser (or other Prevailing Bidder) has not provided adequate assurance of future performance. Information regarding adequate assurance of future performance submitted as part of any Qualified Bid with respect to Scheduled Contracts shall be

9

provided, upon request to Debtors' counsel made on or before the Bid Deadline, to the requesting non-debtor party to a Scheduled Contract within 24 hours of the Bid Deadline.

15.     In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder (including the Stalking Horse Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract or Additional Assumed Executory Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, as applicable or as provided in paragraph 18 below, are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Court.

16.     Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Scheduled Contracts, the Stalking Horse Purchaser or other Prevailing Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) at the Auction, or (ii) no later than five business days after the Bankruptcy Court sustains, in whole or in part, such non-debtor party's Cure Amount Objection or Adequate Assurance Objection; in either such case, the Debtors shall not assume and assign such Scheduled Contract to the Stalking Horse Purchaser or other Prevailing Bidder, as applicable, who removed such contract or lease from any list of Scheduled Contracts.

10

17. Notwithstanding anything to the contrary herein, nothing in this Order shall extend the Debtors' time to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; provided, however, that the Debtors retain all rights to seek such an extension after notice and an opportunity for a hearing consistent with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

18. In the event any party to a Scheduled Contract timely objects to the calculation of the Cure Amount for such contract, and alleges that the Cure Amount for such contract exceeds the amount calculated by Debtors for such contract (the amount of such excess Cure Amount for the contract in question, the **"Excess Cure Amount"**), then, (i) Debtors shall provide written notice to Stalking Horse Purchaser or other Prevailing Bidder, as applicable, of such Cure Amount objection and the amount of such Excess Cure Amount for each of the proposed Assumed Contracts, and (ii) Stalking Horse Purchaser or other Prevailing Bidder, as applicable shall, no later than three business days after receipt of such notice from Debtors either (a) notify the Debtors that Stalking Horse Purchaser or other Prevailing Bidder, as applicable, elects not to assume such contract if the Excess Cure Amount is in excess of ten percent of the Cure Amount for such contract or (b) take no action with respect to such notice, in which case, such contract shall continue to be assumed by the Stalking Horse Purchaser or the Prevailing Bidder, as applicable, at the Closing. At the Closing, the Debtors shall retain the aggregate Excess Cure Amounts for all Assumed Contracts in escrow and shall use commercially reasonable efforts to resolve such discrepancy with such contract counterparties after the Closing. In the event any such discrepancies are resolved by the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, then the Debtors shall refund such Excess Cure Amounts to the Stalking Horse Purchaser or other Prevailing Bidder, as applicable. In the event the Debtors do

11

not resolve such discrepancy with such contract counterparty in question, then the Debtors shall deliver such Excess Cure Amount to the contract counterparties in question.

19. Within two business days after the Closing Date, the Debtors will file a notice of assumption and assignment of the Assumed Executory Contracts, substantially in the form attached hereto as **Exhibit 4** (the **"Assumption Notice"**), listing the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Stalking Horse Purchaser or to the Prevailing Bidder, to the extent that the Prevailing Bidder is not the Stalking Horse Purchaser. The form of Assumption Notice is hereby approved.

20. The Sale Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

21. The form of the Asset Purchase Agreement is approved in all respects.

22. Other than the Stalking Horse Purchaser, no party submitting an offer or Bid for the Transferred Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

23. In the event the Debtors consummate a Competing Transaction, a break-up fee in the amount of the greater of $500,000 or 3% of the Purchase Price (the **"Break-up Fee"**) and an expense reimbursement for actual, documented out-of-pocket expenses (the **"Expense Reimbursement,"** and together with the Break-up Fee, the **"Bid Protections"**) shall be paid to the Stalking Horse Purchaser from the sale proceeds at the closing of such Competing Transaction, provided however, that the total amount of the Bid Protections shall be limited to a maximum of $1,000,000. The Bid Protections shall be an administrative expense of each of the

<div align="center">12</div>

Debtors' estates under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall be payable by the Debtors prior to payment of any other prepetition creditor.

24. If an Auction is conducted, the party with the next highest and best Qualified Bid after the Bid made by the Prevailing Bidder or otherwise second best Qualified Bid at the Auction, as determined by the Debtors, will be designated as the backup bidder (the **"Backup Bidder"**).

25. To the extent not inconsistent with the Asset Purchase Agreement, the Bidding Procedures or this Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, after consultation with the Committees, to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best Bid and which is the next highest and best Bid; (d) reject any Bid (other than the Stalking Horse Purchaser's Bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures, this Bidding Procedures Order, the Bankruptcy Code, or the Bankruptcy Rules, or (iii) contrary to the best interests of the Debtors and their estates; (e) extend the deadlines set forth herein; or (f) continue or cancel the Auction or Sale Hearing in open court without further notice. The Stalking Horse Purchaser is a Qualified Bidder, and the Asset Purchase Agreement is a Qualified Bid.

26. To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control. The Debtors' obligations under this Bidding

13

Procedures Order, the provisions of this Bidding Procedures Order and the portions of the Asset Purchase Agreement pertaining to the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan in one or more of the Debtors' cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code).

27.     If DinoKing becomes a debtor in these Bankruptcy Cases, this Bidding Procedures Order (and all exhibits thereto) shall apply to DinoKing, and all references to the Debtors shall include DinoKing.

28.     To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

29.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

30.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

32.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

# # #

14

# **Exhibit 1**

Bidding Procedures

## **BIDDING PROCEDURES**[1]

### I. OVERVIEW

On June 14, 2016 (the **"Petition Date"**), Premier Exhibitions, Inc., a Florida corporation (**"Premier"**); Arts and Exhibitions International, LLC, a Florida limited liability company (**"A&E"**); Dinosaurs Unearthed Corp., a Delaware Corporation (**"DU Corp."**); Premier Exhibitions International, LLC, a Delaware limited liability company (**"PEI"**); Premier Exhibition Management LLC, a Florida limited liability company (**"PEM"**); Premier Exhibitions NYC, Inc., a Nevada Corporation (**"Premier NYC"**); Premier Merchandising, LLC, a Delaware limited liability company (**"Premier Merch"**); and RMS Titanic, Inc., a Florida corporation (**"RMST"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 24, 2016, both an Official Committee of Unsecured Creditors (the **"Creditors Committee"**) and an Official Committee of Equity Security Holders (the **"Equity Committee,"** and together with the Creditors Committee, the **"Committees"**) were appointed.

On September [●], 2018, the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) entered an order (the **"Bidding Procedures Order"**), which, among other things, authorized the Debtors to (a) solicit bids and approved these bidding procedures (the **"Bidding Procedures"**) for a sale of the Transferred Assets (as defined in the Asset Purchase Agreement), on terms substantially similar to, and in no event less favorable to the Debtors than, the terms set forth in the Asset Purchase Agreement and as set forth in these Bidding Procedures, and (b) select Premier Acquisition Holdings LLC as the stalking horse bidder in connection with such sale (the **"Stalking Horse Purchaser"**).

On the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Transferred Assets will be sold free and clear of all liens, claims and encumbrances (except that to the extent that any artifacts owned by RMST are subject to the jurisdiction of the United States District Court for the Eastern District of Virginia, in the civil action styled *R.M.S. Titanic, Inc., Successor in Interest to Titanic Ventures Limited Partnership v. The Wrecked and Abandoned Vessel, Etc.*, Case No. 2:93-cv-902 (the **"Admiralty Court"**) and the Revised Covenants and Conditions (the **"Covenants and Conditions"**) set forth in Exhibit A to the August 12, 2010 Opinion of the Admiralty Court, such artifacts shall continue to be subject to the Covenants and Conditions and to the jurisdiction of the Admiralty Court including, but not limited to, any requirement in the Covenants and Conditions that the Admiralty Court approve the sale of the Subject Titanic Artifact Collection (STAC) sometimes referred to as the American Collection) as permitted by the Bankruptcy Code pursuant to an order approving a sale under

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures or the Asset Purchase Agreement dated as of June 14, 2018 by and among (i) Premier, (ii) A&E, (iii) PEM, (iv) Premier NYC, (v) Premier Merch, (vi) PEI, (vii) DU Corp.) (collectively with Premier, A&E, PEM, Premier NYC, Premier Merch and PEI, the **"Debtor Sellers"**); (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia (**"DinoKing"**), (ix) RMST, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified or supplemented, the **"Asset Purchase Agreement"**), as applicable.

Section 363 of the Bankruptcy Code (the **"Sale Order"**). **All references to the Debtors herein shall refer either to (a) the Debtors including DinoKing, in the event that DinoKing becomes a Debtor, or (b) the Debtors and DinoKing, as an indirectly wholly-owned non-debtor subsidiary of Premier, in the event that DinoKing does not become a Debtor.**

## II.     SUMMARY OF IMPORTANT DATES

| | |
|---|---|
| **September [21], 2018, at 4:00 p.m.** | Bid Deadline |
| **September [21], 2018, at 4:00 p.m.** | Deadline to Object to Sale |
| | Deadline to Object to Assumption and Assignment of Transferred Contracts to Stalking Horse Purchaser, Including Proposed Cure Amounts |
| **September [25] 2018, at 4:00 p.m.** | Deadline for Debtors to Designate and Publish Qualified Bidders |
| **September [26], 2018, at 10:00 a.m.** | Auction, if any |
| | <u>Location</u>: |
| | Troutman Sanders LLP<br>600 Peachtree Street NE, Suite 3000<br>Atlanta, GA 30308 |
| **September [28], 2018, at [10:00 a.m.]** | Sale Hearing |
| | <u>Location</u>: |
| | United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division<br>Bryan Simpson United States Courthouse<br>300 North Hogan Street, Courtroom 4A<br>Jacksonville, Florida 32202 |
| **4:00 p.m., one day before Sale Hearing** | Deadline to File and Serve Responses to Any Sale Objection |

## III.     MARKETING PROCESS

A.     <u>Contact Parties</u>.

The Debtors, in consultation with their financial advisor GlassRatner Advisory & Capital Group LLC (**"GlassRatner"**), have developed a list of parties whom the Debtors believe may potentially be interested in consummating, and whom the Debtors reasonably believe would have the financial resources to consummate, a competing transaction to that of the Stalking Horse Purchaser (a **"Competing Transaction"**) (each, individually, a **"Contact Party,"** and collectively, the **"Contact Parties"**). Following approval of the Bidding Procedures and until the Bid Deadline (as defined below), the Debtors intend to contact the Contact Parties to explore their interest and may initiate contact with, or solicit or encourage submission of any Qualified

Bids by any person or otherwise facilitate any effort or attempt to make a Qualified Bid. Prior to the approval of the Bidding Procedures, third parties may continue to conduct due diligence on the Sellers and the Transferred Assets for purposes of being competing bidders for the Transferred Assets following the execution of confidentiality agreements with the Debtors. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an information package containing:

1. The Bidding Procedures Order;

2. The Asset Purchase Agreement;

3. These Bidding Procedures; and

4. A confidentiality agreement that is substantially similar to the confidentiality agreements executed by the Debtors with the Stalking Horse Purchaser (unless the Contact Party has already entered into and remains bound by a confidentiality agreement with the Debtors).

B. <u>Access to Diligence Materials</u>.

To participate in the bidding process and to receive access to then current and reasonably available due diligence materials (the **"Diligence Materials"**), a party must submit an executed confidentiality agreement in accordance with Section III.A.4. above, along with evidence satisfactory to the Debtors, demonstrating the party's financial capability to consummate a Competing Transaction (together, an **"Expression of Interest"**): to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) the Committees' retained financial advisor, Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com). **Potential bidders are instructed to contact only the retained financial advisors to the Debtors and not any other parties, including the Debtors or any Committee members.**

A party who submits an Expression of Interest and qualifies, in the Debtors' sole discretion, for access to Diligence Materials shall be a **"Preliminary Interested Purchaser"** and shall be provided prompt access to the Diligence Materials in no event later than one business day following receipt of an Expression of Interest.

**IV. AUCTION QUALIFICATION PROCESS**

To be eligible to participate in the Auction (as defined herein), each offer, solicitation or proposal (each, a **"Bid"**), and each party submitting a Bid (each, a **"Bidder"**), must be determined by the Debtors to satisfy each of the following conditions:

*Error! Unknown document property name.*

A.  **Good Faith Deposit**. Each Bid must be accompanied by a cash deposit in the amount of 10% of the total consideration provided for in its Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the **"Good Faith Deposit"**). The Debtors will provide wire instructions for the Good Faith Deposit upon written request of any Preliminary Interested Purchaser made to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com).

B.  **Same or Better Terms**.

  1.  **Each Bid must be on terms that are substantially similar, the same or better for the Debtors than the terms of the Asset Purchase Agreement.** At a minimum, each Bid must:

    (a)  Propose a Competing Transaction for all or substantially all of the Transferred Assets;

    (b)  Include an executed asset purchase agreement by the Bidder (a **"Competing Asset Purchase Agreement"**) in substantially the same form and on substantially the same material terms as the Asset Purchase Agreement, excepting the Bid Protections applicable only to the Stalking Horse Purchaser (including without limitation the Break-Up Fee and Expense Reimbursement);

    (c)  Include a redline comparison marked to show all changes to the Asset Purchase Agreement;

    (d)  Include a signed statement that the Bid set forth in the Competing Asset Purchase Agreement is irrevocable until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein);

    (e)  Include a signed statement that the Bidder consents to be bound by and to the Covenants and Conditions;

    (f)  Propose a purchase price equal to or greater than $19,000,000.00[2] in cash (the **"Minimum Cash Amount"**);

    (g)  Obligate the Bidder to pay all Cure Amounts; and

---

[2] All amounts herein are expressed in United States dollars.

4

(h)     Not contain any break-up fee, expense reimbursement, or similar type of payment in favor of the Bidder.

2.     A Bid will not be considered a Qualified Bid (as defined herein) if such Bid:

(a)     Contains any material alterations to the Asset Purchase Agreement not contemplated under Section IV.B.1.(b) above;

(b)     Is not received by the Bid Deadline (as defined herein) in accordance with these Bidding Procedures; or

(c)     Does not contain evidence of the Bidder's financial ability to perform in accordance with Section IV.D. of these Bidding Procedures.

C.     <u>Corporate Authority</u>. Each Bid must include written evidence acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; <u>provided, however</u>, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

D.     <u>Proof of Financial Ability to Perform</u>. Each Bid must include written evidence satisfactory to the Debtors to demonstrate that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, at a minimum, the following:

1.     Contact names and telephone numbers for verification of financing sources;

2.     Evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of at least 125% of the Minimum Cash Amount of such Bid, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of at least 125% of the Minimum Cash Amount of such Bid;

3.     The Bidder's current audited financial statements, <u>provided, however</u>, that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder must include current audited financial statements for such Bidder's equity holders, and evidence that such equity holders have guaranteed the obligations of such Bidder in connection with the Competing Transaction; and

*Error! Unknown document property name.*

4.     Any other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction.

E.     <u>No Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

F.     <u>Irrevocable</u>. A Bid must be irrevocable through the time of the Auction, <u>provided, however</u>, that if such Bid is accepted as the Prevailing Bid or the Backup Bid (each as defined herein), such Bid shall remain irrevocable thereafter, until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein).

G.     <u>Bid Deadline</u>. All Bids must be submitted so that they are actually received by the following parties on or before **September [21], 2018 at 4:00 p.m. (prevailing Eastern Time)** (the **"Bid Deadline"**): (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); (v) the Debtors' retained financial advisor, GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade (mglade@glassratner.com); and (vi) the Committees' retained financial advisor: Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams (BWilliams@lincolninternational.com).

H.     <u>Qualified Bids</u>. A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of Sections IV.A-G of these Bidding Procedures shall constitute a **"Qualified Bid,"** and such Bidder shall constitute a **"Qualified Bidder."** For purposes of the Auction, the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is a Qualified Bid and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that other Bidders must satisfy to be a Qualified Bidder. The Stalking Horse Purchaser shall not be required to take any further action in order to participate in the Auction, or if the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is the Prevailing Bid or the Backup Bid, to be named the Prevailing Bidder or the

6

Backup Bidder (each as defined herein), as applicable. Within one business day after the Bid Deadline, the Debtors shall inform counsel to the Committees and the Stalking Horse Purchaser whether the Debtors will consider any Bids received to be Qualified Bids.

I.    <u>Disclosure of Qualified Bids</u>. If the Debtors receive one or more Qualified Bids (other than the Qualified Bid of the Stalking Horse Purchaser), then not later than two business days after the Bid Deadline (the **"Competing Bid Disclosure Deadline"**), the Debtors shall file a notice with the Bankruptcy Court disclosing the identity and aggregate consideration offered by such Qualified Bid(s).

J.    <u>Cancellation of Auction If No Competing Qualified Bids Received</u>. If the Debtors do not receive any other Qualified Bid(s) on or before the Bid Deadline, then on or before the Bid Disclosure Deadline the Debtors shall file a notice with the Bankruptcy Court cancelling the Auction, and will proceed to seek approval of the sale of the Transferred Assets to the Stalking Horse Purchaser under the Asset Purchase Agreement at the Sale Hearing.

## V.    AUCTION

A.    <u>Determination of Highest and Best Qualified Bid</u>.

1.    If one or more Qualified Bids (other than the Asset Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the **"Auction"**) to determine the highest and best Qualified Bid. The determination of the highest and best Qualified Bid shall take into account the following (the **"Bid Assessment Criteria"**):

(a)    the total consideration to be received by the Debtors;

(b)    the likelihood that the Admiralty Court will approve the Bidder as purchaser of the Transferred Assets; and

(c)    the likelihood of the Bidder's ability to timely consummate a Competing Transaction.

2.    The highest and best Qualified Bid must include cash in an amount not less than the Minimum Cash Amount.

B.    <u>Conduct of the Auction</u>.

1.    The Auction, if any, shall take place on **September [26], 2018 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Troutman Sanders, LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, Georgia 30308, or such other place and time as the Debtors shall notify the Auction Attendees (as defined herein).

7

2.       Only Qualified Bidders may participate in the Auction.

3.       The Debtors and their professionals shall direct and preside over the Auction.

4.       The Auction will be transcribed by a certified court reporter.

5.       At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the **"Auction Baseline Bid"**). The Stalking Horse Purchaser shall have the right (but not the obligation) to match the highest and best Qualified Bid received prior to the Bid Deadline, and thus become the Auction Baseline Bid.

6.       At the start of the Auction, each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Transferred Assets, and at the Debtors' request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

7.       Unless otherwise agreed by the Debtors, only the Debtors, the Committees, NOAA, the DIP Lender, the Stalking Horse Purchaser, and any other Qualified Bidder, along with each of their respective professionals (collectively, the **"Auction Attendees"**), may attend the Auction in person, and only the Stalking Horse Purchaser and other Qualified Bidders will be entitled to make any Bids at the Auction.

8.       Terms of Overbids.

An **"Overbid"** is any bid made at the Auction after the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid at the Auction, a Bidder must comply with the following conditions:

(a)      The initial Overbid must be for a purchase price equal to or greater than $19,000,000.00 (the **"Initial Overbid"**).

(b)      Any Bid after the Initial Overbid must be made in increments of not less than $500,000.00.

(c)      The Stalking Horse Purchaser shall be entitled to credit bid the Bid Protections as a portion of any Overbid (including an Initial Overbid).

(d)      All Overbids must at all times continue to comply with the conditions for a Qualified Bid set forth in Sections IV.A-G of these Bidding Procedures.

(e)    All Overbids must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid. At the Debtors' request (in consultation with the Committees, but in the Debtors' sole and absolute discretion) at any point during the Auction, a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid (including performance of obligations under any Assumed Executory Contracts).

        9.     Announcing Overbids.

The Debtors shall announce at the Auction (a) the material terms of each Overbid that shall stand as the basis for the next Overbid; (b) the basis for calculating the total consideration offered in each such Overbid, and (c) the resulting benefit to the Debtors' estates, based on the Bid Assessment Criteria.

    C.    <u>Conclusion of Auction and Determination of Prevailing Bidder</u>.

The Auction will continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, upon consideration of the Bid Assessment Criteria and after consultation with the Committees, is the highest and best Qualified Bid at the Auction (the **"Prevailing Bid"** and the Bidder submitting such Prevailing Bid, the **"Prevailing Bidder"**). The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit a further Overbid to the last Overbid. Once the Debtors have designated the Prevailing Bidder, the Auction will be concluded. The Debtors will not consider any Bids submitted after the conclusion of the Auction.

    D.    <u>Backup Bidder</u>.

        1.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or best Qualified Bid after the Bid made by the Prevailing Bidder at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, will be designated as a backup bidder (the **"Backup Bidder"**). The Backup Bidder is required to keep its final Overbid (or, if the Backup Bidder did not submit any Overbids, then its initial Bid) (the **"Backup Bid"**) open and irrevocable until the earlier of (i) 4:00 p.m. (prevailing Eastern time) on the date that is 30 days after the Closing Date provided for in the Sale Order approving the Prevailing Bid (the **"Outside Backup Date"**), or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder or with the Backup Bidder.

        2.     Following the Sale Hearing, if the Prevailing Bidder fails to close due to a breach or failure to perform on the part of such Prevailing Bidder, the

<div align="center">9</div>

Debtors may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtors will be authorized, but not required, to consummate a transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Prevailing Bidder's Good Faith Deposit shall be forfeited to the Debtors.

E.    Consent to Jurisdiction as Condition to Bidding; Waiver of Jury Trial Rights.

**BY SUBMITTING A BID, THE STALKING HORSE PURCHASER AND ALL OTHER QUALIFIED BIDDERS AT THE AUCTION ARE SUBMITTING TO THE CORE JURISDICTION OF THE BANKRUPTCY COURT, AND ARE WAIVING ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THESE BIDDING PROCEDURES, THE ASSET PURCHASE AGREEMENT, A COMPETING ASSET PURCHASE AGREEMENT, THE AUCTION OR THE CONSTRUCTION AND ENFORCEMENT OF ANY DOCUMENTS DELIVERED IN CONNECTION WITH A BID.**

# VI.    SALE HEARING

The Bankruptcy Court will conduct a hearing (the **"Sale Hearing"**) on **September [28], 2018 at [10:00 a.m.] (prevailing Eastern Time)**. At the Sale Hearing, the Debtors will seek approval of the transactions contemplated by the Asset Purchase Agreement or Competing Asset Purchase Agreement, as applicable, with the Prevailing Bidder. Objections, if any, to the sale of the Transferred Assets to the Prevailing Bidder and the transactions contemplated therewith (a **"Sale Objection"**) must be in writing and filed with the Bankruptcy Court by **September [21], 2018 at 4:00 p.m.** (the **"Sale Objection Deadline"**). Any Sale Objection must also be served, so that it is actually received by the Sale Objection Deadline, on (a) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (b) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (c) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (d) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (e) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov). Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtor's determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections must be filed and served by the Sale Objection Deadline, or else will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. one day before the Sale Hearing.

## VII.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts established and maintained by a reputable financial institution acceptable to the Debtors, but shall not become property of the Debtors' bankruptcy estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder other than the Prevailing Bidder or the Backup Bidder shall be returned to such Qualified Bidder not later than three business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Prevailing Bidder timely closes, its Good Faith Deposit shall be credited to its purchase price.

# # #

11

**Exhibit 2**

Sale Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

Case No. 3:16-bk-02230-PMG

RMS TITANIC, INC., *et al.*,[1]

Chapter 11

Debtors.

(Jointly Administered)

_____/

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.　　On June 15, 2018, Premier Exhibitions, Inc., a Florida corporation (**"Premier"**); Arts and Exhibitions International, LLC, a Florida limited liability company (**"A&E"**); Dinosaurs Unearthed Corp., a Delaware Corporation (**"DU Corp."**); Premier Exhibitions International, LLC, a Delaware limited liability company (**"PEI"**); Premier Exhibition Management LLC, a Florida limited liability company (**"PEM"**); Premier Exhibitions NYC, Inc., a Nevada Corporation (**"Premier NYC"**); Premier Merchandising, LLC, a Delaware limited liability company (**"Premier Merch"**); and RMS Titanic, Inc., a Florida corporation (**"RMST"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**), filed a motion [ECF No. 1055] (the "**Sale Motion**") for entry of an order (the **"Bidding Procedures Order"**), among other things, (a) approving the Bidding Procedures[2] for a sale of the Transferred Assets (as defined in the Asset Purchase Agreement), on terms substantially similar to, and in no event less favorable to the Debtors than, the terms set forth in the Asset Purchase Agreement and as set forth in the Bidding Procedures; (b) selecting Premier Acquisition Holdings LLC as the stalking horse bidder in connection with such sale (the **"Stalking Horse Purchaser"**); (c) approving the form and manner of notices with respect to the auction for the Transferred Assets (the **"Auction"**) and the hearing to consider the sale of the Transferred Assets to the Stalking Horse Purchaser or Prevailing Bidder and rejection or assumption and assignment of related executory contracts and unexpired leases (the **"Sale Hearing"**); (d) approving the form of Asset Purchase Agreement; (e) approving a Break-Up Fee and Expense Reimbursement in favor of the Stalking Horse Purchaser; (f) scheduling the Auction and Sale Hearing; (g) authorizing the sale of the Transferred Assets free

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the motion to approve the Bidding Procedures or the Asset Purchase Agreement dated as of June 14, 2018 by and among (i) Premier, (ii) A&E, (iii) PEM, (iv) Premier NYC, (v) Premier Merch, (vi) PEI, (vii) DU Corp.; (vii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia, (ix) RMST, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified, or supplemented, the **"Asset Purchase Agreement"**), as applicable.

and clear of all liens, claims, encumbrances and interests;[3] and (g) granting related relief (the **"Sale Motion"**).

2.      On September [●], 2018, the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) entered the Bidding Procedures Order [ECF No. ●]. Pursuant to the Bidding Procedures Order, the Auction, if any, for the Transferred Assets shall take place on September [26], 2018, at 10:00 a.m. **(prevailing Eastern Time)** at the offices of Troutman Sanders LLP, located at 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308. Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, **by no later than September [21], 2018, at 4:00 p.m. (prevailing Eastern Time)** (the **"Bid Deadline"**) may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Transferred Assets must submit their competing bid before the Bid Deadline and in accordance with the Bidding Procedures. To participate in the bidding process and to receive access to the then current and reasonably available due diligence materials (the **"Diligence Materials"**), a party must submit an executed confidentiality agreement in accordance with Section III.A.4. of the Bidding Procedures, along with evidence satisfactory to the to the Debtors, demonstrating the party's financial capability to consummate a Competing Transaction: to (i) the Debtors' retained financial advisor, GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) the Official Committee of Unsecured Creditors' (the "**Creditors Committee**") and the Official Committee of Equity Security Holders' (the "**Equity Committee**," and together with the Creditors Committee, the "**Committees**") retained financial advisors, Lincoln International, 44 Madison Avenue, Suite 300, New York, NY 1022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com). **Potential bidders are instructed to contact only the retained financial advisors to the Debtors and not any other parties, including the Debtors or any Committee members. If no Qualified Bid, other than the Qualified Bid submitted by the Stalking Horse Purchaser, is received by the Bid Deadline, then the Auction will be canceled.**

3.      The Bankruptcy Court will conduct a hearing (the **"Sale Hearing"**) on **September [28], 2018, at [10:00 a.m.] (prevailing Eastern Time),** before the Honorable Paul M. Glenn, United States Bankruptcy Judge, **United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202,** or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtors. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

---

[3] Except that to the extent that any artifacts owned by RMST are subject to the jurisdiction of the United States District Court for the Eastern District of Virginia, in the civil action styled *R.M.S. Titanic, Inv., Successor in Interest to Titanic Ventures Limited Partnership v. The Wrecked and Abandoned Vessel, Etc.*, Case No. 2:93-cv-902 (the "**Admiralty Court**") and to the Revised Covenants and Conditions (the "Covenants and Conditions") set forth in Exhibit A to the August 12, 2010 Opinion of the Admiralty Court, such artifacts shall continue to be subject to the Covenants and Conditions and to the jurisdiction of the Admiralty Court, including, but not limited to, any requirement in the Covenants and Conditions that the Admiralty Court approve the sale of the Subject Titanic Artifact Collection (STAC) sometimes referred to as the American Collection.

4.      Objections, if any, to the Sale and/or the Assumption and Assignment of Transferred Contracts to the Stalking Horse Purchaser, including Proposed Cure Amounts contemplated by the Asset Purchase Agreement must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Middle District of Florida; (c) be filed with the clerk of the United States Bankruptcy Court for the Middle District of Florida, United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Suite 3-150, Jacksonville, Florida 32202, (or filed electronically via CM/ECF), **by 4:00 p.m. (prevailing Eastern Time) on September [21], 2018** (the **"Sale Objection Deadline"**); and (d) be served upon (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on September [21], 2018. Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtors' determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections not filed and served before the Sale Objection Deadline will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. one day before the Sale Hearing.

5.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Sale Motion, the Asset Purchase Agreement, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. Accordingly, the Debtors encourage parties in interest to review these documents in their entirety.

6.      Copies of the Sale Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and the Bidding Procedures Order, may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com), Telephone: 404.885.3348 and Matthew R. Brooks (matthew.brooks@troutman.com), Telephone: 404.885.2618. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.

Dated: September [●], 2018

<div style="margin-left:40%">

NELSON MULLINS RILEY
& SCARBOROUGH LLP

By _____ */s/ Daniel F. Blanks*
Daniel F. Blanks (FL Bar No. 88957)
Lee D. Wedekind, III (FL Bar No. 670588)
50 N. Laura Street, Suite 4100
Jacksonville, FL 32202
(904) 665-3656 (direct)
(904) 665-3699 (fax)
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

and

TROUTMAN SANDERS LLP
Harris B. Winsberg (GA Bar No. 117751)
(Fla. Bar No. 0127190)
Matthew R. Brooks (GA Bar No. 378018)
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutmansanders.com
matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in
Possession*

</div>

4

## **Exhibit 3**

Cure Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

_____/

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on June 15, 2018, Premier Exhibitions, Inc., Arts and Exhibitions International, LLC, Premier Exhibition Management LLC, Premier Exhibitions NYC, Inc., Premier Merchandising, LLC, Premier Exhibitions International, LLC, Dinosaurs Unearthed Corp., and RMS Titanic, Inc., (collectively, the "**Debtors**") filed a motion (ECF No. 1055) (the "**Sale Motion**") with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") seeking approval of key dates, times and procedures related to the sale to Premier Acquisition Holdings LLC (the "**Stalking Horse Purchaser**") pursuant to an the Asset Purchase Agreement dated as of June 14, 2018 among, on the one hand, the Stalking Horse Purchaser or its permitted assigns, as purchaser, and on the other hand, the Debtors and DinoKing Tech, Inc. d/b/a Dinosaurs Unearthed, a British Columbia company, as sellers (as amended, modified or supplemented, the "**Asset Purchase Agreement**") of the assets set forth therein (the "**Transferred Assets**").

On September [●], 2018, the Bankruptcy Court entered an Order (ECF No. ●) (the "**Bidding Procedures Order**") approving Bidding Procedures with respect to the Auction[2] and Sale of the Transferred Assets. At a hearing before the Bankruptcy Court on September [28], 2018, the Debtors intend to seek approval of, among other things, the sale of the Transferred Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR**

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Order, as applicable

**UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A HERETO.[3]**

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures, the Debtors may assume and assign to the Stalking Horse Purchaser or other Prevailing Bidder the executory contracts or unexpired leases listed on Exhibit A attached hereto (each, a **"Scheduled Contract"**) to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on **Exhibit A** attached hereto (the **"Cure Amount"**). **If you disagree with the proposed Cure Amount, object to the proposed assignment to the Stalking Horse Purchaser of the Scheduled Contract(s) or object to the Stalking Horse Purchaser's ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court by 4:00 p.m. (prevailing Eastern Time) on September [21], 2018 (the "Objection Deadline"), and serve such objection on (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov), so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on September [21], 2018.**

PLEASE TAKE FURTHER NOTICE that if no objection to (a) the Cure Amount(s); (b) the proposed assignment of the Scheduled Contract(s) to the Stalking Horse Purchaser or (c) adequate assurance of the Stalking Horse Purchaser's ability to perform, is filed by the Objection Deadline, you will be (i) deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) forever barred from objecting to the assignment of the Assumed Executory Contract(s) to the Stalking Horse Purchaser.

PLEASE TAKE FURTHER NOTICE that in the event the Stalking Horse Purchaser is not the Prevailing Bidder at the Auction, any counterparty to a Scheduled Contract shall have the right to object to the adequate assurance of the Prevailing Bidder's ability to perform under such Scheduled Contract, at or before the Sale Hearing. The Sale Hearing will be held on **September [28], 2018 at [10:00 a.m.] (prevailing Eastern Time)**, before the Honorable Paul M. Glenn, United States Bankruptcy Judge, **United States Bankruptcy Court for the Middle District of**

---

[3] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

2

Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202, or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtors. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing. To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Prevailing Bidder's ability to perform.

PLEASE TAKE FURTHER NOTICE that with respect to any Scheduled Contract assumed and assigned to the Prevailing Bidder (including the Stalking Horse Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Transferred Assets to the Prevailing Bidder (including the Stalking Horse Purchaser) or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures Order, in the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract or; (b) the ability of the Prevailing Bidder (including the Stalking Horse Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, as applicable are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Court.

PLEASE TAKE FURTHER NOTICE THAT notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts. Moreover, the Debtors explicitly reserve their rights to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to a Scheduled Contract against the Debtors that may arise under such Scheduled Contract; (b) creates a post-petition contract or agreement; or (c) elevates to administrative expense priority any claims of a counterparty to a Scheduled Contract against the Debtors that may arise under such Scheduled Contract.

PLEASE TAKE FURTHER NOTICE THAT this Notice is subject to the fuller terms and conditions of the Sale Motion, the Bidding Procedures Order, the Asset Purchase Agreement and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and the Bidding Procedures Order, may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Harris B. Winsberg (harris.winsberg@troutman.com), Telephone:

35467726v2

404.885.3348 Troutman Sanders LLP, 600 Peachtree Street NE, Suite 5200, Atlanta, GA 30308. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.

Dated: September [●], 2018   NELSON MULLINS RILEY & SCARBOROUGH LLP

By:_____

Daniel F.  Blanks (FL Bar No.  88957)
Lee D.  Wedekind, III (FL Bar No.  670588)
50 N.  Laura Street, Suite 4100
Jacksonville, Florida 32202
(904) 665-3656 (direct)
(904) 665-3699 (fax)
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

*Co-Counsel for the Debtors and Debtors in Possession*

and

TROUTMAN SANDERS LLP
Harris B. Winsberg (GA Bar No. 117751)
Matthew R. Brooks (GA Bar No. 378018)
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutmansanders.com
matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in Possession*

4

## <u>EXHIBIT A</u>

**[Counterparty Name]**      **[Contract/Lease]**      **[Cure Amount]**

**Exhibit 4**

Assumption Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

Case No. 3:16-bk-02230-PMG

RMS TITANIC, INC., *et al.*,[1]

Chapter 11

Debtors.

(Jointly Administered)

_____/

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACT OR UNEXPIRED LEASE

**PLEASE TAKE NOTICE** that a hearing was held before the Honorable Paul M. Glenn, United States Bankruptcy Judge, United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202 on September [28], 2018, at [10:00 a.m.] (the **"Sale Hearing"**). At the Sale Hearing, the Bankruptcy Court[2] entered an order (a) approving the sale of the Transferred Assets to [●] (the **"Purchaser"**) in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtors, pursuant to the terms of the Asset Purchase Agreement, to assume and assign certain executory contracts and unexpired leases to the Purchaser.

**PLEASE TAKE FURTHER NOTICE** that the Purchaser has elected to take assignment of the executory contracts and unexpired leases as set forth on Exhibit A hereto.

Dated: [●], 2018          NELSON MULLINS RILEY & SCARBOROUGH LLP

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

By: _____

       Daniel F.  Blanks (FL Bar No.  88957)
       Lee D.  Wedekind, III (FL Bar No.  670588)
       50 N.  Laura Street, Suite 4100
       Jacksonville, Florida 32202
       (904) 665-3656 (direct)
       (904) 665-3699 (fax)
       daniel.blanks@nelsonmullins.com
       lee.wedekind@nelsonmullins.com

*Co-Counsel for the Debtors and Debtors in Possession*

and

       TROUTMAN SANDERS LLP
       Harris B. Winsberg (GA Bar No. 117751)
       Matthew R. Brooks (GA Bar No. 378018)
       600 Peachtree Street NE, Suite 5200
       Atlanta, GA 30308
       (404) 885-3000 (phone)
       (404) 962-6990 (fax)
       harris.winsberg@troutmansanders.com
       matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**[Counterparty Name]**      **[Contract/Lease]**      **[Cure Amount]**

# **EXHIBIT 5**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

      Debtors.

_____/

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

**ORDER (A) APPROVING COMPETITIVE BIDDING AND SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES; (C) APPROVING FORM OF ASSET PURCHASE AGREEMENT; (D) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (E) SCHEDULING AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE, INCLUDING REJECTION OR ASSUMPTION AND ASSIGNMENT OF RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND SETTLEMENT WITH THE PACBRIDGE PARTIES; (F) AUTHORIZING SALE OF THE TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, <u>ENCUMBRANCES, AND INTERESTS; AND (G) GRANTING RELATED RELIEF</u>**

THIS CAUSE came before the Court on ~~July [●],~~ **August 30,** 2018 at ~~[●   ]~~ **1:30 p.**m.~~]~~ in

Jacksonville, Florida upon the *Motion for Entry of an Order (A) Approving Competitive Bidding*

---

[1]  The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset

Purchase Agreement; (D) Approving Break Up-Fee and Expense Reimbursement;(E) Scheduling

Auction and Hearing to Consider Final Approval of Sale, Including Rejection or Assumption and

Assignment of Related Executory Contracts and Unexpired Leases; (F) Authorizing Sale of the

Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (G)

Approving Settlement with the Pacbridge Parties; and (H) Granting Related Relief (the

**"Motion"**)[2] (ECF No. ~~_____~~ **1055**) filed by debtors and debtors-in-possession RMS Titanic, Inc.;

Premier Exhibitions, Inc.; Premier Exhibitions Management, LLC; Arts and Exhibitions

International, LLC; Premier Exhibitions International, LLC; Premier Exhibitions NYC, Inc.;

Premier Merchandising, LLC; and Dinosaurs Unearthed Corp. (collectively, the **"Debtors"**).[3]

Upon review of the Motion and the record in this case, and having considered the statements of

counsel for the Debtors, and the evidence adduced by the Debtors (including proffers of evidence

admitted into evidence without objection), the Court finds that establishing procedures for a sale

of the Transferred Assets (as defined below) in accordance with this Bidding Procedures Order,

is in the best interests of the Debtors' estates. Accordingly,

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures or the Asset Purchase Agreement dated as of June [●], **14,** 2018 by and among (i) Premier Exhibitions, Inc., a Florida corporation, (ii) Arts and Exhibitions International, LLC, a Florida limited liability company, (iii) Premier Exhibition Management LLC, a Florida limited liability company, (iv) Premier Exhibitions NYC, Inc., a Nevada corporation, (v) Premier Merchandising, LLC, a Delaware limited liability company, (vi) Premier Exhibitions International, LLC, a Delaware limited liability company, (vii) Dinosaurs Unearthed Corp., a Delaware corporation; (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia (**"DinoKing"**), (ix) RMS Titanic, Inc., a Florida corporation, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified or supplemented, the **"Asset Purchase Agreement"**), as applicable.

[3] All references to the Debtors herein shall refer either (a) to the Debtors including DinoKing, in the event that DinoKing becomes a Debtor, or (b) the Debtors and DinoKing, as an indirectly wholly-owned non-debtor subsidiary of Premier, in the event that DinoKing does not become a Debtor.

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.　The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.　The Court has jurisdiction over the Motion and the transactions contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.　The statutory bases for the relief requested in the Motion are sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the **"Bankruptcy Code"**), and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9014 and 9019.

D.　Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest.

E.　The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the assets as set forth in the Asset Purchase Agreement (the **"Transferred Assets"**), and the Bidding Procedures to be employed in connection therewith.

F.　The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) schedule the Sale Hearing, approve the manner of notice of

3

the Motion and the Sale Hearing, and set the Sale Objection Deadline (as defined below); and (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the **"Assumed Executory Contracts"**), including notice of proposed cure amounts. Specifically, the Debtors, through their financial advisors retained in this case, GlassRatner Advisory & Capital Group LLC (**"GlassRatner"**), have engaged in a thorough and extensive marketing process over a period of approximately one year. In connection with that process, the Debtors contacted over 150 parties and signed approximately 30 non-disclosure agreements with entities that received information packages and registered access to the diligence data room. As a result of that process and in consultation with its professionals, on June [●]**,14,** 2018, the Debtors designated Premier Acquisition Holdings LLC to be the stalking horse purchaser (the **"Stalking Horse Purchaser"**). Accordingly, the Court is satisfied that the timeline and deadlines set forth herein are appropriate and that good cause exists to grant the relief requested in the Motion.

G.     The Transferred Assets include assets owned by Premier's indirect non-debtor Canadian subsidiary DinoKing. The Asset Purchase Agreement contemplates the possibility that DinoKing may become a debtor in these Bankruptcy Cases. If DinoKing becomes a debtor in these Bankruptcy Cases, this Bidding Procedures Order (and all exhibits thereto) shall also apply to DinoKing, and all references to the Debtors shall include DinoKing.

H.     The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Transferred Assets.

4

**IT IS THEREFORE ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby incorporated herein and approved in their entirety. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      As further described in the Bidding Procedures, the deadline for submitting bids for the Transferred Assets (the **"Bid Deadline"**) is ~~August 8,~~ September [21], 2018 at 4:00 p.m. (prevailing Eastern Time). No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid is determined by the Debtors, in the exercise of their fiduciary duties, to meet the requirements set forth in the Bidding Procedures.

5.      If Qualified Bids, other than the Qualified Bid of the Stalking Horse Purchaser, are received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on ~~August 13,~~ September [26], 2018 at 10:00 a.m. (prevailing Eastern Time) at **Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308**, or such other place and time as the Debtors shall notify all Qualified Bidders, the Official Committee of Unsecured Creditors (the **"Creditors Committee"**) ~~and,~~ the Official Committee of Equity Security Holders (the **"Equity Committee,"** and together with the Creditors Committee, the **"Committees")**, Bay Point Capital Partners LP (the "DIP Lender"), and the United States Department of Commerce, National Oceanic and Atmospheric Administration ("NOAA"). The Auction shall be conducted in accordance with the Bidding Procedures. However, if no

5

Qualified Bid, other than the Qualified Bid submitted by the Stalking Horse Purchaser, is received by the Bid Deadline, then the Auction will be canceled and the Debtors will proceed to seek final approval of the Asset Purchase Agreement with the Stalking Horse Purchaser at the Sale Hearing.

6.       The Stalking Horse Purchaser shall be entitled to credit bid each round at the Auction using the amount of the Break-up Fee (defined below) and Expense Reimbursement (defined below) as a portion of any Overbid by the Stalking Horse Purchaser.

7.       ~~If the Auction is cancelled in accordance with paragraph 5 above, the~~The Sale Hearing shall be held before the Court on ~~[August 13, 2018 at 10:00 a.m.] (prevailing Eastern Time); or at such later date and time as may be scheduled by further Order of this Court upon motion or application by the Debtors. If the Auction takes place in accordance with paragraph 5 hereof, the Sale Hearing shall be held before the Court on [August 15,~~ September [28], 2018 at [10:00 a.m.] **(prevailing Eastern Time)**; or at such later date and time as may be scheduled by further Order of this Court upon motion or application by the Debtors.

8.       Objections, if any, to the Sale contemplated by the Asset Purchase Agreement must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Middle District of Florida; (c) be filed with the clerk of the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Suite 3-150, Jacksonville, Florida 32202 (or filed electronically via CM/ECF), **by 4:00 p.m. (prevailing Eastern Time) on** ~~August 8,~~ September [21], 2018 (the **"Sale Objection Deadline"**); and (d) be served upon (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta,

6

GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com) and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov) (collectively, the **"Notice Parties"**), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on ~~August 8,~~**September [21],** 2018. Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtors' determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections not filed and served before the Sale Objection Deadline will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. (prevailing Eastern Time) one day before the Sale Hearing.

9.    The sale notice, substantially in the form attached hereto as **Exhibit 2** (the **"Sale Notice"**), is hereby approved.

10.    No later than three business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known by the Debtors to assert a lien (including any security

7

interest), claim, right, interest or encumbrance of record against all or any portion of the Transferred Assets; (b) the Office of the United States Trustee; (c) the Securities and Exchange Commission; (d) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Transferred Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Transferred Assets or have any known interest in the relief requested by the Motion; (e) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (f) the United States Attorney's office for the Middle District of Florida; (g) ~~the National Oceanic and Atmospheric Administration~~**NOAA**; (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bidding Procedures Order; (i) counsel to the Creditors Committee; (j) counsel to the Equity Committee; (k) all parties to any litigation involving the Debtors; (l) all counterparties to any executory contract or unexpired lease of the Debtors; (m) all of DinoKing's known creditors, regulatory authorities, and other parties in interest that could assert Liens or Claims against the Transferred Assets; and (n) all other known creditors and interest holders of the Debtors.

11. **Copies of exhibits to the Motion (including the Asset Purchase Agreement) may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com), Telephone: 404.885.3348 Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.**

8

12.     The notice of potential assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached hereto as **Exhibit 3** (the **"Cure Notice"**), is hereby approved.

13.     No later than three business days after the entry of this Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts. The Cure Notice shall identify the Scheduled Contracts and provide the cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (collectively, the **"Cure Amounts"** and individually, a "**Cure Amount"**).

14.     Unless the non-debtor party to a Scheduled Contract files by the Sale Objection Deadline an objection (the **"Cure Amount Objection"**) to its scheduled Cure Amount, the assumption and assignment to the Stalking Horse Purchaser of the Scheduled Contracts, or the ability of the Stalking Horse Purchaser to provide adequate assurance of future performance, and serves a copy of the Cure Amount Objection on the Notice Parties so as to be received by no later than the Sale Objection Deadline, such non-debtor party shall be deemed to consent to the Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking an additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Stalking Horse Purchaser (or other Prevailing Bidder) on account of the assumption and assignment of the Scheduled Contracts and shall be deemed to have consented to the proposed assumption and assignment. In addition, if no timely Cure Amount Objection is filed, the Stalking Horse Purchaser (or other Prevailing Bidder) shall enjoy all the rights and benefits under all Scheduled Contracts without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment

9

of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment or to object or contest that the Stalking Horse Purchaser (or other Prevailing Bidder) has not provided adequate assurance of future performance. Information regarding adequate assurance of future performance submitted as part of any Qualified Bid with respect to Scheduled Contracts shall be provided, upon request to Debtors' counsel made on or before the Bid Deadline, to the requesting non-debtor party to a Scheduled Contract within 24 hours of the Bid Deadline.

15.     In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Prevailing Bidder (including the Stalking Horse Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract or Additional Assumed Executory Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, as applicable or as provided in paragraph 18 below, are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Court.

16.     Notwithstanding the inclusion of an executory contract or unexpired lease on any list of Scheduled Contracts, the Stalking Horse Purchaser or other Prevailing Bidder, as applicable, shall have authority, in its sole discretion, to remove any contract or lease from the list of Scheduled Contracts either (i) at the Auction, or (ii) no later than five business days after

10

the Bankruptcy Court sustains, in whole or in part, such non-debtor party's Cure Amount Objection or Adequate Assurance Objection; in either such case, the Debtors shall not assume and assign such Scheduled Contract to the Stalking Horse Purchaser or other Prevailing Bidder, as applicable, who removed such contract or lease from any list of Scheduled Contracts.

17.    Notwithstanding anything to the contrary herein, nothing in this Order shall extend the Debtors' time to assume or reject any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; provided, however, that the Debtors retain all rights to seek such an extension after notice and an opportunity for a hearing consistent with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

18.    In the event any party to a Scheduled Contract timely objects to the calculation of the Cure Amount for such contract, and alleges that the Cure Amount for such contract exceeds the amount calculated by Debtors for such contract (the amount of such excess Cure Amount for the contract in question, the **"Excess Cure Amount"**), then, (i) Debtors shall provide written notice to Stalking Horse Purchaser or other Prevailing Bidder, as applicable, of such Cure Amount objection and the amount of such Excess Cure Amount for each of the proposed Assumed Contracts, and (ii) Stalking Horse Purchaser or other Prevailing Bidder, as applicable shall, no later than three business days after receipt of such notice from Debtors either (a) notify the Debtors that Stalking Horse Purchaser or other Prevailing Bidder, as applicable, elects not to assume such contract if the Excess Cure Amount is in excess of ten percent of the Cure Amount for such contract or (b) take no action with respect to such notice, in which case, such contract shall continue to be assumed by the Stalking Horse Purchaser or the Prevailing Bidder, as applicable, at the Closing. At the Closing, the Debtors shall retain the aggregate Excess Cure Amounts for all Assumed Contracts in escrow and shall use commercially reasonable efforts to

11

resolve such discrepancy with such contract counterparties after the Closing. In the event any such discrepancies are resolved by the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, then the Debtors shall refund such Excess Cure Amounts to the Stalking Horse Purchaser or other Prevailing Bidder, as applicable. In the event the Debtors do not resolve such discrepancy with such contract counterparty in question, then the Debtors shall deliver such Excess Cure Amount to the contract counterparties in question.

19.     Within two business days after the Closing Date, the Debtors will file a notice of assumption and assignment of the Assumed Executory Contracts, substantially in the form attached hereto as **Exhibit 4** (the **"Assumption Notice"**), listing the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Stalking Horse Purchaser or to the Prevailing Bidder, to the extent that the Prevailing Bidder is not the Stalking Horse Purchaser. The form of Assumption Notice is hereby approved.

20.     The Sale Hearing may be continued, from time to time, without further notice to creditors, equity holders or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

21.     The form of the Asset Purchase Agreement is approved in all respects.

22.     Other than the Stalking Horse Purchaser, no party submitting an offer or Bid for the Transferred Assets or a Qualified Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

23.     In the event the Debtors consummate a Competing Transaction, a break-up fee in the amount of the greater of $500,000 or 3% of the Purchase Price ~~set forth in the Prevailing Bid~~ (the **"Break-up Fee"**) and an expense reimbursement for actual, documented out-of-pocket

12

expenses (the **"Expense Reimbursement,"** and together with the Break-up Fee, the **"Bid Protections"**) shall be paid to the Stalking Horse Purchaser from the sale proceeds at the closing of such Competing Transaction, <u>provided however</u>, that the total amount of the Bid Protections shall be limited to a maximum of $1,000,000. The Bid Protections shall be an administrative expense of each of the Debtors' estates under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall be payable by the Debtors prior to payment of any other prepetition creditor.

24.     If an Auction is conducted, the party with the next highest and best Qualified Bid after the Bid made by the Prevailing Bidder or otherwise second best Qualified Bid at the Auction, as determined by the Debtors, will be designated as the backup bidder (the **"Backup Bidder"**).

25.     To the extent not inconsistent with the Asset Purchase Agreement, the Bidding Procedures or this Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, after consultation with the Committees, to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best Bid and which is the next highest and best Bid; (d) reject any Bid (other than the Stalking Horse Purchaser's Bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures, this Bidding Procedures Order, the Bankruptcy Code, or the Bankruptcy Rules, or (iii) contrary to the best interests of the Debtors and their estates; (e) extend the deadlines set forth herein; or (f) continue or cancel the Auction or Sale Hearing in open court without further notice. The Stalking Horse Purchaser is a Qualified Bidder, and the Asset Purchase Agreement is a Qualified Bid.

26.     To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control. The Debtors' obligations under this Bidding Procedures Order, the provisions of this Bidding Procedures Order and the portions of the Asset Purchase Agreement pertaining to the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan in one or more of the Debtors' cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code).

27.     If DinoKing becomes a debtor in these Bankruptcy Cases, this Bidding Procedures Order (and all exhibits thereto) shall apply to DinoKing, and all references to the Debtors shall include DinoKing.

28.     To the extent there are any inconsistencies between the terms of this Bidding Procedures Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Bidding Procedures Order shall govern.

29.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

30.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

14

32.    The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

<div align="center"># # #</div>

15

Document comparison by Workshare 9.5 on Wednesday, August 22, 2018
4:29:45 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS-FLORIDA/FTL/111755669/10 |
| Description | #111755669v10<FTL> - Premier Exhibitions, Inc. Bidding Procedures Order |
| Document 2 ID | interwovenSite://DMS-FLORIDA/FTL/111755669/11 |
| Description | #111755669v11<FTL> - Premier Exhibitions, Inc. Bidding Procedures Order |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 20 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 40 |

**Exhibit 1**

Bidding Procedures

**BIDDING PROCEDURES[1]**

## I.   OVERVIEW

On June 14, 2016 (the **"Petition Date"**), Premier Exhibitions, Inc., a Florida corporation (**"Premier"**); Arts and Exhibitions International, LLC, a Florida limited liability company (**"A&E"**); Dinosaurs Unearthed Corp., a Delaware Corporation (**"DU Corp."**); Premier Exhibitions International, LLC, a Delaware limited liability company (**"PEI"**); Premier Exhibition Management LLC, a Florida limited liability company (**"PEM"**); Premier Exhibitions NYC, Inc., a Nevada Corporation (**"Premier NYC"**); Premier Merchandising, LLC, a Delaware limited liability company (**"Premier Merch"**); and RMS Titanic, Inc., a Florida corporation (**"RMST"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 24, 2016, both an Official Committee of Unsecured Creditors (the **"Creditors Committee"**) and an Official Committee of Equity Security Holders (the **"Equity Committee,"** and together with the Creditors Committee, the **"Committees"**) were appointed.

On ~~July~~**September** [●], 2018, the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) entered an order (the **"Bidding Procedures Order"**), which, among other things, authorized the Debtors to (a) solicit bids and approved these bidding procedures (the **"Bidding Procedures"**) for a sale of the Transferred Assets (as defined in the Asset Purchase Agreement), on terms substantially similar to, and in no event less favorable to the Debtors than, the terms set forth in the Asset Purchase Agreement and as set forth in these Bidding Procedures, and (b) select Premier Acquisition Holdings LLC as the stalking horse bidder in connection with such sale  (the **"Stalking Horse Purchaser"**).

On the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Transferred Assets will be sold free and clear of all liens, claims and encumbrances (except that to the extent that any artifacts owned by RMST are subject to the jurisdiction of the United States District Court for the Eastern District of Virginia, in the civil action styled *R.M.S. Titanic, Inc., Successor in Interest to Titanic Ventures Limited Partnership v. The Wrecked and Abandoned Vessel, Etc.*, Case No. 2:93-cv-902 (the **"Admiralty Court"**) and to the Revised Covenants and Conditions (the **"Covenants and Conditions"**) set forth in Exhibit A to the August 12, 2010 Opinion of the Admiralty Court, such artifacts shall continue to be subject to the Covenants and Conditions and to the jurisdiction of the Admiralty Court **including, but not limited to, any requirement in the Covenants and Conditions that the Admiralty Court approve the sale of the Subject Titanic Artifact Collection (STAC) sometimes referred to as the American**

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures or the Asset Purchase Agreement dated as of June [●]**,14,** 2018 by and among (i) Premier, (ii) A&E, (iii) PEM, (iv) Premier NYC, (v) Premier Merch, (vi) PEI, (vii) DU Corp.) (collectively with Premier, A&E, PEM, Premier NYC, Premier Merch and PEI, the **"Debtor Sellers"**); (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia (**"DinoKing"**), (ix) RMST, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified or supplemented, the **"Asset Purchase Agreement"**), as applicable.

**Collection**) as permitted by the Bankruptcy Code pursuant to an order approving a sale under Section 363 of the Bankruptcy Code (the **"Sale Order"**). **All references to the Debtors herein shall refer either (a) to the Debtors including DinoKing, in the event that DinoKing becomes a Debtor, or (b) the Debtors and DinoKing, as an indirectly wholly-owned non-debtor subsidiary of Premier, in the event that DinoKing does not become a Debtor.**

## II.    SUMMARY OF IMPORTANT DATES

| | |
|---|---|
| ~~August 8,~~ September [21], 2018, at 4:00 p.m. | Bid Deadline |
| ~~August 8,~~ September [21], 2018, at 4:00 p.m. | Deadline to Object to Sale<br><br>Deadline to Object to Assumption and Assignment of Transferred Contracts to Stalking Horse Purchaser, Including Proposed Cure Amounts |
| ~~August 10,~~ September [25] 2018, at 4:00 p.m. | Deadline for Debtors to Designate and Publish Qualified Bidders |
| ~~August 13,~~ September [26], 2018, at 10:00 a.m. | Auction, if any<br>Location:<br>Troutman Sanders LLP<br>600 Peachtree Street NE, Suite 3000<br>Atlanta, GA 30308 |
| ~~August~~ September [~~13~~28], 2018, at [10:00 a.m.] | Sale Hearing, ~~if no Auction~~<br>Location:<br>United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division<br>Bryan Simpson United States Courthouse<br>300 North Hogan Street, Courtroom 4A<br>Jacksonville, Florida 32202 |
| ~~August [15], 2018, at [10:00 a.m.]~~ | ~~Sale Hearing, if Auction occurs~~<br>~~Location:~~<br>~~United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division~~<br>~~Bryan Simpson United States Courthouse~~<br>~~300 North Hogan Street, Courtroom 4A~~<br>~~Jacksonville, Florida 32202~~ |
| 4:00 p.m., one day before Sale Hearing | Deadline to File and Serve Responses to Any |

2

| | Sale Objection |
|---|---|

## III.    MARKETING PROCESS

    A.    <u>Contact Parties</u>.

The Debtors, in consultation with their financial advisor GlassRatner Advisory & Capital Group LLC ("**GlassRatner**"), have developed a list of parties whom the Debtors believe may potentially be interested in consummating, and whom the Debtors reasonably believe would have the financial resources to consummate, a competing transaction to that of the Stalking Horse Purchaser (a "**Competing Transaction**") (each, individually, a "**Contact Party,**" and collectively, the "**Contact Parties**"). Following approval of the Bidding Procedures and until the Bid Deadline (as defined below), the Debtors intend to contact the Contact Parties to explore their interest and may initiate contact with, or solicit or encourage submission of any Qualified Bids by any person or otherwise facilitate any effort or attempt to make a Qualified Bid. Prior to the approval of the Bidding Procedures, third parties may continue to conduct due diligence on the Sellers and the Transferred Assets for purposes of being competing bidders for the Transferred Assets following the execution of confidentiality agreements with the Debtors. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an information package containing:

    1.    The Bidding Procedures Order;

    2.    The Asset Purchase Agreement;

    3.    These Bidding Procedures; and

    4.    A confidentiality agreement that is substantially similar to the confidentiality agreements executed by the Debtors with the Stalking Horse Purchaser (unless the Contact Party has already entered into and remains bound by a confidentiality agreement with the Debtors).

    B.    <u>Access to Diligence Materials</u>.

To participate in the bidding process and to receive access to then current and reasonably available due diligence materials (the "**Diligence Materials**"), a party must submit an executed confidentiality agreement in accordance with Section III.A.4. above, along with evidence satisfactory to the Debtors, demonstrating the party's financial capability to consummate a Competing Transaction (together, an "**Expression of Interest**"): to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: <u>mglade@glassratner.com</u>), with a copy to (ii) the Committees' retained financial advisor, Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212)

277-8101 (email: BWilliams@lincolninternational.com). **Potential bidders are instructed to contact only the retained financial advisors to the Debtors and not any other parties, including the Debtors or any Committee members.**

A party who submits an Expression of Interest and qualifies, in the Debtors' sole discretion, for access to Diligence Materials shall be a **"Preliminary Interested Purchaser"** and shall be provided prompt access to the Diligence Materials in no event later than one business day following receipt of an Expression of Interest.

## IV.    AUCTION QUALIFICATION PROCESS

To be eligible to participate in the Auction (as defined herein), each offer, solicitation or proposal (each, a **"Bid"**), and each party submitting a Bid (each, a **"Bidder"**), must be determined by the Debtors to satisfy each of the following conditions:

A.    <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount of 10% of the total consideration provided for in its Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the **"Good Faith Deposit"**). The Debtors will provide wire instructions for the Good Faith Deposit upon written request of any Preliminary Interested Purchaser made to (i) GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com).

B.    <u>Same or Better Terms</u>.

1.    **Each Bid must be on terms that are substantially similar, the same or better for the Debtors than the terms of the Asset Purchase Agreement.** At a minimum, each Bid must:

(a)    Propose a Competing Transaction for all or substantially all of the Transferred Assets;

(b)    Include an executed asset purchase agreement by the Bidder (a **"Competing Asset Purchase Agreement"**) in substantially the same form and on substantially the same material terms as the Asset Purchase Agreement, excepting the Bid Protections applicable only to the Stalking Horse Purchaser (including without limitation the Break-Up Fee and Expense Reimbursement);

(c)    Include a redline comparison marked to show all changes to the Asset Purchase Agreement;

(d) Include a signed statement that the Bid set forth in the Competing Asset Purchase Agreement is irrevocable until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein);

(e) Include a signed statement that the Bidder consents to be bound by and to the Covenants and Conditions;

(f) Propose a purchase price equal to or greater than $19,000,000.00[2] in cash (the **"Minimum Cash Amount"**);

(g) Obligate the Bidder to pay all Cure Amounts; and

(h) Not contain any break-up fee, expense reimbursement, or similar type of payment in favor of the Bidder.

2. A Bid will not be considered a Qualified Bid (as defined herein) if such Bid:

(a) Contains any material alterations to the Asset Purchase Agreement not contemplated under Section IV.B.1.(b) above;

(b) Is not received by the Bid Deadline (as defined herein) in accordance with these Bidding Procedures; or

(c) Does not contain evidence of the Bidder's financial ability to perform in accordance with Section IV.D. of these Bidding Procedures.

C. <u>Corporate Authority</u>. Each Bid must include written evidence acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; <u>provided, however,</u> that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

D. <u>Proof of Financial Ability to Perform</u>. Each Bid must include written evidence satisfactory to the Debtors to demonstrate that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, at a minimum, the following:

1. Contact names and telephone numbers for verification of financing sources;

---

[2] All amounts herein are expressed in United States dollars.

5

2.      Evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of at least 125% of the Minimum Cash Amount of such Bid, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of at least 125% of the Minimum Cash Amount of such Bid;

3.      The Bidder's current audited financial statements, <u>provided, however,</u> that if the Bidder is an entity formed solely for the purpose of the Bid, the Bidder must include current audited financial statements for such Bidder's equity holders, and evidence that such equity holders have guaranteed the obligations of such Bidder in connection with the Competing Transaction; and

4.      Any other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction.

E.      <u>No Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

F.      <u>Irrevocable</u>. A Bid must be irrevocable through the time of the Auction, <u>provided, however</u>, that if such Bid is accepted as the Prevailing Bid or the Backup Bid (each as defined herein), such Bid shall remain irrevocable thereafter, until the earlier of (i) the Outside Backup Date (as defined herein) or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder (as defined herein) or with the Backup Bidder (as defined herein).

G.      <u>Bid Deadline</u>. All Bids must be submitted so that they are actually received by the following parties on or before ~~August 8,~~September [21], 2018 at 4:00 p.m. (prevailing Eastern Time) (the "**Bid Deadline**"): (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); (v) the Debtors' retained financial advisor, GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade (mglade@glassratner.com); and (vi) the Committees' retained financial

advisor: Lincoln International, 444 Madison Avenue, Suite 300, New York, NY 10022, attention: Brent C. Williams (BWilliams@lincolninternational.com).

H.    Qualified Bids. A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of Sections IV.A-G of these Bidding Procedures shall constitute a **"Qualified Bid,"** and such Bidder shall constitute a **"Qualified Bidder."** For purposes of the Auction, the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is a Qualified Bid and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that other Bidders must satisfy to be a Qualified Bidder. The Stalking Horse Purchaser shall not be required to take any further action in order to participate in the Auction, or if the Asset Purchase Agreement submitted by the Stalking Horse Purchaser is the Prevailing Bid or the Backup Bid, to be named the Prevailing Bidder or the Backup Bidder (each as defined herein), as applicable. Within one business day after the Bid Deadline, the Debtors shall inform counsel to the Committees and the Stalking Horse Purchaser whether the Debtors will consider any Bids received to be Qualified Bids.

I.    Disclosure of Qualified Bids. If the Debtors receive one or more Qualified Bids (other than the Qualified Bid of the Stalking Horse Purchaser), then not later than two business days after the Bid Deadline (the **"Competing Bid Disclosure Deadline"**), the Debtors shall file a notice with the Bankruptcy Court disclosing the identity and aggregate consideration offered by such Qualified Bid(s).

J.    Cancellation of Auction If No Competing Qualified Bids Received. If the Debtors do not receive any other Qualified Bid(s) on or before the Bid Deadline, then on or before the Bid Disclosure Deadline the Debtors shall file a notice with the Bankruptcy Court cancelling the Auction, and will proceed to seek approval of the sale of the Transferred Assets to the Stalking Horse Purchaser under the Asset Purchase Agreement at the Sale Hearing.

## V.    AUCTION

A.    Determination of Highest and Best Qualified Bid.

1.    If one or more Qualified Bids (other than the Asset Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the **"Auction"**) to determine the highest and best Qualified Bid. The determination of the highest and best Qualified Bid shall take into account the following (the **"Bid Assessment Criteria"**):

(a)    the total consideration to be received by the Debtors;

(b)    the likelihood that the Admiralty Court will approve the Bidder as purchaser of the Transferred Assets; and

(c)  the likelihood of the Bidder's ability to timely consummate a Competing Transaction.

2.  The highest and best Qualified Bid must include cash in an amount not less than the Minimum Cash Amount.

B.  <u>Conduct of the Auction</u>.

1.  The Auction, if any, shall take place on ~~August 13,~~**September [26], 2018 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Troutman Sanders, LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, Georgia 30308, or such other place and time as the Debtors shall notify the Auction Attendees (as defined herein).

2.  Only Qualified Bidders may participate in the Auction.

3.  The Debtors and their professionals shall direct and preside over the Auction.

4.  The Auction will be transcribed by a certified court reporter.

5.  At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (such Qualified Bid, the **"Auction Baseline Bid"**). The Stalking Horse Purchaser shall have the right (but not the obligation) to match the highest and best Qualified Bid received prior to the Bid Deadline, and thus become the Auction Baseline Bid.

6.  At the start of the Auction, each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Transferred Assets, and at the Debtors' request, each Qualified Bidder must disclose the direct and indirect legal and beneficial owners of the Qualified Bidder.

7.  Unless otherwise agreed by the Debtors, only the Debtors, the Committees, **NOAA, the DIP Lender,** the Stalking Horse Purchaser, and any other Qualified Bidder, along with each of their respective professionals (collectively, the **"Auction Attendees"**), may attend the Auction in person, and only the Stalking Horse Purchaser and other Qualified Bidders will be entitled to make any Bids at the Auction.

8.  Terms of Overbids.

An **"Overbid"** is any bid made at the Auction after the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid at the Auction, a Bidder must comply with the following conditions:

<ol type="a" start="1">
<li>(a) The initial Overbid must be for a purchase price equal to or greater than $19,000,000.00 (the **"Initial Overbid"**).</li>
</ol>

    (b)    Any Bid after the Initial Overbid must be made in increments of not less than $500,000.00.

    (c)    The Stalking Horse Purchaser shall be entitled to credit bid the Bid Protections as a portion of any Overbid (including an Initial Overbid).

    (d)    All Overbids must at all times continue to comply with the conditions for a Qualified Bid set forth in Sections IV.A-G of these Bidding Procedures.

    (e)    All Overbids must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid. At the Debtors' request (in consultation with the Committees, but in the Debtors' sole and absolute discretion) at any point during the Auction, a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid (including performance of obligations under any Assumed Executory Contracts).

    9.    Announcing Overbids.

The Debtors shall announce at the Auction (a) the material terms of each Overbid that shall stand as the basis for the next Overbid; (b) the basis for calculating the total consideration offered in each such Overbid, and (c) the resulting benefit to the Debtors' estates, based on the Bid Assessment Criteria.

    C.    <u>Conclusion of Auction and Determination of Prevailing Bidder</u>.

The Auction will continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, upon consideration of the Bid Assessment Criteria and after consultation with the Committees, is the highest and best Qualified Bid at the Auction (the **"Prevailing Bid"** and the Bidder submitting such Prevailing Bid, the **"Prevailing Bidder"**). The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit a further Overbid to the last Overbid. Once the Debtors have designated the Prevailing Bidder, the Auction will be concluded. The Debtors will not consider any Bids submitted after the conclusion of the Auction.

    D.    <u>Backup Bidder</u>.

    1.    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or best

9

Qualified Bid after the Bid made by the Prevailing Bidder at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, will be designated as a backup bidder (the **"Backup Bidder"**). The Backup Bidder is required to keep its final Overbid (or, if the Backup Bidder did not submit any Overbids, then its initial Bid) (the **"Backup Bid"**) open and irrevocable until the earlier of (i) 4:00 p.m. (prevailing Eastern time) on the date that is 30 days after the Closing Date provided for in the Sale Order approving the Prevailing Bid (the **"Outside Backup Date"**), or (ii) the date of closing of a Competing Transaction with the Prevailing Bidder or with the Backup Bidder.

2.    Following the Sale Hearing, if the Prevailing Bidder fails to close due to a breach or failure to perform on the part of such Prevailing Bidder, the Debtors may designate the Backup Bidder to be the new Prevailing Bidder, and the Debtors will be authorized, but not required, to consummate a transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Prevailing Bidder's Good Faith Deposit shall be forfeited to the Debtors.

E.    <u>Consent to Jurisdiction as Condition to Bidding; Waiver of Jury Trial Rights</u>.

**BY SUBMITTING A BID, THE STALKING HORSE PURCHASER AND ALL OTHER QUALIFIED BIDDERS AT THE AUCTION ARE SUBMITTING TO THE CORE JURISDICTION OF THE BANKRUPTCY COURT, AND ARE WAIVING ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THESE BIDDING PROCEDURES, THE ASSET PURCHASE AGREEMENT, A COMPETING ASSET PURCHASE AGREEMENT, THE AUCTION OR THE CONSTRUCTION AND ENFORCEMENT OF ANY DOCUMENTS DELIVERED IN CONNECTION WITH A BID.**

## VI.    SALE HEARING

The Bankruptcy Court will conduct a hearing (the **"Sale Hearing"**) on ~~either (a) if no Auction occurs, [August 13, 2018 at 10:00 a.m.] (prevailing Eastern Time), or (b) if an Auction occurs, [August 15,~~September [28], 2018 at **[10:00 a.m.] (prevailing Eastern Time)**. At the Sale Hearing, the Debtors will seek approval of the transactions contemplated by the Asset Purchase Agreement or Competing Asset Purchase Agreement, as applicable, with the Prevailing Bidder. Objections, if any, to the sale of the Transferred Assets to the Prevailing Bidder and the transactions contemplated therewith (a **"Sale Objection"**) must be in writing and filed with the Bankruptcy Court by ~~August 8,~~September [21], 2018 at 4:00 p.m. (the **"Sale Objection Deadline"**). Any Sale Objection must also be served, so that it is actually received by the Sale Objection Deadline, on (a) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (b) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (c) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los

Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (d) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (e) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov). Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtor's determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections must be filed and served by the Sale Objection Deadline, or else will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. one day before the Sale Hearing.

## VII.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts established and maintained by a reputable financial institution acceptable to the Debtors, but shall not become property of the Debtors' bankruptcy estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder other than the Prevailing Bidder or the Backup Bidder shall be returned to such Qualified Bidder not later than three business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the closing of the transaction with the Prevailing Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Prevailing Bidder timely closes, its Good Faith Deposit shall be credited to its purchase price.

# # #

Document comparison by Workshare 9.5 on Wednesday, August 22, 2018
4:33:49 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS-FLORIDA/FTL/111755549/10 |
| Description | #111755549v10<FTL> - Premier Exhibitions, Inc. Bidding Procedures |
| Document 2 ID | interwovenSite://DMS-FLORIDA/FTL/111755549/11 |
| Description | #111755549v11<FTL> - Premier Exhibitions, Inc. Bidding Procedures |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 25 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 45 |

**Exhibit 2**

Sale Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

_____/

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On June 15, 2018, Premier Exhibitions, Inc., a Florida corporation (**"Premier"**); Arts and Exhibitions International, LLC, a Florida limited liability company (**"A&E"**); Dinosaurs Unearthed Corp., a Delaware Corporation (**"DU Corp."**); Premier Exhibitions International, LLC, a Delaware limited liability company (**"PEI"**); Premier Exhibition Management LLC, a Florida limited liability company (**"PEM"**); Premier Exhibitions NYC, Inc., a Nevada Corporation (**"Premier NYC"**); Premier Merchandising, LLC, a Delaware limited liability company (**"Premier Merch"**); and RMS Titanic, Inc., a Florida corporation (**"RMST"**), as debtors and debtors-in-possession (collectively, the **"Debtors"**), filed a motion [ECF No. 1055] (the "**Sale Motion**") for entry of an order (the **"Bidding Procedures Order"**), among other things, (a)  approving the Bidding Procedures[2] for a sale of the Transferred Assets (as defined in the Asset Purchase Agreement), on terms substantially similar to, and in no event less favorable to the Debtors than, the terms set forth in the Asset Purchase Agreement and as set forth in the Bidding Procedures; (b) selecting Premier Acquisition Holdings LLC as the stalking horse bidder in connection with such sale (the **"Stalking Horse Purchaser"**); (c) approving the form and manner of notices with respect to the auction for the Transferred Assets (the **"Auction"**) and the hearing to consider the sale of the Transferred Assets to the Stalking Horse Purchaser or Prevailing Bidder and rejection or assumption and assignment of related executory contracts and unexpired leases (the **"Sale Hearing"**); (d) approving the form of Asset Purchase Agreement; (e) approving a Break-Up Fee and Expense Reimbursement in favor of the Stalking Horse Purchaser; (f) scheduling the Auction and Sale Hearing; (g) authorizing the sale of the

---

[1]  The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2]  Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the motion to approve the Bidding Procedures or the Asset Purchase Agreement dated as of June 14, 2018 by and among (i) Premier, (ii) A&E, (iii) PEM, (iv) Premier NYC, (v) Premier Merch, (vi) PEI, (vii) DU Corp.; (vii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia, (ix) RMST, solely for purposes of Article III, Article V, Article VII and Article VIII, and Premier Acquisition Holdings LLC, a Delaware limited liability company (as amended, modified, or supplemented, the **"Asset Purchase Agreement"**), as applicable.

Transferred Assets free and clear of all liens, claims, encumbrances and interests;[3] and (g) granting related relief (the **"Sale Motion"**).

2.      On ~~July~~September [●], 2018, the United States Bankruptcy Court for the Middle District of Florida (the **"Bankruptcy Court"**) entered the Bidding Procedures Order [ECF No. ●].  Pursuant to the Bidding Procedures Order, the Auction, if any, for the Transferred Assets shall take place on ~~August 13,~~September [26], 2018, at 10:00 a.m. **(prevailing Eastern Time)** at the offices of Troutman Sanders LLP, located at 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, **by no later than** ~~August 8,~~**September [21], 2018, at 4:00 p.m. (prevailing Eastern Time)** (the **"Bid Deadline"**) may participate at the Auction.  Any party that wishes to take part in this process and submit a bid for the Transferred Assets must submit their competing bid before the Bid Deadline and in accordance with the Bidding Procedures.  To participate in the bidding process and to receive access to the then current and reasonably available due diligence materials (the "**Diligence Materials**"), a party must submit an executed confidentiality agreement in accordance with Section III.A.4. of the Bidding Procedures, along with evidence satisfactory to the to the Debtors, demonstrating the party's financial capability to consummate a Competing Transaction: to (i) the Debtors' retained financial advisor, GlassRatner Advisory & Capital Group LLC, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326, attention: Marshall Glade, Tel: (404) 835-8844, Fax: (678) 904-1991 (email: mglade@glassratner.com), with a copy to (ii) the Official Committee of Unsecured Creditors' (the "**Creditors Committee**") and the Official Committee of Equity Security Holders' (the "**Equity Committee**," and together with the Creditors Committee, the "**Committees**") retained financial advisors, Lincoln International, 44 Madison Avenue, Suite 300, New York, NY 1022, attention: Brent C. Williams, Tel: (212) 357-7750, Fax: (212) 277-8101 (email: BWilliams@lincolninternational.com).  **Potential bidders are instructed to contact only the retained financial advisors to the Debtors and not any other parties, including the Debtors or any Committee members.  If no Qualified Bid, other than the Qualified Bid submitted by the Stalking Horse Purchaser, is received by the Bid Deadline, then the Auction will be canceled.**

3.      The Bankruptcy Court will conduct a hearing (the **"Sale Hearing"**) ~~either (a) if no Auction occurs, on August 13,~~on September [28], 2018, at **[**10:00 a.m. ~~(prevailing Eastern Time), or (b) if an Auction occurs, August 15, 2018, at 10:00 a.m.**]** **(prevailing Eastern Time)**, before the Honorable Paul M. Glenn, United States Bankruptcy Judge, **United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202**, or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtors.  The Sale Hearing may be

---

[3] Except that to the extent that any artifacts owned by RMST are subject to the jurisdiction of the United States District Court for the Eastern District of Virginia, in the civil action styled *R.M.S. Titanic, Inv., Successor in Interest to Titanic Ventures Limited Partnership v. The Wrecked and Abandoned Vessel, Etc.*, Case No. 2:93-cv-902 (the "**Admiralty Court**") and to the Revised Covenants and Conditions (the "**Covenants and Conditions**") set forth in Exhibit A to the August 12, 2010 Opinion of the Admiralty Court, such artifacts shall continue to be subject to the Covenants and Conditions and to the jurisdiction of the Admiralty Court**, including, but not limited to, any requirement in the Covenants and Conditions that the Admiralty Court approve the sale of the Subject Titanic Artifact Collection (STAC) sometimes referred to as the American Collection.**

continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

4. Objections, if any, to the Sale and/or the Assumption and Assignment of Transferred Contracts to the Stalking Horse Purchaser, including Proposed Cure Amounts contemplated by the Asset Purchase Agreement must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Middle District of Florida; (c) be filed with the clerk of the United States Bankruptcy Court for the Middle District of Florida, United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Suite 3-150, Jacksonville, Florida 32202, (or filed electronically via CM/ECF), **by 4:00 p.m. (prevailing Eastern Time) on ~~August 8,~~September [21], 2018** (the **"Sale Objection Deadline"**); and (d) be served upon (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov), in each case, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on ~~August 8,~~September [21], 2018. Notwithstanding the foregoing, any objection to the conduct of the Auction (including the Debtors' determination of the Prevailing Bidder) may be raised for the first time at the Sale Hearing. **Any other Sale Objections not filed and served before the Sale Objection Deadline will be waived.** Responses to Sale Objections shall be filed and served by not later than 4:00 p.m. one day before the Sale Hearing.

5. This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Sale Motion, the Asset Purchase Agreement, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. Accordingly, the Debtors encourage parties in interest to review these documents in their entirety.

6. Copies of the Sale Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and the Bidding Procedures Order, may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com), Telephone: 404.885.3348 and Matthew R. Brooks (matthew.brooks@troutman.com), Telephone: 404.885.2618. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.

3

Dated: ~~July~~**September** [●], 2018

NELSON MULLINS RILEY
& SCARBOROUGH LLP

By _____ */s/ Daniel F. Blanks* _____
Daniel F. Blanks (FL Bar No. 88957)
Lee D. Wedekind, III (FL Bar No. 670588)
50 N. Laura Street, Suite 4100
Jacksonville, FL 32202
(904) 665-3656 (direct)
(904) 665-3699 (fax)
daniel.blanks@nelsonmullins.com
lee.wedekind@nelsonmullins.com

and

TROUTMAN SANDERS LLP
Harris B. Winsberg (GA Bar No. 117751)
(Fla. Bar No. 0127190)
Matthew R. Brooks (GA Bar No. 378018)
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutmansanders.com
matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in
Possession*

Document comparison by Workshare 9.5 on Wednesday, August 22, 2018
4:34:38 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS-FLORIDA/FTL/111758323/5 |
| Description | #111758323v5<FTL> - Premier Sale Notice |
| Document 2 ID | interwovenSite://DMS-FLORIDA/FTL/111758323/6 |
| Description | #111758323v6<FTL> - Premier Sale Notice |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 13 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 24 |

**Exhibit 3**

Cure Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

    Debtors.

_____/

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    **PLEASE TAKE NOTICE** that on June 15, 2018, Premier Exhibitions, Inc., Arts and Exhibitions International, LLC, Premier Exhibition Management LLC, Premier Exhibitions NYC, Inc., Premier Merchandising, LLC, Premier Exhibitions International, LLC, Dinosaurs Unearthed Corp., and RMS Titanic, Inc., (collectively, the "**Debtors**") filed a motion (ECF No. **1055**) (the "**Sale Motion**") with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") seeking approval of key dates, times and procedures related to the sale to Premier Acquisition Holdings LLC (the "**Stalking Horse Purchaser**") pursuant to an Asset Purchase Agreement dated as of June 14, 2018 among, on the one hand, the Stalking Horse Purchaser or its permitted assigns, as purchaser, and on the other hand, the Debtors and DinoKing Tech, Inc. d/b/a Dinosaurs Unearthed, a British Columbia company, as sellers (as amended, modified or supplemented, the "**Asset Purchase Agreement**") of the assets set forth therein (the "**Transferred Assets**").

    On ~~July~~September [●], 2018, the Bankruptcy Court entered an Order (ECF No. ●) (the "**Bidding Procedures Order**") approving Bidding Procedures with respect to the Auction[2] and Sale of the Transferred Assets. At a hearing before the Bankruptcy Court on ~~August~~September [●**28**], 2018, the Debtors intend to seek approval of, among other things, the sale of the Transferred Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR**

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Order, as applicable

**UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A HERETO.[3]**

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the Debtors may assume and assign to the Stalking Horse Purchaser or other Prevailing Bidder the executory contracts or unexpired leases listed on Exhibit A attached hereto (each, a **"Scheduled Contract"**) to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on **Exhibit A** attached hereto (the **"Cure Amount"**). **If you disagree with the proposed Cure Amount, object to the proposed assignment to the Stalking Horse Purchaser of the Scheduled Contract(s) or object to the Stalking Horse Purchaser's ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court by 4:00 p.m. (prevailing Eastern Time) on** ~~August 8,~~September [21], **2018 (the "Objection Deadline"), and serve such objection on (i) counsel to the Debtors, Troutman Sanders LLP, 600 Peachtree Street NE, Suite 3000, Atlanta, GA 30308, attention: Harris B. Winsberg (harris.winsberg@troutman.com) and Matthew R. Brooks (matthew.brooks@troutman.com); (ii) counsel to the Creditors Committee, Storch Amini PC, 140 East 45th Street, 25th Floor, New York, NY 10017, attention: Jeffrey Chubak (jchubak@storchamini.com); (iii) counsel to the Equity Committee, Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067, attention: Peter J. Gurfein (pgurfein@LGBFirm.com); (iv) counsel to the Stalking Horse Purchaser, Greenberg Traurig, P.A., 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, FL 33301, attention: Scott M. Grossman (grossmansm@gtlaw.com) and Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York NY 10020-1100, attention Jennifer Feldsher (jennifer.feldsher@bracewell.com); and (v) the Office of the United States Trustee, U.S. Department of Justice, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801, attention Miriam G. Suarez (Miriam.G.Suarez@usdoj.gov), so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on** ~~August 8,~~September [21], **2018**.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Amount(s); (b) the proposed assignment of the Scheduled Contract(s) to the Stalking Horse Purchaser or (c) adequate assurance of the Stalking Horse Purchaser's ability to perform, is filed by the Objection Deadline, you will be (i) deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) forever barred from objecting to the assignment of the Assumed Executory Contract(s) to the Stalking Horse Purchaser.

**PLEASE TAKE FURTHER NOTICE** that in the event the Stalking Horse Purchaser is not the Prevailing Bidder at the Auction, any counterparty to a Scheduled Contract shall have the right to object to the adequate assurance of the Prevailing Bidder's ability to perform under such Scheduled Contract, at or before the Sale Hearing. The Sale Hearing will be held on ~~either (a) if no Auction occurs, August 13,~~September [28], 2018 at [10:00 a.m. ~~(prevailing Eastern Time), or (b) if an Auction occurs, August 15, 2018 at 10:00 a.m.]~~ (prevailing Eastern

---

[3] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

**Time)**, before the Honorable Paul M. Glenn, United States Bankruptcy Judge, **United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202**, or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtors. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing. To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Prevailing Bidder's ability to perform.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Prevailing Bidder (including the Stalking Horse Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Transferred Assets to the Prevailing Bidder (including the Stalking Horse Purchaser) or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, in the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract or; (b) the ability of the Prevailing Bidder (including the Stalking Horse Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors, with the consent of the Stalking Horse Purchaser or other Prevailing Bidder, as applicable are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Prevailing Bidder (including the Stalking Horse Purchaser) without any further notice to or action, order or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts. Moreover, the Debtors explicitly reserve their rights to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to a Scheduled Contract against the Debtors that may arise under such Scheduled Contract; (b) creates a post-petition contract or agreement; or (c) elevates to administrative expense priority any claims of a counterparty to a Scheduled Contract against the Debtors that may arise under such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject to the fuller terms and conditions of the Sale Motion, the Bidding Procedures Order, the Asset Purchase Agreement and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Motion, the Asset Purchase Agreement (including exhibits thereto), the Bidding Procedures, and

35467726v2

the Bidding Procedures Order, may be obtained by request in writing, by telephone, or via email from counsel to the Debtors, Harris B. Winsberg (harris.winsberg@troutman.com), Telephone: 404.885.3348 Troutman Sanders LLP, 600 Peachtree Street NE, Suite 5200, Atlanta, GA 30308. In addition, copies of the aforementioned will be available for review on the website maintained by the Committees, http://www.jndla.com/cases/premiercommittee, and may be found on the PACER website, http://ecf.flmb.uscourts.gov.

Dated: **September** [●], 2018                    NELSON   MULLINS   RILEY   &

SCARBOROUGH LLP


By:_____
         Daniel F.  Blanks (FL Bar No.  88957)
         Lee D.  Wedekind, III (FL Bar No.  670588)
         50 N.  Laura Street, Suite 4100
         Jacksonville, Florida 32202
         (904) 665-3656 (direct)
         (904) 665-3699 (fax)
         daniel.blanks@nelsonmullins.com
         lee.wedekind@nelsonmullins.com

         *Co-Counsel for the Debtors and Debtors in Possession*

and

         TROUTMAN SANDERS LLP
         Harris B. Winsberg (GA Bar No. 117751)
         Matthew R. Brooks (GA Bar No. 378018)
         600 Peachtree Street NE, Suite 5200
         Atlanta, GA 30308
         (404) 885-3000 (phone)
         (404) 962-6990 (fax)
         harris.winsberg@troutmansanders.com
         matthew.brooks@troutmansanders.com

         *Counsel for the Debtors and Debtors in Possession*

**EXHIBIT A**

**[Counterparty Name]**          **[Contract/Lease]**                    **[Cure Amount]**

Document comparison by Workshare 9.5 on Wednesday, August 22, 2018
4:36:24 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS-FLORIDA/FTL/111758336/5 |
| Description | #111758336v5<FTL> - Premier Cure Notice |
| Document 2 ID | interwovenSite://DMS-FLORIDA/FTL/111758336/6 |
| Description | #111758336v6<FTL> - Premier Cure Notice |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |
| Deletions | 10 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 22 |

**Exhibit 4**

Assumption Notice

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

      Debtors.

_____/

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACT OR UNEXPIRED LEASE**

      **PLEASE TAKE NOTICE** that a hearing was held before the Honorable Paul M. Glenn, United States Bankruptcy Judge, United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Bryan Simpson United States Courthouse, 300 North Hogan Street, Courtroom 4A, Jacksonville, Florida 32202 on ~~August~~September [●28], 2018, at [10:00 a.m. ] (the **"Sale Hearing"**). At the Sale Hearing, the Bankruptcy Court[2] entered an order (a) approving the sale of the Transferred Assets to [●] (the **"Purchaser"**) in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtors, pursuant to the terms of the Asset Purchase Agreement, to assume and assign certain executory contracts and unexpired leases to the Purchaser.

      **PLEASE TAKE FURTHER NOTICE** that the Purchaser has elected to take assignment of the executory contracts and unexpired leases as set forth on Exhibit A hereto.

      Dated: [●], 2018            NELSON MULLINS RILEY & SCARBOROUGH LLP

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

By:_____
    Daniel F.  Blanks (FL Bar No.  88957)
    Lee D.  Wedekind, III (FL Bar No.  670588)
    50 N.  Laura Street, Suite 4100
    Jacksonville, Florida 32202
    (904) 665-3656 (direct)
    (904) 665-3699 (fax)
    daniel.blanks@nelsonmullins.com
    lee.wedekind@nelsonmullins.com

*Co-Counsel for the Debtors and Debtors in Possession*

and

    TROUTMAN SANDERS LLP
    Harris B. Winsberg (GA Bar No. 117751)
    Matthew R. Brooks (GA Bar No. 378018)
    600 Peachtree Street NE, Suite 5200
    Atlanta, GA 30308
    (404) 885-3000 (phone)
    (404) 962-6990 (fax)
    harris.winsberg@troutmansanders.com
    matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in Possession*

35467673v2

## EXHIBIT A

**[Counterparty Name]**        **[Contract/Lease]**        **[Cure Amount]**

Document comparison by Workshare 9.5 on Wednesday, August 22, 2018
4:37:16 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS-FLORIDA/FTL/111758341/4 |
| Description | #111758341v4<FTL> - Premier Assumption Notice |
| Document 2 ID | interwovenSite://DMS-FLORIDA/FTL/111758341/5 |
| Description | #111758341v5<FTL> - Premier Assumption Notice |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 4 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 6 |

# EXHIBIT 6

| From: | Marshall Glade </O=GLASSRATNER/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MGLADE> |
|---|---|
| To: | Daoping Bao; Jessica Sanders (jsanders@prxi.com); Jerry Henshall (jhenshall@prxi.com); Cavender, Jeffery W. |
| CC: | Armen Avedissian; William McCaleb |
| Sent: | 1/22/2018 4:19:16 PM |
| Subject: | FW: Term Sheet |
| Attachments: | DM-#5600385-v6-RMS_Titanic_Plan_Term_Sheet.pdf |

See below.  I have not reviewed yet.

Jeff – they have specified for the company and its advisors only – does this mean do not disclose to committees???

**From:** Gilbert Li [mailto:Gli@AltaFundamental.com]
**Sent:** Monday, January 22, 2018 4:15 PM
**To:** Marshall Glade <mglade@glassratner.com>; William McCaleb <wmccaleb@glassratner.com>
**Cc:** Feldsher, Jennifer <jennifer.feldsher@bracewell.com>; Bill Schwartz <bschwartz@ApolloLP.com>; Bretton Hunchak <BHunchak@AltaFundamental.com>
**Subject:** Term Sheet

Marshall/William:

As we discussed earlier, please see attached our initial term sheet, as promised.  The attached term sheet is being sent for discussion purposes only, on the condition that it be kept strictly confidential and for the Company's and its advisors' eyes only, and subject to your agreement it will not be shared with any other party without our written consent.

As you can imagine, we tried to put in there a lot of items, many to be discussed/numbers to be confirmed, between your side and ours.  Please let us know when you and team have had a chance to review and are ready to discuss.  We will be on standby and available to speak.

Best,
Gilbert

Gilbert Li
Alta Fundamental Advisers LLC
777 Third Avenue 19th Floor
New York, NY 10017
Office: (212) 319-1778
gli@altafundamental.com

This message is intended for the use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message as well as any attachments. This document is not, and may not be relied on in any manner as legal, tax or investment advice or as an offer to sell or a solicitation of an offer to buy an interest in any Alta Fundamental Advisers fund. Please refer to the relevant offering memorandum for full details on investment products, strategies and the associated risks. Past performance is not necessarily indicative of future results.

# EXHIBIT 7

## William McCaleb

| | |
|---|---|
| **From:** | William McCaleb |
| **Sent:** | Wednesday, January 24, 2018 12:57 PM |
| **To:** | Murphy, Brendan; Williams, Brent |
| **Cc:** | Marshall Glade; Armen Avedissian |
| **Subject:** | Premier Update |
| **Attachments:** | Premier Target List_Activity Summary_1-24-18.pdf; Premier Exhibitions_Confidential Information Memorandum_12-29-17 revision.pdf |

Attached is the marketing update in advance of our call this afternoon. I am also attaching the updated CIM per your request.

**William McCaleb**
*Managing Director*



**GlassRatner Advisory & Capital Group LLC**
3445 Peachtree Road, Suite 1225 | Atlanta, GA 30326
**T** (678) 399-8448 | **C** (512) 653-4260 | **F** (678) 904-1991
Website | Bio | vCard | wmccaleb@glassratner.com

 BTG Global Advisory

NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately, and delete this message and all copies and backups thereof. Thank you.

GLASS003831

**Premier Exhibitions**
Target List - January 24, 2018

| # | Company/Target | First Name | Last Name | Position | Phone Number | Email | City | Contacted | NDA Sent | Signed NDA | CIM Sent | Had Calls | Passed | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Avenue Partners, LLC | Blair | John | | | bjohn@avenuepartnersllc.com | | 11/15/2017 | X | | | | X | Size is too small for their firm |
| 2 | Activision Blizzard | Guy | Nachimov | Chief Strategy Officer | (310) 255-2000 | guy.nachimov@activisioncast.com | | 11/15/2017 | | | | | | |
| 3 | Akela | Dmitry | Akhipov | Co-founder & VP of 7 465 563 4512 Development | | akhipov@akela.com | Russia | 11/15/2017 | X | | | | | |
| 4 | Ali Modia Ali Modia Ventures | Allan | Grafman | | 914-060-5590 | allangrafman@alimodiaventures.com | | 11/15/2017 | | | | | | |
| 5 | Alux Fundamental Advisers LLC | Jeremy | Carton | | O 212-319-1778 | jc@aluxfundamental.com | | 11/15/2017 | X | X | | | X | Call scheduled 12/22/C. Call with management on 1/9, follow-up call on 1/16, received bare-bones proposal and requested confidentiality currently |
| 6 | American Discovery Capital | Aw | Padhye | | | aw.padhye@americandiscoverycapital.com | | 11/15/2017 | X | X | X | X | | |
| 7 | American Museum of Natural History | Gregory | Rami | Special Collections (212) 769-5420 Development Department (212) 769-5606 | | greeni@amnh.org | New York, NY | 11/15/2017 | X | | | | | |
| 8 | Andrew W. Mellon Foundation | Eliis | Buff | Senior Program Officer | 212-838-8400 | esperno@mellon.org | New York, NY | 11/15/2017 | X | | | | | |
| 9 | Apollo | Bill | Schwartz | | O 212-822-0729 | bschwartz@apollolp.com | | 11/15/2017 | X | | X | X | | |
| 10 | Armada Group GP Inc | George | Wright | President | O 321-501-6660 | george.wright001@gmail.com | | 11/15/2017 | X | X | X | X | | Call 12/12/17, call with management on 1/9, follow-up call on 1/16, received bare-bones proposal and requested confidentiality currently |
| 11 | Att Market Advisors, LLC | Mitchell | Zuckerman | | | mitchell.zuckerman@unlsda.com | | 11/15/2017 | X | X | | | | Requested updated financials and claims list. In the midst of reviewing them. LOI. Have been granted permission to speak with John Joseph (Credit Suy). Call with CFO and advisors on 1/29/9. AA had call with T Stefman on 1/9 and legal counsel on 1/15 |
| 12 | Axia Panorama International | Mathias | Thiet | Creative Director | 49 (0) 30 695 89 80 10 | info@axia-international.com | Berlin | 11/15/2017 | X | | | | | |
| 13 | Aston Ventures (Douglas Barrowman) | Douglas | Barrowman | | +44 (0) 1624 631710 | douglas@astonventures.com | | 11/15/2017 | | | | | | Incorrect Email |
| 14 | Baise Entertainment | Brian | Becker | CEO | | brian@baiseentertainment.com | | 11/15/2017 | | | | | | Not a good fit |
| 15 | Beverly Hills Group (Richard Tut) | Richard | Anderson | | | rtut@me.com | | 11/15/2017 | | | | | | |
| 16 | Bill & Melinda Gates Foundation | Allen | Golston | President of U.S. Program | 205-709-3100 | allen.golston@gatesfoundation.org | Seattle, WA | 11/15/2017 | X | | | | | |
| 17 | Blackstone | Diana | De Ryss | Director of Operations U.S. program | 205-709-3100 | | | 11/15/2017 | X | | | | | |
| 18 | Blackstone | David | Jacobs | Director of program? | O 914-646-0426 | david.jacobs@blackstonisadvisors.com | | 11/15/2017 | X | | X | | | |
| 19 | Blockchief Capital Management | Victoria | Lee | | O 240-223-1339 | abs.p@blackstorehealt.com | | 11/15/2017 | X | | | | | |
| 20 | | Jonathon | Tipton | | | | | | | | | | | |


**GLASS RIVER**

GLASS003832

# EXHIBIT 8

## Brooks, Matthew Ray

| | |
|---|---|
| **From:** | Peter J. Gurfein <pgurfein@LGBFirm.com> |
| **Sent:** | Wednesday, January 31, 2018 4:37 PM |
| **To:** | Cavender, Jeffery W. |
| **Subject:** | Premier |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

I have expressed my concern to you that the Equity Committee has been kept in the dark about significant contacts between the Debtors and Apollo and Alta Fundamental. The Plan Support Agreement specifically requires that the Debtors coordinate these effort with the Committee. The Marketing Process is required to be conducted by Glass Ratner "and the financial advisors to the Supporting Committees, Lincoln International LLC, *and jointly run by them* ..." PSA para. 2.(r) (emphasis added). Section 5 (a)(vi) requires that the Debtors provide "access to the advisors of the Debtors with respect to the Marketing Process." Section 7 of the PSA requires that "the Parties shall cooperate with each other in good faith and shall coordinate their activities ...in respect of...(d) the negotiation among the parties of alternative plans of reorganization or liquidation... " and "shall refrain from taking action that would frustrate the proposes and intent of this Agreement." The Debtors are in default of the PSA with respect to each of these provisions. Please accept this email as notice of those defaults.

As to the mediation, you have explained the reasons to move the dates for mediation but the Committee is operating in the dark and that leads to distrust. In addition to being excluded from the Marketing Process, the Committee has been cut off from management calls and has been relegated to written inquiries and responses. But the responses from Jessica Sanders to the Committee's written requests are now running at least two months behind. Combining that with the exclusion of the Committee's advisors from the sale/plan process can only have a further negative impact on the prospects for reorganization. I suggest a prompt management call just with business people as a means for them to re-connect and to mitigate the unease that the Committee has been feeling by being kept in the dark.

In addition, you and I and Jennifer Feldsher should get on a conference call to discuss the Apollo and Alta proposal. There is no reason for the Debtors and the equity group not to share what is being discussed consistent with the Committee's existing confidentiality agreement with the Debtors. And we could expand that agreement to Apollo/Alta so that all would be covered by confidentiality.

I propose the following agenda for that call:

1. The structure of the submission to the Debtors.
2. What due diligence is being sought?
   a. What is the debtor producing in response?
   b. What is the debtor not producing?
   c. Reasons for the foregoing responses?
   d. What can be done to expedite the process?
3. Timing for completion of the foregoing and submission of a proposal?

Please call to discuss the foregoing.

Best –

Peter

# **EXHIBIT 9**



June 28, 2017 ~~June 1, 2017~~

Recipient  ROYAL MUSEUMS GREENWICH
Address1  PARK ROW
Address 2  GREENWICH   SE10 9NF
City, State Zip   UK

### CONFIDENTIALITY AGREEMENT

Dear [Recipient],

In connection with your possible interest in a transaction involving Premier Exhibitions, Inc. (the "Transaction"), you have requested that Premier Exhibitions, Inc. (the "Company") or its representatives furnish you or your representatives with certain information relating to the Company or the Transaction. All such information (whether oral or contained on written or other tangible medium) furnished (whether before or after the date hereof) by the Company or its directors, officers, employees, affiliates, representatives (including, without limitation, financial advisors, attorneys and accountants) or agents (collectively, "our Representatives") to you or your directors, officers, employees, affiliates, representatives (including, without limitation, your financial advisors, attorneys and accountants) or agents (collectively, "your Representatives") and all analyses, compilations, forecasts, studies or other documents prepared by you or your Representatives in connection with your or their review of, or your interest in, the Transaction that contain or reflect any such information is hereinafter referred to as the "Information". The term Information will not, however, include information which (i) is or becomes publicly available other than as a result of a disclosure by you or your Representatives or (ii) is or becomes available to you on a non-confidential basis from a source (other than the Company or our Representatives) which, to the best of your knowledge after due inquiry, is not prohibited from disclosing such information to you by a legal, contractual or fiduciary obligation to the Company.

Accordingly, you hereby agree that:

1.  You and your Representatives (i) will keep the Information confidential and will not (except as required by applicable law, regulation or legal process, and only after compliance with paragraph 3 below), without the Company's prior written consent, disclose any Information in any manner whatsoever, and (ii) will not use any Information other than for the sole purpose of evaluating or effecting the Transaction; provided, however, that you may reveal the Information to your Representatives (a) who need to know the Information for the purpose of evaluating the Transaction, (b) who are

**UNITED STATES**
3045 Kingston Court, Suite I
Peachtree Corners, GA 30071 USA
**P** 404.842.2600

**CANADA**
#110 - 11188 Featherstone Way
Richmond, BC V6W 1K9 Canada
**P** 604.277.0707

www.premierexhibitions.com

informed by you of the confidential nature of the Information and (c) who agree to act in accordance with the terms of this letter agreement. You will cause your Representatives to observe the terms of this letter agreement, and you will be responsible for any breach of this letter agreement by any of your Representatives.

2.    You and your Representatives will not (except as required by applicable law, regulation or legal process, and only after compliance with paragraph 3 below), without the Company's prior written consent, disclose to any person the fact that the Information exists or has been made available, that you are considering the Transaction or any other transaction involving the Company, or that discussions or negotiations are taking or have taken place concerning the Transaction or involving the Company or any term, condition or other fact relating to the Transaction or such discussions or negotiations, including, without limitation, the status thereof.

3.    In the event that you or any of your Representatives are requested pursuant to, or required by, applicable law, regulation or legal process to disclose any of the Information, you will notify the Company promptly so that it may seek a protective order or other appropriate remedy or, in the Company's sole discretion, waive compliance with the terms of this letter agreement. In the event that no such protective order or other remedy is obtained, or that the Company does not waive compliance with the terms of this letter agreement, you will furnish only that portion of the Information which you are advised by counsel is legally required and will exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information. If you determine that applicable law or regulation requires you to issue a public statement regarding the Transaction, you will consult with the Company regarding the contents of any such public statement prior to its release.

4.    If you determine not to proceed with the Transaction, at any time upon the request of the Company or any of our Representatives, you will either (i) promptly destroy all Information on any tangible medium in your or your Representatives' possession and confirm such destruction to us in writing, or (ii) promptly deliver to the Company at your own expense all tangible media containing Information in your or your Representatives' possession; provided, however, in no case shall you be required to delete or destroy any information contained in your computer backup systems, which information shall continue to be subject to the terms of this letter agreement. Notwithstanding such return or destruction, all Information, including, without limitation, any oral Information will continue to be subject to the terms of this letter agreement.

5.    You acknowledge that neither the Company nor the Company's other Representatives, nor any of their respective officers, directors, employees, agents or controlling persons, within the meaning of Section 20 of the Securities Exchange Act of 1934, as amended, makes any express or implied representation or warranty as to the accuracy or completeness of the Information, and you agree that no such person will have any liability relating to the Information or for any errors therein or omissions therefrom. You

exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

10.     This letter agreement will be governed by and construed in accordance with the laws of the State of Georgia applicable to contracts between residents of that State and executed in and to be performed in that State. You agree that any action with respect to this letter agreement shall be brought, exclusively in the United States Bankruptcy Court for the Middle District of Florida (Jacksonville Division) (assuming subject matter jurisdiction) or the state courts (assuming the absence of federal court subject matter jurisdiction) located in Jacksonville, Florida, and neither party shall raise any objection to such venue based on the doctrine of *forum non-conveniens* or any other basis. You further agree that service of process shall be effective if sent to you by mail at the address set forth above.

11.     This letter agreement contains the entire agreement between you and the Company concerning the confidentiality of the Information, and no modifications of this letter agreement or waiver of the terms and conditions hereof will be binding upon you or the Company, unless approved in writing by each of you and the Company. This letter agreement may be executed in counterparts which may be delivered by telecopy or other electronic transmission and together such counterparts shall be one instrument.

Please confirm your agreement with the foregoing by signing and returning to the undersigned the duplicate copy of this letter enclosed herewith.

Very truly yours,

**PREMIER EXHIBITIONS, INC.**

By:     _____
        Jessica Sanders

Title:  Corporate Secretary

Date:   _____

Accepted and Agreed as of the date first written above:

[Recipient Firm]

By:     _____
        Signor

Title:  DIRECTOR, RMG.

further agree that you are not entitled to rely on the accuracy or completeness of the Information and that you will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, when, as and if executed, subject to such limitations and restrictions as may be contained therein. Nothing in this Agreement shall be construed as obligating the Company or any of our Representatives to provide, or to continue to provide, any Information to you or your Representatives.

6.   You are aware, and you will advise your Representatives who are informed of the matters that are the subject of this letter agreement, of the restrictions imposed by the United States securities laws on the purchase or sale of securities by any person who has received material, non-public information from the issuer of such securities and on the communication of such information to any other person when it is reasonably foreseeable that such other person is likely to purchase or sell such securities in reliance upon such information.

7.   You acknowledge and agree that (a) the Company and our Representatives are free to conduct the process leading up to a possible Transaction as the Company and our Representatives, in the Company's sole discretion, determine (including, without limitation, by negotiating with any prospective buyer and entering into a preliminary or definitive agreement without prior notice to you or any other person), (b) the Company reserves the right, in its sole discretion, to terminate discussions and negotiations with you at any time and for any reason, and (c) unless and until a written definitive agreement concerning the Transaction has been executed, neither the Company nor any of our Representatives will have any liability to you with respect to the Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to the Transaction or otherwise. Neither party is under any obligation to accept any proposal regarding a possible Transaction, and either party may terminate discussions and negotiations with the other party at any time.

8.   You acknowledge that remedies at law may be inadequate to protect the Company against any actual or threatened breach of this letter agreement by you or by your Representatives, and, without prejudice to any other rights and remedies otherwise available to us, you agree to the granting of injunctive relief in the Company's favor without proof of actual damages.   In the event of litigation relating to this letter agreement, if a court of competent jurisdiction determines in a final, non-appealable order that this letter agreement has been breached by either party, then the breaching party will reimburse the nonbreaching party for its costs and expenses (including, without limitation, legal fees and expenses) incurred in connection with all such litigation.

9.   You agree that no failure or delay by the Company in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial

Date:  28 JUNE 2017

# EXHIBIT 10

**Roberts, Matthew G.**

| | |
|---|---|
| **From:** | Kevin Fewster <KFewster@rmg.co.uk> |
| **Sent:** | Wednesday, June 28, 2017 9:30 AM |
| **To:** | Armen Avedissian |
| **Subject:** | Non disclosure agreement |
| **Attachments:** | CANON_SRV_iRADVC5235i_JWF12224_4460_001.pdf |

Dear Sir

My apologies for previous misunderstanding.  Please find attached revised form.

I look forward to receiving relevant materials from you.

Regards

Kevin Fewster

**Dr Kevin Fewster**
Director, Royal Museums Greenwich
Direct +44 (0)208 312 6606

**Royal Museums Greenwich**
National Maritime Museum  |  *Cutty Sark*
Royal Observatory  |  The Queen's House
+44 (0)208 858 4422

―

Book now for *Death in the ice: the shocking story of Franklin's final expedition* at the National Maritime Museum, 14 July 2017 – 7 January 2018

For the latest exhibition information, events, news and transport information visit rmg.co.uk
Sign up for our e-newsletter  |  This email and its content are subject to our disclaimer

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

## Roberts, Matthew G.

| | |
|---|---|
| **From:** | Armen Avedissian <aavedissian@glassratner.com> |
| **Sent:** | Tuesday, August 28, 2018 2:04 PM |
| **To:** | Brooks, Matthew Ray; Roberts, Matthew G.; Marshall Glade; Winsberg, Harris B. |
| **Subject:** | Davis Polk data room access request - FW: Premier Exhibitions - Data Room |



**Armen Avedissian**

Senior Managing Director

**Direct:** 213.226.6042
**Mobile:** 818.481.6415
**Email:** aavedissian@glassratner.com
**VCard** | **LinkedIn** | **www.GlassRatner.com** | **www.brileyfin.com**

555 W. 5th Street
Suite 3725
Los Angeles, CA 90013



NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately, and delete this message and all copies and backups thereof. Thank you.

**From:** Armen Avedissian
**Sent:** Wednesday, September 20, 2017 2:37 PM
**To:** 'Levin, Sarah E.' <sarah.levin@davispolk.com>
**Subject:** RE: Premier Exhibitions - Data Room

Thanks.

**\*\*\*PLEASE NOTE OUR NEW ADDRESS (BELOW), we will be temporarily located in Suite 4550 until November 1, 2017\*\*\***

**Armen Avedissian**
*Senior Managing Director*



**GlassRatner Advisory & Capital Group LLC**
555 W. 5th Street, Suite 3725 | Los Angeles, CA 90013
**T** (424) 239-6842 | **C** (818) 481-6415 | **F** (424) 354-1718
Website | Bio | vCard | aavedissian@glassratner.com



NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately, and delete this message and all copies and backups thereof. Thank you.

**From:** Levin, Sarah E. [mailto:sarah.levin@davispolk.com]
**Sent:** Wednesday, September 20, 2017 2:36 PM
**To:** Armen Avedissian <aavedissian@glassratner.com>
**Subject:** RE: Premier Exhibitions - Data Room

Yes. Davis Polk has been retained by Royal Museums Greenwich with respect to its interest in the sale of the Titanic artifacts.

Best,
Sarah

**Sarah E. Levin**

**Davis Polk & Wardwell London LLP**
5 Aldermanbury Square | London EC2V 7HR
+44 (0)20 7418 1306 tel | +44 7980 770075 cell | +44 (0)20 7710 4806 fax
sarah.levin@davispolk.com

---

Davis Polk includes Davis Polk & Wardwell LLP and its associated entities. Davis Polk & Wardwell London LLP is a limited liability partnership formed under the laws of the State of New York, USA, and is authorised and regulated by the Solicitors Regulation Authority with registration number 566321.

---

**From:** Armen Avedissian [mailto:aavedissian@glassratner.com]
**Sent:** Wednesday, September 20, 2017 10:11 PM
**To:** Levin, Sarah E.
**Subject:** RE: Premier Exhibitions - Data Room

Sarah,

Can you please send me a short email saying that you have been retained by your client? Thanks

**\*\*\*PLEASE NOTE OUR NEW ADDRESS (BELOW), we will be temporarily located in Suite 4550 until November 1, 2017\*\*\***

**Armen Avedissian**
*Senior Managing Director*



**GlassRatner Advisory & Capital Group LLC**
555 W. 5th Street, Suite 3725 | Los Angeles, CA 90013
**T** (424) 239-6842 | **C** (818) 481-6415 | **F** (424) 354-1718
Website | Bio | vCard | aavedissian@glassratner.com



NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately, and delete this message and all copies and backups thereof. Thank you.

---

**From:** Levin, Sarah E. [mailto:sarah.levin@davispolk.com]
**Sent:** Wednesday, September 20, 2017 1:59 PM
**To:** Armen Avedissian <aavedissian@glassratner.com>
**Subject:** RE: Premier Exhibitions - Data Room

Thank you, Armen. Nice to speak with you as well. Please add me and my colleague Jacob Weiner
jacob.weiner@davispolk.com.

Best,
Sarah

2

**Sarah E. Levin**

**Davis Polk & Wardwell London** LLP
5 Aldermanbury Square  |  London EC2V 7HR
+44 (0)20 7418 1306 tel  |  +44 7980 770075 cell  |  +44 (0)20 7710 4806 fax
sarah.levin@davispolk.com

Davis Polk includes Davis Polk & Wardwell LLP and its associated entities. Davis Polk & Wardwell London LLP is a limited liability partnership formed under the laws of the State of New York, USA, and is authorised and regulated by the Solicitors Regulation Authority with registration number 566321.

---

**From:** Armen Avedissian [mailto:aavedissian@glassratner.com]
**Sent:** Wednesday, September 20, 2017 9:51 PM
**To:** Levin, Sarah E.
**Subject:** Premier Exhibitions - Data Room

Sarah,

It was great speaking with you today and thanks for reaching out to me.

Please send me an email with the names and email addresses of the individuals that you would like to have access to the data room.

Regards,

**\*\*\*PLEASE NOTE OUR NEW ADDRESS (BELOW), we will be temporarily located in Suite 4550 until November 1, 2017\*\*\***

**Armen Avedissian**
*Senior Managing Director*



**GlassRatner Advisory & Capital Group LLC**
555 W. 5th Street, Suite 3725 | Los Angeles, CA 90013
**T** (424) 239-6842 | **C** (818) 481-6415 | **F** (424) 354-1718
Website | Bio | vCard | aavedissian@glassratner.com



NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately, and delete this message and all copies and backups thereof. Thank you.

# <u>EXHIBIT 11</u>

**Premier Exhibitions**
**July 1, 2018 - August 22, 2018**

| Company | Last Activity Date | Activity Type | Index | Folder | Document Title | Original File Name | Views | Status | Complete Folder Path |
|---|---|---|---|---|---|---|---|---|---|
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 21. Perm Venue Comparison 2017 vs 2016 Summary & Detailed | Perm Venue Comparison 2017 vs 2016 Summary & Detailed.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 21. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 21. EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016 | EBITDA Analysis Unaudited - Premier & Dinoking 12-31-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 21. WHERE-Premier Exhibitions ORL 2017 | WHERE-Premier Exhibitions ORL 2017.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 21. Westgate Voucher Agmt, 1-28-2015 | Westgate Voucher Agmt, 1-28-2015.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 20. Welcome-Guide-Map | Welcome-Guide-Map.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 23. Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Income Statement- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 22. WHERE-Premier Exhibitions ORL 2017 | WHERE-Premier Exhibitions ORL 2017.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 22. ORLANDO ADS (1) | ORLANDO ADS.docx | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 22. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 Revised 5-18-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 22. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 22. Premier Case Costs 12.2017 | Premier Case Costs 12.2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 28. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 27. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 26. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 25. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 24. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 23. Premier Exhibitions, Inc. -Costs of Being a Public Company | Premier Exhibitions, Inc. -Costs of Being a Public Company.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 33. SNL BV Las Vegas Study - Quant-Preliminary Report-1-20-11 | SNL BV Las Vegas Study - Quant-Preliminary Report-1-20-11.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 32. SNL Attendance Analysis Final Close | SNL Attendance Analysis Final Close.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 31. Rent Expense Schedule PRXI | Rent Expense Schedule PRXI.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 30. Rent Expense Schedule PRXI (2) | Rent Expense Schedule PRXI (2).xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 29. Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017 | Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 39. Luxor - 3rd Amendment | Luxor - 3rd Amendment.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 38. Perm Venues Budget vs Actual Jan 2018 | Perm Venues Budget vs Actual Jan 2018.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 37. Perm Venue Comparison 01-31-2018 | Perm Venue Comparison 01-31-2018.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 36. Summary of Property Leases 2-5-2018 | Summary of Property Leases 2-5-2018.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 35. SNL The Exhibition - Consumer Research | SNL The Exhibition - Consumer Research.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 34. SNL New York P&L as of 03.10.17 | SNL New York P&L as of 03.10.17.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 43. Premier Exhibitions International Op Agmt - signed | Premier Exhibitions International Op Agmt - signed.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:35 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 42. Premier Exhibitions International LLC - Certificate of Formation.082708 | Premier Exhibitions International LLC - Certificate of Formation.082708.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 41. PHP - NV Business License 2018 | PHP - NV Business License 2018.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 40. Certificate of Incorporation | Certificate of Incorporation.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 20. Westgate Voucher Agmt, 1-28-2015 | Westgate Voucher Agmt, 1-28-2015.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 20. Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016 | Combined Unaudited Income Statement - Premier & Dinoking 12-31-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 20. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Nov17 12-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 20. Perm Venue Comparison 12-31-2017 | Perm Venue Comparison 12-31-2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 20. ORLANDO TITANIC 6-17-2018 | ORLANDO TITANIC 6-17-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 19. LV TITANIC 6-17-2018 | LV TITANIC 6-17-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 8. Premier Exhibitions-summary of deal terms for touring exhibitions currently open 2016-11-03 | Premier Exhibitions-summary of deal terms for touring exhibitions currently open 2016-11-03.xlsx | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 8. Las Vegas Tourism Report 2016 | Las Vegas Tourism Report 2016.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 8. Grayline | Grayline.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 8. Premier Exhibits IO - ThinkNear - 1Q17 - TITANIC | Premier Exhibits IO - ThinkNear - 1Q17 - TITANIC.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 8. Grayline | Grayline.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 8. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 Revised.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 9. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 10-31-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 9. Kenney-Dinner-Show-Rack-Card-Turnpike | Kenney-Dinner-Show-Rack-Card-Turnpike.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 9. Premier Exhibits IO - Vegas2Go - BODIES - March-April 2017 | Premier Exhibits IO - Vegas2Go - BODIES - March-April 2017.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 9. I-Love-Orlando-NewAd-Agreement-11-30-2016 | I-Love-Orlando-NewAd-Agreement-11-30-2016.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 9. PWC Global Outlook 2017 | PWC Global Outlook 2017.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 9. VRTP-Seaworld CreaturesoftheDeep-contract | VRTP-Seaworld CreaturesoftheDeep-contract.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 10. Attendance analysis 02-28-18 | Attendance analysis 02-28-18.xlsx | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 9. Attendance analysis 03-31-18 | Attendance analysis 03-31-18.xlsx | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 9. Diligence Request - Management Compensation- Open Positions 2.1.18 | Diligence Request - Management Compensation- Open Positions 2.1.18.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 9. Perm Venue Comparison Q3 2017 and Q3 2016 | Perm Venue Comparison Q3 2017-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 9. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Oct16 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 9. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 YTD Comparative 2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 10. Kissimmee Guest Services | Kissimmee Guest Services.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 10. Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement 10-31-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 10. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 8-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 10. Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Balance Sheet Oct17-Sep17 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 10. Perm Venue Comparison 10-31-2017 | Perm Venue Comparison 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 10. Dinoking Consolidation Dec 2017 in USD FINAL | Dinoking Consolidation Dec 2017 in USD FINAL.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 11. Theme Index 2014 v1 1a | Theme Index 2014 v1 1a.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 11. Infinity - VR Experience - 1.20.17 | Infinity - VR Experience - 1.20.17.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 10. WetnWildSydney-DU contract | WetnWildSydney-DU contract.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 10. TEA 2014-2015 | TEA 2014-2015.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 10. Kenney-Dinner-Show-Rack-Card-Turnpike | Kenney-Dinner-Show-Rack-Card-Turnpike.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 10. Premier Exhibits IO - Vegas2Go - TITANIC - March-April 2017 | Premier Exhibits IO - Vegas2Go - TITANIC - March-April 2017.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 11. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Nov16 11-30-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 11. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - Month 9-30-17 & 9-30-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 11. Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016 | Premier Exhibitions, Inc. Unaudited Combined Income Statement Excluding SNL10-31-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 11. Marriott Vaca Club | Marriott Vaca Club.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 11. Premier Certified Folder Display - Bodies-Titanic 2017 | Premier Certified Folder Display - Bodies-Titanic 2017.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 11. Kissimmee Guest Services | Kissimmee Guest Services.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 12-31-2017 | Perm Venue Comparison 12-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 12. GDM Addendum executed ENG Mar 23 2017 | GDM Addendum executed ENG Mar 23 2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 12. Perm Venue Comparison 02-28-2018 | Perm Venue Comparison 02-28-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 01-31-2018 | Perm Venue Comparison 01-31-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 11. DK-DU 2019-2020 Estimated Revenue v2 | DK-DU 2019-2020 Estimated Revenue v2.xlsx | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 11. Perm Venue Comparison 11-30-2017 | Perm Venue Comparison 11-30-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 12. Visitor-Figures-2015-LO | Visitor-Figures-2015-LO.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 12. Marriott Vaca Club | Marriott Vaca Club.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 12. My Central Florida Family | My Central Florida Family.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 12. Proforma balance Sheet 10-17-2016 | Proforma balance Sheet 10-17-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 12. Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement - YTD 9-30-17 & 9-30-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 12. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov '17-Oct '17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet Nov17-Oct17 11-30-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 13. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct17-Sep17 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 13. Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016 | Unaudited Combined Balance Sheet - Premier & Dinoking 9-30-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 13. official Ticket center | official Ticket center.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 13. My Central Florida Family | My Central Florida Family.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 13. WHM-PEM Titanic amendment 2016-05-20fully executed | WHM-PEM Titanic amendment 2016-05-20fully executed.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 12. Tut Agreement 01.24.14 | Tut Agreement 01.24.14.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 14. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Nov17 12-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 14. GDM-Production Rider Executed ENG | GDM-Production Rider Executed ENG.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 14. Perm Venues Budget vs Actual Jan 2018 | Perm Venues Budget vs Actual Jan 2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 13. Perm Venues Budget vs Actual Feb 2018 | Perm Venues Budget vs Actual Feb 2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 15. ORLANDO ADS | ORLANDO ADS.docx | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 13. GDM executed contract(ENG) Mar 20, 2017 | GDM executed contract(ENG) Mar 20, 2017.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 13. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 14. WHM-PEM Titanic Binding Deal Memo 2015-02-19fully executed | WHM-PEM Titanic Binding Deal Memo 2015-02-19fully executed.pdf | 1 | | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 14. official Ticket center | official Ticket center.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 14. ORLANDO ADS | ORLANDO ADS.docx | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 14. Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking 9-30-2016 V2.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 14. Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement Oct 17-Oct16 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 16. Perm Venue Comparison 05-31-2018 | Perm Venue Comparison 05-31-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 15. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:34 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 15. Gross Profit Analysis v10 | Gross Profit Analysis v10.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 15. Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017 | Premier Exhibition, Inc. Combined Unaudited Income Statement YTD Oct 17-Oct16 10-31-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 15. Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2 | Unaudited Combined Statement of Income Premier & Dinoking Excluding SNL 9-30-2016 V2.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 15. Resellers 6.9.17 | Resellers 6.9.17.xlsx | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 17. Starwood vacation | Starwood vacation.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 16. Resellers 6.9.17 | Resellers 6.9.17.xlsx | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 16. Starwood vacation | Starwood vacation.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 16. Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Balance Sheet - Dinoking Tech Inc. 9-30-2016.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 16. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Nov16 11-30-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 16. Guangdong Ancillary Royalty Agreement | Guangdong Ancillary Royalty Agreement.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 18. LV BODIES 6-17-2018 | LV BODIES 6-17-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 17. ATLANTA BODIES 6-17-2018 | ATLANTA BODIES 6-17-2018.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 17. Henshall Employment Agreement 7.29.16 | Henshall Employment Agreement 7.29.16.pdf | 1 | | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 17. Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Nov17-Oct17 11-30-2017.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 17. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 YTD.pdf | 1 | | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 17. Summer-Camp-Contract-02-27-2017 | Summer-Camp-Contract-02-27-2017.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 19. Visit orlando | Visit orlando.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 18. Summer-Camp-Contract-02-27-2017 | Summer-Camp-Contract-02-27-2017.pdf | 1 | | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 18. Visit orlando | Visit orlando.pdf | 1 | | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 18. Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016 | Unaudited Consolidated Statement of Income - Dinoking Tech Inc. 9-30-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 18. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD Nov17-Nov16 11-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 18. Insurance Cost Analysis 2018 | Insurance Cost Analysis 2018.xlsx | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 19. Notes to 2018 Budgets & Forecasts v10 | Notes to 2018 Budgets & Forecasts v10.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 19. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement Dec17-Dec16 12-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 19. Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016 | Combined Unaudited Balance Sheet- Premier & Dinoking 12-31-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 19. Welcome-Guide-Map | Welcome-Guide-Map.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 8. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 Monthly Comparative 2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 8. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 9-30-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 8. Perm Venue Comparison 9-30-2017 | Perm Venue Comparison 9-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 8. Davis, D - Employment Agreement 1. | Davis, D - Employment Agreement 1..pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 8. Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Income Statement YTD Dec17-Dec16 12-31-2017 Version 2.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 8. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.D.4. FY 2015 | 4. FY 2015-10-K | Form 10K - FY 2015.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2015 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.D.3. FY 2014 | 4. FY 2014 10-K | PRXI FY 2014-10-K.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2014 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 4. X-3 DK RCAP forklift leasing agreement | X-3 DK RCAP forklift leasing agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 4. Revised Fixed Asset Reconciliation 2017 | Revised Fixed Asset Reconciliation 2017.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 4. Atlantic Station Lease - 3rd Admnt 2014 | Atlantic Station Lease - 3rd Admnt 2014.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 4. Executive Officers | Executive Officers.docx | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.A.1.g. Premier Exhibitions NYC, Inc | 4. Premier Exhibitions NYC, Inc. Merged Subsidiary Shares | NYC Subsidiary Shares.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions NYC, Inc |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.A.1.i. Premier Merchandising, LLC | 4. Premier Merchandising formation-MGR Entertainment, Inc. merger into Premier Merchandising, LLC documents | Premier Merchandising formation-MGR merger into PM documents.PDF | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.C.1. Outstanding Stocks & Options | 4. Weiser SAR Agreement 6.29.12 | Weiser SAR Agreement 6.29.12.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Outstanding Stocks & Options |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.C.2. Employee Stock Plans | 4. 2007 Amended and Restated Stock Plan 4.23.09 | 2007 Amended and Restated Stock Plan 4.23.09.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Employee Stock Plans |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.D.1. FY 2012 | 4. FY 2012-Q'3 10-Q | FY 2012-Q'3 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2012 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.D.2. FY 2013 | 4. FY 2013-10-K | PRXI FY 2013-10-K.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2013 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.3. Other Material Contracts | 4. DK RCAP forklift leasing agreement | DK RCAP forklift leasing agreement.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Other Material Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 4. Exec Summary - 10 Trends to watch in 2014 | Exec Summary - 10 Trends to watch in 2014.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 4. AGS | AGS.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 4. VEGAS ADS | VEGAS ADS.docx | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.A.1.a. Premier Exhibitions, Inc. | 4. 2015 3rd Amendment to Articles of Inc. (Final) | 2015 3rd Amendment to Articles (Final).pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions, Inc. |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 4. AGS | AGS.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.B. Financial Projections | 4. Notes to 2018 Budgets & Forecasts v10 | Notes to 2018 Budgets & Forecasts v10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.A.5. Unsecured Creditor Schedules E-F | 4. FILED RMS Amd Sch F - 2016 Sep 16 | FILED RMS Amd Sch F - 2016 Sep 16.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Unsecured Creditor Schedules E-F |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 4. LSC-PEM Bodies Revealed Binding Deal Memo 2015-09-03fullyexecuted | LSC-PEM Bodies Revealed Binding Deal Memo 2015-09-03fullyexecuted.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 4. GDM T3-Production Rider 4.4.17 | GDM T3-Production Rider 4.4.17.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 4. Intercompany Agreement PEM and PRXI 3.1.12 | Intercompany Agreement PEM and PRXI 3.1.12.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 4. Lenovo Capital Lease | Lenovo Capital Lease.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 5. NMRMA-DU DinoUnearthed contract 2015-08-25fully executed | NMRMA-DU DinoUnearthed contract 2015-08-25fully executed.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.A.5. Unsecured Creditor Schedules E-F | 5. PRXI Amended Schedule F (Remove Dentons) | PRXI Amended Schedule F (Remove Dentons).pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Unsecured Creditor Schedules E-F |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 5. Premier - Titanic IP - 2016 Oct 2 w-appendix | Premier - Titanic IP - 2016 Oct 2 w-appendix.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 5. Exhibition Summary | Exhibition Summary.docx | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 4. Current and Past Exhibition Offerings | Current and Past Exhibition Offerings.docx | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 4. Growth Opportunities 2017+ | Growth Opportunities 2017+.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 5. BillyBoys and Titanic | BillyBoys and Titanic.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 5. Goldman Sachs Chinese Tourism Outlook 2015 - 2025 | Goldman Sachs Chinese Tourism Outlook 2015 - 2025.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.3. Other Material Contracts | 5. DK Ricoh equipment lease agreement | DK Ricoh equipment lease agreement.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Other Material Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 5. Lending agreement-Feng-both signed-Mar 31 2016 | Lending agreement-Feng-both signed-Mar 31 2016.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 5. Intercompany Agreement PRXI and RMST 3.1.12 | Intercompany Agreement PRXI and RMST 3.1.12.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 5. Sloan Museum Flint T7 9.25.15 - 2017 | Sloan Museum Flint T7 9.25.15 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.C.2. Employee Stock Plans | 5. 2009 Equity Incentive Plan | 2009 Equity Incentive Plan.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Employee Stock Plans |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.D.1. FY 2012 | 5. FY 2012-10-K | PRXI FY 2012-10-K.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2012 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.C.1. Outstanding Stocks & Options | 5. Weiser Stock Option Agreement | Weiser Stock Option Agreement.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Outstanding Stocks & Options |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | II.A.1.a. Premier Exhibitions, Inc. | 5. 2015 4th Amendment to Articles of Inc. (Final) | 2015 4th Amendment to Articles (Final).pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions, Inc. |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 5. BillyBoys and Titanic | BillyBoys and Titanic.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 5. Premier Exhibits IO - LVM coupons - BODIES - May and June 2017 | Premier Exhibits IO - LVM coupons - BODIES - May and June 2017.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 5. Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Balance Sheet 10-31-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | V.D.2. Tax Information | 5. Tax Return -1032403 BC Ltd. - 12-31-2015 | Tax Return -1032403 BC Ltd. - 12-31-2015.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\Tax Information |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 5. Executive Officers | Executive Officers.pdf | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 5. Atlantic Station Lease - 4th Admnt 2017 | Atlantic Station Lease - 4th Admnt 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:33 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 5. X-3 DK Ricoh equipment lease agreement | X-3 DK Ricoh equipment lease agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | II.D.2. FY 2013 | 5. FY 2013-10-K Amendment | PRXI FY 2013 10-KA.PDF | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2013 |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.A.6. Claims | 5. Semmel | Semmel.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Claims |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 5. PRXI Aged AP Pre and Post Petition 4-30-17 | PRXI Aged AP Pre and Post Petition 4-30-17.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 5. Cash Flow Budget 2018 v.10 | Cash Flow Budget 2018 v.10.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 5. Perm Venue Comparison 8-31-2017 | Perm Venue Comparison 8-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 5. Combined Unaudited Balance Sheet - Premier & Dinoking 3-31-2017 | Combined Unaudited Balance Sheet -Premier & Dinoking 03-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 5. Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017 | Combined Unaudited Income Statament - Premier & Dinoking 03-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 6. Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Q1 Income Statement 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 6. Permanent Venue Attendance 3-31-2018 | Permanent Venue Attendance 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 5. Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2 | Premier Exhibitions, Inc. Prelim Combined Unaudited Balance Sheet Dec17-Dec16 12-31-2017 Version 2.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 5. Permanent Venue Attendance 4-30-2018 | Permanent Venue Attendance 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 5. Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Monthly Income Statement 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 5. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis 10-31-2017 | Premier Exhibitions, Inc. Combined EBITDA Analysis 10-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 6. Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016 | Dinoking Tech Inc. - Unaudited Consolidated Income Statement 10-31-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 6. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 7-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 6. Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017 | Combined Unaudited Income Statement - Premier & Dinoking 4-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 6. August 2017 - Attendance analysis | Aug 17 Attendance analysis.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 6. Cash Flow Budget 2018-2020 v.10 | Cash Flow Budget 2018-2020 v.10.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 6. Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov '17-Nov '16 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited EBITDA Analysis YTD Nov17-Nov16 11-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 6. Las Vegas Historical Attendance 1970-to-2016 | Las Vegas Historical Attendance 1970-to-2016.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 6. EBG | EBG.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 6. Premier Exhibits IO - LVM coupons - TITANIC - May and June 2017 | Premier Exhibits IO - LVM coupons - TITANIC - May and June 2017.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 6. EBG | EBG.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 6. Atlantic Station Lease - Final 2008 | Atlantic Station Lease - Final 2008.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 6. Management Team | Management Team.jpg | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 6. Exhibition Summary | Exhibition Summary.pdf | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 6. 2017 Marketing Anaylsis | 03. 2017 Marketing Anaylsis.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 6. PeoriaRiverfrontMuseum-PEM Titanic amendment 2016-03-02fully executed | PeoriaRiverfrontMuseum-PEM Titanic amendment 2016-03-02fully executed.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 6. Sloan Museum Flint T7 Amendment 4.7.16 | Sloan Museum Flint T7 Amendment 4.7.16.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 6. Restated Intercompany Services and Touring Rights - PEM and RMST | Restated Intercompany Services and Touring Rights - PEM and RMST.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 6. Lending agreement-Zhang-both signed-April 01 2016 | Lending agreement-Zhang-both signed-April 01 2016.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 7. Premier Exhibits IO - ThinkNear - 1Q17 - BODIES | Premier Exhibits IO - ThinkNear - 1Q17 - BODIES.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 7. Enjoy-Florida | Enjoy-Florida.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 7. Las Vegas Tourism Report 2015 | Las Vegas Tourism Report 2015.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 7. Lending agreement-Zou-both signed-April 01 2016 | Lending agreement-Zou-both signed-April 01 2016.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 7. Sloan Museum Flint T7 Extension 2017 | Sloan Museum Flint T7 Extension 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 7. PeoriaRiverfrontMuseum-PEM-Titanic binding deal memo 2015-04-14 fully executed | PeoriaRiverfrontMuseum-PEM-Titanic binding deal memo 2015-04-14 fully executed.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 7. July 2017 - Attendance analysis | Jul 17 Attendance analysis.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 7. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 9-30-17 & 8-31-17.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 7. Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017 | Premier Exhibitions, Inc. - Combined Unaudited Income Statement 7-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 7. Dinosaurs Unearthed Consolidated FS Sep 30 2016 YTD V3 | DK DU Consolidated FS Sep 30 2016 YTD V3.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 7. Management Team | Management Team.vsdx | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 7. Enjoy-Florida | Enjoy-Florida.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 7. Attendance analysis 04-30-18 | Attendance analysis 04-30-18.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 7. Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 7. Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017 | Premier Exhibitions, Inc. Prelim Unaudited EBITDA Analysis YTD 12-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 7. Consolidation - Premier & Dinoking 12-31-2017 | Consolidation - Premier & Dinoking 12-31-2017.xlsx | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.D.2. Tax Information | 4. Tax Return - Premier Exhibition Consolidated 1120 2-28-2015 | Tax Return - Premier Exhibition Consolidated 1120 2-28-2015.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\Tax Information |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 4. Consolidation Financials as of 9.30.2016 | Consolidation - Premier & Dinoking 9-30-2016.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 4. Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017 | Combined Unaudited Statement of Income - Premier & Dinoking 02-28-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 4. Vancouver Office 2013 Sublease Renewal Agreement | Vancouver Office 2013 Sublease Renewal Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 4. Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 4-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 4. Perm Venue Comparison Q2 | Perm Venue Comparison Q2.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 2. AdOnTheBox-Page1 | AdOnTheBox-Page1.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 2. KDC.Bodies.Titantic Spring.Summer 8wks | KDC.Bodies.Titantic Spring.Summer 8wks.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.B.2. Copies of Long-Term Sales Contracts | 2. CFP Amending Agreement-signed in Oct 2013 | CFP Amending Agreement-signed in Oct 2013.pdf | 1 | \Operating Businesses\Business Operations\Customers\Copies of Long-Term Sales Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.C.1. Top 10 Suppliers | 2. PRXI Vendor History | PRXI Vendor History .pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Top 10 Suppliers |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.1.b. Marketing Analysis | 2. Competitor Pricing | Competitor Pricing.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Marketing Analysis |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.2. Licensing Agreements | 2. Tut Agreement 01.24.14 | Tut Agreement 01.24.14.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Licensing Agreements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 2. Contribution of Capital Vision-NYC-UK and PEM-PRXI | Contribution of Capital Vision-NYC-UK and PEM-PRXI.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 2. Ascentium Capital Agreement 2152196 | Ascentium Capital Agreement 2152196.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.B.3.f. Xtreme Bugs | 2. Clinton Library XBugs Indoors 2.11.17 - 2017 | Clinton Library XBugs Indoors 2.11.17 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Xtreme Bugs |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.F.3. Other Material Contracts | 2. Summary of U.S. Operating Leases 5-31-17 | Summary of U.S. Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Material Agreements\Other Agreements\Other Material Contracts |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.B.1. Revenue | 2. Premier Exhbition Management LLC - Revenue by Customer - Year | Premier Exhbition Management LLC - Revenue by Customer - Year.pdf | 1 | \Operating Businesses\Business Operations\Customers\Revenue |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 2. 71211 Museums in the US Industry Report | 71211 Museums in the US Industry Report.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:32 PM | BulkDownload | Operating Businesses | III.A.1. Bank Credit Agreements | 2. L-5 TD Bk loan agreement $432.5K 2015-01-15 | L-5 TD Bk loan agreement $432.5K 2015-01-15.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Bank Credit Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 2. BossardLibrary-PEM BodiesRevealed Binding Deal Memo 2016-03-17fully executed-heavy | BossardLibrary-PEM BodiesRevealed Binding Deal Memo 2016-03-17fully executed-heavy.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.C.1. Employment -Consulting Agreements | 2. Bao Empt Agmt Amended 1.11.16 | Bao Empt Agmt Amended 1.11.16.pdf | 1 | \Operating Businesses\Material Agreements\Professional Services Agreements\Employment -Consulting Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3.b. Dinosaurs | 2. Granby Zoo DU10000 8.5.16 2017 | Granby Zoo DU10000 8.5.16 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Dinosaurs |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3.c. Sea Creatures | 2. Sea Creatures both signed-Aug 2014 | Sea Creatures both signed-Aug 2014.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Sea Creatures |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 2. GDM T3 (ENG) Mar 20 2017 - 2017 | GDM T3 (ENG) Mar 20 2017 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.E. Marketing, Sales, and Distribution | 2. One Sheet Catalog 6.16.17 | 01. One Sheet Catalog 6.16.17.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | V.D.3. DinoKing Merger Transaction Information | 2. DK - PRXI Merger Transaction Summary | DK - PRXI Merger Transaction Summary.docx | 1 | \Operating Businesses\Financial Information\Other Financial Information\DinoKing Merger Transaction Information |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.3. Disputed | 2. Little Form 410 Proof of Claim | Little Form 410 Proof of Claim.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Disputed |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.4. Pompeii Agreement | 2. EXECUTED Pompei Agreement 2016 | EXECUTED Pompei Agreement 2016.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Pompeii Agreement |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.5. Unsecured Creditor Schedules E-F | 2. FILED PEM Amd Sch F - 2016 Sep 16 | FILED PEM Amd Sch F - 2016 Sep 16.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Unsecured Creditor Schedules E-F |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.2. Debt Financing | 2. Lending agreement-Zhang-both signed-April 01 2016 Redacted | Lending agreement-Zhang-both signed-April 01 2016 Redacted.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Debt Financing |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 3. Growth Opportunities 2017+ | Growth Opportunities 2017+.docx | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 3. Infinity-Partners IP License agreement | 03. Infinity-Partners IP License agreement.pdf | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 2. Trademarks and Copyrights | 02. Trademarks and Copyrights.pdf | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.D. Competitive Landscape | 2. Competitive Landscape | Competitive Landscape.pptx | 1 | \Operating Businesses\Business Operations\Competitive Landscape |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 2. PRXIQ - 2017 Plan-1.30.17 | PRXIQ - 2017 Plan-1.30.17.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | V.B. Financial Projections | 2. Cash Flow Budget 2018 v.10 | Cash Flow Budget 2018 v.10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 3. IMAS-Xtreme Bugs double signed contract | IMAS-Xtreme Bugs double signed contract.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.1. Bank Credit Agreements | 3. TD Bank - Revised Loan Agreement Aug 23 2016 | TD Bank - Revised Loan Agreement Aug 23 2016.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Bank Credit Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.2. Debt Financing | 3. Lending agreement-Zou-both signed-April 01 2016 Redacted | Lending agreement-Zou-both signed-April 01 2016 Redacted.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Debt Financing |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.A.5. Unsecured Creditor Schedules E-F | 3. FILED PRXI Amd Sch F - 2016 Sep 16 | FILED PRXI Amd Sch F - 2016 Sep 16.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Unsecured Creditor Schedules E-F |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | V.D.3. DinoKing Merger Transaction Information | 3. Executed Stockholders Agreement | Executed Stockholders Agreement.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\DinoKing Merger Transaction Information |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | V.B. Financial Projections | 3. Cash Flow Budget 2018-2020 v.10 | Cash Flow Budget 2018-2020 v.10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.F.3. Other Material Contracts | 3. DK Canon equipment lease agreement | DK Canon equipment lease agreement.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Other Material Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 3. Ascentium Capital Agreement 2156905 | Ascentium Capital Agreement 2156905.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 3. DU- DK Relationship | DU- DK Relationship.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 3. GDM T3 Addendum 040417 SL | GDM T3 Addendum 040417 SL.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.B.3.b. Dinosaurs | 3. Okanagan Science Center DU2000 3.2016 - 2017 | Okanagan Science Center DU2000 3.2016 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Dinosaurs |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.C.1. Employment -Consulting Agreements | 3. Henshall Employment Agreement 7.29.16 | Henshall Employment Agreement 7.29.16.pdf | 1 | \Operating Businesses\Material Agreements\Professional Services Agreements\Employment -Consulting Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.E.1.b. Marketing Analysis | 3. Marketing Analysis - Las Vegas | Marketing Analysis - Las Vegas.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Marketing Analysis |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.C.1. Top 10 Suppliers | 3. U.S. Top Suppliers | U.S. Top Suppliers.xlsx | 1 | \Operating Businesses\Business Operations\Suppliers\Top 10 Suppliers |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.B.2. Copies of Long-Term Sales Contracts | 3. CFP consolidated contract with season pass signed in May 2012 | CFP consolidated contract with season pass signed in May 2012.pdf | 1 | \Operating Businesses\Business Operations\Customers\Copies of Long-Term Sales Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 3. Premier Exhibitions KDC Contract | Premier Exhibitions KDC Contract.docx | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 3. AGS-Envelopes-Signed-Contract | AGS-Envelopes-Signed-Contract.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 3. Art Museums By The Numbers 2015 | Art Museums By The Numbers 2015.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.A.1.h. Arts and Exhibitions Int'l, LLC | 3. PEM to AEI Name Change Filing | PEM to AEI Name Change Filing.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Arts and Exhibitions Int'l, LLC |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.A.1.g. Premier Exhibitions NYC, Inc | 3. Premier Exhibitions NYC, Inc. Subsidiary Merger Articles | NYC Subsidiary Merger Articles.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions NYC, Inc |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.F.1. Marketing Programs | 3. Titanic Promotions YOY Report Detail February 2017 | Titanic YOY Report Detail February 2017.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation\Marketing Programs |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.E.3.a. Las Vegas Contracts | 3. VEGAS ADS | VEGAS ADS.docx | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.A.1.a. Premier Exhibitions, Inc. | 3. 2009 2nd Amendment to Articles of Inc. | 2009 2nd Amendment to Articles.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions, Inc. |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 3. AGS-Envelopes-Signed-Contract | AGS-Envelopes-Signed-Contract.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.D.3. FY 2014 | 3. FY 2014-Q'3 10-Q | FY 2014-Q'3 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2014 |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.D.2. FY 2013 | 3. FY 2013-Q'3 10-Q | FY 2013-Q'3 10-Q.PDF | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2013 |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.C.2. Employee Stock Plans | 3. 2007 Restricted Stock Plan | 2007 Restricted Stock Plan.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Employee Stock Plans |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.D.1. FY 2012 | 3. FY 2012-Q'2 10-QA | FY 2012-Q'2 10-QA.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2012 |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.C.1. Outstanding Stocks & Options | 3. Stock Option Agreement 3.1.2008 | Stock Option Agreement 3.1.2008.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Outstanding Stocks & Options |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | II.A.1.i. Premier Merchandising, LLC | 3. Agreement and Plan of Reorganization Premier Merchandising, LLC and MGR Entertainment, Inc. | Agreement and Plan of Reorganization PM and MGR.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | III.E.2. Employment Agreements | 3. Henshall Employment Agreement 7.29.16 | Henshall Employment Agreement 7.29.16.pdf | 1 | \Operating Businesses\Material Agreements\Employee Agreements\Employment Agreements |
| Davis Polk | 07/13/2018 03:31 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 3. Fixed Assets Auditor Report | Fixed Assets Auditor Report.xls | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 3. X-3 DK Canon equipment lease agreement | X-3 DK Canon equipment lease agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.E.2. List of Current Shareholders | 3. PRXIQ Shareholder list 6.5.2017 [Post-split Exchanged Shares] | PRXIQ Shareholder list 6.5.2017 [Post-split Exchanged Shares].pdf | 1 | \Operating Businesses\General Business Information\Capital Structure\List of Current Shareholders |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.G. Debt Financing | 3. Lending Agreement-Zou-Both Signed-April 01 2016 | Lending agreement-Zou-both signed-April 01 2016.pdf | 1 | \Operating Businesses\General Business Information\Debt Financing |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.D.4. FY 2015 | 3. FY 2015-Q'3 10-Q | FY 2015-Q'3 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2015 |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 3. Premier Exhibitions, Inc. Combined Six Month Q2 2017 Unaudited Income Statement Q2 | Premier Exhibitions, Inc. Combined Six Month Unaudited Income Statement Q2.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 3. Cash Flow Summary PRXI 10.17.2016 | CF Summary PRXI 10-17-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.D.2. Tax Information | 3. Tax Return - Dinosaurs Unearthed Corp. 1120 12-31-2015 | Tax Return - Dinosaurs Unearthed Corp. 1120 12-31-2015.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\Tax Information |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 3. Board of Directors 11.17.16 | Board of Directors 11.17.16.pdf | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 3. Bill of Sale | 07 - Bill of Sale.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 3. Atlantic Station Lease - 2nd Admnt 2013 | Atlantic Station Lease - 2nd Admnt 2013.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 3. PRXI Aged AR Detail 4-30-17 | PRXI Aged AR Detail 4-30-17.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 3. DU Accounts payable Apr 2017 | DU Accounts payable Apr 2017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 3. Bao Empt Agmt Amended 1.11.16 | Bao Empt Agmt Amended 1.11.16.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 6-30-2017 | Perm Venue Comparison 6-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 3. Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017 | Combined Unaudited Balance Sheet - Premier & Dinoking 02-28-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 3. Vancouver Office 2012 Sublease Renewal Agreement | Vancouver Office 2012 Sublease Renewal Agreement | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 3. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 3. Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018 | Premier Exhibitions, Inc. Unaudited Balance Sheet 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 3. Perm Venue Comparison 04-30-2018 | Perm Venue Comparison 04-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 3. Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement Month 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 3. EBITDA Analysis for Seven Months Ending 7-31-2017 | EBITDA Analysis 7-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | III.A.6. Claims | 3. Copy of Lease Rejection Damages Calculation 8-11 | Copy of Lease Rejection Damages Calculation 8-11.xlsx | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Claims |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 4. Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018 | Premier Exhibitions, Inc. Unaudited Income Statement YTD 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 4. Perm Venues Budget vs Actual Apr 2018 | Perm Venues Budget vs Actual Apr 2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 4. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 4. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 4. Perm Venue Budget vs Actual 5-31-18 | Perm Venue Budget vs Actual 5-31-18.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 3. EBITDA Budget Variance 4-30-2018 | EBITDA Budget Variance 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 4. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 4. PRXI Aged AP Details 4-30-17 | PRXI Aged AP Details 4-30-17.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | III.A.6. Claims | 4. PacBridge Claim | PacBridge Claim.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Claims |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 4. Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016 | Premier Exhibitions, Inc. - Combined Unaudited EBITDA Analysis - YTD 9-30-17 & 9-30-2016.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 2. AdOnTheBox-Page1 | AdOnTheBox-Page1.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.A.1.a. Premier Exhibitions, Inc. | 2. 2005 1st Amendment to Articles of Inc. | 2005 1st Amendment to Articles.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions, Inc. |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.E.3.a. Las Vegas Contracts | 2. Premier Exhibitions KDC Contract | Premier Exhibitions KDC Contract.docx | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.F.1. Marketing Programs | 2. Bodies Promotions YOY Report Detail February 2017 | Bodies YOY Report Detail February 2017.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation\Marketing Programs |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.A.1.e. Dinoking International, Inc. | 2. Dinoking International Inc. Agreement | Dinoking Tech International Incorporation signed.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Dinoking International, Inc. |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.A.1.g. Premier Exhibitions NYC, Inc | 2. Premier Exhibitions NYC, Inc. Subsidiary Merger Agreement | NYC Subsidiary Merger Agreement.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions NYC, Inc |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.I. Atlanta Corporate Office | 1. Atlanta Office Lease - 2016 | Atlanta Office Lease - 2016.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlanta Corporate Office |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | III.E.2. Employment Agreements | 1. Bao Employment Agmt 1.1.16 | Bao Employment Agmt 1.1.16.pdf | 1 | \Operating Businesses\Material Agreements\Employee Agreements\Employment Agreements |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 1. 2015 Impairment Summary | 2015 Impairment Summary.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b. Real Estate Leases | 1. Summary of Property Leases 2-5-2018 | Summary of Property Leases 2-5-2018.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 1. Summary of Canadian Operating Leases 5-31-17 | Summary of Canadian Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.I.1. Bonus-Retirement Plans | 1. 401K Plan | 401K Plan.pdf | 1 | \Operating Businesses\Business Operations\Management and Personnel\Bonus-Retirement Plans |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.E.4. Debt Instruments Summary | 1. Premier Exhibitions, Inc. and Subsidiaries - Debt Summary 4-30-2017 | 04. Debt Summary 4-30-2017.pdf | 1 | \Operating Businesses\General Business Information\Capital Structure\Debt Instruments Summary |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.E.5. Off Balance Sheet Liabilities | 1. Premier Exhibitions, Inc. - Off Balance Sheet Liabilities | 05. Off Balance Sheet Liabilities.docx | 1 | \Operating Businesses\General Business Information\Capital Structure\Off Balance Sheet Liabilities |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 1. Purchase Agreement | 01 - Purchase Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.IV. Orlando Venue | 1. Orlando Dinosaurs Lease - 2017 | Orlando Dinosaurs Lease - 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Orlando Venue |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.III. Las Vegas Venue | 1. Las Vegal Luxor Lease 3.12.08 | Las Vegal Luxor Lease 3.12.08.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Las Vegas Venue |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 1. Atlantic Station Lease Addendums | Atlantic Station Lease Addendums.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 1. Consolidated Balance Sheet as of 10.30.16 | 09-2016 CONSOL BS 6 MO as of 103016.xls | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.D.1. Internal Accounting Policies | 1. Internal Use Accounting Policies 6-9-2017 | Internal Use Accounting Policies 6-9-2017.docx | 1 | \Operating Businesses\Financial Information\Other Financial Information\Internal Accounting Policies |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.D.2. Tax Information | 1. Premier Exhibitions, Inc. and Subsidiaries - 1120 Tax Returns 2-28-2015 | 1120 Tax Returns 2-28-2015.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\Tax Information |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | | 1. Entity Organizational Chart | PRXI Subsidiaries 9.19.16- no EIN.pdf | 1 | \Operating Businesses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.A.3. List of States where the Company does Business | 1. States Where Premier Exhibitions, Inc. has Employees | 06. States Where PRXI has Employees.docx | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\List of States where the Company does Business |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | II.E.3. Share Rights Outstanding | 1. Premier Exhibitions, Inc. Share Rights Outstanding 6-20-2017 | Share Rights Outstanding 6-20-2017.docx | 1 | \Operating Businesses\General Business Information\Capital Structure\Share Rights Outstanding |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.5.a. 2017 | 1. BOD CFO Report 6-21-2017 re May 2017 | BOD CFO Report 6-21-2017 re May 2017.docx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\Board of Directors CFO Report\2017 |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 1. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 5-31-2017 | Combined Unaudited Balance Sheet 5-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.1. 2014 | 1. Restatement Financial Statements - Dinoking Dec 31 2014 FINAL | Restatement Financial Statements - Dinoking Dec 31 2014 FINAL.PDF | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2014 |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 1. Corporate Org Chart 6.2.17 | 01. Corporate Org Chart 6.2.17.pdf | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 1. Vancouver Office Lease Agreement | Vancouver Office Lease Agreement.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 1. Combined Unaudited Income Statement 5-31-2017 | Combined Unaudited Income Statement 5-31-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 1. Perm Venue Comparison 2-28-2017 | Perm Venue Comparison 2-28-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 1. DU Accounts payable May 2017 | DU Accounts payable May 2017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.B.1.b. Revenue Comparison | 1. Permanent Venue Comparison 5-31-2017 | Perm Venue Comparison 5-31-2017.pdf | 1 | \Operating Businesses\Business Operations\Customers\Revenue\Revenue Comparison |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.C. Debtor In Possession Budgets | 1. DIP Budget Variance May 2017 | DIP Budget Variance May 2017.pdf | 1 | \Operating Businesses\Financial Information\Debtor In Possession Budgets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.D.4. CFO Reports to the Board of Directors | 1. BOD CFO Report 6-21-2017 re May 2017 | BOD CFO Report 6-21-2017 re May 2017.docx | 1 | \Operating Businesses\Financial Information\Other Financial Information\CFO Reports to the Board of Directors |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | IV.G.2. Intangible Assets | 1. Trademarks and Copyrights | 02. Trademarks and Copyrights.pdf | 1 | \Operating Businesses\Business Operations\Assets\Intangible Assets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.i. China - Titanic Exhibition | 1. Revised GDM Titanic Sales Report | Revised GDM Titanic Sales Report.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\China - Titanic Exhibition |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 9-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | III.A.6. Claims | 1. 417 5th Claim - 4.6m | 417 5th Claim - 4.6m.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Claims |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 1. Combined Unaudited Balance Sheets By Quarter 2016-2017 | Combined Unaudited Balance Sheets By Quarters 2016-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 1. DK Accounts Receivable Apr 2017 | DK Accounts receivable Apr 2017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 1. 2016 & 2017 Venues - Premier USA | 2016 & 2017 Venues - Premier USA.xlsx | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 2-28-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Davis Polk | 07/13/2018 03:30 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 1. Perm Venues Budget vs Actual Mar 2018 | Perm Venues Budget vs Actual Mar 2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 1. Premier Exhibitions, Inc. Combined Unaudited Income Statement 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement Mth 2-28-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 1. EBITDA Analysis 2017Q1 vs 2016Q1 | EBITDA Analysis 2017Q1 vs 2016Q!.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | I. Sale Documents | 1. Premier Exhibitions Confidential Information Memorandum 12-29-17 revision | Premier Exhibitions Confidential Information Memorandum 12-12-17 revision.pdf | 1 | \Operating Businesses\Sale Documents |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.B.2.a. Saturday Night Live - Chicago | 1. Saturday Night Live - The Experience Escrow Agreement 9-13-2017 | Escrow Agreement 9-13-2017 MBC.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\Partnership - Joint Venture Agreements\Saturday Night Live - Chicago |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 2. Revenue & EBITDA Graphs 4-30-2018 | Revenue & EBITDA Graphs 4-30-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 2. EBITDA Budget Variance 3-31-2018 | EBITDA Budget Variance 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.f. Financial Analyses - Actual vs. Budget | 1. Actual vs Budget 2-28-2018 | Actual vs Budget 2-28-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Financial Analyses - Actual vs. Budget |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.d. EBITDA Analyses | 1. Revenue & EBITDA Charts 3-31-2018 | Revenue & EBITDA Charts 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 1. Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Cash Flow Statement Month of 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4. 2018 | 1. Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Balance Sheet 1-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.d. EBITDA Analyses | 2. PEM Pivot Financial Analysis 4-30-2017 | PEM Pivot Financial Analysis 4-302017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\EBITDA Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement YTD 2-28-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Income Statements |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.e. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 03-31-2018 | Perm Venue Comparison 03-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.b. Balance Sheets | 2. Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018 | Premier Exhibitions, Inc. Unaudited Combined Balance Sheet 3-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Balance Sheets |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4. 2018 | 2. Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Income Statement 1-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.4.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 1-31-2018.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2018\Statement of Cash Flow |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.f. Accounts Payable | 2. DK Accounts payable Apr 2017 | DK Accounts payable Apr 2017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Payable |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.e. Accounts Receivable | 2. DU Accounts Receivable Apr 2017 | DU Accounts receivable Apr 2017.xlsx | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Accounts Receivable |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.h. Financial Analysis | 2. Combined Unaudited Income Statements By Quarter 2016-2017 | Combined Unaudited Income Statement By Quarters 2016-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Financial Analysis |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.A.6. Claims | 2. 417 5th Claim - 8m | 417 5th Claim - 8m.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Claims |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.c. Statement of Cash Flow | 2. Premier Exhibitions, Inc. - Combined Unaudited Statement of Cash Flow 11-30-2017 | Premier Exhibitions, Inc. Combined Unaudited Cash Flow Statement 11-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Statement of Cash Flow |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.B.2.a. Saturday Night Live - Chicago | 2. Saturday Night Live - The Experience Executed Agreement | Executed Deal Memo for Saturday Night Live The Experience.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\Partnership - Joint Venture Agreements\Saturday Night Live - Chicago |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.H.1. Organizational Chart | 2. PRXI Staff Org Chart 10.28.16 | PRXI Staff Org Chart 10.28.16.pdf | 1 | \Operating Businesses\Business Operations\Employees\Organizational Chart |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.b. Balance Sheets | 2. Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017 | Premier Exhibitions, Inc. - Combined Unaudited Balance Sheet 6-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Balance Sheets |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.C. Debtor In Possession Budgets | 2. DIP 3 Month Budget - Oct.-Dec Final | DIP 3 Month Budget - Oct.-Dec Final.pdf | 1 | \Operating Businesses\Financial Information\Debtor In Possession Budgets |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.B.1.b. Revenue Comparison | 2. Permanent Venue Comparison 7-31-2017 | Perm Venue Comparison 7-31-2017.pdf | 1 | \Operating Businesses\Business Operations\Customers\Revenue\Revenue Comparison |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.g. Permanent Venue Comps & Analyses | 2. Perm Venue Comparison 4-30-2017 | Perm Venue Comparison 4-30-2017.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Permanent Venue Comps & Analyses |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | VI. Additional Diligence | 2. Bao Employment Agmt 1.1.16 | Bao Employment Agmt 1.1.16.pdf | 1 | \Operating Businesses\Additional Diligence |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.b.IV. Orlando Venue | 2. Orlando Titanic Lease - 2016 | Orlando Titanic Lease - 2016.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Orlando Venue |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.2. 2016 | 2. Consolidated Income Statement as of 10.30.16 | 09-2016 CONSOL YTD PL 103016.xls | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2016 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.c.I. AEI Acquisition | 2. Promissory Note | 04 - Promissory Note.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions\AEI Acquisition |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.D.2. Tax Information | 2. Other Tax Information 6-1-2017 | Other Tax Information 6-1-2017.docx | 1 | \Operating Businesses\Financial Information\Other Financial Information\Tax Information |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | V.A.3.a. Income Statements | 2. Premier Exhibitions, Inc. Combined Three Month Q2 2017 Unaudited Income Statement | Premier Exhibitions, Inc. Combined Q2 Unaudited Income Statement.pdf | 1 | \Operating Businesses\Financial Information\Financial Statements and Reports\2017\Income Statements |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.E.2. List of Current Shareholders | 2. PRXIQ Shareholder list 6.5.2017 [Pre-split Unexchanged Shares] | PRXIQ Shareholder list 6.5.2017 [Pre-split Unexchanged Shares].pdf | 1 | \Operating Businesses\General Business Information\Capital Structure\List of Current Shareholders |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.c. Asset Acquisitions & Dispositions | 2. 2016 Impairment Summary | 2016 Impairment Summary.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Asset Acquisitions & Dispositions |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.E.2. Employment Agreements | 2. Bao Empt Agmt Amended 1.11.16 | Bao Empt Agmt Amended 1.11.16.pdf | 1 | \Operating Businesses\Material Agreements\Employee Agreements\Employment Agreements |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.b.I. Atlanta Corporate Office | 2. Atlanta Office Lease 1st Amend 2017 | Atlanta Office Lease 1st Amend 2017.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlanta Corporate Office |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.b.II. Atlantic Station Venue | 2. Atlantic Station Lease - 1st Admnt 2011 | Atlantic Station Lease - 1st Admnt 2011.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Atlantic Station Venue |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.b.III. Las Vegas Venue | 2. Las Vegas Luxor Lease - 1st Admnt 2010 | Las Vegas Luxor Lease - 1st Admnt 2010.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Las Vegas Venue |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.b.V. Vancouver Corporate Office | 2. Vancouver Office Lease Agreement- Addendum | Vancouver Office Lease Agreement- Addendum.pdf | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Real Estate Leases\Vancouver Corporate Office |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.3. FY 2014 | 2. FY 2014-Q'2 10-Q | FY 2014-Q'2 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2014 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.4. FY 2015 | 2. FY 2015-Q'2 10-Q | FY 2015-Q'2 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2015 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.E.1. List of Stock Certificates | 2. PRXI Certificate Detail (Post-Split) | PRXI Certificate Detail (Post-Split) 19955.PDF | 1 | \Operating Businesses\General Business Information\Capital Structure\List of Stock Certificates |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.5. FY 2016 - Q1 & Q2 | 2. FY 2016-Q'2 10-Q | FY 2016-Q'2 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2016 - Q1 & Q2 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.G. Debt Financing | 2. Lending Agreement-Zhang-Both Signed-April 01 2016 | Lending agreement-Zhang-both signed-April 01 2016.pdf | 1 | \Operating Businesses\General Business Information\Debt Financing |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.G.1.a. Operating Leases | 2. Summary of U.S. Operating Leases 5-31-17 | Summary of U.S. Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Business Operations\Assets\Real Estate & Other Tangible Property\Operating Leases |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.A.2.g. Premier Merchandising, LLC | 2. Premier Merchandising, LLC - 1st Amendment | Premier Merchandising - 1st Amendment.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.C.1. Outstanding Stocks & Options | 2. Little Stock Option Grant | Little Stock Option Grant.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Outstanding Stocks & Options |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.C.2. Employee Stock Plans | 2. 2004 Stock Option Plan | 2004 Stock Option Plan.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Employee Stock Plans |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.1. FY 2012 | 2. FY 2012-Q'2 10-Q | FY 2012-Q'2 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2012 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.C.3. Securities Agreements Related To PRXI-DinoKing Merger & Recapitalization 2015 | 2. Secured-PREMIER - Report Book dated November 1 2015 | Secured-PREMIER - Report Book dated November 1 2015.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Securities Agreements Related To PRXI-DinoKing Merger & Recapitalization 2015 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.2. FY 2013 | 2. FY 2013-Q'2 10-Q | FY 2013-Q'2 10-Q.PDF | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2013 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.A.1.h. Arts and Exhibitions Int'l, LLC | 2. PEM NEWCO, LLC Articles of Correction Filed | PEM NEWCO, LLC Articles of Correction Filed.PDF | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Arts and Exhibitions Int'l, LLC |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.A.1.b. 1032403 B.C. Ltd. | 2. 1032403 B.C. Articles of Incorporation | Articles of Incorporation - 1032403 B.C..pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\1032403 B.C. Ltd. |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.A.1.i. Premier Merchandising, LLC | 2. Premier Merchandising, LLC formation-merger into MGR documents | Premier Merchandising formation-merger into MGR documents.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.A.2.d. Premier Exhibition Management LLC | 2. Premier Exhibition Management, LLC - Amended and Restated Operating Agreement | PEM LLC Amended and Restated Operating Agreement.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Premier Exhibition Management LLC |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.G. Debt Financing | 1. Lending Agreement-Feng-Both Signed-Mar 31 2016 | Lending agreement-Feng-both signed-Mar 31 2016.pdf | 1 | \Operating Businesses\General Business Information\Debt Financing |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.E.2. List of Current Shareholders | 1. NOBO 5.26.17 | NOBO 5.26.17.xlsx | 1 | \Operating Businesses\General Business Information\Capital Structure\List of Current Shareholders |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.E.1. List of Stock Certificates | 1. PRXI Certificate Detail (Pre-Split) | PRXI Certificate Detail (Pre-Split) 05539.PDF | 1 | \Operating Businesses\General Business Information\Capital Structure\List of Stock Certificates |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.5. FY 2016 - Q1 & Q2 | 1. FY 2016-Q'1 10-Q | FY 2016-Q'1 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2016 - Q1 & Q2 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.4. FY 2015 | 1. FY 2015-Q'1 10-Q | FY 2015-Q'1 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2015 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.D.3. FY 2014 | 1. FY 2014-Q'1 10-Q | FY 2014-Q'1 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2014 |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | IV.A. Products/Services | 1. Products and Services | 01. Products and Services.pdf | 1 | \Operating Businesses\Business Operations\Products/Services |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.E. Employee Agreements | 1. 02. Employee Confidentiality Agreements 6.8.17 | 02. Employee Confidentiality Agreements 6.8.17.pdf | 1 | \Operating Businesses\Material Agreements\Employee Agreements |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | III.D. Insurance Policies | 1. 01. Current Insurance Policies and Coverage 6-1-2017 | 01. Current Insurance Policies and Coverage 6-1-2017.xlsx | 1 | \Operating Businesses\Material Agreements\Insurance Policies |
| Davis Polk | 07/13/2018 03:29 PM | BulkDownload | Operating Businesses | II.F. Follow on Securities Issuance | 1. 2015 Merger - Stockholders Agreement Executed | 01. Stockholders Agreement Executed.pdf | 1 | \Operating Businesses\General Business Information\Follow on Securities Issuance |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | V.D.3. DinoKing Merger Transaction Information | 1. 2015 Dinoking Proxy | 2015 Dinoking Proxy.pdf | 1 | \Operating Businesses\Financial Information\Other Financial Information\DinoKing Merger Transaction Information |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E. Marketing, Sales, and Distribution | 1. Historical Ticket Sales 2012-2016 | Historical Ticket Sales 2012-2016.xlsx | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | V.B. Financial Projections | 1. Budget-Forecasts 2018-2020 v.10 | Budget-Forecasts 2018-2020 v.10.pdf | 1 | \Operating Businesses\Financial Information\Financial Projections |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.J. Audit Related | 1. Audit Issues 6-4-2017 | 03. Audit Issues 6-4-2017.docx | 1 | \Operating Businesses\Business Operations\Audit Related |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.F. Strategy and Implementation | 1. Premier - Growth Strategy v1 - 2017 Jan 13 BChow | Premier - Growth Strategy v1 - 2017 Jan 13 BChow.pptx | 1 | \Operating Businesses\Business Operations\Strategy and Implementation |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.D. Competitive Landscape | 1. Exhibition Competitors | Exhibition Competitors.xlsx | 1 | \Operating Businesses\Business Operations\Competitive Landscape |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3. License Agreements - Venues | 1. ANS-DU agreement Double Signed 2016 | ANS-DU agreement Double Signed 2016.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.A.1. Bank Credit Agreements | 1. L-5 TD Bk loan agreement $1750K 2013-10-17 | L-5 TD Bk loan agreement $1750K 2013-10-17.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Bank Credit Agreements |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.A.2. Debt Financing | 1. Lending agreement-Feng-both signed-Mar 31 2016 Redacted | Lending agreement-Feng-both signed-Mar 31 2016 Redacted.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Debt Financing |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.A.5. Unsecured Creditor Schedules E-F | 1. FILED DU Amd Sch F - 2016 Sep 16 | FILED DU Amd Sch F - 2016 Sep 16.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Unsecured Creditor Schedules E-F |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.A.4. Pompeii Agreement | 1. Agreement AEI and MondoMostre 10-23-2012 | Agreement AEI and MondoMostre 10-23-2012.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Pompeii Agreement |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.A.3. Disputed | 1. Armada Form 410 Proof of Claim PRXI | Armada Form 410 Proof of Claim PRXI.pdf | 1 | \Operating Businesses\Material Agreements\Credit/Loan Agreements\Disputed |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.d. Titanic | 1. Dimensione T5 Turin 2016-09-16 - 2017 | Dimensione T5 Turin 2016-09-16 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Titanic |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.c. Sea Creatures | 1. Sea Creature Addendum 11.22.14 | Sea Creature Addendum 11.22.14.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Sea Creatures |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.b. Dinosaurs | 1. Discovery Cube DU5000 10.26.16 - 2017 | Discovery Cube DU5000 10.26.16 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Dinosaurs |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.a. Bodies | 1. SMO BR4 2.22.17 2017 | SMO BR4 2.22.17 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Bodies |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.C.1. Employment -Consulting Agreements | 1. Bao Employment Agmt 1.1.16 | Bao Employment Agmt 1.1.16.pdf | 1 | \Operating Businesses\Material Agreements\Professional Services Agreements\Employment -Consulting Agreements |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.E.1. Bonus-Retirement Plans | 1. 401K Plan | 401K Plan.pdf | 1 | \Operating Businesses\Material Agreements\Employee Agreements\Bonus-Retirement Plans |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.B.1. Revenue | 1. Dinoking Tech and Subsidiaries Revenue by Customer -Year | Dinoking Tech and Subsidiaries Revenue by Customer -Year.xlsx | 1 | \Operating Businesses\Business Operations\Customers\Revenue |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.F.3. Other Material Contracts | 1. Summary of Canadian Operating Leases 5-31-17 | Summary of Canadian Operating Leases 5-31-17.xlsx | 1 | \Operating Businesses\Material Agreements\Other Agreements\Other Material Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.f. Xtreme Bugs | 1. PNE Fair XBugs 11.24.16 2017 | PNE Fair XBugs 11.24.16 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Xtreme Bugs |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.B.3.e. Tut | 1. St. Louis Tut 7-15-15 - 2017 | St. Louis Tut 7-15-15 - 2017.pdf | 1 | \Operating Businesses\Material Agreements\Vendor/Supplier Agreements\License Agreements - Venues\Tut |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.F.2. All Security Agreements Covering Company Assets | 1. Ascentium Capital Agreement 2152183 | Ascentium Capital Agreement 2152183.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\All Security Agreements Covering Company Assets |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | III.F.1. Intercompany Agreements | 1. Asset Purchase Agreement - PEM-MERCH | Asset Purch Amnt PEM-MERCH.pdf | 1 | \Operating Businesses\Material Agreements\Other Agreements\Intercompany Agreements |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E.1.b. Marketing Analysis | 1. Brokers Competitive Grid | Brokers Competitive Grid.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Marketing Analysis |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.C.1. Top 10 Suppliers | 1. Canadian Top 20 Vendors 2015 and 2016 | Canadian Top 20 Vendors 2015 and 2016 .xlsx | 1 | \Operating Businesses\Business Operations\Suppliers\Top 10 Suppliers |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.B.2. Copies of Long-Term Sales Contracts | 1. Cedar Fair Exhibition Agreement | Cedar Fair Exhibition Agreement.pdf | 1 | \Operating Businesses\Business Operations\Customers\Copies of Long-Term Sales Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.C.2.a. Las Vegas Contracts | 1. Explanation of contracts | Explanation of contracts.docx | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.C.2.b. Orlando Contracts | 1. Admi-Contract-01-04-2017 | Admi-Contract-01-04-2017.pdf | 1 | \Operating Businesses\Business Operations\Suppliers\Advertising and Marketing Contracts\Orlando Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E.1.a. Market Reports | 1. 2014 China Market Profile | 2014 China Market Profile.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Internal & 3rd Party Marketing Studies & Reports\Market Reports |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.c. DinoKing Tech, Inc. | 1. DinoKing Tech, Inc. Certificate of Incorporation | DinoKing Organizational Documents.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\DinoKing Tech, Inc. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.b. 1032403 B.C. Ltd. | 1. Certificate of Incorporation | Certificate of Incorporation.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\1032403 B.C. Ltd. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.F.1. Marketing Programs | 1. Bodies and Titanic Media Plan - 2017 - 12.12.16 | Bodies and Titanic Media Plan - 2017 - 12.12.16.pdf | 1 | \Operating Businesses\Business Operations\Strategy and Implementation\Marketing Programs |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E.3.a. Las Vegas Contracts | 1. Explanation of contracts | Explanation of contracts.docx | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Las Vegas Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E.3.b. Orlando Contracts | 1. Admi-Contract-01-04-2017 | Admi-Contract-01-04-2017.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Marketing Agreements\Orlando Contracts |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | IV.E.2. Licensing Agreements | 1. Broadway Video Fully Executed SNL Licensing Agreement | Broadway Video Fully Executed SNL Licensing Agreement.pdf | 1 | \Operating Businesses\Business Operations\Marketing, Sales, and Distribution\Licensing Agreements |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.a. Premier Exhibitions, Inc. | 1. PRXI Articles of Incorporation | PRXI Articles of Incorporation.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions, Inc. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.h. Arts and Exhibitions Int'l, LLC | 1. PEM NEWCO Articles of Organization | PEM NEWCO Articles of Organization.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Arts and Exhibitions Int'l, LLC |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.g. Premier Exhibitions NYC, Inc | 1. Premier Exhibitions NYC, Inc. - Articles of Incorporation | Articles of Incorporation - Premier Exhibitions NYC, Inc..pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibitions NYC, Inc |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.f. Premier Exhibition Management, LLC. | 1. Premier Exhibition Management LLC - Articles of Organization File Copy | PEM Articles of Organization File Copy.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Exhibition Management, LLC. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.e. Dinoking International, Inc. | 1. Dinoking International, Inc. Certificate of Incorporation | Dinoking International Inc. - signed post-incorporation documents.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Dinoking International, Inc. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.d. Dinosaurs Unearthed Corp. | 1. Dinosaur Unearthed, Corp. Certificate of Incorporation | DU - Certificate of Incorporation.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Dinosaurs Unearthed Corp. |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.C.1. Outstanding Stocks & Options | 1. Reverse Stock Split Information 2017 | 01. Reverse Stock Split Information 2017.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Outstanding Stocks & Options |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.2.g. Premier Merchandising, LLC | 1. Premier Merchandising, LLC - Operating Agreement May 2008 | Premier Merchandising, LLC Operating Agreement May 2008.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.2.f. Arts and Exhibitions Int'l, LLC | 1. Arts and Exhibitions Int'l, LLC Operating Agreement | AEI Operating Agreement.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Arts and Exhibitions Int'l, LLC |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.2.d. Premier Exhibition Management LLC | 1. Premier Exhibition Management, LLC - Operating Agreement | PEM LLC Operating Agreement.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Premier Exhibition Management LLC |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.2.a. Premier Exhibitions, Inc | 1. 2004 Bylaws | 2004 Bylaws.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Bylaws - Operating Agreement\Premier Exhibitions, Inc |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.A.1.i. Premier Merchandising, LLC | 1. Premier Merchandising, LLC - Certificate of Formation and Operating Agreement | Merch - Certificate of Formation and Operating Agreement.pdf | 1 | \Operating Businesses\General Business Information\Incorporation Documents & Records\Articles of Incorporation-Organization\Premier Merchandising, LLC |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.D.2. FY 2013 | 1. FY 2013-Q'1 10-Q | FY 2013-Q'1 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2013 |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.D.1. FY 2012 | 1. FY 2012-Q'1 10-Q | FY 2012-Q'1 10-Q.pdf | 1 | \Operating Businesses\General Business Information\Annual and Quarterly Reports\FY 2012 |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.C.2. Employee Stock Plans | 1. 2000 Stock Option Plan | 2000 Stock Option Plan.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Employee Stock Plans |
| Davis Polk | 07/13/2018 03:28 PM | BulkDownload | Operating Businesses | II.C.3. Securities Agreements Related To PRXI-DinoKing Merger & Recapitalization 2015 | 1. DinoKing Merger - Stockholders Agreement Executed | 07. Stockholders Agreement Executed.pdf | 1 | \Operating Businesses\General Business Information\Agreements Regarding Securities\Securities Agreements Related To PRXI-DinoKing Merger & Recapitalization 2015 |
| Davis Polk | 07/13/2018 03:26 PM | Save | Artifacts | V. Additional Diligence | 4. 1987 Artifacts in Exhibitions | 1987 Artifacts in Exhibitions.xlsx | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:26 PM | View | Artifacts | V. Additional Diligence | 4. 1987 Artifacts in Exhibitions | 1987 Artifacts in Exhibitions.xlsx | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:26 PM | Save | Artifacts | V. Additional Diligence | 3. STAC Covenants and Conditions Endowment Summary | STAC Covenants and Conditions Endowment Summary.pdf | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:25 PM | View | Artifacts | V. Additional Diligence | 3. STAC Covenants and Conditions Endowment Summary | STAC Covenants and Conditions Endowment Summary.pdf | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:25 PM | Save | Artifacts | V. Additional Diligence | 2. STAC collection Covenants and Conditions | STAC collection Covenants and Conditions.pdf | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:25 PM | View | Artifacts | V. Additional Diligence | 2. STAC collection Covenants and Conditions | STAC collection Covenants and Conditions.pdf | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:23 PM | Save | Artifacts | V. Additional Diligence | 1. Conservation Budget 2018 Revised | Conservation Budget 2018 Revised.pdf | 2 | \Artifacts\Additional Diligence |
| Davis Polk | 07/13/2018 03:23 PM | View | Artifacts | V. Additional Diligence | 1. Conservation Budget 2018 Revised | Conservation Budget 2018 Revised.pdf | 2 | \Artifacts\Additional Diligence |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 10. Final Award | Final Award.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 9. Court Opinion 2010- Award | Court Opinion 2010- Award.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 8. 092293-french  award | 092293-french  award.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 7. Company Letter in Response to United Nations UNESCO Letter  1 3 2017 | 2017 1 3  UNESCO Letter.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 6. United Nations Culture Sector  UNESCO Letter to Company  12 1 2016 | 2016 12 1 LF UNESCO.PDF | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 5. 2016 6 20 Moualla Declaration Version 2 | 2016 6 20 Moualla Declaration Version 2.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 4. 2011 OPINION | 2011 OPINION.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 3. 2006 4th Circuit Opinion | 2006 4th Circuit Opinion.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 2. 1993 Tulloch Letter in English and French | 1993 Tulloch Letter in English and French.PDF | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:21 PM | BuitDownload | Artifacts | IV. Decrees, Orders or Judgments Related To Artifacts | 1. 6-21-2016 Norfolk Hearing Transcript | 6-21-2016 Norfolk Hearing Transcript.pdf | 1 | Artifacts\Decrees, Orders or Judgments Related To Artifacts |
| Davis Polk | 07/13/2018 03:19 PM | Save | | Organizational Chart | 2. PRXI Staff Org Chart 5.24.18 | PRXI Staff Org Chart 5.24.18.pdf | 2 | \Organizational Chart |
| Davis Polk | 07/13/2018 03:19 PM | View | | Organizational Chart | 2. PRXI Staff Org Chart 5.24.18 | PRXI Staff Org Chart 5.24.18.pdf | 2 | \Organizational Chart |
| Davis Polk | 07/13/2018 03:17 PM | Save | | Artifacts | I. Sale Documents | 1. Premier Exhibitions_Confidential Information Memorandum_12-29-17 revision | Premier Exhibitions_Confidential Information Memorandum_12-12-17 revision.pdf | 2 | Artifacts\Sale Documents |
| Davis Polk | 07/13/2018 03:17 PM | View | | Artifacts | I. Sale Documents | 1. Premier Exhibitions_Confidential Information Memorandum_12-29-17 revision | Premier Exhibitions_Confidential Information Memorandum_12-12-17 revision.pdf | 2 | Artifacts\Sale Documents |
| Davis Polk | 07/13/2018 03:16 PM | Save | | Artifacts | III.C. Excerots - Artifact Condition Report | 1. RMST Excerot Condition Reports-en | RMST Excerot Condition Reports-en.pdf | 2 | Artifacts\Artifacts\Excerots - Artifact Condition Report |
| Davis Polk | 07/13/2018 03:16 PM | View | | Artifacts | III.C. Excerots - Artifact Condition Report | 1. RMST Excerot Condition Reports-en | RMST Excerot Condition Reports-en.pdf | 2 | Artifacts\Artifacts\Excerots - Artifact Condition Report |
| Davis Polk | 07/13/2018 03:14 PM | Save | | Artifacts | III.B. NOAA Site Visit Report On Preservation Procedures | 1. LTR to Wainger and McFarland 03082017 | LTR to Wainger and McFarland 03082017.pdf | 2 | Artifacts\Artifacts\NOAA Site Visit Report On Preservation Procedures |
| Davis Polk | 07/13/2018 03:13 PM | View | | Artifacts | III.B. NOAA Site Visit Report On Preservation Procedures | 1. LTR to Wainger and McFarland 03082017 | LTR to Wainger and McFarland 03082017.pdf | 2 | Artifacts\Artifacts\NOAA Site Visit Report On Preservation Procedures |
| Davis Polk | 07/13/2018 03:12 PM | Save | | Artifacts | III.A. Artifact Preservation Procedures And Protocols | 2. RMST Titanic Collections Policy | RMST Titanic Collections Policy.pdf | 2 | Artifacts\Artifacts\Artifact Preservation Procedures And Protocols |
| Davis Polk | 07/13/2018 03:12 PM | View | | Artifacts | III.A. Artifact Preservation Procedures And Protocols | 2. RMST Titanic Collections Policy | RMST Titanic Collections Policy.pdf | 2 | Artifacts\Artifacts\Artifact Preservation Procedures And Protocols |
| Davis Polk | 07/13/2018 03:12 PM | Save | | Artifacts | III.A. Artifact Preservation Procedures And Protocols | 1. PRXI SOP for Titanic artifacts | PRXI SOP for Titanic artifacts.pdf | 2 | Artifacts\Artifacts\Artifact Preservation Procedures And Protocols |
| Davis Polk | 07/13/2018 03:12 PM | View | | Artifacts | III.A. Artifact Preservation Procedures And Protocols | 1. PRXI SOP for Titanic artifacts | PRXI SOP for Titanic artifacts.pdf | 2 | Artifacts\Artifacts\Artifact Preservation Procedures And Protocols |
| Davis Polk | 07/13/2018 03:08 PM | BuitDownload | Artifacts | III.D. Artifact Inventory | 10. Artifacts by Expedition Year | Artifacts by Expedition Year.xlsx | 1 | Artifacts\Artifacts\Artifact Inventory |
| Davis Polk | 07/06/2018 12:26 PM | View | | Organizational Chart | 1. Entity Organizational Chart | PRXI Subsidiaries 9.19.16--no EIN.pdf | 1 | \Organizational Chart |