**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

R.M.S. TITANIC, INC.,
successor in interest to Titanic
Ventures, limited partnership,

      Plaintiff,

v.                                                           Civil Action No.  2:93cv902

The Wrecked and Abandoned
Vessel, . . .believed to be
the RMS TITANIC, <u>in</u> <u>rem</u>,

      Defendant.

<u>**OPPOSITION OF RMST TO THE EQUITY COMMITTEE'S
MOTION TO INTERVENE**</u>

      NOW COMES Plaintiff RMS Titanic, Inc., ("RMST"), by counsel, and opposes the

Motion to Intervene filed on behalf of the Equity Committee ("the EC"). As grounds for this

opposition, RMST states as follows:

**I.**      **BACKGROUND**

      On June 14, 2016, RMST, along with its parent company, Premier Exhibitions, Inc. and

certain of its affiliates (collectively, the "Debtors"), filed a voluntary petition in the United States

Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy

Court") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

(the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses as debtors

in possession under Bankruptcy Code Sections 1107 and 1108.  On August 24, 2016, the United

States Trustee appointed the Official Committee of Unsecured Creditors of Premier Exhibitions,

Inc. (the "Creditors Committee") and the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. (the "EC").

On June 1, 2018, the EC filed a *Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders of Premier Exhibitions, Inc*. The EC Disclosure was set for hearing on August 30, 2018. **The EC members hold less than 10% of the shares of Premier Exhibitions, Inc**, the parent company to RMST. On August 29, 2018 the EC filed its Amended Chapter 11 Plan of Reorganization and Amended Disclosure Statement. *See*, Exhibits 1 and 2 attached hereto.

On June 15, 2018, the Debtors filed their *Motion for Approval of (a) Competitive Bidding and Sale Procedures; (b) Form and Manner of Notices; (c) Form of Asset Purchase Agreement ("APA"); (d) Break-Up Fee and Expense Reimbursement; (e) Scheduling Auction and Hearing to Consider Final Approval of Sale, Including Assumption and Assignment of Related Executory Contracts and Unexpired Leases; (f) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests;(g) Settlement with PacBridge Parties; and (h) Granting Related Relief* (the "Sale Motion"). On August 30, 2018, the Debtors filed an Amended Sale Order and Bid Procedures. *See,* Exhibit 3 attached hereto. The Sale Motion contemplates the sale of substantially all of the Debtors' assets to the Stalking Horse Purchaser pursuant to the APA, subject to higher and better offers through a competitive auction process. Approval of the bid procedures set forth in the Sale Motion was set for hearing on August 30, 2018.

On June 28, 2018, the Creditors Committee filed a *Joint Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC* (the "Creditors Committee Plan") and accompanying

disclosure statement (the "Creditors Committee Disclosure").  *See*, Exhibits 4 and 5 attached hereto.

On July 6, 2018, the Museum filed a *Motion of the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC for Entry of an Order Scheduling a Status Conference on or Before July 25, 2018* (the "Status Conference Motion").

On August 3, 2018, the Bankruptcy Court entered an Order on the Status Conference Motion, "to determine an orderly process to consider (1) the Debtors' Motion for Approval of Competitive Bidding Procedures and Asset Purchase Agreement, (2) the Official Committee of Equity Security Holders' Chapter 11 Plan and Disclosure Statement, and (3) the Official Committee of Unsecured Creditors' Chapter 11 Plan and Disclosure Statement." The Status Conference Order, directed "the parties [to] take the steps that they believe are necessary for approval of the proposed sales by" this Court.

The EC initially tried to enter this case simply by filing a Notice of Appearance.  Doc. 467. After the Court's Order of August 8, 2018, (Doc. 469), granting RMST's objections to the Notice of Appearance, on August 17, 2018, the EC filed a Motion to Intervene ("the Motion").  The Motion does not provide any reason for intervention, other than, "as an interested party" and purportedly that the EC is acting, "in accordance with the order from the Bankruptcy Court." *See*, Doc. _____, EC Memo in Support at pp. 1 and 7. The EC Plan authorizes a Liquidating Trustee to retain Guernsey's Auction House to conduct a sale of the French Titanic Artifact Collection (the "FTAC") in piecemeal fashion and to sell the Subject Titanic Artifact Collection (the "STAC") in a manner consistent with the Covenants and Conditions.

On August 30, 2018, the Bankruptcy Court conducted a hearing to consider the Debtors' Sale Motion, the Official Committee of Equity Security Holders' Chapter 11 Plan and Disclosure Statement, and the Official Committee of Unsecured Creditors' Chapter 11 Plan and Disclosure Statement. At the hearing on August 30, 2018, the Debtors advised the Bankruptcy Court that the Stalking Horse Purchaser had agreed to increase its proposed purchase price under the Sale Motion from $17.5 million to $19.5 million. In conjunction with this increased bid, the Debtors' largest unsecured creditor, their New York City exhibition landlord, 417 Fifth Avenue, (the "New York Landlord") advised the Bankruptcy Court that it would oppose both the Creditor Committee's Disclosure Statement and Plan and the Equity Committee's Disclosure Statement and Plan.  Further, the New York Landlord advised the Court that it would vote against both the EC Plan and the CC Plan. Given the size of its claim, the New York Landlord has a blocking position with respect to the approval of any Plan of Reorganization.

The announced position of the New York Landlord makes it legally impossible for either the CC Plan or the EC Plan to be approved, and therefore no reason exists for either the Creditors Committee's Disclosure Statement or the Equity Committee's Disclosure Statement to be presented for a solicitation of votes.  *See,* 11 U.S.C. 1126 (voting requires – two thirds in amount and half in number to approve).  The parties are awaiting the Bankruptcy Court's decision on the Debtor's Sale Motion and on the Disclosure Statements.

## II.   ARGUMENT

### A.   The EC has No Standing.

#### 1.   <u>The EC must possess standing to intervene in this matter.</u>

Before addressing whether the intervention is proper, this Court must ensure that the EC has standing to pursue its relief. *Salvors, Inc. v. Unidentified Wrecked and Abandoned Vessel*, 861 F.3d 1278, 1289 (11th Cir. 2017) (citing *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1330

4

(11th Cir. 2007) ("Any party whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims.")).

A litigant must possess Article III standing in order to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, —— U.S. ——, – —— – ——, 137 S.Ct. 1645, —— L.Ed.2d —— (2017). "For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Id*. at ——, 137 S.Ct. 1645.

## 2. The EC has no injury.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992). Constitutional standing consists of three elements: (1) an injury in fact, that is "concrete and particularized" and "actual or imminent"; 2) a causal relationship between the injury and the conduct complained thereof; and 3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Id.* (internal citations omitted). The party invoking the jurisdiction of this Court bears the burden of establishing these elements. *Id*.

This Court should deny intervention because the EC has not clearly expressed its claimed injury, or what relief it seeks. Indeed, the EC lacks the required standing due to the absence of any injury. Outside of the bankruptcy proceedings, as set forth below, neither the EC nor any third-party has a claim to, or legal interest in the artifacts. Similarly, at this stage of the bankruptcy proceedings, without a viable Plan or other basis to pursue disposition of the artifacts, the EC has no legal claim to them. The desire of the EC to intervene in this Court, purportedly to advance a

Plan that cannot be confirmed, does not constitute a "concrete and particularized" or "actual and imminent" injury sufficient to confer standing on the EC.  *Id.*

### 3. The standing conferred in *R.M.S. Titanic v. Wrecked and Abandoned Vessel* has no application to the EC.

In the matter of *R.M.S. Titanic v. Wrecked and Abandoned Vessel,* 920 F. Supp. 96 (1996), John Joslyn filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking to rescind the order naming RMST salvor-in-possession.  Relying on *Darlak v. Columbus-America Discovery Group, Inc.*, 59 F.3d 20, 22 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094, 116 S. Ct. 817, 133 L. ed. 2d 761 (1996), this Court noted that "[the] whole world . . . are parties in an admiralty cause; and therefore the whole world is bound by the decision." *R.M.S. Titanic*, 920 F. Supp. at 98. Accordingly, this Court ruled, "[i]t logically follows that if the whole world are parties bound by the judgment, then the converse should also be true: the whole world are parties who may request relief from the judgment."  *Id.*

Mr. Joslyn asked the Court to rescind its order naming RMST salvor-in-possession. Similarly, the plaintiff in *Salvors, Inc.* likewise sought to become salvor in that case, claiming that the defendant, "unlawfully retain[ed] exclusive salvage rights to a forty-one-mile stretch of the Florida coastline, thereby preventing [the plaintiff] from conducting profitable salvage operations." *Salvors, Inc.* 861 F.3d at 1290. In both cases, the action *in rem,* or against the thing, applied to the wrecks which were the subject of the arrest proceedings.  In other words, the "specific property against all the world" for which the plaintiffs sought access through intervention were the wrecks themselves, by obtaining access through salvage rights.

But the EC Motion does not relate to the RMST's status as salvor.  Unlike the above salvage standing cases, the EC does not seek to remove RMST as salvor-in-possession through its Motion to Intervene.  Although not clear by the EC Motion or Memorandum, it appears that the EC is

seeking to intervene merely to protect its purported interest in the artifacts, pursuant to its Plan. The salvage rights themselves are temporary by their nature, and subject to rescission. *See R.M.S. Titanic,* 920 F. Supp. at 98.

The same is not true with respect to artifacts, for which title has been awarded to a salvor. "Once the [salvor] lien has been executed and the salvor as lienholder is paid its reward, whether in money or in kind, the reward becomes the property of the salvor to do with what it wants. *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel,* 286 F.3d 194, 204 (E.D. Va. 1996) (quoting *Point Landing Inc. v. Alabama Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir.1958)). "The Judicial sale cuts off the rights of all non-parties. The title from the marshal is good against the world." *Id.*

On August 15, 2011, this Court satisfied RMST's salvor lien on the artifacts it recovered from the wreck in 1993, 1994, 1996, 1998, 2000 and 2004 in the form of an *in specie* award to RMST of the STAC. As a matter of law, this *in specie* award conveyed title to these artifacts to RMST, subject only to the Covenants and Conditions, and which title is "good against the world." *Id.*

Although the Covenants and Conditions set forth certain limitations on the STAC, they do not contain any provisions requiring RMST to relinquish or transfer the STAC to any third-parties, let alone sell them piecemeal at auction. Nor do the Covenants and Conditions vest this Court with authority to designate, *sua sponte,* a Subsequent Trustee without such request from the current Trustee; the Court approves (or rejects) an entity submitted for approval as a replacement Trustee on application of the current Trustee. *See, e.g.*, Covenants and Conditions, § VI.  Similarly, title to the FTAC belongs to RMST via a *proces verbal* issued to it by a French Maritime tribunal in 1993. RMST's ownership of the FTAC is final and long decided.

Indeed, because there has been a final determination of RMST's rights as to both the artifact collections, those determinations preclude the EC from claiming a protectable interest in the collections.  In contrast to RMST's salvage rights, which are temporal in nature, RMST owns the STAC and the FTAC outright (subject only to the Covenants and Conditions). Although a third-party may have standing to challenge RMST's salvage rights, it has no similar standing to seek relief linked to the artifacts recovered and owned by RMST. Such standing "against the world" requires relief to be sought against the *rem,* not against artifacts to which title has already been transferred.

Here, in order to seek relief against property owned by RMST, the EC requires Constitutional standing.  It has no injury, let alone an injury in fact that is "concrete and particularized" and "actual or imminent." Accordingly, because the EC has no concrete, particularized injury with respect to a legal claim on the artifacts, it has no standing to intervene and seek relief from this Court.

### B.      The EC Cannot Satisfy the Elements of Intervention.

A party who seeks to intervene in a case has two options available under the Federal Rules of Civil Procedure: intervention of right and permissive intervention.  FED. R. CIV. P. 24.  For intervention of right, under Rule 24(a)(2), a court must grant an applicant's motion to intervene if it complies with each of the following elements: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties. *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.,* 314 F.R.D. 180, 183 (E.D. Va. 2016) (internal citations omitted).

The EC cannot comply with any one of the four components in Rule 24(a)(2), let alone all four. Putting aside whether the Motion is timely, the EC has no injury about which to complain. As set forth above, given the status of the bankruptcy proceedings, the EC has no interest in the property to protect and thus no injury or right to intervene under Rule 24(a)(2).

The EC fares no better under permissive intervention under Rule 24(b).  Permissive intervention requires either a conditional right to intervene by federal statute, or a claim that shares with the main action a common question of law or fact. *Id*.  Both are lacking by the EC, who has no legal claim to any property of RMST.

The EC has no current or prospective legal interest in the property that is the subject of this litigation, but merely a desire to control its disposition through a Plan that has not been, and is exceedingly unlikely to be approved. The blocking position of the New York Landlord all but guarantees the failure of the EC plan. Moreover, pursuant to Order of the Bankruptcy Court entered on August 3, 2018 (a copy of which is attached hereto as Exhibit 6), Premier Exhibitions, Inc., has the legal right to proceed with a sale of its assets prior to and outside of a Plan, pursuant to 11 U.S. Code § 363(b). Premier intends to proceed in this manner. As noted above, as the EC has no interest in the property at this stage of the proceedings, and thus no injury, it has neither standing nor the right to intervene in these proceedings. RMST will supplement this response with the Bankruptcy Court's decision on the Debtor's Sale Motion, which decision is anticipated to be rendered prior to this Court's hearing on the intervention motions.

For the foregoing reasons, RMST respectfully requests that the Court enter an Order denying the EC's Motion to Intervene.

Respectfully submitted,

R.M.S. TITANIC, INC.

By Counsel

Counsel:


_____/s/_____

Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com

Brian A. Wainger (VSB #38476)
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tele: 757/965-6804
Fax: 757/304-6175
Email: bwainger@kaleolegal.com

<u>CERTIFICATION</u>

I hereby certify that the foregoing has been electronically filed through the Court's ECF system this 31st day of August, 2018.

_____/s/_____
Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com

106718357_1