# EXHIBIT A

**Execution Version**

## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## PREMIER ACQUISITION HOLDINGS LLC

This Limited Liability Company Agreement (this "Agreement") of Premier Acquisition Holdings LLC (the "Company"), dated as of June 6, 2018, is adopted and executed by the members of the Company signatory hereto (each, a "Member" and collectively, the "Members").

## ARTICLE 1
## ORGANIZATION

1.1     Formation.  The Company has been organized as a Delaware limited liability company under the Delaware Limited Liability Company Act, Del. Code Ann. Title. 6, Sections 18-101 – 18-1109, as amended from time to time (the "Act"), by the filing of a Certificate of Formation of the Company (the "Certificate") with the Secretary of State of the State of Delaware on June 6, 2018 under section 18-201 of the Act.

1.2     Name.  The name of the Company is "Premier Acquisition Holdings LLC" and all Company business must be conducted in that name or such other names that may be selected by the Members and that comply with applicable law.

1.3     Registered Office; Registered Agent; Offices.  The registered office and registered agent of the Company in the State of Delaware shall be as specified in the Certificate or as designated by the Members in the manner provided by applicable law.  The offices of the Company shall be at such places as the Members may designate, which need not be in the State of Delaware.

1.4     Qualification in Other Jurisdictions.  The Members may cause the Company to register as a foreign limited liability company and file such fictitious or trade names, statements or certificates in such jurisdictions and offices as necessary or appropriate in the Members' judgment for the conduct of the Company's operation of its business.

1.5     Purposes.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.

1.6     Term.  The Company commenced on the date of filing of the Certificate under and pursuant to the Act and shall continue in existence perpetually or until the earlier dissolution of the Company as provided in this Agreement or pursuant to the Act.

## ARTICLE 2
## MEMBERSHIP INTEREST

2.1     Members.  Each Member owns the limited liability company interests in the Company (such interest, the "Membership Interest") in such percentages as set forth on Schedule A attached hereto.  No assignee (whether voluntary or involuntary) of a Member's Membership

#5725150.2

Interest shall become a member of the Company without the unanimous written consent of the Members.

## ARTICLE 3
## CAPITAL CONTRIBUTIONS

3.1     <u>Initial Capital Contribution</u>.  The initial capital contribution is made by each Member in consideration of the Member's Membership Interest.

3.2     <u>Additional Capital Contributions</u>.  The Members shall have the option, but not the obligation, from time to time to make capital contributions to the Company at such times and in such amounts as the Members unanimously determine to be necessary or desirable in furtherance of the Company's purposes.  The provisions of this Agreement, including this <u>Section 3.2</u>, are intended to benefit the Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

## ARTICLE 4
## MANAGEMENT

4.1     <u>Management of the Company</u>.  The Members, acting unanimously, have the exclusive right to manage the Company's business.  Accordingly, the Members, at times acting through the officers (if any) of the Company, shall: (a) manage the affairs and business of the Company; (b) exercise the authority and powers granted to the Company; and (c) otherwise act in all other matters on behalf of the Company.  Any act of the Company to be valid and binding on the Company shall require a unanimous approval of the Members.

4.2     <u>Execution of Documents</u>.  Any document or instrument of any and every nature, including without limitation any agreement, contract, deed, promissory note, mortgage or deed of trust, security agreement, financing statement, pledge, assignment, bill of sale and certificate, which is intended to bind the Company or convey or encumber title to its real or personal property shall be valid and binding for all purposes only if executed by all of the Members, on behalf of the Company, or an officer of the Company so authorized by all of the Members pursuant to a separate resolution or written consent.

4.3     <u>Officers</u>.  The officers, if any, of the Company may consist of a President, a Treasurer, a Secretary and any other officers or authorized persons appointed by the Members. The officers, if any, shall be appointed by the Members and shall exercise such powers and perform such duties as are prescribed by the Members.  Any number of offices may be held by the same person, as the Members may unanimously determine.

4.4     <u>Term of Office</u>.  The officers shall hold office for the term for which they were appointed and until their successors are elected and qualified; <u>provided</u>, <u>however</u>, that any officer may be removed at any time with or without cause by the Members acting unanimously.

#5725150.2

      4.5    <u>Limited Liability</u>.  Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and none of the Members, any other member of the Company (if any), manager, officer or authorized person shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being member, manager, officer or authorized person of the Company.

**ARTICLE 5**
**INDEMNIFICATION**

      5.1    <u>Exculpation</u>.  To the fullest extent permitted by applicable law, none of the Members, any other member of the Company (if any), manager, officer or authorized person shall be liable to the Company, any other Member or any other person or entity who or that has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by any Member, any other member (if any), manager, officer or authorized person of the Company.

      5.2    <u>Indemnification</u>.  To the fullest extent permitted by applicable law, each Member (irrespective of the capacity in which it acts), any other member, manager, officer or authorized person of the Company shall be entitled to indemnification and advancement of expenses from the Company for and against any loss, damage, claim or expense (including attorneys' fees) whatsoever incurred by such Member, any other member, manager, officer or authorized person of the Company relating to or arising out of any act or omission or alleged acts or omissions performed or omitted by such Member, any other member, manager, officer or authorized person of the Company on behalf of the Company; <u>provided</u>, <u>however</u>, that any indemnity under this <u>Section 5.2</u> shall be provided out of and to the extent of Company assets only, and none of the Members, any other member, manager, officer or authorized person of the Company or any other person shall have any personal liability on account thereof.

      5.3    <u>No Amendments</u>.  No amendment or repeal of this provision shall apply to or have any effect on the indemnification of, or advancement of expenses to, any Member, any manager, officer or authorized person of the Company for, or with respect to, acts or omissions of any Member, any manager, officer or authorized person occurring prior to such amendment or repeal.

      5.4    <u>Not Exclusive</u>.  The foregoing shall not be exclusive of any other rights to which the Members, any manager, officer or authorized person may be entitled as a matter of law and shall not affect any rights to indemnification to which Company personnel other than any Member, manager, officer or authorized person may be entitled by contract or otherwise.

**ARTICLE 6**
**TRANSFERS**

      No Member may sell, assign, transfer, convey, pledge or otherwise dispose of (collectively, "<u>Transfer</u>") in whole or in part its Membership Interest without the unanimous approval of all of the other Members. If a Member Transfers all or part of its Membership Interest pursuant to this <u>Article 6</u>, the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of

3

this Agreement, which instrument may be a counterpart signature page to this Agreement. If a Member Transfers all of its Membership Interest pursuant to this <u>Article 6</u>, such admission shall be deemed effective immediately prior to the Transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

**ARTICLE 7**
**TAXATION**

The Company is intended to be treated as a corporation for federal and applicable state and local income tax purposes. The Company will file a timely election on IRS Form 8832 to be treated as an association taxable as a corporation for federal income tax purposes under Treasury Regulation Section 301.7701-3 and will make any corresponding elections under any corresponding provision of state or local law.

**ARTICLE 8**
**BOOKS, RECORDS, BANK ACCOUNTS AND ASSETS**

8.1     <u>Maintenance of Books</u>.   The Company shall keep, or cause to be kept, at its principal office complete and accurate books and records of the Company, supporting documentation with respect to the conduct of the Company's business, and minutes of the proceedings of the Members.   The books and records shall be maintained with respect to accounting matters in accordance with sound accounting practices.

8.2     <u>Bank Accounts and Assets</u>.   The Company may establish one or more separate bank and investment accounts and arrangements for the Company, which shall be maintained in the Company's name with financial institutions and firms as the Members may designate by a unanimous approval.   The Company's funds and assets shall not be commingled with the funds and assets of any Member or any officer.   Without limiting the foregoing, the Members shall take all steps necessary to identify the inventory, property, and assets of the Company as belonging to the Company and shall keep all such property, assets, and inventory separate and apart, so that no third person not claiming by, through or under the Company shall at any time assert any interest or right in or to such property, assets and inventory.

**ARTICLE 9**
**DISSOLUTION, LIQUIDATION AND TERMINATION**

9.1     <u>Dissolution</u>.   Subject to <u>Section 9.2</u> below, the Company shall dissolve and its affairs shall be wound up on the first to occur of the following events:

      (a)     the unanimous consent of the Members; or

      (b)     entry of a decree of judicial dissolution of the Company under the Act.

Except as specifically provided in this <u>Section 9.1</u>, no other event or action specified in the Act shall cause the Company to dissolve.

9.2     <u>Winding Up and Termination</u>.   On the occurrence of an event described in <u>Section 9.1</u> above, the Members shall unanimously appoint a person to act as liquidator.   The

4

liquidator shall proceed diligently to wind up the affairs of the Company as provided in the Act. Until final distribution, the liquidator shall continue to operate the Company properties. The costs of winding up shall be borne as a Company expense. After payment of creditors and the establishment of such reserves as the Members shall unanimously determine, the assets shall be distributed to the Members pro rata based on their respective percentages of the Membership Interests. Upon final distribution of the Company assets, the Company shall file a certificate of cancellation with the Secretary of State of the State of Delaware, cancel any foreign qualifications made by the Company, and take such other actions as may be necessary to terminate the existence of the Company.

## ARTICLE 10
## MISCELLANEOUS

10.1   <u>Amendments</u>.   This Agreement may be modified, altered, supplemented or amended by a written document executed by all of the Members.

10.2   <u>Governing Law</u>.   This Agreement, and the substantive application and interpretation hereof, shall be governed exclusively by the law of the state of Delaware, without giving effect to any rules or principles thereof relating to conflict of law that may call for the application of the law of any other jurisdiction.

10.3   <u>Headings</u>.   The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof.

10.4   <u>Benefits of Agreement; No Third-Party Rights</u>.   None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of any Member. Nothing in this Agreement shall be deemed to create any right in any Person not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third person.

10.5   <u>Severability</u>.   If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

* * * * *

#5725150.2

IN WITNESS WHEREOF, each Member has executed this Agreement of the date first written above.

**Apollo Credit Strategies Master Fund Ltd.**
By: Apollo ST Fund Management LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title:  Vice President

**Alta Fundamental Advisers SP LLC**

By:_____

Name: Gilbert Li

Title: Managing Partner

**PacBridge Partners I Investment Co. Ltd.**

By:_____
Name: Sheldon Trainor
Title: Director

Signature Page to Premier Acquisition Holdings LLC Limited Liability Company Agreement

Schedule A

| Name and Address of Member | Percentage of Membership Interest |
|---|---|
| Apollo Credit Strategies Master Fund Ltd.<br>c/o Apollo Capital Management, L.P.<br>9 West 57th Street<br>New York, New York 10019 | $33^{1/3}$% |
| Alta Fundamental Advisers SP LLC<br>777 Third Avenue, Suite 19A<br>New York, New York 10017 | $33^{1/3}$% |
| PacBridge Partners I Investment Co. Ltd.<br>Unit 1401, 14th Floor, The Chinese Bank Building,<br>61-65 Des Voeux Road, Central Hong Kong | $33^{1/3}$% |

#5725150.2