# EXHIBIT D

**EXECUTION VERSION**

**ESCROW AGREEMENT**

THIS ESCROW AGREEMENT (this "Escrow Agreement") is entered into and effective this 19th day of June, 2018, by and among (i) Premier Exhibitions, Inc., a Florida corporation ("Premier"), (ii) Arts and Exhibitions International, LLC, a Florida limited liability company ("A&E"), (iii) Premier Exhibition Management LLC, a Florida limited liability company ("PEM"), (iv) Premier Exhibitions NYC, Inc., a Nevada corporation ("Premier NYC"), (v) Premier Merchandising, LLC, a Delaware limited liability company ("Premier Merch"), (vi) Premier Exhibitions International, LLC, a Delaware limited liability company ("PEI"), (vii) Dinosaurs Unearthed Corp., a Delaware corporation ("DU Corp.") (collectively with Premier, A&E, PEM, Premier NYC, Premier Merch and PEI, the "Debtor Sellers"); (viii) DinoKing Tech Inc. d/b/a Dinosaurs Unearthed, a company formed under the laws of British Columbia ("DinoKing"), Premier Acquisition Holdings LLC, a Delaware limited liability company (the "Purchaser"), and SunTrust Bank, a Georgia banking corporation, as escrow agent (the "Escrow Agent"). The Debtor Sellers and DinoKing are collectively referred to herein as the "Sellers." The Sellers and Purchaser are collectively referred to herein as the "Parties". Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement (as defined below).

WHEREAS, on June 14, 2018, Purchaser, Sellers and RMS Titanic, Inc., a Florida corporation, entered into that certain Asset Purchase Agreement (the "Asset Purchase Agreement"), pursuant to which (i) Sellers agreed to sell, assign, transfer, convey and deliver to Purchaser, and Purchaser agreed to purchase, acquire and accept from Sellers, all of the right, title and interest of Sellers in and to the Transferred Assets, and (ii) Purchaser has agreed to assume the Assumed Liabilities, in each case, effective as of the Closing, on the terms and subject to the conditions of the Asset Purchase Agreement;

WHEREAS, pursuant to the terms of the Asset Purchase Agreement and this Escrow Agreement, Purchaser (i) has deposited with the Escrow Agent, on the date hereof, an amount in cash equal to $1,750,000 (the "Good Faith Deposit Funds") in an account (the "Good Faith Deposit Account") to be held, disbursed and invested by the Escrow Agent in accordance with this Escrow Agreement, and (ii) will deposit with the Escrow Agent, on the Closing Date, an amount in cash equal to $500,000 (the "Purchase Price Adjustment Funds") in an account (the "Purchase Price Adjustment Account") to be held, disbursed and invested by the Escrow Agent in accordance with this Escrow Agreement;

WHEREAS, the Good Faith Deposit Funds and the Purchase Price Adjustment Funds are collectively referred to herein as the "Escrow Funds"; and

WHEREAS, the Parties acknowledge that the Escrow Agent is not a party to, and has no duties or obligations under, the Asset Purchase Agreement, that all references in this Escrow Agreement to the Asset Purchase Agreement are for convenience only, and that the Escrow Agent shall have no implied duties beyond the express duties set forth in this Escrow Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, in consideration of the premises herein, the Parties and the Escrow Agent, intending to be legally bound, hereby agree as follows:

I.      Terms and Conditions

1.1 The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

1.2 Purchaser shall, contemporaneously with the execution and delivery of this Escrow Agreement, and within three (3) Business Days from the execution and delivery of the Asset Purchase Agreement, deposit into the Good Faith Deposit Account the Good Faith Deposit Funds by wire transfer of immediately available funds using the wire instructions below. Escrow Agent shall hold, invest and disburse the Good Faith Deposit Funds in accordance with the terms and conditions of this Escrow Agreement.

*FTL 111784647v11*

35421934v9

SunTrust Bank
ABA: 061000104
Account: 9443001321
Account Name: Escrow Services
Reference: #7970745 Premier Good Faith Deposit Account
Attention: Byron Roldan

1.3  Purchaser shall, at the Closing, deposit into the Purchase Price Adjustment Account the Purchase Price Adjustment Funds by wire transfer of immediately available funds using the wire instructions below. Escrow Agent shall hold, invest and disburse the Purchase Price Adjustment Funds in accordance with the terms and conditions of this Escrow Agreement.

SunTrust Bank
ABA: 061000104
Account: 9443001321
Account Name: Escrow Services
Reference: #7970744 Premier Purchase Price Adjustment Account
Attention: Byron Roldan

1.4  Escrow Agent shall hold the Good Faith Deposit Funds in its possession and shall disburse the Good Faith Deposit Funds pursuant to and in accordance with the terms and conditions of the joint written direction signed by the authorized representatives of Sellers and Purchaser which is attached hereto as Exhibit C (the "Joint Written Direction").

1.5  Escrow Agent shall hold the Purchase Price Adjustment Funds in its possession and shall disburse the Purchase Price Adjustment Funds after receipt of, and in accordance with, a joint written notice signed by the authorized representatives of Sellers and Purchaser substantially in the form attached hereto as Exhibit D (a "Purchase Price Adjustment Account Disbursement Instruction").  Within two Business Days of receipt of the Purchase Price Adjustment Account Disbursement Instruction, all or a portion of the Purchase Price Adjustment Escrow Funds shall be disbursed by the Escrow Agent to Purchaser and/or the Sellers pursuant to the terms of and in the amounts specified in such instructions.

1.6  For purposes of this Escrow Agreement, "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the banking institutions in the Commonwealth of Virginia, are authorized or required by law or executive order to remain closed.

## II.    Provisions as to Escrow Agent

2.1  This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto, which duties shall be deemed purely ministerial in nature, and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent. The Escrow Agent shall in no event be deemed to be a fiduciary to any Party or any other person or entity under this Escrow Agreement.   The permissive rights of the Escrow Agent to do things enumerated in this Escrow Agreement shall not be construed as duties. In performing its duties under this Escrow Agreement, or upon the claimed failure to perform its duties, the Escrow Agent shall not be liable for any damages, losses or expenses other than damages, losses or expenses which have been finally adjudicated by a court of competent jurisdiction to have resulted from the Escrow Agent's bad faith, willful misconduct or gross negligence.  In no event shall the Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The Escrow Agent shall not be responsible or liable for the failure of any Party to take any action in accordance with this Escrow Agreement. Any wire transfers of funds made by the Escrow Agent pursuant to this Escrow Agreement will be made subject to and in accordance with the Escrow Agent's usual and ordinary wire transfer procedures in effect from time to time and the terms of this Escrow Agreement. The Escrow Agent shall have no liability with respect to the transfer or distribution of any funds effected by the Escrow Agent pursuant to wiring or transfer instructions provided to the Escrow Agent in accordance with the provisions of this Escrow Agreement, except in the case of its bad faith, gross negligence or willful misconduct. The Escrow Agent shall not

be obligated to take any legal action or to commence any proceedings in connection with this Escrow Agreement or any property held hereunder or to appear in, prosecute or defend in any such legal action or proceedings.

2.2 The Parties acknowledge and agree that the Escrow Agent acts hereunder as a depository only, and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of the subject matter of this Escrow Agreement or any part thereof, or of any person executing or depositing such subject matter. No provision of this Escrow Agreement shall require the Escrow Agent to risk or advance its own funds or otherwise incur any financial liability or potential financial liability in the performance of its duties or the exercise of its rights under this Escrow Agreement.

2.3 This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the Parties in connection with the subject matter of this Escrow Agreement, and no other agreement entered into between the Parties, or any of them, including, without limitation, the Asset Purchase Agreement, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof.

2.4 The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any Party or any other person or entity interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited herewith unless such notice is explicitly provided for in this Escrow Agreement. Solely as between Purchaser and Sellers, with respect to any inconsistencies between the Escrow Agreement and the Asset Purchase Agreement, the Asset Purchase Agreement shall control with respect to the rights of Purchaser and Sellers.

2.5 The Escrow Agent shall be protected in acting upon any written instruction, notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other paper or document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, items directing investment or non-investment of funds, items requesting or authorizing release, disbursement or retainage of the subject matter of this Escrow Agreement and items amending the terms of this Escrow Agreement. Except with respect to information set forth in the Incumbency Certificates furnished pursuant to Section 4.13 hereof, The Escrow Agent shall be under no duty or obligation to inquire into or investigate the validity, accuracy or content of any such notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other paper or document. The Escrow Agent shall have no duty or obligation to make any formulaic calculations of any kind hereunder.

2.6 The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents. The Escrow Agent shall be entitled to seek the advice of legal counsel with respect to any matter arising under this Escrow Agreement and the Escrow Agent shall have no liability and shall be fully protected with respect to any action taken or omitted in good faith pursuant to the advice of such legal counsel. The Parties shall be jointly and severally liable for and shall promptly pay upon demand by the Escrow Agent the reasonable and documented fees and expenses of any such legal counsel; provided, that solely as between Purchaser and Sellers, Purchaser shall be responsible for 50% of such fees and expenses and Sellers shall be responsible for 50% of such fees and expenses.

2.7 In the event of any disagreement between any of the Parties, or between any of them and any other person or entity, resulting in adverse claims or demands being made in connection with the matters covered by this Escrow Agreement, or in the event that the Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable (except for its bad faith, gross negligence or willful misconduct) in any way or to any Party or other person or entity for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of the Parties and all other interested persons and entities shall have been fully and finally adjudicated by a court of competent jurisdiction, or (ii) all differences shall have been settled and all doubt resolved by agreement among all of the Parties and all other interested persons and entities, and the Escrow Agent shall have been notified thereof in writing signed by the Parties and all such persons and entities. Notwithstanding the foregoing, the Escrow Agent may in its

discretion obey the order, judgment, decree or levy of any court, whether with or without jurisdiction, or of an agency of the United States or any political subdivision thereof, or of any agency of any State of the United States or of any political subdivision of any thereof, and the Escrow Agent is hereby authorized in its sole discretion to comply with and obey any such orders, judgments, decrees or levies. The rights of the Escrow Agent under this sub-paragraph are cumulative of all other rights which it may have by law or otherwise.

In the event of any disagreement or doubt, as described above, the Escrow Agent shall have the right, in addition to the rights described above and at the election of the Escrow Agent, to tender into the registry or custody of any court having jurisdiction, all funds and property held under this Escrow Agreement, and the Escrow Agent shall have the right to take such other legal action as may be appropriate or necessary, in the reasonable discretion of the Escrow Agent.  Upon such tender, the Parties agree that the Escrow Agent shall be discharged from all further duties under this Escrow Agreement; provided, however, that any such action of the Escrow Agent shall not deprive the Escrow Agent of its compensation and right to reimbursement of expenses hereunder arising prior to such action and discharge of the Escrow Agent of its duties hereunder.

2.8 The Parties jointly and severally agree to indemnify, defend and hold harmless the Escrow Agent and each of the Escrow Agent's officers, directors, agents and employees (the "Indemnified Parties") from and against any and all losses, liabilities, claims made by any Party or any other person or entity, damages, expenses and costs (including, without limitation, reasonable attorneys' fees and expenses) of every nature whatsoever (collectively, "Losses") which any such Indemnified Party may incur and which arise directly or indirectly from this Escrow Agreement or which arise directly or indirectly by virtue of the Escrow Agent's undertaking to serve as Escrow Agent hereunder; provided, however, that no Indemnified Party shall be entitled to indemnity with respect to Losses that have been finally adjudicated by a court of competent jurisdiction to have resulted from such Indemnified Party's bad faith, gross negligence or willful misconduct; provided further, that solely as between Purchaser and Sellers, Purchaser shall be responsible for 50% of such Losses and Sellers shall be responsible for 50% of such Losses.  The provisions of this section shall survive the termination of this Escrow Agreement and any resignation or removal of the Escrow Agent.

2.9 Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business of the Escrow Agent may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

2.10 The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the Parties.  Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than thirty (30) days after such written notice has been furnished to the Parties.  In such event, the Parties shall as promptly as reasonably practicable appoint a successor escrow agent. In the event no successor escrow agent has been appointed on or prior to the date such resignation is to become effective, the Escrow Agent shall be entitled to tender into the custody of any court of competent jurisdiction all funds and other property then held by the Escrow Agent hereunder and the Escrow Agent shall thereupon be relieved of all further duties and obligations under this Escrow Agreement; provided, however, that any such action of the Escrow Agent shall not deprive the Escrow Agent of its compensation and right to reimbursement of expenses hereunder arising prior to such action and discharge of the Escrow Agent of its duties hereunder. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent hereunder. Purchaser and Sellers may remove the Escrow Agent at any time by giving written notice at least thirty (30) calendar days in advance of such removal.

2.11 The Escrow Agent and any director, officer or employee of the Escrow Agent may become financially interested in any transaction in which any of the Parties may be interested and may contract with and lend money to any Party and otherwise act as fully and freely as though it were not escrow agent under this Escrow Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for any Party.

## III.   Compensation of Escrow Agent

3.1 Purchaser and Sellers jointly and severally agree to pay to the Escrow Agent compensation, and to reimburse the Escrow Agent for costs and expenses, all in accordance with the provisions of **Exhibit B** hereto, which is incorporated herein by reference and made a part hereof; provided, that solely as between Purchaser and Sellers, Sellers shall be responsible for all such compensation, costs and expenses. The fees agreed upon for the services rendered hereunder are intended as full compensation for the Escrow Agent's services as contemplated by this Escrow Agreement; provided, however, that in the event that the conditions for the disbursement of funds are not fulfilled, or the Escrow Agent renders any service not contemplated in this Escrow Agreement, or there is any assignment of interest in the subject matter of this Escrow Agreement or any material modification hereof, or if any dispute or controversy arises hereunder, or the Escrow Agent is made a party to any litigation pertaining to this Escrow Agreement or the subject matter hereof, then Purchaser and Sellers jointly and severally agree to compensate the Escrow Agent  for such extraordinary services and reimburse the Escrow Agent for all costs and expenses, including documented reasonable attorneys' fees and expenses, occasioned by any such event; provided, that solely as between Purchaser and Sellers, Purchaser shall be responsible for 50% of such compensation, costs and expenses and Sellers shall be responsible for 50% of such compensation, costs and expenses. In the event the Escrow Agent is authorized to make a distribution of funds to any Party (or at the direction of any Party) pursuant to the terms of this Escrow Agreement, and fees or expenses are then due and payable to the Escrow Agent pursuant to the terms of this Escrow Agreement (including, without limitation, amounts owed under this Section 3.1 and Section 2.8) by such Party, the Escrow Agent is authorized to offset and deduct such amounts due and payable to it from such distribution. The Escrow Agent shall have, and is hereby granted, a prior lien upon and first priority security interest in the Escrow Funds (and the earnings and interest accrued thereon) with respect to its unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights, superior to the interests of any other persons or entities and without judicial action to foreclose such lien and security interest, and the Escrow Agent shall have and is hereby granted the right to set off and deduct any unpaid fees, non-reimbursed expenses and unsatisfied indemnification rights from the Escrow Funds (and the earnings and interest accrued thereon). The provisions of this section shall survive the termination of this Escrow Agreement and any resignation or removal of the Escrow Agent.

## IV.   Miscellaneous

4.1 The Escrow Agent shall make no disbursement, investment or other use of funds until and unless it has collected funds.  The Escrow Agent shall not be liable for collection items until the proceeds of the same in actual cash have been received or the Federal Reserve has given the Escrow Agent credit for the funds.

4.2 The Escrow Agent shall invest all funds held pursuant to this Escrow Agreement in the SunTrust Institutional Deposit Option 100 (SIDO 100). The investments in the SunTrust Institutional Deposit Option 100 (SIDO 100) are insured, subject to the applicable rules and regulations of the Federal Deposit Insurance Corporation (the "FDIC"), in the standard FDIC insurance amount of $250,000, including principal and accrued interest, and are not secured.  The SunTrust Institutional Deposit Option 100 (SIDO 100) is more fully described in materials which have been furnished to the Parties by the Escrow Agent, and the Parties acknowledge receipt of such materials from the Escrow Agent. Instructions to make any other investment must be in writing and signed by each of the Parties.  The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to the investment of moneys held hereunder or the purchase, sale, retention or other disposition of any investment, and the Escrow Agent shall not be liable to any Party or any other person or entity for any loss incurred in connection with any such investment.  The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity.  The Escrow Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder including without limitation charging any applicable agency fee in connection with each transaction. The Escrow Agent shall use its best efforts to invest funds on a timely basis upon receipt of such funds; provided, however, that the Escrow Agent shall in no event  be liable for compensation to any Party or other person or entity related to funds which are held un-invested or funds which are not invested timely. The Escrow Agent is authorized and directed to sell or redeem any investments as it deems necessary to make any payments or distributions required under this Escrow Agreement. Any investment earnings and income

on the Escrow Funds shall become part of the Escrow Funds and shall be disbursed in accordance with this Escrow Agreement.

4.3 The Escrow Agent shall provide monthly reports of transactions and holdings to the Parties as of the end of each month, at the addresses provided by the Parties in Section 4.5.

4.4 The Parties agree that all interest and income from the investment of the Purchase Price Adjustment Funds and the Good Faith Deposit Funds shall be reported as having been earned by Premier as of the end of each calendar year whether or not such income was disbursed during such calendar year and to the extent required by the Internal Revenue Service; provided, however, that the Sellers may deliver written instructions to the Escrow Agent to change the allocation of any such interest and income at any time after the execution of this Escrow Agreement. On or before the execution and delivery of this Escrow Agreement, each of the Parties shall provide to the Escrow Agent a correct, duly completed, dated and executed current United States Internal Revenue Service Form W-9 or Form W-8, whichever is appropriate or any successor forms thereto, in a form and substance satisfactory to the Escrow Agent including appropriate supporting documentation and/or any other form, document, and/or certificate required or reasonably requested by the Escrow Agent to validate the form provided. Notwithstanding anything to the contrary herein provided, except for the delivery and filing of tax information reporting forms required pursuant to the Internal Revenue Code of 1986, as amended, to be delivered and filed with the Internal Revenue Service by the Escrow Agent, as escrow agent hereunder, the Escrow Agent shall have no duty to prepare or file any Federal or state tax report or return with respect to any funds held pursuant to this Escrow Agreement or any income earned thereon. With respect to the preparation, delivery and filing of such required tax information reporting forms and all matters pertaining to the reporting of earnings on funds held under this Escrow Agreement, the Escrow Agent shall be entitled to request and receive written instructions from the Sellers, and the Escrow Agent shall be entitled to rely conclusively and without further inquiry on such written instructions. The Parties jointly and severally, agree to indemnify, defend and hold the Escrow Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Escrow Agent on or with respect to the Escrow Funds or any earnings or interest thereon unless such tax, late payment, interest, penalty or other cost or expense was finally adjudicated by a court of competent jurisdiction to have resulted from the bad faith, gross negligence or willful misconduct of the Escrow Agent; provided that solely as between Purchaser and Sellers, Purchaser shall be responsible for 50% of such liability and Sellers shall be responsible for 50% of such liability. The indemnification provided in this section is in addition to the indemnification provided to the Escrow Agent elsewhere in this Escrow Agreement and shall survive the resignation or removal of the Escrow Agent and the termination of this Escrow Agreement.

4.5 Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) by electronic mail to the e-mail address given below, and written confirmation of receipt is obtained promptly after completion of the transmission, (iv) by overnight delivery with a reputable national overnight delivery service, or (v) by United States mail, postage prepaid, or by certified mail, return receipt requested and postage prepaid, in each case to the appropriate address set forth below or at such other address as any Party hereto may have furnished to the other Parties hereto in writing:

If to Escrow Agent:          If prior to July 13, 2018

                             SunTrust Bank
                             Attn: Escrow Services
                             919 East Main Street, 7th Floor
                             Richmond, Virginia 23219
                             Client Manager: Byron Roldan
                             Phone: 804-782-5404
                             Facsimile: 804-225-7141
                             Email: Byron.Roldan@SunTrust.com

                             If on or after July 13, 2018:

*FTL 111784647v11*

SunTrust Bank
Attn: Escrow Services
Mail Code: CS-HDQ 5307
919 East Main Street, 5th Floor
Richmond, Virginia 23219
Client Manager: Byron Roldan
Phone: 804-782-5404
Facsimile: 804-225-7141
Email: Byron.Roldan@SunTrust.com

If to:                      Purchaser
                            Premier Acquisition Holdings LLC

                            777 Third Avenue Suite 19A
                            New York, NY 10017
                            Attention: Gilbert Li
                            Email: gli@altafundamental.com
                            Fax: 212-319-1778

                            Unit 1401, 14th Floor, The Chinese Bank Building,
                            61-65 Des Voeux Road, Central Hong Kong
                            Attention: Giovanni Wong
                            Email: wongg@pacbridgepartners.com

                            9 West 57th Street, 37th Floor
                            NY, NY 10019
                            Attention: Joe Glatt

                            with a copy to (which shall not constitute notice):
                            Greenberg Traurig, P.A.
                            401 East Las Olas Blvd., Suite 2000
                            Fort Lauderdale, Florida 33301
                            Attention: Scott  M. Grossman, Esq.
                            Email: grossmansm@gtlaw.com
                            Fax:  954-765-1477

                            with a copy to (which shall not constitute notice):

                            Bracewell LLP
                            1251 Avenue of the Americas, 49th Floor
                            New York, New York 10020
                            Attention: Jennifer Feldsher, Esq.
                            Email:  jennifer.feldsher@bracewell.com
                            Fax:  212-938-3837

If to:                      Sellers
                            c/o Premier Exhibitions, Inc.
                            3045 Kingston Court, Suite I
                            Peachtree Corners, Georgia 30071
                            Attention: Daoping Bao
                            Phone: 604-277-0707 ext. 555

Facsimile: 604-277-1617
E-mail: daoping@prxi.com

with a copy to (which shall not constitute notice):

Troutman Sanders, LLP
600 Peachtree Street, NE Suite 3000
Atlanta, Georgia 30308
Attention: Harris B. Winsberg, Esq.
Phone: 404-885-3348
Facsimile: 404-885-3900
Email: harris.winsberg@troutmansanders.com

Any Party hereto may unilaterally designate a different address by giving notice of each change in the manner specified above to each other Party hereto. Notwithstanding anything to the contrary herein provided, the Escrow Agent shall not be deemed to have received any notice, request, report or other communication hereunder prior to the Escrow Agent's actual receipt thereof.

4.6 This Escrow Agreement is being made in and is intended to be construed according to the laws of the State of New York, except to the extent that the Laws of such State are superseded by the Bankruptcy Code or other applicable Federal Law.  Except as permitted in Section 2.9, neither this Escrow Agreement nor any rights or obligations hereunder may be assigned by any party hereto without the express written consent of each of the other parties hereto. This Escrow Agreement shall inure to and be binding upon the Parties and the Escrow Agent and their respective successors, heirs and permitted assigns.

4.7 The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the Parties and the Escrow Agent.

4.8 This Escrow Agreement is for the sole benefit of the Indemnified Parties, the Parties and the Escrow Agent, and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

4.9 No party to this Escrow Agreement shall be liable to any other party hereto for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

4.10 This Escrow Agreement shall terminate on the date on which all of the funds and property held by the Escrow Agent under this Escrow Agreement have been disbursed. Upon the termination of this Escrow Agreement and the disbursement of all of the funds and property held hereunder, this Escrow Agreement shall be of no further effect except that the provisions of Sections 2.8, 3.1 and 4.4 shall survive such termination.

4.11 All titles and headings in this Escrow Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

4.12 This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

4.13 Contemporaneously with the execution and delivery of this Escrow Agreement and, if necessary, from time to time thereafter, each of the  Parties shall execute and deliver to the Escrow Agent a Certificate of Incumbency substantially in the form of Exhibit A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8 and A-9 hereto, as applicable (a "Certificate of Incumbency"), for the purpose of establishing the identity and authority of persons entitled to issue notices, instructions or directions to the Escrow Agent on behalf of each such Party. Until such time as the Escrow Agent shall receive an amended Certificate of Incumbency replacing any Certificate of Incumbency theretofore delivered to the Escrow Agent, the Escrow Agent

shall be fully protected in relying, without further inquiry, on the most recent Certificate of Incumbency furnished to the Escrow Agent. Whenever this Escrow Agreement provides for joint written notices, joint written instructions or other joint actions to be delivered to the Escrow Agent, the Escrow Agent shall be fully protected in relying, without further inquiry, on any joint written notice, instructions or action executed by persons named in such Certificate of Incumbency.

4.14   All non-public information and advice furnished by any Party to the Escrow Agent shall be treated as confidential and will not be disclosed to third parties unless required by law, except that the Escrow Agent may disclose (a) any information required to be disclosed to any government regulator of the Escrow Agent or its affiliates; provided that the Escrow Agent shall provide written notice of any such disclosure to the applicable Party as promptly as practicable, and (b) any information to the Escrow Agent's affiliated entities, employees and representatives to the extent necessary to provide the services hereunder.

[Signature page follows]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

**Escrow Agent**

Byron Roldan
Assistant Vice President

**Sellers:**

**PREMIER EXHIBITIONS, INC.**

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER EXHIBITION MANAGEMENT LLC**,
by Premier Exhibitions, Inc., its Managing
Member

By:_____
Name: Daoping Bao
Title: President & CEO

**ARTS AND EXHIBITIONS INTERNATIONAL,
LLC**

By Premier Exhibition Management, LLC, its
Managing Member

By Premier Exhibitions, Inc., its Managing
Member

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER EXHIBITIONS INTERNATIONAL,
LLC**, by Premier Exhibitions, Inc., its Sole
Member

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER EXHIBITIONS NYC, INC.**

By:_____
Name: Daoping Bao
Title: President

**PREMIER MERCHANDISING, LLC**,
by Premier Exhibitions, Inc., its Sole Member

By:_____
Name: Daoping Bao
Title: President & CEO

**DINOKING TECH INC.**

By:_____
Name: Daoping Bao
Title: President

**DINOSAURS UNEARTHED CORP.**

By:_____
Name: Daoping Bao
Title: President

[Signature page to Escrow Agreement Continued]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

**Purchaser:**

**PREMIER ACQUISITION HOLDINGS LLC**

By: _____
Name: Gilbert Li
Title: Authorized Person

*[Signature Page to Escrow Agreement]*

Certificate of Incumbency
(List of Authorized Representatives)

Client Name:   Premier Acquisition Holdings LLC

As an Authorized Person of the above referenced entity, I hereby certify that each person listed below is
an authorized signor for such entity, and that the title and signature appearing beside each name is true
and correct.

| Name | Title | Signature | Phone Number |
|------|-------|-----------|--------------|
| Giovanni Wong | Authorized Person | | 7852 6779 8699 |
| Gilbert Li | Authorized Person | | 212-319-1778 |
| Robert Givone | Authorized Person | | |
| | | | |
| | | | |
| | | | |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized person on:

6/14/18
Date

By: _____
Name: Gilbert Li
Title: Authorized Person

Certificate of Incumbency
(List of Authorized Representatives)

Client Name:    Premier Acquisition Holdings LLC

As an Authorized Person of the above referenced entity, I hereby certify that each person listed below is
an authorized signor for such entity, and that the title and signature appearing beside each name is true
and correct.

| Name | Title | Signature | Phone Number |
|------|-------|-----------|--------------|
| Giovanni Wong | Authorized Person | | |
| Gilbert Li | Authorized Person | | 212-319-1778 |
| Robert Givone | Authorized Person | | 917 471-4051 |
| | | | |
| | | | |
| | | | |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized person on:

6/14/18
Date

By:
Name: Gilbert Li
Title: Authorized Person

**EXHIBIT A-2**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:     Premier Exhibitions, Inc.

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| Name | Title | Signature | Phone Number |
|------|-------|-----------|--------------|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |
| Jerome Henshall | Chief Financial Officer | | (404) 842-2646 |
| Jessica Sanders | Corporate Secretary | | (404) 842-7787 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

June 18, 2018                    .
          Date

By: _____.
Name:   Daoping Bao
Its:        President & CEO

**EXHIBIT A-3**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:   <u>Arts and Exhibitions International, LLC</u>

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| <u>Name</u> | <u>Title</u> | <u>Signature</u> | <u>Phone Number</u> |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

<u>June 18, 2018        </u>.
　　　　Date

By: Premier Exhibition Management LLC, its Managing Member

By: Premier Exhibitions, Inc., its Managing Member

By: _____,
Name:   <u>Daoping Bao</u>
Its:   <u>President & CEO</u>

**EXHIBIT A-4**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:     Premier Exhibition Management LLC

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| **Name** | **Title** | **Signature** | **Phone Number** |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

June 18, 2018_____.
　　　　　　Date

By: _____,
Name:  Daoping Bao_____
Its: _____President & CEO_____

**EXHIBIT A-5**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:     Premier Exhibitions NYC, Inc.

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| **Name** | **Title** | **Signature** | **Phone Number** |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

June 18, 2018                    .
               Date

By: _____ ,
Name:   Daoping Bao
Its:        President & CEO

**EXHIBIT A-6**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:     Premier Merchandising, LLC

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| <u>Name</u> | <u>Title</u> | <u>Signature</u> | <u>Phone Number</u> |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

June 18, 2018
        Date

By: Premier Exhibitions, Inc., its Sole Member

By: _____

Name: _Daoping Bao_____

Its: _____President & CEO_____

**EXHIBIT A-7**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:   Premier Exhibitions International, LLC

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| Name | Title | Signature | Phone Number |
|------|-------|-----------|--------------|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

June 18, 2018            .
          Date

By: Premier Exhibitions, Inc., its Sole Member

By: _____,

Name:  Daoping Bao

Its:      President & CEO

**EXHIBIT A-8**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:   <u>Dinosaurs Unearthed Corp.</u>

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| <u>Name</u> | <u>Title</u> | <u>Signature</u> | <u>Phone Number</u> |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

<u>June 18, 2018</u>.
          Date

By: _____

Name:  <u>Daoping Bao</u>

Its: _____ <u>President & CEO</u>

**EXHIBIT A-9**

**Certificate of Incumbency**
**(List of Authorized Representatives)**

Client Name:    <u>DinoKing Tech Inc.</u>

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| <u>Name</u> | <u>Title</u> | <u>Signature</u> | <u>Phone Number</u> |
|---|---|---|---|
| Daoping Bao | President & CEO | | (604) 277-0707 x555 |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer on:

<u>June 18, 2018</u>.
       Date

By: _____.
Name: <u>Daoping Bao</u>
Its: <u>President & CEO</u>

**EXHIBIT B**

**SunTrust Bank, as Escrow Agent**

<u>**Schedule of Fees & Expenses**</u>

<u>**Acceptance/Legal Review Fee:**</u>                    **$600.00** – one time only payable at the time of signing the
                                                                        Escrow Agreement

The Legal Review Fee includes review of all related documents and accepting the appointment of Escrow Agent on behalf of SunTrust Bank.  The fee also includes setting up the required account(s) and accounting records, document filing, and coordinating the receipt of funds/assets for deposit to the Escrow Account. This is a one-time fee payable upon execution of the Escrow Agreement.  <u>As soon as SunTrust Bank's attorney begins to review the Escrow Agreement, the legal review fee is subject to payment regardless if the Parties decide to appoint a different escrow agent or a decision is made that the Escrow Agreement is not needed.</u>

<u>**Administration Fee:**</u>                    **$4,500** – payable at the time of signing the Escrow Agreement
                                                                        and on the anniversary date thereafter, if applicable

The Administration Fee includes providing routine and standard services of an Escrow Agent.  The fee includes administering the escrow account, performing investment transactions, processing cash transactions (including wires and check processing), disbursing funds in accordance with the Agreement (note any pricing considerations below), and providing trust account statements to the Parties for a twelve (12) month period.  If the account remains open beyond the twelve (12) month term, the Parties will be invoiced each year on the anniversary date of the execution of the Escrow Agreement.  Extraordinary expenses, including legal counsel fees, will be billed as out-of-pocket.  The Administration Fee is due upon execution of the Escrow Agreement.  The fees shall be deemed earned in full upon receipt by the Escrow Agent, and no portion shall be refundable for any reason, including without limitation, termination of the agreement.

<u>**Out-of-Pocket Expenses:**</u>                                                        **At Cost**

Reasonable actually incurred out-of-pocket expenses such as, but not limited to, postage, courier, overnight mail, wire transfer, travel, legal (out-of-pocket to counsel) or accounting, will be billed at cost.

**Note: This fee schedule is based on the assumption that the escrowed funds will be invested in one of the SunTrust Deposit Options.  If any other investment options are chosen, this fee schedule will become subject to change.**

**Exhibit C**

**JOINT WRITTEN DIRECTION**
**FOR RELEASE OF GOOD FAITH DEPOSIT**

SunTrust Bank
Attn: Escrow Services
919 East Main Street, 7th Floor
Richmond, Virginia 23219

June 19, 2018

Re: Escrow Account no. 7970745

Dear Sir/Madam:

We refer to (i) an Asset Purchase Agreement, dated as of June 14, 2018, by and among, Sellers, Purchaser and RMS Titanic, Inc., a Florida corporation (the "Asset Purchase Agreement"), and (ii) the Escrow Agreement, dated as of June 19, 2018 , by and among Sellers, Purchaser and Escrow Agent (the "Escrow Agreement").

Capitalized terms in this letter that are not otherwise defined shall have the same meaning given to them in the Asset Purchase Agreement and Escrow Agreement.

Pursuant to Section 1.4(b) of the Asset Purchase Agreement and Section 1.4 of the Escrow Agreement, the Purchaser and Sellers hereby irrevocably instruct the Escrow Agent to do the following:

(i)   Upon receiving a joint written notice from the Parties stating that the Closing has occurred, deliver the Good Faith Deposit Funds and interest earned thereon to the Sellers to an account or accounts and in the amounts provided in writing by the Sellers;

(ii)  Within one (1) Business Day after receiving a joint written notice from the Parties stating that the Asset Purchase Agreement has been terminated pursuant to Section 7.3(b) thereof ("Purchaser Default Termination"), pay the Good Faith Deposit Funds and interest earned thereon to the Sellers to an account or accounts and in the amounts provided in writing by the Sellers; and

(iii) Within one (1) Business Day after receiving a joint written notice from the Parties stating that the Asset Purchase Agreement has been terminated prior to Closing for any reason other than a Purchaser Default Termination, return the Good Faith Deposit Funds (including interest earned thereon) to the Purchaser to an account or accounts provided to the Escrow Agent in writing by the Purchaser.

[Signature page follows]

**Sellers:**

**PREMIER EXHIBITIONS, INC.**

By:_____
Name: Daoping Bao
Title: President & CEO

**ARTS AND EXHIBITIONS INTERNATIONAL, LLC**

By Premier Exhibition Management, LLC, its Managing Member

By Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER EXHIBITIONS NYC, INC.**

By:_____
Name: Daoping Bao
Title: President

**DINOKING TECH INC.**

By:_____
Name: Daoping Bao
Title: President

**PREMIER EXHIBITION MANAGEMENT LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER EXHIBITIONS INTERNATIONAL, LLC**, by Premier Exhibitions, Inc., its Sole Member

By:_____
Name: Daoping Bao
Title: President & CEO

**PREMIER MERCHANDISING, LLC**, by Premier Exhibitions, Inc., its Sole Member

By:_____
Name: Daoping Bao
Title: President & CEO

**DINOSAURS UNEARTHED CORP.**

By:_____
Name: Daoping Bao
Title: President

**Purchaser**:

**PREMIER ACQUISITION HOLDINGS LLC**

By:_____
Name: Gilbert Li
Title: Authorized Person

*[Signature page to Joint Written Direction]*

**Exhibit D**

### JOINT WRITTEN DIRECTION
### FOR RELEASE OF PURCHASE PRICE ADJUSTMENT FUNDS

**[SunTrust Bank**
**Attn: Escrow Services**
**919 East Main Street, 7th Floor**
**Richmond, Virginia 23219]**

[●], 2018

Re: Escrow Account no. 7970744

Dear Sir/Madam:

We refer to (i) an Asset Purchase Agreement, dated as of June 14, 2018, by and among, Sellers, Purchaser and RMS Titanic, Inc., a Florida corporation (the "Asset Purchase Agreement"), and (ii) the Escrow Agreement, dated as of June 19, 2018 , by and among Sellers, Purchaser and Escrow Agent (the "Escrow Agreement").

Capitalized terms in this letter that are not otherwise defined shall have the same meaning given to them in the Asset Purchase Agreement and Escrow Agreement.

Pursuant to Section 2.4(d) of the Asset Purchase Agreement and Section 1.5 of the Escrow Agreement, the Purchaser and Sellers hereby irrevocably instruct the Escrow Agent to **[release and deliver to Purchaser the amount of $[*] of the Purchase Price Adjustment Funds and release and deliver to Sellers the remainder of the Purchase Price Adjustment Funds to an account or accounts provided to the Escrow Agent in writing by the Sellers and Purchaser] [release and deliver to Purchaser the entire amount of the Purchase Price Adjustment Funds to an account or accounts provided to the Escrow Agent in writing by the Purchaser] [release and deliver to Sellers the entire amount of the Purchase Price Adjustment Funds to an account or accounts provided to the Escrow Agent in writing by the Sellers]**.

[Signature page follows]

**Sellers:**

**PREMIER EXHIBITIONS, INC.**

**PREMIER EXHIBITION MANAGEMENT, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**ARTS AND EXHIBITIONS INTERNATIONAL, LLC**

By Premier Exhibition Management, LLC, its Managing Member

By Premier Exhibitions, Inc., its Managing Member

**PREMIER EXHIBITIONS INTERNATIONAL, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**PREMIER EXHIBITIONS NYC, INC.**

**PREMIER MERCHANDISING, LLC**, by Premier Exhibitions, Inc., its Managing Member

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**DINOKING TECH INC.**

**DINOSAURS UNEARTHED CORP.**

By:_____
Name: Daoping Bao
Title: President

By:_____
Name: Daoping Bao
Title: President

**<u>Purchaser</u>:**

**PREMIER ACQUISITION HOLDINGS LLC**


By:_____
Name:
Title: