FILED

NOV 2 2018

CLERK, US DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor in interest to Titanic
Ventures, limited partnership,

        Plaintiff,

v.

The Wrecked and Abandoned
Vessel, . . .believed to be
the RMS TITANIC, in rem,

        Defendant.

Civil Action No.  2:93cv902

## PERIODIC REPORT OF R.M.S. TITANIC, INC.
## ON THE PROGRESS OF RESEARCH AND
## RECOVERY OPERATIONS

NOW COMES Plaintiff, R.M.S. Titanic, Inc. ("RMST" or the "Company"), by counsel, and files this "Periodic Report of R.M.S. Titanic, Inc. on the Progress of Research and Recovery Operations" ("Periodic Report").

**I. Motion to Approve APA.**

**A. Post-Hearing Actions of PAHL.**

At the October 25, 2018 hearing on RMST's Motion to Approve Asset Purchase Agreement (the "Sale Motion"), the Court expressed concerns on certain issues related to the transaction. Since the hearing, Premier Acquisitions Holdings, LLC ("PAHL") and RMST have taken the following actions to address the Court's concerns:

1. PAHL has agreed to submit to the Court's *in personam* jurisdiction for the purposes of the Sale Motion, and, if the Sale is approved and consummated, for purposes of its commitment

that RMST will continue its compliance with the Covenants and Conditions. *See* e.g., Covenants and Conditions, § V.F.2.

2. PAHL, in conjunction with RMST, has submitted a proposed Order, attached hereto as Exhibit A, which incorporates virtually all of the commitments suggested by NOAA in its Report and Recommendation. Dkt. No.502. The proposed Order confirms PAHL's acknowledgments that it is: (i) on notice of the Covenants and Conditions and intends for RMST to continue to operate in conformance with them; (ii) submits to the *in personam* jurisdiction of this Court for purposes of RMST's ongoing compliance with the Covenants and Conditions; and (iii) agrees to the commitments set forth in Section A(5), *infra,* including that notwithstanding anything in the APA to the contrary, PAHL and RMST shall not amend the APA in any manner contrary to the confirmations set forth in the proposed Order.

3. PAHL has filed a Consent Motion to Intervene in these proceedings for purposes of the Sale Motion.

4. In conjunction with the Consent Motion to Intervene, PAHL has filed the declaration of Gilbert Li, attached hereto as Exhibit B. Mr. Li's declaration confirms, among other things, that: he is a United States citizen; he is a principal of Alta Fundamental Advisers, LLC, which has its principal place of business in New York City; he is an authorized representative of PAHL; PAHL is a Delaware limited liability company, created to consummate the sale transaction; he anticipates PAHL's principal place of business will be in Peachtree Corners, Georgia, where RMST maintains it principal place of business; and that if the transaction closes, PAHL will be acquiring 100% of the stock of RMST.

5. In his declaration, Mr. Li further confirms that he intends to serve on the boards of directors of both PAHL and RMST, and that PAHL will oversee RMST's: (a) continued  consent

2

to the *in personam* jurisdiction of this Court for purposes of RMST's ongoing compliance with the Covenants and Conditions; (b) continued adherence to the Covenants and Conditions; (c) continued provision to the Court of copies of all replacement or amended intra-company agreements that pertain to the care, preservation, conservation or curation of the artifacts; (d) continued commitment to promptly advise the Court of any change or alteration to the composition and makeup of RMST's and PAHL's boards of directors and senior management; (e) continued commitment to promptly advise the Court of any staffing changes to RMST's permanent Collections staff in Atlanta, and senior management at any permanent exhibitions; (f) continued filing of Periodic Reports at regular intervals or as directed by the Court, to advise of all material events impacting RMST; (g) commitment to provide the Court at least 60 days' notice of (i) any action that results in the Titanic Collections no longer being maintained together as an integral whole, and (ii) any action which pledges or otherwise uses in any way any artifacts as security or collateral for any purposes; (h) commitment to provide the Court advanced notice of any planned expeditions to the Titanic wreck site; and (i) commitment that notwithstanding anything in the APA to the contrary, RMST will not amend the APA in any manner contrary to these confirmations.

**B. Further Response of RMST to Certain Issues Raised by the Court at the Hearing on the Sale Motion.**

1. *The APA was negotiated in good faith and at arm's length.*

In its Order dated October 19, 2018, the Bankruptcy Court determined – after an evidentiary hearing with three live witnesses – that the sale and stock transactions between PAHL and Premier Exhibitions, Inc. ("Premier") and RMST were "contemplated in good faith, without collusion, and from arm's-length bargaining positions"; that the Purchaser is a "good

3

faith purchaser", acting "in good faith within the meaning of Section 363(m) of the Bankruptcy Code"; and has "proceeded in good faith in all respects." *See*, Exhibit C, attached hereto at § K, pp.8-9.

2. *The APA calls for a sale of 100% of RMST's stock and does not seek to transfer RMST's salvage rights.*

The APA provides for the sale of substantially all of the assets of Premier and six of its debtor subsidiaries, along with substantially all of the assets of Premier's non-debtor Canadian subsidiary DinoKing Tech, Inc. A current organizational chart for Premier and it subsidiaries is attached hereto as Exhibit D. Among the Premier assets being sold to PAHL is 100% of Premier's stock in RMST. But, while *Titanic* is certainly a significant component of Premier's business, PAHL is also purchasing from Premier (among other assets) the "Bodies" exhibitions, the Saturday Night Live exhibition, the animatronic Dinosaur exhibitions, all of the IP rights to the exhibitions, and substantially all other assets of Premier.

Further, while RMST is not a "Seller" under the APA, RMST is a party to the APA for purposes of Articles III (Representations and Warranties), V (Covenants), VII (Termination) and VIII (Miscellaneous and General). In other words, RMST (as the entity whose stock is being acquired by PAHL) is making certain representations and warranties and covenants, and will be bound by the termination provisions and the miscellaneous and general provisions of the APA. But, because RMST is not selling assets to PAHL (and is not selling any of the Artifacts), RMST is not a party to Articles I (Purchase and Sale of Assets; Assumption of Liabilities), II (Closing; Closing Deliveries); IV (Representations and Warranties of Purchaser); or VI (Conditions to Closing) of the APA.

The APA also does not direct the sale or transfer of any exclusive salvage rights, nor does it state or seek to establish that RMST's salvage rights are permanent (but for the avoidance of doubt, the proposed Order makes clear that "nothing in this Order should be construed to alter, affect or limit RMST's *current* salvor-in-possession status"). Under the APA, PAHL is to acquire "all of the right, title and interest of Sellers as of the Closing Date in and to" the "Transferred Assets." See APA §1.1(a). As is common in commercial agreements (in particular those related to sales under section 363 of the Bankruptcy Code), the definition of Transferred Assets is drafted broadly. But, the definition is also qualified by whatever "right, title and interest" the Sellers have in those assets. Put another way, the APA only provides for the sale of that which the Sellers have authority to sell, and the Sellers cannot sell to PAHL anything that they do not have any right, title and interest to, including future salvage rights.

The "Transferred Assets" under the APA are defined to include "all Artifacts and Exhibitry (provided, however, for the avoidance of doubt, that Purchaser shall obtain title to any Artifacts and Exhibitry "through Purchaser's acquisition of the RMST Shares.)" See APA § 1.1(a)(ii). The APA then defines "Artifacts and Exhibitry" to include the artifacts, associated intellectual property (such as photos, videos and digital archives), "together with the exclusive salvage rights to recover additional artifacts" from the wreck. *See*, APA § 8.5. The term "exclusive" in defining RMST's salvage rights is not used to infer or indicate that such rights are permanent. Instead, the wording mirrors this Court's Order of June 7, 1994, conferring such rights. *See e.g., RMS Titanic, Inc. v. Wrecked and Abandoned Vessel*,742 F.Supp2d 784, 803 (EDVA 2010) (holding "the court awarded RMST exclusive rights to salvage the Titanic wreck as salvor-in-possession"). Each of the parties to the APA understands that, "a salvor can lose his exclusive possessory rights to the wreck" and that this Court has the authority to make such

decision. *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel,* 924 F. Supp 714, 719 (EDVA 2006). Nothing in the APA is intended to, or legally could expand RMST's salvage rights beyond what it legally has. And, because those rights are held by RMST, whose stock is being sold to PAHL, whatever those rights are will remain with RMST as they currently are upon the closing. The only difference after the closing will be that RMST's corporate parent will now be PAHL, instead of Premier.

3. ***PAHL is not an Overseas Entity, and seeks to grow the exhibition business.***

RMST notes that PAHL is not an "Overseas Entity" under the Covenants and Conditions.[1] Section VI.F.1 of the Covenants and Conditions defines "Overseas Entity" to mean, "a qualified institution located or constituted outside the United States." PAHL is a Delaware limited liability company, whose members are (i) Apollo Credit Strategies Master Fund, Ltd. (the "Apollo Member"), 9 West 57th Street, New York, New York 10019; (ii) Alta Fundamental Advisers SP, LLC (the "Alta Member"), 777 Third Ave, Ste. 19A, New York, New York 10017; and (iii) PacBridge Partners I Investment Co. Ltd. (the "PacBridge Member"), Unit 1404, 14th Floor, The Chinese Bank Building, 63-3 Des Voeux Road, Central Hong Kong. PAHL expects to operate from RMST's offices outside of Atlanta, Georgia. Li Declaration, ¶ 5. Each member holds a 1/3 interest in PAHL.

The Court asked why PAHL and its members would want to purchase the Transferred Assets. The members of PAHL were already financially committed to RMST and its parent company Premier prior to their entry into the APA. Funds affiliated with the Alta Member and the Apollo Member own over 19% of the stock of Premier. And while the PacBridge Member does not hold any equity in Premier, an affiliate fund – PacBridge Capital Partners (HK) Ltd.

---

[1] Nor is the APA a transaction involving the sale, transfer assignment or other transaction of the Subject Titanic Artifact Collection.

("PacBridge") – is one of Premier's largest creditors and is owed approximately $1.2 million. Further, as previously disclosed to the Bankruptcy Court and this Court, Chinese investors Haiping Zou, Jihe Zhang and Lange Feng – who will be indirect investors in PAHL through equity investments in the PacBridge Member – invested over $13 million in Premier (including $3 million in secured loans and $10 million in equity). Thus, collectively the investors in PAHL hold approximately 47% of Premier's common stock and millions of dollars in secured and unsecured claims against Premier and its affiliates.

The members of PAHL were involved in the Debtors' chapter 11 case and were aware of the challenges to the Debtors' successful emergence. Rather than seeing the assets liquidated, PAHL's members made a deposit of $1.75 million, and presented a legally binding equity commitment letter committing themselves to invest an additional $18 million to purchase the Transferred Assets. In doing so, they provided the Debtors with a way to successfully emerge from chapter 11. Their offer, however, was subject to an open, competitive bidding process and higher and better offers.

Further, as Mr. Giovanni Wong testified at the Bankruptcy Approval Hearing, PAHL's three members share a joint vision on how to grow Premier's business, using their collective experience in turning around troubled companies and exercising on their growth strategy for the exhibition business in both North American and Asia. *See*, Transcript of Bankruptcy Hearing, Exhibit B, submitted to Court at Hearing on Sale Motion: Testimony of G. Wong, pp. 33-34, 36-37 (noting the three members joined together to "execute and grow the business").

### 4. *RMST is a Qualified Institution.*

RMST is presently, and will remain, a Qualified Institution after the closing of the transaction. In its August 12, 2010 Order determining RMST's salvage award, this Court

discussed the "extensive evidence before [it] of RMST's efforts at conservation . . .." *RMS Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F.Supp2d 784, 803 (EDVA 2010). Based upon the Court's findings, the C&Cs determined RMST to be a Qualified Institution as of the effective date.[2]

On January 9, 2017, this Court and representatives from the United States and NOAA conducted a site visit to RMST's storage facility to assess whether RMST continued to meet its responsibilities under the C&Cs. On March 7, 2017, David Alberg, Superintendent, Monitor National Marine Sanctuary, provided the Court a report from that site visit on behalf of NOAA, and concluded:

> NQAA believes that RMST is operating in compliance with the Convents and Conditions provisions that pertain to artifact conservation. See C&Cs § IV. We were impressed with the facility, and the care and commitment shown by RMST conservation staff. The artifacts appear to be maintained in accordance with standard international museum practices (e.g., AAM and ICOM standards), as is the facility and the environmental conditions within. We believe the artifacts to be secure and well-documented through the collections management software. Although the staff are involved in multiple aspects of the operation from exhibition install and transport to research, conservation, and collections management, they have done a commendable job managing the dynamic and complex Titanic Collections.

Since Mr. Alberg issued that report approximately two years ago, RMST has continued to maintain the same high standards and professional practices of collections management and

---

[2] In that Order, the Court provided specific details about the policies and procedures utilized by RMST in the management and curation of the artifacts. RMST has maintained through the present all of those policies and procedures. In addition, in 2012, RMST moved the collection to a new facility with specific storage rooms maintaining appropriate environmental conditions for organic and inorganic materials, differentiating from the "bubble" referenced by the Court in Order.

remains a Qualified Institution. Alexandra Klingelhofer has managed the Titanic artifact collections since 2008, first as the Director of Collections, and since approximately 2010 as the Vice President of Collections. *See,* Alexandra Klingelhofer Declaration, attached hereto as Exhibit E, at ¶ 2. Ms. Klingehofer manages the collections, develops and maintain policies, administers the annual RMST budget, and hires, trains and manages the collections staff. Klingelhofer Declaration. *Id.* Ms. Klingelhofer oversees compliance with all of the policies and procedures set forth as Exhibit 1 to her Declaration. *Id.* at ¶ 4. Ms. Klingelhofer confirms that RMST continues to meet or exceed museum standards with regards to the conservation, curation and management of the Titanic artifacts. *Id.* at ¶ 5. . As set forth in Ms. Klingelhofer's Declaration at ¶ 6, throughout the bankruptcy process, RMST has continued to perform the following tasks:

• accession labeling, cataloging, storing, maintaining, inventorying and conserving the artifacts, under the standards for museum and archival practices;

• maintaining complete and accurate records of the artifacts, including records on acquisitions, catalog and artifact inventory lists, descriptive information such as field notes, site form and reports, photographs and videos, locational information, conservation and treatment information, loans, environmental monitoring, records on lost, deteriorated or damaged objects within the STAC, and records on deaccessions, if any;

• maintaining requisite facilities to properly store, study and conserve the collections;

• keeping the artifacts physically secure, to include compliance with electrical, fire, building, health and safety codes; employing appropriate fire detection and suppression systems; including an operational intrusion detection and deterrent system;

- having an adequate emergency plan;

- providing fragile or valuable items with additional security;

- limiting and controlling access to keys, the collection and the facility;

- inspecting the facility for security weaknesses;

- requiring staff and consultants who manage and preserve the artifacts to be qualified professionals; and

- professionally caring for the artifacts, to include handling, storing, cleaning and conserving the artifacts consistent with museum and similar standards, given the nature of the materials, and protecting them from breakage and deterioration from the environment; preserving data, and storing site forms in a safe manner; inspecting the artifacts for deterioration and damage; conducting inventories to verify material remains, and associated records; and providing access to the artifacts to the public and researchers.

RMST intends to continue to comply with these policies, practices and procedures after the closing of the transaction. *Id. at ¶ 7.* Ms. Klingelhofer and her staff that has been overseeing the maintenance, conservation and management of the artifacts will continue to oversee their care. *Id.* Accordingly, PAHL's acquisition of RMST's stock, and the assets of Premier and its other subsidiaries, will not alter RMST's care, conservation and curation of the artifacts and RMST will continue to be a Qualified Institution.

5. *Time is of the essence in order to protect the artifacts and preserve jobs.*

As repeatedly noted, time is of the essence as to the transaction. The urgent need to close this transaction results from Premier's deteriorating financial condition, and not from the actions or inactions of the parties to the APA or this Court or the Bankruptcy Court. However, as

previously reported to the Court, Premier is expected to run out of cash by the end of 2018. The United States and this Court have previously acknowledged this critical timing issue.

In the event the sale is not approved, the Debtors' heavy debt from the restructuring (and not as suggested by a disgruntled bidder, ongoing losses from its operations, which are now cash-flow positive) will require the Debtors to convert their chapter 11 bankruptcy proceedings to Chapter 7, whereupon a Chapter 7 trustee will be appointed to immediately liquidate the Debtors' assets. If that happens, Premier Exhibitions Management, LLC ("PEM"), which employs the employees for the Premier corporate group, will also have to be liquidated. PEM's approximately 120 employees, including those charged with maintaining RMST's artifact collections and operating the artifacts exhibitions, will be terminated.

RMST believes that the Sale is far better than a Chapter 7 liquidation. The Sale will preserve approximately 120 jobs and permit RMST to emerge from chapter 11 and to continue its operations in the ordinary course. It will provide RMST with a new parent company that is not saddled with millions of dollars of Premier's historical debt and with members that have the financial wherewithal and the restructuring know-how to grow Premier's exhibition business and maintain the Titanic artifacts in RMST. Accordingly, RMST respectfully requests that this Court continue to move with all reasonable dispatch to review and approve the transaction.

WHEREFORE, RMST submits this Periodic Report for the Court's information and consideration.

Respectfully submitted,

R.M.S. TITANIC, INC.

By Counsel

Counsel:

Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
757/640-3716

Brian A. Wainger (VSB #38476)
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
757/965-6804

_CWa 73444) for:_

Robert W. McFarland

## CERTIFICATION

I hereby certify that a copy of the foregoing has been hand delivered this day to Kent Porter, Esq., U.S. Attorney's Office, 8000 World Trade Center, Norfolk, VA 23510, this 2nd day of November, 2018.

_____ (VSB 78444) for :

Robert W. McFarland

109253792_1