IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
      Plaintiff,

v.                                                 Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43' 32'' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
<u>in rem</u>,
      Defendant.

### NOAA'S SUPPLEMENTAL REPORT REGARDING RMST'S MOTION TO APPROVE ASSET PURCHASE AGREEMENT AND TO AUTHORIZE THE SALE OF 100% OF RMST'S STOCK TO PREMIER ACQUISITION HOLDINGS LLC.

The United States, as *amicus*, and on behalf of its National Oceanic and Atmospheric Administration ("NOAA") which represents the public interest in *Titanic*, and pursuant to Sections VI and VII of the Covenants and Conditions ("C&Cs") submits this supplemental report to the Court regarding RMST's request to approve the sale of 100% of its stock to Premier Acquisition Holdings LLC ("PAHL").

    I.      INTRODUCTION

This report supplements the United States' prior report, ECF No. 502, to address questions raised by the Court during the October 25, 2018, status hearing, and to update NOAA's recommendation concerning the proposed transaction, including the conditions NOAA believes are appropriate should the Court elect to approve the transaction.

RMST avers that, if the sale is not approved, it will "require the Debtors to convert their Chapter 11 bankruptcy proceedings to a Chapter 7" liquidation. Periodic Report (11/2/18) at 11. NOAA believes a Chapter 7 liquidation, which NOAA would consider to be a material default under the C&Cs V(E)(1), has the potential to seriously compromise and jeopardize the *Titanic* Collections and the objective of ensuring that it is available to posterity. Provided that certain conditions are imposed, most notably that PAHL be subject to this Court's jurisdiction in the same manner and to the same extent as RMST, NOAA believes that many of NOAA's concerns, and those raised by the Court during the October 25, 2018, hearing can be satisfactorily addressed. Accordingly, subject to these conditions and such other conditions the Court deems appropriate, NOAA again recommends the Court authorize the transaction.

## II.   DISCUSSION

### A.   Is PAHL an "overseas entity" within the meaning of the C&Cs?

The Court inquired as to whether PAHL is an overseas entity such that the provisions of C&Cs VI(F) applied. Hearing Tr. (10/25/18) at 75-76. Under that provision, a sale of the artifacts to an entity "located or constituted outside the United States," C&Cs VI(F)(1), is not precluded provided that: (i) the entity commits to the *in personam* jurisdiction of the Court for purposes of "oversight of compliance with" the C&Cs; and (ii) such sale is conditioned further on the Court determining whether additional reserve funds should be required.[1]  C&Cs VI(F)(2) and (3).

RMST contends that C&Cs VI(F) does not apply because PAHL is a Delaware limited liability company and, therefore, not an overseas entity. RMST Periodic Report (11/2/18) at 6.

---

[1] NOAA previously recommended that the Court consider an upward adjustment to the endowment value of the reserve account, and/or the amount of the quarterly payment, to better reflect current circumstances and to ensure the long-term protection of the *Titanic* Collections.  ECF No. 502 at 14-15

RMST notes that two of PAHL's three members have business locations in New York (Apollo and Alta) and one in Hong Kong (PacBridge). *Id.* According to the declaration of Mr. Gilbert Li, a self-asserted "authorized representative" of PAHL, PAHL "anticipates that its principal place of business will be" in Atlanta, Georgia, at RMST's current facility. ECF No. 507-1 at ¶ 5.

"A limited liability company organized under the laws of a state is not a corporation . . .." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004). For *venue* purposes, a LLC is treated as a corporation, *Pippett v. Waterford Dev., LLC*, 166 F. Supp. 2d 233, 238 (E.D. Pa. 2001) ("An unincorporated association has no citizenship independent of its members for determining jurisdiction, but for determining venue it is treated as a corporation.") (citing *Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen*, 387 U.S. 556, 559 (1967)), and is deemed a citizen of the state in which it is organized, *Wood v. Barnette, Inc.*, 648 F. Supp. 936, 939 (E.D. Va. 1986) ("[B]ecause Dominion Bank is incorporated in Virginia, it can be sued in any district in Virginia and such district be deemed its residence for venue."). For federal *diversity jurisdiction* purposes, however, the citizenship of an unincorporated entity is determined by the citizenship of its constituent members. *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *see also Baez-Sanchez v. Sessions*, 862 F.3d 638, 641 (7th Cir. 2017) (Where a constituent member of an unincorporated entity also is an unincorporated entity, the unincorporated entity must "work back through the ownership structure until one reaches either individual human beings or a formal corporation with a state of incorporation and a state of principal place of business.") [2]

---

[2] Here, the constituent members of PAHL are entities organized in Delaware (Alta), the Cayman Islands (Apollo) and the British Virgin Islands (PacBridge). Li Declaration, ECF No. 507-1 at ¶ 5. Each of these constituent members is either a partnership (Apollo) or a LLC (Alta and PacBridge). *Id.*

NOAA believes that "located or constituted," as used in the C&Cs, should mean where an entity is organized and not where it would be construed to be a citizen for diversity purposes. Construing the phrase in this manner gives those words their "usual, ordinary, and popular meaning," *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766, 772-73 (E.D. Va. 2011), and is in accord with the LLC structure the Delaware law permits and PAHL has utilized. *See Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 524 (D. Del. 2013) (Del. Code Ann. tit. 6, § 18-1101(c) allows members to limit their exposure to liability in the LLC's agreement.); ECF No. 510-1 at ¶ 4.5 (LLC Agreement: "[N]one of the Members, any other member of the Company (if any), manager, officer or authorized person shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being member, manager, officer or authorized person of the Company.")  Accordingly, NOAA concludes that PAHL should be deemed to be "located or constituted" in Delaware, and, therefore, is not an overseas entity.

In addition, PAHL has committed to submit to the *in personam* jurisdiction of the Court for the Sale Motion, and indicates it also will do so "for purposes of RMST's ongoing compliance with the Covenants and Conditions."  RMST Periodic Report (11/2/18) at 3 (emphasis added).  To the extent this commitment evolves into PAHL's agreement to commit to the *in personam* jurisdiction of the Court for purposes of "oversight of [PAHL's] compliance with" the C&Cs (see discussion below), even if PAHL is deemed an overseas entity, VI(F)(2) of the C&Cs will be satisfied (leaving only the question of the reserve account, VI(F)(3)), and not operate to *per se* preclude the transaction.

B. <u>RMST's status as a Qualified Institution.</u>

The Court inquired as to RMST's continued status as a Qualified Institution. Hearing Tr. (10/25/18) at 77. In its initial report, NOAA discussed at some length the facilities, personnel and status of the *Titanic* Collections. ECF No. 502 at 5-12. While NOAA did not expressly address the Qualified Institution criteria set forth in Annex A to the C&Cs, its inquiry was intended to address RMST's commitment to maintain the artifacts in accordance with the C&Cs in posterity. Following its review, NOAA posed certain recommendations and sought additional information on certain issues that it believed would enhance RMST's role as Trustee of the artifacts for the public interest. These recommendations were not intended to suggest that approving the Sale Motion would effectuate a negative change in the care and management of the *Titanic* Collections. *Id.* at 14-17.

After the October 25, 2018, hearing, NOAA followed up with counsel for RMST to discuss the need for RMST and PAHL to provide *evidence* that RMST will remain a Qualified Institution should the Court approve the APA. RMST has produced a declaration from Ms. Alexandra Klingelhofer, signed under penalty of perjury, containing copies of internal policies relating to care of the artifacts, which outlines and explains why RMST satisfies and will continue to satisfy the criteria for a Qualified Institution as set forth in Annex A to the C&Cs. RMST Periodic Report (11/2/18) at Exhibit E. Subject to appropriate conditions being established for approval of the Sale Motion (as discussed below), NOAA has no reason to believe that approving the motion will negatively effectuate a change in RMST's Qualified Institution status.

C. PAHL should be subject to the Court's *in personam* jurisdiction in the same manner and to the same extent as RMST.

As a general proposition, a parent company is not subject to the personal jurisdiction of a court merely because a subsidiary is, *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) ("it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity"), even where the parent wholly owns or has a controlling stock interest in the subsidiary. *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744, 748 (E.D. Va. 1987) ("complete ownership of a subsidiary found or transacting business in a forum is, alone, insufficient to deem the parent corporation also present within the forum"). This general rule honors and preserves legitimate corporate barriers and separateness. *Reynolds Metals*, 669 F. Supp. at 749 ("[A]s every parent would have the inherent ability to control its subsidiary[, a] standard which would require the courts *per se* to ignore corporate barriers for venue purposes has been plainly rejected by the case law.") Notwithstanding the corporate formalities, where the "parent exerts sufficient control over the subsidiary to enable the parent to direct the subsidiary's internal affairs," *id.* at 748, a court can exercise jurisdiction over the parent. "The essential element required before a court may pierce the corporate veil to reach the foreign parent is control over the conduct of the subsidiary." *Id.*; *see also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61–62 (4th Cir. 1993) (discussing factors under Maryland's long-arm statute).

The manner in which the Premier constellation of entities is currently structured and works is premised on RMST being the vessel that holds and controls the artifacts and its related assets (e.g., intellectual property). All of RMST's ability to function with those artifacts as an ongoing business, such as its accounting, legal work, tax work, human resources functions, bookings, leases, promoter agreements, and employing and paying its staff, is dependent on

intra-company agreements with related PRXI entities. ECF No. 510-7 (leases and promoter agreements); ECF No. 510-11 (current intra-company agreements). Even the conservation work on the artifacts is expressly contracted to one of these related companies. ECF No. 510-11 at 18-19. At the closing of the transaction, PAHL assumes all of these roles and functions. APA §§ 1.1(v)(vi) and 5.1(a). Without regard to whether there were sound business reasons to previously structure the entities as they were, the reality is that, once the transaction is approved, PAHL will wholly control how, where, and if RMST does its business, and conserves the artifacts. RMST's promise to further maintain the artifacts appropriately and further the public interest in *Titanic* has nothing to back it up unless PAHL also agrees to do so.[3]

PAHL has, through Mr. Gilbert Li's declaration, sworn under penalty of perjury of PAHL's commitments with respect to the artifacts. *See* ECF No. 507-1. PAHL has provided the United States a company resolution/consent, consistent with its LLC agreement (ECF No. 510-1 at ¶¶ 4.1, 4.2), that demonstrates Mr. Li is authorized, empowered and directed to file documents on behalf of PAHL consistent with the written consent, and that PAHL consents to *in personam* jurisdiction of this Court for purposes of the Sale Motion. There also have been representations that PAHL will bring resources to the RMST table to enhance RMST's mission. Hearing Tr. (10/25/18) at 38, 56, 58, 61. Without disputing the *bona fides* of this representation, under PAHL's LLC Agreement, the members have the option "but not the obligation" or "the duty" to make any capital contributions, except as may "benefit the members." ECF No. 510-1 at ¶ 3.2. The Equity Commitment letters are in accord. ECF No. 510-5 at ¶ 1 ("[T]he Investor shall not, under any circumstances, be obligated to contribute to, purchase equity or debt of or otherwise provide funds to the Company in any amount in excess of the Commitment.") RMST or PAHL

---

[3] PAHL has also not filled out its Board (or fully decided who will be on RMST's Board, except that they will substantially overlap), and has not developed a business plan for RMST.

has not provided information indicating where or how the additional resources to be forthcoming will be garnered or deployed.

In sum, if this transaction is approved, PAHL will have and be able to exercise sufficient, if not total, control of RMST's operations with the *Titanic* Collections, including its access to additional resources. Accordingly, PAHL should be required to subject itself to this Court's jurisdiction in the same manner and to the same extent as RMST to ensure protection of *Titanic* and the *Titanic* Collections.

    D. <u>Conditions as a prerequisite to approving the Sale Motion.</u>

Based on the foregoing, NOAA recommends the following conditions be contained in an order issued by the Court and imposed as a condition for approval of the Sale Motion. NOAA has provided a proposed order with these recommended conditions, which is attached hereto as Exhibit 1.[4]

1. Within fifteen (15) days of this order, PAHL shall produce to the Court and NOAA, a written company resolution, consistent with Paragraphs 4.1 and 4.2 of PAHL's "Limited Liability Company Agreement" (ECF No. 510-1), signifying the unanimous consent of all of PAHL's members to be bound by the terms of this Order.

2. RMST and PAHL are subject to the *in personam* jurisdiction of this Court for purposes of ensuring their compliance with this Court's orders concerning *Titanic*, including but not limited to this Order and the Revised Covenants and Conditions ("C&Cs").

---

[4] RMST provided a proposed order that was presented to the Court during the October 25, 2018, hearing. RMST Periodic Report (11/2/18) at Exhibit A. While RMST and NOAA had briefly discussed that order the morning of the hearing, NOAA does not believe that the order as drafted provides sufficient assurances for the Court or protection of the public interest in *Titanic* and the *Titanic* Collections.

3. RMST and PAHL shall abide by the C&Cs and this Court's orders concerning *Titanic* in all respects, including this Order.

4. RMST and PAHL shall promptly advise the Court and NOAA of any change to the composition and makeup of RMST's and PAHL's Boards, Officers and Senior Management team; any change in PAHL's membership whether by addition of a member, removal, assignment or disposal of a member's interests; and any change in a PAHL member's relative interest in PAHL

5. RMST and PAHL shall promptly advise the Court and NOAA of any staffing changes at any location where artifacts are maintained or exhibited if such staffing changes pertain to any person(s) having responsibility for the care, conservation, curation and management of the *Titanic* Collections; any changes to staffing at the Atlanta facility; and any changes to senior managers at any permanent exhibition sites.

6. RMST and PAHL shall file Periodic Reports with the Court and NOAA at intervals requested by the Court or at any other times necessary to advise the Court and NOAA of any significant activities and events impacting RMST or PAHL, or which concerns the care, conservation, curation, management and exhibition of the *Titanic* Collections.

7. RMST and PAHL shall provide the Court and NOAA at least 60 days advance notice of, and seek Court approval for, (i) any action that could result in the *Titanic* Collections (as defined in the C&Cs) no longer being maintained together as an integral whole; and (ii) any action which would pledge or otherwise use in any way any artifacts as security or collateral for any purposes.

8. RMST and PAHL shall provide the Court and NOAA at least 60 days advance notice of any planned expeditions to the *Titanic* wreck site, to include a description of any planned dive or salvage activities at *Titanic*.

9. RMST and PAHL shall not seek to amend the APA in any manner, or take any other action, the effect of which would remove, circumvent or diminish this Court's admiralty jurisdiction over the *Titanic* wreck site and the *Titanic* artifacts, or affect the care, conservation, curation, management and exhibition of the *Titanic* Collections.

10. PAHL shall not seek to amend any of PAHL's operating or member agreements, or any like agreements, which in cause and effect would remove, circumvent or diminish this Court's admiralty jurisdiction over the *Titanic* wreck site and the *Titanic* artifacts, or affect the care, conservation, curation, management and exhibition of the *Titanic* Collections.

11. Within ten (10) days of this Order, RMST and PAHL shall provide to the Court: (i) all identifying information for the bank account in which the Court mandated reserve account is held; (ii) all identifying information for the bank at which coin and currency recovered from *Titanic* are held in a vault; and (iii) the location and contact information for all venues where *Titanic* artifacts are displayed on a permanent or temporary basis.

12. Within thirty (30) days of this Order, PAHL shall provide evidence to the Court and NOAA, detailing its members' commitment of additional capital and resources, beyond any equity commitments for PAHL's purchase of RMST as set forth in the members' commitment letters of June 14, 2018 (as amended), that PAHL currently

possesses and that are to be used to enhance RMST's and PAHL's ability to care for, conserve, curate, manage and exhibit the *Titanic* Collections.

13. Within sixty (60) days of the transaction closing, PAHL shall provide to the Court and NOAA a copy of the executed membership agreement for PAHL with all amendments thereto; inform the Court and NOAA of the appointment of any manager or managing member for PAHL; identify those officials of PAHL or of its members that have authority to bind the company; and submit to the Court and NOAA a copy of a business plan for the management and operation of RMST. The responsibility to provide such amendments, designations, and updates to the Court and NOAA is ongoing.

14. Within sixty (60) days of the transaction closing, RMST and PAHL shall provide to the Court and NOAA, a list of any artifacts in need of conservation work (including the 50 "wish list" artifacts), explaining what conservation work is needed, and a time frame for when the work will be done.

15. Within sixty (60) days of the transaction closing, RMST and PAHL shall provide to the Court and NOAA, a copy of all inter- or intra-company contracts and/or agreements regarding, relating to or affecting the care, preservation, conservation or curation of the *Titanic* Collections.  The responsibility to provide such contracts or agreements to the Court and NOAA is ongoing.

16. Within six (6) months of the transaction closing, RMST and PAHL shall ensure that it has in place a collections management plan that complies with museum standards.  A copy of the plan, and any future updates or amendments, shall be submitted to the Court and NOAA.

17. Except as expressly authorized herein, nothing in this Order should be construed to alter, affect or limit RMST's current salvor-in-possession status, this Court's constructive *in rem* jurisdiction over the *Titanic* wreck and wreck site, or any prior orders of the Court concerning activities at the *Titanic* wreck and wreck site.

18. This order, the prior orders of this Court, and the Revised Covenants and Conditions all governing the care and management of the *Titanic* Collections and RMST's salvor-in-possession status, control notwithstanding any provision in any other document, including but not limited to, the APA and PAHL's LLC Agreement.[5]

19. Notwithstanding any provision in the APA or any other document or agreement to the contrary, any controversy, claim or dispute arising under the APA, or any other document or agreement, affecting or implicating the care, custody, management and control of the *Titanic* Collections and RMST's salvor-in-possession status shall be solely within the competence and jurisdiction of this Court and no other court; neither RMST nor PAHL shall seek relief from any other court respecting such matters, and if any claim on such matters is brought before another court or forum, RMST and PAHL shall take all appropriate steps to cause the action or claim to be transferred or referred to this Court.

20. Pursuant to V(D) of the C&Cs, the Court directs that the total endowment of the reserve account be increased to $_____, and that the required quarterly payments be increased to $_____.  The increased quarterly payments shall commence as of the second quarter of calendar 2019.

---

[5] NOAA believes this provision, in conjunction with other conditions described herein, addresses the Court's concern regarding whether the APA improperly authorizes RMST and/or PAHL to transfer future salvage rights. Hearing Tr. (10/25/18) at 98.

21. Subsequent to the date of this Order, all references in the Revised Covenants and Conditions to "Premier Exhibitions, Inc." shall be construed to mean "Premier Acquisition Holdings LLC," or any other change in name of PAHL.

22. All obligations contained in this order requiring RMST and/or PAHL to take any action shall be deemed to be continuing and ongoing in nature, including as to any updates or changes to the information provided pursuant to this order, without regard to whether there is any specific request or demand by the Court or NOAA as part of its oversight activities.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: __// Kent P. Porter //__
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax:  757-441-6689
kent.porter@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 6th day of November, 2018, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger**<br>Kaleo Legal<br>4456 Corporation Lane<br>Suite 135<br>Virginia Beach, VA 23462<br>Email: bwainger@kaleolegal.com | **Robert William McFarland**<br>McGuireWoods LLP<br>101 W Main St<br>Suite 9000<br>Norfolk, VA 23510-1655<br>Email: rmcfarland@mcguirewoods.com |
| **Edward J. Powers**<br>Vandeventer Black LLP<br>101 West Main Street, Suite 500<br>Norfolk, VA 23510<br>epowers@vanblacklaw.com | **Jeffrey G. Gilmore**<br>**John M. Neary**<br>Ackerman LLP<br>750 Ninth Street, N.W., Suite 750<br>Washington, D.C. 20001<br>Jeff.gilmore@ackerman.com<br>John.neary@ackerman.com |
| **David G. Barger, VSB #21652**<br>GREENBERG TRAURIG, LLP<br>1750 Tysons Boulevard, Suite 1200<br>McLean, Virginia 22102<br>Tel: (703) 749-1300<br>Fax: (703) 749-1301<br>E-Mail: Bargerd@gtlaw.com | |

                                          *// Kent P. Porter //*
                                          Kent P. Porter, VSB No. 22853
                                          Assistant United States Attorney
                                          Attorney for the United States
                                          United States Attorney's Office
                                          8000 World Trade Center
                                          101 West Main Street
                                          Norfolk, VA 23510
                                          757-441-6331
                                          Fax:  757-441-6689
                                          kent.porter@usdoj.gov