THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

R.M.S. TITANIC, INC.,
Successor in interest to Titanic
Ventures, limited partnership,

    Plaintiff,

v.                                                                                               Civil Action No.:  2:93cv902

The Wrecked and Abandoned
Vessel, . . . believed to be
The RMS TITANIC, in rem,

    Defendant.

**THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM'S
MEMORANDUM IN SUPPORT OF THE AMENDED MOTION TO INTERVENE**

COMES NOW the Trustees of the National Maritime Museum ("NMM"), by and through their undersigned counsel, and in support of the Amended Motion to Intervene,[1] states as follows:

**PRELIMINARY STATEMENT**

Since the filing of the Memorandum in Support of the Motion to Intervene (Docket No. 475) on August 17, 2018 and the Reply to the Response and Opposition to Motion to Intervene (Docket No. 489) (the "Reply") on September 6, 2018, the contents of which are fully incorporated herein, certain material developments relevant to the Motion to Intervene have

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Memorandum in Support of the Trustees of the National Maritime Museum Motion to Intervene* (Docket No. 475) and the *Reply of the Trustees of the National Maritime Museum to the Response and Opposition to Motion to Intervene* (Docket No. 489).

occurred. NMM has previously represented that its interests in the proceedings before this Court extend beyond its role as a potential acquirer of the Artifact Collection—its interests are also in ensuring that the Artifact Collection is kept together as an integral whole in perpetuity. In furtherance of those interests, NMM reaffirmed to RMST and the United States its willingness to acquire the Artifact Collection and to commit to keep the Artifact Collection together as an integrated whole in perpetuity by proposing a transaction to RMST's advisors in which NMM would acquire the Artifact Collection for approximately $14.8 million in cash (with no financing or fundraising contingency). As part of the proposed transaction, NMM would enter into a binding commitment to keep the Artifact Collection together as an integrated whole in perpetuity. NMM fears that any sale that does not include such a commitment may results in the Artifact Collection being split up, sold to private collectors, and lost as an identifiable assemblage in perpetuity.

## BACKGROUND

On August 17, 2018, NMM filed the Motion to Intervene and the *Memorandum in Support of the Trustees of the National Maritime Museum Motion to Intervene* (Docket No. 475). On August 31, 2018, the United States filed the *United States' Response to Motions To Intervene* (Docket No. 484) and RMST filed the *Opposition of RMST to the Trustees of the National Maritime Museum's Motion to Intervene* (Docket No. 485). On September 6, 2018, NMM filed the Reply (Docket No. 489). At a September 18, 2018 hearing, this Court held the Motion to Intervene in abeyance pending further proceedings of the Court. See Docket No. 493.

On September 14, 2018 and October 12, 2018, the United States requested certain information from RMST related to the proposed sale of the stock of RMST to the Stalking Horse Purchaser. *See* Docket No. 501 at 2. On October 22, 2018, RMST filed its responses to the United States' requests. *Id.* In its responses, RMST said that the Stalking Horse Purchaser has

2

"no current plan" to sell individual artifacts and avoided committing to keeping the Artifact Collection together as an integrated whole:

> l. Does RMST's Board of Directors and Senior Management have any current plans to sell or disperse through sale or other disposition, or has any consideration been given to selling or dispersing through sale or other disposition, one or more of the French Artifacts should the company exit bankruptcy? If so, please describe.
>
> <u>Response</u>: PAHL has no current plans to sell or disperse the French Artifacts post-Closing . . . .
>
> n. Will RMST's Board of Directors and Senior Management commit to maintaining the Titanic Collections together as an integral whole for posterity?
>
> <u>Response</u>: RMST's Board of Directors and Senior Management intend to continue to maintain the Titanic Collections in accordance with the C&Cs post-Closing of the Sale consistent with past practice.

*Id.* at 4-5. Although RMST and the members of the Stalking Horse Purchaser have indicated that the Stalking Horse Purchaser has no current intention to sell individual artifacts from the French Collection,[2] it is not apparent that NOAA has submitted diligence requests with respect to the Stalking Horse Purchaser's or its members' future plans with respect to the French Collection, including by asking the Stalking Horse Purchaser and its members (i) for copies of business plans, presentations, or projections developed by or for the Stalking Horse Purchaser or its members regarding RMST and the Stalking Horse Purchaser following consummation of the

---

[2] At the August 30, 2018 hearing in the Bankruptcy Court, a representative of Alta, when asked if he had "thought about selling the French artifacts off to achieve money or revenues," testified that he "ha[s] not gone to that point" but that it is "possible." *Transcript of Proceedings* (Bankruptcy Docket No. 489), at 121. At the same hearing, a representative of PacBridge, when asked if the Stalking Horse Purchaser would be willing to commit to keeping the Artifact Collection together in perpetuity, testified that he "[doesn't] think we have extension discussions -- enough extensive discussions internally to make that determination" but that it is "possible" that in the future he would vote to separately sell artifacts from the French Collection. *Id.* at 126.

3

proposed transaction (and an explanation of key assumptions in developing such business plans, presentations, or projections), (ii) for summaries of discussions that the Stalking Horse Purchaser or its members have had in the past or are currently having with auction houses and similar institutions, (iii) for appraisals or valuations of (a) the Artifact Collection (in whole or in part), (b) RMST, or (c) Premier Exhibitions, Inc., in each case performed by or for RMST, the Stalking Horse Purchaser, or its members (and an explanation of key assumptions in developing such appraisals or valuations), (iv) whether the Stalking Horse Purchaser is willing to commit to place the French Artifact in a trust for the benefit of the public (assuming the French Artifacts are not already held in such a trust),[3] or (v) whether the Stalking Horse Purchaser and its members are willing to amend the Covenants and Conditions for the purpose of ensuring that the French Artifacts and the American Artifacts remain together as an integral whole in perpetuity.

On October 24, 2018, NOAA recommended that this Court approve the sale of RMST to the Stalking Horse Purchaser. *See* Docket No. 502. In developing its recommendation, NOAA limited the scope of its inquiry to whether the proposed transaction "effectuates a change in the management, conservation and curation of the [American Collection]." *Id*. at 12. NOAA's recommendation was subject to RMST's and the Stalking Horse Purchaser's commitment on the Court record to, among other things:

> provide the Court and NOAA at least 60 days notice of, and seek Court approval for, (i) any action that could result in the Titanic Collections (as defined in the [Covenants and Conditions]) no

---

[3] As previously noted, despite RMST's position to the contrary, pursuant to the RMS Titanic, Inc. Declaration of Trust and Establishment of Reserve Account dated November 9, 2011 (the "Declaration of Trust"), the entire Artifact Collection—both the American Collection and the French Collection—are held in trust for the benefit of the public. The Declaration of Trust states that RMST "hereby declares that it holds in trust the TITANIC Artifacts (as defined in the Covenants and Conditions), together with the other properties received pursuant to the Court award from time to time . . . subject to the Covenants and Conditions." Declaration of Trust at 2.

>longer being maintained together as an integral whole, and (ii) any action which would pledge or otherwise use in any way any artifacts as security or collateral for any purposes.

*Id*. at 13-14.  Additionally, in a footnote to this proposed commitment, NOAA acknowledged:

>NOAA and RMST disagree as to whether, if at all, the [Covenants and Conditions] control or limit RMST's conduct with respect to the French Artifacts. The purpose of this contingency is not to resolve this disagreement now, but to ensure NOAA and the Court have sufficient time to consider the issue at an appropriate time, if needed.

*Id*. at 14.

At the October 25, 2018 hearing before this Court, RMST again did not commit to keep the Artifact Collection together as an integrated whole.  The United States said that NOAA, despite recommending that the sale to the Stalking Horse Purchaser be approved without a commitment to keep the Artifact Collection together as an integrated whole, "would, perhaps, desire ultimately in a longer term situation or a permanent situation, for the artifact collections permanently together, undoubtedly permanently together, in a particular location, is something that NOAA would love to see."  *Transcript of Proceedings* (Docket No. 505), at 65.

On November 7, 2018, the United States filed a supplemental report again recommending that the Court approve the sale of RMST to the Stalking Horse Purchaser.  Docket No. 517.  The supplemental report again conditioned the recommendation on the Stalking Horse Purchaser's commitment to provide the Court and NOAA at least 60 days' notice of, and seek Court approval for, any action that would result in the Artifact Collection no longer being maintained as an integrated whole.  *Id*. at 9.

On November 12, 2018, Dr. Kevin Fewster, Director of the Royal Museums Greenwich (which includes the National Maritime Museum), submitted a letter (the "LOI") to RMST and its advisors outlining a proposed transaction for the sale of the Artifact Collection to NMM for

5

approximately $14.8 million in cash (in addition to any further funds raised between the date of the letter and the closing of the proposed transaction).  The LOI is attached hereto as Exhibit A.  As described in the LOI, the proposed purchase price is not subject to a financing contingency—NMM has obtained the full $14.8 million purchase price and will continue its fundraising campaign to further increase the purchase price.  Additionally, NMM has obtained a commitment by Running Subway Productions, LLC to provide a loan to RMST and its affiliates of up to $500,000 in case necessary to fund RMST's and its affiliates' operations until the transaction can be consummated.  The LOI states that NMM believes that such a transaction is in the public interest and meets the standard for approval under the Bankruptcy Code.

## ARGUMENT

The public interest in the Artifact Collection is, among other things, for the entire collection to be kept together and intact as an integrated whole in perpetuity—for the French Collection and the American Collection to be conserved and curated together and available to present and future generations for public display and exhibition, historical review, scientific and scholarly research, and educational purposes.  This public interest is reflected in the Covenants and Conditions and has been recognized by NOAA.[4]  It follows, then, that any sale of the

---

[4] *See*, *e.g.*, Covenants and Conditions §§ I(g) ("These Covenants and Conditions are intended to ensure that TITANIC artifacts within the scope of its terms are, for the benefit of the public interest, kept together and intact and are available to posterity for public display and exhibition, historical review, scientific and scholarly research, and educational purposes."); 3(a) ("The Subject TITANIC Artifact Collection shall, to the maximum extent possible and consistent with reasonable collections management practices, be conserved and curated together with the French TITANIC Artifact Collection as an integral whole by the Trustee."); *Transcript of Proceedings* (Docket No. 505), at 65 ("What we would, perhaps, desire ultimately in a longer term situation or a permanent situation, for the artifact collections permanently together, undoubtedly permanently together, in a particular location, is something that NOAA would love to see."); Guidelines for Research, Exploration and Salvage of RMS Titanic, 66 Fed. Reg. 18,905, 18,909 (Apr. 12, 2011) ("Following these guidelines is in the public interest because artifacts will be preserved and recorded so that historical information can be extracted from the wreck without destroying it or compromising the ship's integrity. Not following the guidelines

Artifact Collection or of the stock of RMST, the Trustee of the Artifact Collection, that does not require the purchaser to commit to keep the Artifact Collection together as an integrated whole fails to serve an essential element of the public's interest in the Artifact Collection. NMM remains deeply concerned that, if such a sale were to be consummated, the French Artifacts may one day disappear from the public view, be damaged beyond repair, or be lost to the world entirely.

      Neither RMST nor the Stalking Horse Purchaser have committed to keep the Artifact Collection together as an integrated whole. To the contrary, RMST and the Stalking Horse Purchaser have indicated only that they intend for RMST to continue to maintain the Artifact Collection in accordance with the Covenants and Conditions. *See Periodic Report* (Docket No. 501) at 5 (indicating that RMST will only "continue to maintain the Titanic Collections in accordance with the [Covenants and Conditions] consistent with past practice" in response to the NOAA's question of whether RMST will commit to maintaining the Artifact Collection together as an integral whole for posterity); *Declaration of Gilbert Li* (Docket No. 507-1) at 3 (stating that the Stalking Horse Purchase will "cause RMST to . . . commit to continue to abide by the Covenants and Conditions . . . ."). RMST and the members of the Stalking Horse Purchaser, however, have previously stated that the Covenants and Conditions do not prevent the sale of individual artifacts in the French Collection. *See* Reply at 3-9 (collecting statements). It follows, therefore, that a commitment by RMST or the Stalking Horse Purchaser to maintain the Artifact Collection in accordance with the Covenants and Conditions is not a commitment to maintain them as an integral whole.

---

    may cause artifacts to be sold individually, historical information to be lost forever, and the deterioration of the ship to be accelerated. These are in all likelihood contrary to the public interest.").

7

NMM respectfully submits that NOAA's recommendation that RMST, and RMST and the Stalking Horse Purchaser's agreement to, provide "at least 60 days notice of, and seek Court approval for, . . . any action that could result in the *Titanic* Collections (as defined in the [Covenants and Conditions]) no longer being maintained together as an integrated whole" is insufficient to protect the public interest in the Artifact Collection. Advance notice of a litigation with an uncertain outcome is no substitute for appropriate assurances now that the Artifact Collection will be kept together. The public interest should be protected today by ensuring that any future purchaser of the Artifact Collection or RMST commit to keeping the collection together as an integrated whole.

NMM is committed to acquiring the Artifact Collection for the public interest, is willing to submit to the *in personam* jurisdiction of the Court, and, most importantly, is willing to make any commitment necessary to ensure that the Artifact Collection is kept together as an integrated whole in perpetuity. For the foregoing reasons, and as evidenced in the LOI, if the proposed sale to the Stalking Horse Purchaser is not consummated, NMM is willing and able to acquire the Artifact Collection for the benefit of the public interest. NMM submits that such relief is in the best interests of the Debtors' estates and furthers the public interest in the historical, archeological, scientific, and cultural aspects of the R.M.S. Titanic wreck and its artifacts.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Amended Motion to Intervene should remain held in abeyance until further order of this Court.

TRUSTEES OF THE NATIONAL MARITIME MUSEUM

Dated:   November 12, 2018                    Respectfully Submitted,

                                        By:   */s/ Edward J. Powers*

| | |
|---|---|
| Neil Quartaro | Edward J. Powers, Esq. (VSB No. 32146) |
| WATSON FARLEY & WILLIAMS LLP | VANDEVENTER BLACK LLP |
| 250 West 55th Street | 101 West Main Street, Suite 500 |
| New York, NY 10019 | Norfolk, VA  23510 |
| (212) 922-2200 | (757) 446-8600 |
| nquartaro@wfw.com | epowers@vanblacklaw.com |

Timothy Graulich
James I. McClammy
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
timothy.graulich@davispolk.com
james.mcclammy@davispolk.com

*Attorneys for the Trustees of the National Maritime Museum*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading was electronically filed with the Court's ECF system causing ECF notification to be sent to all counsel of record.

/s/ *Edward J. Powers*

Edward J. Powers, Esq. (VSB No. 32146)
Vandeventer Black LLP
101 West Main Street, Suite 500
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:   (757) 446-8670
epowers@vanblacklaw.com