IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

R.M.S. TITANIC, INC.,
successor in interest to Titanic
Ventures, limited partnership,

        Plaintiff,

v.                                Civil Action No.  2:93cv902

The Wrecked and Abandoned
Vessel, . . .believed to be
the RMS TITANIC, in rem,

        Defendant.

### OPPOSITION OF RMST TO THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM'S AMENDED MOTION TO INTERVENE

NOW COMES Plaintiff RMS Titanic, Inc., ("RMST"), by counsel, and files its response in opposition to the Amended Motion to Intervene (the "Amended Motion") filed by the Trustees of the National Maritime Museum ("the Museum") on November 11, 2018 [Dkt. Nos. 519, 520]. As grounds for its opposition, RMST respectfully states as follows:

### PRELIMINARY STATEMENT

The Amended Motion does not actually seek any affirmative relief from the Court. Instead, under the guise of asking this Court to continue to hold in abeyance consideration of its request to intervene, the Museum unlawfully seeks to interfere with RMST's efforts to consummate the transaction pending for consideration before the Court. For the reasons set forth below, the Court should deny both the Museum's original motion to intervene and the Amended Motion.

After a fifteen-month marketing and auction process, RMST, along with its parent company, Premier Exhibitions, Inc., and certain of its affiliates, as debtors and debtors-in-

1

possession (collectively, the "Debtors"), obtained Bankruptcy Court approval to sell substantially all of their assets, including the stock of RMST, to Premier Acquisition Holdings LLC ("PAHL"). The sale maintains the Debtors' business as a going concern and preserves nearly 120 jobs, including the Debtors' entire curation team. Following Bankruptcy Court approval, the Debtors and PAHL have worked diligently to address the concerns raised by this Court at the October 25, 2018 hearing, and to exchange information and documents with the National Oceanic and Atmospheric Administration ("NOAA"). Those efforts resulted in, among other things, the negotiation and recent submission to the Court of a revised proposed Order, which is supported by NOAA and seeks to allay the concerns previously raised by the Court.

In light of the foregoing, the Amended Motion should be denied for at least three reasons. First, the Museum lacks both constitutional and statutory standing to appear in this Court. The Museum cannot show that it has a redressable injury required to invoke Article III standing and fails to articulate a basis for its intervention under Fed. R. Civ. P. 24 ("FRCP 24").

Second, the Museum cannot use FRCP 24 to attack collaterally the results of the Debtors' bankruptcy sale process. The Museum repeatedly attempted to obtain Bankruptcy Court approval for a sale of the Artifacts to itself at the lowest price possible, without having to subject itself to an open, competitive bidding process. These efforts failed, and the Bankruptcy Court entered the Sale Order (defined below) approving PAHL as the successful bidder. The Museum cannot circumvent the Bankruptcy Court's jurisdiction and final adjudication by lobbing in competing term sheets in this Court. Such gamesmanship is blatant forum shopping and violates the express terms of the Sale Order and the automatic stay provided under Section 362 of the Bankruptcy Code.

Third, the Amended Motion improperly seeks to substitute the Museum as the self-appointed watchdog of the STAC[1] and FTAT (collectively, the "Titanic Artifacts") under the guise of "public interest." In reality, the Museum is simply an aggrieved, would-be purchaser acting solely in its own best interests to obtain ownership of the Titanic Artifacts at a substantially reduced price and without the support of any creditor constituency. Worse still, the Museum's proposal would ensure the termination of the Debtors' 120 employees and the removal of the Titanic Artifacts from the United States – assuming a chapter 7 trustee would even be willing to sell the Artifacts to the Museum. For these reasons, and as more fully set forth below, RMST respectfully requests that the Amended Motion to Intervene – as well as the Original Motion – be denied.

## BACKGROUND

On June 15, 2018, the Debtors filed in the Bankruptcy Court their *Motion for Approval of (a) Competitive Bidding and Sale Procedures; (b) Form and Manner of Notices; (c) Form of Asset Purchase Agreement* ("APA")*; (d) Break-Up Fee and Expense Reimbursement; (e) Scheduling Auction and Hearing to Consider Final Approval of Sale, Including Assumption and Assignment of Related Executory Contracts and Unexpired Leases; (f) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests;(g) Settlement with PacBridge Parties; and (h) Granting Related Relief* (the "Sale Motion").

On June 29, 2018, RMST filed in this Court its *Motion to Approve Asset Purchase Agreement and Authorize the Sale of 100% of RMST's Stock to Premier Acquisition Holdings LLC or Other Qualified Purchaser as Approved by the Bankruptcy Court* and *Memorandum in Support* Dkt. Nos. 447, 448 (the "Approval Motion"). The Government and NOAA filed a response on July 13, 2018, to which RMST replied on July 19, 2018. Dkt. Nos. 454, 455.

---

[1] Capitalized words used but not defined herein shall have the meanings ascribed to them in the *Opposition of RMST to the Trustees of the National Maritime Museum's Motion to Intervene* [Dk. No. 485] (the "Original Response").

3

Initially, the Museum attempted to participate in this action by lodging a *Notice of Appearance* Dkt. No. 450, to which RMST objected. Dkt. Nos. 453, 457, 465. The Court sustained RMST's objection. On August 17, 2018, the Museum filed its *Motion to Intervene* and accompanying *Memorandum in Support* Dkt. Nos. 474, 475 (the "Original Motion").

On August 31, 2018, RMST filed its opposition to the Original Motion and the United States filed a response to the Original Motion. Dkt. Nos. 484 and 485. On September 18, 2018, pursuant to the Museum's request, this Court ordered that the Original Motion be held in abeyance. Dkt. No. 493.

On October 19, 2018, the Bankruptcy Court entered an Order *(a) Approving Asset Purchase Agreement, (b) Authorizing Sale of the Transferred Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (c) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, (d) Approving Settlement with the Pacbridge Parties, and (e) Granting Related Relief* (the "Sale Order").

On October 31, 2018, PAHL filed its *Motion to Intervene* and accompanying *Memorandum in Support*. Dkt. Nos. 506, 507. PAHL's Motion to Intervene was granted by the Court on November 5, 2018. Dkt. No. 515.

Following this Court's initial hearing on the Approval Motion held October 25, 2018, RMST and PAHL have worked extensively with NOAA to address this Court's concerns and to provide NOAA and the Court with supplemental information and documents regarding PAHL and the sale transaction. *See* Dkt. Nos. 514, 516, 518, 521-526. Those efforts yielded a revised proposed Order – supported by NOAA – that attempts to address this Court's concerns raised at the October 25, 2018 hearing. PAHL filed with the Court the revised proposed Order on November 16, 2018. Dkt. No. 527.

On November 12, 2018, the Museum filed its Amended Motion, wherein the Museum does not ask this Court to grant intervention so it may participate in these proceedings as a party. Rather, the Amended Motion asks the Court to continue to hold its motion "in abeyance" while it attacks the Approval Motion from the sidelines in violation of the Sale Order and Bankruptcy Code.

## ARGUMENT

**I.  THE MUSEUM LACKS STANDING UNDER ARTICLE III OF THE CONSTITUTION AND FRCP 24.[2]**

    **A.  The Museum Lacks Article III Standing.**

At the outset, the Museum's application for intervention must be denied because it lacks Article III standing to appear in this proceeding. The Supreme Court has held unequivocally that "an intervenor must meet the requirements of Article III [standing] if the intervenor wishes to pursue relief not requested by a plaintiff." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017) (so holding when the applicant moved under FRCP 24(a)). *See also* 6 MOORE'S FEDERAL PRACTICE - CIVIL § 24.03 (2018) (noting that *Laroe* did not apply specifically to permissive intervention but stating that "the more consistent position is that permissive intervention is available only if the would-be intervenor has Article III standing.").

To have Article III standing, a party "must show that it has: (1) suffered an 'injury in fact' that is 'real and immediate' and not merely 'conjectural or hypothetical'; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a favorable federal court decision is likely to redress the injury." *In re W.R. Grace & Co.*, 468 B.R. 81, 222 (D. Del. 2012) (internal citations omitted). *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). Thus, a party lacks Article

---

[2] In addition to the arguments set forth herein, RMST hereby incorporates by reference all arguments made in its Opposition to Motion to Intervene, filed on August 31, 2018. Dkt. No. 485.

III standing if, among other things, it is "merely 'speculative' – as opposed to 'likely' – that the plaintiff's injury would be redressed by a favorable decision." *Arlington Capital, LLC v. Bainton McCarthy LLC (In re GT Automation Grp., Inc.)*, 828 F.3d 602, 604 (7th Cir. 2016) (quoting *United States v. Windsor*, 570 U.S. 744, 757 (2013)).

Here, the Museum lacks Article III standing because it cannot show redressability. The Museum fails to articulate how its requested intervention could redress its evident dissatisfaction with the proposed sale of RMST's stock to PAHL. Specifically, even if the Museum were granted the right to intervene here, it would not then simply replace PAHL and become entitled to purchase the Titanic Artifacts. To the contrary, the Debtors are contractually obligated (subject to this Court's approval) to sell RMST's stock to PAHL. A sale to the Museum – which is virtually impossible before the Debtors are liquidated – would require both a willing seller and significant action in the Bankruptcy Case by other parties (*e.g.*, the Debtors' stakeholders), none of whom are interested in the Museum's proposal. Just like *Lujan*, "[t]he short of the matter is that redress of the . . . injury . . . requires action . . . by [third-parties]; and any relief . . . provided . . . [i]s not likely to produce that action." 504 U.S. at 571. Accordingly, whatever injury the Museum has, if any, cannot be redressed by its proposed intervention. The Museum, therefore, lacks Article III standing to appear.

B. **The Museum Fails to Demonstrate any Basis for Intervention under FRCP 24.**

Additionally, the Museum cannot satisfy the procedural requirements for intervention, even assuming it has Article III standing. Pursuant to FRCP 24, there are two means by which a non-party can intervene in an action: intervention as a matter of right, governed by subsection (a), or permissive intervention, governed by subsection (b). The Museum categorically fails to meet either standard.

6

1.       Intervention as of Right.

FRCP 24(a)(2) provides that, upon a timely motion, the court must permit anyone to intervene who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  Within this Circuit, the intervenor-movant "must show first, an interest sufficient to merit intervention; second, that without intervention, its interest may be impaired; and third, that the present litigants do not adequately represent its interest." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).  The failure to meet independently all three prongs is fatal to the putative intervenor's claim.  *Id.*  *See also Dairy Maid Dairy v. United States*, 147 F.R.D. 109, 110 (E.D. Va. 1993) ("[o]f course, [movant] must meet all three prongs of the test in order to establish its right to intervene.").  Importantly, "remote or contingent" interests do not suffice – the interest must be "direct." *Id.*

Here, the Museum has not made – and cannot make – the showing required under *Westinghouse*; it fails the first prong.  Although the Museum attempts to cloak itself under the guise of altruistic intent, the fact remains that the Museum is only a disgruntled would-be purchaser, it has no legal interest in the Titanic Artifacts, let alone an interest "sufficient to merit intervention." *Westinghouse*, 542 F.2d at 216.  Unlike RMST and PAHL, the Museum has no direct interest in the Titanic Artifacts – it is neither the owner nor the bankruptcy court approved buyer of RMST's stock.  Instead, the only interest the Museum could possibly have in the Titanic Artifacts is subject to at least three contingencies: (1) this Court would have to deny approval of the APA; (2) a chapter 7 trustee would have to agree to sell the Artifacts to the Museum after the case has converted and the employees are terminated; and (3) the stakeholders, including the


Debtors' creditors, would have to support such a transaction - an unlikely circumstance given the Museum's offer is over $4 million less than the Bankruptcy Court-approved sale.[3] This outcome is insufficiently direct to constitute a recognizable "interest" under FRCP 24(a). *See, e.g.*, *Dairy Maid*, 147 F.R.D. at 111 (denying an intervention motion when the subject matter was "remote and contingent."); *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (among other things, denying as insufficiently direct the putative intervenor's 'interest' when it was "based upon a double contingency.").

Indeed, as a disgruntled would-be purchaser, the Museum also lacks standing to be heard before the Bankruptcy Court as a party in interest. *See, e.g., In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 739, 742 (Bankr. N.D. Ala. 2002) (citing precedent from the Second, Seventh, and Tenth Circuits and stating, "There are numerous authorities which hold that a non-creditor, whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale, lacks standing to challenge the right of other bidders to consummate the sale."). *Cf. In re Westwood Community Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002) ("the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals who have a financial stake in the order being appealed. . . . A person has a financial stake in the order when that order 'diminishes their property, increases their burdens or impairs their rights.'") (internal citations omitted). Accordingly, the Museum fails the *Westinghouse* test and cannot, therefore, intervene as a matter of right under FRCP 24(a)(2).

---

[3] Although the Museum purports to structure the transaction as a sale under section 363 of the Bankruptcy Code, only the Debtors can move for relief under that section. *See* 11 U.S.C. § 363(f) ("[t]he **trustee** may sell property under . . . this section . . .") (emphasis supplied). *See also In re Belton Inns, Inc.*, 71 B.R. 811, 815 (Bankr. S.D. Iowa 1987) ("[s]ection 363(f) clearly authorizes such a sale only by the trustee or debtor-in-possession . . .").

2. <u>Permissive Intervention</u>

The Museum also cannot satisfy the alternative basis for intervention under FRCP 24(b). FRCP 24(b)(1)(B) states, in relevant part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). This broad grant of discretion is cabined by subsection (b)(3), which cautions that "the court must consider whether the [permissive] intervention will delay or prejudice the adjudication of the original parties' rights." *Id.* at (b)(3).

Here, the Museum does not share "with the <u>main action</u> a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B) (emphasis supplied). The main action here is the *in rem* proceeding against the vessel and wreck site, from which RMST obtained the salvage award and corresponding conditional title to the STAC. The nature of the main action is unaltered by the collateral <u>sale</u> of RMST's stock – an entirely different proceeding invoking separate legal rights. *Cf. Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (affirming denial of permissive intervention because "the primary issue in the [main] action is whether Mt. Hawley owes insurance coverage . . . [and] the issue of insurance coverage is unrelated to the issue of fault in the [separate] action.").

Moreover, even if the Museum could meet the commonality requirement – and it cannot – intervention would severely prejudice RMST's rights to the Titanic Artifacts. As RMST has represented and the record establishes, time is of the essence for RMST and its affiliated debtors. If the proposed sale to PAHL does not close before the end of next month, the Debtors will run out of cash and likely suffer a conversion to chapter 7 of the Bankruptcy Code. After conversion, a chapter 7 trustee will be appointed and will control RMST's actions, including over how to maximize the value of the Titanic Artifacts for the benefit of the Debtors' creditors. This will almost certainly lead to litigation in the Bankruptcy Court and this Court regarding a sale of some

9

or all of the Titanic Artifacts, something that RMST has sought to avoid. *See* 11 U.S.C. § 704(a)(1) ("[t]he trustee shall – collect and reduce to money the property of the estate . . ."). This severe prejudice militates in favor of denying the Museum's request to intervene. *Cf. Gould v. Alleco, Inc.*, 883 F.2d 281, 287 (4th Cir. 1989) (affirming the denial of a request to intervene under FRCP 24(a)(2) but holding that the intervention "clearly would have prejudiced the [original party]" because it would have reduced the value of the fund in question). Accordingly, the Museum should not be permitted to intervene under FRCP 24(b).

## II. THE AMENDED MOTION IS AN IMPERMISSIBLE COLLATERAL ATTACK ON THE SALE ORDER.

The Amended Motion should also be denied because it is an improper collateral attack on the Sale Order. "An impermissible collateral attack is a legal proceeding pursued outside of the proscribed [*sic*] method of challenging a final order, generally by way of ancillary proceedings in the same court or another court." *In re Daewoo Motor Co., Ltd. Dealership Litig.*, No. MDL-1510, 2005 U.S. Dist. LEXIS 43197, at *33 (M.D. Fla. Jan. 6, 2005). A final order – even a purportedly incorrect one – is not subject to collateral attack. *Celotex v. Edwards*, 514 U.S. 300 (1995).

The Sale Order, which is both final and unappealed, provides for the sale of RMST's stock to PAHL – not the Museum. The Museum had ample opportunity to change this result. For example, the Debtors' professionals repeatedly encouraged the Museum to submit a qualified, competing bid for the purchase of the the Debtors' assets; but the Museum refused.

Instead, the Museum abandoned its efforts before the Bankruptcy Court and now seeks to subvert the sale to PAHL in this Court through the Amended Motion, in part by casting meritless aspersions on PAHL. *See, e.g.*, Amended Motion at 8 (stating that the Museum is "committed to acquiring the [Titanic Artifacts]" and that "if the proposed sale to [PAHL]is not consummated,

NMM is willing and able to acquire the [Titanic Artifacts] for the benefit of the public interest."). Indeed, the Museum even annexes to the Amended Motion a "letter of intent" dated the same day as its filing, never previously discussed with RMST, and that outlines a proposed structure for the transaction. *See generally* Exhibit A, Amended Motion. This attempt to circumvent the sale of RMST's stock to PAHL is not only a prohibited collateral attack on the Sale Order but also a flagrant violation of the express terms of the Sale Order and the automatic stay. *See* Sale Order at ¶ 9 (prohibiting "any action [that] adversely affect[s] or interfere[s] with the ability of the Sellers to transfer the Transferred Assets to the Purchaser in accordance with the Asset Purchase Agreement."); s*ee also* 11 U.S.C. § 362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."). *Cf. In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) ("by seeking heavy damages from the . . . purchaser . . . the suit is a thinly disguised collateral attack on the judgment confirming the sale."). As the Fourth Circuit held on strikingly similar facts, "Respect for the orderly process of law demands that the Florida bankruptcy court's final, unappealed order be given effect." *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1258 (4th Cir. 1997). The Amended Motion should, therefore, be denied as a procedurally improper collateral attack.

### III. THE MUSEUM IMPROPERLY SEEKS TO USURP NOAA'S ROLE AS ADVISOR TO THE COURT.

In addition to its fatal procedural shortcomings, the Amended Motion should be denied because it is substantively flawed. In the Amended Motion, the Museum continues the canard it has expressed before this Court numerous times – namely that PAHL's intentions as to the Titanic Artifacts and NOAA's diligence efforts thereto are suspect. *See* Amended Motion at 7 ("[n]either RMST nor the Stalking Horse Purchaser have committed to keep the Artifact Collection together as an integrated whole."). *See also id*. at 3-4 ("it is not apparent that NOAA has submitted

11

diligence requests with respect to . . . the French Collection"; "NOAA limited the scope of its inquiry . . ."). Using the baseless strawman that the Debtors' only value is in the Titanic Artifacts, the Museum implores the Court to ignore NOAA's recommendation and, instead, provide for a sale of the Titanic Artifacts *to the Museum*. The flaws with this purported solution are immediately apparent.

First, NOAA – not the Museum – is vested with the sole authority to make "reports and recommendations to the Court." Revised Covenants and Conditions at § V.A. The Museum's attempt to usurp NOAA's role vis-à-vis this Court is inappropriate, particularly when it is the self-selected replacement. Second, the Museum's representations are inaccurate and misleading. Tellingly, it is <u>not</u> willing to make "any commitment necessary to ensure that the Artifact Collection is kept together." To the contrary, the Museum continuously refused to make the one commitment – a nonrefundable deposit – necessary to participate in the Debtors' Bankruptcy Court-approved auction process. Likewise, although the Museum maintains that it represents the "public interest" and will "ensure that the Artifact Collection is kept together," its continued brinksmanship brings the Debtors closer to liquidation with every passing day.[4] As set forth above, the Debtors' liquidation will all but ensure that the Artifact Collection is "split up, sold to private collectors, and lost as an identifiable assemblage in perpetuity," Amended Motion at 2, the very result the Museum allegedly seeks to avoid. Finally, the Museum's proposal would result in the removal of the Titanic Artifacts from the United States and the corresponding loss of employment for the Debtors' remaining 120 employees. *See* Motion to Intervene at 3 ("[i]t is the goal of NMM to return the TITANIC Collections to the United Kingdom.").

---

[4] The Debtors' fear that the Museum lacked the financial wherewithal to close on its proposed transaction in the Bankruptcy Court was justified. Despite repeated assurances that it could raise the $19.2 million, the Museum now presents an unauthorized letter of intent with a substantially reduced $14.8 million purchase price, seeking to take advantage of the cash strapped Debtors' financial position.

Thus, the Museum's true intentions are less than noble.  It clearly is more concerned with acquiring the Titanic Artifacts at a fire-sale price than it is with protecting the public interest in keeping the Titanic Artifacts together.  If it were otherwise, the Museum would have simply participated in the Debtors' sale process – which it had every opportunity to do.  The Museum's purported "advice" is, therefore, inappropriate and self-serving and should be disregarded.

For the foregoing reasons, RMST respectfully requests that the Court enter an Order denying both the Museum's Original Motion and the Amended Motion to Intervene.

Dated: November 26, 2018.

Respectfully submitted,

R.M.S. TITANIC, INC.

By Counsel

_____/s/_____
William Poynter (VSB #48672)
Brian A. Wainger (VSB #38476)
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tele: 757/965-6804
Fax: 757/304-6175
Email: bwainger@kaleolegal.com
Email : wpoynter@kaleolegal.com


Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA  23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com

## CERTIFICATION

I hereby certify that the foregoing has been electronically filed through the Court's ECF system this 26th day of November, 2018.

           /s/
William Poynter (VSB #48672)
Brian A. Wainger (VSB #38476)
Kaleo Legal
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tele: 757/965-6804
Fax: 757/304-6175
Email: bwainger@kaleolegal.com
Email : wpoynter@kaleolegal.com


Robert W. McFarland (VSB #24021)
McGuireWoods LLP
9000 World Trade Center
Norfolk, VA 23510
Tele: 757/640-3716
Fax: 757/640-3966
Email: rmcfarland@mcguirewoods.com