IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
      Plaintiff,

v.                                                                                        Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43/ 32' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
<u>in rem</u>,
      Defendant.

**PERIODIC REPORT OF R.M.S. TITANIC, INC.
IN RESPONSE TO THE JULY 3, 2019 STATUS HEARING**

NOW COMES Plaintiff, R.M.S. Titanic, Inc. ("RMST" or the "Company"), by counsel, and files this "Periodic Report of R.M.S. Titanic, Inc. s" ("Periodic Report") to respond to the Court's inquiries and questions raised at the July 3, 2019, status hearing.

    **I.**      **EMG'S ASSUMPTION OF THE INTERCOMPANY AGREEMENTS FOR RMST**

One of the topics raised by the Court at the July 3, 2019 status hearing was whether the two intercompany agreements between Experiential Media Group 'EMG' LLC ("EMG") and RMST are substantively or materially different from the 2012 intercompany agreements. The Court indicated that the new agreements should be filed with the Court and noted that if something should be filed under seal, to follow the sealing requirements. July 3, 2019, Status Hearing Transcript (hereinafter "Tr.") at 11-12.

On February 13, 2019, EMG entered into an Assignment and Assumption Agreement where it assumed, among other things, the Restated Intercompany Services and Exhibition Touring

Rights License Agreement between Premier Exhibition Management LLC ("PEM") and RMST dated March 1, 2012 and the Intercompany Agreement between Premier Exhibitions, Inc. ("Premier") and RMST dated March 1, 2012, See, Exhibit 1, p. 6, items 16 and 17, which is filed under seal. Exhibit 1 is the Assignment and Assumption Agreement.  Page 6 is Exhibit A to that Agreement, listing the contracts assumed.

Exhibit 2 is a copy of the Restated Intercompany Services and Exhibition Touring Rights License Agreement between PEM and RMST dated March 1, 2012.  Exhibit 3 is a copy of the Intercompany Agreement between Premier and RMST dated March 1, 2012. Exhibits 2 and 3 are filed under seal.

Exhibit 4 is a copy of the Restated Intercompany Services and Exhibition Touring Rights License Agreement between RMST and EMG, also filed under seal. Exhibit 5 is the Intercompany Agreement between RMST and EMG, which is filed under seal. As can be seen by comparing Exhibit 2 to Exhibit 4, and Exhibit 3 to Exhibit 5, there are no material changes between the 2012 and 2019 agreements, and no materials changes to the rights and obligations assumed by EMG or the rights and obligations of RMST.  For the Court's reference, Exhibit 4a and Exhibit 5a include redline copies showing the changes between Exhibit 2 and Exhibit 4 and Exhibit 3 and Exhibit 5, respectively.

## II.     THE ARTIFACTS "WISH LIST"

At the July 3, 2019, status hearing, the Court indicted that RMST should provide its list from Alex Klingelhofer identifying those artifacts that RMST would consider for further conservation work in the future. Tr. at 15.  Attached to this report is Exhibit 6, filed under seal, which is the list provided by Ms. Klingelhofer.  The list identifies 55 such artifacts.

### III.   TRANSFER OF THE SAFE DEPOSIT BOX CONTENTS FROM MCGUIRE WOODS TO GREENBERG TRAURIG

At the July 3, 2019 status hearing, the Court also required counsel to report to the Court concerning the transfer of the lease for the safe deposit boxes containing jurisdictional artifacts from McGuire Woods to Greenberg Traurig, and for counsel to provide affidavits or declarations concerning the transfer. See, July 3, 2019 Status Hearing Transcript at 22. Certain artifacts are located at the Norfolk branch of a national financial institution, located in the Eastern District of Virginia.  The artifacts are contained in two safe deposit boxes.  GT and McGuire Woods are working on the transfer of the lease and control of the boxes to GT.   The contents will remain in the same boxes. Because of operating procedures of the firms and the financial institution, the transfer has not yet been completed. GT is working diligently with its in house legal counsel and with the financial institution's legal department to complete this transfer.

### VI. NO CHANGES TO THE RESERVE ACCOUNT ARE APPROPRIATE

At the July 3, 2019 hearing, the Court directed RMST to address whether changes to the reserve account and quarterly monthly payments are appropriate. In particular, the Court directed the Company to address Sections V.D of the Covenants. Tr. at 7.

That section states in relevant part that RMST will "set aside and pay a designated sum of monies into a reserve account" and the payments shall be made "in equal amounts of U.S. $25,000 per quarter". Covenants, § V.D.1, V.D.2.  The Covenants further state that the payments, "shall be adequate so that within 25 years from [August 2011], and based upon reasonably anticipated rates of return there shall be an endowment, the annual income of which (based on reasonable rates of return) would be sufficient to cover the estimated annual costs and expenses of conserving and curating" the artifacts.  The Covenants deem the "adequate

endowment" to be $5 million, as "may be adjusted from time to time to address changes in circumstances and inflation". Covenants, §§ V.D.2 and V.D.4.

      RMST respectfully submits that mandatory changes to the quarterly payments are not appropriate under the Covenants, and that an adjustment to the payments, or to the endowment itself, is not necessary.  The Covenants stipulate that they "constitute the entirety of a Trustee's obligations" in regards to the artifacts.  Covenants, § VIII.A. While the Covenants permit the endowment total of $5 million to be adjusted to address changes in circumstances and inflation, RMST submits that the Covenants do not allow for similar adjustments to the quarterly payments. To the contrary, the Covenants require RMST to set aside and pay a "designated sum of monies" in a reserve account, which such payment is fixed at "U.S. $25,000 per quarter." Covenants, § V.D.1, V.D.2.

      In 2009, when the Company drafted the Covenants, with input from the government, the Company understandably had concerns about complying with a twenty-five year deposit requirement if the amount was not fixed. The Company determined that $100,000 per year, split into four equal quarterly payments, was both reasonable and achievable on the part of the Company, and would yield an endowment sufficient to care for the artifacts.  Accordingly, the Company drafted and presented to the Court the Covenants that fixed the quarterly deposits at that number, without allowing or permitting mandatory adjustments.

      At the time the Covenants were agreed to, RMST believed, and RMST continues to believe, that a quarterly payment of $25,000 is adequate.  RMST respectfully submits that the sentences following the $25,000 quarterly payment performance guarantee are explanatory and illustrative.  Specifically, RMST is paying $25,000 per quarter into a reserve account so that in 2036 the yearly annual income of the endowment is sufficient to cover the estimated annual cost

4

and expense of conserving and curating the artifacts for a given year.  Based on expected rates of returns, it was reasonable at the time and remains reasonable to believe that $2.5 million deposited over a period of 25 years will yield sufficient income to cover such costs and expenses. Additionally, the fact that the Covenants "deem" the adequate endowment to be $5,000,000 and the fact that this amount can be adjusted (whether upwards or downwards) for changes in circumstances and inflation supports the fact that the $5,000,000 is meant to be illustrative and not determinative.

The reserve account currently contains approximately $800,000, which reflects thirty-two quarterly payments of $25,000 plus minimal accrued interest.  Historically, the Company has maintained the reserve moneys in cash accounts with limited growth potential, although the Covenants also specifically permit investments "in direct obligations of, or obligations the principal of and interest on which are guaranteed by, the United States Government, obligations of agencies of the United States Government or certificates of deposit secured by such obligations" and "investment decisions related to the reserve fund are committed to the sound business judgment of the Trustee".  Covenants, § V.D.4.  In order to increase the investment return from historical levels, the Company intends to explore and consider all investment options permitted by the Covenants.  RMST believes that based on a reasonable expected rate of return and employing alternative investment strategies, the reserve account could have a reasonable endowment in 2036.  While it is difficult to estimate now the annual income of such a reserve account in 2036, RMST respectfully submits it would be reasonably likely to be adequate to cover the costs of curation and conservation.

RMST also submits that an adjustment to the quarterly payments is not necessary because the Company has increased the current budget being allocated to conservation of the artifacts from

prior ownership. As stated previously to the Court, while it is still in the process of formulating its 2020 budget and projections, PAHL expects to budget approximately $800,000 for conservation, curation, care for, trust fund contributions, and management and exhibition of the *Titanic* Collections, to be funded from operations. This projected amount represents an increase over historical amounts expended by RMST in recent years. These additional expenditures incorporate RMST's projected expenditures for, among other things, to hire additional curation staff and to make investments in software and hardware in order to enhance, preserve and protect RMST's valuable intellectual property rights. The Company believes that a more effective and efficient use of Company resources is to dedicate these resources to ongoing conservation efforts as opposed to increasing the quarterly payment for the endowment. This position is supported by NOAA. At the hearing, Assistant United States Attorney Porter expressed NOAA's position that while the current account balance and interest rates "wouldn't meet that endowment level" (referencing the $5,000,000), NOAA would nevertheless prefer to see the Company invest in present conservation efforts rather than increase the quarterly payments. Tr. at 8-9.

      In addition, it should be noted that RMST and its affiliates continue to work diligently to operate and grow the business, including the permanent Titanic exhibitions in Las Vegas, Nevada and Orlando, Florida and various temporary exhibitions, such as the new exhibition in Scottsdale, Arizona. With respect to the Scottsdale exhibition, RMST further notes that the exhibition which opened in May 2019 and is scheduled to run through May 2020 has already had over 13,000 visitors. Further, RMST continues to work on enhancements and additions to the exhibitions, and has also hired additional staff to promote the Titanic and other exhibitions.

      Finally, RMST submits that there is no change in circumstance or inflation that would justify any adjustment to the total endowment of $5,000,000. As noted above, the new

management team has actually increased expenditures on curation and conservation and is devoting additional current resources for ongoing curation and conservation in order to mitigate and reduce future requirements. Further, given the extremely low inflationary environment that has existed in the United States since 2011 and that is expected to continue for the foreseeable future, RMST does not believe there is any need to adjust the quarterly payments or total endowment to reflect increased costs due to inflation.

The Company respectfully submits that an adjustment to the quarterly payments or total endowment is neither appropriate nor necessary at this time.

IV. **MISCELLANEOUS**

It is with regret that the Company informs the Court of the recent passing of Arnie Geller. As the former President and Chairman of RMS Titanic, Inc. and Premier Exhibitions, Inc., Mr. Geller dedicated a substantial part of his career and life to honoring Titanic and its passengers. A copy of Mr. Geller's obituary is attached for the Court's reference as Exhibit 9.

WHEREFORE, RMST submits this Periodic Report for the Court's information and consideration.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

/s/ *David G. Barger*

David G. Barger, VSB #21652
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
Email: Bargerd@gtlaw.com

*Counsel for R.M.S. Titanic, Inc.*

   /s/ Brian A. Wainger

Brian A. Wainger, VSB #38476
*Attorney for Plaintiff RMS Titanic, Inc.*
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

Robert W. McFarland, VSB #24021
*Attorney for Plaintiff RMS Titanic, Inc.*
McGuireWoods LLP
101 W. Main Street, Ste. 9000
Norfolk, VA 23510
Tel: (757) 640-3716
Fax: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

                                                 */s/ David G. Barger*
                                       David G. Barger, VSB #21652
                                       GREENBERG TRAURIG, LLP
                                       1750 Tysons Boulevard, Suite 1000
                                       McLean, Virginia 22102
                                       Tel:  (703) 749-1300
                                       Fax:  (703) 749-1301
                                       Email: Bargerd@gtlaw.com

                                       *Counsel for R.M.S. Titanic, Inc.*

*ACTIVE 44963790v1*