IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
    Plaintiff,

v.                                                                 Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43' 32" NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
<u>in rem</u>,
    Defendant.

### UNITED STATES' RESPONSE TO PERIODIC REPORT

The United States, as *amicus*, and on behalf of its National Oceanic and Atmospheric Administration ("NOAA"), provides the following response to RMST's August 1, 2019, Periodic Report.

1. *EMG's Assumption of Intercompany Agreements.*

The intercompany agreements referenced in the Periodic Report as Exhibits 2 and 3, ECF Nos. 562-2 and 562-3 (filed <u>under seal</u>) were previously filed in this Court at ECF Nos. 383-3 (Ex. C) and 383-1 (Ex. A), respectively. Based on a review of the redlined versions of these documents, NOAA concurs that these two intercompany agreements, assigned to and assumed by EMG, LLC, contain no material changes from the earlier agreements between PEM and RMST, and PRXI and RMST.

An additional intercompany agreement was previously filed at ECF No. 383-2 (Ex. B), reflecting an agreement between PEM and PRXI as to certain services PEM would provide to

1

PRXI as to exhibitions *other than Titanic*.  Because this agreement is in the record, NOAA suggests that RMST file a clarification as to the status of this agreement.

    2.    *Titanic Artifacts "Wish List."*

Pursuant to the Court's request, RMST has provided a listing of 55 "untreated" Artifacts for which RMST is considering "further conservation work in the future."  ECF No. 557 at 2.  Based on its prior Periodic Report of May 23, 2019, these 55 are among approximately 500 artifacts for which RMST "may consider further conservation work."  ECF No. 550 at 6.  RMST expressly represents that all artifacts are in "stable condition," that any conservation work is "elective," and that further conservation work is determined based on several criteria utilized by Mrs. Alex Klingelhoffer, Vice President of Collections.  ECF No. 550 at 5.

NOAA recognizes that professional judgment must be exercised in connection with the manner and timing of conservation efforts, and expressly states that it has the utmost respect for Mrs. Klingelhoffer, her professional judgment, and her dedication to the care of the Artifacts.  However, consistent with Mr. Li's commitment to this Court, NOAA requests that RMST supplement its response and provide, under seal if necessary, "an explanation of any conservation work needed as determined by RMST's curation staff, and an estimated time frame for completing such conservation work[.]"  ECF No. 527-2.

    3.    *Safe Deposit Box Transfer.*

RMST represents that it continues to work toward the transfer of control of the safe deposit box containing artifacts to the GREENBERG TRAURIG firm.  NOAA requests that RMST use the opportunity to have a trained conservator inspect the current condition of the artifacts in the safe deposit box, and report to the Court and NOAA, under seal if necessary, the status of those artifacts, including whether any conservation or restoration is necessary.  In

addition, NOAA requests that RMST inform the Court and NOAA of how often the artifacts in the safe deposit box were inspected by a trained conservator and will be inspected by a trained conservator going forward. Likewise, NOAA requests that RMST inform the Court and NOAA of how the environment (e.g., temperature, humidity, exposure to light, etc.) in which these artifacts will be stored will be monitored.

    4.    *Reserve Account.*

NOAA believes there is insufficient information at this time to determine whether any adjustment to the Reserve Account is needed, either in the endowment amount or the quarterly payment amount.

*First*, RMST was awarded title to the Artifacts, subject to the Covenants & Conditions ("C&C"), on August 15, 2011. The C&Cs created a Reserve Account to be funded by quarterly payments of $25,000. C&C, at V.D.2. The stated purpose of the Reserve Account was to create an endowment that, after twenty-five years, would be of sufficient size to generate annual income "sufficient to cover the estimated annual costs and expenses of conserving and curating the TITANIC Collections for that year." *Id.* The C&Cs expressly deemed a sufficient size "for [those] purposes" to be $5M. *Id.* Based on rough calculations, using conservative 30-year Treasury rates as a rate of return, the Reserve Account is not presently (and likely never was) on track to meet that $5M objective.[1]

---

[1] In 2011, the 30-year U.S. Treasury rate ranged between 2.76% and 4.76%, with an average of 3.91%. https://www.macrotrends.net/2521/30-year-treasury-bond-rate-yield-chart. Using a simple online calculator, an initial deposit of $25,000 in 2011, followed by quarterly deposits of $25,000, at an average rate of return of 3.91%, would have grown in 25 years to approximately $4.3M. https://money.cnn.com/calculator/pf/moneygrow/index.html. In 2019, the 30-year U.S. Treasury rate has ranged between 2.25% and 3.13%, with an average of 2.83%. https://www.macrotrends.net/2521/30-year-treasury-bond-rate-yield-chart. The reserve account presently holds approximately $800,000. ECF No. 557 at 5. Using the same online calculator, an initial deposit of $800,000 in 2019, followed by quarterly deposits of $25,000, at an average rate of return of 2.83%, would grow in the next 17 years to approximately $3.5M. https://money.cnn.com/calculator/pf/moneygrow/index.html.

*Second*, NOAA agrees with RMST that the Court may, if circumstances warrant, adjust the amount of the Reserve Account endowment, ECF No. 557 at 4, but NOAA does not agree that the quarterly payment cannot, also, be adjusted if circumstances warrant. The C&Cs directed that RMST pay a "designated sum" into the Reserve Account, and established that sum as $25,000 per quarter. C&C, at V.D.1 and V.D.2. The C&Cs also specified that

> [t]he payments *shall be adequate so that within twenty-five (25) years* from the date hereof, and based upon reasonably anticipated rates of return, there shall be an endowment, the annual income of which . . . would be sufficient to *cover the estimated annual costs and expenses of conserving and curating the TITANIC Collections* for that year. *For these purposes* the amount of an adequate endowment will be deemed equal to 5 million dollars.

*Id.* V.D.2 (emphasis added). Thus, in NOAA's view, the objective is not the endowment level ($5M) or the quarterly payment amount ($25,000); those were simply the means to a critical end – having a corpus of funds that, after 25 years, could generate sufficient income to conserve and curate the *Titanic* Collections for one year. If either the payments or established endowment amounts are not adequate to do so, the Court could adjust them as necessary.

*Third*, NOAA believes the Court needs additional information before it can properly evaluate the sufficiency of either the quarterly payments or endowment amount.[2] RMST has identified its annual operating budget as approximately $800,000. ECF No. 557 at 6. This amount encompasses all of its operations (i.e., "conservation, curation, care for, trust fund contributions, and management and exhibition of the *Titanic* Collections"), *id.*, and not just its costs and expenses expressly devoted to "conserving and curating the TITANIC Collections." C&C, at V.D.2. An endowment of $5M is not likely to generate $800,000 per year in income, but the actual amounts RMST devotes to conservation and curation specifically are likely less

---

[2] NOAA's belief that *limited* resources should first be devoted to ensure the Artifacts are properly cared for in the present, ECF No. 557 at 6, should not be construed to mean that providing for the future protection of the Artifacts should be ignored.

than $800,000 per year.  To determine what those amounts are, and to better evaluate the sufficiency of the Reserve Account at present, NOAA respectfully suggests the Court exercise its authority under Section V.D.6 of the C&Cs, and direct RMST to provide to the Court and NOAA, under seal if necessary, a breakdown of the amounts devoted exclusively to conservation and care of the *Titanic* Collections at present and within the last several years.  RMST should also include an explanation of why those amounts should be deemed sufficient to adequately conserve and curate the *Titanic* Collections for the public purposes[3] for which title was granted to RMST.

*Finally*, NOAA appreciates PAHL's increase in RMST's budget, and is encouraged by the efforts to grow the exhibition business responsibly.  ECF No. 557 at 6-7.  NOAA encourages RMST to consider the total cost for full, long-term conservation and care of the *Titanic* Artifacts when making management and budget decisions so that decisions concerning the amount of resources dedicated to artifact conservation are driven by stewardship needs and not solely by the amount of funds resulting from operations.  *See* ECF No. 557 at 6.

                                                Respectfully submitted,

                                                G. Zachary Terwilliger
                                                United States Attorney

By:   /s/ *Kent P. Porter*
       Kent P. Porter, VSB No. 22853
       Assistant United States Attorney
       Attorney for the United States
       United States Attorney's Office
       8000 World Trade Center
       101 West Main Street
       Norfolk, VA 23510
       757-441-6331

---

[3] The public purposes for which RMST was granted the *in specie* award was to make "the TITANIC Collections available to present and future generations for public display and exhibition, historical review, scientific and scholarly research, and educational purposes."  C&C, at III.B; *see also id.*, at I.G.

Fax: 757-441-6689
kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2019, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| **Brian Andrew Wainger**<br>Kaleo Legal<br>4456 Corporation Lane<br>Suite 135<br>Virginia Beach, VA 23462<br>Email: bwainger@kaleolegal.com | **Robert William McFarland**<br>McGuireWoods LLP<br>101 W Main St<br>Suite 9000<br>Norfolk, VA 23510-1655<br>Email: rmcfarland@mcguirewoods.com |
|---|---|
| **David G. Barger, VSB #21652**<br>GREENBERG TRAURIG, LLP<br>1750 Tysons Boulevard, Suite 1200<br>McLean, Virginia 22102<br>Tel: (703) 749-1300<br>Fax: (703) 749-1301<br>E-Mail: Bargerd@gtlaw.com | |

/s/ *Kent P. Porter*
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax: 757-441-6689
kent.porter@usdoj.gov