# EXHIBIT 2

*Exhibit 2*
*~~in this seal~~*
*un-sealed*

## RESTATED INTERCOMPANY SERVICES AND EXHIBITION TOURING RIGHTS LICENSE AGREEMENT

THIS AGREEMENT, to be effective the 1st day of March, 2012 (the "Effective Date"), is made and entered into by and between Premier Exhibition Management LLC ("PEM"), a Florida limited liability company, and RMS Titanic, Inc. ("RMST"), a Florida corporation, both of which are subsidiaries of Premier Exhibitions, Inc. ("PRXI"). This Restated Agreement replaces the Intercompany Services and Exhibition Touring Rights License between PEM and RMST dated September 1, 2011.

### RECITALS

WHEREAS, RMST is in need of certain Services (as such term is defined herein) relating to RMST's operations and PEM has the resources and the ability to undertake to provide such; and

WHEREAS, PEM is in the business of presenting touring museum-quality exhibitions and requires rights to utilize certain artifacts owned by RMST in furtherance thereof, and PEM may also be in need of certain Services relating to PEM's operations and RMST has the resources and ability to undertake and provide such;

NOW THEREFORE, in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, RMST and PEM (hereinafter collectively referred to as "the Parties") hereby agree as follows:

### ARTICLE I
### SERVICES TO BE PROVIDED AND LICENSE GRANTED

**Section 1.1.   Services; License.**  PEM hereby agrees to provide or shall cause PEM to provide to RMST the services set forth on **Exhibit A**, attached hereto, including without limitation, functioning as the exclusive producer, booker, promoter and presenter of live touring exhibitions of artifacts recovered from the wreck site of the *RMS Titanic* (the "Artifacts"), which Artifacts are owned by RMST and to be licensed by RMST to PEM for use in the exhibitions (collectively, the "Exhibitions") and which Exhibitions shall be sublicenced by PEM to museums and other third parties worldwide, and exploited by PEM through merchandising, sponsorship sales and other ancillary revenue streams pursuant to terms and conditions to be mutually agreed upon by the parties.  RMST hereby grants to PEM the exclusive right and privilege (the "License") to (i) produce and present Titanic touring exhibitions containing the Artifacts; (ii) utilize such Artifacts as are necessary and desirable for the presentation of any Exhibitions (A) that PEM has agreed or in the future agrees to present at museums or other venues owned or operated by third parties; and/or (B) that PEM or its affiliated entities elects to present at premises owned or leased by any of them (including the Luxor in Las Vegas, NV, South Street Seaport in New York City,  or Atlantic Station in Atlanta, GA); and (iii) exploit such Exhibitions through ticket sales, license fees, merchandising, sponsorship sales, audio tours, photographic concessions and other ancillary revenue streams. The License shall be worldwide.  PEM also hereby agrees to provide or shall cause PEM to provide to RMST the Conservation and Collection Services set forth in **Exhibit B**, attached hereto. The services to be provided by PEM to RMST pursuant to Exhibits A and B hereunder

are sometimes hereinafter collectively referred to as the "Services". PEM agrees to use its best efforts in the performance of the Services hereunder.

**Section 1.2. Time and Place of Performance.** The Parties shall provide the Services at such place or places and during such times as the Parties mutually agree may be necessary or appropriate.

**Section 1.3. Nonexclusive Service.** The Parties acknowledge and agree that nothing contained in this Agreement shall confer upon RMST an exclusive right to PEM's services, nor shall it confer on PEM an exclusive right to RMST's services, except that PEM shall be the exclusive licensee of the touring exhibition rights pertaining to the Artifacts.

**Section 1.4. Licenses and Permits.** PEM agrees that it shall obtain and maintain all applicable permits, approvals and licenses required in connection with performing its duties and obligations hereunder and shall at all times comply with the terms and conditions of such permits, approvals and licenses. RMST agrees that it shall obtain and maintain all applicable permits, approvals and licenses required in connection with performing its duties and obligations hereunder and shall at all times comply with the terms and conditions of such permits, approvals and licenses.

**Section 1.5. Additional Services.** The Parties acknowledge that each party may, from time to time during the term of this Agreement, request that the other party provide additional services under this Agreement. The Parties shall negotiate with one another in good faith to reach agreement on the scope and terms of such services and the consideration for such additional services (which shall be negotiated between the parties acting at arm's length). The requesting party shall provide the other sufficient advance notice of the need for such additional services to permit the other party to accommodate such request, and to facilitate such negotiation of the terms and consideration for such services. In the event that the Parties do reach an agreement, such additional services shall be deemed included within the overall Services being provided by the applicable Party under this Agreement.

**Section 1.6. Obligations of RMST.** RMST shall (i) provide PEM with such direction and instructions relating to the Services as is necessary or appropriate; (ii) comply with all reasonable requests for instructions which PEM may make in order to perform the Services hereunder; and (iii) notify PEM of any additional services, or request for change in services currently rendered, sufficiently in advance to allow PEM reasonable time to accommodate such requests (subject to Section 1.5 above).

**Section 1.7. Obligations of PEM.** PEM shall (i) provide RMST with such direction and instructions relating to the Exhibitions as is necessary or appropriate to maximize their success; (ii) comply with all reasonable requests for instructions which RMST may make in connection with providing for the security and safety of the Artifacts hereunder; and (iii) notify RMST of any additional services, or request for change in services currently rendered, sufficiently in advance to allow RMST reasonable time to accommodate such requests (subject to Section 1.5 above).

**ARTICLE II**
**REVENUE AND EXPENSES**

**Section 2.1. Royalties to RMST.** In consideration for the exhibition booking, production, promotion and management related Services to be provided by PEM to RMST under this Agreement, and for the

related merchandising services, sponsorship sales, other ancillary revenue-related services and other exploitation of the Exhibitions as provided for hereunder (collectively, the "Exhibition Management Services"), PEM shall retain ninety percent (90%) of all Gross Revenue derived by PEM from ticket sales, licensing fees, merchandising sales, sponsorship sales, audio tour sales, photographic concession sales and other related sources of revenue from the Exhibitions licensed under this Agreement. PEM shall pay the remaining ten percent (10%) of Gross Revenue to RMST. Gross Revenue shall be defined as revenue net of (a) credit card fees and (b) sales chargebacks that relate specifically to admission revenue.

**Section 2.2 – Support Services.** In addition, in consideration of the shared administrative support services provided by PEM, RMST shall reimburse PEM for ten percent (5%) of all costs incurred in the provision of the Services outlined in Exhibit A to RMST (e.g. other than the costs of the Exhibition Management Services being provided by PEM), and the similar such administrative support services provided to PRXI and to PEM and all of PRXI's other subsidiaries (excluding RMST), in the aggregate. These Services are generally included in the following departments of PRXI and its subsidiaries – Board, Executive, Legal, Information Technology, Accounting and Finance and Administration. Such costs shall include but not be limited to employee-related expenses (salary and benefits), office expenses, and unallocated travel and entertainment expenses.

**Section 2.3.   Conservation and Collection Services.**   In exchange for the Conservation and Collection Services to RMST, RMST shall reimburse PEM for ninety percent (90%) of all costs incurred in the provision of such services to RMST, and the similar such conservation and collection services provided to PEM (e.g., its Bodies and other human anatomy exhibitions and other properties), in the aggregate. Such costs shall include but not be limited to employee-related expenses (salary and benefits), office expenses, and unallocated travel and entertainment expenses.

**Section 2.4.  Payment of Fees.** PEM shall deliver or cause to be delivered to RMST payments outlined in Section 2.1 of this Article no later than thirty (30) days from the close of RMST's quarterly accounting cycle. RMST shall deliver or cause to be delivered to PEM the reimbursements outlined in Sections 2.2 and 2.3 of this Article no later than thirty (30) days from the close of PEM's quarterly accounting cycle. Payments pursuant to this Agreement may be made by intercompany transfer.

**ARTICLE III**
**TERM; TERMINATION; EFFECT OF TERMINATION**

**Section 3.1. Term.** This Agreement be effective as of the Effective date contained herein, and shall remain in effect for a period of one (1) year from the Effective Date and shall automatically renew at the end of such year, and each succeeding year, unless terminated by either party as provided below.

**Section 3.2.   Termination.** Either party may terminate this Agreement by a written notice sent to the other party not less than thirty (30) days prior to the effective date of termination. Notwithstanding any provision to the contrary herein contained, in the event of a change of control in the current ownership structure of either of the Parties, each shall have the option, in its sole discretion, to terminate this Agreement by giving ten (10) days written notice.

**Section 3.3  Effect of Termination.**  Upon the termination of this Agreement, all rights and obligations of each Party under this Agreement shall immediately thereafter cease; provided, however, that the provisions of Section 3.3, Article 4, Article 5, Article 6, and Article 7 shall survive any termination of this Agreement, and further provided, that the payment obligations under Article 2 shall survive any termination of this Agreement if, and to the extent, any Fees have accrued or are otherwise due and owing as of the date of termination of this Agreement.

**ARTICLE IV**
**CONFIDENTIALITY**

**Section 4.1.  Confidentiality by RMST.**  RMST covenants to PEM that it shall, and shall cause its affiliates, to keep secret and maintain in confidence any confidential and proprietary information and data of PEM that is obtained or used in connection with the Exhibitions hereunder.

**Section 4.2.  Confidentiality by PEM.**  PEM covenants to RMST that PEM shall, and shall cause its affiliates, to keep secret and maintain in confidence any confidential and proprietary information and data of RMST that is obtained or used in connection with the performance of the Services hereunder.

**ARTICLE V**
**INDEMNIFICATION**

**Section 5.1.  Indemnification by PEM.**  PEM and each of its successors and assigns, jointly and severally, hereby agree to indemnify RMST and its successors and assigns against, and agree to hold them harmless from, any and all claims, losses, liabilities, damages (including fines, penalties, and criminal or civil judgments and settlements), costs (including court costs) and expenses (including reasonable attorneys' and accountants' fees) incurred or suffered by RMST and/or its successors and assigns arising out of or in connection with PEM's breach of any covenant, representation, warranty or obligation of PEM under this Agreement or PEM's performance of Services under this Agreement.

**Section 5.2.  Indemnification by RMST.**  RMST and each of its successors and assigns, jointly and severally, hereby agree to indemnify PEM and its successors and assigns against, and agree to hold them harmless from, any and all claims, losses, liabilities, damages (including fines, penalties, and criminal or civil judgments and settlements), costs (including court costs) and expenses (including reasonable attorneys' and accountants' fees) incurred or suffered by PEM and/or its successors and assigns arising out of or in connection with RMST's breach of any covenant, representation, warranty or obligation of RMST under this Agreement.

**ARTICLE VI**
**BOOKS AND RECORDS**

**Section 6.1.  Examination of Book and Records.**  PEM and RMST shall create and maintain complete and accurate books and records in connection with the Services and the Exhibitions under this Agreement, and each shall have the right at its respective expense to examine the books and records of the other Party during normal business hours at such other Party's offices on giving reasonable notice for the purpose of auditing such records with respect to the performance of the obligations set forth in this Agreement.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.1.   Notices.**  Any and all notices, elections, offers, acceptances, and demands permitted or required to be made under this Agreement shall be in writing, signed by or on behalf of the Party making the same, shall specify the Section hereunder pursuant to which it is given or being made, and shall be delivered personally or by telecopy transmission or sent by registered or certified mail (return receipt requested) as follows:

If to PEM:  3340 Peachtree Road NE Suite 900
Atlanta, GA 30326
Attention:  Michael J. Little
Fax:  404-842-2626

If to RMST:  3340 Peachtree Road NE Suite 900
Atlanta, GA 30326
Attention:  Robert A. Brandon
Fax:  914-304-8131

or to such other address or to such other person or persons designated in writing by such Party, as the case may be.  Any such notice, communication or delivery shall be deemed given or made (a) on the date of delivery if delivered in person, (b) upon transmission by facsimile if receipt is confirmed by telephone or (c) on the fifth (5th) business day after it is mailed by registered or certified mail.

**Section 7.2.   Force Majeure.**  If the performance of any part of this Agreement by either party, or of any obligation under this Agreement, is prevented, restricted, interfered with, or delayed by reason of any cause beyond the reasonable control of the Party liable to perform, unless conclusive evidence to the contrary is provided, the Party so affected shall, on giving written notice to the other Party, be excused from such performance to the extent of such prevention, restriction, interference, or delay, provided that the affected party shall use its reasonable best efforts to avoid or remove such causes of nonperformance and shall continue performance with the utmost dispatch whenever such causes are removed.  When such circumstances arise, the Parties shall discuss what, if any, modification of the terms of this Agreement may be required in order to arrive at an equitable solution.

**Section 7.3.   Successors and Assigns.**  This Agreement shall be binding on and shall inure to the benefit of the Parties, their respective successors, successors in title, and assigns, and each Party agrees, on behalf of it, its successors, successors in title, and assigns, to execute any instruments that may be necessary or appropriate to carry out and execute the purpose and intentions of this Agreement and hereby authorizes and directs its successors, successors in title, and assigns to execute any and all such instruments.  Each and every successor in interest to any Party, whether such successor acquires such interest by way of gift, devise, assignment, purchase, conveyance, pledge, hypothecation, foreclosure, or by any other method, shall hold such interest subject to all of the terms and provisions of this Agreement.  The rights of the Parties and their successors in interest shall be governed by the terms of this Agreement, and the right of any Party or successor in interest to assign sell, or otherwise transfer or

deal with its interests under this Agreement shall be subject to the limitations and restrictions of this Agreement.

**Section 7.4. Amendment.** No change, modification, or amendment of this Agreement shall be valid or binding on the Parties unless such change or modification shall be in writing signed by the Party or Parties against whom the same is sought to be enforced.

**Section 7.5. Limitation of Liability.** PEM will not be liable to RMST, or any other person or entity, for special, indirect, consequential or punitive damages caused by, attributable to, or arising in connection with, the performance, non-performance or delayed performance of the services contemplated by this Agreement, or any act or omission of PEM or any person or entity acting on behalf of PEM, whether negligent or otherwise, including without limitation, damages relating to loss of profit or business interruption, however such damages may be caused, except for such damages attributable to PEM's or such other person's or entity's fraud, bad faith or willful misconduct. PEM will not be liable for any failure to perform or any delay in the performance of its obligations hereunder due to Force Majure (as defined in Section 7.2 above) or any cause beyond the reasonable control of PEM. RMST will not be liable to PEM, or any other person or entity, for special, indirect, consequential or punitive damages caused by, attributable to, or arising in connection with, the performance, non-performance or delayed performance of the services contemplated by this Agreement, or any act or omission of RMST or any person or entity acting on behalf of RMST, whether negligent or otherwise, including without limitation, damages relating to loss of profit or business interruption, however such damages may be caused, except for such damages attributable to RMST's or such other person's or entity's fraud, bad faith or willful misconduct. RMST will not be liable for any failure to perform or any delay in the performance of its obligations hereunder due to Force Majeure (as defined in Section 7.2 above) or any cause beyond the reasonable control of RMST.

**Section 7.6. Remedies Cumulative.** The remedies of the Parties under this Agreement are cumulative and shall not exclude any other remedies to which any Party may be lawfully entitled.

**Section 7.7. Exhibits.** All exhibits hereto are hereby incorporated into this Agreement and made part hereof as if set out in full in this Agreement.

**Section 7.8. Further Assurances.** Each Party hereby covenants and agrees that it shall execute and deliver such deeds and other documents as may be required to implement any of the provisions of this Agreement.

**Section 7.9. No Waiver.** The failure of any Party to insist on strict performance of a covenant hereunder or of any obligation hereunder shall not be a waiver of such Party's right to demand strict compliance therewith in the future, nor shall the same be construed as a novation of this Agreement.

**Section 7.10. Integration.** This Agreement constitutes the full and complete agreement of the Parties regarding the subject matter contained herein.

**Section 7.11. Applicable Law.** The validity, construction, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, regardless of the laws that might otherwise govern under applicable principles of the conflicts of law. Any claim arising under

this Agreement shall be prosecuted exclusively in a federal or state court of competent jurisdiction located within the City of Norfolk, Virginia, USA, and the parties consent to the jurisdiction of such court and to the service of process by mail at the respective addresses of the parties as set forth above.

**Section 7.12.  Severability.**  In the event any provision, clause, sentence, phrase, or word hereof, or the application thereof in any circumstances, is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder hereof, or of the application of any such provision, sentence, clause, phrase, or word in any other circumstances.

**Section 7.13.  No Assignment.**  Except as expressly permitted under this Agreement, no Party may assign any of its rights or obligations hereunder to any other Person without the prior written consent of the other Parties.  Any attempted assignment of this Agreement in violation of this Section 7.13 shall be void and of no effect.  This Agreement shall be binding upon, inure to the benefit of and be enforceable by the Parties and their respective successors and permitted assigns.

**Section 7.14.  No Third-Party Beneficiaries.**  This Agreement is for the sole benefit of the Parties and their permitted assigns, and nothing herein express or implied shall give or be construed to give to any Person, other than the Parties and such assigns, any legal or equitable rights hereunder.

**Section 7.15.  No Agency or Partnership.**  Nothing in this Agreement will create, or will be deemed to create, a partnership or the relations of principal and agent or of employer and employee between the Parties.  Except for provisions herein expressly authorizing one Party to act for another, this Agreement shall not constitute any Party as a legal representative or agent of any other Party, nor shall a Party have the right or authority to assume, create or incur any liability or any obligation of any kind, expressly or implied, against or in the name or on behalf of any other Party unless otherwise expressly permitted by such Party.

*IN WITNESS WHEREOF*, the Parties have executed this Agreement effective on the date first written above.

PREMIER EXHIBITION MANAGEMENT LLC

By: _____

Name: _Michael Little_

Title: _CFO / COO_

RMS TITANIC, INC.

By: _____

Name: _Sam S. Weisen_

Title: _PRESIDENT_

## EXHIBIT A

### ADMINISTRATIVE SUPPORT SERVICES AND
### EXHIBITION MANAGEMENT SERVICES

1. Exhibition Management Services. PEM shall provide exhibition, production, promotion, booking and any additional exhibition management services needed to RMST.

2. Accounting Services.  PEM shall provide accounting services to RMST including, but not limited to, recording and maintaining RMST's business transactions in a separate general ledger (including accounts payable, accounts receivable, inventory and fixed assets, all in accordance with generally accepted accounting principles) and assistance with any account reconciliations, financial statements, and analyses required for internal and/or external reporting.  Such services shall also include mailing and distribution services and information system support.

3. Corporate Record Keeping Services.  PEM shall maintain all historical tax, accounting and payroll records relating to RMST, until such time as such records shall be disposed of in accordance with applicable legal requirements and PEM's normal record disposition policies.

4. Employee Benefits Services.  PEM shall permit employees of RMST to participate in certain employee benefit plans and programs of PEM and its affiliates as agreed upon by the Parties. PEM shall provide administrative services with respect to applicable medical, dental, vision, life accidental death and dismemberment and long term disability insurance programs and applicable incentive, retirement, and other benefit programs.

5. Human Resources Services. PEM and/or its affiliates shall provide to RMST services requested by RMST relating to the hiring, promotion, termination and development of RMST's employees.

6. Legal Services.  PEM shall provide advice on business related and other corporate legal matters, including, but not limited to, negotiations and preparation of documents and agreements; assistance with UCC filings; drafting, reviewing and assistance with execution of legal documents and contracts; and coordination of defense for any civil or criminal litigation arising from RMST's regular business operations.

7. Payroll Services.  PEM shall provide RMST with payroll services, including but not limited to, payment processing and payroll tax filings; payroll distribution; Form W-2 preparation; assistance with any required regulatory compliance in connection with any payroll services; administration of corporate cards; and maintenance of RMST's employee database and payroll records.

8. Tax Services.  PEM shall (or shall cause a third party to) provide tax services to RMST, including but not limited to, administering RMST's tax reporting requirements; preparation of federal, state and local returns (including income tax returns, franchise tax returns, and sales and

use tax returns required to be filed by RMST); preparation of business license registrations and renewals; and preparation of financial statement disclosures and calculation of tax provisions for financial statement purposes.

9. Treasury and Banking Services. PEM and / or its affiliates shall provide to RMST the Services necessary to handle all treasury and banking matters, including, but not limited to, cash management services; assistance and advice relating to investments; and assistance in bank account management.

10. Other Services. PEM and / or its affiliates shall provide RMST with general management and miscellaneous support functions, including data processing and financial planning.

**EXHIBIT B**

**CONSERVATION AND COLLECTION SERVICES**

The Conservation and Collection Services that PEM shall provide to RMST shall consist of all necessary and customary conservation and preservation work on the Titanic Artifacts, as well as the work of Collections Dept. personnel at installs and de-installs of exhibitions being produced and/or presented by PEM that display such Artifacts, all in accordance with any applicable covenants and conditions imposed by the federal court having jurisdiction over the Titanic wreck site.