IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
    Plaintiff,

v.                                                                                              Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, et al
    Defendant.

**PERIODIC REPORT OF R.M.S. TITANIC, INC.
ON THE PROGRESS OF RESEARCH AND
<u>RECOVERY OPERATIONS</u>**

NOW COMES Plaintiff, R.M.S. Titanic, Inc. ("RMST" or the "Company"), by counsel, and files this "Periodic Report of R.M.S. Titanic, Inc. on the Progress of Research and Recovery Operations" ("Periodic Report").

**I.    Stewardship of the Wreck Site.**

On January 7, 2020, EYOS Expeditions, Ltd. ("EYOS") filed with the Court, a letter dated August 11, 2019 from Mr. Rob McCallum, Expedition leader of the 2019 EYOS Expedition (the "Expedition"), to Mr. David Alberg, Superintendent, Monitor National Marine Sanctuary, National Oceanic and Atmospheric Administration ("NOAA"). EYOS filed the letter with this Court five months after it was written, presumably to comply with this Court's Order dated July 3, 2019, which Order directed EYOS to, "provide NOAA, RMST and this Court a copy of the expedition report." (ECF No. 554) (hereinafter the "Letter Report"). Although the Letter Report is dated August 11, 2019, just five days after the Expedition concluded on August 6, 2019, neither EYOS nor NOAA provided RMST a copy of the letter.

The Letter Report reveals publicly, for the first time, that the EYOS submersible collided with the *Titanic* wreck: "due to the presence of the intense and highly unpredictable currents during the dive, accidental contact was occasionally made with the seafloor *and on one occasion the wreck*." (ECF 584 at p. 4) (emphasis added). EYOS claims that "these interactions were of a minor nature and not material events. The submersible was neutrally buoyant (weightless) and is a fragile vehicle; there was no abnormal physical signs of damage or physical evidence of contact on the submersible." *Id*.

This announcement, if true, implicates this Court's July 3, 2019 Order, which the Court carefully crafted to prevent any damage to the wreck and wreck site.[1] The Court provided that EYOS could recover research trays, but only if such retrieval was "without damage to the wreck, the wreck site or any associated artifacts"; that EYOS could place new research trays at the wreck site, "but only if such placement can be accomplished without damage to the wreck, the wreck site or any associated artifacts"; and that EYOS was permitted to remove rusticle samples provided it could accomplish the removal "without damage to the wreck, the wreck site or any associated artifacts" and without scraping or causing "damage [to] the hull or any other part of the ship." (ECF 554 at p.3).

That EYOS and NOAA failed to inform RMST and the Court for nearly five months raises a series of troubling issues, which respectfully, must be investigated RMST, in keeping with the Company's obligations and responsibilities as salvor-in-possession. RMST respectfully requests the Court's assistance. The questions include, among others, verifying the assertions in

---

[1] It also implicates the July 30, 2019 permit that NOAA issued to EYOS prohibiting certain activities on the Expedition. (ECF 564-1)("No physical alteration or disturbance of the wreck or wreck site, including the seabed, is authorized . . .. This authorization does not permit landing on or making any physical contact with the *Titanic* wreck or any artifacts except as described in the Authorized Activity Description"). RMST reserves all rights with respect to the enforceability and constitutionality of Sec. 113.

the Letter Report as the causes of the collisions, and the effects of the collisions on the wreck site.

In the Letter Report, Mr. McCallum notes that, "[f]ilming operations were conducted during each of the five dives in both HD and 4k formats. This footage was collected by Atlantic Productions for a National Geographic documentary that will illustrate the continued decay of the wreck through natural processes." (ECF 584 at p. 6)." This video, while apparently intended for use in a documentary, also comports with this Court's Order requiring EYOS to photograph the wreck site both before and after placement of research trays, removal of research trays and the removal of rusticle samples. (ECF 554, Order in §§ 2, 3, and 4). Despite the Court's Order requiring photographic evidence of the actions taken by EYOS, Mr. McCallum claims that, "imagery was not available for viewing by the expedition team (as a matter of policy) but we are informed the imagery of the bow section is of very high (4k) quality." (ECF 584 at p. 6).

The Court will recall that EYOS, RMST and Caladan Oceanic, LLC ("Caladan"), the entity that owns the expeditionary vessel and submersible, entered into an Expedition Observation Agreement dated June 24, 2019 pursuant to which EYOS and Caladan permitted RMST to place one RMST representative as an observer on board the expeditionary vessel. Attached as Exhibit 1 is a copy of the Expedition Observation Agreement. RMST designated P.H. Nargeolet as its representative on the Expedition. Pursuant to the Expedition Observation Agreement, Mr. Nargeolet participated, "to observe, and provide advice related to, the Caladan Expedition." *Id*. at p. 1. In keeping with the Expedition Observation Agreement, Mr. Nargeolet participated as an observer and advisor to Caladan and EYOS on the Expedition, though the Letter Report omits Mr. Nargeolet from the list of "key expedition staff." (ECF 584 at p. 3).

According to the Letter Report, Mr. Tane Casserley participated as an observer on behalf of NOAA as part of the "key expedition staff." *Id.*

Upon his return from the Expedition, Mr. Nargeolet reported on the Expedition to Bretton Hunchak, RMST President, and never mentioned the submersible collisions with the seabed or with the wreck. After the filing of EYOS report with the Court on January 7, 2020, Mr. Nargeolet acknowledged to Mr. Hunchak for the first time that the EYOS submersible collided with the wreck. Mr. Nargeolet's reticence to share with RMST, his employer, all of the facts of the Expedition apparently stems at least in part from his belief that the terms of a confidentiality agreement he believes he executed prevents him from sharing this information with RMST. To date, neither Mr. Casserley, nor any other representative of NOAA has informed RMST about the collisions or the events surrounding them.

RMST respectfully suggests that it is appropriate for the Court to consider hearing testimony from Mr. Casserley and Mr. Alberg, and representatives of EYOS including Mr. McCallum, as to the specific events described in the Letter Report, the reasons why the Court and RMST were not informed sooner, and the cause and effect of the collisions. RMST requests that the Court enter an Order directing their attendance at the February 20, 2020 hearing. As set forth in the Periodic Report filed on January 20, 2020, RMST also intends to voluntarily call Mr. Nargeolet and other expert witnesses at the hearing.

RMST believes that representatives of EYOS and Caladan may have seen footage of the collision with the wreck site and the collisions with the seabed. This footage may provide significant information to the Court and to RMST. RMST has made substantial efforts to obtain this footage in the past two weeks, as well as to clarify a number of the other questions raised by

the Letter Report, but to date has been denied access from all parties, notwithstanding its role as salvor-in-possession of the wreck and wreck site.

Accordingly, RMST respectfully requests that the Court order EYOS and Caladan to immediately produce for inspection by RMST the unedited, time-coded video, captured by all cameras, documenting all of the five submersible dives that EYOS made to the *Titanic* in July and August 2019, and to require EYOS and Caladan to certify, under penalty of perjury, that it has provided all such video to RMST and the Court. Once this video has been produced, RMST will review it and file with the Court the appropriate segments showing EYOS' collision with the *Titanic* so there will be no uncertainty about the condition of the wreck site after the EYOS expedition. RMST will perform this duty in accordance with its ongoing obligations as salvor-in-possession to preserve the archaeological integrity of the wreck site.

WHEREFORE, RMST submits this Periodic Report for the Court's information and consideration.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

/s/ *Brian Wainger*

Brian A. Wainger, VSB #38476
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*
      /s/ *Brian A. Wainger*

/s/ *David G. Barger*
David G. Barger, VSB #21652

5

>GREENBERG TRAURIG, LLP
>1750 Tysons Boulevard, Suite 1000
>McLean, Virginia 22102
>Tel: (703) 749-1300
>Fax: (703) 749-1301
>Email: Bargerd@gtlaw.com
>
>/s/ David G. Concannon
>David Concannon, *Pro Hac Vice* (Doc. 583)
>Concannon & Charles
>100 Sun Valley Road, No. 329
>Sun Valley, Idaho 83353
>Tel: (610) 293-8084
>Fax: (877) 736-2434
>Email: david@davidconcannon.com
>
>*Counsel for R.M.S. Titanic, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2020, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

>/s/ *David G. Barger*
>David G. Barger, VSB #21652 GREENBERG TRAURIG, LLP
>1750 Tysons Boulevard, Suite 1000
>McLean, Virginia 22102
>Tel: (703) 749-1300
>Fax: (703) 749-1301
>Email: Bargerd@gtlaw.com
>
>*Counsel for R.M.S. Titanic, Inc.*
>
>   /s/ *Brian Wainger*
>
>Brian A. Wainger, VSB #38476

6

        Attorney for Plaintiff RMS Titanic, Inc.
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*