

Please reply to:

Silver Birches
Bashurst Hill
Horsham
West Sussex
RH13 0NY
United Kingdom

Tel: 0044 1403 790311

11th February 2020

Ms Jackie Rolleri
Deputy Chief, Oceans and Coasts Section
Office of the General Counsel
National Oceanic and Atmospheric Administration
1305 East-West Highway
SSMC4, Suite 6111
Silver Spring, MD 20910

Dear Ms Rolleri

### JNAPC Observations on the Proposed Recovery of the Marconi Wireless Telegraph from the wreck of RMS Titanic

**Introduction**

The Joint Nautical Archaeology Policy Committee (JNPAC) wishes to submit comments on the Periodic Report of RMS Titanic Inc., submitted to the United States District Court for the Eastern District of Virginia, Norfolk Division ('the Court') on 20th January 2020 and the proposal outlined therein to recover the Marconi Wireless Telegraph from the wreck of RMS Titanic.

The JNAPC was formed in 1988 from individuals and representatives of institutions who wished to raise awareness of the United Kingdom's underwater cultural heritage and to persuade Government that underwater sites of historic importance should receive no less protection than those on land.

The JNAPC has a membership (see Appendix 1) that includes most of the governmental, museum, academic and voluntary organisations, and advisers concerned with submerged heritage assets, including the Nautical Archaeology Society, MAST, university professionals, various governing bodies for recreational diving, providers of professional archaeological services, the Council for British Archaeology, and the Chartered Institute for Archaeologists. The views expressed by the JNAPC do not necessarily represent the views of individual members and observers. In preparing these comments the JNAPC is grateful for the assistance of its members Prof. David Parham, Bournemouth University and Prof. Michael Williams, Plymouth University.

In its Periodic Report RMS Titanic Inc. (the 'Company') refers to its Artifact Recovery Plans and its intention to submit a formal motion for permission to recover certain artifacts, the primary recovery object for 2020 being the Marconi Wireless Telegraph and associated system components. The Company recites the criteria it utilises to determine evaluate the merits of recovery and conservation. These criteria are:

**Joint Nautical Archaeology Policy Committee**
Postal address: c/o Council for British Archaeology, Beatrice de Cardi House, 66 Bootham, York, YO30 7BZ, UK
email: jnapc@archaeologyuk.org   tel:01904 671 417   website: www.jnapc.org.uk

Artifacts

- which are not represented in the current collection
- which are imperative to the main or ancillary historical stories of Titanic and her passengers
- which are significant in the telling or further explanation of unanswered questions regarding the ship and her passengers
- which provide the ability to demonstrate cultural heritage or additional insight into the ship and its related technical aspects
- which are at risk of being lost forever due to the accelerated degradation of the ship or other factors - in which conservation is possible immediately upon recovery to ensure the ability to display them for the public for decades to come

In addition the Company has filed in Exhibit 1 to the above Periodic Report a memorandum by Parks Stephenson setting out a justification for the proposed recovery of the Marconi Wireless Telegraph and associated system components.

**Management Principles**
The JNAPC acknowledges the criteria developed by the Company for determining whether or not artifacts should be recovered. However the wreck of RMS Titanic is subject to the Agreement concerning the Shipwrecked Vessel RMS Titanic between the United States of America and the United Kingdom, see https://www.gc.noaa.gov/documents/titanic-agreement.pdf and https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/853164/TS_8.2019_Agreement_concerning_Shipwrecked_Vessel_RMS_Titanic.pdf

An Annex to this agreement sets out, as Rules, mutually agreed management principles for the site. Additionally, NOAA has itself developed management principles for the wreck '*Guidelines for Research, Exploration and Salvage of RMS Titanic*' (https://www.gc.noaa.gov/documents/recoveryguidelines.pdf). Both these NOAA management principles and the Rules of the international agreement are based on widely accepted international and domestic professional archaeological standards (https://www.federalregister.gov/documents/2019/08/05/2019-16635/notice-of-partial-delegation-of-authority-to-the-under-secretary-of-commerce-for-oceans-and).

The JNAPC is somewhat surprised and very concerned that the Company, in its Periodic Report to the Court, makes no reference to these NOAA Guidelines, nor the Rules in the Annex to the International Agreement, but instead elected to rely entirely in its submission upon its own Company developed criteria. It is respectfully submitted by the JNAPC that any management decision made in respect of the wreck of RMS Titanic should take full cognisance of these Guidelines and Rules in order that the United States of America can fulfil the international responsibilities it has voluntarily undertaken. Accordingly the JNAPC respectfully submits that any proposal for intrusive activity upon the wreck and for recoveries from the interior of the wreck should be evaluated against these domestic Guidelines and internationally agreed Rules.

**Evaluating the Proposed Recovery**

The primary management principle, as stated by both the principles in the Guidelines and the Rules of the international agreement, is that of '*preservation in situ*' and that recovery or excavation should only occur where there is an educational, scientific or cultural justification (Principle 1) and where the benefits of recovery or excavation outweigh the potential risk of damage by the proposed activity (Rule 19 (a) & (b)). Consequently it is stated that non-intrusive surveys and sampling should be preferred to activities involving recovery or excavation (Principle 3 and Rule 3).

**Joint Nautical Archaeology Policy Committee**
Postal address: c/o Council for British Archaeology, Beatrice de Cardi House, 66 Bootham, York, YO30 7BZ, UK
email: jnapc@archaeologyuk.org   tel:01904 671 417   website: www.jnapc.org.uk

The JNAPC therefore respectfully submits that the burden of establishing that the benefits of recovering the Marconi system from the wreck of RMS Titanic justify departure from the management principle of preservation in situ, and that the benefits also outweigh the risks, rests upon the Company. The JNAPC assumes that Exhibit 1 (Memorandum by Parks Stephenson) represents the initial attempt by the Company to discharge this burden.

### Educational and Scientific Justification

In the Memorandum it is stated that the surviving system told the *"complete story of the operators' final actions"* and that prior to Cameron's survey in 2001 little was known of that radio system. In fact one of the Titanic's two radio operators, Harold Sydney Bride, survived the sinking and testified at both the subsequent United States' and the United Kingdom's inquiries into the sinking. Moreover, there exists in the public domain considerable information about the Titanic's radio system and that of her sister ship the Olympic (see for example http://dougkerr.net/Pumpkin/articles/Titanic_wireless.pdf; http://dougkerr.net/Pumpkin/articles/Titanic_wireless_key.pdf and http://www.halifax-arc.org/pdf/TitanicRadio1.pdf ). Additionally a replica of the Titanic's radio room exists at the Fort Perch Rock Radio Museum on the Merseyside in the United Kingdom (https://www.fortperchrock.org/Fort_Perch_Rock/Exhibits.html). While Exhibit 1 provides a long discourse on the history of the radio's role prior to the sinking it does not elucidate what recovery of the radio system would add to existing scientific knowledge. The Company has not identified what additional knowledge would be obtained post recovery that is not available now and thus no scientific justification has been made out for the proposed recovery.

Nor does the Company identify exactly what additional educational value would be conferred upon the public by the recovery and eventual display of the radio system, beyond being able to see the objects themselves as opposed to viewing a photograph or replica of them, which the public can already do. The Company makes no mention of where the radio system would be displayed or the long term museum arrangements needed to ensure the desired public education and outreach. Consequently, the JNAPC would respectfully submit that the statement in Exhibit 1 that the recovered artifacts would be " *valuable for public education and outreach* " is an exaggerated statement, not correct and provides no educational justification for the proposed recovery.

### Cultural Justification

Exhibit 1 states that " ... *historically-significant artefacts are at risk of being lost forever.*". Generically this argument could be advanced in respect of any artifact in the wreck of the Titanic. All artifacts in the Titanic are of historical significance to a greater or lesser extent. That alone does not justify departure from the primary principle of preservation in situ. The JNAPC respectfully submits that to justify departure by recovery an artifact must be of such significance that an exception can be made to the primary management principle of preservation in situ. Otherwise there is a considerable danger that the exception becomes the norm. Given the apparent absence of any educational, scientific or cultural exceptionalism demonstrated in Exhibit 1 in respect of the proposed recovery the JNAPC respectfully submits that the Company has not discharged the burden of justifying a departure from the primary management principle of preservation in situ.

### The Company's Criteria for Artifact Collection

When judged against the Company's own management criteria the JNAPC further respectfully submits that the Company has not demonstrated that the proposed recovery is validated. The JNAPC does not believe that the recovery of the radio system would be *"significant in the telling or further explanation of unanswered questions regarding the ship or her passengers"*, given the

**Joint Nautical Archaeology Policy Committee**
Postal address: c/o Council for British Archaeology, Beatrice de Cardi House, 66 Bootham, York, YO30 7BZ, UK
email: jnapc@archaeologyuk.org    tel:01904 671 417    website: www.jnapc.org.uk

information that is already known and publicly available. Furthermore the Company has not articulated these unanswered questions. Nor would the recovery of the radio system *"provide the ability to demonstrate cultural heritage or additional insight into the ship and its related technical aspects"* over and above what insight is already available to the public. Consequently the JNAPC respectfully submits that even when evaluated against the Company's own criteria it has failed to provide an adequate justification for the proposed recovery.

The JNAPC would be pleased to answer any questions that you may have and assist further in these matters if requested.

Yours sincerely

*Robert Yorke.*

R A Yorke
Chairman

cc Mr Tim Alsop, Department for Transport UK

**Joint Nautical Archaeology Policy Committee**
Postal address: c/o Council for British Archaeology, Beatrice de Cardi House, 66 Bootham, York, YO30 7BZ, UK
email: jnapc@archaeologyuk.org   tel:01904 671 417   website: www.jnapc.org.uk

| Joint Nautical Archaeology Policy Committee | Appendix 1 |
|---|---|
| **Chairman** | Robert Yorke |
| **Secretariat** - Nautical Archaeology Society | Mark Beattie-Edwards |
| | |
| **Member Organisations** | |
| Association of Local Government Archaeological Officers | Rebecca Loader |
| British Sub Aqua Club | Jane Maddocks |
| Chartered Institute for Archaeologists (including CIfA Marine Archaeology Special Interest Group ) | Rob Lennox/Michael Walsh |
| Council for British Archaeology | Mike Heyworth |
| Maritime Archaeology Sea Trust (MAST) | Jessica Berry/Anthony Dymock |
| Maritime Archaeology Trust | Garry Momber |
| Mary Rose Trust | Christopher Dobbs |
| National Maritime Museum | Andrew Choong Han Lin |
| National Museum of the Royal Navy | Dominic Tweddle/Tim Ash |
| National Museums & Galleries of Wales | Mark Redknap |
| Nautical Archaeology Society | Mark Beattie-Edwards |
| Professional Association of Diving Instructors | Suzanne Smith |
| RESCUE | TBA |
| Shipwreck Museum, Hastings | Peter Marsden |
| Society for Nautical Research | Richard Bateman |
| Sub Aqua Association | Stuart Bryan |
| The Honourable Company of Master Mariners | TBA |
| United Kingdom Maritime Collections Strategy & ICOMOS | Christopher Dobbs |
| Wessex Archaeology | Euan McNeill/Toby Gane |
| | |
| **Individual members** | **Affiliation** |
| Antony Firth | Fjordr Limited |
| David Parham | Bournemouth University |
| Michael Williams | Plymouth University |
| Josh Martin | Exeter University |
| John Gribble | ACO Associates |
| | |
| **Observers** | |
| Cadw | Polly Groom |
| The Crown Estate | Ed Salter |
| Department for Communities (Northern Ireland), Historic Environment Division | Rory McNeary |
| Department for Digital, Culture, Media and Sport | Gill Graham/James Venus |
| Department for Transport | John Davies |
| Foreign and Commonwealth Office | Lowri Griffiths/Colin Glen |
| Historic England | Paul Jeffery/Mark Dunkley |
| Historic Environment Scotland | Philip Robertson |
| Maritime and Coastguard Agency, Receiver of Wreck | Camilla Moore |
| Ministry of Defence | Louise Baverstock |
| National Trust | Ian Barnes |
| Royal Commission on the Ancient and Historical Monuments of Wales | Deanna Groom |

**Joint Nautical Archaeology Policy Committee**
Postal address: c/o Council for British Archaeology, Beatrice de Cardi House, 66 Bootham, York, YO30 7BZ, UK
email: jnapc@archaeologyuk.org   tel:01904 671 417   website: www.jnapc.org.uk