IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
   Plaintiff,

v.                 Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, et al
   Defendant.

**PERIODIC REPORT OF R.M.S. TITANIC, INC.
ON THE PROGRESS OF RESEARCH AND
<u>RECOVERY OPERATIONS</u>**

NOW COMES Plaintiff, R.M.S. Titanic, Inc. ("RMST" or the "Company"), by counsel, and files this "Periodic Report of R.M.S. Titanic, Inc. on the Progress of Research and Recovery Operations" ("Periodic Report").

**I. Expedition 2020**

RMST has now reviewed the Status Report filed this day by NOAA alleging that John Broadwater, Ph.D. notified NOAA that he terminated his association with RMST before RMST's recent filing (ECF. 605) and will no longer consider participating in the 2020 Expedition.

As Dr. Broadwater testified at the court hearing on February 20, 2020, he has been working with RMST to develop a salvage plan that is minimally invasive, and RMST offered him a prominent role in the Company's expedition to the *Titanic* in 2020. (*See* ECF 599 at 92-93.) Specifically, Dr. Broadwater testified:

> Q. And isn't it true that R.M.S.T. has done more than just seek out your opinion for testimony today, but you have been offered a significant role in this expedition going forward?
>
> A. Yes. And I appreciate that. I am very interested. If a plan can be worked out that I feel meets the standards of the UNESCO convention, and, by the way, I think

> even though it doesn't have force of law in the U.S., as you well know, but a lot of the societies and even some governmental agencies and several states have adopted the UNESCO convention informally as the best practices, the best example of best practices we have for maritime archaeology.
>
> So I, too, subscribe to those, and I'd certainly like to work towards a plan that would qualify. If I may, I just -- one of the things I think I may have said but I want to clarify, and that is that neither the UNESCO convention nor the Titanic Memorial Act and the rules that followed seem to in any way prohibit recovery from sites. Both documents are very similar and both say that the first option for any archaeological site being considered is to leave it in place, in situ preservation, but it quickly then adds that there may be circumstances where that is not the best option. And so it provides for various levels, and that's another thing we to try to do, is we look at do you do complete excavation, do you do partial excavation, do you target specific iconic artifacts that you think will tell the story to the public? So I think it looks like there is a very good chance a plan could be developed that would meet those qualifications, and in that case I would be interested in participating.

(*Id*.)

Indeed, Dr. Broadwater's work with RMST continued after the hearing, but with significant personal implications for him. With assistance provided by RMST's historian, conservation and curation staff, technical consultants and management, Dr. Broadwater served as the principal drafter of the RMST Project Research Design that RMST filed with the court on March 27, 2020 (ECF 601-1). Mr. James Sinclair, a marine archaeologist with nearly four decades of extensive field experience, including as the only marine archaeologist to participate in and supervise the recovery and conservation of artifacts from the R.M.S. *Titanic* on RMST's 2000 salvage expedition to the wreck site, also provided input to RMST. RMST crafted the Project Research Design to satisfy the recommended requirements for research designs set forth in both the UNESCO Convention on the Preservation of Underwater Cultural Heritage ("UNESCO Convention") and in Section II of the Guidelines for Research, Recovery and Salvage of RMS *Titanic* published by the National Oceanic and Atmospheric Administration ("NOAA Guidelines") in 2001, to which Dr. Broadwater referred in his above-referenced testimony, even though neither

2

carries the force of law in the United States. The Project Research Design speaks for itself, and RMST believes it complies with both the letter and spirit of the UNESCO Convention and the NOAA Guidelines.

Through conversations that Dr. Broadwater has had with RMST's *pro hac vice* counsel, David Concannon, RMST has been generally aware that Dr. Broadwater providing assistance to the Company has generated some controversy in the archaeological and preservation communities, and also within NOAA, where Dr. Broadwater worked for many years and he still maintains close personal and professional ties. Indeed, NOAA personnel have been prohibited from speaking to Dr. Broadwater by NOAA's counsel, even going so far as refusing to provide Dr. Broadwater with NOAA's reports on its participation in expeditions to the *Titanic* in 2004 and 2010. *See* E-mail from Frank Cantelas to John Broadwater dated April 30, 2020, attached hereto as Exhibit A. However, with apparent implications to these proceedings, this prohibition did not extend to Ole Varmer, NOAA's former counsel, who is now retired from the agency. *See* E-mail from Jackie Rolleri to David Concannon dated March 20, 2020, attached hereto as Exhibit B.

Unfortunately, RMST was not aware of the extent to which Dr. Broadwater's involvement with the company was causing personal and professional strife for him, nor the extent to which he was communicating with Mr. Varmer. RMST did not know until today from conversations between David Concannon and Dr. Broadwater that pressure has been mounting within the archaeological and preservation communities for Dr. Broadwater to end his association with RMST and the Company's 2020 expedition; or that Dr. Broadwater has been informed conversations were taking place within the Society for Historical Archaeology and other professional organizations to censure him or ask for his resignation because of his support for RMST's proposed salvage plans; or that Dr. Broadwater feared his professional reputation had

been placed in jeopardy for assisting RMST. Unbeknownst to RMST, the pressure campaign had taken its toll on Dr. Broadwater.

RMST did not have this information when, on Saturday, May 2, 2020, Dr. Broadwater emailed Mr. Concannon and Bretton Hunchak, RMST's President, to inform them that he would no longer support RMST's proposal to recover the Marconi apparatus from inside the *Titanic*'s hull. Dr. Broadwater claims in that email to have based his decision on what he believes to be applicable law. Even before the February 20, 2020 hearing, Dr. Broadwater expressed his concern to RMST about how the archaeological community had reacted to his participation, and the extent to which they sought to influence his involvement. Indeed, this issue was the subject of many discussions between Messrs. Hunchak, Concannon and Dr. Broadwater both before and after the hearing. But in his May 2, 2020 email to Messrs. Concannon and Hunchak, Dr. Broadwater omitted any of these details, instead stating: "I was shocked to find that I'd failed to recognize that the new NOAA legislation and guidelines actually prohibits recovery of artifacts from inside the hull[,]" and "The NOAA guidelines (especially the supplementary information and responses to questions) [published in 2001] leave no doubt that recovery or disturbance inside the hull is not allowed."[1]

Several subsequent communications between Mr. Concannon and Dr. Broadwater ensued, not unlike many previous discussions between them, in which Mr. Concannon informed Dr. Broadwater that the question of whether salvage was lawfully permitted at the *Titanic* was solely a question of law to be determined by this Court, not a policy decision to be enforced in a shadow campaign against a witness, by the archaeology community, NOAA, or its current or former employees. These communications concluded on Sunday with Dr. Broadwater stating: "I also applaud RMST for its efforts to tell the Titanic story in an exciting and professional manner to

---

[1] Should the Court decide to view these confidential emails *in camera,* RMST will provide them.

millions of people. I would welcome the opportunity to work with RMST again in the future on any projects in which there are no legal obstacles."

Though Dr. Broadwater requested on May 3, 2020 that RMST disclose to the Court that he is no longer associated with the company or the project, as last week progressed, Mr. Concannon and Dr. Broadwater had several subsequent conversations which led Mr. Concannon to believe that the situation with Dr. Broadwater was fluid, and would be resolved only after the Court's ruling on RMST's pending motion.  Also, at the beginning of last week, Dr. Broadwater denied that he was under outside pressure to resign, even though Mr. Concannon openly questioned both the timing of Dr. Broadwater's withdrawal and the source of and basis for the legal reasons given. Dr. Broadwater has since acknowledged that he has been under tremendous professional pressure to end his relationship with RMST, and that he has spoken to Ole Varmer to "reconfirm" his understanding of the law; but this occurred today, after Dr. Broadwater was asked why he had informed NOAA of his withdrawal on May 8, 2020.

In its Status Report, the Government implies that RMST somehow withheld Dr. Broadwater's withdrawal from the Court by not mentioning it in in RMST's reply to NOAA's "Report and Recommendation" filed on April 27, 2020.  This is not true.  First, Dr. Broadwater's participation in RMST's 2020 expedition was never mentioned nor criticized by NOAA in its "Report and Recommendation," so there was nothing on this topic to reply to.  Second, as Dr. Broadwater testified on February 20, 2020, although he was willing to assist RMST with drafting its Project Research Design and he was considering RMST's offer to participate in the 2020 expedition, he had not committed to doing so.  He was quite clear to the Court that he had not yet committed to the project.  (*See* ECF 599 at 92-93.)  Third, the situation with Dr. Broadwater was in flux last week, with Mr. Concannon being unaware of the extreme pressure Dr. Broadwater was

under and believing the "legal obstacles" Dr. Broadwater stated as his basis for withdrawing would be resolved by a legal ruling from this Court, as Dr. Broadwater had indicated. For these reasons, Virginia undersigned counsel were unaware of this issue with Dr. Broadwater until today, the issue was premature to bring to the Court's attention, and beside the point with respect to that particular filing. Mssrs. Hunchak and Concannon had agreed that, not wanting to present a problem without a solution, Mr. Concannon would reconfirm Mr. Sinclair's commitment to participate in the 2020 expedition as the project archaeologist and then inform Mr. Wainger and Mr. Barger of the situation. Unfortunately, Mr. Concannon did the first but not the second when he was informed of an emergency at his house in Pennsylvania, where damage to the roof caused extensive water damage and the collapse of ceilings in the rooms below, and he had to rush to address the problem. RMST regrets any inconvenience the delay in informing the Court may have caused.

The Company also has deep concerns about outside pressure that caused Dr. Broadwater to withdraw from the project; and RMST must now consider, what steps, if any, it must take to protect from outside influence its partnerships, evidence and witnesses. However RMST still seeks to continue its pursuit of Exhibition 2020. In that regard, RMST has always had "depth in its bench," and James Sinclair, the only marine archaeologist with extensive experience recovering artifacts from the *Titanic*, was already engaged by the Company months ago and he has re-confirmed his commitment to participate in the 2020 expedition. A copy of his *curriculum vitae* is attached as Exhibit C.

WHEREFORE, RMST submits this Periodic Report for the Court's information and consideration.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

/s/ *Brian Wainger*
Brian A. Wainger, Esq., VSB #38476
Attorney for Plaintiff RMS Titanic, Inc.
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

David G. Barger, Esq., VSB #21652
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
Email: Bargerd@gtlaw.com

David Concannon, *Pro Hac Vice* (Doc. 583)
Concannon & Charles
100 Sun Valley Road, No. 329
Sun Valley, Idaho 83353
Tel: (610) 293-8084
Fax: (877) 736-2434
Email: david@davidconcannon.com

*Counsel for R.M.S. Titanic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2020, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

      /s/ Brian Wainger

Brian A. Wainger, Esq., VSB #38476
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*