UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


R.M.S. TITANIC, INC.,
Successor-in-interest to Titanic
Ventures, limited partnership,

     Plaintiff,

  v.                            CIVIL ACTION NO. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, ITS
ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A
POINT LOCATED AT 41 43' 32" NORTH
LATITUDE AND 49 45' 49" WEST
LONGITUDE, BELIEVED TO BE THE R.M.S.
TITANIC, <u>IN REM</u>,

     Defendant.

<u>OPINION</u>

    This matter is before the court on R.M.S. Titanic, Inc.'s ("RMST") "Motion to Amend or Modify the Court's July 28, 2000 Order" ("Motion") and Memorandum in Support ("RMST Br."), filed on March 27, 2020. ECF Nos. 600, 601. The Motion requests that the court amend or modify its Order of July 28, 2000, ECF No. 164, "to permit limited cutting into sections of the ceiling over the [R.M.S. Titanic's] Marconi Suite and detachment of artifacts," including the recovery of the "Marconi wireless apparatus and associated artifacts." Motion at 1. RMST also filed the Research Design that would govern its proposed Expedition 2020, during which it would conduct said activities. ECF No. 601-1. The United States,

on behalf of its National Oceanic and Atmospheric Administration ("NOAA"), as amicus, filed a "Report and Recommendation in Re: RMST's RMS Titanic Expedition 2020 Research Design" ("NOAA Br."), which expresses NOAA's conditional approval of some aspects of the Research Design and its opposition to recovery of the Marconi device. ECF No. 602. RMST filed a Response in Opposition to NOAA's filing on May 6, 2020. ECF No. 605. NOAA filed a Supplement in reply to RMST's Response in Opposition on May 14, 2020. ECF No. 610.

### I. Court's Order of July 28, 2000

On July 28, 2000, this court entered an Order stating that RMST is "forbidden to in any way cut into the wreck or detach any part of the wreck." ECF No. 164. The court has reiterated this prohibition in subsequent years. See, e.g., R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel, 742 F. Supp. 2d 784, 790 n.6 (E.D. Va. 2010). Therefore, RMST must first obtain a modification or amendment to the Order of July 28, 2000, before moving forward with its plans to attempt a recovery of the Marconi artifacts. For the reasons stated below, the court will grant such an amendment, if certain conditions are met.[1]

---

[1] See infra at 11, 14.

**A.**

A court may revise an interlocutory order under Federal Rule of Civil Procedure 54(b), which provides the court with "broad discretion" to revise its orders at any point prior to entry of final judgment.[2] Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003); FED. R. CIV. P. 54(b). The Fourth Circuit has described three situations that can justify a modification of an order under Rule 54(b): "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. At the same time, the Fourth Circuit has cautioned against using Rule 54(b) as a means to simply rethink earlier rulings "where litigants have once battled for the court's decision." U.S. Tobacco Coop. Inc. v. Big South Wholesale of Virginia, LLC, 899 F.3d 236, 257 (4th Cir. 2018).

**B.**

RMST primarily relies on the "new evidence" factor, and points to testimony, third-party reports, and other evidence showing increased deterioration around the Marconi Suite. RMST Br. at 12; see Am. Canoe Ass'n, 326 F.3d at 515. At a Status Conference held

---

[2] At the outset of briefing on this issue, the United States and RMST agreed on the applicable legal standard for modifying the Order. NOAA Br. at 2-3. But see infra note 5.

3

on February 20, 2020, the court heard testimony by P.H. Nargeolet, a marine engineer who has made several dives to the R.M.S. Titanic wreck site over the past thirty years, including most recently in 2019, as well as dives to other shipwreck sites over the course of his lengthy career. Mr. Nargeolet has previously credibly testified before the court in this case, and he currently serves as RMST's Director of Underwater Research and Co-Expedition Leader for Expedition 2020. Mr. Nargeolet testified at the Status Conference that the ship is experiencing significant deterioration in the areas above and around the Marconi rooms. See Tr. of Feb. 20, 2020, Hearing at 76-77, ECF No. 599 ("Hearing Tr."). In addition, Mr. Nargeolet discussed the favorable location of the Marconi room, immediately beneath an open skylight and away from the hull and superstructure, which will allow the remotely operated vehicle to access the room with relatively minimal risk to the wreck's structural integrity. Id. at 83. The court finds Mr. Nargeolet to be a credible, reliable, and proven witness, based on his testimony at the Status Conference and the court's experience with him over the course of this admiralty proceeding.

David Gallo, Ph.D., who is the other Co-Leader of Expedition 2020, also testified at the Status Conference. Id. at 103-15. Dr. Gallo's testimony explained the techniques that RMST plans to use to ensure that the operation will be done in a minimally invasive manner. Id. at 110. Dr. Gallo also discussed the educational

benefits and opportunities that would result from recovery of the Marconi artifacts. Id. at 106, 109. The court finds Dr. Gallo, as well, to be a credible witness, based on his testimony at the Status Conference and his extensive marine archaeological experience, including his leadership of the 2010 expedition to the R.M.S. Titanic that produced the first comprehensive map of the wreck site. ECF No. 601-1 at 28.

Finally, during the Status Conference, the court reviewed photographs showing the increasing breakdown in the deck above the Marconi Suite over time.[3] Hearing Tr. at 65-68; RMST Hearing Exhibits 1-4. Moreover, in its brief, RMST cites to numerous helpful scientific and expert reports and analyses since the July 28, 2000, Order that further discuss the deterioration and likely future collapse of the wreck. See RMST Br. at 12—21.

## C.

NOAA opposes the conclusion that the ongoing deterioration amounts to "new evidence" sufficient to modify the July 28, 2000, Order under Rule 54(b). NOAA Br. at 19-20. NOAA argues that there is nothing new about the fact that the wreck is deteriorating, and that deterioration was a known problem at the time of the Order.

---

[3] These photographs are particularly poignant and reflect the breakdown of the ship's interior at the location of the Marconi Suite, as they were taken over a period of time—1986, 2004, 2010— and then related to the current state of the breakdown at that location. See Hearing Tr. at 65-67 (testimony of P.H. Nargeolet).

Id.; see In re Antrobus, 563 F.3d 1092, 1098 (10th Cir. 2009)
("Additionally, a party may not rely on evidence that was available
to it at the time of the prior ruling."). NOAA also submitted
affidavits from experts in maritime archaeology and recovery that
question whether the deterioration is as dire as RMST says, as
there have been no peer-reviewed scientific studies on the topic,
and deterioration often slows down after an initial phase of rapid
but limited deterioration. See Conlin Aff. ¶¶ 6, 8, ECF No. 602-2.

**D.**

Although the presence of deterioration itself is not
unexpected or new, the fact that deterioration has progressed to
this stage and has been concentrated in the area above the Marconi
Suite is a new development that was not known to the court when it
entered the July 28, 2000, Order. The court agrees with RMST that
the pace and location of deterioration, combined with the
historical and cultural importance of the Marconi artifacts,
justify a modification to the July 28, 2000, Order for RMST to
attempt the limited recovery operations described in its Research
Design for Expedition 2020. Moreover, the proposed expedition
would not violate the underlying purposes or objectives of the
July 28, 2000, Order, which was intended not to bar all recovery
operations but rather "to prevent wrongful destruction of the wreck
site." ECF No. 338 at 3. RMST has complied in good faith with the
text and purposes of the Order of July 28, 2000, over the past two

decades, and, in granting the Motion, the court leaves that Order in place in all respects, except with regard to the proposed expedition under consideration here.[4] In so ruling, <u>the court does not rethink its Order of July 28, 2000, but rather modifies it for a unique opportunity to recover an artifact that will contribute to the legacy left by the indelible loss of the Titanic, those who survived, and those who gave their lives in the sinking.</u>[5]

## II. Subsequent Legal Developments

Since the court's July 28, 2000, Order, there have been numerous legal developments regarding recovery of artifacts from the R.M.S. Titanic wreck site, two of which are relevant here.

First, the United States, United Kingdom, France, and Canada drafted the "Agreement Concerning the Shipwrecked Vessel RMS

---

[4] The court notes that it has modified the July 28, 2000, Order on at least two prior occasions for artifact recovery. <u>See</u> ECF Nos. 175, 338. Such amendment is necessary for RMST to pursue salvage operations and maintain its salvor-in-possession status. <u>See</u> <u>R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel</u>, 924 F. Supp. 714, 719 (E.D. Va. 1996) (reviewing case law).

[5] Midway through the briefing on this matter, RMST and NOAA took a position that the court should analyze the proposed modification of the July 28, 2000, Order under the standard for modifying or dissolving an injunction. <u>See</u> ECF No. 605 at 6-7; ECF No. 610 at 1-3. Courts in this district have identified several factors that influence the decision to modify or dissolve an injunction, many of which overlap with the standard for modifying an order under Rule 54(b). <u>See</u> <u>Crutchfield v. U.S. Army Corps of Engineers</u>, 175 F. Supp. 2d 835, 844 (E.D. Va. 2001) (Payne, J.). The court finds that the factual record detailed above supports modification under the <u>Crutchfield</u> factors, as well as under Rule 54(b) and <u>American Canoe</u>.

Titanic" ("International Agreement") and accompanying "Rules Concerning Activities Aimed at the RMS Titanic and/or Its Artifacts" ("Annex Rules").[6] The International Agreement sets various standards that the signatories should use in deciding whether to approve expeditions to the Titanic. These include regulating "entry into the hull sections of the RMS Titanic so that they, other artifacts and any human remains are not disturbed," requiring a demonstration of "ability to fund the project through completion," prohibiting recovery of artifacts except "when justified by educational, scientific, or cultural interests, including the need to protect the integrity of the RMS Titanic and/or its artifacts from significant threat," and requiring "a determination that the benefits of the project outweigh the potential risk of damage." International Agreement Art. 4; Annex Rules §§ 9, 11, 19.

Second, on May 5, 2017, Congress passed the Department of Commerce Appropriations Act, which included a section stating that "no person shall conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck . . . of the RMS Titanic," unless the Secretary of Commerce approved of the activity as provided in the International

---

[6] The United States signed the International Agreement in 2004, and Secretary of State Michael Pompeo deposited an Instrument of Acceptance on behalf of the United States on November 18, 2019. ECF No. 581-1.

Agreement. Department of Commerce Appropriations Act, 2017, Pub. L. 115-31, 131 Stat. 135, 192 (May 5, 2017) ("2017 Appropriations Act"). The Secretary of Commerce subsequently delegated that authority to the NOAA Administrator. See ECF No. 564-2.

NOAA argues that RMST's Research Design violates several of the standards set forth in the International Agreement and Annex Rules. Specifically, NOAA argues that RMST failed to demonstrate that it has funding to complete all stages of the project, including conservation and curation; that RMST did not include a realistic assessment of potential damage to the RMS Titanic from its proposed operations; and that the expedition is not justified by educational, scientific, or cultural interests. NOAA Br. at 9, 16-17. In a footnote, NOAA also informs the court that RMST has not complied with the provision in Section 113 of the 2017 Appropriations Act that requires any expedition that would "physically alter or disturb" the wreck site to first obtain authorization from the Secretary of Commerce.[7] Id. at 16 n.16. In

---

[7] In its brief, RMST refers to NOAA's invocation of Section 113 as an attempt to "usurp" the court's jurisdiction over the case. RMST's language in this section of its brief is hostile and inflammatory. RMST accuses NOAA of pursuing "its own political agenda," and at one point says: "Asking the JNPAC [i.e., a British archaeology organization that NOAA referenced in its filings] for its opinion on RMST's plans to salvage the Titanic is like asking the Taliban if it is acceptable to serve wine at a Catholic wedding." RMST Br. at 26. This hyperbole is unacceptable, and is meaningless to the court. The point here is that the court, not NOAA, determines the salvage rights of the salvor-in-possession under United States admiralty law and the record of this case. See

response, RMST challenges the constitutionality of this provision of the 2017 Appropriations Act and of the International Agreement. ECF No. 605 at 13.

At this juncture, the only matter before the court is whether to amend the July 28, 2000, Order to lift that Order's prohibitions on cutting into or detaching from the wreck for purposes of the proposed Expedition 2020. The court does not address any need for RMST to obtain additional authorizations required by law, such as under Section 113 of the Department of Commerce Appropriations Act of 2017, because such authorizations are beyond the scope of the Rule 54(b) modification. Likewise, the court does not address the constitutionality of NOAA's claimed authority to wield approval power and control over salvage operations in the Article III courts of the United States exercising their admiralty jurisdiction, because there is no ripe constitutional issue before the court.[8] At this point, NOAA appears as an amicus, not as a formal party at issue in this case, and it has not sought to enforce its approval power or otherwise block the expedition. The court cannot

---

R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943, 960-67 (4th Cir. 1999), cert. denied, 528 U.S. 825 (1999) (reviewing this court's admiralty jurisdiction and applicable salvage law).

[8] See, e.g., Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990); Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264, 294-95 (1981) ("[T]he constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.").

adjudicate NOAA's rights in this respect or the constitutionality of Section 113 until they are at issue in this case.

The court notes, however, that in granting RMST's request for a modification of the June 28, 2000, Order, it finds that the Research Design achieves most of the requirements set forth in the International Agreement, Annex Rules, and other applicable guidelines. The Research Design and the court's decades of experience with RMST over the course of this admiralty proceeding demonstrate that RMST has the ability and intention to preserve the artifacts it recovers, that RMST has considered the potential for collateral damage to the wreck, and that there is more than sufficient educational, scientific, or cultural justification for recovering the Marconi artifacts.[9] While NOAA is correct that certain aspects of the Research Design would benefit from more information, the court believes that NOAA is asking for an unrealistic amount of detail in an already lengthy expedition plan.

That being said, the court does agree with NOAA that the Research Design lacks sufficient detail with regards to funding. To that end, the court will condition its granting of RMST's Motion

---

[9] The Marconi artifacts are particularly and singularly important as the reflection of the final rescue calls from the "invulnerable" R.M.S. Titanic and the state-of-the-art telegraph system at the time. These artifacts aid in relating the past, and the memories thereof, with and to the present generation, including current state-of-the-art transmission technologies. See RMST Br. at 3-4.

on the filing, on or before June 18, 2020, of a funding plan that details the anticipated costs and sources of funding for the operation. RMST may file such a plan under seal, if it wishes to preserve the confidentiality of any proprietary information, but must share the plan with NOAA, which shall maintain it under seal pending further order of the court.

### III. Findings of the Court

Having reviewed the Motion and briefs, as well as the filings and proceedings relating to the February 20, 2020, Status Conference, and based on the experience of having presided over this case for more than twenty years, the court makes the following findings:

- Since RMST was appointed salvor-in-possession of the Titanic wreck in 1994, it has executed or supervised numerous successful dives to the wreck site and has reliably demonstrated its ability to comply with the court's orders and applicable laws and regulations in doing so.

- Moreover, RMST has demonstrated its ability to properly fund and carry out the recovery, curation, and conservation of artifacts from the Titanic wreck site. The court credits RMST's representation that it will do so in relation to any planned expedition in 2020.

- Expeditions to the wreck site require several months of preparation and must occur during a narrow window of the year due to weather and oceanic conditions.

- The Marconi device has significant historical, educational, scientific, and cultural value as the device used to make distress calls while the Titanic was sinking. Evidence newly before the court has highlighted the worsened deterioration of the ceiling above the Marconi Suite. This deterioration has greatly accelerated since the court's Order of July 28, 2000, such that the Marconi device and associated artifacts face significant threat of permanent loss.

- RMST's Research Design proposes a plan for recovery of the Marconi device and associated artifacts that seeks to minimize disturbance to the rest of the Titanic wreck, including to the hull of the ship and the remains of those 1,500 souls lost in the sinking of the ship.

- The expedition team outlined in the Research Design consists of experienced and reliable individuals, many of whom have proven themselves to be effective and reliable expedition team members throughout this admiralty proceeding, particularly co-leaders Mr. Nargeolet and Dr. Gallo.[10]

---

[10] RMST and NOAA seem unnecessarily embroiled in the issue and status of Dr. John Broadwater's employment with RMST. See ECF No. 607 (informing the court that Dr. Broadwater departed from RMST before RMST's May 6, 2020, filing); ECF No. 609 (discussing

13

## IV. Conclusion

As stated herein, and based on the full record of this salvage case, the court finds that there are more than sufficient grounds to modify the court's Order of July 28, 2000, on the criteria set forth in Rule 54(b) and by the Fourth Circuit. Accordingly, RMST's Motion is **GRANTED**, insofar as it seeks to amend the court's Order of July 28, 2000, to permit RMST minimally to cut into the wreck, only as necessary to access the Marconi Suite, and to detach from the wreck the Marconi wireless device and associated artifacts, during an expedition to take place in August and September 2020, as outlined in the Research Design, ECF No. 601-1. The court's granting of the Motion is conditioned on RMST filing with the court and NOAA by June 18, 2020, under seal if desired, a funding plan detailing the costs and funding sources of the recovery operation and the conservation of any recovered artifacts.

Should the expedition occur, RMST is **DIRECTED** to file with the court, and to provide to NOAA, any video and/or audio recordings made during the dive(s) and a report detailing the activities and outcome of the expedition after it has been

---

an alleged "pressure campaign" against Dr. Broadwater and explaining that RMST did not raise the issue because it was still in discussions with Dr. Broadwater); ECF No. 610 (responding to RMST's allegations of a pressure campaign). The relevance of this personnel issue is tangential, at best, to the court's decision here, given the expertise of the expedition team as individuals and as a whole.

completed. Such report shall also list all artifacts recovered and include RMST's plans for curation, conservation, and documentation of these artifacts. Any artifacts recovered during the expedition shall be considered as part of the Subject TITANIC Artifact Collection ("STAC") and shall be subject to the continuing jurisdiction of this court. See R.M.S. Titanic, Inc., 742 F. Supp. 2d at 819.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for RMST and for the United States as amicus.

**IT IS SO ORDERED.**

_____
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 18, 2020