IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**R.M.S. TITANIC, INC.**, successor-in-interest to
Titanic Ventures, limited partnership,
    Plaintiff,

v.                                                                     Civil Action No. 2:93cv902

**THE WRECKED AND ABANDONED VESSEL,**     VERIFIED COMPLAINT
**ITS ENGINES, TACKLE, APPAREL,**
**APPURTENANCES, CARGO, ETC., LOCATED**
**WITHIN ONE (1) NAUTICAL MILE OF A POINT**
**LOCATED AT 41 43' 32'' NORTH LATITUDE**
**AND 49 56' 49" WEST LONGITUDE,**
**BELIEVED TO BE THE R.M.S. TITANIC**
<u>in rem</u>,
    Defendant,

**and**

**UNITED STATES OF AMERICA,**
    Intervenor.

## <u>INTERVENOR'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

### INTRODUCTION

1. This intervenor complaint brought by the United States of America requests declaratory and injunctive relief, 28 U.S.C. §§ 2201 and 2202, to resolve important legal questions concerning the applicability of federal law to this admiralty proceeding.

2. The purpose of this complaint is to protect the United States' interests in the proper application and implementation of Section 113 of the Consolidated Appropriations Act, 2017, Pub. L. No. 115-31 (May 5, 2017) ("Sec. 113"); to clarify the scope of Plaintiff R.M.S. Titanic, Inc.'s salvage activities and obligations under federal law; to ensure Plaintiff R.M.S. Titanic, Inc.'s compliance with Sec. 113; and, to ensure the United States' ability to comply with its

1

obligations under federal law and the Agreement Concerning the Shipwrecked Vessel *R.M.S. Titanic* and its Annex Rules (together, the "International Agreement").

3. To that end, this complaint seeks a declaration that R.M.S. Titanic, Inc. must comply with applicable law when conducting activities at *Titanic*; is specifically required to comply with Sec. 113; and, must obtain an authorization from the Secretary of Commerce before conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS Titanic."

4. This complaint also seeks to enjoin R.M.S. Titanic, Inc. from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS Titanic" unless and until it has obtained an authorization for such activity from the Secretary of Commerce pursuant to Sec. 113.

**PARTIES**

5. Intervenor United States of America has an independent interest in the protection and preservation of the wreck, wreck site and artifacts of the *R.M.S. Titanic* ("*Titanic*"), and also asserts a right to seek such protection and preservation on *Titanic*'s behalf, by virtue of the RMS Titanic Maritime Memorial Act of 1986 (the "1986 Memorial Act"); the "Guidelines for Research, Exploration and Salvage of *RMS Titanic*" ("NOAA Guidelines"); Sec. 113; the International Agreement; and the orders of this Court. The United States' responsibilities under the foregoing are carried out by, among others, the Secretary of Commerce, the Secretary of State, and the Administrator of the National Oceanic and Atmospheric Administration ("NOAA").

6. R.M.S. Titanic, Inc. ("RMST") is a wholly owned subsidiary of Premier Acquisition Holdings LLC ("PAHL"), a Delaware Limited Liability Corporation. Since June 1994, RMST

has served as the exclusive salvor-in-possession of the *Titanic* wreck and wreck site pursuant to an order of this Court.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court as the United States is asserting causes of action and because the case raises important questions of the application of federal law to admiralty proceedings. 28 U.S.C. §§ 1331, 1333, 1345.

8. Venue is proper in this District and Division because a substantial part of the events giving rise to the claims occurred herein in connection with this admiralty proceeding. 28 U.S.C. § 1391(b)(1) and (b)(3); Local Rule 3(C).

## FACTUAL ALLEGATIONS

9. On April 15, 1912, the *Titanic* struck an iceberg roughly 400 miles off the coast of Newfoundland in international waters. Within three hours, *Titanic* broke in two and sank to the ocean floor, scattering thousands of artifacts in a debris field between the two pieces of the hull, and taking 1,500 passengers and crew to their death, many of whom were still on the ship when it sank. *Titanic's* location remained a mystery until 1985 when it was discovered by a joint United States-French expedition.

10. RMST's predecessor began salvage operations at *Titanic* in 1987 and, by 2004, had recovered approximately 5,500 artifacts.

11. In 1993, RMST brought some of those artifacts to the Eastern District of Virginia and commenced this admiralty proceeding. Dkt. No. 1. The district court assumed constructive *in rem* jurisdiction over the wreck and wreck site, and, on June 7, 1994, awarded RMST exclusive salvor-in-possession status. *See* Dkt No. 37; *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 951-53 (4th Cir. 1999). RMST continues to be the exclusive salvor-in-possession.

12. On July 28, 2000, the district court issued an order stating, "RMS *TITANIC*, Inc. and all of its employees, agents, or subcontractors are forbidden to in any way cut into the wreck or detach any part of the wreck." Dkt No. 164 at 3 (the "2000 Order"). The district issued the 2000 Order because of information it received that RMST planned to penetrate the hull to access the cargo hold in search of first-class luggage, mail, and an alleged diamond stash. *Id.* at 6-7.

13. In 1986, Congress enacted the 1986 Memorial Act. 16 U.S.C. §§ 450rr *et seq*. The express purpose of the 1986 Memorial Act was to "encourage international efforts to designate the R.M.S. Titanic as an international maritime memorial to those who lost their lives aboard her in 1912." *Id*. at § 450rr-5.

14. The 1986 Memorial Act directed the United States, through the NOAA Administrator, to consult with interested nations to develop international guidelines for research on, exploration of, and if appropriate, salvage of the *Titanic*. *Id*. at § 450rr-5. In directing negotiations of guidelines and an agreement, Congress clearly understood the importance of coordinated and concerted action to achieve its objectives, and recognized that United States action alone would not be sufficient to protect *Titanic*.

15. The 1986 Memorial Act also called on the Secretary of State, in consultation with the NOAA Administrator, to enter into negotiations with interested nations to develop an international agreement: (1) to designate the *Titanic* as an international maritime memorial; and (2) to provide for research on, exploration of, and, if appropriate, salvage of *Titanic* consistent with the international guidelines. *Id*. at 450rr-6.

16. The 1986 Memorial Act made clear that it was the sense of Congress that, "pending such international agreement" or guidelines, "no person should conduct any such research or

4

exploratory activities which would physically alter, disturb, or salvage the R.M.S. Titanic in any research or exploratory activities which are conducted." 16 U.S.C. § 450rr(b)(4).

17. In 2001, after a period of public notice and comment consistent with the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the NOAA Administrator issued its NOAA Guidelines concerning research, exploration and salvage of *Titanic* as directed by the 1986 Memorial Act. 66 Fed. Reg. 18905 (Apr. 12, 2001). The NOAA Guidelines were developed in consultation with the United Kingdom, France, and Canada, and were negotiated in conjunction with the development of the Annex Rules to the International Agreement. *Id.*; *see also* Int'l Agr., Art. 1 (c).

18. Like the 1986 Memorial Act, the final NOAA Guidelines provided that until an international agreement or guidelines were adopted and implemented, "no person should conduct any . . . research or exploration activity which would physically alter, disturb, or salvage the *RMS Titanic*." 66 Fed. Reg. at 18912.

19. In developing its Guidelines, NOAA concluded that "activities that would accelerate the ship's deterioration[, such as] cutting holes in the ship's hull to access artifacts in the interior of the wreckage" should be discouraged, and that, consistent with the 1986 Memorial Act, it was "appropriate to treat *RMS Titanic* as a gravesite." 66 Fed. Reg. 18907-18908.

20. The NOAA Guidelines set forth NOAA's position that salvage activities within the wreck should be prohibited: "[E]ntry into the hull sections of *RMS Titanic* should be avoided so that they, other artifacts and any human remains are not disturbed." 66 Fed. Reg. at 18912.

21. Negotiation of the International Agreement began with informal discussions in 1995 and concluded in 2000. The United Kingdom signed and accepted the Agreement in 2003. The

United States signed the International Agreement in 2004, noting that United States' acceptance was subject to adoption of implementing legislation.[1]

22. The International Agreement calls for *Titanic* to be recognized as "a memorial to those men, women and children who perished and whose remains should be given appropriate respect, in accordance with this agreement;" and "an underwater historical wreck of exceptional international importance having a unique symbolic value."  Int'l Agr., Art. 2(a) and 2(b).

23. The International Agreement requires Parties to the Agreement to regulate activity at *Titanic* by its nationals and vessels "through a system of project authorizations."  Int'l Agr., Art. 4.

24. The International Agreement provides that, for proposed activity *within* the wreck, that Parties to the International Agreement "shall . . . regulate . . . entry into the hull sections of RMS *Titanic* so that they [the hull sections], other artifacts and any human remains are not disturbed." Int'l Agr., Art. 4, ¶ 1(a).

25. On the other hand, for activities aimed at artifacts "found outside the hull of the wreck," the International Agreement permits such activities; provided that "all such activities are, to the maximum extent practicable, conducted in accordance with the [Annex] Rules."  Int'l Agr., Art. 4, ¶ 1(b).

26. The International Agreement's Annex included Rules to govern the review and issuance of project authorizations by Parties, entitled "Rules Concerning Activities Aimed at the RMS Titanic and/or Its Artifacts" ("Annex Rules").  Int'l Agr., Art. 1(c) and Annex Rules.

27. The International Agreement imposed on each Party the obligation to consult with other Parties whenever it received a request for an authorization to conduct activity at *Titanic*, with the

---

[1] The International Agreement can be found at https://www.state.gov/multilateral-19-1118.

objective being to harmonize the regulation and enforcement of activity at *Titanic* between Parties to the Agreement. Int'l Agr., Art. 5, ¶¶ 1-5. The International Agreement also mandates consultation among the Parties if a dispute arises concerning the interpretation or application of the Agreement. Int'l Agr., Art. 8.

28. The International Agreement imposed on each Party the obligation to provide other Parties notice of authorization requests, provide the other Parties 90 days within which to submit comments, and for the first Party to consider those comments in making a decision on the request. Int'l Agr., Art. 5, ¶ 2.

29. Because of the United States' responsibility (through the Secretary of Commerce and NOAA) to represent the public interest in *Titanic* under, among other things, the 1986 Memorial Act, the NOAA Guidelines, and the International Agreement, the district court entrusted the United States to oversee RMST's activities vis-à-vis *Titanic* in the admiralty proceeding. *See R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 531 F. Supp. 2d 691, 693 (E.D. Va. 2007); Covenants & Conditions, Part II.K.[2]

30. On May 5, 2017, Sec. 113 was enacted into law.

31. The enactment of Sec. 113 provided the necessary implementing legislation for the International Agreement, enabling the United States to deposit the United States' instrument of acceptance with the United Kingdom, thereby triggering the International Agreement's entry into force on November 18, 2019. *See* Dkt. Nos. 581 and 581-1.

---

[2] The Covenants and Conditions can be found as an attachment to *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F.Supp.2d 784 (E.D.Va. 2010). The Covenants and Conditions were agreed to by RMST and approved by this Court as a condition to the Court awarding RMST an *in specie* award of certain of the *Titanic* artifacts, and acknowledge that NOAA is "the federal agency that represents the public interest in TITANIC [artifact] Collections" and that "NOAA's authority to represent the public interest in this matter is consistent with NOAA's authority under the RMS TITANIC Maritime Memorial Act of 1986 and NOAA's 2001 implementing Guidelines." Accordingly, the Covenants and Conditions tasked NOAA with providing oversight of RMST's compliance with the Covenants and Conditions.

32. The law of salvage applicable to these proceedings is the general maritime law, as modified by governing statutes and treaties.

33. Sec. 113 modified the general maritime law as it pertains to *Titanic* to require any person subject to United States law wanting to "conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the *RMS Titanic*" to seek an authorization from the Secretary of Commerce before conducting such activity. In the absence of an authorization, "physically alter[ing] or disturb[ing] the wreck or wreck site of the RMS *Titanic*" is prohibited by Sec. 113.

34. The Secretary of Commerce is charged with carrying out Sec. 113 "consistent with" the International Agreement. To that end, Sec. 113 provides that requests for authorizations to conduct activity at *Titanic* must be evaluated "per the provisions" of the International Agreement.

35. On August 29, 2018, the Secretary of Commerce delegated his authority to review and issue authorizations under Sec. 113 to the NOAA Administrator. Dkt Nos. 491 and 491-1. The Secretary of Commerce retained his authority to address any conflicts arising between Parties to the International Agreement under Article 5, pertaining to the proper disposition of an authorization request. *Id.*

36. On August 5, 2019, NOAA issued a Federal Register notice outlining how NOAA intended to implement Sec. 113 and coordinate its actions with the district court. 84 Fed. Reg. 38,012 (Aug. 5, 2019); Dkt. Nos. 564 and 564-2. The notice acknowledges the district court's constructive <u>in rem</u> jurisdiction and RMST's exclusive salvage rights to *Titanic*. *Id.*

37. On March 27, 2020, RMST filed a Research Design with the district court detailing the objectives of an expedition to *Titanic* to occur during the summer of 2020. Dkt. No. 601-1; *see also id.* 580, 585, 590.

38. Based on information and belief, the 2020 Expedition is expected to occur by the end of August 2020.

39. RMST's Research Design's identifies three primary objectives: (1) video surveillance mapping of the interior and exterior of the wreck; (2) artifact recovery from the debris field; and (3) cutting into the wreck and recovery of components of the Marconi Wireless Telegraph and related artifacts from within the hull of the ship. *Id.*

40. The Research Design's objectives for the proposed 2020 Expedition involve "research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*."

41. RMST has been notified on multiple occasions of the existence of Sec. 113, and its incorporated provisions of the International Agreement; that Sec. 113 applies to the type of activities contemplated by the Research Design for the 2020 Expedition; and that Sec. 113 prohibits RMST's proposed plan to cut into *Titanic* or conduct salvage within the wreck. *E.g.* Dkt Nos. 430, 549-5, 602 (at 16 and n. 16); Exhibit A.

42. RMST refuses to comply with the provisions of Sec. 113 or recognize the limitations Sec. 113 and the incorporated provisions of the International Agreement impose on RMST's proposed activities at *Titanic*. *See* Dkt. No. 605 at 13 ("RMST will take its orders from this Court, not from NOAA.")

43. On May 18, 2020, the district court in this admiralty proceeding conditionally granted RMST's motion to amend the 2000 Order, and allowed RMST to cut into *Titanic* and detach

artifacts from inside the wreck. Dkt. No. 612. Because the district court viewed the question before it as a narrow one, it did not reach any questions concerning the applicability or consequences of Sec. 113 to the scope of RMST's salvage activities at *Titanic*.

44. On May 28, 2020, NOAA advised RMST that, notwithstanding the district court's May 18, 2020, Opinion, RMST was still required to obtain an authorization consistent with Sec. 113 before engaging in the activities set forth in the Research Design or authorized by the district court. *See* Exhibit A.

45. Based on RMST's previously-stated refusal to comply with Sec. 113, it is not anticipated that RMST will comply with Sec. 113 absent a Court order to do so.

46. Should RMST proceed with the activities described in its Research Design without obtaining a prior authorization from the Secretary of Commerce, it will do so in violation of federal law.

## LEGAL CLAIMS

47. In the case of an "actual controversy," a district court may "declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201. "Further necessary or proper relief" may be sought based on any such declaration and the rights of the United States. 28 U.S.C. § 2202; *see United States v. United Mine Workers*, 330 U.S. 258 (1947).

48. "A declaratory judgment is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" or "will terminate and afford relief from the "uncertainty, insecurity, and controversy giving rise to the proceeding." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (internal quotation marks omitted).

49. An injunction is an equitable remedy that is available upon a showing of irreparable injury; inadequate remedies at law; that the balance of hardships favors an injunction; and that the public interest would not be disserved by an injunction. *SAS Institute, Inc. v. World Programming Limited*, 874 F.3d 370, 385 (4th Cir. 2017).

## COUNT ONE
### (Declaratory Relief)

50. Paragraphs 1 through 49 above are incorporated herein by reference.

51. Sec. 113 is a lawful Act of Congress signed into law by the President in 2017.

52. Sec. 113 prohibits any person subject to the jurisdiction of the United States from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the *RMS Titanic*," unless authorized by the Secretary of Commerce per the provisions of the International Agreement.

53. RMST is subject to the jurisdiction of the United States, and much of the activities it seeks to conduct during the proposed 2020 Expedition, as described in its Research Design, are prohibited by Sec. 113 unless authorized by the Secretary of Commerce.

54. Activities conducted by RMST pursuant to its exclusive salvage rights to *Titanic* are subject to regulation by NOAA to the extent that they fall within the scope of Section 113, and those rights are conditioned on and modified by Sec. 113.

55. As the exclusive salvor-in-possession, RMST disputes that Sec. 113 applies to any of its activities at *Titanic*, and has not requested an authorization from the Secretary of Commerce to conduct any of the activities described in the Research Design during the 2020 Expedition.

56. RMST's refusal to comply with Sec. 113 prevents the United States from fulfilling its legal obligations under federal law, including the responsibility of the Secretary of Commerce to

review and evaluate the merits of RMST's proposed activity in accordance with the provisions of the International Agreement.

57. RMST's refusal to comply with Sec. 113 prevents the United States from fulfilling its legal obligations under the International Agreement, including its obligation to provide the United Kingdom 90 days to review and submit comments on an authorization request.

58. RMST's refusal to comply with Sec. 113 deprives *Titanic* of the protections to its integrity conferred by Sec. 113 and the incorporated International Agreement, including protection from having artifacts and any human remains within the hull sections disturbed.

59. A declaration clarifying the applicability of Sec. 113's requirements to RMST in this admiralty proceeding will aid in resolving the dispute between RMST and the United States, afford relief to the controversy between RMST and the United States, and provide the protection to *Titanic* that Congress has mandated.

## COUNT TWO
### (Injunctive Relief)

60. Paragraphs 1 through 59 above are incorporated herein by reference.

61. RMST's refusal to comply with Sec. 113 irreparably harms the United States because such refusal prevents the United States from fulfilling its legal obligations under federal law and the International Agreement, thus impairing the United States' ability to implement the International Agreement.

62. *Titanic*, its wreck site and its artifacts are irreparably harmed by RMST's actions because they will be deprived of the Sec. 113 review and authorization process Congress deemed necessary before any actions that would physically alter or disturb the wreck or wreck site can occur; and, because some of the proposed activities in the Research Design – cutting into and

entering the wreck to conduct salvage – are prohibited by Sec. 113 and the incorporated International Agreement.

63. No post-recovery remedy adequately redresses the harm to the United States and *Titanic* because the conduct prohibited by Sec. 113 and the incorporated International Agreement will have already occurred and will result in irreversible injury.

64. The balance of hardships and public interest favors compelling RMST's compliance with duly enacted laws of Congress, and compelling such compliance does not impermissibly interfere with or infringe on RMST's salvage rights.

65. The balance of hardships and public interest favors compelling RMST's compliance with duly enacted laws of Congress, because the public is harmed if the United States cannot implement and enforce duly enacted federal law, or comply with its obligations under international agreements.

66. Accordingly, RMST should be enjoined from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the *RMS Titanic*" unless and until it has obtained an authorization for such activity from the Secretary of Commerce.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America requests that this Court should:

- DECLARE that:
    - Sec. 113 modified the general maritime law as it pertains to *Titanic*;
    - RMST is required to comply with Sec. 113, and to obtain an authorization from the Secretary of Commerce before conducting "any research, exploration, salvage,

   or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*;"

- ENJOIN RMST from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" during any expedition to the *Titanic*, including the 2020 Expedition, absent the issuance of an authorization from the Secretary of Commerce pursuant to Sec. 113.

- AWARD such other relief as may be proper.

Dated this 8th day of June, 2020.

                                              Respectfully submitted,

                                              UNITED STATES OF AMERICA,
                                              Intervenor

                                  By:  G. Zachary Terwilliger
                                          United States Attorney

                                  By:  /s/ *Kent P. Porter*
                                          Kent P. Porter, VSB No. 22853
                                          Assistant United States Attorney
                                          Attorney for Intervenor United States
                                          United States Attorney's Office
                                          8000 World Trade Center
                                          101 West Main Street
                                          Norfolk, VA 23510
                                          757-441-6331
                                          Fax:  757-441-6689
                                          kent.porter@usdoj.gov

**VERIFICATION**

       The undersigned counsel of record for the Intevenor United States of America states under penalty of perjury pursuant to 28 U.S.C. § 1726 that the following is true and correct: (a) the foregoing complaint is true to the best of my knowledge, information, and belief; (b) that the sources of my information are the publically filed records in this case as well as publically available records, such as the lengthy legal history of this case reflected in published and unpublished opinions of the district and/or appellate court; (c) the undersigned counsel is authorized to attend to the interests of the United States pursuant to 28 U.S.C. § 517 and submit this complaint on behalf of the United States.

                                                    By:   /s/ *Kent P. Porter*_____
                                                         Kent P. Porter, VSB No. 22853
                                                         Assistant United States Attorney
                                                          Attorney for Intervenor United States
                                                         United States Attorney's Office
                                                         8000 World Trade Center
                                                         101 West Main Street
                                                         Norfolk, VA 23510
                                                         757-441-6331
                                                         Fax:  757-441-6689
                                                         kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2020, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger** <br> Kaleo Legal <br> 4456 Corporation Lane <br> Suite 135 <br> Virginia Beach, VA 23462 <br> Email: bwainger@kaleolegal.com | **David G. Barger, VSB #21652** <br> GREENBERG TRAURIG, LLP <br> 1750 Tysons Boulevard, Suite 1200 <br> McLean, Virginia 22102 <br> Tel: (703) 749-1300 <br> Fax: (703) 749-1301 <br> E-Mail: Bargerd@gtlaw.com |
| **David G. Concannon** <br> Concannon & Charles <br> 100 Sun Valley Road, No. 329 <br> Sun Valley, Idaho 83353 <br> Email: david@davidconcannon.com | |

 /s/ *Kent P. Porter*__
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax:  757-441-6689
kent.porter@usdoj.gov