IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC., successor-in-interest to
Titanic Ventures, limited partnership,
        Plaintiff,

v.                                                                                    Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43' 32'' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
in rem,
        Defendant,

and

UNITED STATES OF AMERICA,
        Intervenor.

**INTERVENOR'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER THE MAY 18, 2020, OPINION AND REQUEST TO STAY THAT OPINION**

### I.    INTRODUCTION

On July 28, 2000, the district court issued an order that barred RMST from "cut[ting] into the [*Titanic*] wreck or detach[ing] any part of the wreck." Dkt. No. 164 at 3 ("July 2000 Order"). On March 27, 2020, RMST moved to amend the July 2000 Order to allow it to cut into the wreck and detach and salvage artifacts from within the wreck during its proposed 2020 Expedition. ECF No. 600.

During briefing on RMST's motion (and even prior to that briefing), the United States, appearing as *amicus* at the invitation of the Court, had alerted RMST and the Court: (i) that Section 113 of Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, 131 Stat. 192 (May

5, 2017) ("Sec. 113"), requires any person or entity subject to the jurisdiction of the United States seeking to "conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" to obtain an authorization for such activities from the Secretary of Commerce;[1] and (ii) that, because Sec. 113 applies to the activities for which RMST sought Court authorization, RMST is also required to obtain an authorization from the Secretary of Commerce to conduct those activities.  *See e.g.* ECF Nos. 430, 564, 602.  RMST did not at the time of its motion – and still has not – engaged in the Sec. 113 process or obtained authorization from the Secretary of Commerce for the activities it wants to conduct during the 2020 Expedition.

On May 18, 2020, this Court granted RMST's motion to amend the 2000 Order and authorized RMST to "minimally . . . cut into the [*Titanic*] wreck only as necessary to access the Marconi Suite, and to detach from [inside] the wreck the Marconi wireless device and associated artifacts."[2]  ECF No. 612 at 14 ("May 18, 2020, Opinion").  The Court did not address whether Sec. 113 requires RMST to seek an authorization from the Secretary of Commerce for the activities encompassed by the May 18, 2020, Opinion because the United States had not yet intervened, and the Court thus found that question to be beyond the scope of RMST's motion to amend.  ECF No. 612 at 10-11.  The United States has now moved to intervene and requests that this Court address Sec. 113.

Sec. 113 modifies the general maritime law as it pertains to *Titanic*, and places a statutory requirement on any person subject to the United States' jurisdiction to obtain an authorization from the Secretary of Commerce before conducting any activity that would "physically alter or

---

[1] On August 29, 2018, the Secretary of Commerce delegated his authority to review and issue authorizations under Sec. 113 to the NOAA Administrator.  Dkt Nos. 491 and 491-1.
[2] The order was conditioned on RMST filing with the Court and NOAA by June 18, 2020, a funding plan explaining its funding for the expedition and for the conservation and care for any recovered artifacts.  *Id.*

disturb the wreck or wreck site of the RMS *Titanic*." *See generally* ECF No. 615. Because Sec. 113 applies to the salvage activities described in RMST's motion to amend, and because RMST is obligated to follow federal law, the United States respectfully contends that the Court erred in its May 18, 2020, Opinion, when it authorized RMST to "cut into the [*Titanic*] wreck . . . and to detach [artifacts] from [inside] the wreck." The Court should modify its opinion to deny permission to RMST to conduct such activity unless it obtains a Sec. 113 authorization. At a minimum, the Court should modify its opinion to condition that permission on RMST's complying with Sec. 113's statutory requirements and obtaining a Sec. 113 authorization.

Significant consequences attend if compliance with Sec. 113 is not required. For example, the Secretary of Commerce is impaired in his ability to carry out Sec. 113, as directed by Congress. The United States also is impaired in its ability to comply with its obligations under the Agreement Concerning the Shipwrecked Vessel R.M.S. *Titanic* and its Annex Rules (collectively, the "International Agreement") to coordinate and harmonize its actions to protect *Titanic* and its artifacts with other Parties to the International Agreement.

Accordingly, pursuant to Federal Rule of Civil Procedure 59(e), or in the alternative, Federal Rule of Civil Procedure 54(b), the United States respectfully requests this Court modify the May 18, 2020, Opinion, and deny permission for RMST to "cut into the [*Titanic*] wreck . . . and to detach [artifacts] from [inside] the wreck," or alternatively, condition that permission on RMST complying with Sec. 113 and obtaining an authorization from the Secretary of Commerce for such activities.

In addition, pursuant to the Court's authority to control matters on its docket and to prevent irreparable harms, the United States further requests that the Court stay its May 18, 2020,

Opinion until the Court has ruled on this motion and, in any case, for a reasonable period to permit the Solicitor General to determine whether to request relief in the court of appeals.

## II. BACKGROUND

The United States incorporates by reference the "BACKGROUND" section of its "Memorandum In Support Of Emergency Motion To Intervene And, If Granted, For Extension Of Time To File An Appeal," as if fully set forth herein. *See* ECF No. 615 at 4-12. That motion remains pending. Since that filing, RMST still has not sought or obtained Sec. 113 authorization, despite a specific request from NOAA that it do so. *See* ECF No. 614-2.

## III. APPLICABLE LAW FOR MOTIONS TO RECONSIDER

Reconsideration of the May 18, 2020, Opinion is available under two rules. First, Federal Rule of Civil Procedure 59(e) authorizes a district court to alter or amend any judgment, provided that the motion is filed within 28 days of the judgment.[3] Second, Federal Rule of Civil Procedure 54(b) authorizes a district court to reconsider any interlocutory order that does not resolve all the claims in a case at any time before entry of a final judgment. The United States relies on Rule 59(e), as a party's filing of such a motion tolls the period for noticing an appeal, *see* Fed. R. App. P. 4(a)(4)(A)(iv), and asserts relief under Rule 54(b) as an alternative ground. Under either rule, the standards are virtually the same. *See U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018).

Rule 59(e) relief is available:

(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

---

[3] Because the May 18, 2020, Opinion modified a prior injunction and allowed RMST's to conduct salvage it had not previously been authorized to do, it is an appealable interlocutory order pursuant to 28 U.S.C. § 1292(a)(1) and (3), and thus falls within the definition of "judgment" for purposes of Rule 59(e). *See* Fed.R.Civ.P. 54(a).

*Pacific Insurance v. American National Fire Insurance*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999); *United States v. Westinghouse Savannah River Company*, 305 F.3d 284, 290 (4th Cir. 2002).  Whether to grant Rule 59(e) relief is in the court's discretion. *The Hanover Insurance Company v. Corrpro Companies*, 221 F.R.D. 458, 460 (E.D. Va. 2004). The purpose behind Rule 59(e) is to permit a court "to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Insurance*, 148 F.3d at 403 (internal quotation omitted); *Hanover Insurance*, 221 F.R.D. at 460 (Rule 59(e) "does not entitle [a party] to a second bite at the apple").

Rule 54(b) permits a district court to reconsider any interlocutory decision at any time before entry of a final judgment.  Like Rule 59(e), an earlier order may be modified under Rule 54(b) where: (1) substantially different evidence is developed; (2) controlling authority changes; or (3) the prior decision was clearly erroneous and would work a manifest injustice. *U.S. Tobacco Coop. Inc.*, 899 F.3d at 257; *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988); *see also TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014) (Rule 54(b) does not permit a party to ask a court to "rethink" a prior decision); *see also* ECF No. 612 at 3 (citing standards for Rule 54(b) relief).  Decisions on Rule 54(b) relief also are committed to the sound discretion of the Court. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–515 (4th Cir. 2003).  The purpose of Rule 54(b) relief, and "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.*; *Matter of Vulcan Constr. Materials, LLC*, No. 2:18CV668, 2019 WL 3208648, at *3 (E.D. Va. July 16, 2019) ("Rather, the goal is simply to 'reach the correct judgment under law.'") (citing *Am. Canoe Ass'n*).

IV.     **DISCUSSION**

The United States respectfully contends that the Court erred in the May 18, 2020, Opinion when it authorized RMST to "cut into the [*Titanic*] wreck . . . and to detach [artifacts] from [inside] the wreck." In the absence of RMST's compliance with its legal obligations under Sec. 113, the opinion's authorization of that conduct is inconsistent with federal law. Accordingly, pursuant to Rule 59(e) or, in the alternative, Rule 54(b), and to avoid a manifest injustice, the Court should modify its opinion to deny permission to RMST to conduct such activity unless RMST obtains a Sec. 113 authorization, or, at a minimum, condition such permission on RMST obtaining that authorization.

    1.     Sec. 113 prohibits "research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" unless authorized by the Secretary of Commerce per the provisions of the International Agreement. Sec. 113 is the means – i.e., the "system of project authorizations" – through which the United States fulfills its obligations under the International Agreement to regulate activity at *Titanic*, enforce the Agreement's protections for *Titanic* against those subject to the United States' jurisdiction, and ensure that *Titanic* remains a protected memorial to those who perished when it sank. See Int'l Agr., Art. 2 and 4.

The May 18, 2020, Opinion modified the prior injunction in the Court's July 2000 Order that prohibited "cut[ting] into the [*Titanic*] wreck or detach[ing] any part of the wreck." and allowed RMST to "cut into the wreck . . . and to detach from the wreck" the Marconi wireless and related equipment. ECF No. 612 at 14; *see* Dkt. No. 164 at 3 (forbidding RMST "to in any way cut into the wreck or detach any part of the wreck"). Sec. 113 regulates that same conduct because the conduct involves salvage or other activities that would physically alter or disturb the

wreck, and other artifacts.  *Prior to* the May 18, 2020, Opinion, the ability of RMST to conduct activity that would physically alter or disturb the wreck or wreck site was subject to the July 2000 Order.  *After* May 5, 2017, the ability of RMST to conduct activity that would physically alter or disturb the wreck or wreck site was subject to the July 2000 Order *and* the statutory requirements set forth in Sec. 113.  Thus, the Court should not have allowed RMST to "cut into the wreck . . . and to detach from the wreck" without a Sec. 113 authorization, or without conditioning its approval on getting a Sec. 113 authorization.

        2.       Sec. 113 modifies the general maritime law as it pertains to *Titanic*.  Because the Secretary of Commerce's approval is required before RMST can legally conduct activities that would "physically alter or disturb the wreck or wreck site of the RMS *Titanic*," the Court should not have granted RMST relief in the May 18, 2020, Opinion or, at a minimum, should have conditioned relief on RMST complying with Sec. 113 and obtaining an authorization from the Secretary of Commerce.

An exclusive salvor can assert three core rights: compensation and reward for their successful efforts; a lien in the property already salved to ensure compensation; and, to protect "the inchoate right of salvors in yet-to-be salved property," the right to exclude others from engaging in salvage operations.  *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 963 (4th Cir. 1999); *Columbus-Am. Discovery Grp., Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 34 F. Supp. 3d 595, 600 (E.D. Va. 2014).  Here, this Court never granted RMST an inchoate right to cut into the wreck, *see* Dkt. No. 164 at 3, and in enacting Sec. 113, Congress further spoke directly to a general maritime law question and authorized NOAA to place conditions on any "inchoate right . . . in yet-to-be salved property" at *Titanic* that RMST could assert.

It is well established that Congress can modify the general maritime law. *See Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2278 (2019) ("[M]aritime law is no longer solely the province of the Federal Judiciary.") (internal quotation marks and citations omitted); *Detroit Trust Co. v. Barlum S. S. Co.,* 293 U.S. 21, 42 (1934) ("The framers of the Constitution did not contemplate that the maritime law should remain unalterable."). "An admiralty court is not free to go beyond [the] limits" placed by Congress. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 24 (1990). And although it has not enacted a "comprehensive maritime code, . . . when [Congress] does speak directly to a [maritime] question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). As the Supreme Court has explained,

> [an admiralty court] must . . . keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.

*Miles*, 498 U.S. at 27.

Sec. 113 reflects Congress' intent to require any person seeking to engage in activity that would "physically alter or disturb the wreck or wreck site of the RMS *Titanic*" to obtain an authorization from the Secretary of Commerce for such activities. These requirements are *in addition to*, and not in place of, any requirements imposed by the admiralty court for such activity. Because RMST had not met the conditions required by Sec. 113, the Court was not free to authorize that conduct that went beyond these limits when it issued its May 18, 2020, Opinion.

Even if Sec. 113 did not alter the general maritime law as it pertains to *Titanic* directly, the Supreme Court has instructed that admiralty courts "should look primarily to [Congress's] legislative enactments for policy guidance." *Miles*, 498 U.S. at 27; *see Sea Hunt, Inc. v. Unidentified Shipwrecked Vessel or Vessels*, 221 F.3d 634, 641 (4th Cir. 2000) (observing that

"the common law of admiralty must be developed consonant with federal statutes"). That is how this Court approached other legal authorities – including the 1986 Memorial Act, NOAA Guidelines, the International Agreement, and its Annex Rules – both in the May 18, 2020, Opinion and in the past. *See* ECF No. 612 at 8-9, 11, 13 (determining that RMST had satisfied requirements under these authorities when deciding to amend the July 2000 Order and permit salvage in the wreck); 742 F. Supp. 2d 784, 792-93 (E.D. Va. 2010) (noting that the Covenants and Conditions agreed to by RMST as a condition of the *in specie* award "would need to protect the *Titanic* and its artifacts as an international treasure for posterity, as expressed by" these authorities); *see also Lauritzen v. Larsen*, 345 U.S. 571, 581-82 (1953) (a court should consider applicable international authorities). Sec. 113, too, has plain relevance to the conduct at issue and should have been considered by this Court for policy guidance.

By not (at a minimum) conditioning its decision to allow RMST to "cut into the wreck . . . and to detach [artifacts] from the wreck" on RMST's first obtaining an authorization for such activity from the Secretary of Commerce, the May 18, 2020, Opinion effectively renders Sec. 113 "meaningless." *Mobil Oil Corp.*, 436 U.S. at 625. Providing such permission to RMST, without a condition reflecting a limit imposed by Congress, is an error of law. *See Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (A "clear error" means that a court must have a "definite and firm conviction that a mistake [was] committed."); *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir.2007) ("By definition, a district court abuses its discretion when it makes an error of law.")

3. A manifest injustice results from not denying RMST's motion or, at a minimum, not conditioning granting the motion on RMST obtaining an authorization from the Secretary of Commerce for its activities at *Titanic*. As discussed above, and in its memorandum in support of

the motion to intervene, ECF No. 615, Congress and this Court have long recognized the United States' interest on behalf of the public in *Titanic* and its artifacts, arising from, among other sources, the 1986 Memorial Act, the NOAA Guidelines, and the International Agreement.  *See R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 531 F.Supp.2d 691, 693 (E.D. Va. 2007) (recognizing the United States' "interests" in "preserv[ing] and protect[ing] the *R.M.S. Titanic* and its artifacts as an international treasure for posterity"); *see also* Covenants and Conditions, Part II.K (appended to *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F.Supp.2d 784 (E.D.Va. 2010)) (recognizing some of these sources as the basis for tasking the United States (through NOAA) with "oversight functions" relating to RMST's possession of the *Titanic's* artifacts).  Sec. 113 reflects Congress' latest effort to memorialize that interest.

Sec. 113 subjects any person wanting to "conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" to regulation by the Secretary of Commerce.  The Secretary of Commerce is charged with implementing and overseeing at "system of project authorizations," consistent with and pursuant to the terms of the International Agreement.  *Id.*; Int'l Agr., Art. 4.  The International Agreement also imposes obligations on the United States to consult with the United Kingdom (the other Party to the Agreement) in order to harmonize efforts to protect *Titanic*, and which includes the responsibility to provide an opportunity to review and comment on an authorization requests. Int'l Agr., Art. 4 and 5.

The effect of the May 18, 2020, Opinion is to interfere with the United States' implementation of Sec. 113, and impair the United States' ability to comply with its obligations under the International Agreement.  A fundamental premise of the International Agreement – that the Parties would "regulate through a system of project authorizations" activities at *Titanic*

in order to protect it, and consult with one another to harmonize such actions – is substantially undermined if RMST is permitted to "cut into the wreck . . . and to detach from the wreck" without being required to comply with the Sec. 113 process. In addition, through Sec. 113, Congress saw fit to protect the integrity of *Titanic's* structure. The International Agreement did the same. It is, likewise, manifestly unjust that *Titanic* is deprived of those protections if by operation of the May 18, 2020, Opinion, it is not conditioned on RMST complying with the Sec. 113 review process.

      4. Pursuant to the Court's authority to control matters on its docket and to prevent irreparable harms, the Court should stay its May 18, 2020, Opinion until the Court has ruled on this motion and, in any case, for a reasonable period to permit the Solicitor General to determine whether to request relief in the court of appeals. Federal courts possess the inherent power to grant a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). A stay serves important goals, including providing that courts undertaking review of the issues can "responsibly fulfill their role in the judicial process." *Id.* The traditional factors governing stays – strong showing of likelihood of success; irreparable injury; injury to other parties; and the public interest, *id.* at 434 – are satisfied here, as described above and in the United States' memorandum in support of its motion to intervene. Further, the May 18, 2020, Opinion, if acted on by RMST will irreparably alter the status quo, as no one has ever been permitted to cut into the wreck and conduct salvage, and any damage to *Titanic*'s interests or the United States' interests cannot be undone. RMST cannot claim immediate harm, because it has known since 2017 of the applicability of Sec. 113, and has had ample time to comply with its terms. *See* ECF Nos. 430, 564, 602.84; *see also* Fed. Reg. 38,013 (Aug. 5, 2019) (requiring Sec. 113 authorization requests to be submitted "at least 120 calendar days" from the proposed activity).

**V.     CONCLUSION**

For the reasons stated, the United States respectfully contends that the May 18, 2020, Opinion should be modified to deny permission to RMST or to condition its terms on RMST complying with Sec. 113 and obtaining an authorization from the Secretary of Commerce for the activities at *Titanic* it seeks to conduct. In addition, pursuant to the Court's authority to control matters on its docket and to prevent irreparable harms, the Court should stay its May 18, 2020, Opinion until the Court has ruled on this motion and, in any case, for a reasonable period to permit the Solicitor General to determine whether to request relief in the court of appeals.

Respectfully submitted,

UNITED STATES OF AMERICA,
Intervenor

By:   G. Zachary Terwilliger
      United States Attorney

By:   /s/ *Kent P. Porter*
      Kent P. Porter, VSB No. 22853
      Assistant United States Attorney
      Attorney for Intervenor United States
      United States Attorney's Office
      8000 World Trade Center
      101 West Main Street
      Norfolk, VA 23510
      757-441-6331
      Fax: 757-441-6689
      kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2020, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger**<br>Kaleo Legal<br>4456 Corporation Lane<br>Suite 135<br>Virginia Beach, VA 23462<br>Email: bwainger@kaleolegal.com | **David G. Barger, VSB #21652**<br>GREENBERG TRAURIG, LLP<br>1750 Tysons Boulevard, Suite 1200<br>McLean, Virginia 22102<br>Tel: (703) 749-1300<br>Fax: (703) 749-1301<br>E-Mail: Bargerd@gtlaw.com |
| **David G. Concannon**<br>Concannon & Charles<br>100 Sun Valley Road, No. 329<br>Sun Valley, Idaho 83353<br>Email: david@davidconcannon.com | |

/s/ *Kent P. Porter*
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax: 757-441-6689
kent.porter@usdoj.gov