# EXHIBIT A

**Administration Bill**

A bill to amend the R.M.S. Titanic Maritime Memorial Act of 1986 to implement the International Agreement Concerning the Shipwrecked Vessel RMS Titanic.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the 'R.M.S. Titanic Maritime Memorial Preservation Act of 2006.'

**SECTION 2. FINDINGS AND PURPOSES.**

Section 2 of the R.M.S. Titanic Maritime Memorial Act of 1986 (16 U.S.C. 450rr) is amended –

(1) by deleting in subsection (a)(1) 'should be designated' and inserting after 'April 14, 1912,' 'is recognized;'

(2) by deleting in subsection (a)(2) 'recent;'

(3) by inserting after subsection (a)(4):

'(5) the Secretary of Commerce (in consultation with the Secretary of State, other interested federal agencies, academic and research institutions, the public, the United Kingdom, France, and Canada) issued Final Guidelines for Research, Exploration, and Salvage of R.M.S. Titanic on April 12, 2001 (66 Fed. Reg. 18,905), as required by the R.M.S. Titanic Maritime Memorial Act of 1986, Pub. L. No. 99-513, 100 Stat. 2082; and

'(6) the Secretary of State (in consultation with the Secretary of Commerce) negotiated the International Agreement with the United Kingdom, France, and Canada pursuant to the R.M.S. Titanic Maritime Memorial Act of 1986, Pub. L. No. 99-513, 100 Stat. 2082, and signed it on June 18, 2004, subject to acceptance by the United States.'

(4) in subsection (b), by deleting paragraphs (1) through (4) and inserting:

'(1) to ensure the protection of R.M.S. *Titanic* and its wrecksite as an international maritime memorial and gravesite to those aboard her who perished in 1912, and as a site of unique scientific, archeological, cultural, and historical significance for present and future generations;

'(2) to ensure that the planning and conduct of any activities directed at R.M.S. *Titanic* and its wrecksite are consistent with applicable international law, including the International Agreement; and

'(3) to call upon the Secretary of State to encourage other interested nations, especially those with the technological capability to access R.M.S. *Titanic* and its wrecksite, to consent to be bound by the International Agreement.'

## SECTION 3. DEFINITIONS.

Section 3 of the R.M.S. Titanic Maritime Memorial Act of 1986 (16 U.S.C. 450rr-1) is amended –

(1) by deleting subsections '(a),' '(c),' and '(d),' and redesignating subsection '(b)' as subsection '(d);'

(2) by inserting as new subsections '(a),' '(b),' and '(c):'

'(a) "Collection" means each grouping of R.M.S. *Titanic* property, other than human remains, that results from recovery activities after September 1, 1985, at the wrecksite of R.M.S. *Titanic* authorized by either:

'(1) an order of a United States court of competent jurisdiction; or

'(2) a permit granted by the Secretary of Commerce under section 7 of this Act.

'(b) "Import," when used in this Act, means to bring into, or introduce into, or attempt to bring into or introduce into, the United States, including its territories and insular possessions, and the Territorial Sea as defined in Presidential Proclamation 5927 of December 28, 1988.'

'(c) "International Agreement" means the Agreement Concerning The Shipwrecked Vessel RMS *Titanic*;

(3) by inserting as new subsections '(e),' '(f),' and '(g):'

'(e) "R.M.S. *Titanic* property" means the shipwrecked vessel R.M.S. *Titanic*, her cargo, any other contents, or any associated items scattered on the ocean floor in

2

her vicinity, or any portion thereof, and all such property recovered from the wrecksite since September 1, 1985, and any human remains of those aboard her who perished;

'(f) "Rules" means the "Rules Concerning Activities Aimed at the RMS *Titanic* and/or its Artifacts" contained in the Annex to the International Agreement;

'(g) "United States waters" means all waters of the United States on the landward side of the baseline from which the breadth of the United States territorial sea is measured, and the waters of the United States territorial sea as described in Presidential Proclamation 5928, dated December 27, 1988;

**SECTION 4. IMPLEMENTATION OF THE INTERNATIONAL AGREEMENT.**

To implement the International Agreement and Rules, the R.M.S. Titanic Maritime Memorial Act of 1986 (16 U.S.C. 450rr – 450rr-6) is amended by striking section 5 (16 U.S.C. 450rr-3), section 6 (16 U.S.C. 450rr-4), and section 7 (16 U.S.C. 450rr-5), redesignating section 8 (16 U.S.C. 450rr-6) as section 21, and inserting the following:

'SEC. 5. SCOPE AND APPLICABILITY OF ACT.

'(a) This Act shall apply to:

'(1) Any person subject to the jurisdiction of the United States at the time that such person engages in an activity referred to in section 6 herein;

'(2) Any vessel of the United States including–

'(A) a vessel documented under chapter 121 of title 46 or vessels numbered as provided in chapter 123 of that title;

'(B) a vessel owned in whole or part by–

'(1) the United States or a territory, commonwealth, or possession of the United States and used on commercial service;

'(2) a State or political subdivision thereof and used on commercial service;

'(3) a citizen or national of the United States; or

'(4) a corporation created under the laws of the United

3

States or any State, the District of Columbia, or any territory, commonwealth, or possession of the United States;

unless the vessel has been granted the nationality of a foreign nation in accordance with article 5 of the 1958 Convention on the High Seas or article 91 of the 1982 Convention on the Law of the Sea, and a claim of nationality or registry for the vessel is made by the master or individual in charge at the time of the action by an officer or employee of the United States authorized to enforce applicable provisions of United States law; and

'(C) a vessel that was once documented under the laws of the United States and, in violation of the laws of the United States, was either sold to a person not a citizen of the United States or placed under foreign registry or a foreign flag, whether or not the vessel has been granted the nationality of a foreign nation;

'(3) Any vessel subject to the jurisdiction of the United States including—

'(A) a vessel without nationality;

'(B) a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the 1958 Convention on the High Seas or article 91 of the 1982 Convention on the Law of the Sea;

'(C) a vessel registered in a foreign nation where the flag nation has consented to or waived objection to the enforcement of United States law by the United States;

'(D) a vessel located within the customs waters of the United States; or

'(E) a vessel located in the contiguous zone of the United States, as defined in Presidential Proclamation 7219 of September 2, 1999, and

'(1) is entering United States waters,

'(2) has departed United States waters, or

'(3) is a hovering vessel as defined in section 401 of the

4

Tariff Act of 1930 (19 U.S.C. 1401).

Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States under subparagraph (C) of this paragraph may be obtained by radio, telephone, or similar oral or electronic means, and is conclusively proved by certification of the Secretary of State or the Secretary of State's designee; and

'(4) Any property made forfeitable by section 11 of this Act.

'(b) For purposes of this Act, a vessel without nationality includes–

'(1) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed;

'(2) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

'(3) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

A claim of registry under subparagraph (b)(1) or (b)(3) may be verified or denied by radio, telephone, or similar oral or electronic means. The response by the claimed flag nation is conclusively proved by certification of the Secretary of State or the Secretary's designee.

'(c) For purposes of this Act, a claim of nationality or registry only includes:

'(1) possession on board the vessel and production of documents evidencing the vessel's nationality in accordance with article 5 of the 1958 Convention on the High Seas or article 91 of the 1982 Convention on the Law of the Sea;

'(2) flying the flag nation's ensign or flag; or

'(3) a verbal claim of nationality or registry by the master or person in charge of the vessel.

'(d) This Act shall not apply to:

'(1) any warship, naval auxiliary, or other vessel owned or operated by the United States and used, for the time being, only on government non-commercial service unless it engages in an activity the purpose of which is to disturb, remove, or injure R.M.S. *Titanic* property; and

'(2) any person on board a vessel described in subsection 5(d)(1), above, who is acting in the course of such person's duties unless such person engages in an activity the purpose of which is to disturb, remove, or injure R.M.S. *Titanic* property.'

'SEC. 6. PROHIBITIONS.

'Except as authorized under section 7 of this Act, it is unlawful for any person or vessel described in section 5 of this Act to:

'(a) Engage in an activity that disturbs, removes, or injures, or attempts to disturb, remove, or injure R.M.S. *Titanic* property;

'(b) Engage in an activity directed at R.M.S. *Titanic* property located at the wrecksite that poses a significant threat to public safety;

'(c) Engage in an activity that violates any provision of this Act, or any regulation or permit issued thereunder, or any provision of the Rules;

'(d) Sell, purchase, barter, import, export, or offer to sell, purchase, barter, import, export, in interstate or foreign commerce, R.M.S. *Titanic* property not constituting a collection; and

'(e) Enter, or cause entry by means of any equipment, instrumentality, or other property, into the hull sections of R.M.S. *Titanic*.

'SEC. 7. PERMITS.

'(a) The Secretary of Commerce may issue a permit for an activity set forth in section 6 of this Act provided that he or she determines that such activity is consistent with the International Agreement and Rules, and that:

'(1) the activity furthers educational, scientific or cultural purposes in the public interest; or

'(2) the activity is necessary to protect R.M.S. *Titanic* property from a significant threat.

'(b) The provisions of this section shall apply to any activities directed at R.M.S. *Titanic* property, including those authorized prior to the effective date of this Act by a court of competent jurisdiction.

'(c) Any vessel described in subsections 5(a)(2) or (3) of this Act that intends to stop within the zone located within the coordinates of 41° 46' 00.036588" N, 049° 53' 09.391344"W (Northeast corner); 41° 46' 00.036588" N, 049° 59' 51.08136"W (Northwest corner); 41° 41' 00.24864"N, 049° 53' 09.391344"W (Southeast corner); 41° 41' 00.24864'N, 049° 59' 51.08136"W (Southwest corner) shall, through its owner or agent, provide prior written notice of the timing and purpose of such intended entry to the Secretary of Commerce in a manner sufficient to allow the Secretary of Commerce to determine whether a permit is required and whether a permit should be granted.

'(d) Any permit issued by the Secretary of Commerce pursuant to this Act shall contain terms and conditions that fully comply with the Rules.

'(e) The Secretary of Commerce is authorized to charge and retain reasonable fees to offset expenses associated with the processing of permit applications and the administration of permits issued under this Act.

'SEC. 8. LIABILITY.

'(a) LIABILITY TO THE UNITED STATES. Any person who engages in an unlawful activity as set forth in section 6 of this Act is liable for response costs, direct and indirect enforcement costs, and any damages resulting from such activity. Such damages may include:

'(1) the reasonable costs incurred in storage, restoration, care, maintenance, conservation and curation of R.M.S. *Titanic* property; and

'(2) the cost of retrieving any remaining information of a scientific, archeological, cultural, or historical interest from the site where the R.M.S. *Titanic* property was disturbed, removed, or injured.

'(b) LIABILITY *IN REM*. Any vessel (including the vessel's gear, appurtenances, stores, and cargo), vehicle, aircraft, or other means of transportation, and any money or property used, or intended to be used, to facilitate any violation of this Act or any regulation or permit issued thereunder, shall be liable *in rem* to the United States for any fine, penalty, or damages assessed or imposed under this Act. The amount of such *in rem* liability shall constitute a lien and may be recovered in an action *in rem* in an appropriate

district court of the United States.

'SEC. 9. CIVIL ENFORCEMENT.

'(a) CIVIL ADMINISTRATIVE PENALTY AND PERMIT SANCTION. Any person who violates any provision of this Act, or any regulation or permit issued thereunder, may be subject to a permit sanction and may be assessed a civil administrative penalty by the Secretary of Commerce after notice and an opportunity for a hearing. Such penalty may not exceed $250,000 per day for each such violation. Each day of a continuing violation shall constitute a separate violation. Upon failure of the offending party to pay such penalty, the Attorney General, upon the request of the Secretary of Commerce, may commence an action in the appropriate district court of the United States to recover such penalty. In such action, the validity and appropriateness of the final order imposing the civil administrative penalty shall not be subject to review;

'(b) CIVIL JUDICIAL PENALTY. Any person who violates any provision of this Act, or any regulation or permit issued thereunder, shall be subject to a civil penalty not to exceed $500,000 per day for each such violation. Each day of a continuing violation shall constitute a separate violation. The Attorney General, upon the request of the Secretary of Commerce, may commence a civil action in an appropriate district court of the United States, and such court shall have jurisdiction to award civil penalties. In determining the amount of a civil penalty, the court may consider such matters as justice may require;

'(c) CIVIL ACTION. At the request of the Secretary of Commerce, acting as trustee for R.M.S. *Titanic* property, the Attorney General may institute a civil action in an appropriate district court of the United States to:

> '(1) recover response costs, direct and indirect enforcement costs, and damages as set forth in section 8 of this Act; or

> '(2) obtain a court order directing any person in possession of R.M.S. *Titanic* property unlawfully obtained to deliver such R.M.S. *Titanic* property to the Secretary of Commerce.

'(d) *IN REM* ACTION. The Attorney General, at the request of the Secretary of Commerce, acting as trustee for R.M.S. *Titanic* property, may institute an *in rem* action in an appropriate district court of the United States to:

> '(1) satisfy a lien referred to in section 8 of this Act in an appropriate district court of the United States; or

8

'(2) assume custody of R.M.S. *Titanic* property unlawfully possessed as a result of a violation of this Act, or any regulation or permit issued thereunder.

'(e) INJUNCTIVE RELIEF. The Attorney General, at the request of the Secretary of Commerce, may seek to obtain such relief in an appropriate district court of the United States as may be necessary to abate an imminent risk of:

'(1) the disturbance, removal of, or injury to R.M.S. *Titanic* property; or

'(2) the sale, purchase, barter, import or export in interstate or foreign commerce of R.M.S. *Titanic* property.

'SEC. 10. CRIMINAL ENFORCEMENT

'(a) Any person is guilty of an offense under this section if the person knowingly commits any act prohibited by section 6 of this Act;

'(b) Any person who is convicted of an offense under this section shall be fined no more than $250,000 per day of violation, or imprisoned for not more than five years, or both.

'SEC. 11. SEIZURE AND FORFEITURE.

'(a) Any person authorized by the Secretary of Commerce or the Secretary of Homeland Security to enforce this Act may detain for inspection and inspect any package, crate, or other container, including its contents, and all accompanying documents, upon importation or exportation and otherwise as permitted by law. Such authorized persons may make arrests without a warrant for any violation of this Act if they have reasonable grounds to believe that the person to be arrested is committing the violation in their presence or view and may execute and serve any arrest warrant, seizure warrant, or other warrant or civil or criminal process issued by any officer or court of competent jurisdiction for enforcement of this Act, or any regulation or permit issued thereunder. Such authorized persons may search and seize, with or without a warrant, as authorized by law. Any R.M.S. *Titanic* property, or other property so seized shall be held by any person authorized by the Secretary of Commerce or the Secretary of Homeland Security pending disposition of civil or criminal proceedings, administrative forfeiture proceedings, actions *in rem* for forfeiture of such R.M.S. *Titanic* property or other property pursuant to this section, or criminal forfeiture proceedings pursuant to this section, as authorized by title 28, United States Code, Section 2461(c); except that the Secretary of Commerce or the Secretary of Homeland Security may, in lieu of holding such R.M.S. *Titanic* property or other property, permit the owner or

consignee to post a bond or other surety satisfactory to the Secretary of Commerce or Secretary of Homeland Security. Upon forfeiture of any R.M.S. *Titanic* property or other property to the United States pursuant to this section, or the abandonment or waiver of any claim to any R.M.S. *Titanic* property or other property, the property shall be disposed of by the Secretary of Commerce in such a manner, consistent with the purposes of this Act, as the Secretary of Commerce shall by regulation prescribe. No forfeited R.M.S. *Titanic* property not constituting a collection shall be sold.

'(b) The following property shall be subject to forfeiture to the United States:

'(1) Any R.M.S. *Titanic* property possessed, taken, retained, purchased, sold, bartered, imported or exported contrary to the provisions of this Act, or any regulation or permit issued thereunder;

'(2) Any property, real or personal, that constitutes or is derived from the proceeds of any violation of this Act, or any regulation or permit issued thereunder;

'(3) Any vessel (including the vessel's gear, appurtenances, stores, and cargo), vehicle, aircraft, or other means of transportation and any money or other property used or intended to be used to facilitate any violation of this Act, or any regulation or permit issued thereunder; and

'(4) Any property traceable to the property identified in paragraphs (1), (2), or (3) of this subsection.

'(c) For the purposes of this section, there is a rebuttable presumption that all R.M.S. *Titanic* property found on board a vessel that is used or seized in connection with a violation of this Act or any regulation or permit issued thereunder, was taken or retained in violation of this Act, or regulation or permit issued thereunder.

'(d) Any R.M.S. *Titanic* property ordered forfeited to the United States shall be held in trust by the Secretary of Commerce on behalf of the public, and disposed of in a manner consistent with the purposes of this Act.

'(e) The provisions of chapter 46 of title 18, United States Code, relating to civil forfeitures shall extend to any seizure or administrative or civil judicial forfeiture under this section insofar as such provisions are not inconsistent with this Act, except that such duties as are imposed upon the Attorney General, the Secretary of the Treasury, or the Postmaster General shall be performed with respect to seizures and forfeitures of property under this section by such officers, agents, or

other persons as may be authorized or designated for that purpose by the Secretary of Commerce or the Secretary of Homeland Security, as appropriate.

'(f) Any person who is convicted of an offense under section 10 of this Act shall forfeit property to the United States pursuant to this section as authorized by Title 28, United States Code, Section 2461(c). The procedures in section 413 of the Controlled Substances Act (21 U.S.C. § 853), except subsection (d) of that section, apply to all stages of a criminal forfeiture of property under this section, including any seizure and disposition thereof, and any administrative or judicial proceeding in relation thereto, insofar as such provisions are not inconsistent with this Act.

'SEC. 12. DISPOSITION OF MONIES RECOVERED AND REWARDS.

'(a) Notwithstanding any other provision of law, any monies collected under sections 8, 9, 10, and 11 of this Act, either directly or via sale of forfeited property, after payment of related expenses, are hereby authorized to be paid into one or more special accounts of the United States Department of the Treasury and are to be used by the Secretary of Commerce in carrying out the purposes of this Act without appropriation or fiscal year limitation; and

'(b) Upon certification of the Secretary of Commerce, the Secretary of the Treasury is directed to pay an amount equal to one-half of any penalty or fine collected or of the net amount realized from the sale of property forfeited under this Act, but not to exceed $100,000, to any person who furnishes information that leads to the forfeiture or to payment of the penalty or fine. If several persons provide such information, the amount shall be divided among such persons in a manner prescribed by the Secretary of Commerce. No officer or employee of the United States who furnishes information or renders service in the performance of his or her official duties may be eligible for payment under this subsection.

'SEC 13. INTERNATIONAL COOPERATION.

'In cooperation with the Secretary of State, the Secretary of Commerce is authorized to inform and consult with representatives of foreign nations and others regarding the protection and preservation of R.M.S. *Titanic* property, including the issuance of permits pursuant to section 7 of this Act.

'SEC. 14. COOPERATIVE AGREEMENTS, DONATIONS, ACQUISITIONS AND GRANTS.

'(a) AGREEMENTS. The Secretary of Commerce may, whenever appropriate, enter into agreements with any person to use the personnel, services, equipment,

11

or facilities of such person, on a reimbursable or nonreimbursable basis, to assist in carrying out the purposes of this Act.

'(b) DONATIONS. The Secretary of Commerce may accept donations of funds, property, and services to carry out the purposes of this Act. Donations accepted under this section shall be considered as a gift or bequest to or for the use of the United States.

'(c) ACQUISITIONS. The Secretary of Commerce may acquire by purchase, lease, or exchange, any land, facilities, or other property necessary and appropriate to carry out the purposes of this Act.

'(d) GRANTS AND COOPERATIVE AGREEMENTS. The Secretary of Commerce may, whenever appropriate:

'(1) enter into cooperative agreements with, or make grants to, any person, to carry out the purposes of this Act; and

'(2) apply for, accept, and use grants from any person to carry out the purposes of this Act, notwithstanding any provision of law that prohibits the Secretary of Commerce from receiving financial assistance.

'SEC. 15. MONITORING AUTHORIZATION.

'The Secretary of Commerce may, in order to carry out the purposes of this Act, monitor the wrecksite of R.M.S. *Titanic*, and, to conduct such monitoring, may use by agreement the personnel, services, and facilities of other federal departments, agencies, or instrumentalities on a reimbursable or nonreimbursable basis.

'SEC. 16. REGULATIONS.

'The Secretary of Commerce is authorized to promulgate regulations to implement this Act, including, as necessary, regulations providing for the issuance of permits in accordance with section 7 of this Act. Any such regulations shall be consistent with the International Agreement and Rules.

'SEC. 17. RELATIONSHIP TO OTHER LAWS.

'(a) Nothing in sections 4281-4289 of the Revised Statutes of the United States or section 3 of the Act of February 13, 1893, shall limit the liability of any person under this Act;

'(b) Nothing in this Act affects the seizure and forfeiture of property, including

R.M.S. *Titanic* property, under the customs laws of the United States, or the issuance of penalties thereunder.

'(c) This Act and any implementing regulations shall be applied in accordance with generally recognized principles of international law, and in accordance with the treaties, conventions, and other international agreements to which the United States is a party;

'(d) Except to the extent that an activity is undertaken as a subterfuge for activities prohibited by this Act, nothing in this Act is intended to affect the exercise of traditional freedoms of the high seas, including–

'(1) navigation;

'(2) the laying of submarine cables and pipelines;

'(3) operation of vessels;

'(4) fishing; or

'(5) other internationally lawful uses of the sea related to such freedoms;

'(e) Each provision of this Act is severable; if a court of competent jurisdiction should find any provision of this Act to be unenforceable, all other provisions shall remain in full force and effect;

'(f) An order granting salvage rights to R.M.S. *Titanic* by a court of competent jurisdiction prior to the effective date of this Act shall not exempt any person from complying with this Act, any regulation, or permit issued thereunder;

'(g) The law of finds shall not apply to R.M.S. *Titanic* or R.M.S. *Titanic* property;

'(h) No person may obtain salvage rights to R.M.S. *Titanic* or R.M.S. *Titanic* property after the effective date of this Act; and

'(i) Each collection shall be managed and maintained in accordance with the Rules.

'SEC. 18. STATUTE OF LIMITATIONS.

'No civil action may be brought, nor any criminal prosecution commenced, by the United States to enforce this Act, or any regulation or permit issued thereunder, more than eight

13

years after all facts material to the right of action or offense are known by the Secretary of Commerce and jurisdiction can be exercised over the defendant.

'SEC. 19. AUTHORIZATION OF APPROPRIATIONS.

'There are authorized to be appropriated such sums as may be necessary to carry out this Act, which amounts may not in any year exceed $1 million, and which shall remain available until expended.

## SECTION 5. EFFECTIVE DATE.

The R.M.S. *Titanic* Maritime Memorial Act of 1986 (16 U.S.C. 450rr - 450rr-6) is amended by inserting as section 22, the following:

'SEC. 22. EFFECTIVE DATE.

'This Act shall take effect on the date of its enactment.'

<u>R.M.S. Titanic Maritime Memorial Preservation Act of 2006</u>

Section-by-Section Analysis

**Section 1. Short Title.**

The short title of the Act is set out in Section 1 as the "R.M.S. Titanic Maritime Memorial Preservation Act of 2006."

**Section 2. Findings and Purposes.**

Section 2 sets forth the findings and purposes of this Act. In particular, Section 2 establishes that the requirements of the R.M.S. Titanic Maritime Memorial Act of 1986 ("the 1986 Act") have been satisfied. First, this Act expressly recognizes R.M.S. *Titanic* and its wrecksite as an international maritime memorial and gravesite to the 1,517 people onboard the vessel who were lost. *See* S. Rep. No. 62-806, at 5 (Senate Commerce Committee's May 28, 1912 report on the "'Titanic' Disaster"). Second, the United States, the United Kingdom, France, and Canada negotiated an international agreement that provides for the designation of R.M.S. *Titanic* and its wrecksite as an international maritime memorial. The international agreement also sets forth the substantive requirements to manage activities directed at R.M.S. *Titanic*, including the research and recovery of artifacts. Third, the Secretary of Commerce, after consultation with the Secretary of State, several interested nations, the public, and others, issued guidelines for conducting research on, exploration of, and if appropriate, salvage of R.M.S. *Titanic* (66 Fed. Reg. 18,905). Fourth, on June 18, 2004, the Secretary of State signed, subject to acceptance by the United States, the "International Agreement Concerning the Shipwrecked Vessel, RMS *Titanic*." Section 2 also clarifies that the planning and conduct of any activities directed at R.M.S. *Titanic* and its wrecksite must be consistent with international law, including the International Agreement and its annexed Rules.

**Section 3. Definitions.**

Section 3 defines six new terms used in the Act, and deletes three terms from the 1986 Act. The definition of "person" from the 1986 Act is retained. The new term, "collection," refers to all artifacts recovered from R.M.S. *Titanic* and its wrecksite during an individual expedition or project since September 1, 1985, pursuant to court order or permit granted by the Secretary of Commerce. The Act's definition of "collection" refers to such artifacts as a "grouping of R.M.S. *Titanic* property." For purposes of the Act, all artifacts recovered from R.M.S. *Titanic* and its wrecksite since the discovery of the shipwrecked vessel on September 1, 1985, pursuant to an order issued by the United States District Court for the Eastern District of Virginia or the United States Court of Appeals for the Fourth Circuit in the matter of *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, Civil Action No. 2:93-cv902 (E.D. Va., filed 1993), are to be considered a single collection or "grouping of R.M.S. *Titanic* property."

**Section 4. Implementation of the International Agreement.**

Section 4 of the Act implements the "International Agreement Concerning the Shipwrecked Vessel RMS *Titanic*" by adding 13 new sections to the 1986 Act (new sections 5 through 17):

> Sec. 5. Scope and Applicability of Act. This section, which draws heavily from 46 App. U.S.C. § 1903, provides that the Act applies to any person (as defined in the Act) subject to the jurisdiction of the United States at the time such person engages in an activity described in section 6. This section also provides that the Act applies to any vessel over which the United States exercises, or may exercise jurisdiction under international law, after the effective date of the Act. The intent of this section is that the Act apply expansively and reach as many persons and vessels as possible consistent with United States' and international law. Vessels of the United States are expressly excluded from the Act unless they engage in any activity the purpose of which is to disturb, remove, or injure R.M.S. *Titanic* property. Likewise, all persons aboard such vessels acting in the course of their duties are expressly excluded from the Act unless they engage in any activity the purpose of which is to disturb, remove, or injure R.M.S. *Titanic* property. Vessels of the United States and persons aboard such vessels conducting research or recovery activities directed at R.M.S. *Titanic* or its wrecksite are subject to this Act.
>
> Sec. 6. Prohibitions. This section sets forth activities prohibited by the Act unless authorized pursuant to a permit issued under the Act. These prohibitions recognize the historical and cultural significance of R.M.S. *Titanic* and its wrecksite, and reflect the United States' preferred resource management policy of *in situ* preservation. These prohibitions also implement Article 4 of the International Agreement and are consistent with the courts' orders in the matter of *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, Civil Action No. 2:93-cv902 (E.D. Va., filed 1993). *See, e.g.*, June 7, 1994 Order (granting R.M.S. Titanic, Inc.'s quest to become the exclusive salvor-in-possession based in part on the company's promise not to sell the artifacts piecemeal to any individual or private collector, but keep them together as an intact collection to be exhibited to the public); July 28, 2000 Order (prohibiting the sale of individual artifacts and the cutting into or cutting off of any part of the wreck); and the October 19, 2001 Order (summarizing the court's Orders of June 7, 1994, July 28, 2000, and September 21, 2001, regarding the sale of artifacts and requirement to keep the collection together for public exhibition).
>
> Sec. 7. Permits. This section establishes the permitting authority of the Secretary of Commerce. It also authorizes the imposition of reasonable fees and their retention to offset expenses of the permitting process. Subsection 7(b) of the Act takes into consideration the salvor-in-possession status awarded to R.M.S. Titanic, Inc. by the U.S. District Court for the Eastern District of Virginia on June 7, 1994. Any person holding the status of salvor-in-possession as of the effective date of the Act is subject to the Act's permitting regime. Consistent with the federal admiralty court orders, the Act does not

prohibit such salvor-in-possession from selling all of the artifacts that it recovered from R.M.S. *Titanic* or its wrecksite, provided that any such sale is of the entire collection of recovered artifacts. The Act does not extinguish R.M.S. Titanic, Inc.'s salvor-in-possession status; nor does it deprive the district court of jurisdiction over R.M.S. Titanic, Inc.'s pending salvage action. Subsection 7(c) requires vessels subject to the Act to provide advance notice to the Secretary of Commerce if they intend to stop within a specified zone above the wrecksite. One purpose of this notice provision is to ensure that the Secretary of Commerce has prior knowledge of the timing and purpose of the presence of a vessel in this zone so that the Secretary of Commerce can determine whether a permit is required. Another purpose for this notice provision is to facilitate fulfillment of the coordination requirements in Article 5 of the International Agreement. The notice provision will help the United States, through the Secretary of Commerce, to protect the wrecksite and manage activities directed at it. Sharing information about vessels that plan to be in this zone at the same time may also help to address safety concerns.

Sec. 8. Liability for Damages. This section provides liability for damages, response costs, and enforcement costs arising from a violation of the Act. Damages are defined to include all costs related to the conservation and curation of R.M.S. *Titanic* property and all costs associated with the retrieval of any contextual and other information of a scientific, archeological, cultural, or historical nature that remains at the site where the prohibited activity occurred. This section also provides for *in rem* liability.

Sec. 9. Civil Enforcement. This section authorizes the Secretary of Commerce to assess administrative penalties of not more than $250,000 per day of violation. The Secretary of Commerce may also request the Attorney General to file suit in federal district court to seek civil penalties of not more than $500,000 per day of violation, recover costs and damages, bring an *in rem* action, and obtain injunctive relief.

Sec. 10. Criminal Enforcement. Section 10 authorizes the Attorney General to criminally prosecute knowing violations of the Act. Persons convicted of an offense may be fined no more than $250,000 per day of violation or imprisoned for not more than five years, or both.

Sec. 11. Seizure and Forfeiture. This section provides for seizure and administrative, civil, and criminal forfeiture of unlawfully obtained artifacts and proceeds derived therefrom. Any R.M.S. *Titanic* property forfeited to the United States may be loaned to a public or private institution that provides for the conservation, curation, and public access of such property, consistent with the International Agreement, the Rules, and any regulations promulgated by the Secretary of Commerce pursuant to this Act.

Sec. 12. Disposition of Monies Recovered and Rewards. This section provides that any monies recovered for violations of the Act are to be made available for implementation of

the Act and for the payment of rewards.

Sec. 13. International Cooperation. This section authorizes the Secretary of Commerce, in cooperation with the Secretary of State, to share information and consult with interested nations regarding R.M.S. *Titanic*.

Sec. 14. Cooperative Agreements, Donations, Acquisitions and Grants. This section authorizes the Secretary of Commerce to enter into cooperative agreements, accept donations, and make acquisitions and grants to carry out the purposes of the Act.

Sec. 15. Monitoring Authorization. This section authorizes the Secretary of Commerce to monitor the wrecksite of R.M.S. *Titanic* with the assistance of other federal instrumentalities as available.

Sec. 16. Regulations. This section authorizes the Secretary of Commerce to promulgate regulations as necessary to implement the Act. Promulgation of any such regulations, however, is not a prerequisite to application (including the issuance of permits) or enforcement of the Act.

Sec. 17. Relationship to Other Laws. This section contains a number of provisions clarifying the relationship of the Act with other laws. Subsection 17(a) precludes application of the Limitation of Shipowner Liability Act. Subsection 17(b) makes clear that the customs laws of the United States are in no way affected, modified, or amended by the Act. Subsection 17(c) provides that the Act shall be applied in accordance with international law and international agreements to which the United States is a party. Subsection 17(d) provides that nothing in the Act affects the exercise of traditional high seas freedoms of navigation, including the laying of underseas cables and pipelines, the operation of vessels, fishing, or other internationally lawful uses of the sea related to such freedoms. Subsection 17(e) permits a provision of the Act to be held invalid without rendering the entire Act void. Subsection 17(f) makes clear that an order granting salvage rights to R.M.S. *Titanic* prior to the effective date of this Act does not exempt any person from compliance with the Act. Subsection 17(g) provides that the law of finds does not apply to R.M.S. *Titanic* or R.M.S. *Titanic* property. Subsection 17(h) precludes any person from obtaining salvage rights to R.M.S. *Titanic* or R.M.S. *Titanic* property after the effective date of the Act. Subsection 17(i) requires that each collection (as defined in the Act) be managed and maintained in accordance with the Rules annexed to the International Agreement.

Sec. 18. Statute of Limitations. This section establishes an eight-year statute of limitations on the initiation of any action, whether criminal, civil, or administrative, to enforce the Act, any regulation implementing the Act, or any permit issued under the Act. This section is intended to extend the customary criminal period of limitations in 18 U.S.C. § 3282, and the customary civil period of limitations in 28 U.S.C. § 2415. The

tolling provision contained in this section is modeled after that in 28 U.S.C. § 2416. Section 18 of the Act is modeled after the statute of limitations provision contained in the Sunken Military Craft Act, Title XIV, Pub. L. No. 108-375 (October 28, 2004), 118 Stat. 2094. For purposes of this section, an action to enforce this Act includes the return of an indictment and the filing of an information.

Sec. 19. Authorization of Appropriations. This section authorizes the appropriation of monies necessary to carry out the Act, not to exceed $1 million in any year.

**Section 5. Effective Date.**

Section 5 of the Act adds a new section to the 1986 Act (new section 22):

Sec. 22. Effective Date. This section provides that the effective date of the Act shall be the date of its enactment.