IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
      Plaintiff,

v.                                                       Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43' 32'' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
<u>in rem</u>,
      Defendant.

<u>**REPLY MEMORANDUM IN SUPPORT OF
UNITED STATES' EMERGENCY MOTION TO INTERVENE AND, IF GRANTED,
FOR EXTENSION OF TIME TO FILE AN APPEAL**</u>[1]

**I.    INTRODUCTION**

On June 8, 2020, the United States filed its motion to intervene, either by right or by permission, Fed. R. Civ. P. 24(a) and 24(b) (respectively), to protect the United States' and *Titanic*'s interests in the proper application of a federal law (Sec. 113) in this admiralty proceeding, and to protect the United States' interests and obligations under the International Agreement. ECF No. 614. The United States sought to intervene to seek reconsideration of the Court's May 18, 2020, Opinion, and to pursue declaratory and injunctive relief against RMST due to its refusal to comply with Sec. 113. ECF No. 615 at 3.

---

[1] On June 23, 2020, this Court issued an order "hold[ing] any ruling on the Motion to Intervene in abeyance . . . ." ECF No. 626 at 2. This reply brief is being filed out of an abundance of caution to ensure that briefing is complete, and in light of the government's recent filing requesting a ruling on its intervention motion. *See* ECF No. 629.

On June 22, 2020, RMST filed its opposition to the motion. ECF No. 625. RMST asserts three bases for why the Court should deny intervention. First, RMST contends that the United States should not be allowed to intervene *by right or by permission* because its motion is untimely. ECF 625 at 9-13. Second, RMST contends that the United States should not be allowed to intervene *by right* because it does not have a "legally protected interest" in the *res* – *Titanic* – and no basis to seek *in personam* relief against RMST in the form of declaratory and injunctive relief. ECF 625 at 14-17. Finally, RMST contends that the United States should not be allowed to intervene *by permission* because it would delay the proceedings and prejudice RMST. ECF No. 625 at 17-18.[2]

For the reasons set forth below, RMST's contentions are misplaced. Accordingly, the United States should be permitted to intervene for the purposes set forth in its motion.

## II.   DISCUSSION

### A. <u>Timeliness.</u>

RMST contends the motion to intervene is untimely because the United States waited until the Court issued a decision with which it disagreed, despite being involved as *amicus* for thirteen years, ECF No. 625 at 9-13. In fact, there is *nothing* improper about a non-party moving to intervene after the entry of an order that adversely affects its interests. The relevant question is whether the United States sought intervention "as soon as it became clear" that its "interests … would no longer be protected" in the judicial proceedings. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977); *see Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per

---

[2] The parties agree on the standards that apply for intervention by right or permission. ECF No. 625 at 8-9; ECF No. 615 at 13, 18. Thus, RMST must agree that, for intervention of right under Rule 24(a)(2), the United States' interest "would be impaired by" RMST's proposed activities, and that RMST will not "adequately represent[]" the interests of the United States. *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). Similarly, for permissive intervention under Rule 24(b)(1)(B), RMST has not disputed that the United States "has a claim or defense that [it] shares with the main action a common question of law or fact."

curiam) (stating that, when non-party is affected by court order, "the better practice is for such a nonparty to seek intervention"). That is precisely what the United States did here. The Court did not consider the applicability of Sec. 113 to the 2020 Expedition in its May 18, 2020 Opinion; the United States moved to intervene to enable it to protect its interests and to ensure that if and when RMST seeks to undertake future expeditions, it will do so in compliance with Sec. 113.

RMST's complaints about Sec. 113 in its past filings does not change that analysis. RMST often promised it would file a "separate proceeding . . . [to] address the legal implications of" Sec. 113, ECF No. 429 at 5-6, and that it would "review the issues related to Section 113, and . . . report back to the Court shortly," ECF No. 492 at 5, but it never did. Sec. 113 is a duly enacted law entitled to a presumption of validity. *See United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963) (explaining the "strong presumptive validity that attaches to an Act of Congress"). RMST's ruminations in its pleadings mean little until it takes definitive action to challenge Sec. 113's validity. RMST candidly admits that, with respect to Sec, 113, it has not not done so. *See* 605 at 13 n.3 ("suggest[ing] that RMST's earlier motion for declaratory judgment (Dkt No. 154) would now be judicially ripe"); ECF No. 625-4 at 3 ("we haven't taken any action on that yet."); *see also* Fed. R. Civ. P. 5.1 (providing that a party questioning the constitutionality of a federal statute "must promptly" provide notice to the Court and the Attorney General).

If RMST chooses not to directly challenge Sec. 113 for strategic reasons, that is RMST's fault; the United States is not required to intervene to affirmatively defend a valid enactment of Congress until it is directly challenged or impacted, which only occurred with respect to Sec. 113 with the May 18, 2020, Opinion. Further, because RMST has never directly challenged Sec. 113, this Court has always turned away RMST's musings regarding Sec. 113 because they did

not present live controversies.  *E.g. R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2000 WL 1946826 at *2 (E.D. Va. 200) (dismissing RMST's declaratory judgment action "without prejudice to renewing the motion at such time as the issue is ripe for Court action").  In doing so the Court has never suggested that it would not consider a valid federal statute that on its face applies to RMST's conduct.  Unexpectedly, the May 18, 2020, Opinion implicitly did just that, only then triggering the need for the United States to intervene to protect its interests.

Also misplaced is RMST's suggestion that the United States' thirteen-year status as *amicus* alters the timeliness analysis.  It is, of course, beyond dispute that the public has an interest in *Titanic*.  Since 2007, the United States has participated in this case as *amicus* not only to police RMST's compliance with the Court's orders for the benefit of the Court, but also, more generally, to "preserve and protect the *R.M.S Titanic* and its artifacts as an international treasure for posterity;" and to "preserve and protect . . . *the United States' efforts and interests* in this regard."  *R.M.S. Titanic, Inc.*, 531 F. Supp. 2d at 693 (emphasis added).  This Court has recognized that the bases of the United States' responsibility to "preserve and protect the *R.M.S Titanic*" for the public were "expressed by the *R.M.S. Titanic* Maritime Memorial Act of 1986, 16 U.S.C. § 450rr *et seq.*, the National Oceanic and Atmospheric Administration's ("NOAA") Guidelines for Research, Exploration, and Salvage of R.M.S. Titanic, 66 Fed.Reg. 18,905–18,913 (Apr. 12, 2001), the International Agreement Concerning the Shipwrecked Vessel R.M.S. Titanic."  *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F.Supp.2d 784, 792-93 (E.D. Va. 2010).

The record demonstrates that the United States has diligently fulfilled its responsibilities both to aid this Court and in furtherance of its independent responsibility to the public.  *See e.g. R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F.Supp.2d 784, 792-93 (E.D. Va.

2010) (negotiating covenants and conditions to help protect *Titanic* and its artifacts as an international treasure for posterity in accordance with the 1986 Memorial Act, NOAA Guidelines and the International Agreement); ECF No. 517 at 2-13 (providing legal analysis in connection with RMST's motion to approve its sale to PAHL); ECF No. 565 at 3-5 (providing analysis regarding the insufficiency of RMST's reserve account); ECF No. 602 a 3-10 (analyzing RMST's Research Design pursuant to international standards incorporated in Sec. 113).  Of particular relevance here, the United States notified RMST and the Court of pertinent changes in the legal landscape concerning activities at *Titanic*, including:  the enactment of Sec. 113 and its application in the admiralty case, ECF No. 430 at 6-10; delegation of authority from the Secretary of Commerce to the NOAA Administrator to issue authorizations under Sec. 113, ECF No. 491; a Federal Register notice detailing the implementation of Sec. 113, ECF No. 564; and the entry into force and effect of the International Agreement, ECF No. 581.  The United States has expressly advised RMST of its responsibilities under Sec. 113.  ECF Nos. 549-5 and 614-2

Thus, throughout this entire period, the United States has participated in good faith and with the understanding (as contemplated under this Court's prior orders) that it could assert interests and arguments consonant with those of the *Titanic* as a historic wreck, and consistent with the public interest it represents, as set forth in the 1986 Memorial Act, the NOAA Guidelines, Sec. 113 and the International Agreement.  The United States' objection to the 2020 Expedition on the basis, *inter alia*, of the applicability of Sec. 113 was consistent with its practice and role as *amicus* over the preceding years, and was for the purpose of "drawing the court's attention to law" that was directly applicable to the activities RMST sought to conduct.  *Miller-Wohl Co. v. Comm'r of Labor & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982).

When evaluating timeliness for purposes of intervention, the operative question is not, as RMST asserts, whether the United States has been an *amicus* for a period of time: "The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of [the order affecting its interests]." *McDonald*, 432 U.S. at 395–96; *Atkins v. State Bd. of Ed. of N. C.*, 418 F.2d 874, 876 (4th Cir. 1969) ("[T]imeliness is not an absolute . . . [and] should be evaluated in light of all the circumstances."). The United States did so. As explained in its recent filing, unlike a private party, the United States cannot simply intervene in a case on a whim. ECF No. 630 at 3-4. Here, the United States promptly moved to intervene twenty-one days after the Court's May 18, 2020, Opinion after obtaining the requisite approvals. And in any case, denying intervention would preclude the United States from addressing Sec. 113's applicability to future expeditions that arise. Accordingly, the United States' motion to intervene is timely.

### B. Interest in the Litigation.

RMST's second argument is that the United States should not be allowed to intervene by right because it does not have a "legally protected interest" in the *res – Titanic –*and no basis to seek *in personam* relief against RMST in the form of declaratory and injunctive relief in this *in rem* proceeding. ECF 625 at 14-17. The United States addresses each argument in turn.

A legally protected interest means that the United States must have "an interest in the *subject matter* of the action" and that it "stand[s] to gain or lose" if not allowed to intervene. *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991) (emphasis added). It has been described above and documented too often in this Court's orders and in the recent filings to accept RMST's contention that the United States does not have an interest in the subject matter – *Titanic* and salvage thereof – of this litigation. RMST has acknowledged as much in its opposition. ECF

No. 625 at 9-10.  Moreover, Sec. 113 expressly charges the Secretary of Commerce to implement Sec. 113 and manage activities at *Titanic* that indisputably include the same activities RMST obtained Court approval to conduct in the May 18, 2020, Opinion.  The United States' interests by virtue of Sec. 113 "bear a close relationship" to the subject matter of this litigation, and are not "remote or contingent."  *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993).

Further, it is well-established that, where the United States seeks to intervene as of right, it may rely on its unique sovereign interest in ensuring and coordinating the proper enforcement of its laws – just as it could assert the same sovereign interest as a ground for initiating suit or appealing from an adverse judgment.  *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (explaining that the United States suffers a cognizable "injury to its sovereignty arising from violation of its laws"); *Hollingsworth v. Perry*, 570 U.S. 693, 709–10 (2013) ("No one doubts that a State has a cognizable interest 'in the continued enforceability' of its laws that is harmed by a judicial decision declaring a state law unconstitutional.") (quoting *Maine v. Taylor,* 477 U.S. 131, 137 (1986)).  That is precisely the case here:  The United States seeks to intervene to protect the enforceability of Sec. 113 in these admiralty proceedings and to avoid the consequences that occur if RMST is permitted to ignore the law.  RMST has indeed indicated that it intends to proceed based solely on this Court's order, and without requesting Sec. 113 authorization.

The interests of the United States in resolving the proper reach of Sec. 113, in preserving the government's responsibility for implementing the statute, and in carrying out its obligations under the International Agreement, are plainly implicated by this case, and are sufficient to support intervention.  If those governed by a statute at issue in a litigation may intervene in a

case, *see Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 514 (E.D. Va. 2007) ("[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are *governed* by those schemes are sufficient to support intervention.' ") (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane; Federal Practice & Procedure: Civil § 1908 (2d ed.1986)) (emphasis added), those that do the governing must be allowed to intervene as well.

RMST further contends that, even if the United States has an interest, it is not entitled to seek *in personam* declaratory and injunctive relief in this *in rem* action. ECF No. 625 at 14-17. There are several components to this assertion, each of them mistaken. First, nothing prevents an intervenor of right from seeking relief different than the existing parties, provided that they have Article III standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.") The Article III standing requirements – injury-in-fact; causal connection to the conduct complained of; and redressability – are well established and readily met here. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020). The United States is and will suffer an injury by virtue of RMST's disregard of a valid federal law (Sec. 113); the Court's order that allows RMST to engage in activity facially encompassed by that law; and the Secretary of Commerce's inability to take appropriate actions, as directed by Congress, to carry out the obligations of the United States under Sec. 113 and under the International Agreement. This injury is causally connected to both RMST's refusal to comply with the law, and the Court's May 18, 2020, Opinion. Finally, a favorable order on intervention and reconsideration, as well as on declaratory and injunctive relief, will serve to

redress the United States' injury, because it will require RMST to comply with the law the United States' oversees.

Second, RMST states that the United States does not have an underlying claim for relief for which it can seek declaratory and injunctive relief. ECF No. 625 at 14-16. The United States seeks declaratory and injunctive relief to determine, declare and enforce the applicability of Sec. 113 in this admiralty proceeding. ECF No. 614-1 at ¶¶ 50-59. Because Sec. 113 regulates RMST's activities at *Titanic*, including the specific invasive and salvage activities RMST wants to conduct during the 2020 Expedition, this question is squarely within the Court's admiralty jurisdiction to consider. This action presents the proper action for another entity to challenge RMST's salvage rights, and the United States' request for relief under the Declaratory Judgment Act simply requests that the Court properly resolve RMST's rights consistent with Sec. 113. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (courts "look to the 'character of the threatened action'" by the declaratory-judgment defendant and whether that asserts a claim within the court's jurisdiction) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)).

Moreover, Sec. 113 provides that the Secretary of Commerce must take "appropriate actions to carry out this section consistent with the [International] Agreement." The International Agreement requires the United States, as a party to the Agreement, to take "appropriate actions . . . to enforce the measures" implemented as required by Sec. 113. Int'l Agr. Art. 4 ¶ 4. Declaratory and injunctive relief are certainly "appropriate actions" to take in order to ensure compliance with the law, and more fundamentally, the United States is entitled to seek such relief to protect its laws. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 302 (1947) (upholding the United States' ability to file for declaratory relief to compel

compliance with the law: "The United States was fully entitled to bring the present suit and to benefit from orders entered in its behalf."); *Island Airlines, Inc. v. C. A. B.*, 352 F.2d 735, 744 (9th Cir. 1965) ("'The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies.'") (quoting *United States v. Le May*, 322 F.2d 100, 103 (5th Cir. 1963); *Brennan v. Buckeye Indus., Inc.*, 374 F. Supp. 1350, 1352–53 (S.D. Ga. 1974) ("The absence of specific statutory authority for an action by the United States in a particular instance is no obstacle to original jurisdiction under [28 U.S.C.] § 1345.  It is settled that no such prerequisite exists to the appearance of the United States before its own courts. . . . The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies.").  Each of the authorities cited by RMST, ECF No. 625 at 15, relate to *private* litigants, and whether a provision creates a *private* cause of action; none involve the authority of the federal government to seek redress against persons or entities that interfere with its ability to carry out duly enacted laws.  That is a distinction with a significant difference, and because the district courts have jurisdiction to entertain "all civil actions, suits or proceedings commenced by the United States," 28 U.S.C. § 1345, the United States may seek declaratory and injunctive relief to prevent RMST's "interference" with that federal law.

Finally, RMST contends that *in personam* declaratory and injunctive relief is not available in an *in rem* proceeding.  ECF No. 625 at 16-17.  But there is nothing inherently inconsistent with such relief in an admiralty proceeding.  *See* Supp. Adm. Rule A(2) (incorporating to the extent not inconsistent the Rules of Civil Procedure into the admiralty rules); Supp. Adm. Rule C(1) (providing for *in personam* actions as an alternative to enforce

maritime liens). Moreover, the conflict with *in personam* relief in an *in rem* proceeding generally arises because the court lacks personal jurisdiction over the putative defendant. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999). For example, in *Haver*, where the entity against whom RMST sought an injunction "did not voluntarily subject itself to the court's jurisdiction," *id.* at 958, there was no basis for an injunction. That is no impediment here, as RMST (and PAHL) has submitted to the personal jurisdiction of this Court. ECF No. 540 at 3.

### C. <u>Prejudice.</u>

RMST's final argument is that the United States' motion to intervene has created "uncertainty" and "threatened RMST's ability to proceed with the expedition." ECF No. 625 at 18. Respectfully, this uncertainty is a harm of RMST's own making because of its refusal to comply with, or address the ramifications of, Sec. 113. For almost three years RMST has known about Sec. 113 and the United States' view that its compliance with Sec. 113 is mandatory, *see e.g.* ECF Nos. 430, 549-5, 602 (at 16 and n. 16), 612, 614-2, but RMST has done nothing to obtain relief from a presumptively binding federal statute that controls its conduct.[3] For example, on May 23, 2017, RMST accused NOAA of engaging in an "end-run" around this Court's jurisdiction through the enactment of Sec. 113, and promised to file a "separate proceeding . . . [to] address the legal implications of" Sec. 113. ECF No. 429 at 5-6. And on September 14, 2018, RMST stated that it would "review the issues related to Section 113, and will report back to the Court shortly." ECF No. 492 at 5. Despite stating that "for *years* . . . RMST has contested both the enforceability and constitutionality of Section 113," ECF No. 625 at 11, it admits it has done *nothing* to follow through and present a live challenge directly to the

---

[3] RMST's complaints about how Sec. 113 was enacted, and its reference to legislation that was never passed, ECF No. 625 at 4-5; ECF Nos. 625-1, 625-2, only underscore that RMST has never actually refuted that Sec. 113 is presumptively binding. In any case, none of that purported "background" was part of RMST's discussion regarding whether intervention should be authorized. *See* ECF No. 625 at 9-18.

Court to resolve. *See* ECF No. 625-4 at 3 ("we haven't taken any action on that yet"). RMST's complaint of hardship must be rejected when RMST cannot show "that they availed themselves of opportunities to avoid the injuries of which they now complain." *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017).

      RMST also contends that the United States' motion to intervene will delay proceedings that are already at a late stage. ECF No. 625 at 17-18. RMST's concern of delay is at odds with its recent request to delay its response to, and obtain a court ruling on, the United States' motion for reconsideration, *see* ECF No. 627,[4] when it also impliedly acknowledges that a speedy resolution on the motion to intervene would help alleviate its uncertainty, ECF No. 625 at 18. In any event, the proceedings have been going on for over twenty-five years, and will be going on for years to come. Contrary to what RMST implies, this admiralty proceeding is by no means "within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (cleaned up), *rev'd sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002). The proposed activity is but the "next phase of [RMST's] long-term plan for investigating the site and recovering artifacts and hull components." ECF No. 601-1 at 5. Thus, what RMST confuses as an impact and delay on the proceedings, is, instead, an impact on whether it can proceed with its expedition in violation of the law. As just discussed, this impact is wholly one of RMST's own making and its strategic decision to avoid directly addressing the issue with the Court.

---

[4] RMST also sought a delay in providing information about its funding plan, which raises questions about its own preparedness for the expedition. ECF No. 620.

### III. CONCLUSION

For the foregoing reasons, the Court should authorize the United States' intervention in this matter *nunc pro tunc* to the date of the filing of the intervention motion.

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney

By:   /s/ *Kent P. Porter*
        Kent P. Porter, VSB No. 22853
        Assistant United States Attorney
        Attorney for the Intervenor United States
        United States Attorney's Office
        8000 World Trade Center
        101 West Main Street
        Norfolk, VA 23510
        757-441-6331
        Fax:  757-441-6689
        kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on the 29th day of June, 2020, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger**<br>Kaleo Legal<br>4456 Corporation Lane<br>Suite 135<br>Virginia Beach, VA 23462<br>Email: bwainger@kaleolegal.com | **David G. Barger, VSB #21652**<br>GREENBERG TRAURIG, LLP<br>1750 Tysons Boulevard, Suite 1200<br>McLean, Virginia 22102<br>Tel: (703) 749-1300<br>Fax: (703) 749-1301<br>E-Mail: Bargerd@gtlaw.com |

      /s/ *Kent P. Porter*_____
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the Intervenor United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax:  757-441-6689
kent.porter@usdoj.gov