IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
        Plaintiff,

v.                                                                                               Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, et al.,
        Defendant.

PERIODIC REPORT OF R.M.S. TITANIC, INC.
ON THE PROGRESS OF RESEARCH AND
<u>RECOVERY OPERATIONS</u>

NOW COMES Plaintiff, R.M.S. Titanic, Inc. ("RMST" or the "Company"), by counsel, and files this "Periodic Report of R.M.S. Titanic, Inc. on the Progress of Research and Recovery Operations" ("Periodic Report"), and for the reasons stated below, requests an evidentiary hearing concerning SEARCH, Inc.'s proposed expedition.

**I.**     **Proposed 2020 SEARCH, Inc. Expedition**

On July 2, 2020, NOAA filed a Status Report "pursuant to 84 Fed. Reg. 38012" regarding a potential expedition to the *Titanic* ("SEARCH Expedition"), to be conducted by SEARCH, Inc./SEARCH20, Ocean Infinity, Stantec, and Terra Mare Conservation (collectively "SEARCH"). In its Status Report, NOAA states that it has advised SEARCH that it should notify the Court and RMST of its expedition plan, and that NOAA would also be advising the Court of SEARCH's plans. With just over thirty days' notice, NOAA claims to be "reviewing the research design to determine whether additional information is needed and/or whether a Sec.113 authorization may be required."

Although RMST remains salvor-in-possession of the wreck, no representative of SEARCH has contacted RMST about the expedition, which is "tentatively" scheduled to commence on August 2, 2020, less than one month from now.  As of today's date, RMST has no further information on this potential expedition other than the information filed by NOAA.

This Court has required third-parties seeking to conduct expeditions to the wreck to submit their dive plans to the Court to ensure that such activities would not violate this Court's constructive *in rem* jurisdiction over the wreck.  *See, e.g.*, May 8, 2018 Robert McFarland letter to Stockton Rush regarding OceanGate expedition, attached hereto as Exhibit A; September 27, 2018 Order permitting EYOS expedition (ECF 497), attached hereto as Exhibit B.  While certain activities may not implicate this Court's jurisdiction over the wreck, the Court may nevertheless enforce salvage rights by prohibiting a third-party from, "interfering with the salvor's exclusive possession of the wreck."  *R.M.S Titanic, Inc. v Haver*, 171 F. 3d 943, 970 (4th Cir. 1999).

Whether the activities proposed by SEARCH interfere with the Court's jurisdiction or the salvor's exclusive possession over the wreck depends on a detailed analysis of the SEARCH plans for the SEARCH Expedition, an understanding of the technical work performed by RMST in Expedition 2010 and James Delgado's role in it, and RMST's planned 2021 expedition.  Until such time as SEARCH answers the myriad questions raised herein, it is premature to authorize the SEARCH Expedition. As set forth herein, even with the limited information available to it right now, RMST believes that the SEARCH Expedition will interfere with its exclusive possession of the wreck and its salvage rights.  *Id.*

As the Court has recently observed, even with careful planning, third-parties can inadvertently impinge on the Court's jurisdiction, and RMST's rights as salvor-in-possession.  Such was the case when Victor Vescovo recently piloted his submersible into a physical collision

with the *Titanic* wreck, notwithstanding the Court's carefully crafted July 3, 2019 Order prohibiting, "damage [to] the hull or any other part of the ship." (ECF 554). At this time, because RMST does not have sufficient information to determine whether this expedition comports with the Court's exclusive admiralty jurisdiction, or with RMST's exclusive possession of the wreck, RMST hereby requests that the Court conduct an evidentiary hearing to determine whether SEARCH may proceed with the SEARCH Expedition.

To be clear, it is no coincidence that SEARCH has until now bypassed the jurisdiction and oversight of this Court. According to the materials provided by NOAA in its Periodic Report, Robert Ballard, whom this Court knows well and who conceived of the Titanic Memorial Act to prevent RMST's predecessor from salvaging the wreck, serves as an Advisor to SEARCH. *See* James Delgado March 14, 2016 email attached as Exhibit C to RMST January 3, 2017 Periodic Report (stating, "[t]he idea of the Act was conceived by Ballard somewhere shortly after the Discovery expedition" and "Ballard appeared before Congress and argued against any salvage. He proposed making it a memorial."). Ole Varmer, also well known to this Court, who for many years served as counsel to NOAA, also serves as an Advisor to SEARCH. And James P. Delgado, Ph.D, the Senior Vice President of SEARCH, will be the Chief Scientist on the expedition, having previously served as the Director of Maritime Heritage in the Office of National Marine Sanctuaries for NOAA for seven years, and before that as the President and Chief Executive Officer of the Institute of Nautical Archaeology ("INA").

While they were employees of NOAA, Mr. Varmer and Dr. Delgado co-authored the July 4, 2016 letter to Pierre Michel, Office for Science and Technology, French Embassy, recruiting the Republic of France to participate in RMST's bankruptcy litigation then pending in the U.S. Bankruptcy Court for the Middle District of Florida. *See* Exhibit C attached hereto. Their

3

admitted and open opposition to RMST and their possible motives for this ad-hoc, what appears to be near-spontaneous expedition notwithstanding, the SEARCH expedition likely constitutes interference with RMST's exclusive right of possession of the wreck as set forth below.

Dr. Delgado served as the Principal Investigator on RMST Expedition 2010, and he was commissioned by RMST to issue interim and final archaeological reports of the expedition.[1] *See* attached hereto as Exhibit D. Dr. Delgado never finished those reports, though he did publish a report in an archaeological journal.[2] Indeed, the SEARCH expedition appears to be a continuation of work commissioned by RMST, and appears to rely heavily on intellectual property owned by RMST, and which RMST has not given SEARCH permission to use. *See* Declaration of William Lange, attached hereto as Exhibit F. The proposed work of the SEARCH Expedition will also be largely duplicative of work already completed by RMST in RMST Expedition 2010, or still in progress. *Id.* On its face, it appears the SEARCH technical plans are deficient, and demonstrate both insufficient planning and a lack of expertise that could risk damage to the wreck site. *Id.* If any one of these concerns proves to be true, let alone all of them, the SEARCH expedition will constitute interference with RMST's exclusive possession of the wreck site and a violation of admiralty law.[3] This is particularly true because in 2010, RMST sought to map the wreck site to facilitate future salvage and conservation activity, and the proposed activities of SEARCH may well impede RMST's ongoing efforts in that regard.

---

[1] A summary of the Expedition 2010 plans is included in the Company's August 10, 2010 Periodic Report.

[2] RMST previously expressed it concerns to Dr. Delgado, Dave Conlin, another SEARCH Advisor, and others about what it believed to be the improper use of RMST's intellectual property from Expedition 2010 for personal benefit. *See* Exhibit E attached hereto.

[3] In this respect, if Dr. Delgado and his SEARCH colleagues now seek to piggy back on intellectual property developed and owned by RMST in conjunction with RMST Expedition 2010 for their own use in this expedition, the current plans may also implicate a number of other private causes of action unrelated to admiralty law.

Moreover, if the SEARCH expedition seeks to serve as an explicit or implicit obstacle to RMST's planned expedition – either by challenging scientific data already presented to the Court regarding deterioration at the wreck, or by limiting the commercial viability of the planned expedition, these actions may also constitute interference with the Court's jurisdiction and the Company's salvage rights.

The purported impromptu nature of this expedition is notable for several reasons, and causes procedural problems for NOAA, RMST, and the Court.  SEARCH apparently plans to conduct the Expedition just days before RMST had originally planned to conduct its "Marconi" expedition in August and September.  SEARCH allegedly notified NOAA of these plans on June 30, two days before RMST announced publicly that it would not be able to conduct its expedition this year.  This timing is curious.  SEARCH provided NOAA only 32 days' notice, even though NOAA's guidance suggests that it requires at least 120 days' notice (84 Fed. Reg. 38012); and even though RMST is required to provide both the Court and NOAA with not less than ninety (90) days' notice before it conducts any planned expedition to the wreck. *See* ECF 540 12/21/18 Order, ¶ H.

It appears that SEARCH and its advisors, many of whom are renowned experts in the archaeological and legal history of the Titanic, have made calculated decisions sounding in science and the law that likely impede and interfere with both the exclusive possessory rights of RMST in the wreck and this Court's Admiralty jurisdiction.  Though clearly aware for years of the Court's jurisdiction, they have chosen to ignore this Court's admiralty jurisdiction in favor of clearance from the executive branch, through its delegation of authority to NOAA, their former employer and current partner.  In doing so, they create a jurisdictional conflict between the judicial branch, exercising its jurisdiction under Article III Section 2, and the executive branch,

5

pursuant to Section 113, while piggybacking on RMST's work as the lawful salvor-in-possession, and jeopardizing the company's future salvage plans.  Under these circumstances, the SEARCH expedition should not proceed until it proves to the Court that its plans do not interfere with RMST's exclusive right of possession of the wreck or this Court's admiralty jurisdiction.

WHEREFORE, RMST submits this Periodic Report for the Court's information and consideration.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

*/s/ Brian A. Wainger*
Brian A. Wainger, VSB #38476
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com


David G. Barger, VSB #21652
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
Email: Bargerd@gtlaw.com

*Counsel for R.M.S. Titanic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

                                                */s/ Brian Wainger*
Brian A. Wainger, VSB #38476
Attorney for Plaintiff RMS Titanic, Inc.
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*