IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
        Plaintiff,

v.                                        Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, et al.,
        Defendant.

**R.M.S. TITANIC, INC.'S MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION TO RECONSIDER THE MAY 18, 2020 OPINION AND <u>REQUEST TO STAY THAT OPINION</u>**

Plaintiff R.M.S. Titanic, Inc. ("RMST"), by counsel, submits this Memorandum in Opposition to the United States' Motion to Reconsider the May 18, 2020 Opinion and Request to Stay the Opinion ("Motion") (ECF No. 616). For the reasons stated below, the United States' Motion should be denied.

**I.    INTRODUCTION**

In the Motion, the United States now seeks to relitigate its position concerning Section 113. Conceding as much in its recent cascade of filings, the United States admitted that it did not expect the Court to grant RMST's motion to amend or modify the Court's July 28, 2000 Order ("Motion to Amend").[1]  A motion for reconsideration, however, is an improper method for seeking a "do-over" of a failed litigation strategy, and for this reason alone, the Motion should be denied.

---

[1] In its Reply Memorandum in Support of its Emergency Motion to Intervene and, if Granted, for Extension of Time to File An Appeal (ECF No. 632), the United States implies that it did not expect the Court to find in favor of RMST. *See* United States' Reply Mem. at 4

Even if the United States were not seeking to relitigate its position on Section 113, the Motion still fails because the United States has not discovered any new evidence since May 18, 2020, there has been no change in the applicable law, and the Court did not make any clear error that would work a manifest injustice on the United States. Recognizing that neither of the first two situations applies here, the United States argues solely as the basis for reconsideration that the Court committed a clear error of law that resulted in a manifest injustice by failing to condition its May 18, 2020 Order ("Order") on the Section 113 approval of RMST's expedition by NOAA. To the contrary, the Order was neither erroneous as a matter of law nor a manifest injustice. The United States raised the issue of Section 113 in the briefing on RMST's Motion to Amend; the Court considered whether Section 113 was within the limited scope of RMST's requested relief to modify a prior order of the Court; and the Court concluded that it was not. There is no error in this analysis. Further, the Court's decision did not work a manifest injustice on the United States, because it still has the full scope of options assigned to it by Congress to enforce the statute. The Order neither limited nor restricted those options. Accordingly, the Motion must be denied.[2]

## II. BACKGROUND

RMST filed the Motion to Amend on March 27, 2020. (ECF No. 600). The Court's July 28, 2000 Order (the "July 2000 Order"), stated:

> This court has continued RMS TITANIC, Inc. as salvor in possession of the wreck of the TITANIC from year to year on the understanding that RMS TITANIC, Inc. would treat and preserve all artifacts recovered and would exhibit them to the public and would not sell or dispose of any of said artifacts. The court also continued RMS TITANIC, Inc. as the salvor in possession with the understanding that RMS TITANIC, Inc. would not damage or cut into or cut off any part of the wreck.

---

("*Unexpectedly*, the May 18, 2020, Opinion did just that, only then triggering the need for the United States to intervene to protect its interests." (emphasis added)).

[2] RMST also notes that the United States' Motion is also improper, because, despite identifying itself as an "Intervenor" in the case caption of its Motion and accompanying Memorandum in Support (ECF Nos. 614, 615), the United States is not a proper party in this case and has not been permitted to intervene.

> It has come to the attention of the court that has been a change of management in RMS TITANIC, Inc. and that there is a concern held by some persons and organizations that RMS TITANIC, Inc. is considering disposal of some artifacts recovered and entering the wreckage of the TITANIC by creating holes or slits or other openings in the wreck.
>
> It is FURTHER ORDERED that RMS TITANIC, Inc. and all of its employees, agents, or subcontractors are forbidden to in any way cut into the wreck or detach any part of the wreck.

(ECF No. 164). Because the July 2000 Order is still in force, RMST must seek a modification or amendment of this order to "cut into the wreck or detach any part of the wreck." In its Motion to Amend, RMST requested that the Court amend or modify this order to allow it to conduct an expedition that would attempt to recover a Marconi device and related artifacts from the wreck (the "Marconi Artifacts"). On April 27, 2020, The United States, through a "Report and Recommendation," opposed the proposed expedition. (ECF No. 602).

On May 18, 2020, the Court issued its Order granting RMST's Motion to Amend. (ECF No. 612). In the Order, the Court authorized RMST to conduct an expedition in August or September, 2020 subject to the Court's approval of a "funding plan detailing the costs and funding sources of the recovery operation and the conservation of any recovered artifacts." Order at 14. This funding plan was originally due on June 18, 2020. *Id*.

Since then, the United States filed a flurry of pleadings seeking to both overturn and appeal the Order. (ECF Nos. 614, 616, 618). Most relevant here, the United States filed a motion to reconsider the Court's Order and memorandum in support. (ECF Nos. 614, 615).

III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 54(b) allows a court to revise an order "at any time before the entry of a judgment adjudicating all the claims." FED. R. CIV. P. 54(b). Courts retain broad flexibility to revise interlocutory orders before final judgment as the litigation develops and new

facts or arguments come to light. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 (4th Cir. 2003); *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015). A court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence"; (2) a change in applicable law; or (3) clear error causing "manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Federal Rule of Civil Procedure 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of "new evidence not available at trial." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

Additionally, "'the court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim.'" *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (quoting *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997)). Thus, in the absence of "a significant change in the law or the facts since the original submission to the court, granting a motion for reconsideration is only appropriate where, for example, the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Id.* (quoting *Smithfield Foods*, 969 F. Supp. at 977). Because such problems "'rarely arise…the motion to reconsider should be equally rare.'" *TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)).

**IV.     ARGUMENT**

Motions for reconsideration are generally disfavored. *Integrated Direct Mktg., LLC v. May*, No. 1:14-CV-1183LMB, 2016 WL 7334278, at *1 (E.D. Va. Aug. 12, 2016) ("[B]ecause

motions for reconsideration of interlocutory orders have the propensity to waste judicial resources and hinder the efficient administration of justice, such motions are disfavored and a court may only grant them sparingly."). In particular, a party's attempt to use a motion for reconsideration to relitigate issues that the court has already decided, simply because the movant disagrees with the court's analysis, is improper and warrants denial. *See U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC,* 899 F.3d 236, 257 (4th Cir. 2018) (stating that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (citation and quotes omitted)); *Pritchard v. Wal Mart Stores, Inc.*, 3 Fed. Appx. 52, 53 (4th Cir. 2001) (stating that when a motion for reconsideration "raises no new arguments, but merely requests the district court to reconsider a legal issue or to 'change its mind,' relief is not authorized."); *Matter of Vulcan Constr. Materials, LLC,* 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) ("[M]ere disagreement with a court's application of the law is insufficient to support a motion for reconsideration under Rule 54(b)." (internal quotes and citation omitted)); *Haas v. City of Richmond*, No. 3:17-CV-260, 2018 WL 9865742, at *2-4 (E.D. Va. Aug. 27, 2018); *Evans*, 148 F. Supp. 3d at 544; *Wootten v. Commonwealth of Virginia,* 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) ("[R]econsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial "second bite at the apple" to a dissatisfied litigant."); *TomTom*, 17 F. Supp. 3d at 546 ("Motions to reconsider asking a court to rethink what the Court had already thought through—rightly or wrongly should not be granted." (internal quotes and citation omitted)); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) ("[I]t is axiomatic that a motion for reconsideration is not a tool with which an unsuccessful litigant may force the court's attention to matters adequately and previously

5

addressed."). Because the Motion is nothing more than an attempt to have an impermissible "second bite at the apple," it is improper and must be dismissed. *Benedict v. Hankook Tire Co. Ltd.,* No. 3:17-CV-109-REP, 2018 WL 1655358, at *3 (E.D. Va. Apr. 5, 2018).

The United States cannot establish that the Court committed a clear error of law causing a manifest injustice in the Order.[3] To prevail on its Motion, the United States must demonstrate *both* a clear error by the Court *and* that this error resulted in a manifest injustice. *Evans*, 148 F. Supp. 3d at 544. As the Fourth Circuit has vividly described the standard applied to such motions: "[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *see also U.S. Tobacco*, 899 F.3d at 258.

The United States overlooks and overstates the language of the Order in its attempt to convince the Court that it erred. First, the United States overlooks the Court's analysis regarding the impact of Section 113 concerning RMST's request to modify a prior interlocutory order. The Court expressly considered whether Section 113 approval was within the scope of the Motion to Amend and concluded that it was not. This was not erroneous, because the only issue before the Court was whether a prior order should be modified based on new evidence. Second, the United States overstates the impact of the Order by arguing that it renders Section 113 and, therefore, NOAA's enforcement abilities meaningless. To the contrary, by leaving the issue of Section 113 approval and enforcement to NOAA, the Court has left all of NOAA's available enforcement

---

[3] The United States does not assert that either of the two other factors in the Rule 54(b) analysis – the development of new evidence or a change in applicable law – are relevant here. RMST, therefore, does not address them in this Opposition.

options unfettered. There is no injustice in this result. Because this Court's decision was neither wrong nor worked a manifest injustice on the United States, its motion must be denied.

### A.    The Court did not commit a clear error of law.

It is critical to place the Order in the proper procedural context. The July 2000 Order barred RMST from "cut[ting] into the wreck or detach[ing] any part of the wreck." (ECF No. 164). In its Motion to Amend, RMST moved the Court for the limited relief of modifying the July 2000 Order pursuant to Rule 54(b), so that an expedition to attempt to recover the Marconi Artifacts from the wreck would not be in violation of the July 2000 Order. The United States filed a Report and Recommendation that provided its opinion of RMST's proposed expedition, which the Court considered as part of its decision whether to grant the Motion to Amend. (ECF No. 602). Neither RMST nor the United States sought a declaration that the proposed expedition would (or should) comply with either Section 113 or the International Agreement.

On May 18, 2020, the Court issued its Order on the Motion to Amend, conditionally granting the Motion to Amend pending RMST's submission of a funding plan. Order at 14-15. In its Order, the Court expressly considered the applicability of Section 113 to the requested relief. The Court noted that, "[i]n a footnote, NOAA also informs the Court that RMST has not complied with the provision in Section 113 of the 2017 Appropriations Act that requires any expedition that would 'physically alter or disturb' the wreck site to first obtain authorization from the Secretary of Commerce." Order at 9. Addressing Section 113 directly, the Court stated:

> At this juncture, the only matter before the court is whether to amend the July 28, 2000, Order to lift that Order's prohibitions on cutting into or detaching from the wreck for purposes of the proposed Expedition 2020. *The court does not address any need for RMST to obtain additional authorizations required by law, such as under Section 113 of the Department of Commerce Appropriations Act of 2017, because such authorizations are beyond the scope of the Rule 54(b) modification.* Likewise, the court does not address the constitutionality of NOAA's claimed authority to wield approval power and control over salvage operations in the Article III courts of the United States exercising their admiralty jurisdiction, because there

>is no ripe constitutional issue before the court. At this point, NOAA appears as an amicus, not as a formal party at issue in this case, and it has not sought to enforce its approval power or otherwise block the expedition. The court cannot adjudicate NOAA's rights in this respect or the constitutionality of Section 113 until they are at issue in this case.

Order at 10-11 (footnote omitted) (emphasis added).

The Motion – which is solely concerned with Section 113 – fails to address this critical paragraph in the Court's analysis regarding Section 113 and whether there is any "clear" legal error in it. The reason for this omission by the United States is simple: there is no error warranting the extraordinary remedy of reconsideration. *Benedict*, 2018 WL 1655358, at *3 (describing granting motion for reconsideration as an "extraordinary remedy" (citing *Mohamed v. Holder*, 1:11-cv-0050, 2015 WL 11121994, at *3 (E.D. Va. Dec. 18, 2015)). In the limited procedural context of modifying a prior interlocutory order of the Court, RMST's need to comply with other laws that may be binding on it outside of its *in rem* admiralty jurisdiction were outside the limited scope of the July 2000 Order and, therefore outside the scope of RMST's requested relief. Contrary to the United States' suggestion, this is not the same thing as saying that authorization under Section 113 is not required. Order at 9. Further, the United States does not point to any law, regulation, or agreement related to Section 113 stating that *courts* must condition any order of court on the approval of the Secretary of Commerce. Indeed, the United States does not point to any authority that asserts that allowing the Executive Branch to do its job as defined – and limited by – statute constitutes legal error. Because the United States has not identified any legal error by the Court – and certainly not any error that is "dead wrong" (*Franchot*, 572 F.3d at 194), the Motion should be dismissed.

**B.     The United States' suggestion that it may suffer a "manifest injustice" as a result of the Court's decision is a red herring and should be disregarded.**

In addition to demonstrating a clear error of law by the Court, the United States must also show that any such alleged error resulted in a manifest injustice. *Evans*, 148 F. Supp. 3d at 544. The United States argues that the Court's decision works a manifest injustice by rendering Section 113 "meaningless," interfering with its implementation of Section 113, and impairing its ability to implement the International Agreement. To warrant reconsideration, the injustice resulting from the challenged order must be "apparent to the point of being almost indisputable." *Integrated Direct Mktg.*, 2016 WL 7334278, at *1 (quote and citation omitted). Here, by contrast, any purported injustice suffered by the United States is illusory, at best, and well short of "indisputable." For this reason as well, the Motion should be denied.

The United States cannot credibly claim that the Court's decision impairs its ability to enforce Section 113 or the International Agreement. Instead, underlying the United States' argument is that the Court's decision does not allow it to enforce Section 113 or the International Agreement *as it sees fit*. But this is not a manifest injustice: it is just inconvenient for the United States. Again, the unique nature of both this *in rem* admiralty proceeding and the procedural posture of RMST's Motion to Amend and the Court's resulting Order provides necessary context. The July 2000 Order was not an omnibus order concerning RMST's rights and responsibilities concerning the wreck. It was a targeted order directed to a specific problem that was issued pursuant to the Court's jurisdiction over the *res*. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943 (4th Cir. 1999) (stating that district court having *in rem* jurisdiction over wreck is entitled to adjudicate salvage rights to wreck).

Section 113, by contrast, purports to establish a means for regulating *persons* and their actions at the wreck site. The statutory language is clear on this point:

9

> For fiscal year 2017 and each fiscal year thereafter, *no person* shall conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS Titanic unless authorized by the Secretary of Commerce per the provisions of the Agreement Concerning the Shipwrecked Vessel RMS Titanic. The Secretary of Commerce shall take appropriate actions to carry out this section consistent with the Agreement. This title may be cited as the ''Department of Commerce Appropriations Act, 2017.

Department of Commerce Appropriations Act, 2017, Pub. L. 115-31, 131 Stat 135, 192 (2017) (emphasis added). Additionally, in the Department of Commerce's Notice of Partial Delegation of Authority concerning Section 113, NOAA described the scope of its alleged authority: "*Any person subject to U.S. jurisdiction* proposing to conduct any research, exploration, salvage, or other activity at the wreck or wreck site of RMS Titanic will need to demonstrate to the NOAA Administrator that the proposed project will comply with Section 113, which incorporates by reference the International Agreement." Notice of Partial Delegation of Authority to the Under Secretary of Commerce for Oceans and Atmosphere and Administrator of the National Oceanic and Atmospheric Administration To Implement Section 113 of the Consolidated Appropriations Act, 2017, Regarding the Research, Exploration and Salvage of RMS Titanic, 84 Fed. Reg. 38012-01 (Aug. 5, 2019) (emphasis added). Thus, both the statute and the Department of Commerce's administrative actions demonstrate that Section 113 seeks to govern persons – not property.

Nothing in the Court's Order impairs or impedes the United States' ability to govern the persons Section 113 allegedly seeks to regulate. Indeed, the Court expressly stated as much: "The court does not address any need for RMST to obtain additional authorizations required by law, such as under Section 113 of the Department of Commerce Appropriations Act of 2017, because such authorizations are beyond the scope of the Rule 54(b) modification." Order at 10. The Court, therefore, did not conclude that NOAA authorization was unnecessary or that NOAA was limited in enforcing whatever rights it may have under Section 113. Nor did the Court interpret or limit

10

the statutory language. Indeed, the Court did just the opposite and provided NOAA its full scope of options to enforce Section 113 as permitted by federal law.[4] For example, NOAA conceivably may file an *in personam* action against an entity that it believes has not complied with Section 113, or take any other action that Congress may eventually authorize it to take.

In short, the Motion seeks to have this Court do what Congress itself did not do: give NOAA a means to enforce its asserted regulatory scheme in this *in rem* case in any way it sees fit. But properly so, the Court instead left NOAA alone to enforce Section 113 as the law permits. This is neither a manifest injustice nor a clear error of law. Accordingly, the Motion should be denied.[5]

        Respectfully submitted,

        **RMS TITANIC, INC.**

        By Counsel:

           /s/
        Ryan V.P. Dougherty, VSB # 78444
        Brian A. Wainger, VSB #38476
        William R. Poynter, VSB #48672
        KALEO LEGAL
        4456 Corporation Lane, Suite 135
        Virginia Beach, VA 23462
        Tel: (757) 965-6804
        Fax: (757) 304-6175
        E-Mail: rdougherty@kaleolegal.com
        E-Mail: bwainger@kaleolegal.com
        E-Mail: wpoynter@kaleolegal.com

---

[4] Of course, an underlying problem for NOAA – which is also outside the scope of RMST's original Motion to Amend – is that the statutory language does not provide any enforcement mechanism.

[5] Due to the change in circumstances concerning RMST's plans for an expedition to recover the Marconi Artifacts in 2020, *see* ECF No. 634, RMST assumes that the United States' need for a stay of the Court's Order due to the threat of alleged irreparable injury is now moot and should be denied as such.

David G. Barger, VSB #21652
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
E-Mail: Bargerd@gtlaw.com

*Counsel for R.M.S. Titanic, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2020, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

                                       /s/
Ryan V.P. Dougherty, VSB # 78444
Brian A. Wainger, VSB #38476
William R. Poynter, VSB #48672
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: rdougherty@kaleolegal.com
E-Mail: bwainger@kaleolegal.com
E-Mail: wpoynter@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*