**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
          Plaintiff,

v.                                    Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL, et al.,
          Defendant.

**R.M.S. TITANIC, INC.'S MEMORANDUM IN OPPOSITION TO THE**
**UNITED STATES' MOTION FOR RECONSIDERATION AND**
**<u>A RULING ON PENDING MOTIONS</u>**

      Plaintiff R.M.S. Titanic, Inc. ("RMST"), by counsel, submits this Memorandum in

Opposition to the United States' Motion for Reconsideration and a Ruling on Pending Motions

("Motion") (ECF No. 629).  For the reasons stated below, the United States' Motion should be

denied.

**I.      INTRODUCTION**

      In this, its second motion for reconsideration in as many weeks, the United States now

seeks to lay the blame for the deficiencies in its litigation strategy at the feet of this Court.

Specifically, the United States has asked the Court to reconsider its *sua sponte* order staying

consideration of the United States' motion to intervene in this case following the *United States'*

Notice of Appeal to the US Court of Appeals for the Fourth Circuit.  To prevail on this strategy,

the United States must demonstrate both that the Court made a clear error of law and that such

error resulted in a manifest injustice.  The United States cannot carry this heavy burden.

      The United States asserts that the Court has erred in two ways, neither of which has merit.

First, the United States argues that the Court should not have stayed consideration of the Motion

to Intervene because it retains jurisdiction to do so, in spite of the Notice of Appeal.  This decision was not a clear error of law for at least two reasons: (1) given the unique procedural posture of this decades-long admiralty proceeding, it is not "clear" that the Court has jurisdiction over the motion to intervene while the Fourth Circuit also has jurisdiction over the United States' appeal; and (2) even if the Court does continue to have jurisdiction, it was not clear error for the Court to manage its docket as it sees fit.  Second, the United States boldly asserts that the Court has no just cause for purportedly shirking its constitutional obligation to adjudicate matters before it.  In particular, the case that the United States relies on to press the Court into action — a case  about Article III standing — has no applicability to the procedural posture of this case, particularly given the wide discretion that a this court has to manage  its own docket.

There is yet another reason why the United States' motion must be denied.  To prevail on a motion for reconsideration based on an error of law, the movant must also demonstrate a manifest injustice.  No such injustice could exist in this case because the United States retains the full panoply of mechanisms to enforce its interests outside of this *in rem* matter.  Indeed, the United States does not articulate an alleged injustice.  Nevertheless, the United States appears to suggest that it is being prejudiced in its appeal to the Fourth Circuit through the uncertainty resulting from its own tactical decision to wait to attempt to intervene in this case until *after* the Court issued a decision with which it disagreed.  This situation is entirely of the United States' own making.  Accordingly, the United States' motion must be denied.

## II.    BACKGROUND

On May 18, 2020, the Court issued its Order granting RMST's Motion to Amend or Modify the Court's July 28, 2000 Order regarding RMST's request to recover the Marconi Artifacts ("Order").  ECF No. 612.  In the Order, the Court authorized RMST to conduct an expedition in August or September 2020, subject to the Court's approval of a "funding plan detailing the costs

2

and funding sources of the recovery operation and the conservation of any recovered artifacts."
Order at 14.  This funding plan was originally due on June 18, 2020.  *Id*.

Following the Order, the United States filed several pleadings to overturn and appeal the
Court's decision.  On June 8, 2020, the United States moved to intervene in the case (the "Motion
to Intervene").  (ECF No. 614).  Then, one week later, the United States filed its first motion for
reconsideration concerning the Order.  (ECF No. 616).  On June 17, 2020, the United States filed
its Notice of Appeal concerning the Order.

RMST filed a timely opposition to the Motion to Intervene on June 22, 2020.  (ECF No.
625).  On the next day, the Court, *sua sponte*, issued an order staying further proceedings on the
Motion to Intervene (the "Stay Order").  Specifically, the Stay Order stated:

> This matter comes before the court on the United States' Emergency Motion to
> Intervene ("Motion"), filed on June 8, 2020.  ECF No. 614.  Plaintiff R.M.S.
> Titanic, Inc. ("RMST") filed a Memorandum in Opposition to the Motion on June
> 22, 2020.  ECF No. 625.  In the meantime, the United States filed a Notice of Appeal
> on June 17, 2020, of this court's Opinion of May 18, 2020.  ECF No. 619.
> Accordingly, the court **STAYS** any further rulings on this Motion.  *See Doe v.
> Public Citizen*, 749 F. 3d 246, 258 (4th Cir. 2014) (holding that the filing of a notice
> of appeal "divests a district court of jurisdiction to entertain an intervention
> motion").
>
> The court notes that the appeal was filed before RMST's opportunity to timely
> respond to the Motion to Intervene had expired, and before this court had addressed
> the Motion.  Yet, the United States unilaterally designated itself as an Intervenor
> for the appeal, without the benefit of a ruling from this court on the Motion, and
> despite having been an Amicus or Interested Party before the court in this case for
> at least two decades.  This court now holds any ruling on the Motion to Intervene
> in abeyance, until such time as it is appropriate and ripe for consideration.

ECF No. 626 (footnote omitted).

On June 26, 2020, the United States then filed its second motion for reconsideration
and an accompanying memorandum in support (the "U.S. Mem."), asking the Court, under
Federal Rule of Civil Procedure 54(b), to reconsider its order staying any further action on

the Motion to Intervene.  (ECF Nos. 629, 630).  Finally, on June 29, 2020, the United States

filed its reply in support of its Motion to Intervene.  (ECF No. 632).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) allows a court to revise an order "at any time before

the entry of a judgment adjudicating all the claims."  Fed. R. Civ. P. 54(b).  Courts retain broad

flexibility to revise interlocutory orders before final judgment as the litigation develops and new

facts or arguments come to light.  *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–

16 (4th Cir. 2003); *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015).  A court may revise an

interlocutory order under the same circumstances in which it may depart from the law of the case:

(1) "a subsequent trial produc[ing] substantially different evidence"; (2) a change in applicable

law; or (3) clear error causing "manifest injustice."  *Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman*,

845 F.2d at 69).  This standard closely resembles the standard applicable to motions to reconsider

final orders pursuant to Federal Rule of Civil Procedure 59(e), but it departs from such standard

by accounting for potentially different evidence discovered during litigation as opposed to the

discovery of "new evidence not available at trial."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148

F.3d 396, 403 (4th Cir. 1998).

## IV.    ARGUMENT

In its second motion for reconsideration of a recent order of this Court, the United States

has a heavy burden in demonstrating that the Court committed a clear error of law causing a

manifest injustice.[1]  To prevail on its Motion, therefore, the United States must demonstrate *both*

---

[1]    Although the United States does not clearly identify on which of the three Rule 54(b) factors it bases its Motion, it appears that the United States is solely arguing that the Court committed a clear error of law – although, notably, it does not assert a "manifest injustice."  In any event, because the United States does not assert that either of the two other factors in the standard Rule 54(b) analysis – the development of new evidence or a change in applicable law – are relevant here, RMST will not address them in its Opposition.

a clear error by the Court *and* that this error resulted in a manifest injustice. *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (Smith, C.J.). As the Fourth Circuit has described the standard applied to such motions: "[a] prior decision does not qualify for th[e] third exception by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 258 (4th Cir. 2018). Because this Court's decision was neither wrong nor worked a manifest injustice on the United States, its motion should be denied.

### A.     The Court did not commit any clear error of law in deciding to stay further action on the Motion to Intervene.

The United States asks the Court to reconsider an order regarding the management of its own docket as a result of the *United States'* own actions (and inaction). A trial court has nearly unfettered discretion concerning the prioritization of matters on its docket. *District of Columbia v. Trump*, 959 F.3d 126, 132 (4th Cir. 2020) (en banc) (concluding that seven-month delay in ruling on President's motion to dismiss was not an abuse of discretion). The United States claims that the Court erred in two respects: (1) that it still retains jurisdiction to decide the Motion to Intervene, in spite of the United States' Notice of Appeal; and (2) that there was no just cause to issue the Stay Order, because the Court has a constitutional obligation to decide the Motion to Intervene. The Court's decision to stay its decision on the United States' Motion to Intervene was not a clear error of law. To the contrary, it is the United States' Motion that rests on errors of law and it should, therefore, be denied.

### 1.     It is not clearly erroneous that the Court has jurisdiction and, in any event, it retains the authority to manage its own docket.

In the Stay Order, the Court cites to the Fourth Circuit's decision in *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), for the proposition that the filing of an appeal divests it of jurisdiction

to rule on a motion to intervene.  The United States argues that the Court's reliance on *Public Citizen* is clear error.  But the Court's citation to *Public Citizen* in the Stay Order does not constitute a clear error.  As an initial matter, *Public Citizen* holds that "a timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal." 749 F.3d at 258.  This includes motions to intervene. *Id*.  The Fourth Circuit did not expressly limit the holding in *Public Citizen* to final judgments. But, even if the United States is correct that the Second Circuit's decision in *Drywall Tapers & Pointers of Greater New York v. Nastasi & Assocs., Inc.*, 488 F.3d 88, 95 (2d Cir. 2007), allows courts in this Circuit to retain jurisdiction over "unrelated" matters,  the United States cannot  show that its status as a party is entirely unrelated to its appeal.  For example, as this Court noted, the United States took it upon itself to identify itself as an "Intervenor" to the Fourth Circuit.  Further, the United States' interest in this *in rem* maritime case – and its appeal of the Order – will certainly involve issues concerning the status of parties who may only statutorily assert *in personam* jurisdiction.  It is, therefore, unclear that the United States' status as a party is not also tied up in the issues related to the Notice of Appeal that it filed.

Further, the Motion to Intervene is not necessary to "aid…[the United States'] appeal," U.S. Mem. at 10 (quoting *Public Citizen*, 749 F.3d at 258-59)), which would allow the Court to entertain the Motion to Intervene even with jurisdiction vested in the Fourth Circuit.[2]  As discussed below and in *Public Citizen* itself, a third-party that can satisfy standing may still pursue an appeal to the Court of Appeals.  749 F.3d at 259-60.  Indeed, a disposition of the Motion to Intervene will

---

[2]        The United States also seems to misunderstand the purpose of the "in aid of appeal" exception.  *See* U.S. Mem. at 10.  The rationale for the exception is not to facilitate more appeals, as the United States suggests.  *Id*.  Instead, the purpose of the exception is to ensure that the appellate record is complete and accurate.  *Public Citizen*, 749 F.3d at 258.

not change the fact that the United States chose not to participate as a party to the Court's decision in the Order, which the United States has appealed.[3]   This is in contrast to any subsequent order issued by the Court concerning whether RMST has provided a satisfactory funding plan, as stated in the Order.   *See also* Order Regarding RMST Motion for Extension of Time (June 19, 2020) (ECF No. 624) (citing *Public Citizen* and stating that required funding plan is a matter that would aid the appellate process).   That type of order would clearly fall under the "in aid of appeal" exception, as it would promote judicial efficiency by fully fleshing out the substance of the decision that the United States has appealed.   *Public Citizen*, 749 F.3d at 258.

The United States relies here on *United Airlines, Inc. v. McDonald* for the proposition that its intervention strategy was appropriate and in aid of its appeal.[4]   U.S. Mem. at 10.   This reliance is misplaced.   *United Airlines* involved the appeal of a final judgment regarding a class action case by putative class members who had been excluded from the case after the trial court denied class certification during the early stages of the litigation.   432 U.S. 385, 390 (1977).   After the judgment was entered, the class plaintiffs moved to intervene and also filed a notice of appeal of the final judgment and the denial of class certification.   *Id*. at 394.   The Supreme Court approved of the plaintiffs' strategy, because they moved to intervene, "as soon as it became clear…that the interests of the unnamed class members would no longer be protected by the named class representatives." *Id*.   This only became clear to the plaintiffs in *United Airlines* at this late stage of the litigation, because the class representatives only indicated that they would not appeal the trial court's class

---

[3]       In its Motion to Intervene, the United States has only requested that it be granted *nunc pro tunc* to the date that the Motion to Intervene was filed, i.e., June 8, 2020, and not to a date prior to May 18, 2020.  (ECF No. 614.)

[4]       The United States relies also heavily on *United Airlines* in its Reply Brief in Support of its Emergency Motion to Intervene (ECF No. 632).  Like here, the case does not bear the weight that the United States places on it, because of its different procedural posture and the fact that the United States had ample opportunity to intervene prior to the Order.

certification decision once judgment was entered.  *Id*. at 394.  In reaching this conclusion, the

Supreme Court did not articulate a rule that last-minute intervention is always permitted.  Instead,

the Supreme Court provided a fact-based standard that the, "critical inquiry in every such case is

whether in view of all the circumstances the intervenor acted promptly after the entry of final

judgment." *Id* at 396.

Contrary to the United States' argument, *United Airlines* illustrates the flaws in the United

States' strategy, which is completely unrelated to the "in aid of appeal" exception.  The plaintiffs

in *United Airlines* could not participate in the case until the very end, because they were not a party

and class certification is not an appealable interlocutory order.  The United States, on the other

hand, had years to seek intervention in the case, even while filing pleadings as *amicus curiae*.

Further, the contention that some party had to be present to file an appeal that would protect the

*Titanic* wreck is certainly not a new development that prompted the United States' decision to

intervene after the May 18 Order.  *See* U.S. Mem. at 10.[5]  Thus, the United States' reliance on

*United Airlines* does not demonstrate a clear error by the Court.

Finally, even if the Court may retain jurisdiction over the Motion to Intervene, it was not

clear error for it to stay its consideration of it.  It is well established that a district court maintains

broad discretion over the management of its docket.  *District of Columbia*, 959 F.3d at 132; *see*

*also Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016) (stating that "that district courts have the

inherent authority to manage their dockets and courtrooms with a view toward the efficient and

expedient resolution of cases").  Accordingly, the Court's decision to stay any further action on

---

[5]      Neither does the record support the United States' premise that only a third-party intervenor to this *in rem action* can protect the wreck.  Since the trial court took constructive *in rem* possession of the wreck in 1993, it has gone to extraordinary lengths, *sua sponte* to protect the historic wreck, even without the presence of an intervening party, including by imposing the Covenants and Conditions as part of its 2012 interim *in specie* award.

8

the Motion to Intervene, pending resolution of the proceedings in the Fourth Circuit was not erroneous, but well within its discretion.

>    2.    **The United States' assertion that the Court is *obligated* to decide the Motion to Intervene does not make the Court's decision clearly erroneous.**

Ultimately, the United States asks the Court to effectively ignore the jurisdictional concerns and issue a ruling on the Motion to Intervene because it is obligated to do so. U.S. Mem. at 13-14. There is no legal support for this form of pressure that the United States is attempting to exert here, and it certainly does not demonstrate any error of law by the Court.

In support of its position, the United States relies exclusively on the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 US. 118 (2014), for the proposition that, "[w]here jurisdiction is proper, the Court's 'obligation to hear and decide cases within its jurisdiction is virtually unflagging.'" U.S. Mem. at 13 (quoting *Lexmark*, 572 U.S. at 126). This case is inapposite and does not support the suggestion that the Court's discretionary management of its docket here would constitute an error.

In *Lexmark*, the Supreme Court was confronted with a case in which the district court dismissed an Article III "case or controversy" based on a notion of "prudential standing." 572 U.S. at 125-26. The issue being discussed, therefore, was whether a district court could dismiss, on standing grounds, a case that was properly within its constitutional jurisdiction.[6] *Id*. The Supreme Court concluded that a district court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id*. at 128. Whether or not to dismiss a claim created by federal statute based on a judicially created notion of prudence is completely unrelated to a

---

[6]    The Supreme Court determined that the case was one of statutory interpretation and whether the plaintiffs sufficiently alleged a cause of action under the Lanham Act. *Lexmark*, 572 U.S. at 137-140. The actual issue decided by the Supreme Court, therefore, moves the *Lexmark* case even further afield from the United States' position.

district court's management of its own docket for a case that it has prudently and efficiently handled for nearly three decades.  Indeed, contrary to the district court in *Lexmark*, this Court nowhere suggested that it would *never* rule on the Motion to Intervene, but instead that it was waiting until the Fourth Circuit resolves the issue on appeal, a sequence of events resulting from ill-conceived procedural posturing by the United States.

In sum, the United States' suggestion that the Court is constitutionally obligated to hear its Motion to Intervene on the schedule most convenient to it is unsupported by law and, consequently, cannot constitute a clear error by the Court.

### B.     The United States' has not and cannot identify any manifest injustice resulting from the Court's Order.

It is insufficient to identify a clear error of law alone; the movant must also demonstrate that the error caused a manifest injustice.  *Evans*, 148 F. Supp. 3d at 544.  To warrant reconsideration, the injustice resulting from the challenged order must be "apparent to the point of being almost indisputable."  *Integrated Direct Mktg., LLC v. May*, No. 1:14-CV-1183-LMB, 2016 WL 7334278, at *1 (E.D. Va. Aug. 12, 2016) (quote and citation omitted).  The United States has not identified an alleged "injustice" resulting from the Court's alleged error, and certainly not one that is "indisputable."

The United States has not asserted any concrete injustice that it has allegedly suffered as a result of the Court's errors of law.  Although the United States does identify some challenges in its litigation strategy, these are not injustices.[7]  For example, the United States ironically suggests that a delay in deciding the Motion to Intervene precludes a party appeal of the Order, which appeal

---

[7]     The lack of any purported injustice has been underscored by the Fourth Circuit's briefing scheduling, which completes all briefing by October 8, 2020, less than three months from the date of this filing.  *See, e.g.*, *District of Columbia*, 959 F.3d at 132 (concluding that a district court's waiting seven months to decide a motion to dismiss was not an abuse of its discretion).

the United States has already noted, and which has already received a briefing schedule at the Fourth Circuit.

Even if true as a matter of law, though, this position cannot support the motion for reconsideration.  As an initial matter, the United States was not a party to the Order as a result of its *own* decision to delay an attempt at intervention until *after* the Court rendered its decision. Additionally, to the extent the United States has a legally sufficient interest in the case, it may still pursue an appeal of the Order as a non-party.  *Public Citizen*, 749 F.3d at 259-60 (describing appellate standing rules for non-party appeals).  Thus, the fact that the United States may not pursue the *precise* strategy on the exact timeline it wishes, does not rise to the level of an injustice.

Moreover, the injustice the United States seeks to avoid stems from its purported obligations to enforce Section 113.  Notwithstanding any decisions this Court makes in these matters, the United States retains the full panoply of its enforcement mechanisms existing outside of this *in rem* proceeding.  Indeed, this *in rem* proceeding against the *res* is not the appropriate, let alone most efficient, forum to enforce its purported statutory authority.  And to be sure, as the Court noted, nothing in the Order impairs or impedes the United States' ability to govern the persons whom Section 113 allegedly seeks to regulate: "[t]he court does not address any need for RMST to obtain additional authorizations required by law, such as under Section 113 of the Department of Commerce Appropriations Act of 2017, because such authorizations are beyond the scope of the Rule 54(b) modification."  Order at 10.   In this respect, because NOAA still retains its full scope of options to enforce Section 113 as permitted by federal law, it cannot prove an injustice based on any rulings of this Court's in these proceedings.[8]

---

[8]      For example, NOAA conceivably may file an *in personam* action against an entity that it believes has not complied with Section 113, or take any other action that Congress may eventually authorize it to take.

In short, the Motion seeks to have this Court do what Congress itself did not do:  give NOAA a means to enforce its asserted regulatory scheme in this *in rem* case in any way it sees fit. But properly so, the Court instead left NOAA alone to enforce Section 113 as the law permits. This is neither a manifest injustice nor a clear error of law.

Because the United States has not identified any manifest injustice resulting from the alleged legal errors by the Court, its Motion should be denied.

## V.      CONCLUSION

Based on the foregoing, RMST requests the Court deny the United States' Motion, because it has not demonstrated that the Court's Stay Order constitutes a clear error of law that resulted in a manifest injustice.  RMST, however, does not object to an indicative ruling, if the Court considers it appropriate.  RMST further joins the United States in suggesting that the Court conduct an evidentiary  hearing on those motions that the Court determines it properly has jurisdiction over, including the issues concerning the SEARCH, Inc. expedition raised in RMST's Periodic Report filed on July 7, 2020 (ECF No. 637).

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

_____/s/_____

William R. Poynter, VSB #48672
Ryan V.P. Dougherty, VSB #78444
Brian A. Wainger, VSB #38476
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 238-6383
Fax: (757) 304-6175
E-Mail: wpoynter@kaleolegal.com
E-Mail: rdougherty@kaleolegal.com
E-Mail: bwainger@kaleolegal.com

12

David G. Barger, VSB #21652
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
E-Mail: Bargerd@gtlaw.com

*Counsel for R.M.S. Titanic, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2020, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

           */s/*

William R. Poynter, VSB #48672
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 238-6383
Fax: (757) 304-6175
E-Mail: wpoynter@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*

14