# EXHIBIT 2



**Brian Wainger, Esq.**
Direct: 757.965.6804
bwainger@kaleolegal.com

July 16, 2020

**VIA EMAIL**
Mr. James Pochurek
President
SEARCH, Inc.
james@searchinc.com

RE: *Titanic Expedition*

Dear Mr. Pochurek,

  As counsel to RMS Titanic, Inc., ("RMST"), I acknowledge receipt of and thank you for your July 10, 2020 letter regarding the intentions of SEARCH to conduct an expedition to *Titanic* to, "test systems and conduct a non-disturbance survey of *Titanic,* tentatively scheduled for August 2-6, 2020." In your letter*,* you acknowledge RMST's "exclusive right to salvage" the wreck and state that that SEARCH, "will not be conducting any salvage or other activities directed at *Titanic* that may harm or disturb the site."

  Pursuant to a 1994 Order of United States District Court for the Eastern District of Virginia (the "Court"), in the matter styled as *RMS Titanic, Inc. v. The Wrecked and Abandoned Vessel,* CV: 2:93cv902, RMST indeed serves as the salvor-in-possession of the wreck and wreck site of the *Titanic* (the "Wreck"). As such, RMST maintains the exclusive rights to salvage the Wreck, to the exclusion of all other entities, and serves as a custodian of Wreck, keeping the Court informed of any actions taking place there. A copy of the 1994 Order, which as to RMST's salvage rights remains in full force and effect, is attached hereto as Exhibit 1. Based on your letter, you appear to acknowledge that SEARCH may not recover, touch, move or disturb the wreck or any artifact in the debris field.

  Insofar as the above-styled action before the Court remains an ongoing salvage case within the Court's jurisdiction, the implications of this Order extend beyond a simple prohibition on salvage or intentional physical disturbance of the Wreck. It also serves to prohibit third-parties such as SEARCH from interfering with RMST's exclusive possession of the wreck. *R.M.S Titanic, Inc. v Haver*, 171 F. 3d 943, 970 (4th Cir. 1999). Whether the activities proposed by SEARCH interfere with RMST's exclusive possession of the Wreck, or constitute a risk of interfering with the Wreck, depend on a detailed analysis of the SEARCH plans, including the extent to which the expedition constitutes a commercial, and not merely scientific enterprise which impedes RMSTs upcoming "Marconi" expedition, which has been planned for months. In this respect, the timing and urgency of the SEARCH expedition suggest an intent to derail RMST's expedition, and not merely the serendipitous "opportunity" you suggest.

Page 2
James Pochurek

The sources of data and other intellectual property being used by the SEARCH team in preparation for, and during the proposed expedition also portend interference with RMST's exclusive possession of the wreck. Several members of the SEARCH team including Jim Delgado and Dave Conlin participated in RMSTs 2010 Expedition, and signed releases acknowledging RMST's ownership of all intellectual property and derivative works that were developed with RMST intellectual property or RMST sponsorship. This includes all derivative works including mosaics, maps, videos, stills and time series studies produced by AIVL-WHOI. Based on the limited information available to it right now, the SEARCH expedition appears to be a continuation, or duplicative of work commissioned by RMST in its 2010 Expedition, and appears to rely heavily on intellectual property owned by RMST, which RMST has not given SEARCH or its team members permission to use. In particular, SEARCH appears poised to duplicate certain ongoing and completed work product of RMST, including the publishing of a detailed report on the Wreck (to include artifact positioning), as well as an ongoing time series study of the Wreck. If SEARCH or its team members possess or use such intellectual property, such conduct would be unlawful and would interfere with RMST's possession of the Wreck.

In addition, RMST believes the SEARCH technical plans and equipment are deficient, and demonstrate both insufficient planning and a lack of expertise that could risk damage to the wreck site. RMST has become aware of SEARCH's recent and ongoing attempts to secure technical hardware from a variety of suppliers for its expedition, suggesting that the expedition is hastily organized and focused on media not science.

Recently, another third-party conducted an expedition similar to the SEARCH plans, also using the Wreck as a high-profile venue for the testing of its novel equipment and methodologies. During that expedition, which was affirmatively approved by the Court, these third-parties piloted a submersible into a physical collision with the hull of *Titanic,* inadvertently damaging the wreck, and then concealing the damage from the Court and RMST for months. Given these recent events, RMST believes *Titanic* is not the appropriate venue to test hastily coordinated, new and unproven technologies, and that SEARCH should perform this testing elsewhere than a world heritage site.

Under these circumstances, based on the information currently available to it, RMST believes the SEARCH expedition will interfere with the property rights of RMST pursuant to the Court's admiralty jurisdiction. In addition, if the SEARCH expedition improperly utilizes intellectual property owned by RMST in the planning, execution or analysis of its expedition, such actions may well implicate private causes of action sounding in contract and tort against SEARCH and its affiliates, and its corporate and individual partners on the expedition. This letter also serves to put SEARCH on notice that it may not use any confidential or proprietary information belonging to RMST, including any intellectual property of RMST, in preparation for, or during the course of any expeditions, nor as part of any scientific study or publications.

Should SEARCH decide to continue pursuing its stated plans to visit the Wreck in the coming weeks, it must notify RMST and the Court of such plans, and must provide all relevant information, including without limitation: (i) its expedition plans and dive plans, (ii) its plans to adhere to the designated decent and ascent sites formalized in 2012, and (iii) its technical plans to adhere to maintaining a minimum standoff distance of 10 meters for both AUV and ROV

Page 3
James Pochurek

operations from any portion of the wreck site and seafloor outside of the designation descent and ascent areas.

RMST understands that SEARCH recently provided NOAA certain information regarding its plans. While NOAA and/or the United States Department of Commerce believe they have statutory duties with regard to the Wreck, RMST views notice to it and the Court as distinct obligations resulting from the Court's ongoing jurisdiction over the Wreck. Please provide the information requested above to RMST on or before July 23, 2020, to allow the Court and RMST sufficient time to consider the issues and schedule a hearing if necessary.

This letter is not a complete statement of our client's rights in connection with this matter and nothing contained herein constitutes an express or implied waiver of any rights, remedies or defenses in connection with this matter, all of which are expressly reserved.

Your immediate attention to this matter is required.

Very truly yours,

*/s/ Brian Wainger*

Brian Wainger