# EXHIBIT 1

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
RMS TITANIC, INC.,

               Plaintiff,

      -against-

MOBILE GROCERS OF AMERICA, LLC, STRONGBOW HOLDINGS, LLC, MAUREEN DALY, "JOHN DOES" #1-5, "JANE DOES" #1-5 and ABC CORP.,

               Defendants.
------------------------------------------------------------------------X

Index No.

Date Purchased:

**SUMMONS**

Basis of Venue:
CPLR § 503(a)

**TO THE ABOVE NAMED DEFENDANTS:**

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
          July 3, 2022

                                              **SILLS CUMMIS & GROSS P.C.**
                                              *Attorneys for Plaintiffs*

                           By: __/s/David F Segal_____
                                 David F. Segal, Esq.
                                 Lori K. Sapir, Esq.
                                 101 Park Avenue, 28th Floor
                                 New York, NY 10178
                                 (212) 643-7000

8950543v1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
RMS TITANIC, INC.,

                          Plaintiff,

  -against-

MOBILE GROCERS OF AMERICA, LLC,
STRONGBOW HOLDINGS, LLC, MAUREEN
DALY, "JOHN DOES" #1-5, "JANE DOES" #1-5 and
ABC CORP.,

                          Defendants.
-------------------------------------------------------------------X

Index No.

## COMPLAINT

Plaintiff, RMS Titanic, Inc. ("RMST"), by and through its attorneys, Sills Cummis & Gross P.C., as and for its Complaint against defendants Mobile Grocers of America, LLC ("Mobile"), Strongbow Holdings, LLC ("Strongbow"), Maureen Daly ("Daly", and together with Mobile and Strongbow, the "Defendants"), John Does #1-5, Jane Does #1-5 and ABC Corp., alleges and sets forth as follows:

### NATURE OF ACTION

1.      RMST brings this action to resolve a claim of ownership by Defendants to four artifacts recovered from the wreck site of the RMS *Titanic* (the "*Titanic*").

2.      The artifacts at issue consist of one gold coin and two articles of paper currency, all three of which were recovered during the 1987 expedition to the wreck site, and a piece of coal from the 1994 expedition (collectively, the "Artifacts").

3.      RMST is the salvor-in-possession of the wreck site of the *Titanic*, and trustee of the entire collection of artifacts recovered from all of the dives to the *Titanic* wreck site.

4.      There is no dispute that RMST, and its predecessors-in-interest, was the owner, as salvor, of the Artifacts. Indeed, Defendants acknowledge that fact. Defendants claim is that a

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

former President of RMST gifted the Artifacts to a former shareholder of RMST. Defendants assert a claim of ownership through said former shareholder.

5. RMST challenges the authority of a former officer to gift the Artifacts, and challenges the authenticity of the document purportedly evidencing that gift.

6. In contravention of RMST's rights, Defendants seek to auction the Artifacts by way of a public auction.

7. RMST has no remedy at law, and seeks a declaration that RMST is the lawful owner of the Artifacts and an Order directing that Defendants return the Artifacts to RMST, as well as an injunction enjoining Defendants from selling, transferring or otherwise disposing of the Artifacts.

## THE PARTIES

8. At all times herein mentioned, plaintiff RMST is a foreign business corporation duly authorized to conduct business in the State of New York.

9. At the relevant times set forth herein, plaintiff RMST had a principal place of business in the City of New York, County of New York, State of New York.

10. At all times herein mentioned, defendant Mobile is a foreign business corporation with a principal place of business at 3310 N. Bailey Street, Tampa, Florida 33603.

11. At all times herein mentioned, defendant Strongbow is a foreign business limited liability company with an address c/o Stellar Corporate Services LLC, 3500 South Dupont Highway, Dover, DE 19901.

12. At all times herein mentioned, defendant Daly is an individual whose last known address is 3310 N. Bailey Street, Tampa, Florida 33603.

13. At all times herein mentioned, defendant Daly was and is an officer and director of Mobile and Strongbow.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

14. Defendants "John Does" #1-5, "Jane Does" #1-5 and "ABC Corp." are intended to be persons and/or entities who claim an interest in the Artifacts and/or claim a right to sell the Artifacts.

## FACTS COMMON TO ALL CAUSES OF ACTION

**RMST, as Salvor in Possession
of the *Titanic* Wreck Site**

15. On April 15, 1912, the *Titanic*, a luxury British steamship, sank off the coast of Newfoundland in the North Atlantic Ocean after striking an iceberg.

16. The wreck of the *Titanic* was discovered on September 1, 1985 at the bottom of the Atlantic Ocean, some 13,400 feet underwater.

17. By RMST, and its predecessor-in-interest Titanic Venture Limited Partnership ("TVLP"), there have been seven expeditions to the wreck site of the *Titanic* – in 1987, 1993, 1994, 1996, 1998, 2000 and 2004 – where over five thousand artifacts have been recovered.

18. The artifacts recovered from the 1987 expedition first landed in France, which by convention obtained title to them. In 1993, TVLP obtained ownership as salvor to the artifacts from the 1987 expedition from France.

19. At the time, TVLP's General Partner, George Tulloch ("Tulloch") represented to the French authorities that TVLP "intends to make respectful use of the artifacts recovered from the Titanic in 1987 in memory of their initial owners" and that "the artifacts will only be used on a cultural purpose and will not, therefore, be part of any operations which would lead to their dispersion, but to the exception of exhibition purposes, and none of the artifacts will be sold." The French authorities subsequently granted title of the artifacts to TVLP.

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

20. The artifacts from the subsequent dives all landed in the United States, and ownership was awarded to RMST, as salvor, by the United States District Court, for the Eastern District of Virginia (the "District Court").

21. As a critical component of its salvage rights, the District Court directed RMST to serve as the steward and custodian of the wreck, and to perform an oversight function of protecting and preserving the wreck site and collection. The District Court has also directed RMST to notify the District Court when it learns of any actions that could violate the company's salvage rights or orders of the District Court, including with respect to third-party possession of, or efforts to sell artifacts recovered from the wreck site.

22. With respect to the artifacts recovered from the post-1987 dives, the District Court has directed that the collection be kept together and has put certain conditions on the sale of the collection with the exception of coal. Recovered coal, while considered an authentic artifact, is the only portion of the collection of artifacts that the District Court has granted permission for RMST to sell commercially.

**George Tulloch and G. Michael Harris**

23. G. Michael Harris ("GMH") was a former shareholder of RMST. He was intimately involved in RMST and participated in numerous expeditions to the *Titanic* wreck site.

24. GMH and Tulloch did not see eye-to-eye. They had different visions for RMST, which caused great controversy between them. They fought about many things, including the manner in which RMST operated and how the artifacts should be best utilized. GMH wanted to sell the artifacts for profit, and Tulloch never agreed to that.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

25. In 1999, GMH was part of a group that effectuated a hostile takeover of RMST, removing Tulloch from RMST. GMH was instrumental in garnering support from the other shareholders for the takeover.

26. Upon information and belief, GMH had been working since 1996 to mobilize the hostile takeover and Tulloch's removal from office.

**The Purported Gift to GMH**

27. GMH has claimed ownership to the Artifacts by way of a gift from Tulloch, which is purportedly evidenced by a copy of a letter dated August 15, 1997 (the "Letter") addressed to G. Michael Harris, with the moniker: "Mikey". Upon information and belief, Mr. Tulloch never publicly referred to GMH as "Mikey".

28. In the Letter, Tulloch, as President of RMST, thanked GMH for his support and various efforts. The letter states that it is a debt he would "never be able to fully repay and for that hard work and effort please accept these four modest gifts (listed below) …" The letter further states that "I, George Tulloch do hereby transfer any and all rights and title of ownership" to GMH in the Artifacts, and asserts that RMST has "no claim of ownership" to the Artifacts and that the Artifacts were not "a part of the [District Court]".

**RMST Learns of GMH's Claim of Ownership**

29. In or about January 2018, RMST was notified by counsel for Packwood Investments, LLC ("Packwood") that GMH had pledged the Artifacts to Packwood as collateral in a commercial transaction. GMH had allegedly defaulted on his obligations to Packwood, and Packwood intended to foreclose on the Artifacts and sell them on the open market.

30. At the time, RMST was in the midst of bankruptcy reorganization proceedings.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 1

Case 2:93-cv-00902-RBS Document 678-1 Filed 07/07/22 Page 7 of 10 PageID# 6428

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 07/03/2022

31. On or about February 20, 2018, RMST, through counsel, sent a letter to Packwood's counsel contesting the claims of ownership and lawful possession by GMH, and noted RMST's objections to any attempt to repossess or sell the Artifacts.

32. On April 5, 2018, RMST filed a Periodic Report with the District Court, advising the District Court of the disputed claim of ownership.

33. Upon information and belief, Daly is and was an officer or director of Packwood, and has had knowledge, since 2018, of the disputed claim of ownership.

**Defendants' Claim of Ownership**

34. On or about September 5, 2019, GMH filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. RMST was not notified of GMH's bankruptcy proceeding.

35. GMH listed the Artifacts as assets of his bankruptcy estate.

36. On or about December 29, 2021, the Artifacts were sold by the bankruptcy trustee to Mobile "as is where is" with no warranties of any kind, and that "[i]t is the buyer's responsibility to examine title or otherwise identify title."

37. Upon information and belief, Daly was at all relevant times an officer of Mobile.

38. Upon information and belief, Mobile subsequently transferred the Artifacts to Strongbow.

39. Upon information and belief, Daly is an officer of Strongbow.

40. Defendants have made arrangements with Guernsey's Action House in New York, New York ("Guernsey's") for the sale and auction of the Artifacts.

41. RMST, through counsel, notified Guernsey's of RMST's claim of ownership to the Artifacts. Guernsey has stated it has temporarily suspended its auction of the Artifacts.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

42. On or about May 5, 2022, RMST, through counsel, filed a Periodic Report with the District Court, advising the District Court of the development with the Artifacts.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

43. RMST reasserts and realleges each and every allegation contained in paragraphs "1" through "42" as though more fully set forth at length herein.

44. Tulloch, as President of RMST, had no authority to gift the Artifacts, and certainly could not do so in his individual capacity and without the approval of RMST's Board of Directors.

45. The alleged gift to GMH was an *ultra vires* act.

46. The alleged gift from Tulloch to GMH was not reasonable or realistic given the history between the parties.

47. Tulloch would not have gifted the Artifacts to GMH, an individual with whom he did not get along.

48. It was Tulloch's intent, as he represented to the French authorities, to use the artifacts for exhibitions and museums, not for dispersion, and Tulloch would not have parted with any of the artifacts recovered from the *Titanic*.

49. Tulloch would not have violated TVLP's representations to the French authorities, and its obligations to the District Court and RMST's role to protect the artifacts recovered from the wreck site by gifting the Artifacts to a third party.

50. The authenticity of the Letter is also disputed, as Tulloch did not address GMH as "Mikey" in public, and used the term in a derisive manner.

51. Further, upon information and belief, the signature on the Letter is not authentic.

52. RMST did not give up any rights, title or interest in the Artifacts, and could not have done so.

7

8943863
This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

8 of 10

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1   RECEIVED NYSCEF: 07/03/2022

Case 2:93-cv-00902-RBS-DEM Document 671-1 Filed 07/05/23 Page 9 of 10 PageID# 6430

53.     Defendants assert that they lawfully obtained ownership through GMH to the Artifacts.

54.     A justiciable controversy exists between the parties, and RMST has a legally protectable interest in the outcome of this action.

55.     RMST has no adequate remedy at law.

56.     By reason of the foregoing, RMST is entitled to (i) a declaration that RMST is the lawful owner of the Artifacts, and that Defendants have no legal rights or interests therein, and (ii) an Order directing Defendants to immediately return the Artifacts to RMST, as lawful owner.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunction)

57.     RMST reasserts and realleges each and every allegation contained in paragraphs "1" through "56" as though more fully set forth at length herein.

58.     Defendants intend to sell the Artifacts at a public auction.

59.     RMST asserts that it is lawful owner of the Artifacts, and Defendants have no right, title or interest therein.

60.     RMST has no adequate remedy at law.

61.     By reason of the foregoing, RMST requires a mandatory injunction prohibiting Defendants from selling, transferring or otherwise disposing of the Artifacts to any third party, including but not limited to or through Guernsey's or any other auction house, or otherwise taking any action in contravention to RMST's rights and interests in the Artifacts, pending a determination of the rights of the parties to this action.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**WHEREFORE**, RMST is entitled to judgment against defendants as follows:

A. On the First Cause of Action, (i) declaring that RMST is the lawful owner of the Artifacts, and that Defendants have no legal rights or interests therein, and (ii) directing Defendants to return the Artifacts to RMST, as lawful owner;

B. On the Second Cause of Action, the issuance of a mandatory injunction prohibiting Defendants from selling, transferring or otherwise disposing of the Artifacts to any third party, including but not limited to through Guernsey's or any other auction house, or otherwise taking any action in contravention to RMST's rights and interests in the Artifacts;

C. Costs, disbursements and attorneys' fees incurred in this action; and

D. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 3, 2022

**SILLS CUMMIS & GROSS P.C.**

By:   /s/ David F. Segal
David F. Segal, Esq.
Lori K. Sapir, Esq.
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000

8943863

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.