# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRONGBOW HOLDINGS, LLC,

                        Plaintiff,

—*against*—

RMS TITANIC, INC.,

                        Defendant.

22 Civ. 5680

## COMPLAINT

Plaintiff Strongbow Holdings, LLC ("Strongbow"), for its complaint against defendant RMS Titanic, Inc. ("RMST") hereby alleges as follows:

### INTRODUCTION

1. This case seeks to clarify that Strongbow is the rightful owners of four items recovered from the wreckage of the Titanic (a coin, two paper currency bills, and a piece of coal (the "Four Items")), and to obtain damages against RMST for baselessly casting a cloud on the title to the Four Items. RMST deliberately sabotaged a planned auction of the Four Items by falsely telling the auction house that it claimed a legal interest in the Four Items. When asked to retract its false statements, RMST refused to do so, forcing Strongbow to file this litigation.

2. The relevant events date back to 1987, when RMST's predecessor was involved in a salvage operation that recovered approximately 1,800 artifacts from the Titanic, including three of the Four Items at issue (all but the coal). RMST was later designated the "salvor-in-possession" of the Titanic by a federal court in Virginia.

3. In 1997, RMST transferred the Four Items to one of the founders of RMST, G. Michael Harris, who nearly 20 years later would pledge the Four Items as collateral for loans.

In 2019, Harris filed for bankruptcy and the trustee sold the Four Items to a company that would later transfer them to Strongbow.

4. The Four Items were supposed to be auctioned by a New York auction house, Guernsey's, last month, but the auction was derailed when RMST falsely claimed an unspecified legal interest in the Four Items, and falsely claimed that the Four Items were subject to the jurisdiction of the Eastern District of Virginia court.

5. The Virginia legal proceedings are long and complex, but the salient facts for purposes of this matter are simple. In 2006, the Fourth Circuit ruled that the Eastern District of Virginia lacked jurisdiction over items recovered in 1987 expedition, and that its authority extended only to the approximately 5,500 artifacts that were recovered in later expeditions, in the 1990s and 2000s. Also clear is the fact that pieces of coal are considered natural substances, not "artifacts," and so the court-ordered parameters relating to the Titanic artifacts exclude coal.

6. Strongbow has tried to gain clarity as to RMST's position, but to no avail. RMST appears intent on keeping a cloud hanging over the title of the Four Items, without bothering to set forth any theory for why it might have a claim.

7. In reality, it has no claim, because the Four Items were lawfully transferred to Harris twenty-five years ago. As discussed, three of the Four Items were recovered from the 1987 expedition that is outside the purview of the Eastern District of Virginia proceedings, and the fourth, the piece of coal, is not even considered a protected "artifact."

8. Even if RMST might have had a claim at some point in time, RMST has known about the transfer to Harris for so long that the time to bring such a claim has long since expired. When a putative owner of personal property sits on its rights beyond the limitations period, title vests with the person possessing the property. That is exactly the situation here.

9. The Court can and should clarify Strongbow's ownership of the Four Items, and award Strongbow substantial damages, to be determined at trial, for RMST's tortious conduct.

## JURISDICTION AND VENUE

10. This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because this is a suit between citizens of different states, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Specifically, Strongbow is a citizen of New York because its sole member is a trust which, for diversity purposes, is considered a citizen of New York. Both the trustee and beneficiaries of the trust are New York citizens. RMST is a Florida corporation with its principal place of business in Georgia.

12. RMST's tortious disruption of the auction has caused direct out-of-pocket losses to Strongbow, and a diminution in value of the Four Items, in an amount that far exceeds the jurisdictional threshold of $75,000.

13. This Court has personal jurisdiction over RMST because it has transacted business in New York. Specifically, RMST contacted a New York auction house, Guernsey's, by phone and by email falsely claiming a legal interest in the Four Items, and thereby effectively terminating the auction of the Four Items that was to occur in New York. This conduct caused injury to Strongbow, a New York citizen.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(3) because a substantial part of the events giving rise to the claims occurred in Manhattan, or, alternatively, under 28 U.S.C. § 1391(b)(3) because RMST is subject to the Court's personal jurisdiction.

## FACTS

**Discovery of the Titanic Wreckage and Subsequent Expeditions**

15. On April 15, 1921, the British passenger ship, the R.M.S. Titanic sank in the North Atlantic, on its maiden voyage from Southampton, U.K., to New York. More than 1,500 of the approximately 2,200 passengers died.

16. D. Michael Harris, a filmmaker and explorer (and the father of G. Michael Harris), led the first expeditions in search of the Titanic wreckage in the 1980s. The wreckage was found in 1985.

17. In 1987, Harris's company Titanic Ventures Limited Partnership ("TVLP")—the predecessor to RMST—partnered with a French firm to lead a salvage expedition. Over the course of 32 dives, they recovered approximately 1,800 artifacts.

18. There have been six subsequent expeditions (1993, 1994, 1996, 1998, 2000, and 2004), with over 5,500 artifacts recovered. The recovered artifacts, include, for example, a steel door, a bowler hat, a chandelier, and pages of sheet music.

19. D. Michael Harris's son, G. Michael Harris, was involved in the business from its earliest days, and led an expedition to the Titanic wreckage in 2005.

**RMST Transfers the Four Items to G. Michael Harris**

20. In 1993, RMST acquired all of TVLP's assets and liabilities, including its interests in the Titanic wreckage.

21. In August 1997, the then-President of RMST, George Tulloch, acting on behalf of the company, gave G. Michael Harris the Four Items. The Four Items are three artifacts from the 1987 expedition (one 1912 gold coin and two $5 bills), and one piece of coal from the 1994 expedition.

4

22. The transfer was memorialized in a letter that described the Four Items as a "token of our immense gratitude," and stated that, "[w]ithout your financial support to the company, myself and the TVLP partners RMS Titanic, Inc. would not have survived."

**The Eastern District Salvage Litigation and Its Exclusion of the 1987 Artifacts**

23. In August 1993, RMST filed an action in the U.S. District Court for the Eastern District of Virginia, requesting (among other things) that the district court exercise *in rem* jurisdiction over the Titanic to award it exclusive salvage rights.

24. In June 1994, the court conferred exclusive "salvor-in-possession" status to RMST. A salvor gains a lien on the recovered property, so that it ultimately may be paid a salvage award for its efforts.

25. The court's decision was based, in part, on representations by RMST that it would keep the recovered artifacts together, and make them available for the public's benefit.

26. In February 2004, RMST filed a motion to finally settle its salvage award, and it requested that it be awarded full, unencumbered title to all the recovered artifacts. The court disagreed that RMST should simply be given title to the artifacts because (among other reasons), the decision to confer salvor-in-possession status was premised on RMST's promises to preserve the artifacts for the public interest.

27. RMST appealed. In January 2006, the U.S. Court of Appeals agreed that it would not be proper to confer title to all the artifacts to RMST, but, critically for purposes of this case, made clear that the items recovered in the 1987 expeditions were beyond the district court's jurisdiction. *See R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 435 F.3d 521 (4th Cir. 2006). The Fourth Circuit explained that, because the "1987 artifacts had been removed from the Titanic" six years before the litigation was filed in 1993, they "were not part of the *res* over which the district court could assert *in rem* jurisdiction." *Id.* at 529.

28. In August 2010, the Eastern District court ruled that RMST would be entitled to a salvage award equal to 100% of the fair market value of the artifacts recovered in the post-1987 expeditions. The court ruled that the award could be made "*in specie*" (*i.e.*, by transferring title), so long as RMST complied with certain "Covenants and Conditions" that RMST had negotiated with the U.S. government, such as a commitment to keep the collection together and to periodically update the court on developments. *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F. Supp. 2d 784 (E.D. Va. 2010).

29. In August 2011, the Eastern District formally awarded title to all the artifacts recovered in the post-1987 expeditions to RMST, subject to the 2010 "Covenants and Conditions."

30. Today, RMST operates exhibitions of Titanic artifacts, such as one is at the Luxor casino in Las Vegas and another in downtown Orlando, Florida.

**G. Michael Harris Pledges His Artifacts for Loans**

31. In July 2014, G. Michael Harris borrowed $25,000 from a friend, Douglas Prescott, and pledged as collateral for the loan the Four Items. Harris later told the *Tampa Bay Times* that the loan was intended to fund Harris's interest in a museum dedicated to the reality television show "Duck Dynasty." *See* Melena Carollo, *Titanic artifact salvager sued for failing to repay $25,000 loan*, Tampa Bay Times (Aug. 15, 2018).

32. In July 2017, a company called Packwood Investments, LLC ("Packwood") filed a UCC-1 financing statement indicating that it, too, held a lien to Four Items, based on a pledge from Harris.

33. In April 2018, RMST filed one of its periodic reports with the Eastern District of Virginia court, and stated that it had learned of the Packwood lien.

6

34. Attached to the filing is a letter, dated February 20, 2018, from RMST's counsel to Packwood's counsel claiming that "title to the Artifacts and the piece of coal belongs to" RMST. Conspicuously missing from the letter is any explanation of why or how that could be the case. RMST simply claimed that it was disputing Packwood's right to Four Items.

35. Also attached to the filing was a copy of the 1997 letter from Tulloch to Harris conveying the Four Items. There is no indication or suggestion in RMST's April 2018 filing that the letter was fake or improper.

36. RMST reported to the court that it was "conitinu[ing] to investigate the facts and issues" surrounding the ownership of the Four Items, and would "consider its options." It is unclear what investigation took place. What is clear, however, is that that RMST did absolutely nothing in the ensuing years to establish any claimed rights to the Four Items.

**The Trustee for G. Michael Harris's Bankruptcy Sells the Four Items**

37. In September 2019, Harris filed for Chapter 7 bankruptcy. His petition listed Packwood and Prescott as secured creditors with an interest in the Four Items.

38. On December 29, 2021, the bankruptcy trustee sold the Four Items to a company that would later transfer them to Strongbow.

39. Upon information and believe, RMST's counsel, Brian Wainger was aware of the bankruptcy before the bankruptcy trustee sold the Four Items.

40. Upon information and believe, others at RMST were aware of the bankruptcy before the bankruptcy trustee sold the Four Items.

41. RMST did nothing to assert any purported right to the Four Items during the bankruptcy.

7

**RMST Sabotages the Planned Auction of the Four Items**

42. The Four Items were scheduled to be auctioned by the New York auction house, Guernsey's, in June 2022. Guernsey's had spoken with potential bidders and advertised the auction online. But RMST's improper actions brought the auction process to an abrupt halt.

43. On April 29, 2022, an attorney for RMST, Brian Wainger, called Guernsey's President, Arlan Ettinger, in New York to assert RMST's purported claim to the Four Items. Wainger followed up the call with an email to Ettinger, stating that RMST "claims a legal interest" in the Four Items, and, further, that the Four Items were "subject to the jurisdiction of the United States District Court for the Eastern District of Virginia."

44. On May 17, 2022, RMST publicly filed with the Eastern District of Virginia court a periodic report suggesting that RMST held unspecified "legal claims to" the Four Items.

45. Guernsey's was forced to cancel the auction because of the cloud created by RMST's false assertions.

**RMST's Claims Are Baseless**

46. RMST's asserted legal interest in the Four Items is baseless, and clearly so. RMST knew or at least should have known that it had no basis to make its claims, and that doing so would sabotage the auction.

47. The claim that the Four Items are subject to the Eastern District Court's jurisdiction is false. Three of the Four Items were recovered in the 1987 expedition, and, as mentioned, the Fourth Circuit has squarely held that items recovered in that expedition fall outside the jurisdiction of the Eastern District of Virginica court.

48. The final item, a piece of coal, does not qualify as a protected "artifact," because "coal is natural and not man-made." *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 924 F. Supp. 714, 718 (E.D. Va. 1996). Coal recovered from the Titanic is "expendable and

8

saleable," *id*., and is explicitly excluded from the applicable Covenants and Conditions. *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F. Supp. 2d 784, 811 (E.D. Va. 2010) (excluding "lumps of coal recovered from The RMS TITANIC wreck site").

49. Even if RMST somehow had a legal claim to the Four Items, the time to assert its rights has expired, given that they were transferred from RMST in 1997—*twenty five* years ago.

50. And even if the limitations period is calculated from when RMST may have learned of the transfer, RMST has still waited too long. Upon information and belief, RMST has known about the transfer of the Four Items since the 1990s or the 2000s. At a minimum, RMST was aware of the issue when it reported the matter to the Eastern District court in April 2018.

51. RMST would have had to bring any action to recover the Four Items within three years. CPLR 213(4). Having failed to do so, title was properly vested with Harris, and hence properly transferred to Strongbow. Under long-settled law, "where one has had the peaceable, undisturbed, open possession of real or personal property, with an assertion of his ownership, for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title." *Lightfoot v. Davis*, 91 N.E. 582, 583 (N.Y. 1910) (quoting *Campbell v. Holt*, 115 U.S. 620, 623 (1885));

52. On June 24, counsel for Strongbow wrote a letter to RMST demanding that it clarify the record, so that the auction could proceed. Strongbow requested a response by July 1, 2022. None has been received

### FIRST CAUSE OF ACTION—DECLARATORY JUDGMENT

53. Strongbow repeats the allegations above.

54. There is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Specifically, the parties dispute who is the rightful owner of the Four Items.

9

55. Strongbow seeks a judicial declaration that RMST has no legal claim to the Four Items, and that Strongbow holds good title to them.

### SECOND CAUSE OF ACTION—SLANDER OF TITLE

56. Strongbow repeats the allegations above.

57. RMST made a series of communications, both directly to Guernsey's an in its public court filings, falsely casting doubt as to the title of the Four Items.

58. These statements were reasonably calculated to cause harm because RMST plainly knew (and indeed intended) that its statements would derail the auction—which is exactly what happened.

59. Strongbow was injured as a result of the cancelled auction.

### SECOND CAUSE OF ACTION—TORTIOUS INTERFERENCE

60. Strongbow repeats the allegations above.

61. In early 2022, RMST knew about the forthcoming auction of the Four Items

62. RMST knew that it was not the rightful owner of the Four Items, but nonetheless intentionally interfered with the auction, out of malice. It did so by making a series of false and blatantly dishonest statements about its purported interest in the Four Items.

63. RMST actions have caused massive damage to Strongbow, insofar as they have sabotaged the auction and harmed the value of the Four Items.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Strongbow hereby demands

(a) a judicial declaration that RMST has no legal claim to the Four Items, and that Strongbow holds good title to them;

(b) damages against RMST in an amount to be determined at trial, and inclusive of attorneys' fees and costs; and

(c) such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>July 5, 2022 | Respectfully submitted,<br><br>STEPTOE & JOHNSON LLP<br><br>By: */s/ Charles Michael*<br>Charles Michael<br>1114 Avenue of the Americas<br>New York, New York 10036<br>(212) 506-3900<br>cmichael@steptoe.com<br><br>*Counsel for Plaintiff Strongbow Holdings, LLC* |