**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**R.M.S. TITANIC, INC., successor-in-interest to**
**Titanic Ventures, limited partnership,**
                **Plaintiff,**

**v.**                                                              **Civil Action No. 2:93cv902**

**THE WRECKED AND ABANDONED VESSEL,**        **VERIFIED COMPLAINT**
**ITS ENGINES, TACKLE, APPAREL,**
**APPURTENANCES, CARGO, ETC., LOCATED**
**WITHIN ONE (1) NAUTICAL MILE OF A POINT**
**LOCATED AT 41 43' 32'' NORTH LATITUDE**
**AND 49 56' 49" WEST LONGITUDE,**
**BELIEVED TO BE THE R.M.S. TITANIC**
<u>**in rem**</u>**,**
                **Defendant,**

**and**

**UNITED STATES OF AMERICA,**
                **Intervenor.**

<u>**INTERVENOR'S VERIFIED COMPLAINT FOR**</u>
<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>

**INTRODUCTION**

1.   This intervenor complaint brought by the United States of America requests declaratory

and injunctive relief, 28 U.S.C. §§ 2201 and 2202, to resolve important legal questions

concerning the applicability of federal law in this admiralty proceeding.

2.   The purpose of this complaint is to protect the United States' interests in the proper

application and implementation of Section 113 of the Consolidated Appropriations Act, 2017,

Pub. L. No. 115-31 (May 5, 2017) ("Sec. 113"); to determine the scope of Plaintiff R.M.S.

Titanic, Inc.'s salvage activities, liabilities, and obligations under federal law; to ensure Plaintiff

R.M.S. Titanic, Inc.'s compliance with Sec. 113; and, to ensure the United States' ability to

comply with its obligations under federal law and the Agreement Concerning the Shipwrecked Vessel R.M.S. Titanic and its Annex Rules (together, the "International Agreement").

3.   To that end, this complaint seeks a declaration that R.M.S. Titanic, Inc. must comply with Sec. 113 when conducting activities at *Titanic*, and must obtain an authorization from the Secretary of Commerce before conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic.*"

4.   This complaint also seeks to enjoin R.M.S. Titanic, Inc. from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*," including the activities described in its June 13, 2023, Periodic Report (ECF No. 686) unless and until it has obtained an authorization for such activity from the Secretary of Commerce pursuant to Sec. 113.

## PARTIES

5.   Intervenor United States of America has an independent interest in the protection and preservation of the wreck, wreck site and artifacts of the R.M.S. *Titanic* ("*Titanic*"), including on behalf of the public interest, and also asserts a right to seek such protection and preservation on *Titanic*'s behalf, by virtue of the RMS Titanic Maritime Memorial Act of 1986 (the "1986 Memorial Act"); the "Guidelines for Research, Exploration and Salvage of RMS Titanic" ("NOAA Guidelines"); Sec. 113; the International Agreement; the Revised Covenants and Conditions; and the orders of this Court.  The United States' responsibilities under the foregoing are carried out by, among others, the Secretary of Commerce, the Secretary of State, the National Oceanic and Atmospheric Administration ("NOAA"), and the NOAA Administrator.

6.   R.M.S. Titanic, Inc. ("RMST") is a wholly owned subsidiary of Premier Acquisition Holdings LLC ("PAHL"), a Delaware Limited Liability Corporation.  Since June 1994, RMST

has served as the exclusive salvor-in-possession of the *Titanic* wreck and wreck site pursuant to an order of this Court.

## JURISDICTION AND VENUE

7.   Jurisdiction is proper in this Court as the United States is asserting causes of action and because the case raises important questions of the application of federal law to admiralty proceedings.  28 U.S.C. §§ 1331, 1333, 1345.

8.   Venue is proper in this District and Division because a substantial part of the events giving rise to the claims occurred herein in connection with this proceeding.  28 U.S.C. § 1391(b)(1) and (b)(3); Local Rule 3(C).

## FACTUAL ALLEGATIONS

9.   On April 15, 1912, the *Titanic* struck an iceberg roughly 400 miles off the coast of Newfoundland in international waters.  Within three hours, *Titanic* broke in two and sank to the ocean floor, scattering thousands of artifacts in a debris field between the two pieces of the hull, and taking more than 1,500 passengers and crew to their death, many of whom were still on the ship when it sank.  *Titanic's* location remained a mystery until 1985, when it was discovered by a joint United States-French expedition.

10. In 1986, Congress enacted the 1986 Memorial Act. 16 U.S.C. §§ 450rr *et seq*.  Finding that *Titanic* "is of major national and international cultural and historical significance, and merit[ed] appropriate international protection," *id.* § 450rr(a)(3), it was Congress' sense that "no person should conduct any such research or exploratory activities which would physically alter, disturb, or salvage the R.M.S. Titanic" pending adoption of an international agreement and guidelines aimed at activities at *Titanic*, *id.* § 450rr-5.

11. A stated purpose of the 1986 Memorial Act was to "encourage international efforts to designate the R.M.S. Titanic as an international maritime memorial to those who lost their lives aboard her in 1912." *Id*. § 450rr(b)(1).

12. The 1986 Memorial Act directed the NOAA Administrator, in consultation with the Secretary of State, to consult with interested nations to develop international guidelines for research on, exploration of, and if appropriate, salvage of *Titanic*. *Id*. §§ 450rr(b)(3), 450rr-3.

13. The 1986 Memorial Act also directed the Secretary of State, in consultation with the NOAA Administrator, to enter into negotiations with interested nations to develop an international agreement to designate *Titanic* as an international maritime memorial. *Id*. §§ 450rr(b)(2), 450rr-4.

14. RMST's predecessor began salvage operations at *Titanic* in 1987 and, by 2004, the last year RMST conducted salvage activities, approximately 5,500 artifacts had been recovered.

15. In 1993, RMST brought some of the recovered artifacts to the Eastern District of Virginia and commenced this admiralty proceeding.  ECF No. 1.  The district court assumed constructive in rem jurisdiction over the wreck and wreck site, and, on June 7, 1994, awarded RMST exclusive salvor-in-possession status, ECF No. 37, a status that continues to the present.

16. As salvor of a historic wreck, RMST serves in a trust relationship on behalf of the public interest.  *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 435 F.3d 521, 536 (4th Cir. 2006).

17. In 2001, the NOAA Administrator issued the NOAA Guidelines to "guide the planning and conduct" of research, exploration and, if appropriate, salvage of *Titanic*.  66 Fed. Reg. 18905 (Apr. 12, 2001).  The NOAA Guidelines were developed in consultation with the United Kingdom, France, and Canada.  *Id.*

18.  The NOAA Guidelines concluded that "it [was] appropriate to treat *RMS Titanic* as a gravesite," and that the "preferred policy" and "first option" for the protection of the wreck and wreck site was "*in situ* preservation" unless "justified by educational, scientific, or cultural interests."  66 Fed. Reg. at 18907, 18912.

19. Pursuant to the NOAA Guidelines, activities are to have the "minimum adverse impact" on *Titanic* and its artifacts. Entry into the hull is discouraged, and non-destructive and non-intrusive methods are encouraged over those involving "recovery or excavation."  66 Fed. Reg. at 18912.  Recovered artifacts are to be conserved and curated in accordance with the NOAA Guidelines and "kept together and intact as project collections."  *Id.*

20. Like the 1986 Memorial Act, the NOAA Guidelines discourage any activity that "would physically alter, disturb, or salvage the *RMS Titanic*" pending adoption of an international agreement and international guidelines. 66 Fed. Reg. at 18912.

21. Negotiation of the International Agreement began with informal discussions in 1995 and concluded in 2000.  19 T.I.A.S. 1118.  The United Kingdom signed and accepted the International Agreement in 2003.  The United States signed the International Agreement in 2004, with formal acceptance subject to the enactment of implementing legislation.

22. The International Agreement calls for *Titanic* to be recognized as "a memorial to those men, women and children who perished and whose remains should be given appropriate respect, in accordance with this agreement;" and "an underwater historical wreck of exceptional international importance having a unique symbolic value."  Int'l Agr., Art. 2(a) and 2(b).

23. On May 5, 2017, Sec. 113 was enacted into law.

24. Sec. 113 provides:

> For fiscal year 2017 and each fiscal year thereafter, no person shall conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or

wreck site of the RMS *Titanic* unless authorized by the Secretary of Commerce per the provisions of the Agreement Concerning the Shipwrecked Vessel RMS *Titanic* [the International Agreement].  The Secretary of Commerce shall take appropriate actions to carry out this section consistent with the Agreement.

Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 113 (May 5, 2017).

25. Sec. 113 provided implementing legislation that enabled the United States to deposit its instrument of acceptance with the United Kingdom, which triggered the International Agreement's entry into force on November 18, 2019.  *See* ECF Nos. 581, 581-1.

26. The International Agreement requires Parties to the agreement to regulate activity at *Titanic* by its nationals and vessels "through a system of project authorizations."  Int'l Agr., Art. 4.  Project requests are reviewed and authorizations issued in accordance with the "Rules Concerning Activities Aimed at the RMS Titanic and/or Its Artifacts" ("Annex Rules").  Int'l Agr., Art. 1(c), Art. 3, Art. 4, and Annex Rules.

27. Sec. 113 charges the Secretary of Commerce[1] with the responsibility to regulate activity at *Titanic* "that would physically alter or disturb the wreck or wreck site of the RMS Titanic" "consistent with" and "per the provisions" of the International Agreement.

28. In exercising constructive <u>in rem</u> jurisdiction with respect to *Titanic*, the court must approve any proposed salvage activity at *Titanic* by any person in addition to any authorization required by Sec. 113.  84 Fed. Reg. 38,012 (Aug. 5, 2019); ECF Nos. 564, 564-2.

29. Sec. 113 and the International Agreement "regulate" "entry into the hull sections of RMS Titanic so that they [the hull sections], other artifacts and any human remains are not disturbed," and "regulate" activities aimed at artifacts "found outside the hull of the wreck" "so that all such

---

[1] On August 29, 2018, the Secretary of Commerce delegated her authority to review and issue authorizations under Sec. 113 to the NOAA Administrator.  ECF Nos. 491 and 491-1.  (The Secretary of Commerce retained her authority to address any conflicts arising between Parties to the International Agreement.  *Id.*)  References to actions by the "Secretary of Commerce" in this Complaint are to be construed as including actions by the NOAA Administrator by delegation.

6

activities are, to the maximum extent practicable, conducted in accordance with the [Annex] Rules."  Int'l Agr., Art. 4, ¶¶ 1(a) and (b).

30. Like the NOAA Guidelines, the International Agreement's Annex Rules state the "preferred policy" for the protection of the wreck and wreck site is "*in situ* preservation" unless justified by "educational, scientific or cultural interests;" that contemplated activities should have the "minimum adverse impact" on *Titanic* and its artifacts; and that non-destructive and non-intrusive methods are encouraged over those involving "recovery or excavation."  Annex Rules, Sec. I.

31. Sec. 113 and the International Agreement require that Parties to the agreement timely inform, consult with, and consider the views of other Parties with respect to any requests made pursuant to Sec. 113 to conduct activity aimed at *Titanic*.  Int'l Agr., Art. 5.

32. Since 2007, the district court has entrusted the United States to oversee RMST's activities "in order to preserve and protect" *Titanic* and its artifacts "as an international treasure for posterity, and the United States' efforts and interests in this regard."  *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 531 F. Supp. 2d 691, 693 (E.D. Va. 2007).

33. In 2010, the district court granted RMST an *in specie* salvage award, subject to Revised Covenants and Conditions that RMST had negotiated with the United States.  *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 804 F. Supp. 2d 508, 509 (E.D. Va. 2011).

34. The court required the Revised Covenants and Conditions to "ensure . . . reasonable oversight by NOAA . . . to protect the United States' interests in the Titanic wreck site and the artifacts recovered therefrom." *R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel*, 742 F. Supp. 2d 784, 792 (E.D. Va. 2010).

35. The Revised Covenants and Conditions acknowledge that NOAA is "the federal agency that represents the public interest in TITANIC [artifact] Collections." *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 742 F. Supp. 2d at 809-824.

36. The Revised Covenants and Conditions acknowledge that "NOAA's authority to represent the public interest in this matter is consistent with NOAA's authority under the RMS TITANIC Maritime Memorial Act of 1986 and NOAA's 2001 implementing Guidelines." *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 742 F. Supp. 2d at 809-824.

37. Based on the 1986 Memorial Act, the NOAA Guidelines, the International Agreement and its Annex Rules, Sec. 113, and the Revised Covenants and Conditions, the United States is responsible (through the Secretary of Commerce and NOAA) for representing the public interest in *Titanic*.

38. The law of salvage applicable to these proceedings is the general maritime law, as modified and supplemented by governing statutes and treaties.

39. Sec. 113 modified and supplemented the general maritime law as it pertains to *Titanic* to require any person subject to the jurisdiction of the United States wanting to "conduct any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" to seek an authorization from the Secretary of Commerce before conducting such activity.

40. In the absence of an authorization from the Secretary of Commerce, "physically alter[ing] or disturb[ing] the wreck or wreck site of the RMS *Titanic*" is prohibited.

41. RMST has been provided notice of Sec. 113 and its requirements on multiple occasions, including as recently as April 24, 2023. *See* ECF Nos. 430, 549-5, 602 (at 16 and n.16), 690-1.

42. On June 13, 2023, RMST filed a Periodic Report in which it stated its intention to conduct a "research and recovery expedition" to *Titanic* in or around May 2024 ("2024 Expedition").  ECF No. 686 at 2.

43. The Periodic Report describes the objectives of the 2024 Expedition as including "targeted artifact recovery of items in the debris field;" "penetrat[ion] of the hull" through existing openings; and potential recovery of "free-standing objects inside the wreck . . . but only if such objects are not affixed to the wreck."  *Id.*

44. The activities RMST proposes to conduct during its 2024 Expedition are activities regulated by Sec. 113 that require authorization from the Secretary of Commerce.

45. RMST states that, while it will "work collaboratively" with NOAA on its plans, it does "not intend to seek a permit under Section 113."  ECF No. 686 at 3.

46. On information and belief, including RMST's repeated statements of intent and denials that Sec. 113 applies to its activities at *Titanic*, *see* ECF No. 429 at 5 (characterizing Sec. 113 as a "deliberate end-run" around the district court's admiralty jurisdiction); ECF No. 605 at 13 (stating that it would "take its orders from this Court, not from NOAA"); ECF No. 625-4 at 3 ("For the record, R.M.S.T. doesn't believe that 113 is enforceable or constitutional"), RMST will not comply with Sec. 113 prior to undertaking the 2024 Expedition absent a Court order to do so.

47. The activities that RMST describes in its Periodic Report, and that RMST has declared it will conduct without obtaining a prior authorization from the Secretary of Commerce pursuant to Sec. 113, will be conducted in violation of federal law.

48. Should RMST proceed with the activities described in its Periodic Report without obtaining a prior authorization from the Secretary of Commerce pursuant to Sec. 113, it will

prevent the United States from fulfilling its legal obligations under federal law and the International Agreement.

49. Should RMST proceed with the activities described in its Periodic Report without obtaining a prior authorization from the Secretary of Commerce (as delegated to the NOAA Administrator) pursuant to Sec. 113, it will deprive *Titanic* of the protections Congress deemed appropriate for an international maritime memorial.

## LEGAL CLAIMS

50. In the case of an "actual controversy," a district court may "declare the rights and other legal relations of any interested party seeking such declaration.  28 U.S.C. § 2201.  "Further necessary or proper relief" may be sought based on any such declaration and the rights of the United States.  28 U.S.C. § 2202; *see, e.g.*, *United States v. United Mine Workers*, 330 U.S. 258 (1947).

51. "A declaratory judgment is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" or "will terminate and afford relief from the "uncertainty, insecurity, and controversy giving rise to the proceeding."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (internal quotation marks omitted).

52. An injunction is an equitable remedy that is available upon a showing of irreparable injury; inadequate remedies at law; that the balance of hardships favors an injunction; and that the public interest would not be disserved by an injunction.  *SAS Institute, Inc. v. World Programming Limited*, 874 F.3d 370, 385 (4th Cir. 2017).

## COUNT ONE
### (Declaratory Relief)

53. Paragraphs 1 through 52 above are incorporated herein by reference.

54. Sec. 113 is a lawful Act of Congress signed into law by the President in 2017.

55. Sec. 113 prohibits any person subject to the jurisdiction of the United States from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" unless authorized by the Secretary of Commerce per the provisions of the International Agreement.

56. Activities conducted by RMST pursuant to its exclusive salvage rights to *Titanic* are subject to regulation to the extent that they fall within the scope of Sec. 113, and RMST's salvage rights are conditioned on and modified by Sec. 113.

57. RMST is subject to the jurisdiction of the United States, and the planned activities described in its June 13, 2023, Periodic Report are prohibited by Sec. 113 unless authorized by the Secretary of Commerce.

58. As the exclusive salvor-in-possession, RMST disputes that Sec. 113 applies to its activities at *Titanic*. RMST also disputes that Sec. 113 could be constitutionally applied to RMST's activities. Thus, RMST refuses to seek an authorization from the Secretary of Commerce to conduct the activities like those described in its June 13, 2023, Periodic Report during the 2024 Expedition.

59. RMST's refusal to comply with Sec. 113 prevents the United States from fulfilling its legal obligations under federal law, including the responsibility of the Secretary of Commerce to review and evaluate the merits of RMST's proposed activity in accordance with the provisions of the International Agreement.

60. RMST's refusal to comply with Sec. 113 prevents the United States from fulfilling its legal obligations under the International Agreement, including its obligation to provide the United Kingdom 90 days to review and submit comments on an authorization request.

61. RMST's refusal to comply with Sec. 113 deprives *Titanic* of the protections to its integrity conferred by Sec. 113 and the incorporated International Agreement, including protection from having artifacts and the hull sections disturbed.

62. A declaration clarifying the applicability of Sec. 113's requirements to RMST in this admiralty proceeding will aid in resolving the dispute between RMST and the United States, afford relief to the controversy between RMST and the United States, and provide the protection to *Titanic* that Congress has mandated.

## COUNT TWO
### (Injunctive Relief)

63. Paragraphs 1 through 62 above are incorporated herein by reference.

64. RMST's refusal to comply with Sec. 113 irreparably harms the United States because such refusal prevents the United States from fulfilling its legal obligations under federal law and the International Agreement, and impairs the United States' ability to implement the International Agreement.

65. *Titanic*, its wreck site, and its artifacts are irreparably harmed by RMST's refusal to comply with Sec. 113 because they will be deprived of the protections that the Sec. 113 review and authorization process provides and that Congress deemed were necessary before any actions that would physically alter or disturb the wreck or wreck site can occur.

66. No post-activity remedy adequately redresses the harm to the United States and *Titanic* because the conduct prohibited by Sec. 113 and the incorporated International Agreement absent an authorization will have already occurred and will result in irreversible injury to the wreck's and wreck site's integrity and *Titanic's* status as an international maritime memorial.

67. The balance of hardships and public interest favors compelling RMST's compliance with Sec. 113 and doing so does not impermissibly infringe on RMST's salvage rights.

12

68. The balance of hardships and public interest favors compelling RMST's compliance with Sec. 113 because the public is harmed if the United States cannot implement and enforce duly enacted federal law or comply with its obligations under international agreements. In addition, the public would be harmed by a violation of Sec. 113 because—as the 1986 Memorial Act, the NOAA Guidelines, the International Agreement and its Annex Rules, Sec. 113, and the Revised Covenants and Conditions recognize—the wreck and wreck site of the *Titanic* is an international maritime memorial, the integrity of which has exceptional importance and unique symbolic value.

69. Accordingly, RMST should be enjoined from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" unless and until it has obtained an authorization for such activity from the Secretary of Commerce.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America requests that this Court should:

- DECLARE that Sec. 113 modifies the general maritime law as it pertains to *Titanic* and establishes the applicable substantive rules of decision for salvage operations at *Titanic* and its wreck site; and that RMST is required to comply with Sec. 113, and to obtain an authorization from the Secretary of Commerce, before conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic;*" and,

- ENJOIN RMST from conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*" during

13

any expedition to the *Titanic*, including the 2024 Expedition, absent the issuance of an

authorization from the Secretary of Commerce pursuant to Sec. 113.

- AWARD such other relief as may be proper.

Dated this 25th day of August, 2023.

Respectfully submitted,

UNITED STATES OF AMERICA,
Intervenor

By:   Jessica D. Aber
      United States Attorney

By:   _/s/ *Kent P. Porter*_____
      Kent P. Porter, VSB No. 22853
      Assistant United States Attorney
      Attorney for Intervenor United States
      United States Attorney's Office
      8000 World Trade Center
      101 West Main Street
      Norfolk, VA 23510
      757-441-6331
      Fax:  757-441-6689
      kent.porter@usdoj.gov

**VERIFICATION**

The undersigned counsel of record for the Intervenor United States of America states under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct: (a) the foregoing complaint is true to the best of my knowledge, information, and belief; (b) that the sources of my information are the publicly filed records in this case as well as publicly available records, such as the lengthy legal history of this case reflected in published and unpublished opinions of the district and/or appellate court; (c) the undersigned counsel is authorized to attend to the interests of the United States pursuant to 28 U.S.C. § 517 and submit this complaint on behalf of the United States.

By:   /s/ *Kent P. Porter*_____
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for Intervenor United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax:  757-441-6689
kent.porter@usdoj.gov