IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
        Plaintiff,

v.                                                                  Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43/ 32' NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
<u>in rem</u>,
        Defendant.

**PLAINTIFF R.M.S. TITANIC, INC.'S MEMORANDUM IN OPPOSITION TO
THE UNITED STATES' MOTION TO INTERVENE**

COMES NOW Plaintiff R.M.S. Titanic, Inc. ("RMST"), by counsel, and submits its

Memorandum in Opposition to the United States' Motion to Intervene.  ECF No. 691.  For the

reasons stated below, the United States' Motion to Intervene should be denied.

**I.      INTRODUCTION**

The United States has moved to intervene in this case after sixteen years of participation in

this *in rem* salvage action as an observer invited by the Court.  RMST did not oppose the Motion

when it was filed in August 2023, because the parties had an actual dispute concerning the

application of Section 113 to RMST's rights to conduct a salvage expedition at the wreck site of

the TITANIC in 2024.  The tragedy of the Titan submersible in June 2023, just days after RMST

announced its plans to conduct a research and recovery expedition in 2024, however, changed the

circumstances concerning both further manned exploration of the wreck and the wreck site, and

recovery of artifacts from it in 2024.  These changes resulted in substantially scaled back objectives for the 2024 expedition, eliminating the plan to recover artifacts, and narrowing the plan to only survey and image the exterior of the vessel without taking any action that would physically alter or disturb the wreck or wreck site.  In short, the parties are back to their status quo prior to any planned salvage expedition that could implicate Section 113.

Because there is no longer any actual controversy between the parties – the rights of any party to photograph the Titanic wreck having been settled long ago by the Fourth Circuit in *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943 (4th Cir. 1999) – there is no basis now to permit the United States to intervene in this case under Federal Rule of Civil Procedure 24.  First, the United States does not have a basis to intervene as a matter of right.  There is no longer any current constitutional dispute concerning the validity of Section 113, because RMST is not planning an expedition that would alter or disturb the wreck or wreck site in a manner that would implicate Section 113. Additionally, the United States does not have any property interest in the Titanic (or any interest whatsoever in photographing the wreck under *Haver*) sufficient to trigger a right to intervene in the case.  Second, the Court should not exercise its discretion and permit the United States to intervene at this point in the case, because the proposed 2024 expedition does not implicate any statute administered by the United States and any such intervention would impermissibly prejudice RMST.  Intervention would prejudice RMST because the Court does not have subject matter jurisdiction over United States' proposed claims for declaratory and injunctive relief, and they would be subject to motions to dismiss under Rule 12.  Because the 2024 salvage expedition has been modified to only include imaging of the wreck and wreck site, there is no longer a case or controversy to satisfy Article III standing.  Thus, not only would this prejudice RMST, but it is also an independent basis to deny the United States' Motion.

In 2021, after the United States' appeal to the Fourth Circuit, this Court stated that, "should the United States wish to pursue intervention in this case at this time or at a later time, if and when RMST *seeks to pursue a future salvage operation*, it may file a renewed motion to that effect." ECF No. 662, at *2-3 (emphasis added).  After the change in scope to the planned 2024 expedition, there is now no difference between that day in 2021 and today to warrant the government's intervention.  Accordingly, the United States' Motion should be denied.

## II.    BACKGROUND

On August 26, 1993, Titanic Ventures Limited Partnership, a predecessor in interest to RMST commenced this action.  The next day, on August 27, 1993, this Court entered an Order for Issuance of Warrant of Arrest, taking constructive possession of the defendant wreck and directing that all claims be filed with the Court.  On June 7, 1994, this Court entered an Order declaring RMST to be the salvor-in-possession of the wreck and wreck site of the R.M.S. Titanic, entitling it "to all salvage rights" afforded under Admiralty Law.  *RMS Titanic, Inc. v Wrecked and Abandoned Vessel*, 742 F. Supp. 2d 784, 789 (E.D. Va. 2010).  This Court remains in constructive possession of the wreck, and RMST remains salvor-in-possession.

Approximately six years before this Court declared RMST to be the salvor-in-possession of the R.M.S. Titanic, Congress passed the Titanic Maritime Memorial Act of 1986, 16 U.S.C. § 450rr et seq. (the "Act"). The Act was intended, "to direct the United States to enter into negotiations with other interested nations to establish an international agreement which will provide for the designation of the R.M.S. Titanic as an international maritime memorial, and protect the scientific, cultural, and historical significance of the R.M.S. Titanic" and "to express the sense of the United States Congress that, pending such international agreement or guidelines, no person should physically alter, disturb, or salvage the R.M.S. Titanic in any research or

3

exploratory activities which are conducted."  To that end, the Act directed NOAA "to enter into consultations with the United Kingdom, France, Canada, and other interested nations to develop international guidelines for research on, exploration of, and if appropriate, salvage of the R.M.S. Titanic" that are "consistent with its national and international scientific, cultural, and historical significance and the purposes" of the Act and promote the safety of people involved with researching/exploring the Titanic site.

Pursuant to the Act, the US, together with France, Canada and the UK, negotiated the "Agreement Concerning the Shipwrecked Vessel R.M.S. Titanic" (the "International Agreement") to address activities in and around Titanic and increase protection of the wreck site. For the International Agreement to take effect, at least two countries had to properly ratify it. The United Kingdom ratified the Agreement on November 6, 2003. The United States signed it on June 18, 2004, which would enter into force in this country only after the passage of necessary and proper implementing legislation and formal acceptance.

For many years after the United States signed the International Agreement, the United States pursued Congressional enactment of legislation to implement the International Agreement. For nearly as long, the Company opposed the passage of the Administration's proposed implementing legislation due to concerns that it failed to recognize and respect (i) the private property rights of RMST, with respect to both the artifacts already recovered and awarded to RMST, and those from future expeditions, and (ii) the continuing jurisdiction of this Court to enforce RMST's rights as the salvor-in-possession.

On May 5, 2017, President Trump signed the Department of Commerce Appropriations Act, 2017.  It contains the following short provision regarding RMS Titanic:

> SEC. 113. For fiscal year 2017 and each fiscal year thereafter, no person shall conduct any research, exploration, salvage, or other activity that would physically

4

alter or disturb the wreck or wreck site of the RMS Titanic unless authorized by the Secretary of Commerce per the provisions of the Agreement Concerning the Shipwrecked Vessel RMS Titanic. The Secretary of Commerce shall take appropriate actions to carry out this section consistent with the Agreement. This title may be cited as the ''Department of Commerce Appropriations Act, 2017.

Department of Commerce Appropriations Act, 2017, Pub. L. 115-31, 131 Stat 135, 192 (2017) [hereinafter "Section 113"].

### B.    2020 Litigation

On November 22, 2019, RMST advised the Court and NOAA that it intended to conduct an expedition to the wreck during the summer of 2020, during which it would conduct scientific research and unspecified salvage.  ECF No. 580.  Supplemental filings concerning the expedition occurred on January 21, 2020, and February 13, 2020, ECF Nos. 585 and 590, and on February 20, 2020, the district court held a hearing on these matters.  On March 27, 2020 RMST filed a Motion to Amend or Modify the Court's July 28, 200 Order, to permit the Company to perform limited cutting into sections of the ceiling over the Marconi Suite and detachment of artifacts.  ECF Nos. 600 and 601 (the "Motion to Amend").  On April 27, 2020 NOAA, acting as *amicus*, filed a Report and Recommendation In Re: RMST's *Titanic* Expedition 2020 Research Design, essentially objecting in response to the Company's Motion to Amend. ECF No. 602.  On May, 18, 2020, this Court entered an Order permitting RMST to "minimally…cut into the wreck, only as necessary to access the Marconi Suite, and to detach from the wreck the Marconi wireless device and associated artifacts, during an expedition to take place in August and September, 2020."  ECF No. 612.

On June 8, 2020, thirteen years after appearing in this case as *amicus,* three years after the passage of Section 113, and over two years since RMST stated on the record its position that Section 113 is unconstitutional and unenforceable, NOAA filed an Emergency Motion to Intervene

5

and if Granted, for an Extension of Time to File an Appeal.  ECF No. 614.  On June 15, 2020, the United States also filed a motion for the Court to reconsider its opinion granting RMST's Motion to Amend.  ECF No. 616.  The Court, noting the United States' delay in seeking intervention, held any ruling on the motion to intervene in abeyance.  ECF No. 645 at *5.  In the same Order, the Court denied the United States' Motion to Reconsider.  *Id*.

At the same time, the United States had appealed this Court's 2020 rulings on RMST's Motion to Amend and its own Emergency Motion to Intervene to the Fourth Circuit.  ECF Nos. 618, 647.  The Fourth Circuit ultimately vacated this Court's Orders concerning the Motion to Amend and the United States' request to intervene.

### C.   2024 Expedition

On June 13, 2023, RMST filed a Periodic Report stating that it intended to, "conduct a research and recovery expedition during early phases of the 2024 weather window, likely in May 2024."  Periodic Report at *2 (Jun. 13, 2023) (ECF No. 686).  RMST further stated in this Report that it would "work collaboratively with NOAA, but it does not intend to seek a permit under Section 113."  *Id*. at *3.

Five days after RMST filed this Report, OceanGate Expeditions' Titan Submersible suffered a catastrophic failure while it was taking a group of five passengers, including RMST consultant and Titanic expert P.H. Nargeolet, down to the wreck site.  Periodic Report at *1 (Jul. 8, 2023) (ECF No. 688).  The tragedy took the lives of all five passengers on board the Titan.  *Id*. RMST understands that the United States Coast Guard is conducting a Marine Board of Investigation regarding the incident.  Periodic Report at *2 (Oct. 11, 2023) (ECF No. 694).

On August 25, 2023, the United States filed the instant Motion to Intervene in this case and included a proposed complaint alleging two claims: (1) a declaratory judgment stating that Section

113 modified general maritime law as it applies to Titanic and that RMST must comply with Section 113 before conducting activity that would physically alter or disturb the wreck or wreck site; and (2) a demand for injunctive relief to enjoin any activity that would physically alter or disturb the wreck and wreck site unless or until the United States issues RMST a permit to conduct such activity under Section 113. *See* ECF Nos. 691, 691-1, 692. Based on the United States' arguments, its Motion was triggered by RMST's plan for a May 2024 expedition to the wreck site. United States' Memorandum in Support of Unopposed Motion to Intervene, at *2 (Aug. 25, 2023) (ECF No. 692) [hereinafter "Memo."]. At the time the United States filed it Motion, RMST did not oppose it because its plans to recover artifacts implicated the Section 113 statutory regime.

Given the changed circumstances resulting from the Titan tragedy, RMST has now determined that it would not be appropriate to proceed with its original plans for a manned expedition or the recovery of artifacts in 2024. Instead, RMST has now determined that it will only survey and image the wreck and wreck site using an unmanned vehicle, and it will not take any action that would physically alter or disturb the wreck or wreck site. Periodic Report at *2 (Oct. 11, 2023) (ECF No. 694).

In light of RMST's revised expedition plans, RMST now believes that intervention is not appropriate at this time and requested leave of Court to oppose the United States' Motion. ECF No. 695. The Court granted RMST's Motion, giving RMST until October 18 to file a brief in Opposition to the United States' Motion to Intervene. ECF No. 696.

## III.   ARGUMENT

### A.   Applicable law governing intervention under the Federal Rules of Civil Procedure

A party who seeks to intervene in a case has two options available under the Federal Rules of Civil Procedure: intervention as of right and permissive intervention. FED. R. CIV. P. 24. In

either case, the ability of a party to intervene in a case is vested in the sound discretion of the trial court. *Amalgamated Cas. Ins. Co. v. Legynd Transportation, LLC*, No. 4:22-CV-122, 2023 WL 6119874, at *2 (E.D. Va. Sept. 18, 2023).

### 1.     Intervention by Right

There are two ways in which a third party may have a right to intervene in a case. FED. R. CIV. P. 24(a)(1), (2).  First, a party may intervene by right if a federal statute grants it that right. FED. R. CIV. P. 24(a)(1).  The intervenor must, therefore, rely on some other statute that grants it a right to intervene in the case.  Second, under Rule 24(a)(2), a court must grant an applicant's motion to intervene if it complies with each of the following elements: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.  *Liberty Mut. Fire Ins. Co. v. Lumber Liquidators, Inc.,* 314 F.R.D. 180, 183 (E.D. Va. 2016) (internal citations omitted).  A party must satisfy each of these elements to intervene as a matter of right.  *Amalgamated Cas.*, 2023 WL 6119874, at *2 (citing *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).  "Whether a movant has satisfied the requirements for intervention of right is committed to the discretion of the district court."  *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2090679, at *2 (W.D. Va. Apr. 30, 2020); *see also Westinghouse*, 542 F.2d at 216 (explaining that the district court is "entitled to the full range of reasonable discretion" to determine whether the requirements of intervention as a matter of right have been met).

A motion to intervene must be accompanied by a pleading setting out the claims for which intervention is sought.  Fed. R. Civ. P. 24.  A party seeking to intervene as of right must, therefore,

demonstrate that it has standing to intervene in the case.  An intervenor is no different than any other party seeking relief in a federal court.  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right.").  According to the Supreme Court, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Id*.

### 2.      Permissive Intervention

Permissive intervention is governed by Federal Rule of Civil Procedure 24(b).  Whether to allow a party to intervene under this provision of the Federal Rules is likewise committed to the discretion of the trial court.   *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003).  Permissive intervention may be granted, upon a timely motion, based on either a conditional right to intervene by federal statute, or a claim that shares with the main action a common question of law or fact. *Id*.  Moreover, a federal governmental officer or agency may intervene, on a timely motion, if a party's claim or defense is based on "a statute or executive order administered by the officer or agency; or … any regulation, order, requirement, or agreement issued or made under the statute or executive order."  FED R. CIV. P. 24(b)(2).  Additionally, on a motion for permissive intervention, the Court *must* consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).

### B.      The United States does not have a right to intervene in this *in rem* maritime action.

As the bases for its Motion to Intervene, the United States seeks to, "protect its interest in the lawful application of Sec. 113," by seeking a declaratory judgment both that Section 113 modifies general maritime law as it applies to Titanic and that RMST must comply with Section 113 before conducting activity that would physically alter or disturb the wreck or wreck site, and

by seeking to enjoin such activity unless or until the United States issues a permit under Section 113. *See* United States' Verified Complaint for Declaratory and Injunctive Relief (Aug. 25, 2023) (ECF No. 691-1) [hereinafter "Compl."] . More generally, in its motion to intervene, the United States seeks to enforce Section 113 where there is a present challenge to its authority to regulate whether private parties may conduct otherwise lawful salvage of the RMS Titanic shipwreck in international waters. Because RMST is no longer planning to engage in salvage activities that would trigger this purported governmental oversight, the United States has no right to intervene in this case at this time under either Rule 24(a)(1) or (2).

### 1.    There is no longer a constitutional question at issue in this case.

The United States' first argument in support of intervention is based on Rule 24(a)(1) and 28 U.S.C. § 2403, which grants the United States the right to intervene when "the constitutionality of any Act of Congress affecting the public interest is drawn in question." 28 U.S.C. § 2403(a). Section 2403 grants the United States the right to present evidence in such a case and to argue on the "question of constitutionality." *Id*. Section 2403, however, is no longer applicable, because RMST's planned imaging expedition in 2024 does not implicate either Section 113 or the United States Constitution.

The non-invasive imaging described in the October 11, 2023 Periodic Report is outside the scope of Section 113, because it will not "physically alter or disturb the wreck or wreck site of the RMS Titanic." The government's Motion, by contrast, assumes and depends on an expedition that will alter or disturb the wreck or wreck site: "RMST's recent Periodic Report [filed on June 13, 2023] unambiguously reveals its intent to conduct an expedition in the near future involving activity regulated by Sec. 113, but that it will not abide by the statute. ECF No. 686. *This creates a ripe controversy regarding Sec. 113's constitutionality which triggers the United States' right*

*to intervene*…." Memo. at \*12  (emphasis added).  It follows, therefore, under the government's own reasoning that an expedition that does not implicate activity regulated by Section 113, does not create a constitutional controversy sufficiently ripe to satisfy Rule 24(a)(1).

Indeed, as the Fourth Circuit has concluded, RMST's right to conduct non-invasive imaging of the Titanic and the wreck site may also be outside the scope of this *in rem* maritime action altogether.  In *R.M.S. Titanic, Inc. v. Haver*, the Fourth Circuit concluded that the traditional principles of salvage law do not grant "salvors the exclusive image recording rights in yet to be saved property."  171 F.3d 943, 969 (4th Cir. 1999).  The Fourth Circuit continued: "Even if we were to assume that the salvors had full title to the yet to be recovered shipwreck, as would be the case if the law of finds were applied, it is doubtful that such title to property lying in international waters would include the right to exclude others from viewing and photographing it while in its public site."  *Id*. at 970.  In short, the ability for parties to image shipwrecks in international waters is outside the scope of the law of salvage.  Because the instant case is a salvage case and, as the government asserts, Section 113 purports to alter the maritime law of salvage, RMST's right to image the wreck site is neither implicated by this case nor Section 113.  The United States, therefore, cannot use Rule 24(a)(1) and the right to intervene under 28 U.S.C. § 2403 to intervene in this case as a party.

The United States further claims that RMST itself has drawn into question the constitutionality of Section 113, by generally stating in previous filings in this matter its position that Section 113 is unconstitutional, thereby triggering the United States' intervention of right under Section 2403 and Fed. R. Civ. P. 5.1. *See* Memo. at \*9, 11-12.  Unless or until RMST announces that it intends to take action that would physically alter or disturb the wreck or wreck site, however, Section 113 has no implication in this *in rem* matter, and the constitutionality of

Section 113 is not at issue.  Because Section 113 does not apply to RMST's new plans for the 2024 expedition, the issue of its constitutionality is no longer at issue in the case.

The phrases "drawn into question" and "drawing into question" in Rule 24(a)(1) and F.R.C.P 5.1 respectively, refer to matters that are at issue in the litigation, not matters that are merely theoretical and collateral to the case.  In a recent case, the United States District Court for the District of Alaska reiterated the standard for when a statute is "drawn into question," citing the Supreme Court in *United States v Lynch*:

> The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every time an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied*, and the denial forms the subject of direct inquiry.*

*Anderson v Municipality of Anchorage*, 2023 WL 2932962, at *1 (D. Alaska 2023) (emphasis added) (*quoting* United States v Lynch, 137 U.S. 280, 285 (1890)). Moreover, certification under Rule 5.1 requires "more than 'the mere objection to an exercise of authority under a statute, whose validity is not attacked.' This standard achieves the Rule's purpose to ensure that the attorney general has an opportunity to defend the statute before it is declared unconstitutional." *Id*. (internal citations omitted).

While RMST has generally denied the constitutionality and enforceability of Section 113 against RMST, such denials do not form the basis for any specific attack on the validity of the statute nor the United States' authority under it, because the revised plans for the 2024 expedition do not trigger the application of the statute.  Nor can the United States claim risk that it would not have the opportunity to defend the statute before it is declared unconstitutional.  Consistent with the law of the case, this Court has ordered that RMST must provide written notice at least 90 days in advance of its plans to conduct an expedition and obtain approval of its dive plan.  Order, ¶ H

(Dec. 21, 2018) (ECF No. 540).  Under these circumstances, when the Company elects to recover artifacts again or take other action that would physically alter or disturb the wreck or wreck site, it bears the legal responsibility to provide notice to the United States as *amicus*.  And if at that time the Company elects to disregard Section 113 in conjunction with its stated plans to alter or disturb the wreck or wreck site on the basis that it is unconstitutional, the United States will then have ample opportunity to move to intervene by right in this matter.  Until then, however, the United States has no right to intervene under Rule 24(a)(1) and 28 U.S.C. § 2403.

> **2.    The United States cannot satisfy Rule 24(a)(2)'s required elements to trigger a right to intervene.**

The basis of the government's Motion under Rule 24(a)(2) is similarly undercut by the changed scope of the 2024 expedition.  Without any expedition by RMST that would alter or disturb the wreck or wreck site, the United States also cannot satisfy the four-pronged test to intervene as a matter of right under Rule 24(a)(2).

*First*, the United States motion is not timely.  Whether a motion to intervene is timely under Rule 24 is within the trial court's sound discretion.  *Alt v. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014).  Because RMST is not conducting an expedition to recover artifacts from the wreck site and will only conduct external imaging, the case is in the same posture that it has been for years. In short, today is no different than the past two decades that the United States has sat by as an amicus in this *in rem* action.  Indeed, as the United States acknowledges in its Motion, the timeliness of its request is based solely on the changed circumstances of the abandoned 2024 expedition that RMST initially disclosed in its June 13 Periodic Report.  Mem. at *13.  Without this 2024 expedition to trigger Section 113, the United States does not assert any reason why it should be allowed to intervene now.  Accordingly, the timeliness of the government's motion must be considered under the normal three-factor analysis: "first, how far the underlying suit has

progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591.

Each of these three factors weighs against government intervention at this time. As this Court is well aware, this case has been active for decades through litigation here and in the Fourth Circuit. Intervention at this late stage in the case without any substantive change in the status quo is untimely. RMST would also be prejudiced by the United States' intervention at this time, because litigating claims that are based on a hypothetical future situation that may never occur would waste valuable party and judicial resources. In *Alt*, the Fourth Circuit noted that causing delay in the proceedings and forcing the parties to expend "extra effort" are sufficient to show prejudice. *Alt*, 758 F.3d at 591. The unnecessary and premature litigation that would result from its intervention would certainly result in extra effort and expense by RMST. This prejudice is even more pointed, because the claims that the government has proposed are unlikely to survive a motion to dismiss.

And, finally, the United States has no excuse for being so late in seeking intervention in this case and it does not offer one. To be a timely intervention, this Court has traditionally required the moving party to act much more quickly to enter the case than the United States has done here. *See, e.g.*, *Penn-America Insurance Co. v. White Pines, Inc.*, No. 3:18-cv-650, 2019 WL 418859, at *3 (E.D. Va. Feb. 1, 2019) (granting motion to intervene filed three months after complaint was filed); *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 560-61 (E.D. Va. 2018) (concluding motion to intervene was timely when filed within two months of discovering that litigation may implicate interests); *Lumber Liquidators*, 314 F.R.D. at 184 (allowing intervention during initial pleading phase); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) (granting motion to intervene before parties had filed initial pleadings); *Cooper Technologies, Co.*

14

*v. Dudas*, 247 F.R.D. 510, 516 (E.D. Va. 2007) (granting motion to intervene filed by intervenor "as soon as they were aware of the existence of this matter"); *United States v. Henry*, 519 F. Supp. 2d 618, 621-22 (E.D. Va. 2007) (granting motion to intervene filed less than two months after complaint was filed); *Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508, 510, 514-15 (E.D. Va. 2000) (granting motion to intervene four months after complaint was filed). Under the present circumstances, therefore, the government falls short of justifying its untimely request to intervene.

The Motion is also not timely based on prior orders from this Court, as the government's own argument recognizes. In support of its position, the United States cites to a 2021 order of this Court stating that the United States could file a renewed motion to intervene if RMST pursues a salvage operation at a later date. Mem. at *14 (quoting Order, ECF No. 662). As the Fourth Circuit has recognized, however, photographic rights of wreck sites in public waters are not governed by historical principles of salvage law. *Haver*, 171 F.3d at 969. Indeed, the Fourth Circuit opined that such rights may even run contrary to the policies underlying the purposes of salvage. *Id*. Because RMST's planned expedition no longer constitutes salvage activity, the Court's prior order regarding intervention is inapplicable to the government's instant Motion and cannot be used to justify its tardiness.

*Second*, the United States does not have an interest in the *res* of this *in rem* maritime action. As this Court has concluded, RMST is the salvor-in-possession of the RMS Titanic. *RMS Titanic, Inc.*, 742 F. Supp. 2d at 789. Neither Section 113 nor any act of Congress has expressly granted the United States – or any other entity – a property interest in the Titanic, a shipwreck resting in international waters. To the extent Section 113 regulates anything, it regulates persons: "*no person* shall conduct any research, exploration, salvage, or other activity that would physically alter or

15

disturb the wreck or wreck site of the RMS Titanic…." (emphasis added).  This is confirmed by the two claims the government asserts in its proposed complaint, both of which seek to limit *RMST's* personal rights and actions, as opposed to any property interests.  *See* ECF No. 691-1.

To demonstrate that a party has sufficient interest to intervene as of right under Rule 24(a), the intervenor must show that it "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [the plaintiff's] complaint."  *Teague v. Baker*, 931 F.2d 259, 261 (4th Cir. 1991).  To constitute a "direct" interest, the movant's claims must not be remote or contingent. *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993); *see also United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (stating that an interest that is "contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule").  How this plays out in the unique context of an *in rem* salvage proceeding was the subject of an Eleventh Circuit Case, in which a proposed intervenor was permitted to intervene concerning its claims to the *res* as of right, but not necessarily for supplemental *in personam* claims.  *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1296 (11th Cir. 2017) ("Gold Hound should have been allowed to intervene in this *in rem* proceeding. However, that a would-be intervenor has a sufficient interest for some issues in a case does not necessarily mean that it has an interest in all of the issues.").  While the United States asserts that it has a protectable interest in the Titanic wreck, wreck site, and artifacts, it does not (and cannot) claim any rights to photographic images of the Titanic.  Likewise, the United States does not point to any law or statute at issue in this case governing persons who wish to photograph wrecks in international waters and neither of the claims alleged in its complaint suggest otherwise.

*Third*, the United States cannot credibly claim that non-invasive imaging of the wreck and wreck site will impair its rights or interests absent intervention.  The reason for this is simple:

neither the United States nor RMST has any right to regulate external imagining of a wreck in international waters.  The Fourth Circuit settled this issue twenty-four years ago in *Haver* and the United States has not challenged this ruling here.

*Fourth*, the issue of whether the United States' interest can be protected by another party also undercuts the United States' Motion, because nobody – including the United States – has a legally enforceable interest in the external and non-invasive imaging of the Titanic.  Additionally, this situation is unlike a traditional motion to intervene, where the movant would remain outside of the case, if its motion is not granted.  To the extent the United States claims any general interest in the wreck related to RMST's scaled back 2024 expedition, it will remain an *amicus* in this case that can present opinions and objections to the Court.  Indeed, the United States has done so in circumstances nearly identical to this presented here without objection.  For example, after OceanGate provided notice to the Court concerning its tragic 2023 expedition to "undertake a series of photographic and scientific survey expeditions at the wreck site (ECF No. 683), the United States concluded:

> Because OceanGate is not proposing to conduct any "research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic*," NOAA has determined and advised OceanGate that an authorization pursuant to Section 113…is not required.

United States Status Report (May 9, 2023) (ECF No. 684).  NOAA came to a similar conclusion regarding a 2022 OceanGate expedition that also would not disturb the wreck site.  United States Status Report (June 15, 2022) (ECF No. 672); *see also* United States Status Report (June 16, 2022) (ECF No. 663) (same for 2021 OceanGate expedition).  Given these prior submissions to the Court in nearly identical circumstances, the United States cannot now assert that it needs to intervene concerning RMST's 2024 photographic and scientific survey.

*Fifth*, to the extent that the United States claims some other interest in the preservation of the wreck or wreck site jeopardized by an expedition to image the site, such interest is adequately represented and protected by the Court's current orders under both the Covenants and Conditions and the Court's requirement that RMST provide notice and seek approval of actions it intends to take at the wreck site. *See* Rule 24(a)(2) (permitting intervention of right where disposing of the matter may impair or impede the movant's ability to protect its interest "unless existing parties adequately represent that interest."). Because such an interest is absent, and adequately protected in any event, the United States has failed to satisfy each of the four require elements to intervene as a matter of right. *Amalgamated Cas.*, 2023 WL 6119874, at *2. The Motion must, therefore, be denied.

C.   **The United States should not be permitted to intervene under Rule 24(b) at this time, because it would prejudice RMST and waste party and judicial resources.**

Although the United States does not have a right to intervene in this case, Rule 24(b) vests the trial court with the discretion to permit a party to timely intervene in certain limited circumstances. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). Because none of these circumstances applies to the present case, the United States' Motion should be denied.

*First*, the United States' proposed complaint does not have a claim or defense that shares a common question of law or fact with the main action. FED. R. CIV. P. 24(b)(1)(B). As an initial matter, the claims asserted in the United States' proposed complaint are at odds with RMST's actual planned activities at the wreck site and the law governing those activities. Additionally, as discussed above, the United States does not claim a property interest in the RMS Titanic wreck, which rests in international waters. Nor can it. These rights have been conclusively established by the Court. Also, the United States does not assert any claim that it may regulate the external

18

and non-invasive imaging of the Titanic.  And, even if it did, this would not be the appropriate

forum for that claim, as imaging of the Titanic is outside the scope of an *in rem* salvage action.

*Haver*, 171 F.3d at 969.

      *Second*, mere imaging of the Titanic in international waters does not implicate any statute,

regulation, order, or agreement administered by the United States and it does not assert otherwise.

Rule 24(b)(2), therefore, cannot be the basis for the United States' intervention.

      *Third*, as stated above, the Court should not exercise its discretion to permit the government

to intervene at this time because the United States' Motion is not timely and would prejudice

RMST by forcing it (and the Court) to expend valuable resources litigating a case over which this

Court lacks subject matter jurisdiction, and which fails to state a claim as a matter of law.

      The United States should not be granted permission to intervene in this case, because it

does not meet the standards set forth in Rule 24(b).  Additionally, intervention at this time would

prejudice RMST through unnecessary and costly litigation.  The United States' Motion should,

therefore, be denied.

      **D.**    **Even if the United States could intervene, it cannot demonstrate that it has standing to pursue either of its claims.**

      Parties seeking to intervene, including those intervening as of right, must demonstrate that

they have standing to intervene when they seek to litigate a new cause of action.  *Town of Chester,*

*N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).  The United States' proposed complaint,

filed in conjunction with its Motion to Intervene, is based solely on RMST's prior 2024 expedition.

But because the revised 2024 expedition will not trigger Section 113, and because RMST's

planned imaging activity is outside the scope of traditional salvage law, there is no longer a case

19

or controversy to satisfy Article III standing for both the United States' declaratory judgment and injunctive relief claims.[1]

Federal district courts are courts of limited subject-matter jurisdiction. *Shore Bank v. Harvard*, 934 F. Supp. 2d 827, 832 (E.D. Va. 2013). Jurisdiction must be conferred by a federal statute or the United States Constitution. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.2009). The burden is on the plaintiff to demonstrate that it has standing. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). Unless and until the plaintiff can make this showing, the Court must presume that the case lies outside of its jurisdiction. *Harvard*, 934 F. Supp. 2d at 832 (quoting *United States v. Poole,* 531 F.3d 263, 274 (4th Cir.2008)).

A trial court may exercise jurisdiction over a declaratory judgment action if three prerequisites are satisfied: (1) there exists an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court has an independent basis for jurisdiction over the parties; and (3) the court would not abuse its discretion by exercising its jurisdiction over the claim. *Shore Bank v. Harvard*, 934 F. Supp. 2d 827, 833 (E.D. Va. 2013) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004)). The first and third prerequisites are at issue here.

The first prerequisite is a constitutional inquiry. A declaratory judgment claim is an actual controversy, "only if it presents a controversy that qualifies as an actual controversy under Article

---

[1]      The United States asserts that its complaint is based on both 28 U.S.C. §§ 2201 and 2202. Compl., ¶ 1. Section 2201 permits the Court to "declare the rights and other legal relations of any interested party seeking such declaration," in certain circumstances. Section 2202 authorizes courts to issue "[f]urther necessary or proper relief based on a declaratory judgment…." This is presumably the basis for the government's demand for injunctive relief, because it does not identify any other basis in law for this type of remedy. As such, whether the Court has subject matter jurisdiction over the United States' two-count complaint depends on this Court's jurisdiction over the declaratory judgment claim.

III of the Constitution." *Volvo*, 386 F.3d 592-93 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "An actual controversy exists where the dispute between the parties is definite and concrete, touching the legal relations of parties having adverse legal interests, such that the Court may make an 'immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." *Columbia Gas Transmission, LLC v. Vlahos*, 94 F. Supp. 3d 728, 737 (E.D. Va. 2015) (internal quotes omitted). A declaratory judgment cannot seek an advisory opinion concluding "what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

In this case, there is not an "actual controversy" between the parties for purposes of Article III standing. As an initial matter, it cannot be disputed that the proposed complaint filed by the United States no longer accurately describes RMST's plans for 2024. According to its October 11 Periodic Report, RMST will only be taking external images of the Titanic wreck and wreck site with an unmanned vessel. Periodic Report at *3 (Oct. 11, 2023) (ECF No. 694). The claims alleged in the government's complaint, therefore, would need to be based on a hypothetical set of facts concerning some future, unidentified salvage expedition to the wreck site. Given the lengthy lead time and expense involved in planning such expeditions, it is uncertain what such an expedition may include or when it could take place. Litigating that issue now, when both the facts and the law at least more than a year into the future are unknown, would amount to an advisory opinion. Such unknown future events are insufficient to support Article III jurisdiction over the United States' declaratory judgment claim.

Further, RMST and the United States do not have "adverse legal interests" concerning the scope of the currently planned expeditions, as neither party has a right to or interest in the ability to photograph the wreck site. The United States does not contend that it has the ability to regulate

the imaging of the Titanic or the international waters that surround the wreck.  The lack of any actual or threatened injury to the United States' interests as a result of RMST's proposed 2024 expedition is fatal to its standing in this case.  *See Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (stating that standing requires the plaintiff to allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical.").  Accordingly, there is no actionable "adversary proceeding" for this Court to adjudicate under Article III.

Related to this inquiry, the United States' claims are also not ripe for adjudication.  *See Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n*, 897 F.Supp.2d 407, 424 (E.D. Va. 2012) (stating that the ripeness doctrine of justiciability addresses *when* a party is may sue).  "The ripeness doctrine 'prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form.'"  *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 292 F. Supp. 3d 656, 670 (E.D. Va. 2018) (quoting *Miller*, 462 F.3d at 318-19).  The ripeness analysis has two components that must be balanced: (1) the case's fitness for judicial resolution; and (2) the hardship to the parties of withholding court consideration.  *Miller*, 462 F.3d at 319.  As discussed above, the case is not fit for judicial resolution, because the claims alleged in the government's proposed complaint now depend on contingent future events.  *See Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (stating that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quote omitted)).  Additionally, neither party will suffer any prejudice, because the case will remain in the status quo that it has been in for the more than twenty years that the United States has been involved in this case as an amicus.  Thus, the government's claims are also not ripe.

The third prerequisite—whether the trial court would abuse its discretion by retaining jurisdiction over the action—also weighs against exercising jurisdiction over the United States'

claims at this time.  This "prudential" inquiry is guided by two factors: "(1) whether the judgment will 'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (quoting *Nat'l R.RA. Passenger Corp. v. Consol. Rail Corp.,* 670 F.Supp. 424, 431 (D.D.C.1987)); *see also Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc.*, 368 F. Supp. 2d 513, 521 (E.D. Va. 2005).  At this time, a declaratory judgment would not serve any useful purpose in clarifying the legal relations at issue in this case, because Section 113 has not yet been triggered by any concrete expedition plans.  Any judgment would be little more than an advisory opinion based on a hypothetical set of facts and on an uncertain legal framework that could be in place at the time of the purported future expedition.  It would not be a prudent exercise of jurisdiction under 28 U.S.C. § 2201 to litigate a case with so many uncertainties that it would not be useful to the parties.

The United States has the burden of demonstrating that this Court has subject matter jurisdiction over its declaratory judgment claim.  It cannot satisfy this burden and, therefore, its Motion must be denied.

## V.    CONCLUSION

The posture of this case is now no different than it has been for many years.  As such, the United States does not have a right to intervene in this case as a matter of law.  There is no constitutional dispute at issue between the parties related to RMST's imaging-only expedition in 2024.  Likewise, the United States cannot carry its burden of showing that its motion is timely or that it has an interest in the images of the Titanic.  Finally, even if the United States did intervene, its proposed complaint suffers fatal defects that would subject the parties to unnecessary and costly litigation on a motion to dismiss for lack of subject matter jurisdiction and for failure to state a

claim.  The more prudent path is to follow the lead of this Court's prior orders and rule on a motion

to invervene if or when RMST plans future salvage operations to the wreck or wreck site.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

_____/s/_____
Brian A. Wainger, VSB #38476
William R. Poynter, VSB #48672
Ryan V.P. Dougherty, VSB # 78444
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com
E-mail: wpoynter@kaleolegal.com
E-mail: rdougherty@kaleolegal.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 18, 2023, a copy of the foregoing has been electronically

filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification

of such filing to all counsel of record.


_____/s/_____
Brian A. Wainger, VSB #38476
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-mail: bwainger@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*
