IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
             Plaintiff,

v.                                                             Civil Action No. 2:93cv902

THE WRECKED AND ABANDONED VESSEL,
ITS ENGINES, TACKLE, APPAREL,
APPURTENANCES, CARGO, ETC., LOCATED
WITHIN ONE (1) NAUTICAL MILE OF A POINT
LOCATED AT 41 43' 32" NORTH LATITUDE
AND 49 56' 49" WEST LONGITUDE,
BELIEVED TO BE THE R.M.S. TITANIC
in rem,
             Defendant.

UNITED STATES' REPLY BRIEF
IN SUPPORT OF MOTION TO INTERVENE (ECF NO. 691)

## I.    INTRODUCTION

On August 25, 2023, the United States filed its Motion to Intervene. ECF Nos. 691, 692.

The United States sought to intervene "of right" pursuant to Federal Rule of Civil Procedure

24(a)(1), because a federal statute, 28 U.S.C. § 2403(a), authorizes intervention when "the

constitutionality of any Act of Congress affecting the public interest is drawn into question;" "of

right" pursuant to Rule 24(a)(2), because the United States has a protectable interest in this

matter that would be impaired and is not adequately represented by the current parties (RMST);

and, alternatively, "by permission" pursuant to Rule 24(b)(1), because the United States' claim

shares common law or fact questions with the salvage issues before the court and intervention

would not prejudice RMST. ECF No. 692 at 11-21. At the time, approximately two months after

RMST provided notice of the 2024 Expedition expressing its intent to disregard federal law (Sec.

113), ECF No. 686, and the Titan submersible tragedy, ECF No. 688, RMST did not oppose the motion. *See also* ECF No. 693 (7(E) Notice).

RMST has now changed its objectives for the 2024 Expedition: it claims it no longer intends to conduct salvage activities or "other activity that would physically alter or disturb the wreck or wreck site," but "only conduct imaging and additional survey work." *Id.* at 3. Because of those changed objectives, RMST now opposes intervention.

RMST's changed objectives for the 2024 Expedition do not defeat intervention or prevent the Court from addressing the important legal question concerning whether Sec. 113 applies to RMST, as the court authorized salvor-in-possession. Although RMST bases much of its opposition on an asserted lack of a protectable interest or "standing," RMST's arguments actually implicate the mootness doctrine—a doctrine under which RMST bears, but fails to carry, the burden. RMST's opposition should be rejected, and the United States' motion to intervene granted.

## II.    DISCUSSION

The United States and RMST largely agree on the standards for intervention under Rule 24. *Compare* ECF No. 692 at 11-20, *with* ECF No. 697 at 8-10.

### A.  The United States Has A Right To Intervene Under Rule 24(a)(1).

Because RMST has drawn into question the constitutionality of Sec. 113, Fed. R. Civ. P. 24(a)(1) and 28 U.S.C. § 2403(a) afford the United States an unconditional right to intervene. ECF No. 692 at 11-12. RMST now disputes the federal government's right to intervene for three reasons, none of which have merit.

**1.**  RMST first argues that in light of its voluntary changes to the 2024 Expedition's objectives, Sec. 113 is no longer applicable because the United States' position "*assumes and*

*depends* on an expedition that will alter or disturb the wreck site." ECF No. 697 at 10-11

(emphasis added). RMST does not dispute that, when the United States moved to intervene based

on RMST's stated intention to conduct salvage activity and disturb the wreck and wreck site

while disregarding a federal law that regulated such activity, RMST did not oppose that motion

or that there was a live controversy premised on a constitutional question entitling the

government to participate as a full party to this action. Further, implicit throughout its opposition

is an acknowledgment that, when RMST intended to conduct salvage and disturb the site, a

concrete and live dispute existed. Thus, properly framed, RMST's argument that its subsequent

voluntary change of plans removes this dispute implicates the mootness doctrine.

"[M]ootness ensures that the dispute is sufficiently concrete throughout all stages of the

proceeding." *J.E.C.M. by & Through His Next Friend Saravia v. Lloyd*, 352 F. Supp. 3d 559,

575–76 (E.D. Va. 2018) (cleaned up). "A case is moot 'when the issues presented are no longer

'live' or the parties lack a legally cognizable interest in the outcome.'" *Lux v. Judd*, 651 F.3d

396, 401 (4th Cir. 2011) (quoting *Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754,

763 (4th Cir. 2011)). However, a party claiming that, as a result of its own voluntary actions a

cause has become moot faces a "stringent" standard and a "heavy burden" to prove to the court

"that the challenged conduct cannot reasonably be expected to start up again." *Friends of the*

*Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "[P]ursuant to the

'voluntary cessation' exception, a civil action does not become moot when [the party] voluntarily

ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will

resume." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). "The

voluntary cessation exception 'traces to the principle that a party should not be able to evade

judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Porter*

*v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). "[I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Friends of the Earth*, 528 U.S. at 189 (cleaned up).

Although RMST now states it will not conduct salvage or other activities that alter or disturb the wreck or wreck site during the 2024 Expedition, ECF No. 694 at 3, RMST cannot meet its heavy burden to establish that its voluntary cessation of these activities moots this dispute. It has not abandoned its plans to engage in activities encompassed by Sec. 113 altogether. For one, RMST has not expressly sworn off its previously stated objective of imaging "inside the wreck" by penetrating the hull through existing openings. ECF No. 686. Such activity is directly subject to regulation by Sec. 113, by its incorporation of the International Agreement. *See* Int'l Agr. Art. 4.1.a (requiring regulation of "entry into the hull sections so that they, other artifacts and any human remains are not disturbed"). RMST likewise has not fully abandoned its plans, proposed in 2020 (ECF No.601-1), to at some point physically cut into the wreck and detach the Marconi wireless or other artifacts. ECF No. 686 at 2-3 (noting that "*[a]t this time*" it would not "cut into the wreck or detach any part of the wreck" and would seek further relief from the Court if it did) (emphasis added). And importantly, RMST expressly states that the purpose of the revised objectives for the 2024 Expedition is "to further refine its targets for future artifact recovery work." ECF No. 694 at 3. A live dispute therefore remains, and RMST cannot meet its burden to show otherwise.

This point is reinforced by the United States' obligations under the International Agreement, which is expressly incorporated by Sec. 113: As a party to the Agreement, the United States "shall take the necessary measures … to regulate through a system of project

authorizations … activities *aimed* at the artifacts from the RMS Titanic found outside the hull of the wreck." Art. 4(1)(b) (emphasis added). A "project" is defined as "all activities aimed at RMS Titanic and/or its artifacts carried out pursuant to an authorization provided in accordance with this Agreement," Art. 1(d), and "artifacts" include "objects that are scattered in [Titanic's] vicinity." Art. 1(b). Thus, by reaffirming its intent "to further refine its targets for future artifact recovery work," ECF No. 694 at 3, RMST still proposes activity subject to regulation under duly enacted federal law. Because RMST intends to conduct those activities without complying with that law, it cannot meet its heavy burden to establish mootness.

The point is reinforced again in NOAA's public notice regarding implementation of Sec. 113, which repeats that Sec. 113's regulatory framework applies even to RMST's revised plans. As NOAA explained:

> Any person subject to U.S. jurisdiction, proposing to conduct any research, exploration, salvage or other activity at the wreck or wreck site . . . will need to demonstrate to the NOAA Administrator that the proposed project will comply with Section 113 . . . . This information will enable the NOAA Administrator to determine whether the activity may physically alter or disturb the wreck or wreck site . . . such that an authorization is required and, if so, whether the NOAA Administrator can issue an authorization.

84 F.R. 38012, 38013. Thus, the triggering event for NOAA review and consideration under Sec. 113 is *any* proposal to "conduct any research, exploration, salvage or other activity at the wreck or wreck site," not just a proposal that involves salvage or that would in fact require an authorization. Indeed, RMST's position would defeat the purpose of Sec. 113 by permitting a party to unilaterally bypass the federal government altogether—and risk putting the United States in violation of its treaty obligations—simply by asserting (like RMST does here) that the proposed conduct at the wreck site does not require authorization. Federal law and international treaty obligations require the United States, not RMST, to make that determination.

Further, the United States' objectives and purpose stated in its Verified Complaint are not as narrowly constrained as RMST states, *see* ECF No. 697 at 10-11, so as to be undercut by RMST's voluntary decision to not conduct salvage activity during the 2024 Expedition. Rather, the United States seeks, *inter alia*, to "protect the United States' interests in the proper application and implementation of Section 113" *and also* "determine the scope of Plaintiff R.M.S. Titanic, Inc.'s salvage activities, liabilities, *and obligations under federal law*." Verified Compl. (ECF No. 691-1) ¶ 2 (emphasis added).

> [T]his complaint seeks a declaration that R.M.S. Titanic, Inc. must comply with Sec. 113 when conducting activities at *Titanic*, **and** must obtain an authorization from the Secretary of Commerce before conducting "any research, exploration, salvage, or other activity that would physically alter or disturb the wreck or wreck site of the RMS *Titanic.*"

*Id.* ¶ 3 (emphasis added). In other words, the United States' objectives are to ensure RMST complies with Sec. 113 for *any* activities it seeks to undertake at *Titanic*, and *when* such activities would physically alter or disturb the wreck or wreck site, ensure that RMST seeks an authorization. The United States' authority to issue authorizations under Sec. 113 cannot be untethered from the review and analysis necessary to determine whether such an authorization is required in the first instance.

A live dispute likewise persists because the United States has not altered its position on Sec. 113's applicability or its enforceability against RMST. *Cf. Porter*, 852 F.3d at 364-65 ("[W]e have held that a governmental entity's change of policy renders a challenge moot when the governmental entity 'has not asserted its right to enforce the challenged policy at any future time.'" (alterations omitted)). Nor has RMST altered its position that it can do what it wants at the wreck free from Sec. 113's administrative review and approval process. *E.g.*, ECF No. 605 at 13 (stating that RMST would "take its orders from the Court, not from NOAA"). And, as

discussed above, it is likely that RMST will "resume" activity that even RMST acknowledges is encompassed by Sec. 113, because the 2024 Expedition now serves as the vehicle to "further refine [RMST's] targets for future artifact recovery work." ECF 694 at 3. Even if RMST could establish mootness under these circumstances, the voluntary cessation exception would apply and RMST has failed to meet its heavy burden to show otherwise. *See, e.g.*, *Porter*, 852 F.3d at 364.

Finally, permitting RMST to moot this dispute with its voluntary change of plans would also result in an unnecessary expenditure of judicial and party resources by requiring the United States to move to intervene each time RMST files a notice of expedition, subject to RMST's ability to toggle jurisdiction by filing a revised notice months later. Such a state of affairs "counsels against a finding of mootness here." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). RMST's arguments attempting to defeat jurisdiction, moreover, are in tension with the spirit of the Fourth Circuit's instruction that the United States' request "to intervene and its argument for requiring approval under § 113" be addressed. *See* Order, *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, No. 20-1684 (4th Cir. Mar. 5, 2021), ECF No. 28 at 3.

Because RMST still plans to conduct activity "aimed at the artifacts," Int'l Agr. Art. 4(1)(b); because RMST still proposes "research, exploration, . . . or other activity at the wreck or wreck site," 84 F.R. 38012, 38013; because its objectives for the 2024 Expedition are expressly being done for purposes of "refin[ing] its targets for future artifact recovery work," ECF 694 at 3; because it has not strayed from its expressed intention to ignore Sec. 113, ECF No. 686 at 3; and because it has not abandoned its contention that Sec. 113 is unconstitutional, ECF No. 697 at 12, a concrete dispute over the applicability of Sec. 113 to RMST's activities at *Titanic* remains.

**2.** Citing *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943 (4th Cir. 1999), RMST next contends that because the imaging it expects to conduct is outside the purview of its salvage rights as exclusive salvor in possession, Sec. 113 is not applicable. ECF No. 697 at 11. This argument is also misplaced. On this point, *Haver* stands only for the proposition that a salvor's exclusive salvor-in-possession status does not include the authority to prevent others from simply "visiting, observing, and photographing the wreck," and by extension that the Court lacked the authority to prohibit such conduct. *Haver*, 171 F.3d at 969-70. But *Haver* says nothing about a sovereign's ability (or, as is the case here, statutory and treaty obligations) to regulate activities of its nationals and vessels flying its flag with respect to *Titanic*—and even if it had, any such language would have been *dicta* since abrogated by the enactment of Section 113. Regardless, RMST's argument that "visiting, observing, and photographing the wreck" may be "outside the scope of the law of salvage," ECF No. 697 at 11, is irrelevant, because such activities are not "outside the scope" of Sec. 113 and the International Agreement that Sec. 113 incorporates. To the contrary, the International Agreement expressly states that the State Parties, including the United States, "shall take the necessary measures … to regulate through a system of project authorization" all "activities aimed at the artifacts from the RMS Titanic found outside the hull of the wreck." Art. 4(1)(b); *see also id.* Art. 1(d) (defining "project" as "*all* activities aimed at RMS Titanic and/or its artifacts carried out pursuant to an authorization provided in accordance with this Agreement" (emphasis added)); *id.* Art. 1(d) (defining "artifacts" as "including those objects that are scattered in [*Titanic's*] vicinity").

Moreover, RMST's argument—that its current plans are outside of the purview of this salvage action—is inconsistent with RMST's actions in this case and with the Court's orders. *See, e.g.*, ECF No. 540 at 5 (requiring RMST to provide the Court advanced notice "of any

planned expeditions to the *Titanic* wreck and wreck site, to include a description of any planned

dive or salvage activities at *Titanic*."); ECF No. 694 (providing notice of current expedition); *see*

*also* ECF No. 685 (noting the Court's review of OceanGate's planned expedition and voicing no

objection).

Section 113 modifies the general maritime law as it pertains to *Titanic*, and more broadly

applies to "*any* research, exploration, . . . or other activity at the wreck or wreck site," 84 F.R.

38012 (emphasis added), not just to activity encompassed within RMST's court authorized

salvage rights. *See* Verified Compl. (ECF No. 691-1) ¶¶ 2 -3. RMST's assertion that it is only

conducting imaging does not remove RMST's revised plans from Sec. 113's purview, nor

exempt it from review by NOAA to determine whether a Sec. 113 authorization is required, 84.

F.R. 38013, and thus does not defeat intervention. *See supra* pp. 3-7.

**3.**   Finally, RMST argues that, in light of its changed objectives for the 2024 Expedition,

the constitutionality of Sec. 113 is no longer drawn into question within the meaning of 28

U.S.C. § 2403(a). Relying on *Anderson v. Municipality of Anchorage*, No. 3:21-CV-00139-JMK,

2023 WL 2932962 (D. Alaska Apr. 13, 2023), RMST contends that Sec. 113's constitutionality

is not drawn into question merely "by [RMST's] generally stating in previous filings . . . its

position that Section 113 is unconstitutional," and RMST's "generally den[ying] the

constitutionality and enforceability of Section 113."  ECF No. 697 at 11-13. RMST's reliance on

*Anderson* is misplaced.

In *Anderson*, the *pro se* plaintiff moved the Court to certify to the state Attorney General

under Rule 5.1(b) that the constitutionality of a state statue was at issue in the litigation. 2023

WL 2932962 at *1. Yet the complaint did not "attack the statute as unconstitutional," the parties

agreed that plaintiff had not pleaded a challenge to the statute at all, and based on the defendant

Municipality's defenses, a ruling in the case "'either way [would] not affect the constitutionality of the statute.'" *Id.* at *1-2. The Alaska District Court denied the motion to certify.

The factual underpinnings of *Anderson* are far removed from this case. Whereas in *Anderson* there was a complete disconnect between the parties' merits positions (which did not challenge or implicate the statute's constitutionality) and the relief sought (certification of a constitutional issue), there is no such disconnect here. RMST has vigorously and continuously alleged constitutional infirmities in Sec. 113 and stands by those beliefs still. *See* ECF No. 692 at 8-10; ECF No. 697 at 12. RMST has never wavered from its expressed intent to ignore Sec. 113, ECF No. 686 at 3, a belief that, at bottom, is rooted in its claim of unconstitutionality. In turn, the United States maintains that Sec. 113, a federal law that modifies general maritime law and vindicates international treaty obligations, is plainly constitutional. Accordingly, although RMST has not complied with its Rule 5.1 obligations, RMST has squarely drawn into question Sec. 113's constitutionality sufficient to trigger the government's unconditional right to intervene under Rule 24(a)(1) and 28 U.S.C. § 2403(a). *See Rogers v. City of Richmond, Virginia*, No. 3:11CV620-HEH, 2012 WL 13195187, at *1 (E.D. Va. Mar. 5, 2012) (where defendant's summary judgment motion argued that a federal law preempted state law, the argument was "at bottom . . . rooted in the Supremacy Clause" and "plainly" called into question the constitutionality of the state statute).

### B.  The United States Is Entitled To Intervene Under Rule 24(a)(2).

The United States contends that it is entitled to intervene as of right pursuant to Rule 24(a)(2) because it has significant protectable interests relating to this litigation that would be impaired absent intervention. ECF No. 692 at 12-18. RMST disputes that any of the elements for intervention under Rule 24(a)(2) are satisfied. RMST's contentions lack merit.

**1.** RMST first asserts that the United States' motion is untimely because it is both too late and too soon. ECF No. 697 at 13-15. RMST's "too late" argument ignores that two months ago it had no such timeliness qualms when it did not oppose the intervention motion. The only change since then, and the entire basis of RMST's new-found opposition, is RMST's voluntary decision to revise its expedition plans. *Id.* at 13 ("The basis of the government's motion . . . [is] undercut by the changed scope of the 2024 expedition."); 15 (the United States' motion is untimely "[b]ecause RMST's planned expedition no longer constitutes salvage activity"). RMST's "too late" contention, then, simply restates RMST's mootness argument and fails for the reasons stated above.

In any event, RMST's "too late" objection overlooks that, consistent with this Court's and the Fourth Circuit's instructions, *see* ECF No. 662 at 2-3; Order, *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel*, No. 20-1684 (4th Cir. Mar. 5, 2021), ECF No. 28 at 3, the United States promptly moved to intervene once RMST gave notice that it intended to conduct an expedition involving activities plainly implicated by a federal law that RMST stated it would disregard. Even the cases RMST cites in support of its argument, ECF No. 697 at 14-15, support that the United States' motion, filed just over two months after RMST filed its Periodic Report was filed, was timely pursued.

RMST "too soon" argument, also premised on its changed expedition plans, asserts that RMST would be prejudiced by having to address a "hypothetical future situation that may never occur." ECF No. 697 at 14. This is a ripeness argument. Ripeness concerns the appropriate timing of judicial intervention in order to avoid entangling the courts in "premature adjudication[s]" or resolution of "abstract disagreements." *J.E.C.M.*, 352 F. Supp. 3d at 575–76 (cleaned up); *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269–70 (4th Cir.

2013) (same). A claim is unripe "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758–59 (4th Cir. 2013) (cleaned up).

The above points defeating mootness similarly show that the dispute is ripe. RMST still plans to conduct activities "aimed at the artifacts from the RMS Titanic found outside the hull of the wreck," Int'l Agr., Art. 4(1)(b), and conduct other "research, exploration, . . . or other activity at the wreck or wreck site," 84 F.R. 38012, 38013, all activities warranting review by NOAA in accordance with Sec. 113. RMST still expects to conduct "future artifact recovery work." ECF 694 at 3. RMST has not wavered from its position that Sec. 113 is unconstitutional, ECF No. 697 at 12, or that RMST has no intention of complying with this validly enacted federal law, ECF No. 686 at 3. These facts state a present, non-speculative, injury to the United States. Nor is there anything abstract, uncertain or speculative about the legal question at the center of this dispute – whether an administrative review and approval process for activities at *Titanic* unconstitutionally interferes with this Court's admiralty jurisdiction and RMST's judicially authorized rights.

This Court has recognized that "the most important factor in determining whether a motion to intervene is timely is the prejudice caused to the other parties by the delay." *Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508, 514 (E.D. Va. 2000) (citing *Spring Const. Co., Inc. v. Harris,* 614 F.2d 374, 377 (4th Cir.1980)). RMST does not attempt to explain how its "too *soon*" argument can satisfy a standard premised on *delay*. It cannot. Regardless, RMST asserts prejudice only because allowing intervention to address this important issue now invites "unnecessary . . . litigation." ECF No. 697 at 14. But any "unnecessary" litigation would stem from RMST's proposed approach: Under RMST's proposal, the United States must wait until 90 days before a future planned salvage expedition, ECF No. 540 at 5 (¶

H), before moving to intervene. Not only would this interfere with the United States' ability to consult with other parties to the International Agreement, Int'l Agr., Art. 5 ¶ 2 (requiring that a party to whom a request is made consider any comments from other parties received within 90 days of transmitting the request), but that scenario also would likely delay any planned expedition, either by requiring judicial resolution of the United States' claims (which, if successful, would require RMST to comply with Sec. 113 or could lead to appellate litigation), or by prompting RMST to change its plans again in an effort to moot out the controversy.

For many years RMST has openly agitated over efforts by the United States to regulate activities at *Titanic*, as Congress directed, as an unlawful interference with its rights, and especially so since Sec. 113's enactment. ECF No. 692 at 8-9 (citing prior history). RMST has promised to institute "separate proceedings" to squarely address its concerns regarding Sec. 113 with the Court, ECF No.429 at 5, but has never done so, while mostly rebuffing the United States' efforts to do so. RMST does not want to comply with Sec. 113 based on its belief that the law unconstitutionally infringes its salvage rights. The United States asserts otherwise, and that Sec. 113 establishes substantive rules for activity at *Titanic* that modify maritime law. Unless RMST expects to abandon its salvor-in-possession status, there is no future event or uncertainty that changes the core nature of this dispute—particularly given the scope of RMST's revised 2024 Expedition. Further, a resolution of this issue now would benefit both RMST and the United States. It would allow the United States, *inter alia*, to ensure the proper application and implementation of federal law and protect its ability to fulfill its responsibilities under federal law and the International Agreement, and it would give RMST direction and guidance as it plans for the 2024 Expedition and its "future artifact recovery work." This is a legal dispute whose time has come and that is fit for adjudication now.

**2.**  RMST next asserts that the United States does not have a protectable interest in *Titanic* because it does not have a "property interest" in the wreck itself or "any rights to photographic images of the Titanic." ECF No. 697 at 15-16. Those assertions are irrelevant. A movant need only have an "interest *relating to* the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2) (emphasis added), that is, an interest in or relating to the "subject matter of the litigation." *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991); *see also* ECF No. 692 at 14.

The United States plainly has such an interest. RMST ignores the significance of the 1986 Titanic Maritime Memorial Act, the NOAA Guidelines, the International Agreement, the Covenants and Conditions, Sec. 113, and the United States' longstanding involvement in this case as *amicus*. *See* ECF No. 692 at 4-8, 14-15. Each of these reflects the United States' protectable interest (including on behalf of the public) in *Titanic*, and in any activities aimed at the wreck, the wreck site, or *Titanic's* artifacts.[1] Similarly, the United States has a substantial interest in the proper enforcement of its laws and fulfillment of its responsibilities under the International Agreement. *Id.* at 15-16. These, too, are interests that "bear a close relationship" to the underlying salvage claims. *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E. D. Va. 1993).

RMST suggests that the United States' interest is somehow diminished because the underlying action is *in rem*, whereas the United States seeks *in personam* relief against RMST. ECF No. 697 at 16. But RMST does not adequately develop this argument and there is nothing inherently inconsistent with *in personam* relief in an admiralty proceeding. *See* Supp. Adm. Rule A(2) (incorporating to the extent not inconsistent the Rules of Civil Procedure into the admiralty

---

[1] RMST's suggestion that the United States' *amicus* status provides sufficient protection of the United States' interests, ECF No. 697 at 17-18, arguably assumes there are interests to protect.

rules); Supp. Adm. Rule C(1) (providing for *in personam* actions as an alternative to enforce maritime liens). Nothing prevents an intervenor of right from seeking relief different from the existing parties, provided that they have Article III standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Moreover, there is no impediment to *in personam* relief here because RMST submitted to the personal jurisdiction of this Court. ECF No. 540 at 3; *cf. Haver*, 171 F.3d at 958 (holding that RMST lacked a basis to obtain an *in personam* injunction against third party that "did not voluntarily subject itself to the court's jurisdiction").

   **3.**  Citing *Haver*, RMST next asserts that the United States' interest will not be impaired absent intervention, because the United States lacks "any right to regulate external imaging of a wreck in international waters." ECF No. 697 at 16-17. But as discussed, *Haver* held only that RMST's "salvage rights" did not include the "right to exclude others" from simply "visiting, observing, and photographing the wreck." 171 F.3d at 969-70. Nothing in *Haver* stands for the proposition RMST ascribes to it. The proposition is also wrong as a matter of law. "[T]he United States is not debarred by any rule of international law from governing the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed," because such laws do nothing more than "establish[] the duty of the citizen in relation to his own government." *Skiriotes v. State of Fla.*, 313 U.S. 69, 73 (1941).

   **4.**  Finally, RMST asserts that the United States' interests are adequately represented by its *amicus* status and the Court's orders overseeing RMST's actions. ECF No. 697 at 17-18. The adequate representation element, however, considers the intervenor's ability to have its interests adequately protected by "existing *parties*" in the litigation. Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also Teague*, 931 F.2d at 260–61 ("This court has interpreted Rule 24(a)(2) to entitle an applicant to intervention of right if . . . the applicant's interest is not adequately represented by

existing parties to the litigation."). The only "parties" in the litigation are *Titanic* and RMST. *Titanic* cannot speak for itself (much less for the United States) and RMST is openly adverse to the government's positions and interests.

The Court, moreover, is not a party but a "neutral arbiter" of the parties' disputes. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("'[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'") (quoting *Greenlaw v. United States*, 554 U.S. 237 (2008)). As a neutral arbiter, a Court may or may not take views that align with a litigant's views or interests. *See e.g.*, ECF No. 612 at 9 n.7.

An *amicus* is also "not a formal party," ECF No. 612 at 10, and the government's *amicus* status does not alter the intervention analysis here, *see Tafas v. Dudas*, 511 F. Supp. 2d 652, 661 (E.D. Va. 2007) ("'[a]n amicus ... is not a party to the litigation and participates only to assist the court'"). As a non-party, an *amicus* does not enjoy the same rights as a party. *See Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) (noting that *amici* "are not able to make motions"); *see also Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191 (2022) (reversing denial of *amicus's* request to intervene as of right). Consistent with this Court's instructions, ECF No. 662 at 2-3, the United States has sought to intervene as a full party.

"[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller*, 802 F.2d at 729 (cleaned up), particularly when, as here, no party currently represents the United States' weighty interests. Section 2403 and Rule 24(a) grant the United States a *right* to intervene and obtain full party status. *See, e.g.*, Fed. R. Civ. P. 24(a)(1) (articulating an "unconditional right to intervene"). Whether RMST believes it is sufficient for the United States to act as an *amicus* is beside the point.

### C.  The United States Should Be Permitted To Intervene Under Rule 24(b).

In the alternative, the United States should be permitted to intervene pursuant to Rule 24(b) because its claims share common elements with and involve the same subject matter inherent in RMST's proposed activities, and RMST would not be prejudiced as a result. ECF No. 692 at 18-20. RMST's opposition again misses the mark.

**1.**  RMST first claims that there are no common questions of law or fact as required for permissive intervention because the United States' claims "are at odds with RMST's actual planned activities at the wreck site and the law governing those activities." ECF No. 697 at 18-19. This, too, is a mootness argument that fails for the reasons stated above.

RMST next repeats its property-interest-in-the-wreck and its imaging-is-beyond-the-purview-of-salvage arguments. ECF No. 697 at 18-19. But these contentions do not undercut the existence of common questions of law or fact largely because, as discussed above, they are premised on misstatements of the law. The nexus between RMST's underlying claims (that it may conduct activities aimed at *Titanic* and its artifacts free from government regulation) and the United States' claims (that federal law and a treaty require that such activities be regulated) is undeniable, *see* ECF No. 692 at 18-19, and is not altered by RMST's voluntary change of expedition objectives.

**2.**  RMST also asserts that, because the United States' motion is not timely, it would prejudice RMST to "forc[e]" it to have to litigate the constitutional issues at this time. ECF No. 697 at 19. But as discussed above, the United States' request to intervene is timely. Further, RMST suffers no prejudice to litigate and support a position it has long espoused in multiple public filings. And its assertions of prejudice ring hollow because, until recently, RMST did not oppose having these issues presented to this Court for consideration. No future events or

uncertainties change the nature of this legal dispute, and RMST's voluntary (but undoubtedly temporary) cessation of its salvage plans does not prevent this Court from addressing it now.

**D.  The United States Has Standing To Intervene And Pursue Its Claims.**

RMST's final argument is that the Court should deny intervention because the United States lacks standing to pursue its claims. ECF No. 697 at 19-23. Specifically, RMST contends that intervention is "based solely on RMST's prior expedition" plans, and because "the revised 2024 expedition will not trigger Section 113 . . .  there is no longer a case or controversy to satisfy Article III standing." *Id.* at 19-20; *id.* at 21 ("RMST and the United States do not have 'adverse legal interests' concerning the scope of the currently planned expeditions"). RMST's arguments once again lack merit.

It is correct that an intervenor must possess Article III standing to intervene, *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 455 (E.D. Va. 2019), but that determination is made as of the time relief is sought, *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) ("When evaluating standing, we must look to the facts at the time the complaint was filed."); *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1339 (11th Cir. 2007) ("The standing of a prospective intervenor . . . is properly measured at the time intervention is sought in the district court."); *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705 (6th Cir. 2017) (same). To the extent later events could draw into question that determination, the analysis shifts to mootness principles. *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1267 (11th Cir. 2001) ("It is true that a party's standing to sue is generally measured at the time of the complaint, with the effect of subsequent events generally analyzed under mootness principles."). And as discussed above, the United States' claims are not moot.

Nor is there any merit to the suggestion that, when the United States moved to intervene, it lacked standing. Standing "ensures that the party seeking relief has a genuine and personal stake in the outcome" of the matter. *J.E.C.M.*, 352 F. Supp. 3d at 575–76 (citing *Gill v. Whitford*, 585 U.S. ——, 138 S.Ct. 1916, 1923 (2018)). "[T]he 'irreducible constitutional minimum' of Article III standing consists of three elements. . . . 'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fed. Trade Comm'n v. Ross*, 74 F.4th 186, 192 (4th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Notably, RMST did not oppose intervention on standing grounds when the United States filed its motion. In fact, implicit in RMST's current argument is that, as events then stood (with RMST planning a salvage operation), the United States did possess Article III standing and that is indisputably true. There was a clear and obvious injury to the United States because RMST's actions, plainly proscribed by federal law, would interfere with the United States' ability, among other things, to fulfill its responsibilities to protect *Titanic* on behalf of the public interest; to ensure the proper enforcement of and compliance with its laws; and to meet its responsibilities under federal law and the International Agreement. ECF No. 692 at 4-8, 15-16. These injuries are directly traceable to RMST's refusal to comply with federal law; and the United States' injuries would plainly be redressed by an order establishing that RMST is required to comply with that law and compelling RMST to do so.

RMST intersperses its standing argument with ripeness and prudential concerns. ECF No. 697 at 22-23. But these are different, albeit related, concepts. "[S]tanding involves 'the question[ ] of *who* may sue,' [while] ripeness involves '*when* they [may] sue.'" *Wild Virginia*, 56 F.4th at

293. Prudential concerns are largely subsumed within the ripeness analysis, *id.* at 294 n.5, or the third element of the standing inquiry. *Spanos v. Gibney*, No. 3:22CV503, 2022 WL 17067497, at *3 (E.D. Va. Nov. 17, 2022) ("This case squarely concerns the third element of the prudential standing requirements, that the action is likely to be redressed by a favorable judicial decision."), *dismissed*, No. 22-2246, 2023 WL 3790752 (4th Cir. Feb. 8, 2023). And for the reasons stated above, the circumstances as they now exist, even with a change in expedition objectives, are ripe for adjudication, and would plainly be redressed by an order that established that RMST is required to comply with Sec. 113.

## III.   CONCLUSION

Because RMST's voluntary change of objectives for the 2024 Expedition does not undercut the United States motion to intervene, the motion should be granted and the Verified Complaint ordered filed. RMST should then file a responsive pleading to the complaint, and thereafter, the Court establish a briefing schedule to address the legal issues surrounding Sec. 113's applicability.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:   _/s/ Kent P. Porter_____
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the Intervenor United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Tel.: 757-441-6331
Fax:  757-441-6689
Email: kent.porter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2023, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

| | |
|---|---|
| **Brian Andrew Wainger, VSB #38476**<br>**William R. Poynter, VSB #48672**<br>Kaleo Legal<br>4456 Corporation Lane, Suite 135<br>Virginia Beach, VA 23462<br>Tel: (757) 96506804<br>Fax: (757) 304-6175<br>Email: bwainger@kaleolegal.com<br>Email: wpoynter@kaleolegal.com | **David G. Barger, VSB #21652**<br>GREENBERG TRAURIG, LLP<br>1750 Tysons Boulevard, Suite 1200<br>McLean, Virginia 22102<br>Tel: (703) 749-1300<br>Fax: (703) 749-1301<br>E-Mail: Bargerd@gtlaw.com |

　/s/ *Kent P. Porter*_____
Kent P. Porter, VSB No. 22853
Assistant United States Attorney
Attorney for the Intervenor United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
757-441-6331
Fax:  757-441-6689
kent.porter@usdoj.gov