IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

R.M.S. TITANIC, INC.,
successor-in-interest to
Titanic Ventures, limited partnership,
        Plaintiff,

v.                                             Civil Action No. 2:93-cv-00902-RBS

THE WRECKED AND ABANDONED VESSEL, et al
        Defendant.

**PLAINTIFF R.M.S. TITANIC, INC.'S SUR-REPLY IN RESPONSE TO THE UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

Plaintiff R.M.S. Titanic, Inc. ("RMST"), by counsel, submits this Sur-reply in Support of its Opposition to the United States' Motion to Intervene, in order to set forth the correct burden for determining the justiciability of its proposed complaint, and to address issues raised by the United States for the first time in its reply brief. (ECF No. 691, "Reply".)

**I.    ARGUMENT**

**A.    The United States Reply Brief incorrectly shifts its burden to prove standing at the outset of its case.**

In its Reply, the United States asserts that RMST bears a "heavy burden" to demonstrate that the case is moot. Reply at 3. This is incorrect. It is true that ordinarily, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). But, by contrast, it is also true that "in a lawsuit *brought to force compliance*, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly

wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Id.* (emphasis added) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citations and internal quotation marks omitted)). Here, RMST is not contending that its voluntary compliance moots the case; rather, RMST asserts that as a result of the change in scope of the planned 2024 expedition the United States cannot demonstrate standing for each of its causes of action. Here, the United States seeks to assert those causes of action against RMST *to force compliance with Section 113*. Accordingly, it is the United States that bears the burden to establish standing.

The United States' focus on mootness skips over its threshold obligation to prove that it has standing to prosecute its two proposed claims. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Standing, mootness, and ripeness are all elements of a justiciability analysis that determines the standing of the litigants and the appropriate timing for judicial intervention in a dispute. *Renne v. Geary*, 501 U.S. 312, 320 (1991); *see also Fitzgerald v. Alcorn*, 285 F. Supp. 3d 922, 931 (W.D. Va. 2018) ("Justiciability includes three inter-related doctrines of standing, ripeness, and mootness."). Standing ensures that there is a case or controversy at the outset of the litigation, while mootness ensures that a controversy remains live throughout the litigation. *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 187 (4th Cir. 2021). Ripeness combines both timing and standing, because it "prevents judicial consideration of issues until a controversy is presented in "'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). The United States focuses on mootness – which is only triggered after the start of a case – because it

cannot satisfy its initial burdens of demonstrating that it has standing to prosecute a dispute that is ripe.[1]  Accordingly, its Motion should be denied.

What is more, the voluntary cessation doctrine does not apply to this case.  RMST's basis for canceling its proposed 2024 expedition to recover artifacts from the Titanic and the wreck site satisfies a carve out from the voluntary cessation exception to mootness.  Specifically, the voluntary cessation exception will not apply to mootness when "the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (quoting M. Redish, MOORE'S FED. PRACTICE, § 101.99[2]). The basis for RMST's cessation of the 2024 expedition is completely unrelated to this case, as RMST did not have any control over or connection to the OceanGate expedition or the resulting tragedy.  Likewise, RMST does not have a role in the ongoing federal and international investigations into the OceanGate disaster.

In addition, the policy rationales for the voluntary cessation exception are not implicated by the unique procedural posture of this case.  "The underlying rationale for this exception 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Rogers v. Virginia State Registrar*, 507 F. Supp. 3d 664, 675 (E.D. Va. 2019) (quoting *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017)).  These considerations are not relevant here for at least two reasons.  First, RMST cannot evade judicial review of any future actions that may implicate Section 113, as it must provide notice to this Court and, thereby, to the United States of *any* expeditions at the wreck site.  Second, concluding that the United States lacks standing would not unfairly prejudice the United States, as it would retain

---

[1] The United States also has the burden of demonstrating that its case is ripe. *Miller*, 462 F.3d at 319.

3

its position as an *amicus* with active involvement in this case.  This is in contrast with the typical mootness situation where a case would be dismissed, the plaintiff would be required to refile its lawsuit to protect its interests before the court, and the defendant would be given an opportunity to manipulate the legal process to avoid court scrutiny forever.  *See, e.g.*, *Porter*, 852 F.3d at 364 (stating that "the exception seeks to prevent 'a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'") (quoting *U.S. Conf. of Cath. Bishops*, 705 F.3d at 54-55); *see also Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *15 (E.D. Va. July 11, 2022) (declining to apply voluntary cessation exception where there is "no whiff of any of the opportunism" to trigger the exception).

In light of the tragedy affecting RMST's plans and the United States' privileged role in this ongoing litigation, the voluntary cessation exception should not relieve the United States of its obligation to prove standing for the causes of action set forth in its proposed complaint.

**B.     The United States' reliance on alleged extraterritorial administrative regulations are contrary to its past practice.**

This posture of this case is not substantively different than it was on June 12, 2023, the day before RMST filed its Periodic Report concerning a proposed 2024 artifact recovery expedition. ECF No. 686.  At that time, like now, the order from this Court governing intervention was clear: "should the United States wish to pursue intervention in this case at this time or at a later time, if and when RMST *seeks to pursue a future salvage operation*, it may file a renewed motion to that effect." ECF No. 662, at *2-3. (emphasis added).  In spite of this direction and in an effort to save its Motion when no "salvage operation" is pending, the United States attempts to litigate a constitutional issue, where no such concrete controversy exists.

For the first time, the United States asserts in its Reply that Section 113 enacts a regulatory and administrative scheme administered by NOAA concerning the evaluation of *all* proposed activity in the international waters surrounding the Titanic, regardless if a party's "activity…would physically alter or disturb the wreck or wreck site of the RMS Titanic." Sec. 113; *see also* Reply at 4-6. The United States implies that this process implicates an administrative interest that cannot be protected in this case absent intervention and costly constitutional litigation. Reply at 4-6.

The United States' claim that it requires intervention *now* is belied by the United States' practice in this case concerning other entities that have conducted expeditions to the wreck site, namely OceanGate. Specifically, OceanGate on three separate occasions engaged in activity that the United States now claims is subject to regulation. In each of those cases, OceanGate provided notice by a letter *to this Court*, which the United States read and responded to *in this Court*, without intervening as a party in this case. *See* United States Status Report (May 9, 2023) (ECF No. 684); United States Status Report (June. 15, 2022) (ECF No. 672); United States Status Report (June 16, 2022) (ECF No. 663). The United States did not require OceanGate to comply with Section 113 at any point, or to undertake any process or procedure pursuant to Section 113. For the United States to now claim that intervention is necessary to weigh in concerning RMST's non-invasive expedition to take exterior images of the Titanic and of the wreck site is in direct conflict with how this Court has managed this complex dispute for decades.[2]

## V. CONCLUSION

The United States does not have a right to intervene in this case as a matter of law and it

---

[2] The United States' position is also contrary to standard prudential concerns regarding standing and avoiding "deciding constitutional issues unless such a decision is unavoidable." *J.S. by Sites v. Winchester Pediatric Clinic, P.C.*, No. 5:19-CV-0097, 2021 WL 833955, at *3-4 (W.D. Va. Mar. 4, 2021) (citing *Poe v. Ullman*, 367 U.S. 497, 503 (1961)).

should not now be permitted to intervene in a case when there is no live controversy between the parties. The arguments in the United States' Reply do not change this result and only highlight the fact that it cannot carry its burdens under Federal Rule of Civil Procedure 24 or Article III of the Constitution to intervene in this case.

Respectfully submitted,

**RMS TITANIC, INC.**

By Counsel:

_____/s/_____
Brian A. Wainger, VSB #38476
William R. Poynter, VSB #48672
Ryan V.P. Dougherty, VSB # 78444
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com
E-mail: wpoynter@kaleolegal.com
E-mail: rdougherty@kaleolegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

_/s/_
Brian A. Wainger, VSB #38476
William R. Poynter, VSB #48672
Ryan V.P. Dougherty, VSB # 78444
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Tel: (757) 965-6804
Fax: (757) 304-6175
E-Mail: bwainger@kaleolegal.com
E-mail: wpoynter@kaleolegal.com
E-mail: rdougherty@kaleolegal.com

*Counsel for R.M.S. Titanic, Inc.*
